UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

UNITED STATES OF AMERICA,

                                        Plaintiff,

                                                            **NOTICE OF MOTION**

            v.
                                                            Case No. 19-CR-227

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

                                        Defendants.

───────────────────────────────────

S I R S :

            PLEASE TAKE NOTICE that upon the annexed affidavit of Joseph M. LaTona, Esq., duly sworn to on the 12th day of July, 2021, and upon the indictment and all other proceedings previously had herein, the undersigned will move this Court, at a term to be held in the United States Courthouse, Buffalo, New York, on the 14th day of September, 2021 at 10:30 o'clock in the forenoon of that date, or as soon thereafter as counsel may be heard, for orders granting the following relief:

            (1)      Striking prejudicial surplusage from the indictment;

            (2)      Severing counts of the indictment pursuant to Federal Criminal Rules 8 and 14;

            (3)      Dismissal of Counts 7 and 9 pursuant to Rule 12 of the Rules of Criminal Procedure;

            (4)      A bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure;

(5)    Suppression of evidence seized pursuant to search warrants under Rule 12 of the Federal Rules of Criminal Procedure and an evidentiary hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978);

(6)    Disclosure of certain Brady material;

(7)    Disclosure of grand jury materials pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure;

(8)    Preservation of agent notes;

(9)    An order directing the prosecution to provide pre-trial notice as required by Federal Evidence Rule 807;

(10)   An order directing the prosecution to disclose any impeachment information concerning any hearsay declarant;

(11)   Joinder;

(12)   Leave to make such other and further motions and to supplement these motions.

DATED:       July 12, 2021               Respectfully submitted,
             Buffalo, New York


                                         _/s/ Joseph M. LaTona_____
                                         JOSEPH M. LaTONA

                                         Office and Post Office Address
                                         403 Main Street - Suite 716
                                         Buffalo, New York  14203
                                         716-842-0416
                                         sandyw@tomburton.com

JOEL L. DANIELS, ESQ.
Office and Post Office Address
42 Delaware Avenue - Suite 700
Buffalo, New York  14202
(716) 856-5140
jdaniels38@aol.com

Attorneys for Defendant,
PETER GERACE, JR.

TO:    JAMES P. KENNEDY, JR., ESQ.
       United States Attorney for the
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York  14202
       Attn:   JOSEPH M. TRIPI, ESQ.
               BRENDAN T. CULLINANE, ESQ.
               Assistant United States Attorneys

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

UNITED STATES OF AMERICA,

                               Plaintiff,

      v.

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

                            Defendants.

**AFFIDAVIT**

Case No. 19-CR-227

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

STATE OF NEW YORK     )
COUNTY OF ERIE         ) ss:
CITY OF BUFFALO        )

JOSEPH M. LaTONA, being duly sworn, deposes and says:

1.    Deponent has been retained to work with Joel Daniels, Esq. in connection with pre-trial proceedings in this case.

2.    This affidavit is made in support of a number of different requests for relief. For the convenience of the Court and counsel, it has been subdivided into various subheadings which reflect the particular type of relief sought.

**MOTION TO STRIKE**

3.    Rule 7(d) authorizes a defense motion to strike "surplusage" from an indictment. As noted by the Advisory Committee, the rule:

> ". . . introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial" [Advisory Committee Notes, 1944 Adoption].

4.     The introduction portion of the indictment asserts that co-defendant Bongiovanni associated with individuals who he believed to be "members of, connected to, or associated with Italian Organized Crime [IOC]" [Doc. 89, ¶ 3, p. 2].  An individual named in the introduction portion of the indictment is alleged to be "a member or associate of IOC" [Doc. 89, ¶ 5, p. 2].

5.     In the introduction, Mr. Gerace is alleged to be a friend and associate of co-defendant Bongiovanni but he is not alleged to be a member, associate or an individual connected to IOC [Doc. 89, ¶ 4, p. 2].

6.     Count 1 of the indictment charges only co-defendant Bongiovanni with conspiring to defraud the United States.  That count alleges that Mr. Bongiovanni conspired with the named individual linked to IOC "and others" [Doc. 89, ¶ 2, p. 4].  The term "IOC" is mentioned in a number of paragraphs and in an overt act in Count 1 [Doc. 89, ¶ 5, pp. 5-6; ¶ 17, p. 9; ¶20, p. 9; Overt Act 35, p. 12].  Mr. Gerace is not charged in Count 1.

7.     In Count 3, co-defendant Bongiovanni is alleged to have conspired with the alleged associate or member of IOC [Doc. 89, ¶ 2, p. 26].  Mr. Gerace is not a named defendant in Count 3.

8.     Count 2 charges Mr. Gerace and Mr. Bongiovanni with conspiring to defraud the United States.  It incorporates the introduction [Doc. 89, ¶ 1, p. 17].  As stated above, the introduction portion of the indictment does not allege that Mr. Gerace was a member, associate or an individual connected to IOC.  Despite the grand jury's determination that Mr. Gerace was neither a member, associate or a person connected to IOC, a paragraph in Count 2 asserts that co-defendant Bongiovanni believed that Mr. Gerace was connected to IOC [Doc. 89, ¶ 5, p. 19].  The core allegation of Count 2 was that in exchange for offering and accepting an item of value,

2

the conspirators agreed to defraud the United States Drug Enforcement Administration [Doc. 89, ¶ 2, pp. 17-18].

9.     Co-defendant Bongiovanni's alleged belief regarding Mr. Gerace is not relevant to the conspiracy charged in Count 2.  The essence of that count is an agreement to defraud a federal agency in exchange for a thing of value.  Whether or not the offender belonged to a particular group is not relevant -- the fact that an item of value was offered for an illegal purpose is relevant.  Sand, Vol. 1, Chap. 16, Modern Federal Jury Instructions, §§ 16.02-16.13.

10.     The IOC references in the indictment are extremely prejudicial and not probative of any *bona fide* issue in this case.

11.     Accordingly, Mr. Gerace moves to strike any reference to Italian Organized Crime ["IOC"] from this indictment.

12.     Alternatively, he seeks severance from co-defendant Bongiovanni.

## MISJOINDER - SEVERANCE

13.     Federal Criminal Rule 8(b) governs the joinder of defendants in an indictment.  Joinder is proper only if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."

14.     Based upon the statute, the following counts should be severed as having been misjoined with counts charging Mr. Gerace:  Count 1, Count 3, Count 4, Count 5, Count 10, Count 11, Count 12, Count 13, Count 14, Count 15, Count 16, Count 17 and Count 18.

15.     Rule 14 of the Federal Rules of Criminal Procedure allows for a severance motion in an instance where joinder would appear to prejudice a defendant.

16.     As stated above, the term "IOC" is extremely prejudicial, particularly in the absence of any allegation or evidence that any criminal conduct was performed in furtherance of the objectives of an organized crime enterprise.

17.     Mr. Bongiovanni is not alleged to have acted as a member of any illegal enterprise.  The IOC allegation relates exclusively to Mr. Bongiovanni's purported state of mind. The only state-of-mind element necessary to establish the offenses alleged is the corrupt intent to be influenced in the performance of his official duties.  Sand, supra, § 16.13.

18.     Mr. Gerace is not alleged in the introduction portion of the indictment as being a member, associate or an individual connected to IOC.  Furthermore, anything that Mr. Bongiovanni may or may not have believed has no relevance regarding the criminal misconduct charged against Mr. Gerace.

19.     Consequently, pursuant to Rule 14, Mr. Gerace should be severed from co-defendant Bongiovanni on the trial of Counts 2 and 8 of the indictment.  Both of those counts incorporate the introduction to the indictment, as well as several other references to IOC [Doc. 89, ¶ 1, p. 17; ¶ 5, p. 19; ¶ 12, p. 20; ¶ 15, p. 21; ¶ 1, p. 31].

20.     If the Court decides that any count mentioned in paragraph 14 above was properly joined, then severance is sought under Rule 14.

## DISMISSAL

21.     Rule 12(b)(3)(B)(iii) authorizes a motion to dismiss defective counts in an indictment for a lack of specificity.

22.     Based upon the facts and authorities set forth in Mr. Gerace's memorandum of law, he moves for a dismissal of Counts 7 and 9 of the indictment.

## MOTION FOR BILL
## OF PARTICULARS

23.     Rule 7(f) of the Federal Rules of Criminal Procedure authorizes a defense

motion for a bill of particulars.

24.     A bill of particulars serves three major functions:

(1)     To preclude multiple prosecutions for the same
        offense;

(2)     To enable the accused to prepare for trial; and

(3)     To prevent surprise at trial.  United States v. Glaze,
        313 F.2d 757, 759 (2d Cir. 1963); United States v.
        Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971).

25.     The Court in United States v. Eissner, 206 F. Supp. 103 (N.D.N.Y. 1962),

observed that,

> "[t]he bill of particulars is not evidence of itself; it is merely
> a statement of what the government will or will not claim."
> 206 F.Supp. at 106.

26.     The Glaze and Eissner cases were decided prior to 1966 when former Rule 7

required that a good cause showing be demonstrated before particularization would be ordered.  In

1966 the "cause" requirement was eliminated,

> ". . . to encourage a more liberal attitude by the courts toward
> bills of particulars without taking away the discretion which
> courts must have in dealing with such motions in individual
> cases."  Advisory Committee Note on 1966 Amendment to
> rule 7. See, United States v. Addonizio, 451 F.2d at 64
> (3d Cir. 1971).

27.     Writing for the Second Circuit in Glaze, supra, Judge Kaufman observed

that,

> "[w]e have observed that the Government, on occasion, objects to granting particulars even though no disadvantage to it can be ascertained.  In so doing it follows a policy which had gradually fallen into disfavor in our courts of criminal justice -- that it should reveal but the bare minimum of the elements of the offense charged so as to satisfy in the most cursory manner the requirement that the defendant be apprised of enough information to aid him in the preparation of his defense.  We do not say that the Government need give away every aspect of its case, nor that it reveal its evidence.  But we do say that a balance fair to both sides can be struck by a conscientious endeavor to avoid surprise at trial."  313 F.2d at 761; see, United States v. Baum, 482 F.2d 1325, 1329-1332 (2d Cir. 1973).

28.     More recently, the Second Circuit has expressly recognized the need for particularization in complex RICO and white collar prosecutions.  United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988); United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987).

29.     In Bortnovsky, the conviction was reversed as the District court failed to grant the defense motion for a bill of particulars.  The defendants were prosecuted for mail fraud and they sought the specifics concerning which of their insurance claims were purportedly falsified.

30.     The conviction in Davidoff was reversed for the trial court's failure to require the prosecution to particularize the phrase "not limited to."

### Count 2 - Conspiracy

31.     Count 2 of the indictment, which encompassed the period from 2005 to February 2014, should be particularized as follows:

a.      Identify each location encompassed by the term "elsewhere" in which any alleged co-conspirator purportedly furthered the conspiracy [¶ 2, pp. 17-18].

6

b.      Identify any alleged "known" co-conspirators [¶ 2, pp. 17-18].

c.      Upon learning the identity of any currently "unknown" alleged co-conspirator, to provide the name of each such individual [¶ 2, pp. 17-18].

## Manner and Means

32.      Any unpled other "part" of the purported conspiracy not set forth in paragraphs 4 through 15 of Count 2 [¶¶ 4-15, pp. 18-21].

33.      The identity of each individual who purportedly provided payments to Mr. Bongiovanni, together with the amount of each payment [¶ 5, p. 19].

34.      Specify the exact information purportedly provided by Mr. Bongiovanni to Mr. Gerace during the period 2005 through 2017 [¶ 7, p. 19].

35.      Provide the identity of each federal agent who Mr. Bongiovanni purportedly influenced not to investigate Mr. Gerace and Pharaoh's [¶ 8, p. 20].

36.      Provide the date and amount of each cash bribe purportedly provided by Mr. Gerace to Mr. Bongiovanni [¶ 9, p. 20].

37.      Whether it is alleged that Mr. Bongiovanni ever provided a "cover" story to Mr. Gerace and, if so, what that "cover" story was [¶ 13, p. 21].

## Overt Acts

38.      Specify each alleged overt act purportedly performed outside of the Western District of New York and encompassed by the term "elsewhere" [¶ 16, p. 21].

39.      The exact information which Mr. Gerace purportedly learned in 2005 about the execution of a search warrant in which Mr. Bongiovanni participated [¶ 17, p. 21].

40.     The date, amount and location of each cash bribe purportedly paid by Mr. Gerace to Mr. Bongiovanni during the period from 2013 through 2016 [¶ 18, p. 22].

41.     Whether it is alleged that Mr. Gerace provided to and offered to provide Mr. Bongiovanni with anything of value to influence the Probation Department and, if so, what that thing of value was [¶ 19, p. 22].

42.     The date, time, location and amount of cocaine in each alleged incident where Mr. Gerace possessed and/or distributed cocaine between 2006 and February 1, 2019 [¶ 34, p. 25].

43.     The identity of each female dancer who overdosed inside Pharaoh's and the date and kind of controlled substance in each such overdose incident during the period 2009 through 2018 [¶ 35, p. 25].

44.     The identity of each Pharaoh's employee that Mr. Gerace is alleged to have provided money or drugs in exchange for sex with Mr. Gerace and others during the period 2009 through February 2019 [¶ 36, p. 26].

45.     The date of each instance of money and/or drugs being provided in exchange for sex as alleged during the period 2009 through February 2019 [¶ 36, p. 26].

## Count 6 - Bribery

46.     The date, amount and location of each alleged bribe payment to Mr. Bongiovanni of "United States currency" during the period from 2009 through June 6, 2019 [¶ 2, pp. 29-30].

47.     Each unpled objective of the bribery scheme encompassed by the term "among other acts" [¶ 2, pp. 29-30].

8

## Count 7 - Maintaining a Drug Premises

48.     The date of each instance that Mr. Gerace is alleged to have manufactured any controlled substance and the amount and description of each such substance purportedly occurring during the period from 2006 through December 12, 2019 [¶ 2, p. 30].

49.     The date of each instance where Mr. Gerace purportedly used and/or distributed any of the controlled substances set forth in paragraph 2 [¶ 2, p. 30].

## Count 8 - Conspiracy to Distribute Controlled Substances

50.     Specify each location other than the Western District of New York where any act in furtherance of the conspiracy took place and which is encompassed by the term "elsewhere" [¶ 2, p. 31].

51.     The identity of each "known" co-conspirator not set forth in the indictment [¶ 2, p. 31].

52.     Upon being identified, the identity of each currently "unknown" alleged co-conspirator [¶ 2, p. 31].

## Count 9 - Conspiracy to Commit Sex Trafficking

53.     Count 9 of the indictment, which encompasses the period from 2009 through 2018, should be particularized as follows:

        a.      Identify each location encompassed by the term "elsewhere" in which any alleged co-conspirator purportedly furthered the conspiracy.

b.      Identify any alleged "known" co-conspirator.

c.      Upon learning the identity of any currently "unknown" alleged co-conspirator, to provide the name of each such individual.

d.      Identify each person who actually recruited, enticed, harbored, transported, provided, obtained and/or maintained any other individual for the purpose of a commercial sex act.

e.      Identify each person who was subjected to the actions set forth in "d" above.

f.      The date of each such act particularized pursuant to "d" and "e" above.

g.      The participant and date and each alleged use of force, threats of force, fraud and/or coercion and/or a combination of the above to cause another person to engage in a commercial sex act.

h.      The identity of each person against whom the means of force, threats of force, fraud and/or coercion was exerted to cause them to engage in a commercial sex act.

## Forfeiture Counts 3 and 4

54.      These counts should be particularized as follows:

a.      With respect to each real property, state the exact alleged criminal conduct which purportedly generated the derivative proceeds.

b.      With respect to each property and each criminal act specified in "a" above, state the date, time, place, participant(s) and/or amount of controlled substances involved in each such criminal act.

10

c.       With respect to each property, specify each use allegedly designed to commit and/or facilitate the commission of any crime.

d.       Specify the date, time, location, participant(s) and each use specified in "c" above.

### SUPPRESSION

55.       Mr. Gerace moves to suppress all evidence seized as a result of the execution of search warrants directed against his home, his business and a cell phone seized from him in Florida on February 28, 2021.

56.       Thus far, the defense has been provided with a single redacted warrant application that related to the cell phone seized from Mr. Gerace.  Based upon an analysis of that redacted affidavit, counsel believes that there are additional reasons for the production of other search warrant applications currently filed under seal.  Those reasons include the inherent untrustworthiness of the affiant on the earlier warrant applications and on the redacted application.

### <u>Redacted Application</u>

57.       The cell phone search warrant application was sworn to on March 12, 2021 [Case No. 21-mj-22].  The redacted application will be referred to as "App." together with a paragraph and page number.

58.       As indicated above, the phone was seized from Mr. Gerace in Florida on February 28, 2021 [App., ¶¶ 4, 9, pp. 2, 4].

59.     The application refers to the February 25, 2021 indictment returned against Mr. Gerace and co-defendant Joseph Bongiovanni.  The application also enumerates the five counts in which Mr. Gerace is charged [App., ¶ 6, pp. 2-3].

60.     Conspicuously absent from the application are the time periods of the counts charging Mr. Gerace [App., ¶ 6, pp. 2-3; ¶ 8, pp. 3-4].  Simple reference to the indictment conclusively establishes that the affiant omitted these time periods in order to mislead the Magistrate who might otherwise conclude that the warrant application was based upon stale assertions.

61.     The conspiracy alleged in Count 2 of the indictment ended twenty-five months before the search warrant application was signed [Doc. 89, ¶ 2, pp. 17-18].

62.     The alleged bribery of Joseph Bongiovanni, according to the indictment, ended twenty months before the search warrant application was filed [Doc. 89, ¶ 2, pp. 29-30].  In addition, the indictment specifically recited the fact that Bongiovanni was no longer a public official as of February 1, 2019 [Doc. 89, ¶ 1, p. 1].

63.     In Count 7, the alleged maintenance of drug premises had ended fifteen months before the search warrant application was signed [Doc. 89, ¶ 2, p. 30].  The conspiracy to distribute controlled substances ended twenty-five months before the search warrant application was signed [Doc. 89, ¶ 2, p. 31].

64.     Lastly, the alleged conspiracy to engage in sex trafficking ended twenty-seven months before the search warrant application was signed [Doc. 89, p. 32].

65.     The affiant on the redacted search warrant application was Curtis E. Ryan [App., p. 2].  Agent Ryan was the affiant regarding the warrants to search Mr. Gerace's home and his place of business that were issued in November of 2019 [App., ¶ 7, p. 3].

66.     The redacted application asserted that Mr. Gerace used a "mobile telephone" to communicate with Mr. Bongiovanni and with his brother, Anthony Gerace [App., ¶ 10, pp. 4-5].  That paragraph fails to allege that these communications occurred through the target telephone seized from Mr. Gerace in February, 2021.  Moreover, no time period is specified during which Mr. Gerace is alleged to have communicated either with Bongiovanni or his brother.  Furthermore, there were three other redacted instances of purported usage of a mobile telephone [App., ¶ 10, p. 5].  Counsel believes that the affiant deliberately omitted the exact dates of any such alleged communications with the unnamed individuals referred to in the subparagraphs.

67.     The application also alleged that certain unnamed witnesses observed Mr. Gerace use cocaine and other controlled substances at his residence and his place of business [App., ¶ 11, p. 5].  In addition, witnesses also claimed that Mr. Gerace made cocaine available to other individuals at his residence [Id.].  Conspicuously absent is the time frame during which these purported observations were made.  Moreover, no information was set forth with regard to the reliability of any of these unnamed witnesses.  Furthermore, no factual nexus was supplied by these witnesses linking the target telephone with the illegal activity which they purportedly observed.

68.     The balance of the application contains no more than boilerplate allegations conspicuously lacking any factual connection either to Mr. Gerace or to the target telephone.

69.     In addition, the application fails to establish that the seized telephone was the same one in use during the time period specified in the indictment.  No factual allegation is made that even if the target telephone was different from that which was used during the indictment period, that it actually contained the same data.  Conspicuously lacking is any allegation that the

13

authorities checked with Apple or any other individual or entity to establish that the target telephone contained the data and/or evidence being sought.

70.     Deponent respectfully submits that the omissions enumerated above were material to the search warrant application and that the Court should grant the defense request for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674 (1978).

71.     Furthermore, it is submitted that based upon the deceptive conduct of Agent Ryan in the cell phone search warrant application that the defense should be provided with the earlier search warrant applications directed against Mr. Gerace's home and his business.

## <u>BRADY</u> MATERIAL

72.     Counsel is aware that the Government moved for an injunction prohibiting a New York State civil case brought by Mr. Gerace from proceeding.  The injunction has been mentioned publicly [Exhibit A].

73.     The upshot of this unprecedented activity is to essentially provide civil immunity to a witness who has testified before the federal grand jury [Exhibit B].

74.     Insofar as truth is a defense to any allegation of slander, it appears that the federal government had second thoughts about the credibility of Katrina Nigro and accordingly, sought to preclude her credibility or lack thereof from ever being determined in the New York State civil proceeding.

75.     Counsel is aware that the injunctive proceedings occurred before District Court judges.  Accordingly, counsel agrees that it should be up to the District Court to determine what should be disclosed under the <u>Brady</u> doctrine.  However, counsel wanted to include this request within our omnibus pre-trial motions so that our position clearly is contained within the

record.  Accordingly, counsel submits that the defense in this criminal case should be provided with all pleadings which led up to the issuance of the injunction, together with transcripts of any *in camera ex parte* proceedings which led to the issuance of the injunction.

## RULE 6 MOTION

76.     In pertinent part, Rule 6 of the Federal Rules of Criminal Procedure authorizes the disclosure of grand jury materials when requested by a defendant when a ground may exist to dismiss an indictment.

77.     Among the matters known to counsel at this time are those summarized below.  The defense reserves the right to supplement this motion as newly discovered matters emerge.

78.     As set forth above, the indictment does not allege that Mr. Gerace was either a member or an associate of the so-called Italian Organized Crime ["IOC"].  Furthermore, the mention of that term in the indictment is not relevant to the charges alleged and is purely prejudicial.  The only purpose that counsel could discern is a desire to prejudice the grand jurors against Mr. Gerace and Mr. Bongiovanni.  Even if the defense motion to strike surplusage is granted, that would not eliminate the prejudice created during the grand jury presentment.

79.     The defense requests the disclosure of all evidence regarding IOC that was presented to the grand jury, together with all jury instructions regarding that evidence.

80.     In <u>United States v. Williams</u>, 504 U.S. 36, 112 S.Ct. 1735 (1992), the Supreme Court recognized a lower court's supervisory power to dismiss an indictment for misconduct before the grand jury.  504 U.S. at 46, 112 S.Ct. at 1741.  In a footnote, the Court recognized that dismissal might be appropriate for the violation of clear cut rules applicable to

15

grand jury proceedings.  The Court characterized those rules as ". . . standards of behavior for prosecutors (and others) . . ." [n. 6].  Among the rules expressly recognized by the United States Supreme Court was a violation of 18 U.S.C. § 1623 which criminalizes false declaration to a grand jury or a court.

81.     Mr. Gerace's ex-wife, Katrina Nigro, has outed herself as having testified before the federal grand jury [Exhibit B].  As stated above, Mr. Gerace has sued Ms. Nigro in New York State court for slander.  An excerpt of the complaint in that case is attached [Exhibit C].

82.     As noted earlier, in an unprecedented maneuver the federal prosecutor successfully moved the District Court for an injunction staying all proceedings in the state civil case [Exhibit A].

83.     Given Ms. Nigro's propensity to mendaciously exaggerate and fabricate, counsel is concerned that she did so in the grand jury.  The defense is concerned she mentioned other allegations that would have been precluded from evidence in an adversarial judicial proceeding.

84.     Significantly, Ms. Nigro stated publicly that her grand jury testimony related to "organized crime in Buffalo" [Exhibit B].

85.     Accordingly, the defense submits that the Court should direct the disclosure of all testimony delivered by Ms. Nigro, together with any legal instructions given to the grand jury with regard to her.

## PRESERVATION OF AGENT NOTES

86.     Mr. Gerace moves for an order requiring the preservation of all agent and/or investigative notes that were generated during the instant investigation.  Numerous District Court decisions within this Circuit have granted such relief.  See, United States v. Gladstone, 2000 U.S. Dist. Lexis 17166 (S.D.N.Y.); United States v. Cordero, 1998 U.S. Dist. Lexis 4504 (N.D.N.Y.); United States v. Dunn, 1997 U.S. Dist. Lexis 1266 (N.D.N.Y.)

87.     In addition, at least one District Court has granted an order requiring the Government and its investigators to compile a list of all documents discoverable under Rule 16 of the Federal Rules of Criminal Procedure or under the Brady doctrine which were destroyed by Government agents during or after the investigation.  United States v. Lee, 862 F.Supp. 1129 (S.D.N.Y.).

88.     In addition to a preservation order, Mr. Gerace seeks an order requiring the Government and its investigators to compile the list of documents required under the Lee decision.

## RULE 807 DISCLOSURE

89.     Federal Evidence Rule 807 encompasses the residual hearsay exception.

90.     Although such evidence may be admitted, the proponent must give the adverse party pre-trial notice of its intention to proffer the statement.

91.     Mr. Gerace requests that this Court order the prosecution to give the requisite pre-trial notice in the event that any such evidence will be proffered at trial.

17

**HEARSAY DECLARANT DISCLOSURE**

92.    Federal Evidence Rule 806 provides that where a hearsay statement or various statements excluded from the hearsay rule as provided for in Rule 801 has been admitted, then the opposing party may attack the credibility of the declarant.

93.    This motion seeks disclosure under the <u>Brady</u> doctrine of any evidence and/or other information in the prosecution's possession or under its control that would tend to impeach the credibility of any declarant whose declaration will be proffered at trial by the prosecution.

**JOINDER**

94.    The defendant, Peter Gerace, hereby joins in all motions made on behalf of his co-defendant.

**LEAVE TO MAKE FURTHER AND
TO SUPPLEMENT THESE MOTIONS**

95.    The defense has endeavored to encompass within these motion papers all forms of pre-trial relief that may be properly requested at this time.

96.    However, upon the receipt of materials and/or information in the future, counsel may become aware of further pre-trial relief which should be requested or matters which should be advanced to supplement the motions already made.  The Court is respectfully asked to grant leave to make such other and further motions and to supplement these motions as may be deemed appropriate at a future date.

WHEREFORE, deponent respectfully requests that this Court grant the relief sought in the annexed Notice of Motion, together with such other and further relief as the Court deems proper.

*/s/ Joseph M. LaTona*
JOSEPH M. LaTONA

Sworn to before me this
12th day of July, 2021.

*/s/ Sandra Lee Wright*
Notary Public

SANDRA LEE WRIGHT
Notary Public, State of New York
Qualified in Erie County
My Commission Expires October 29, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2021 I electronically filed the preceding document with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

**Joseph M. Tripi, Esq.**
**Brendan T. Cullinane, Esq.**
**Assistant United States Attorneys**

**Defense Counsel**

I further hereby certify that I have mailed by United States Postal Service said document to the following non-CM/ECF participants:

**None**

*/s/ Sandra Lee Wright*
SANDRA LEE WRIGHT