# EXHIBIT A

15:47:53

```
 1                    UNITED STATES DISTRICT COURT

 2                    WESTERN DISTRICT OF NEW YORK

 3

 4

 5    - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA     )      19CR227
 6                                 )
      vs.
 7                                        Buffalo, New York
      JOSEPH BONGIOVANNI, & PETER
 8    GERACE, JR.                  )   June 29, 2021
                  Defendant               1:15  p.m.
 9    - - - - - - - - - - - - - X
```

**Oral Argument**
**Transcribed from an Electronic Recording Device**

```
10

11                   TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE MICHAEL J. ROEMER
12              UNITED STATES MAGISTRATE JUDGE

13

                       JAMES P. KENNEDY, JR., ESQ.
14                     United States Attorney
                       BY:  JOSEPH M. TRIPI, ESQ.
15                          BRENDAN T. CULLINANE, ESQ.
                       Assistant United States Attorneys
16                     138 Delaware Avenue
                       Buffalo, New York 14202
17

18                     JOSEPH LATONA, ESQ.
                       403 Main Street, Suite 700
19                     Buffalo, NY 14203
                            -and-
20                     JOEL L. DANIELS, ESQ.
                       42 Delaware Avenue, Suite 700
21                     Buffalo, New York 14202
                       Appearing on behalf of Defendant Gerace
22

23
```

**24   COURT REPORTER: Karen J. Clark, Official Court Reporter**
**                   Karenclark1013@AOL.com**
**25                  100 State Street**
**                   Rochester, New York 14614**

USA VS. J. BONGIOVANNI & P. GERACE, JR.

**CONTINUING APPEARANCES**


JAMES P. HARRINGTON, ESQ.
JESSE C. PYLE, ESQ.
Harrington and Mahoney
70 Niagara Street, Third Floor
Buffalo, New York 14202


P R O C E E D I N G S

*       *       *

09:08:00   THE CLERK:  United States District Court for the Western District of New York is now in session.  The Honorable Michael J. Roemer presiding.

We're here on the matter of the United States versus Bongiovanni and Gerace for oral argument.

Counsel for the government, please state your name for the record.

MR. TRIPI:  Joseph Tripi and Brendan Cullinane for the United States.  Good afternoon, your Honor.

THE CLERK:  Thank you.  Counsel for Defendant Gerace.

MR. LATONA:  Joe LaTona with co-counsel, Mr. Daniels.  And the record should reflect that Mr. Gerace

1          USA VS. J. BONGIOVANNI & P. GERACE, JR.

15:48:51   2   is here in court.

15:48:52   3              MAGISTRATE JUDGE ROEMER:  And counsel for

15:48:55   4   Defendant Bongiovanni, please state your name for the

15:48:58   5   record.

15:48:58   6              MR. HARRINGTON:  James Harrington and Jesse

15:49:01   7   Pyle for Mr. Bongiovanni.  He is not here.

15:49:02   8              MAGISTRATE JUDGE ROEMER:  You're waiving his

15:49:04   9   appearance?

15:49:05  10              MR. HARRINGTON:  Yes, Judge.

15:49:05  11              MAGISTRATE JUDGE ROEMER:  We're here for

15:49:06  12   oral argument for defendants' motions to unseal search

15:49:11  13   warrant applications.  I have read the parties' papers.

15:49:14  14              Mr. LaTona, do you want to go ahead?

15:49:15  15              MR. LATONA:  Yes, Judge.  I want to

15:49:17  16   summarize, as you indicated, there is a lot in the

15:49:20  17   paperwork.  Judge, what I want to do is address standing

15:49:23  18   with regard to Pharaohs, the gentlemen's club, and I

15:49:26  19   just want to read, this is paragraph four of the second

15:49:31  20   superseding indictment, document 89, sentence two, which

15:49:37  21   states: "Gerace is also the owner and principal operator

15:49:42  22   of Pharaohs Gentlemen Club located at 999 Aero Drive,

15:49:47  23   Cheektowaga."

15:49:50  24              One of the cases cited by the government and

15:49:53  25   by us, basically, the *Gerena* case out of the District of

USA VS. J. BONGIOVANNI & P. GERACE, JR.

15:50:00 Connecticut basically said that when a defendant makes a
15:50:02 colorable claim of standing, he or she is entitled to a
15:50:08 hearing where the prosecution reasonably challenges
15:50:12 standing. As we pointed out in our Reply memo, quite
15:50:17 frankly, Judge, we were shocked that they would even
15:50:22 contest the issue of standing as to the gentlemen's
15:50:25 club, quite frankly. I don't want to get into the
15:50:28 criticism that the Judge in *Gerena* lodged in that
15:50:32 particular footnote, but I think he made it very clear
15:50:35 that when the government challenges standing, they must
15:50:39 reasonably do so. In order to have a full and complete
15:50:44 record for your Honor to issue a ruling, what I am
15:50:48 suggesting is that there be either a hearing at which
15:50:53 the prosecution must produce as exhibits, any testimony
15:50:59 or tangible item backing up that sentence out of the
15:51:04 indictment that I just read. Now, we're not out to find
15:51:09 witness' identities or anything else. You can redact
15:51:12 the name, you can redact out every single allegation by
15:51:16 that witness with the exception of what did that witness
15:51:19 testify regarding Mr. Gerace's ownership of Pharaohs,
15:51:25 his procurement of title of the land, and maybe, most
15:51:30 importantly, his involvement in the operations of
15:51:33 Pharaohs. That is on the one hand. It would be a
15:51:37 truncated hearing, basically, using redacted exhibits.

USA VS. J. BONGIOVANNI & P. GERACE, JR.

I guess the flip side of it --

MAGISTRATE JUDGE ROEMER:  Mr. LaTona, let's assume he owns it and all that.  Okay.  He is the owner of the business.  And I don't know that he really owns the building.  I guess there is something going on that he is going to get transfer of the title.

MR. LATONA:  It's a land contract and he is going to transfer that.

MAGISTRATE JUDGE ROEMER:  Let's assume that is all true.  How is it -- is he the only one with the key?  Do a whole bunch of other people have access to that?  Do you keep your standing?  Do you have a reasonable expectation of privacy if 20 other people can come and go as they want and that sort of thing?

MR. LATONA:  Sure, Judge, because if you're the one who controls who gets the keys, when they might or might not have access, when you're controlling the business, the business operation and basically telling people what to do, okay, then you're in command here.

MAGISTRATE JUDGE ROEMER:  Because the building in general, at least, is open to the public.  You can go in in working hours.

MR. LATONA:  Within certain hours.

MAGISTRATE JUDGE ROEMER:  Usually when I see

USA VS. J. BONGIOVANNI & P. GERACE, JR.

this, I see something like they seized records out of my office. I'm the only one with a key to my office. They are kept in a file cabinet and I'm the only one with a key to the file cabinet, that sort of thing.

MR. LATONA: Because you're talking about an employee, not someone who owns the property, owns the business. I can understand that, and I know the distinguishing feature that someone maybe as a corporate executive, maybe he owns some stock, maybe he owns the majority of stock where the government ends up taking things out of someone else's office or looking at someone else's laptop. That is the difference. When you're in control of the premises, you own the building, you know, basically you're controlling who gets in, what they are do doing while they were there, and you regulate when members of the public are allowed to come in there. One of the exhibits that Mr. Daniels had in his motion would be the employee access door, which would be where Mr. Gerace enters and exits pursuant to Judge Sinatra's order giving him limited access to the premises. I think for all concerned, whether we have a truncated open hearing on it with redacted documents or the flip side of it would be that the government should provide to you for your in camera examination all of the

USA VS. J. BONGIOVANNI & P. GERACE, JR.

evidence that was presented to that grand jury underlying the sentence that I just read out of the indictment. I think it has to happen one way or the other so you have a full record with which to make your decision. That is regarding standing. I don't know if you want to let them respond or keep going.

MAGISTRATE JUDGE ROEMER: No, go ahead with the rest.

MR. LATONA: Judge, we have received today a redacted portion or a redacted application for the cell phone which was seized. And Mr. Daniels and I are reviewing it. And we may want to make some motion in that regard. Going back to the initial warrants, they were issued back in November of 2019, that is 18 months ago. We submit to your Honor that it's very clear, every day that goes by, on a daily basis, any rationale for sealing evaporates. I think that is the lesson of the cases. And, quite frankly, the one case that I think really should be reviewed by your Honor, and I'm sure you will, is the *Abuhamra* case, which came out of this district. That was one --

MAGISTRATE JUDGE ROEMER: I'm very familiar with that case.

MR. LATONA: I know, Judge. I presume at

USA VS. J. BONGIOVANNI & P. GERACE, JR.

1

15:55:44 2 that time, you were working with that particular judge

15:55:47 3 here and what not. And I think that is basically a road

15:55:50 4 map as to any sort of ex parte type situation. And I

15:55:56 5 think the rules that the Second Circuit --

15:55:57 6 MAGISTRATE JUDGE ROEMER: They didn't really

15:55:59 7 deal with a search warrant, though. That dealt with ex

15:56:02 8 parte hearing regarding whether or not a defendant

15:56:04 9 should be released on bail pending sentencing, I

15:56:08 10 believe.

15:56:09 11 MR. LATONA: That's correct. But I think

15:56:10 12 the rationale is right on point.

15:56:11 13 MAGISTRATE JUDGE ROEMER: Okay.

15:56:12 14 MR. LATONA: And, in fact, in that case, if

15:56:19 15 I may, the Second Circuit talked about an in camera ex

15:56:27 16 parte stuff, and here is what they said. Once such

15:56:31 17 orders are executed, this is an order based on it,

15:56:35 18 however the ex parte submissions are generally unsealed

15:56:38 19 in the case of arrest and search warrants usually

15:56:42 20 immediately and parties whose liberties or property

15:56:45 21 interest are affected are afforded opportunities to

15:56:49 22 challenge the legality of the actions. And then it

15:56:52 23 cites to Federal Criminal Rule 12. So, they were

15:56:56 24 mindful in that regard. But some of the other

15:56:59 25 situations, Judge, is that with that amount of time, the

USA VS. J. BONGIOVANNI & P. GERACE, JR.

government has had full opportunity to interview any potential witnesses that they wanted.  They certainly made a determination and we've got enough to go to a grand jury.  And they indicted Mr. Gerace and had him arrested.

One of the other issues, Judge, is the fact that his ex-wife has basically outed herself as a grand jury witness.  And we've appended to our papers a Buffalo News article, and also a Channel 2 excerpt from TV indicating that she said that she was a grand jury witness.  We submit, respectfully, that any information provided by her that led to the issuance of a search warrant should be disclosed to us because she self outed her position as a grand jury witness.

But, I think, getting back to *Abuhamra*, Judge, is that the strong presumption against ex parte submissions, the government must demonstrate on a continuing basis and designate that material that actually should be kept secret as it may compromise a legitimate situation, that it has to be a situation, *Abuhamra* even said, that they should have to provide the defense with a summary of these various reasons and the Court was obliged to scrutinize the reliability of this ex parte information.  And I think *Abuhamra* provides a

                    USA VS. J. BONGIOVANNI & P. GERACE, JR.

15:58:32    2    good road map for this situation.  Quite frankly, Judge,

15:58:39    3    unless there is a determination based on the submissions

15:58:42    4    to date, your Honor's inspection of the grand jury

15:58:45    5    materials or giving us a truncated hearing, we do need

15:58:50    6    some support of an evidentiary hearing.  There are a

15:58:53    7    number of cases that we cited in the reply memo where

15:58:57    8    courts have conducted hearings, some in camera.

15:59:01    9         But the Ninth Circuit, in the *Napier*

15:59:05    10   decision that was initially cited by the prosecution,

15:59:07    11   what happened there was initially the government

15:59:10    12   released a redacted affidavit, the defense basically

15:59:14    13   said that is not enough, they actually had an open court

15:59:17    14   evidentiary hearing where the affiant testified,

15:59:21    15   apparently, under the scrutiny of the court, which

15:59:25    16   precluded certain inquiries into various matters so the

15:59:29    17   court was there to supervise it, so we feel we want to

15:59:34    18   press forward with a hearing regarding this continued

15:59:38    19   sealing that the government wants to pursue.  I think

15:59:42    20   your decision in Willson, the *Kingsmen* case, I think was

15:59:48    21   very good insofar as you recognized options.  No. 1,

15:59:52    22   redaction, a redacted search warrant application.  And

15:59:56    23   you indicated another suggestion that would be

15:59:59    24   reasonable, an attorneys'-eyes-only, where only the

16:00:03    25   lawyers have the ability to review these materials.

| | | |
|---|---|---|
| | 1 | USA VS. J. BONGIOVANNI & P. GERACE, JR. |
| 16:00:07 | 2 | Now, we have a protective order in place.  And, |
| 16:00:11 | 3 | basically, anything that we, the lawyers, get any |
| 16:00:14 | 4 | documentation, any of these applications, although we |
| 16:00:18 | 5 | can make a motion and we can refer to various things in |
| 16:00:22 | 6 | there, we may not attach as exhibits to our moving |
| 16:00:26 | 7 | papers the actual documents themselves, which is |
| 16:00:30 | 8 | basically the procedure that we had in the Chosen Few. |
| 16:00:33 | 9 | MAGISTRATE JUDGE ROEMER:  But it's not |
| 16:00:34 | 10 | attorneys'-eyes-only right now, our current protective |
| 16:00:38 | 11 | order? |
| 16:00:39 | 12 | MR. LATONA:  Yeah. |
| 16:00:39 | 13 | MR. TRIPI:  It is not. |
| 16:00:40 | 14 | MR. LATONA:  No, it's not. |
| 16:00:41 | 15 | MAGISTRATE JUDGE ROEMER:  Yeah. |
| 16:00:42 | 16 | MR. LATONA:  What it says in the protective |
| 16:00:43 | 17 | order is that if a suppression motion is advanced by the |
| 16:00:47 | 18 | defense, they may not attach, as exhibits to their |
| 16:00:52 | 19 | moving papers, the actual applications.  But these are |
| 16:00:57 | 20 | the other alternatives. |
| 16:00:58 | 21 | MAGISTRATE JUDGE ROEMER:  You're offering an |
| 16:01:00 | 22 | attorneys'-eyes-only alternative. |
| 16:01:02 | 23 | MR. LATONA:  Absolutely.  Sure, Judge, I |
| 16:01:05 | 24 | mean, absent the relief we're seeking, we can not |
| 16:01:09 | 25 | effectively represent Mr. Gerace and his Sixth Amendment |

USA VS. J. BONGIOVANNI & P. GERACE, JR.

right to effective counsel in our right.  We'll be

abrogated.

MAGISTRATE JUDGE ROEMER:  Okay.  Is that all?

MR. LATONA:  Yes, your Honor.

MAGISTRATE JUDGE ROEMER:  Mr. Harrington, you want to add anything?

MR. HARRINGTON:  Judge, as you know on the papers, we're in a bit of a different situation because we're talking about Mr. Bongiovanni's home and his own phones.  There is, apparently, some question raised by Mr. Tripi regarding other phones.  We're not seeking to have the phones of his wife or son turned over to us. We don't claim standing for those.  We do claim standing, obviously, for his own phone.  Judge, unless you have some questions, I don't understand why there is an issue of standing with respect to somebody's home, which is clearly what the Fourth Amendment is directly for and for somebody's own personal cell phone.  So I think what we're talking about --

MAGISTRATE JUDGE ROEMER:  Let me just make sure I understand about the cell phone.  As I recall reading in the papers, there was a number of electronic devices seized from his home, and I thought what the

1        USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:03:56  2   government was saying is he hadn't identified which

16:03:59  3   phone is his.  Is that true or not true?

16:04:02  4        MR. HARRINGTON:  I don't know that we

16:04:03  5   specifically identified it in there, Judge.  It's easy

16:04:06  6   enough to do.  And Mr. Tripi knows which phone it is

16:04:11  7   since the day that they executed the search warrant,

16:04:13  8   agents sat there with my client with the phone.  They

16:04:16  9   know what phone we're talking about.  It's one phone

16:04:18 10   that he used; he didn't use multiple.

16:04:20 11        MAGISTRATE JUDGE ROEMER:  And you're not

16:04:21 12   claiming standing with regard to all of the other

16:04:25 13   electronic devices.

16:04:26 14        MR. HARRINGTON:  We'll waive that.  Excuse

16:04:27 15   me.  We'll waive standing with respect to the phones of

16:04:30 16   his son or his wife.  If the government wants us to

16:04:35 17   specify which ones those are, we'll be glad to do that.

16:04:38 18        MAGISTRATE JUDGE ROEMER:  Okay.

16:04:39 19        MR. HARRINGTON:  Okay.  But, Judge, it seems

16:04:41 20   to me, what we're talking about here is what the remedy

16:04:46 21   is for the Court if the Court accepts the

16:04:48 22   representations of the government about why this should

16:04:51 23   not be turned over to us.  And as I understand the

16:04:58 24   government, Mr. Tripi and I have talked about it, he is

16:05:01 25   claiming, one, that there may be some, apparently,

USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:05:03  danger to somebody.  I don't know what that is.  This is

16:05:06  not a danger case.  And number two, it may reveal some

16:05:10  sources or methods because there are still ongoing

16:05:13  investigations.  And, I know that one of the remedies

16:05:19  that is talked about is for the Court to get the

16:05:23  application for the search warrant and read it in camera

16:05:26  and then make a determination as to what can be turned

16:05:29  over to us.  And I ask the simple question to you is

16:05:33  what are you going to do when you read it?  I'm not

16:05:36  asking you to say anything now.  You are a magistrate

16:05:41  judge, two other magistrate judges equal to you have

16:05:44  issued the search warrants in this case, and, obviously,

16:05:47  they looked at the search warrant the same as you do.

16:05:50  The problem here is it's not just what's on the face of

16:05:57  the warrant that can be part of the application to

16:05:59  suppress.  There is obviously, in many cases, there were

16:06:05  *Franks* issues, good-faith material misrepresentations

16:06:10  and whatever.  We have reasons to believe, based upon

16:06:13  our investigation, that there may well be potential

16:06:17  motions that we could bring to suppress the warrants

16:06:19  based upon the conduct of the government in the past.

16:06:22  It may be that we get the applications and make a

16:06:25  determination that we would not pursue that.  But in

16:06:28  order to make that determination, we have to have that

USA VS. J. BONGIOVANNI & P. GERACE, JR.

information.  And the other problem and this is a --
this is the ongoing problem of practicing in this court
where as time goes by, every fundamental right and every
procedural right we have gets whittled away more and
more.  So the government comes to you with an
application for a search warrant.  They write it.  You
don't write it.  The defense doesn't write it.  They can
write applications for search warrants now relying on
the rationale they use now so applications for search
warrants will never be turned over to defense counsel if
they write them the right way.  And it seems to me there
is a penalty they have to pay if they try to make the
claims over and over again when they are directly in
confrontation with fundamental rights under the Fourth
Amendment.  And if they want to write things like that
about other investigations or something they are afraid
of happening, there are many ways you could do it.
Either a separate sealed affidavit or something that
protects the defendant's right to get as much
information as he or she can to protect their own rights
with regard to search warrants.  And if the government
does not choose to do that, that's on them.  If they
don't want to turn it over this over, they should
concede that the evidence should be suppressed.  That is

USA VS. J. BONGIOVANNI & P. GERACE, JR.

the option that they should have that we just won't use the evidence if it's got to be turned over. And if the Court determines that it's going to be turned over just for eyes only, we don't object to that. But the eyes only would include our client, not just the attorney. We have to, obviously, be able to discuss this.

MAGISTRATE JUDGE ROEMER: So you disagree with Mr. LaTona.

MR. HARRINGTON: I do. Our clients have to be able to see it, because they have to participate with us in the preparation of the motion. And the protective order would apply to them, too and, I mean, there is no reason in the record here that we have that Mr. Bongionvanni would not comply with any direction like this. But, Judge, the difficulty here is that, especially with search warrant suppression motions, is that with *Leon* and other decisions that have come along, it gets harder and harder to make constitutional challenges to search warrants. Now, whether Jim Harrington agrees with the rationale, that doesn't really matter. It's up to you and up to your higher courts to determine whether those decisions are the right decisions. And that is what you have to follow. But, the fundamental principle of the Fourth Amendment

USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:34:51  2  is that we need to have the opportunity to make whatever

16:34:56  3  arguments we can. Whether we fall short or not is not

16:34:59  4  the issue here. The issue is what are we going to

16:35:03  5  receive and when are we going to receive it. And why

16:35:08  6  does the government fight so hard about this issue? Why

16:35:12  7  are they so hell bent on denying an individual facing a

16:35:18  8  severe sentence in prison if he is convicted with being

16:35:21  9  able to argue his fundamental rights that are written in

16:35:24  10  the Constitution? It's not only implausible, it's

16:35:29  11  really shameful. Thank you.

16:35:32  12        MAGISTRATE JUDGE ROEMER: Thank you, sir.

16:35:33  13  Mr. Tripi?

16:35:34  14        MR. TRIPI: Yes, Judge. The defendants

16:35:40  15  concede in their filings that defense doesn't have a

16:35:43  16  right to per se inspect search warrant affidavits. So

16:35:46  17  we agree on that. And, obviously, it takes a

16:35:51  18  case-by-case basis. Now, in this -- in these particular

16:35:55  19  cases, the two, what I'll characterize for purposes of

16:36:00  20  this discussion, main search warrants are 195154, the

16:36:04  21  Bongiovanni search warrant at 85 Alder Place; and

16:36:10  22  195303, which was under 99 Aero Drive and the Lexor Lane

16:36:16  23  residence relating to Mr. Gerace. This Court issued

16:36:21  24  those warrants. So, we're not in a situation where you

16:36:26  25  don't know the scope, the direction and the vast amounts

USA VS. J. BONGIOVANNI & P. GERACE, JR.

of information that was supplied in conjunction with those warrants in how unsealing that information or making it available to defense attorneys would impact a number of people and impact ongoing investigations. We've been very clear in every setting that the investigation is ongoing. And you know from your review of those affidavits how robust that investigation is. So when I say those things, I'm not saying them in a vacuum that this Court has no context for comparison. You have hundreds and hundreds of pages of materials and attachments appended to those exhibits. I will go into a little bit of detail for purposes of the discussion. But on the outset, I'll rely, principally, on my briefing on standing. The point was to walk through the analysis: Standing, materiality, and then what is the remedy. That was the purpose of the briefing in going through that exercise. We've heard two sets of counsel, who I respect, say "Mr. Tripi knows," essentially, whose phone is whose or whose premises we searched at 999 Aero Drive. What the government believes and what the government alleges in an indictment is no substitute for a defendant clearly and consciously asserting their Fourth Amendment rights. And to varying degrees, that wasn't done here. Despite the government's briefing,

USA VS. J. BONGIOVANNI & P. GERACE, JR.

replies didn't come that made it any clearer.  If the standard was what the government believes, then we would be at a sentencing right now.  We wouldn't be talking about disclosure issues.  So you can't use what the government believes when it benefits you and then not when it doesn't.  You can't use constitutional rights as shields and swords.

But if we look at these two affidavits, and these are the main affidavits, the other ones are incorporated in by reference to the other ones.  Referring to the Bongiovanni affidavit, because it's how I have it in my notes here, 195154, I would say there is over a dozen of sources in that affidavit, over a dozen.  You know how useless that would be if we redact all of that information to the defense?  There is no way to appropriately shield the people, or to put forth the information without identifying the people.  And, of course --

MAGISTRATE JUDGE ROEMER:  Well, that really is your argument, right?  The fact you say it's useless to the defendant, the defendant don't care about that.  They say, "I'll take whatever I can get."  Your point is there is no way to redact it without revealing the identities of the people.

1    USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:40:09  2    MR. TRIPI:  And redaction was going to the

16:40:11  3  last point I was going to address.  But, yes, you have

16:40:14  4  over a dozen sources.  I'm approximating, Judge.  But,

16:40:18  5  then there is other evidence outlined in there.  I'll

16:40:21  6  point to some of it.  There is references, as you know,

16:40:23  7  to text messaging between Gerace and Bongiovanni.  The

16:40:27  8  raw data has been supplied in discovery and it's

16:40:33  9  referenced in the indictment.  You don't need that to

16:40:35  10  prepare.

16:40:36  11    MAGISTRATE JUDGE ROEMER:  You're saying the

16:40:38  12  actual text messages themselves?

16:40:39  13    MR. TRIPI:  The actual text messages have

16:40:42  14  been provided, and some of those are referenced right in

16:40:54  15  the indictment.  So when you're evaluating for

16:40:56  16  materiality, search warrant affidavit is not material

16:41:00  17  for that type of information.  They have the raw

16:41:02  18  materials in discovery.  Search warrant affidavit

16:41:06  19  references a DEA-6 written by Bongiovanni, November 6th,

16:41:11  20  2009.  They have it, produced in discovery, that

16:41:16  21  document.  And it's also referenced in the indictment.

16:41:19  22  When you evaluate materiality, you don't need the search

16:41:22  23  warrant affidavit for that.  There were inner office

16:41:28  24  memos drafted by Bongiovanni in November of 2018,

16:41:32  25  December 2018 and January of 2019, DEA internal memos.

                    USA VS. J. BONGIOVANNI & P. GERACE, JR.
16:41:37    2   All of those were produced in discovery and are
16:41:40    3   referenced in the indictment.  In fact, they form the
16:41:43    4   basis of several of the obstruction counts; three to be
16:41:46    5   exact.  There is an OIG interview of Bongiovanni
16:41:51    6   referenced in that affidavit from March 29th, 2019.
16:41:55    7   They have the ROI report of information, DOJ OIG
16:42:00    8   generated, and that interview is referenced in the
16:42:06    9   indictment.  Defendant is alleged to have made false
16:42:09   10   statements during that interview.  So, those types of
16:42:13   11   things, they already have.  The rest of the affidavit,
16:42:18   12   you'll know when you review it, and you consider what
16:42:22   13   we're asking here, talks about the scope, the ongoing
16:42:26   14   nature of the investigation, other subjects and targets
16:42:29   15   who are not yet charged, and, of course, specifically
16:42:32   16   identifies more than a dozen people who are sources of
16:42:37   17   information, informants or potential trial witnesses.
16:42:42   18   So, we've made our compelling showing.  It's there.  And
16:42:48   19   they haven't made a materiality showing.  The law is
16:42:53   20   clear.  I want to make a *Franks* motion is not
16:42:56   21   materiality.  Materiality is viewed from the
16:43:00   22   government's case in chief and the trial evidence.  They
16:43:02   23   have it.  And anyone that is called as a witness, they
16:43:05   24   will be able to cross examine.  In fact, the affiant,
16:43:09   25   Special Agent Curtis Ryan, if he is called as a witness

USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:43:13  2   whenever trial is, his affidavit will be on the table

16:43:15  3   for disclosure or protective order at that time when

16:43:19  4   we're at district court with a firm trial date.  And if

16:43:22  5   we have to fight about redactions then for people that

16:43:25  6   are not going to testify or what have you, we can do it

16:43:28  7   at that time.

16:43:31  8              MAGISTRATE JUDGE ROEMER:  What about

16:43:35  9   attorney and client's eyes only?  Why is that no good?

16:43:37  10             MR. TRIPI:  That won't be any good because

16:43:40  11  we've already had a mistake.  We've already had a

16:43:42  12  mistake with the protective order.  And we all make

16:43:46  13  mistakes.  Everyone is trying their level best.  We put

16:43:50  14  some information in the hands of the defense.  It ended

16:43:54  15  up on the public docket and this Court had to take

16:43:58  16  corrective measures.  That can't happen here.

16:44:01  17             MAGISTRATE JUDGE ROEMER:  And this is,

16:44:02  18  probably, you will consider a silly question, but I

16:44:04  19  always ask it of the government.  You did find evidence

16:44:09  20  at these locations that you're going to use at trial,

16:44:11  21  right?

16:44:12  22             MR. TRIPI:  Yes.

16:44:13  23             MAGISTRATE JUDGE ROEMER:  Because I have had

16:44:14  24  it where I've asked the government, we're fighting about

16:44:17  25  this, do you actually have evidence you're going to use

1      USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:44:19   2   and they didn't.

16:44:21   3        MR. TRIPI:  Yes.  We're not wasting our

16:44:23   4   time.  As laid out in the indictment, a box of DEA

16:44:26   5   materials regarding the file that the bribes were

16:44:29   6   allegedly being paid were recovered in Bongiovanni's

16:44:34   7   basement.  So we're definitely introducing evidence from

16:44:38   8   each of the searches.

16:44:39   9        MAGISTRATE JUDGE ROEMER:  And, what, you

16:44:40  10   have got information from Pharaoh's, is that in the form

16:44:43  11   of business records or something?

16:44:44  12        MR. TRIPI:  Some business records there.

16:44:46  13   There is a little bit of drug paraphernalia.  Drug labs

16:44:49  14   have been provided regarding the drug evidence from a

16:44:52  15   locker room area, I believe.

16:44:55  16        MAGISTRATE JUDGE ROEMER:  And what about his

16:44:57  17   residence?

16:44:58  18        MR. TRIPI:  There is some documents as well

16:45:00  19   that we would utilize.

16:45:01  20        MAGISTRATE JUDGE ROEMER:  Okay.  I know it

16:45:03  21   sounds silly, I've had it, no, we're not using any of

16:45:06  22   the evidence and why are we here.

16:45:08  23        MR. TRIPI:  I understand, your Honor.  And

16:45:09  24   all of the stuff that has been found, there have been

16:45:12  25   reports itemizing it, photographs provided, and we can

1    USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:45:16    2    make any physical items available for inspection as

16:45:16    3    well.

16:45:21    4    The search warrant, 19M1065, if I could just

16:45:29    5    --

16:45:29    6    MAGISTRATE JUDGE ROEMER:  Let's go back to

16:45:30    7    Mr. Bongionvanni and the phone.  Do you not know which

16:45:34    8    phone is his or --

16:45:36    9    MR. TRIPI:  We have a belief.  We have --

16:45:39    10    MAGISTRATE JUDGE ROEMER:  You want a

16:45:40    11    statement from him, "this is my phone."

16:45:41    12    MR. TRIPI:  Correct.  And if we're correct,

16:45:43    13    then he satisfied the standing part for sure.  And Mr.

16:45:50    14    Harrington is right, I do have a belief, but the law, I

16:45:53    15    would suggest, requires him to say, "this is my phone,

16:45:56    16    I'm not moving against these other devices," or just

16:45:59    17    tell us which one he is moving under.

16:46:08    18    You know, and the defense hasn't even

16:46:11    19    scratched the surface.  Neither have argued materiality.

16:46:15    20    I think Mr. Harrington said a few moments ago there are

16:46:18    21    potential motions we could make if we had this

16:46:22    22    information.  Submit that to you by sealed affidavit.

16:46:26    23    Lay out for you what the materiality is if they don't

16:46:30    24    want to tell me.  They haven't attempted to do any of

16:46:33    25    that.  They just want it because they want it because

USA VS. J. BONGIOVANNI & P. GERACE, JR.

it's helpful.  Sure it's helpful.  It will identify a bunch of witnesses early and then we'll struggle to get those people potentially to the stand.

Turning to the Gerace 195303, I'll focus on that because that is the main one.

THE COURT:  It's more helpful if you tell me the locations.

MR. TRIPI:  Locations 9 99 Aero Drive and 5154 (sic) Lexor Lane.

MAGISTRATE JUDGE ROEMER:  Okay.

MR. TRIPI:  That one has even more witnesses in it than the Bongiovanni.  There is some overlap, but there are some differences who would be identified by name, by content.  Defense spent a lot of time and energy on the person, the ex-wife, who outed herself in the paper.  Not a person who is among any of the witnesses who contributed to probable cause for these search warrants.  So they wasted some paper there.

Again, the government's interest is compelling.  Its evident from the warrants that you reviewed and sealed the fist time, and the *Gerena* case was cited for the proposition that, by the government, that the defense can't rely on the government's allegations.  That is clear law.  We could have cited a

USA VS. J. BONGIOVANNI & P. GERACE, JR.

dozen other cases or more for that proposition. The
language used by Mr. LaTona, "colorable claim," that is
not in the opinion, that is Mr. LaTona talking. That is
what he wants you to think the case supports. The
defendants have to assert their constitutional rights.
That is clear Hornbook law. That is clear. Hasn't been
done here. Unless you want to hold what is said by a
shareholder, that the gentlemen's club located at 999
Aero Drive is and has been operated by Pharaoh's GC,
Inc., a corporate entity, that is what he said. "Since
April 2019, I've been the sole shareholder in that
corporate entity. And I'm in the process of acquiring
title." That is enough. I'm in the process of trying
to lose weight, I haven't. It's irrelevant. So, then
the law that I cited with respect to shareholders
applies, *Chuang*, 897 F. 2d 646, the Court held that a
bank officer had no expectation of privacy in another's
work space notwithstanding his operational control over
the bank. So, establish standing first in the 99 Aero
Drive, he has it. But the sum total of Gerace's
territorial claim is that the government's argument is
ludicrous, that argument shouldn't carry the day in any
court in America on any day in America. That is the
My-Cousin-Vinny-everything-this-guy-said line. That

USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:50:41  2  shouldn't fly.

16:52:04  3        The Gerace application incorporates the

16:52:07  4  Bongiovanni affidavit that we just discussed,

16:52:11  5  incorporates search warrants issued for two other

16:52:13  6  locations, which I won't identify in this setting, which

16:52:18  7  are identified clearly in the application.  Incorporates

16:52:20  8  another search warrant for a Yahoo account relates to

16:52:27  9  Bongiovanni.  And incorporates the indictment which is

16:52:29  10  publically available.  There has not been a sentence

16:52:33  11  uttered regarding the materiality other than the fact

16:52:36  12  that it would help them learn the witnesses, even if

16:52:40  13  redacted, and all of the other things relate to the

16:52:42  14  nature and scope of the government's investigation.

16:52:45  15  Again, all of the underlying information from the

16:52:48  16  searches has been provided.  All of the items seized

16:52:51  17  from the searches referenced in the attachments, so the

16:52:55  18  other searches for other search warrants, that evidence

16:53:00  19  has been provided so they won't be coming out of left

16:53:03  20  field when this is set for trial.  And that was some of

16:53:07  21  the information that made its way into a public filing,

16:53:09  22  your Honor.

16:53:14  23        So, the *Abuhamra* case, I mean, I'm not going

16:53:18  24  to belabor that.  I think you were rightly the law clerk

16:53:22  25  for Judge Arcara in that decision.  It was a bail

USA VS. J. BONGIOVANNI & P. GERACE, JR.

setting and the defendant had no opportunity to meet the government's allocutions in the bail setting; totally distinguishable.  They have a whole superseding indictment to review our allegations here.  They are going to get -- they already have the underlying evidence seized from these warrants and warrants that were incorporated into these warrants and they are going to get the witness statements as *Jencks* Act material before trial when that protective order gets nailed out down the road once we have a date certain from Judge Sinatra and we know where we're going with this.  Again, "I want to make a *Franks* motion," does not establish materiality.

That is all I have.  Thank you, Judge.

MAGISTRATE JUDGE ROEMER:  Thank you, Mr. Tripi.

Mr. Harrington, you want to reply?

MR. LATONA:  Judge, I made a comment to you before in my argument about the government making elections when they file applications for search warrants.  And Mr. Bongionvanni (sic) just told us that he had 12 sources that are in this application for a search warrant.

MAGISTRATE JUDGE ROEMER:  Mr. Tripi.

USA VS. J. BONGIOVANNI & P. GERACE, JR.

MR. HARRINGTON: Tripi, I'm sorry. Mr. Tripi. What does that tell us? Does that tell us that the application was weak? Does that tell us that he had to overdo it? They make certain choices when they do things. This is an example of what I'm talking about. Did you need 12 sources in order to get a search warrant to search somebody's house where you believe that the person has evidence in the house? You need 12 sources to do that? And if you have 12, take the names out of it for now. The names are not really the issue that we're worried about now. We need to know what the factual premise of it is. And Mr. Tripi, very cleverly, tried to tell you that we have discovery which are things that were attached to or mentioned in the search warrant affidavits. So what? How do I know that what is in the search warrant affidavit, other than what he just told me. I don't know the text messages were there. I don't know the memorandum or anything else was in there. I don't know. I have them, but I didn't know they were in the application. That is not fair. I would like to have Thomas Jefferson and the other people who wrote the amendments to the Constitution sit here and listen to this.

Materiality, you got a search warrant, you

USA VS. J. BONGIOVANNI & P. GERACE, JR.

come to my house, you take evidence. I want to suppress it because I believe that you acted improperly. So show me what you base that on and let me make my motion and rise or fall with the Court. It's material. You want to use it as evidence. I've satisfied materiality. And he says, oh, guess what, at the time of trial with the Jencks Act, we'll turn it over to you then. For what? For cross examination of witnesses. What happens if he turns it over then and we say, you know, what we said back in June to Judge Roemer has been borne out now that we've got this. What do we say then? We say to the trial judge, we say to Judge Sinatra, and guess what, Judge, can you reopen this and give us a suppression hearing when you got a trial scheduled in two weeks or a month or send it back to Judge Roemer? Do you think that is going to happen? It's not going to happen. And it's wrong and this is a horrible slippery slope that we're on the path toward.

And Mr. Tripi threw a shot at me that there was a mistake made before. Apparently the premise of that is that I can't be trusted. All right. And he couches it with, well, I'm not really saying anything. But that is what he is saying. And he pointed it out to me when my office made the mistake, and I take

USA VS. J. BONGIOVANNI & P. GERACE, JR.
responsibility for that.  I did.  And as soon as he told
me, what did I do?  I went to you to correct it.  Okay?
And it was a mistake.  And I'm pledging to you that I
may make other mistakes.  But they are not going to be
intentional, and, especially, with something as
sensitive as this where if you issue another protective
order with this, we will make sure that it doesn't
happen again in our office.  And we've already had a
meeting about it in our office to make sure it doesn't
happen again.  And I fall on my sword.  I admit anything
I do wrong.  But Mr. Tripi is implying now I can't be
trusted.  You make that decision.  You've known me 20 or
30 years, and you make the decision of whether I can be
trusted.

But, Judge, Mr. Tripi's arguments, it seems
to me of all of the information that we have has nothing
whatsoever to do with whether we can challenge the
search warrant.  And if the search warrant application
is 100-pages long, there may be one sentence, there may
be one page, there may be 10 items rather, 100 pages of
items that lead to a suppression motion, but we have to
have it in order to know that.  Thank you.

MAGISTRATE JUDGE ROEMER:  Thank you, sir.
Mr. LaTona?

1    USA VS. J. BONGIOVANNI & P. GERACE, JR.

16:58:51   2    MR. TRIPI:  Judge, can I just respond?

16:58:53   3    MAGISTRATE JUDGE ROEMER:  Let's do it at one

16:58:55   4    time.

16:58:55   5    MR. TRIPI:  I wasn't implying Mr.

16:58:58   6    Harrington's integrity at all.  I said it was a mistake.

16:59:01   7    That is all it was.

16:59:03   8    MR. LATONA:  Judge, if I can, Mr. Tripi made

16:59:06   9    an allegation that I basically fabricated an issue in

16:59:11   10   *Gerena* talking about a "reasonable colorable claim."  I

16:59:13   11   want to read from the decision itself.  This is at 662 F

16:59:21   12   Supp page 1238, and I quote, "A defendant establishes a

16:59:28   13   colorable standing claim by alleging sufficient facts to

16:59:32   14   create a reasonable impression with the court of the

16:59:37   15   objective rationality (under the above standard) of his

16:59:45   16   or her professed subjective privacy allegations.  If the

16:59:50   17   government reasonably contests such a claim, the

16:59:54   18   defendant is entitled to a hearing where he or she is

16:59:58   19   required to prove facts necessary to support his or her

17:00:03   20   professed subjective expectations and the overall

17:00:06   21   reasonableness of his or her position."  Now, there is a

17:00:11   22   footnote 24 when it talks about the government

17:00:15   23   reasonably contests such claim.  Footnote 24 of the

17:00:20   24   court's opinion:  "As stated, the government's objection

17:00:25   25   must be reasonable.  The Court would not permit the

USA VS. J. BONGIOVANNI & P. GERACE, JR.

government to contest standing solely for the purpose of

making defendants go to the trouble of proving standing

when, in fact, no serious question of standing exists.

The government, however, has in no way attempted to

harass the defendants in this matter."  This court says

that when they are trying to contest an issue about

which the facts are clear, that is harassment.

          Number two, he claimed that we made no

showing regarding materiality.  I invite your Honor's

attention to page five of our Reply Memorandum, which

quotes Rule 16 about any item material to preparing the

defense.  I also cite an Eighth Circuit case that

acknowledges the following search warrants are at the

center of pretrial suppression hearings and suppression

issues often determine the outcome of criminal

prosecutions.  Clearly anything regarding a defendant's

exertion of his Fourth Amendment rights falls within the

materiality portion of that section.  The other thing

about an "eyes only," and I just want to clarify, if I

wasn't articulate.  "Eyes only" means the document

itself.  I think the defense lawyer either in any sort

of an order should have the ability to interview

individuals, maybe his client, maybe third parties, who

might have information as to the truth or falsity of

USA VS. J. BONGIOVANNI & P. GERACE, JR.

17:02:05   what's in those allegations. I'm just talking about the

17:02:09   document myself. Now, he went on about ongoing --

17:02:13        THE COURT: So you're saying only you would

17:02:15   see the document, but you could discuss it with your

17:02:18   client?

17:02:18        MR. LATONA: Exactly, or any other person

17:02:21   that would have material evidence that could be relevant

17:02:24   to further motions or that should be brought on behalf

17:02:27   of the client. But unless we investigated, we're not

17:02:30   going to know. You know, this ongoing investigation,

17:02:33   I've cited a number of cases that talk about when it

17:02:36   goes that long, forget about it. Okay? I mean, they

17:02:40   had ample opportunity to interview anybody they wanted,

17:02:43   put them in the grand jury or indict anybody that they

17:02:46   claim did anything wrong. I'm doing investigations and

17:02:50   some of the cases I cited say that you could say it

17:02:54   about any case. In any case, you know, there could be

17:02:58   witness intimidation. You know, Judge, it doesn't fly

17:03:01   and it doesn't fly at this stage in the litigation. If

17:03:05   they are going to act in good faith, they better provide

17:03:15   specific allegations justifying what it is they want to

17:03:20   keep secret, and they should present it to this Court

17:03:23   and they should have any item that purportedly

17:03:27   corroborates what they claim as well. You talk about a

1      USA VS. J. BONGIOVANNI & P. GERACE, JR.

17:03:31  2  text message, give it to the Court to see, A, if it

17:03:34  3  exists or not, okay?  Or two, what it indicates, what it

17:03:38  4  says.  And the situation, we made it very clear, Judge,

17:03:43  5  that we were not relying only on governmental

17:03:46  6  investigations and on standing, that was very clear from

17:03:50  7  *Gerena*, but there is other information and material that

17:03:52  8  we put forth, and, basically, that is the situation that

17:03:55  9  we have in terms of responding to what Mr. Tripi had to

17:03:59  10  say.

17:03:59  11      MAGISTRATE JUDGE ROEMER:  Thank you, sir.

17:04:01  12      MR. TRIPI:  Well, now I made a mistake

17:04:02  13  because the words "colorable" and "claim" were in the

17:04:07  14  *Gerena* opinion.  So fair point by Mr. LaTona on that.

17:04:10  15  But that said, our standing arguments remain.  He still

17:04:16  16  hasn't gave specific allegations that would rise to the

17:04:21  17  level of a Fourth Amendment.  And *Gerena* is only

17:04:24  18  persuasive authority anyway.

17:04:28  19      What he just proposed was that defense

17:04:33  20  counsel gets to read the sealed applications under a

17:04:36  21  protective order and then they could verbally transmit

17:04:39  22  it to their client.  That is totally and wholly

17:04:41  23  inadequate.  And the materiality argument on page five

17:04:51  24  is less than one page, it cites the conclusory phrasing

17:04:56  25  of Rule 16(a)(1)(E), calls the government's position

                    USA VS. J. BONGIOVANNI & P. GERACE, JR.

17:05:02   2  ludicrous and then cites to an Eighth Circuit case, *In*

17:05:07   3  *Re Search Warrant for the Secretarial Area*, and it

17:05:10   4  plucked one quote out of that opinion.  Want to know

17:05:13   5  what that case was about?  It was, first, in that case,

17:05:18   6  the circuit affirmed the sealing and the district

17:05:24   7  court's decision to keep the search warrant materials

17:05:28   8  sealed.  It addressed the newspaper's First Amendment

17:05:31   9  right of access claim.  It said that the right of access

17:05:43  10  cedes to a government compelling interest, which is what

17:05:45  11  we have here.  And, in that case, the government

17:05:49  12  demonstrated that continued sealing was warranted due to

17:05:55  13  ongoing investigation.  The circuit, Eighth Circuit,

17:06:03  14  said, "These documents described in considerable detail

17:06:13  15  the nature, scope and direction of the government

17:06:16  16  investigation and the individuals and specific projects.

17:06:21  17  Government investigation would be severely compromised

17:06:26  18  by the unsealing."  That is exactly what would happen in

17:06:30  19  this case.  Thank you.

17:06:32  20          MAGISTRATE JUDGE ROEMER:  Okay.  I'm going

17:06:33  21  to go ahead and issue my decision.  Defendant Peter

17:06:37  22  Gerace moves to unseal the applications of federal

17:06:40  23  warrants to search his residence at 5145 Lexor Lane,

17:06:44  24  Clarence, New York on November 29th, 2019, and February

17:06:50  25  26th, 2021; a federal warrant to search Pharaoh's

USA VS. J. BONGIOVANNI & P. GERACE, JR.

Gentlemen's Club, 999 Aero Drive Cheektowaga on November 29th, 2019; and a federal warrant to search a cell phone seized from him on February 28th, 2021.  Defendant Joseph Bongiovanni moves to unseal the applications for federal warrants to search him and his residence at 85 Alder Place, Kenmore, New York on June 6th, 2019; and a federal warrant to search electronic devices seized from him and his residence that same day.  The government contends that Bongiovanni has not established standing to challenge the search of the device, and Gerace has not established standing to challenge a search of Pharaoh's Gentlemen Club.  Regardless of whether standing has been established, the Court finds no basis to grant the defendants' motion to unseal the applications for the federal search warrants issued in this case.  The sealed warrant applications provide extensive and detailed information about the government's ongoing investigation of this matter, including information regarding cooperating witnesses who testified before the grand jury.  The government represents that even if the witness' names were redacted, sufficient information would be named to identify them.  The government also proffers that one ongoing aspect of the investigation is witness

                    USA VS. J. BONGIOVANNI & P. GERACE, JR.
17:08:44    2   intimidation.  Defendants will receive information about
17:08:50    3   government witnesses, including their statements and
17:08:52    4   other impeachment material prior to the trial and in
17:08:55    5   accordance with the district court's scheduling order.
17:08:58    6   In fact, the government is not required to disclose any
17:09:01    7   of the witnesses or the identity of the informants at
17:09:05    8   this stage.  The proceeding, *Roviaro v. United States*
17:09:10    9   353 U.S. 53, 1957, while defendants argue that unsealed
17:09:27   10   applications are necessary to file suppression motions,
17:09:30   11   the court may conduct an in camera review of the search
17:09:34   12   warrant applications should the defendants move to
17:09:36   13   suppress any evidence based on the insufficient or lack
17:09:39   14   of probable cause in the federal search warrants.
17:09:43   15   Moreover, there is no evidence before the Court that
17:09:57   16   suggests that the warrants were based on deliberately or
17:10:09   17   recklessly false or misleading information.  Thus, the
17:10:13   18   Court finds any interest that the defendants have in
17:10:16   19   reviewing the sealed search warrant applications is
17:10:19   20   outweighed by the government's significant interest in
17:10:30   21   protecting the integrity of the investigation and the
17:10:32   22   identity of the informants.  See *United States v. Pirk*,
17:10:37   23   282 F Supp 3d, 585 Western District of New York 2017.
17:10:43   24   *United States v. Saltares*, 301 F. Supp 2d 305, Southern
17:10:48   25   District of New York, 2004.  There the Court denied

USA VS. J. BONGIOVANNI & P. GERACE, JR.

defendant's request to unseal search warrant affidavits
that determine whether the warrant was subject to
probable cause challenge because the government had a
high interest in protecting informants' identity and
there was no showing that the affidavits were material
to the defense.

The Court notes that with respect to the
search warrant for the cell phone seized from Gerace on
February 28th, 2021, the government has provided the
defendant with a redacted copy of the application,
affidavit and attachments.  All remaining aspects of the
defendants' motion to unseal the warrant applications
are denied.

Now, I note that the pretrial motions are to
be filed by July 7th.  Mr. Harrington, you filed motions
already, but I believe you said you wanted the
opportunity to file additional motions if you thought
necessary, correct?

MR. HARRINGTON:  Yes, Judge.

MAGISTRATE JUDGE ROEMER:  So, you'll have
them filed by July 7th.  All right?

Mr. LaTona?

MR. LATONA:  Your Honor, I talked to Mr.
Daniels.  Judge, we're going to appeal your ruling.  I

USA VS. J. BONGIOVANNI & P. GERACE, JR.

17:12:10  presume we'll get it in writing.

17:12:12          MAGISTRATE JUDGE ROEMER:  No, you can order

17:12:14  a copy of the transcript and then you can appeal.

17:12:17          MR. LATONA:  That's fine, Judge.  What we're

17:12:19  requesting is, until Judge Sinatra ultimately decides

17:12:23  our appeal, we would like to have the motion deadline

17:12:27  and motion schedule put in abeyance so that we can

17:12:32  include all materials that may be forthcoming from Judge

17:12:36  Sinatra, maybe not, but we would like to put everything

17:12:38  on hold regarding scheduling.

17:12:40          MR. TRIPI:  I would like to proceed on the

17:12:43  schedule that we have.  And if later the district court

17:12:48  disagrees with this Court, I'm sure this Court or Judge

17:12:53  Sinatra will give additional time to file motions

17:12:55  directed at the search warrants if they are able to

17:12:58  prevail before the district court.

17:13:00          MR. LATONA:  Well, he is not here and I

17:13:02  don't know why we should read in things.  I think it's

17:13:06  reasonable.

17:13:06          MAGISTRATE JUDGE ROEMER:  I understand your

17:13:08  position and I'll deny your applications.  Push forward

17:13:11  with your motions.  If at some point he disagrees with

17:13:14  me and you think there is a basis for filing additional

17:13:17  motions, we'll certainly make room for that to happen.

```
          1          USA VS. J. BONGIOVANNI & P. GERACE, JR.
17:13:19  2  This case is already kind of old and I want to keep
17:13:22  3  pushing it forward.  Okay?
17:13:24  4          MR. TRIPI:  Thank you, Judge.
17:13:27  5          MR. HARRINGTON:  Judge?
17:13:27  6          MAGISTRATE JUDGE ROEMER:  Yes, sir.
17:13:28  7          MR. HARRINGTON:  With respect to Mr.
17:13:29  8  Bongiovanni's motions for his cell phone?
17:13:32  9          MAGISTRATE JUDGE ROEMER:  Yes.
17:13:32 10          MR. HARRINGTON:  Are you denying him his
17:13:34 11  motion for his own cell phone seeing the fact that there
17:13:39 12  is question about which one there is.  We can clear that
17:13:41 13  up very quickly.  He, Mr. Tripi, has not turned over
17:13:46 14  anything like he has for Mr. Gerace, like he has with
17:13:50 15  respect to the cell phone, and, apparently, has no
17:13:52 16  intention of doing so.
17:13:53 17          MR. TRIPI:  It's different because the
17:13:55 18  search warrant that you've ordered remains sealed is
17:14:00 19  incorporated into the cell phone search warrant
17:14:03 20  affidavit, so we don't intend to provide that because it
17:14:08 21  would provide the larger affidavit.
17:14:12 22          MAGISTRATE JUDGE ROEMER:  Okay.  Yes, so
17:14:13 23  you're correct, Mr. Harrington, I'm not ordering that be
17:14:16 24  disclosed.  Okay.  Anything else, Mr. Tripi?
17:14:19 25          MR. TRIPI:  No, your Honor.
```

1                USA VS. J. BONGIOVANNI & P. GERACE, JR.

17:14:19    2              MAGISTRATE JUDGE ROEMER:  Mr. LaTona?

17:14:20    3              MR. LATONA:  No, Judge.

17:14:21    4              MAGISTRATE JUDGE ROEMER:  Mr. Harrington?

17:14:23    5              MR. HARRINGTON:  No.

17:14:23    6              MAGISTRATE JUDGE ROEMER:  Have a good rest

17:14:24    7    of the day.

8                          *    *    *

9                    CERTIFICATE OF REPORTER

10

11       I certify that the foregoing is a correct transcript

12    of the record of proceedings in the above-entitled

13    matter.

14

15    S/ Karen J. Clark,   RPR

16    Official Court Reporter

17

18

19

20

21

22

23

24

25