```
                 UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF NEW YORK


  UNITED STATES OF AMERICA,    *        Docket Number:
                                         19-CR-00227-JLS-MJR-3
                               *
                               *         Buffalo, New York
               v.              *         July 22, 2021
                               *         2:03 p.m.
                               *
  PETER GERACE, JR.,           *         ORAL ARGUMENT
                               *
              Defendant (3).   *
                               *
  *  *  *  *  *  *  *  *  *  *  *  *  *


                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                 UNITED STATES DISTRICT JUDGE



  APPEARANCES:


  For the Government:          JAMES P. KENNEDY, JR.,
                               UNITED STATES ATTORNEY,
                               By BRENDAN T. CULLINANE, ESQ.,
                                  JOSEPH M. TRIPI, ESQ.,
                               Assistant United States Attorney,
                               Federal Centre,
                               138 Delaware Avenue,
                               Buffalo, New York  14202,
                               Appearing for the United States.



  For the Defendant:          HOGANWILLIG, PLLC,
                               By STEVEN M. COHEN, ESQ.,
                               2410 North Forest Road,
                               Suite 301,
                               Getzville, New York  14068.



  The Courtroom Deputy:       KIRSTIE L. HENRY
```

```
 1   Court Reporter:              BONNIE S. WEBER,
                                  Notary Public,
 2                                Robert H. Jackson Courthouse,
                                  2 Niagara Square,
 3                                Buffalo, New York  14202,
                                  Bonnie_Weber@nywd.uscourts.gov.
 4

 5              Proceedings recorded by mechanical stenography,
                     transcript produced by computer.
 6

 7                   (Proceedings commenced at 2:03 p.m.)

 8

 9              THE CLERK:  All rise.

10              The United States District Court for the Western

11   District of New York is now in session.  The Honorable John

12   Sinatra presiding.

13              THE COURT:  Please be seated.

14              THE CLERK:  Court calls case number 19-CR-227, United

15   States versus Peter Gerace, Jr.  This is the date set for oral

16   argument.

17              Counsel, please state your appearances.

18              MR. TRIPI:  Joseph Tripi and Brendan Cullinane for the

19   United States.

20              Good afternoon, Judge.

21              MR. COHEN:  Stephen M. Cohen, appearing for

22   Mr. Gerace.

23              Present with me in the courtroom is Harmony Healey,

24   who is an attorney with my office, working on the case.  She's

25   not admitted in this court yet, but will be tomorrow, I believe.
```

1          **THE COURT:**  Okay.

2          Good afternoon, everyone.

3          **MR. TRIPI:**  Good afternoon, Judge.

4          **THE COURT:**  Mr. Tripi, you were a little bit hard to

5   hear the last time around, so it's up to you about the mask, but

6   it's easier to hear if it is off.

7          If you need to keep it on, that's okay, too.  Just

8   bring the microphone closer.

9          **MR. TRIPI:**  Thank you, Your Honor.

10         **THE COURT:**  We're here today for argument on

11  Mr. Gerace's motion to vacate my April 29, 2021 order enjoining

12  his State court lawsuit.

13         I studied the papers and the case law, so I don't need

14  a full summary of the arguments.  Instead, let's get right into

15  it with questions that I have for each side.

16         And I assume -- I guess, I'll ask this of Mr. Tripi,

17  that this is an open courtroom today.  I'm assuming you're

18  comfortable proceeding that way?

19         **MR. TRIPI:**  Yes, Judge.

20         **THE COURT:**  All right.  So I guess to both sides, just

21  be mindful of that fact.

22         And I know we have some arguments in this case that

23  were made under seal, so we have to be mindful of the fact that

24  that we have an open courtroom here today.

25         At the highest level, Mr. Tripi, what's the basis for

 1  this injunction?

 2       **MR. TRIPI:**  Judge, at the overall level, this

 3  injunction is necessary because the State court proceeding

 4  that -- the State court action that was filed would frustrate

 5  the process here in Federal court.

 6       It would provide the defense with premature discovery,

 7  potentially, by way of potentially depositions and other

 8  discovery, interrogatories, other discovery that would likely

 9  come with the progress of the State civil suit.

10       It's necessary because there is no prejudice to

11  Mr. Gerace.  His State lawsuit would progress after the criminal

12  matter.

13       It's necessary because of the timeline of events.  The

14  timeline of events is very instructive, Your Honor, and I think

15  it's necessary for this court to hear it, because the defense,

16  in their various motions to vacate, made repeated mention of the

17  fact that their lawsuit was filed before Mr. Gerace was charged.

18       So if I could, in answering why this is important, go

19  through the timeline of events that I think is important for

20  this court to hear.

21       On February 1st, 2019, co-defendant Joseph Bongiovanni

22  resigned from the DEA while under investigation.  Prior to his

23  resignation, there were text communications between Gerace and

24  Bongiovanni, wherein Gerace -- this is in the fall of 2018 --

25  wherein Mr. Gerace attempted to indicate to Mr. Bongiovanni that

1    he was under Internal Affairs investigation.

2            In March of 2019, a little over a month after

3    Bongiovanni retired, he was interviewed by the Department of

4    Justice Office of the Inspector General.

5            Generally, that interview pertained to the

6    relationship with Mr. Gerace.  That interview forms the

7    substance of certain false statement charges that made their way

8    into the second superseding indictment.

9            On April 27, 2019, Mr. Gerace entered the country, the

10   United States, from Jamaica.  And upon entering into the United

11   States, his cell phone was seized, searched, pursuant to border

12   search authority, and was returned to him within a matter of day

13   or so -- a couple of days, I believe.

14           In June -- June 6 and 7, 2019, search warrant --

15   Federal search warrants were executed at the residence, on the

16   person, and upon the electronic devices of co-defendant

17   Bongiovanni.

18           On October 31, 2019, Mr. Bongiovanni was indicted.

19   That was a sealed indictment, which became public November 5,

20   2019, whereupon it was unsealed.

21           Importantly, in that initial indictment, Mr. Gerace

22   is -- although, he's not named -- he is referenced as

23   co-conspirator one throughout that initial indictment in

24   November of 2019.

25           He's referenced in relation -- co-conspirator one was

1    referenced in relation to Pharaoh's Gentleman's Club and in

2    several other points throughout that indictment, to include

3    Mr. Gerace's identifiable phone number, and an overt act that

4    related to a voicemail message that he left for Mr. Bongiovanni

5    about whether or not law enforcement could ping cell phones.

6            That exact voicemail repeats itself in the pending

7    second superseding indictment, quoted in his entirety, at Count

8    Two, overt act 27.

9            About a month after that, on December 12, 2019,

10   Federal search warrants were executed at Pharaoh's and at

11   Mr. Gerace's residence in Clarence.

12           That same day, numerous Pharaoh's employees were

13   interviewed at Pharaoh's and around the Pharaoh's premises.

14   That information undoubtably made it's way back in some form or

15   fashion to Mr. Gerace.  And around that time, there was some

16   heavy media coverage as well.

17           Between December 12, 2019, and October of 2020,

18   numerous additional interviews continued.  Some of the

19   individuals' interviewed over the course of the investigation

20   undoubtedly had relationships or associations with Mr. Gerace.

21           And it is certainly reasonable to infer some of the

22   substance of those interviews made its way back to Mr. Gerace.

23           On June 4, 2020, a superseding indictment was charged

24   in this action, adding the name of co-conspirator Michael

25   Masecchia.

1          Mr. Gerace continued to be referenced as an unindicted

2   co-conspirator, co-conspirator one, throughout the superseding

3   indictment.  And, again, additional overt acts referenced him.

4          About four months later, after two indictments and

5   after all that conduct that I have described, Mr. Gerace filed

6   this civil action on October 12, 2020, in State court.

7          On December 9, 2020, Bongiovanni's co-defendant,

8   Masecchia, pled guilty as part of the factual basis of the plea

9   accepted before this court.

10         Masecchia acknowledged that Bongiovanni provided law

11  enforcement sensitive information to Masecchia and to others

12  under Federal investigation, including the names of potential

13  cooperators being part of that law enforcement sensitive

14  information.

15         On February 25, 2021, Mr. Gerace was charged in this

16  second superseding indictment, which contains 18 counts.  That's

17  the relevant timeline, Your Honor.

18         Along the way witnesses have reported being or feeling

19  threatened by Mr. Gerace and/or associates of Mr. Gerace.  Now

20  the lawsuit filed has a clear nexus to the Federal

21  investigation, in our view.

22         And as we've represented previously, it's designed to

23  out witnesses, have a chilling affect on other witnesses and

24  potential witnesses who have already provided information and to

25  circumvent Federal criminal proceed law as it relates to

1   discovery, potentially Grand Jury secrecy, crime victims'

2   rights, as well as the Victims' Rights and Restitution Act.

3           Nothing -- this injunction is important, because if

4   this court doesn't act in the manner in which it has, nothing

5   would prevent more lawsuits from being filed by a man of great

6   means, anytime he identifies a witness or a potential witness or

7   forms a belief that someone is a witness in this action.

8           On that score, this civil suit is filed against

9   indigent women, women the defendant knows or should know are

10  indigent.

11          He makes, as reported at pretrial services, tens of

12  thousands of dollars per month.  So this lawsuit is not a

13  genuine attempt to address the damages for defamation.  It's a

14  tactical ploy to circumvent Federal laws relating to discovery

15  and the other Federal considerations that I've mentioned.

16          Taken to the extreme, this type of lawsuit could be

17  filed by any target or subject of a Federal investigation and

18  Federal prosecution to stifle witness cooperation and circumvent

19  Federal court rules by obtaining depositions and other discovery

20  in Federal court.

21          There are significant Federal interests in enforcing

22  Federal laws, investigating Federal crimes, ensuring that the

23  Federal court controls the manner and methods of discovery,

24  Jencks Act materials, and ensures the integrity of the

25  proceedings before it, to include Grand Jury proceedings and the

1    secrecy rules associated with that, and ensuring witnesses are

2    not subject to harassing State and civil suits as a tactical

3    ploy.

4              However, proceeding under the All Writs Act is

5    appropriate in this case, because although there is a Federal

6    statute that arguably would have been on point, 18, U.S. Code --

7    I believe it's 1514, that is insufficient, because that would

8    require a hearing.

9              And a hearing gets Mr. Gerace exactly what he would

10   want through the State court proceeding, which is essentially

11   free discovery on his Federal case, circumventing all of the

12   scheduling orders and rulings in this court to include -- we

13   have sealed search warrant affidavits that Judge Roemer recently

14   ordered to remain sealed.  I'm sure you will see an appeal on

15   that soon.

16             But the Federal interest and the Government's interest

17   in this case is very high in protecting that type of information

18   and protecting of -- against potential threats to additional

19   witnesses.

20             So, Judge, I guess I'll end my answer to your initial

21   question with why is this lawsuit filed?  What changed?  The

22   lawsuit was based upon essentially Facebook messages from 2016,

23   regarding Mr. Gerace and his ex-wife.

24             What changed was he became clear is he was under

25   Federal investigation and the subject of a Federal

1    investigation.  That is all that changed.

2           That was the triggering point, because otherwise you

3    don't go out and hire an attorney, spend a lot of money, most

4    likely, to try to -- spend thousands of dollars upon thousands

5    of dollars to obtain an unenforceable judgement against indigent

6    women.  That's what you have here.

7           So what's the true motivation?  The true motivation is

8    to pierce the Federal discovery rules here.

9           And so the questions I think that need to be answered

10   are very simple.  The defense -- does the Anti-Injunction Act

11   apply?  Clearly the answer is no.  They have conceded that now

12   in their reply brief.

13          Does the All Writs Act provide this course a source of

14   authority?  That answer is clearly yes.  This court utilized it

15   when rendering its order.

16          Is there a Federal statute that adequately protects

17   the Federal interests here?  No.  Not completely.  Only a

18   portion of the Federal interest here.

19          Is there any prejudice to the defendant?  No.  He can

20   continue this lawsuit, if he so chooses, when this Federal case

21   is over with.

22          The conclusion that I arrive at is that this court's

23   decision was well reasoned, fully supported.  The State lawsuit

24   would remain enjoined, pending the conclusion of 19-CR-227.

25          And this court's decision would certainly withstand

1  the abuse of discretion standard on appeal relating to an

2  injunction.

3          In the Leiter Minerals case, the Supreme Court said:

4  The frustration of superior Federal interests that would ensue

5  from precluding the Federal Government from obtaining a stay of

6  State court proceedings, except under the severe restrictions of

7  the Anti-Injunction Act, cited by statute, would be so great

8  that we cannot reasonably impute such a purpose to Congress.

9          There is plenty of cases that talk about Federal

10  courts enjoining State court actions that relate to the Federal

11  criminal proceeding.  We cited one in our reply brief.

12          There are numerous others.  The defense's filings

13  didn't grapple with any of those cases.  None of them addressed

14  the Federal/State nexus between a State civil suit initiated,

15  directed at a criminal prosecution, in Federal court.

16          And I'll answer any other questions you have, Judge.

17          **THE COURT:**  Mr. Cohen, you heard Mr. Tripi talk about

18  why this injunction is necessary.

19          Let's talk about what he just said in terms of your

20  ability to respond, before we talk about whether the injunction

21  is necessary or not.

22          So what you heard from Mr. Tripi, why isn't that

23  enough notice for you?  Why isn't that enough for you to be able

24  to respond and why is there a problem with the fact that he

25  sought that injunction ex parte?

 1          MR. COHEN:  What Mr. Tripi has declared is that

 2    because a Federal agent resigned, because he may be a criminal,

 3    because he was interviewed about Mr. Gerace -- you will note

 4    that not a single word was mentioned by Mr. Tripi that

 5    Mr. Gerace was implicated as a criminal; that Mr. Gerace entered

 6    the United States and his cell phone was seized for a day, not a

 7    single word mentioned that anything improper or inappropriate or

 8    illegal was found on the phone.

 9          And I can go down this list and I will go down this

10    list, but based on that, it is very simple, Judge, Mr. Gerace

11    should be stripped of all of his Constitutional rights.  The

12    right of due process, out the window.  Doesn't apply.  Shouldn't

13    apply.

14          That his right to counsel and competent counsel and

15    prepared counsel, he shouldn't be permitted that right, because

16    of what Mr. Tripi just said.

17          And he made an application to this court which led me

18    to believe, Judge, practitioner of over 30 years in this very

19    courtroom, that something so horrible must have been turned over

20    by Mr. Gerace that he threatened someone's life.

21          That's what I was expecting to hear.  That bad guys

22    with guns or knives or scary faces came and threatened someone,

23    that's what I expect to hear.

24          But for Mr. Tripi to acknowledge on the record -- and

25    I know it's a sealed transcript, but I'm going to be ordering

1     the transcript -- for him to say that some of the people that he
2     interviewed indicated that they were -- they felt threatened by
3     Mr. Gerace or other people that he's associated with and they
4     felt nervous.
5            So based upon a hearsay allegation, unless there are
6     affidavits, that I am unaware of, which I would be entitled to
7     be aware of, as his counsel, and certainly Joe and Joel Daniels
8     and his other criminal attorney should have access to that --
9     but based upon hearsay, that's being raised for the first time
10    to me in a courtroom, that somebody felt nervous or threatened
11    by either Mr. Gerace or somebody else, that he should be
12    deprived the right of counsel, Judge, that is ludicrous.
13           If being asked why is the -- why isn't that enough?
14    Well, the Anti-Injunction Statute was actually not fully recited
15    by Mr. Tripi.
16           The Anti-Injunction Statute says that according to the
17    United States, it may not grant an injunction to State
18    proceedings in a State court, except as expressly authorized by
19    Act of Congress or where necessary in aid of its jurisdiction or
20    to protect or effectuate its judgments.
21           In aid of his jurisdiction was taken off the table by
22    Mr. Tripi's answering affidavit.  That's why Schurkman was taken
23    off the table.
24           Schurkman would be the Second Circuit Court of Appeals
25    saying that this court does not have the authority to do what it

 1   did.

 2          But Mr. Tripi says, no, no.  We are not arguing in aid

 3   of jurisdictions.  Completely inapplicable, all right?

 4          Then he talks about the All Writs Act, also not

 5   properly recited.  The All Writs Act, 28, USC, 1651(a) states

 6   that the Supreme Court and all courts established by Act of

 7   Congress may issue all writs necessary or appropriate in aid of

 8   their respective jurisdictions and agreeable to the usages and

 9   principle of law.  Two part test.

10          Well, Mr. Tripi was forced to concede that this isn't

11   a question of in aid of jurisdiction.  He points to cases like

12   Leiter Minerals, where the United States is a landlord -- is the

13   owner of property.

14          There is a fight about mineral rights.  And then there

15   is another -- there is a lawsuit going on in State court and a

16   contrary judgment in State court could mess things up.  It

17   could -- it would be confusing.  Sure.

18          He talks about -- my favorite one, he reaches down to

19   Louisiana way, which is also where Leiter Minerals comes from

20   and says:  In a case in which a -- an indicted person or in re:

21   Grand Jury, wanted to get the evidence back, goes to State

22   court.

23          Federal prosecution, Federal seizure of electronics

24   that -- you know, we can only assume is a part of this Federal

25   criminal investigation.

 1          Well, we don't have to assume, because in the decision

 2   it says that.  And he wants it back and the Court -- the judge

 3   in that case says, no.  You can't have it back.  I'm stopping

 4   what's going on in the State court, because that would mess up

 5   what I've got going on in a Federal prosecution.

 6          That's the closest he came -- that's the closest the

 7   prosecution came to a case of a Federal court interfering -- and

 8   that's what it is -- with a State court proceeding.

 9          But in certain, very narrowly drawn circumstances,

10   Your Honor, this court does have the authority to step in.

11          I haven't heard a thing from Mr. Tripi that gets U.S.

12   in the neighborhood -- in the galaxy of a scenario where the

13   violation of State sovereignty, the violation of the federalist

14   principals of this nation, are disregarded.

15          He's talking about -- well, a voicemail message was

16   left about pinging his phone.  Well, I haven't read the statute

17   yet that says when somebody is calling and asking a friend or a

18   Federal law enforcement officer, hey, what do I do about -- you

19   know, I'm concerned that I might be getting my phone pinged.

20          Or even if he was to say outright -- which you will

21   never hear from Mr. Gerace, because there is no evidence to

22   support it -- but even if he said:  You know what?  I've done

23   some bad things and I don't want to get caught.

24          Well, where is that a -- a case or a single statute

25   that says that person is deprived of their Constitutional

1    rights?

2           That doesn't exist.  The U.S. Constitution Supremacy

3    clause, article six, paragraph two, states that the United

4    States courts are superior to all others.  And that's the law of

5    the land, but there are very specific restrictions on that.

6           The Tenth Amendment to the United States Constitution

7    talks about that power is not specifically delegated to the

8    United States, are reserved to the states or the people.

9           The 11th Amendment says -- and it's a little bit

10   different -- but it says the Federal courts have no power to

11   interfere with any lawsuits commenced against a state, by

12   citizens of another state.

13          So here we have -- we have a signal by the drafters of

14   our Constitution, by the framers, that Federal court shouldn't

15   be messing with State sovereignty.

16          The Anti-Injunction Statute gets very specific.  It

17   says, look, if somebody -- if a State court is messing with

18   Federal court jurisdiction, then the Federal court can slam its

19   gavel down and say stop.  And I think that makes sense.

20          That is not what we have here, by Mr. Tripi's own

21   admission.  There is no jurisdictional threat to what this court

22   has going on.

23          The All Writs Act was limited in aid of respective

24   jurisdiction.  I think what Mr. Tripi regards as a pesky

25   provision, I hold dear.  That is the Fifth Amendment to the

 1    United States Constitution, which says:  No person shall be

 2    deprived of property without due process of law.

 3             It is beyond caval that the right to bring a lawsuit

 4    is a property interest.  There could be string cites from here

 5    to tomorrow and that is what is being interfered with.

 6             **THE COURT:**  Well, this injunction is only delaying

 7    that civil lawsuit.  It's not terminating it.

 8             **MR. COHEN:**  Well, Judge, first of all, there is no

 9    self-terminating language in it.

10             Judge Arcara's orders, respectfully, I found to be

11    equally out of bounds, but at least they were short-lived.  This

12    court's order at docket 117 is not self-terminating.  It says:

13    After the criminal case is over.

14             Turning my attention to Mr. Tripi's other arguments

15    about the timeline, our lawsuit -- the lawsuit in the -- it --

16    in the underlying case was filed October 12th of 2020.  My

17    client was not indicted as of that date.

18             The fact that they had an investigation going on may

19    well be.  The assumption that maybe, just maybe, some of this

20    leaked back to Gerace is not enough to deny my client of his

21    right to pursue his civil remedy.

22             And by the way, not for nothing, his disputes with

23    Katrina Nigro, his ex-wife, and Felicia Hunt, his ex-girlfriend

24    go back for years.

25             He got orders of protection against Nigro, certainly.

1   Nigro has been on a criminal rampage for a long time, so let's

2   make no mistake about what this case is about.

3          Mr. Tripi says, make no mistake that Peter is trying

4   to interfere with the indictment process -- with the criminal

5   process.

6          Mr. Tripi knows -- I'm stating this as a fact -- that

7   when I get Katrina Nigro under oath about all of the violations

8   of the orders of protection she engaged in from another court,

9   that well preceded anything that we're talking about here; that

10  she's been going on the radio -- she has a radio show.

11         Don't ask me how that -- how an indigent person --

12  that Mr. Tripi suggests is indigent, that she has a radio show,

13  where is a regular on a radio show in Rochester; on her

14  Facebook, on her blog, she is posting all about the Grand Jury;

15  posting all about her cooperation; all about the protection she

16  is getting from Federal prosecutors -- how this is a woman who

17  is in any way of fear of Mr. Gerace, is a question that I would

18  love answered.

19         But for the prosecution to whisper to this court in

20  sealed documents, we need you to stay -- we need Your Honor to

21  stay a State court proceeding, let's not tell Cohen why.  Let's

22  not tell Daniels or LaTona why.  I'm telling you, Judge.

23         And, Judge, it is basic due process.  It requires this

24  court -- it is not optional -- it requires this court, before

25  issuing a preliminary injunction, to allow Mr. Gerace to defend

1  himself.

2        Absent what I talked about at the beginning, which was

3  if the prosecution came to you and said:  Look, Judge, I got a

4  problem.  I got a man who has got -- he's been arrested several

5  times for manslaughter, murder.  He is known to be dangerous.

6  He's been threatening these people.  Here are their affidavits.

7        I'm afraid that if I reveal what's going on here, the

8  bad guy, Gerace, is going to go and kill somebody -- Judge, in

9  extraordinary circumstances like that, Your Honor would have the

10 authority.

11       Without those extraordinary circumstances, this court

12 does not have that authority.

13       Rule 65 of the Federal Rules of Civil Procedure -- by

14 the way, there is no analogous statute in FR Crim P, so we have

15 to look to the Federal Rules of Civil Procedure.  They put the

16 standards that are required.

17       Federal preliminary injunctions require the likelihood

18 of success on the merits, irreparable harm and the balance of

19 the hardships.

20       I refer to a case that is not cited in my briefs, City

21 of Los Angeles v Lyons, 461 U.S. 95, at page 107, footnote

22 eight, 1983.  And, of course, I cited City Group Global Markets

23 in my brief, 598 F3rd 30, Second Circuit, 2010.

24       And FRCP requires this court -- it not suggests it; it

25 does not say that would be a good idea, it requires it.  It

 1  requires the court to have the reasons for the preliminary

 2  injunction contained in their order.

 3          And you -- you can't grant that relief without a

 4  hearing.  And I refer the Court most notably to Supreme Court's

 5  four part balancing test in Winter v Natural Resources defense

 6  counsel, 555 U.S. 7, 2008.

 7          Look, Judge, I know you have read the papers.  I have

 8  gone through each and every one of the cases that were cited by

 9  the prosecution and they are all inapposite.  They do not apply

10  to the case at bar.

11          And if you detect maybe a note of outrage at my client

12  being stripped of his rights, I'm not speaking nearly -- I'm not

13  speaking nearly as loudly as I feel in my heart I should be.

14          This is an outrage, Judge.

15          Shall I continue to go down Mr. Tripi's arguments and

16  go point by point?  I wrote them down.  I could respond to each

17  one of them.

18      **THE COURT:**  Well, let's hang on and give me a chance

19  to ask you a question or two here.

20          Which due process rights are we talking about here?

21  Are we talking about Mr. Gerace's due process rights in this

22  criminal case?

23      **MR. COHEN:**  I am, sir.

24      **THE COURT:**  How so?

25      **MR. COHEN:**  For him to not have the right to see

 1   allegations against him by the prosecution; for him not to be

 2   able to argue before Your Honor issues of preliminary

 3   injunction; for him not to be able to have counsel review the

 4   reasons for it -- and by the way, if I had been served with

 5   these reason for it, my argument would have been probably two

 6   minutes long, because none of these give rise to permitting an

 7   extraordinary injunction of the nature that has been granted --

 8   but him not having the words, the affidavits, the arguments,

 9   that are going to you.

10          And you're going to preside over this case, Judge.

11   Your Honor is the trial judge in this case, it's my

12   understanding.

13          Joe LaTona and Joe Daniels are the criminal lawyers on

14   this and I don't want to step on their toes.  I'm listed as

15   counsel on this case as well, but the notion that the

16   prosecution can whisper in your ear and Mr. Gerace's attorneys

17   don't get to hear that is unprecedented, unprecedented.

18          And not a single one of the cases -- not a single one

19   of the cases cited by Mr. Tripi, even his -- even reaching out

20   to the Fifth Circuit Court of Appeals addresses the issues of

21   depriving a client of their rights to be heard, their rights to

22   argue against this kind of relief.

23          It is without precedent.  And Mr. Tripi's confidence

24   of the Second Circuit will support Your Honor's ruling is, I

25   think, poorly ground.

1          And I am equally confident that when the Second

2    Circuit Court of Appeals hears -- hears that my client had this

3    relief granted against him, that State sovereignty itself has

4    been cast aside, I think that the Second Circuit's decision is

5    going to contain at least one line that says the rights of the

6    U.S. -- the rights of the United States Constitution continue to

7    apply to Mr. Gerace.

8          There is no circumstances that are so exigent and so

9    severe as to warrant relief without him knowing about it exist

10   in this case, unless they do.

11         And if they do, I want to see it.  I want to know what

12   it is.

13         The notion that by revealing his argument, that's

14   going to get out to the public, is an insult to me, personally.

15         I am an officer of this court.  I have never been

16   sanctioned.  I should knock wood.  I've never been sanctioned by

17   the grievance committee.  I know how to keep a secret.

18         But make no mistake about it, I would argue at the top

19   of my lungs in this court if I felt that there was something to

20   argue about.

21         So I would love to see one case, one single case,

22   where the prosecution is able to say:  You know, under

23   circumstances like this, like what we have here, Mr. Gerace is

24   not allowed to defend himself.  He's not even allowed to know

25   what our arguments are.

1          It is outrageous, Your Honor.

2          **THE COURT:**  He's not allowed to defend himself in the

3    criminal case or he is not allowed to respond to the request for

4    an injunction?

5          **MR. COHEN:**  He's not allowed to respond for the

6    request for an injunction and he is also not allowed to monitor

7    the communications between the presiding judge and the

8    prosecution.

9          And that sticks in my craw and I think it should stick

10   in everybody's craw.  How can there be communications with you?

11   How could you know stuff that his own lawyers don't know?

12         It would require -- he's got his thumb on the trigger

13   of an explosive device; somewhere, someone is going to be

14   killed -- someone is going to be murdered.

15         Peter Gerace's criminal history, to the extent I'm

16   aware of it, is as light as it can be.

17         I didn't -- I -- I did not see instances of murder,

18   threats of murder, guns, weapons, knives, any of the kinds of

19   things that might give this court the authority to say:  You

20   know what?  I've got to protect Katrina Nigro, because I think

21   she is going to get killed.

22         You know what he's trying to do that the U.S. Attorney

23   finds so offensive and outrageous, he wants her deposed.  He

24   wants a deposition taken of this woman.  That's the basis of

25   this.

1          And here's a woman -- look, Judge, I know you have

2     read my papers.  I attached some of the things that she's

3     publishing out there.

4          Hey, I got a court order today; or after speaking to

5     the Grand Jury, this is what happened; the U.S. Attorney is

6     preventing me from being deposed.  This is not a woman who is

7     trying to keep things secret.

8          She's not living in a halfway house -- I'm sorry, in

9     a -- what do you call it -- a witness protection program, a safe

10    house somewhere.  She's out there.  She's out there in the

11    streets.

12         Taking everything that Mr. Tripi said as true -- and I

13    do not for one moment take them as true -- but taking everything

14    as true -- let's assume the hearsay allegations are true,

15    doesn't my client have the right to know that he is -- that he's

16    being accused of threatening witnesses?

17         And do we have affidavits from those people?  Do we

18    have any testimony?

19         I mean, the fact that he's talking about Grand Jury

20    secrecy, when Katrina Nigro herself is not only on social media,

21    she's on the airwaves.  She gave a news interview to Channel 2,

22    attached to my papers.

23         The fact -- he cites as one of the reasons supporting

24    Your Honor's extraordinary relief of violating the

25    Anti-Injunction Act, and says:  Well, Masecchia was indicted.

1    There was a -- a big deal.

2         There is no -- no precedent for someone's rights to

3    argue in their own favor; to argue in support of a client; no

4    cases that say that a client is not entitled to informed counsel

5    because of anything that was mentioned by Mr. Tripi.

6         **THE COURT:**  Mr. Tripi, why is the ex parte part of

7    this application permissible?

8         **MR. TRIPI:**  Judge, for a number of reasons.  I listed

9    some of them in the beginning, but, for example, Rule 16(d)(1),

10   relating to Federal criminal discovery, allows for good cause,

11   which we've demonstrated to Your Honor in our initial filing.

12        A court may deny, restrict, defer discovery or

13   inspection or grant other appropriate relief.  That showing may

14   be made ex parte.

15        Another Federal provision, 18 U.S.C. Section 3500,

16   provides that witness statements aren't required to be

17   reproduced until after a witness testifies on direct examination

18   at trial.

19        Additionally, the Government has significant interest

20   in not revealing the nature, scope and direction of ongoing

21   investigations, which applies here.  And which is something that

22   Judge Roemer has also found in connection with the sealed search

23   warrant affidavits.

24        There is absolutely nothing outrageous about ex parte

25   applications in Federal court.  Every search warrant that this

1    court issues or other courts in this building issue is ex parte.

2           Every pen register is ex parte.  There are plenty of

3    circumstances where ex parte communications are totally

4    appropriate.

5           There are ex parte communications which occur in the

6    context of Giglio applications.

7           So you would think someone who has practiced in

8    Federal court for 30 years would be attuned to ex parte

9    applications and the things that justify those.

10          Now, our response was limited, because the defense

11   motion to vacate talked about the Anti-Injunction Act, which

12   doesn't apply at all.

13          But this Court well knows, we cited plenty of cases in

14   support of our position to the Court.  It's undoubted that the

15   All Writs Act is what this court granted it under and that's

16   what we moved under, so not the Anti-Injunction Act.  And

17   efforts to conflate the issues should be rejected.

18          The All Writs Act gives Federal courts the authority

19   to issue all writs necessary or appropriate in aid of their

20   respective jurisdictions and agreeable to the usages and

21   principals of law.  Period.  End of sentence.

22          That act has been understood to provide courts with

23   the residual source of authority to issue writs not otherwise

24   covered by statute.

25          I've addressed that.  The statute here, which would be

1    18 U.S. Code 1514(b), which deals with harassing lawsuits,

2    essentially, is insufficient, because that requires a hearing

3    and that's the whole point of this.

4          They want a hearing one way or the other.  Whether

5    that happens in State court first or here, they want early

6    discovery and they want to stifle witnesses.

7          A couple of cases to cite additionally, Penn Bureau of

8    Corrections versus U.S. Marshal Service, 474 U.S. 34, pin cite

9    43.  United States versus New York Tele Company, 434 U.S. 159,

10   pin cite 174.

11         That stands for the notion that under appropriate

12   circumstances, orders under the All Writs Act may be directed to

13   persons who if -- even they are not parties to the original

14   action or even if they are not engaged in wrongdoing, are in a

15   position to frustrate the implementation of a court order or the

16   proper administration of justice.

17         Essentially, what the defense wants here is a State

18   judge to dictate the manner and means of discovery and how

19   information is received by the defendant in this case.

20         The Supreme Court has long ago stated that a court can

21   exercise its discretion to manage civil litigation to avoid

22   interference with a criminal case, that's Degen versus the

23   United States, 517 U.S. 820, pin cite 827, 1996.

24         In the U.S. versus Kordel, the court noted that courts

25   have stayed civil proceedings until related criminal cases are

1   completed.  Quote:  When the interest of justice seems to

2   require such action.  Kordel is 397 U.S. 1, the pin cite was

3   page 12.

4          In Landis versus North American Company, 299 U.S. 248,

5   pin cite 254, the power to the stay civil -- excuse me -- the

6   State proceedings is incidental to the power in every court to

7   control disposition of the cases -- causes on its docket.

8          This criminal case is on your docket.  You get to

9   control when things get ordered to be produced.  That's the

10  whole point.

11         Not, I'm going to find a lawyer that's willing to run

12  to State court to sue women to get ahead of the Federal matter.

13  That's what happened here.

14         **THE COURT:**  Mr. Cohen, let me ask you this --

15         **MR. TRIPI:**  Judge, if I could cite one more?

16         **THE COURT:**  Sure.

17         **MR. TRIPI:**  I'm sorry to interrupt you -- the

18  Schurkman case that they cited and provided to you, which is

19  inapplicable, also has a citation to In Re: Baldwin Corp.

20         Second Circuit case that dealt with the All Writs Act.

21  They glossed over it entirely.  In re:  Baldwin Corp said,

22  quote:  Even before a Federal judgment is reached, however, the

23  preservation of the Federal court's jurisdiction or authority

24  over an ongoing matter may justify an injunction against the

25  action in State court.

1          Such Federal injunctive relief may be necessary to

2    prevent a State court from so interfering with a Federal court's

3    consideration or disposition of a case as to seriously impair

4    the Federal court's flexibility and authority to decide that

5    case.

6          Second Circuit case.  Blew right past it.  And there

7    are others that relate to staying civil discovery.

8          **THE COURT:**  So if there is material out there,

9    Mr. Cohen, that justifies this injunction that was relayed to me

10   ex parte, that would otherwise be discoverable some time

11   pursuant to the discovery rules later, why should the Government

12   have to disclose that material now?

13         **MR. COHEN:**  Well, first of all, Judge, I'm not aware

14   of any case that says:  18 U.S.C. 1514, civil action, to

15   restrain harassment of a victim or witness prevents a party from

16   responding to the allegation or to the charges.

17         That -- that's I think -- that's the elephant in the

18   room, Judge.  The fact that the claim is everything that the

19   prosecution has said --

20         **THE COURT:**  What about --

21         **MR. COHEN:**  -- even if it's true, my client should not

22   be deprived the right to confront that.

23         Now, he can't -- he just can't.  I mean, hopefully we

24   haven't devolved to the point where he could say, hey, hearsay,

25   Judge, I know some people who said they feel threatened or

1   nervous.

2          **THE COURT:**  We're not under that statute, Mr. Cohen.

3          **MR. COHEN:**  I beg your pardon, sir?

4          **THE COURT:**  We're not under that statute, are we?

5          **MR. COHEN:**  I wouldn't think so, but it was cited by

6   Mr. Tripi.  He is the one that said twice, 18 U.S.C. 1514(b).

7          **THE COURT:**  All right.  Mr. Cohen, I've got you to the

8   Fifth Circuit's decision in the Grand Jury subpoena case reads:

9   It is not necessary that the movement for civil discovery

10  specifically intends to circumvent the rules of criminal

11  discovery.

12         A movement with the purest of motives, would in the

13  event that the civil case was allowed to proceed, gain access to

14  materials otherwise unobtainable, and in so doing, potentially

15  harm the related criminal investigation.

16         Haven't -- haven't I heard enough here, in open court

17  today, to justify the injunction?

18         **MR. COHEN:**  Not even close.  That was a case.  You

19  have to look at the context, Judge.

20         That was a case in which somebody wanted his evidence

21  back.  He wanted the Government to turn back the electronic

22  material that was seized by warrant.

23         That was a case where it was stepping on the Federal

24  court's jurisdiction.  And by the way, everything that Mr. Tripi

25  said -- Rule 16 -- well, first of all, saying that there is an

1    interference with Rule 16(b)(1) or the 3500 Jencks material,

2    this lawsuit was commenced before the second superseding

3    indictment.

4         And we're not dealing with a motion with regard to

5    discovery.  Not at all.  And I'm not saying that they need to

6    turn over Jencks material, in general.

7         What I am saying is that if they are seeking austere

8    relief, they can't turn to In Re: Grand Jury subpoena, and say,

9    well, look, Gerace is trying to frustrate the Federal process.

10        You know, the timeline speaks for itself.  I know they

11   have gone through great efforts to try to create some events

12   that happened or try to make hay out of some events that

13   happened prior to the commencement of the lawsuit, but none of

14   those events trigger the right for them to proceed without a

15   hearing.

16        Now, if the Government says, look, we have good reason

17   not -- nobody's life is in danger -- nobody's life is in danger,

18   but we have good reason to believe that he's trying to frustrate

19   the criminal process here -- great.

20        Let's make a motion.  Let's have a hearing on it.  Let

21   me find out what evidence they have and let me go to Peter and

22   say, Peter, did you threaten Jane Doe on this day or did you

23   send a gorilla to threaten Jane Doe on this date?

24        And he will say, no.  I was in Cleveland at the time

25   and I don't know anybody that fits that description.  Or -- you

1   know, whatever.  I don't know what he's going to say, because I

2   don't have anything with enough specificity.

3           Judge, you haven't come close to getting enough

4   information to violate -- to rule under the All Writs Act in

5   contravention to the Anti-Injunction Statute.

6           And the fact that Mr. Tripi acknowledged that this is

7   not a case involving an aid of jurisdiction, he just sucked out

8   whatever argument he may have had to get Your Honor to act that

9   way -- to rule that way.

10          **MR. TRIPI:**  It's not a case involving the

11  Anti-Injunction Act.

12          **THE COURT:**  Well, Mr. Cohen, doesn't -- doesn't the

13  civil lawsuit against witnesses who are testifying against a

14  criminal defendant in a criminal case intimidate those witnesses

15  and impair their ability and willingness to come forward?

16          **MR. COHEN:**  Well, at that time, he had no idea whether

17  Katrina Nigro was a witness in the case.  There was nothing

18  posted on her Facebook.

19          **THE COURT:**  Well, what about today?  What about a

20  criminal defendant who has a sufficiently zealous plaintiff's

21  counsel in a civil suit, aren't those witnesses intimidated?

22          **MR. COHEN:**  There could be circumstances in which they

23  would be intimidated.  Not in fear of their life, but in fear of

24  being caught in a lie.

25          And by the way, I have a binder.  It's about four

1   inches thick of the lies that Katrina Nigro has told.

2           And that's their fear, that this lawsuit is going to

3   so impair her credibility.  That the indictment is going to be

4   thrown out by you, Judge.

5           **THE COURT:**  What's the burden on Mr. Gerace's civil

6   lawsuit, if it's required to be delayed for a year or two?

7   What's --

8           **MR. COHEN:**  Well --

9           **THE COURT:**  -- what's --

10          **MR. COHEN:**  -- the prejudice.

11          **THE COURT:**  -- going to be -- why?  Why can't the

12  civil lawsuit wait?

13          **MR. COHEN:**  Well --

14          **THE COURT:**  What's the prejudice?

15          **MR. COHEN:**  He's been going after Katrina Nigro for

16  eight years now, trying to get her to stop.

17          And by the way --

18          **THE COURT:**  Well, he's not -- he's not going to get an

19  injunction, is he?

20          **MR. COHEN:**  Yeah.  That's what he's seeking.  Take a

21  look at addendum.  He is seeking a permanent injunction.

22          **THE COURT:**  Right.  So the State court judge is going

23  to give you an injunction of future speech --

24          **MR. COHEN:**  Yes.

25          **THE COURT:**  -- is what you are contending?

1          **MR. COHEN:**  Of future defamatory speech.  That's what

2    I'm seeking, Judge.

3          **THE COURT:**  Okay.

4          **MR. COHEN:**  That's -- I'm seeking the injunctive

5    relief.

6          Yes.  We put in a statement -- the required statement

7    that we are seeking monetary damages in excessive and

8    jurisdictional -- in excessive the amount permitted by all lower

9    courts, but what we asked for here is -- we're asking this court

10   to grant a permanent injunction forbidding and enjoining

11   defendants from continuing to spread false and defamatory

12   information of and concerning plaintiff and for such other and

13   further relief as this court deems just and proper.

14         It's page 23 of -- at page 23 of the papers that we

15   filed.  It's my Exhibit A.

16         **THE COURT:**  Well, Mr. Cohen -- Mr. Cohen, you're a

17   First Amendment lawyer.  You know that that -- getting an

18   injunction of future speech is one of the hardest things to get,

19   isn't it?

20         **MR. COHEN:**  I'm tenacious, Your Honor.

21         **THE COURT:**  Anything further from you, Mr. Tripi?

22         **MR. TRIPI:**  No, Judge.  I -- just to the extent to

23   case that I cited to you originally, I just refer you back to

24   those.

25         I didn't say them all on the record today.  If you

1    would like me to place them on the record, I can provide them.

2        **THE COURT:**  If they are cited in the papers or have

3    been cited on the transcript already, that's sufficient.

4        **MR. TRIPI:**  The original papers that were submitted

5    with the ex parte, they are in there.

6        **THE COURT:**  Right.  We have it all.

7        **MR. TRIPI:**  Thank you.

8        **THE COURT:**  Okay.  Counsel, I've given it a lot of

9    thought.  I will give it some more thought and take it under

10   advisement.

11       So this is submitted and I will get you a decision as

12   soon as I can, okay.

13       **MR. TRIPI:**  Thank you, Your Honor.

14       **MR. COHEN:**  Your Honor, may I just say two more

15   sentences?

16       **THE COURT:**  Two more sentences, Mr. Cohen.

17       **MR. COHEN:**  Thank you, sir.

18       **THE COURT:**  Okay.

19       **MR. COHEN:**  Mr. Tripi pointed out that two search

20   warrants were executed upon my client's home and his place of

21   business.

22       To the best of my knowledge, not a single item of

23   illegality was recovered in those search warrants.  I want the

24   Court to know that.

25       **THE COURT:**  Thank you.

 1          **MR. COHEN:**  Thank you, sir.

 2          **THE COURT:**  All right.  Everyone, have a great day.

 3  Thank you.

 4

 5              (Proceedings concluded at 2:51 p.m.)

 6                          *    *    *

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2       "I certify that the foregoing is a correct transcript, to the

3          best of my ability, from the record of proceedings in the

4                         above-entitled matter."

5

6

7       _s/ Bonnie S. Weber_          _____August 23, 2021_____
          Signature                          Date

8

9     BONNIE S. WEBER

10    Official Court Reporter
      United States District Court
11    Western District of New York

12

13

14

15

16

17

18

19

20

21

22

23

24

25