17:20:54

```
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3

 4

 5    - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA    )    19CR227
 6                     Plaintiff  )
      vs.
 7                                     Buffalo, New York
      PETER GERACE, JR.           )    October 27, 2021
 8             Defendants.              10:30 a.m.
      - - - - - - - - - - - - - X
 9    MOTION ARGUMENT
      Transcribed from an Electronic Recording Device
10
                       TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE MICHAEL J. ROEMER
                    UNITED STATES MAGISTRATE JUDGE
12

13
      BRENDAN T. CULLINANE, ESQ.
14    JOSEPH M. TRIPI, ESQ.
      Assistant United States Attorneys
15    138 Delaware Avenue
      Buffalo, New York 14202
16

17    STEPHEN M. COHEN, ESQ.
      HARMONY A. HEALY, ESQ.
18    Hogan Willig
      2410 North Forest Road
19    Suite 301
      Amherst, New York 14068
20        -and-
      JOSEPH M. LATONA, ESQ.
21    42 Delaware Avenue
      Suite 700
22    Buffalo, New York 14202

23    B. Macaluso - USPO

24    COURT REPORTER: Karen J. Clark, Official Court Reporter
                       Karenclark1013@AOL.com
25                     100 State Street
                       Rochester, New York 14614
```

1

2

                    P R O C E E D I N G

3              *                *                *

4

5

6              THE CLERK:  United States District Court for

7    the Western District of New York is now in session.  The

17:20:58   8    Honorable Michael J. Roemer presiding.

17:21:00   9              Appearing we're here on the matter of the

17:21:02   10   United States versus Peter Gerace, case No. 19CR227, for

17:21:24   11   a motion.  Counsel for the government, please state your

17:21:26   12   name for the record.

17:21:27   13              MR. CULLINANE:  Good morning, your Honor.

17:21:28   14   Brendan Cullinane and Joseph Tripi on behalf of the

17:21:31   15   United States.

17:21:31   16              THE CLERK:  Counsel for the Defendant,

17:21:32   17   please state your name for the record.

17:21:33   18              MR. COHEN:  Good morning, Steven M. Cohen

17:21:36   19   and Harmony Healy, Hogan Willig here for the Defendant.

17:21:44   20              MAGISTRATE JUDGE ROEMER:  Don't forget Mr.

17:21:46   21   LaTona.

17:21:47   22              MR. COHEN:  And Joseph LaTona.

17:22:28   23              THE CLERK:  Thank you.

17:22:28   24              MAGISTRATE JUDGE ROEMER:  Good morning.

17:22:30   25   We're her for oral argument on the defendant's motion to

1

17:22:32  2  modify his conditions of release.  Are we ready to go.

17:22:36  3          MR. COHEN:  We are, your Honor.

17:22:37  4          MR. CULLINANE:  Yes, your Honor.

17:22:38  5          MAGISTRATE JUDGE ROEMER:  Mr. Cohen, what I

17:22:40  6  can discern, you want, basically, three things, right?

17:22:44  7  You want to go from home detention to curfew, right.

17:22:48  8          MR. COHEN:  That's correct, sir.

17:22:48  9          MAGISTRATE JUDGE ROEMER:  You want the

17:22:49  10  defendant to be able to come and go from his business

17:22:51  11  and needs to have no more restriction on 7:30 to 10:30

17:22:56  12  in the morning.

17:22:57  13          MR. COHEN:  That's correct, sir.

17:22:58  14          MAGISTRATE JUDGE ROEMER:  And you want him

17:22:59  15  to be able to taste test alcohol as part of his

17:23:04  16  business.

17:23:04  17          MR. COHEN:  Yes, sir.

17:23:05  18          MAGISTRATE JUDGE ROEMER:  Is there anything

17:23:07  19  else or those are the three main things.

17:23:09  20          MR. COHEN:  While the second thing you said

17:23:11  21  and while slightly correct, I want him to be able to go

17:23:15  22  to and from his business, I don't want my request to be

17:23:37  23  perceived as that is the only place I'd like to him to

17:23:42  24  be able to visit.  I'd like him to be able to simply

17:23:46  25  come and go as he please.

1

17:23:48  2          MAGISTRATE JUDGE ROEMER:  Well, on curfew,

17:23:50  3  he would be able to do that.

17:23:51  4          MR. COHEN:  Yes.

17:23:51  5          MAGISTRATE JUDGE ROEMER:  And he would just

17:23:54  6  need to be home by a certain time.

17:23:55  7          MR. COHEN:  That's correct.

17:23:56  8          MAGISTRATE JUDGE ROEMER:  So I view that as

17:23:57  9  one of the three things that I just said.

17:24:00  10          MR. COHEN:  Right.

17:24:00  11          MAGISTRATE JUDGE ROEMER:  But he has a

17:24:01  12  specific condition, a limitation on his ability to go to

17:24:04  13  his business right now.

17:24:05  14          MR. COHEN:  Right.

17:24:05  15          MAGISTRATE JUDGE ROEMER:  And you want

17:24:07  16  relief from that.

17:24:07  17          MR. COHEN:  That's correct, sir.  And also

17:24:09  18  he has a limitation on not being able to have alcohol as

17:24:13  19  you probably said.

17:24:13  20          MAGISTRATE JUDGE ROEMER:  Okay.  I'll hear

17:24:14  21  from you then.  You can stay there or come up to the

17:24:18  22  podium.  I draw the line at laying down.  Okay.

17:24:22  23          MR. COHEN:  Thank you, sir.  Your Honor

17:24:28  24  we're seeking to amend the condition, conditions of the

17:24:32  25  defendant's release pursuant to 18 U.S.C. Section

1

17:24:34  2    3142(a)(2).  The Court must order a release on a

17:24:39  3    person's own recognizance, unless the Court reasonably

17:24:44  4    believes that his being on his own recognizance won't

17:24:50  5    assure his appearance in court or his release will

17:24:54  6    impose a danger to the community.  Naturally, 18 U.S.C.

17:24:58  7    talks about nothing contained therein shall in any way

17:25:02  8    affect the presumption of innocence, and, of course, I'm

17:25:05  9    referring to sub chapter (j), which is presumption of

17:25:13  10   innocence.  What we have here is a complete absence of

17:25:18  11   any evidence that shows my client is a danger to the

17:25:22  12   community.

17:25:24  13             Judge, I've been doing this a long time.

17:25:27  14   The government has managed to keep my client on a very

17:25:33  15   tight leash on the promise that at some point, they will

17:25:38  16   have evidence or we saw a Facebook post two years ago

17:25:44  17   that suggests my client may have been with a person who

17:25:51  18   put a threat to another person.  I have never seen the

17:25:55  19   Facebook post, and it's never been turned over.  And Mr.

17:25:58  20   Tripi, I can show where it's located, says, "we're

17:26:02  21   investigating it."  If it takes two years to investigate

17:26:05  22   a Facebook post, I suggest there is either nothing there

17:26:09  23   or maybe they need somebody else to investigate it.  But

17:26:12  24   I have no evidence that my client poses a threat to

17:26:15  25   anyone, no evidence that he has ever threatened anyone.

1

17:26:18  2   There is, of course, Katrina Nigro, who my office has

17:26:24  3   dubbed "Hurricane Katrina."  She is currently in jail,

17:26:28  4   where she belongs.  She is -- she goes on the radio and

17:26:32  5   talks about how my client has had poker games in her

17:26:36  6   house.  She got the former defense attorney, Joel

17:26:40  7   Daniels, who has been a mentor to me my entire career,

17:26:45  8   and the man is a pillar of ethics, but she got him

17:26:50  9   thrown off the case because of the suggestion that he

17:26:53  10  was somehow playing cards with judges and law

17:26:56  11  enforcement officers in their house, which is something

17:26:59  12  that never happened.  She claimed on the radio that Greg

17:27:05  13  Trotter, an Amherst police lieutenant, detective

17:27:10  14  lieutenant, was fired for taking bribes.  Detective

17:27:40  15  Lieutenant Trotter was promoted in the Amherst Police

17:27:44  16  and he is in excellent status there, and he will be, at

17:27:46  17  some point, testifying, if they put Katrina Nigro on the

17:27:49  18  stand, that everything she stated was an untruth.  And

17:27:55  19  just as Robert Jackson, the namesake of this building,

17:27:58  20  wrote, "Using informers is a dirty business."  This is

17:28:03  21  **U.S. v. Prairie**, 572 F 2d 1316, 1978.  The Ninth Circuit

17:28:26  22  observed, "by definition, criminal informants are cut

17:28:29  23  from untrustworthy cloth and must be carefully watched

17:28:34  24  by the government and the courts to prevent them from

17:28:47  25  falsely accusing the innocent, from manufacturing

1

17:28:50  2  evidence against those under suspicion of crime, and for

17:28:53  3  lying under oath." **U.S. v. Bernal-Obeso**, 989 F. 2d 331,

17:29:00  4  Ninth Circuit.  There is an entire section about the use

17:29:02  5  of informants like Katrina Nigro in this book,

17:29:07  6  <u>Prosecutorial Misconduct</u>, Second Edition, Bennett L.

17:29:12  7  Gershman, section 1:26.  There has been no risk of

17:29:15  8  flight shown.  Peter is the owner of a home locally,

17:29:21  9  owns a business locally, has a child enrolled in school

17:29:25  10  locally, has spent his entire life here locally, has

17:29:29  11  parents who live locally.  He is continuing to invest

17:29:32  12  big money in his home and business with renovations.

17:29:35  13  His 15-year-old son is dependent on Mr. Gerace for

17:29:40  14  transportation to social events.  He surrendered his

17:29:44  15  passport and he is pushing hard to get his case to trial

17:29:47  16  because he wants to be exonerated.  And if your Honor

17:29:51  17  were a fly in my office, you could hear the phone calls

17:29:55  18  from Peter saying, "When am I getting my trial?  When is

17:30:00  19  my case going to trial?"  This is not a man that poses a

17:30:20  20  flight risk or seeking is to evade the process.  He is

17:30:24  21  on electronic monitoring.  He has the largest ankle

17:30:27  22  bracelet I've seen in my career.  He has been forced to

17:30:32  23  wear an electronic monitoring, which, under similar

17:30:35  24  circumstances, usually assures that someone remains

17:30:38  25  within the Western District of New York, not in their

1

17:30:41  2    own home.  If they are on home confinement, yes.  But

17:30:44  3    then there are times when people use ankle bracelets to

17:30:48  4    make sure they stay in the district when they are not

17:30:52  5    100 percent confined find to home.  There has been no

17:31:10  6    specific or verifiable threat of any danger by Peter to

17:31:16  7    anyone.  Nothing close to the required clear and

17:31:19  8    convincing evidence that the defendant poses a threat to

17:31:22  9    anyone.

17:31:22  10         MAGISTRATE JUDGE ROEMER:  Mr. Cohen, I hate

17:31:24  11   to interrupt you, but you seem to be arguing that there

17:31:29  12   should be no conditions that he should be released on

17:31:34  13   his own recognizance.  That boat sailed.  A judge down

17:31:40  14   in Florida said he should be released on conditions and

17:31:43  15   Judge Sinatra said he should be released on conditions.

17:32:01  16   You're here today to argue about how these conditions

17:32:03  17   should be modified.  I'm more than happy to hear you

17:32:06  18   argue today that he shouldn't be put on home detention

17:32:10  19   in the first place, but I'm not going to decide that

17:32:12  20   today; that is not before me.  What is before me is

17:32:16  21   modifying the conditions of release.

17:32:18  22         MR. COHEN:  I understand that, Judge, but 18

17:32:49  23   U.S.C. 3142 and 3145 give this Court -- gives your Honor

17:32:56  24   very broad discretion and you can, on your own motion at

17:32:59  25   any time change conditions if you feel.

1

17:33:04   2          MAGISTRATE JUDGE ROEMER:   That is where we

17:33:05   3   are now.  You are asking for the conditions to be

17:33:08   4   changed.

17:33:08   5          MR. COHEN:  But if you're asking me and you

17:33:10   6   did, do I think that he should be released, should he

17:33:13   7   have been released on his own recognizance, yes, yes, I

17:33:17   8   do, sir, especially given there has been no evidence

17:33:20   9   presented.

17:33:20  10          MAGISTRATE JUDGE ROEMER:   And I totally get

17:33:22  11   that.  I totally understand that, but we're not there.

17:33:25  12   He has already had a detention hearing down in Florida

17:33:27  13   and released on conditions and Mr. Daniels sought a

17:33:31  14   modification of those conditions, and Judge Sinatra

17:33:34  15   granted that.  Judge Sinatra found that those were the

17:33:38  16   least restrictive conditions necessary to assure his

17:33:41  17   appearance and assure that he is not a danger to the

17:33:44  18   community.  So we're already there.  And the reason I

17:33:48  19   bring this up, and as you know, you brought it up in

17:33:52  20   your papers, we can modify the conditions at any time,

17:33:55  21   right.

17:33:55  22          MR. COHEN:  Yes, sir.

17:33:56  23          MAGISTRATE JUDGE ROEMER:   If you want to

17:33:57  24   reopen the detention hearing, that is a different.

17:34:00  25   There is a different standard there.  You have to show a

1

17:34:02   2   change in circumstances.  And it's a totally different

17:34:05   3   ball game.  That is why I started off today, here are

17:34:09   4   the three things you want.  Let's try to stick to those

17:34:12   5   three things.  If you want to move to reopen the

17:34:16   6   detention hearing, you should do that.  But you haven't

17:34:18   7   done it.  Okay.

17:34:19   8           MR. COHEN:  You're right.  You're completely

17:34:22   9   right.  The only thing I would respectfully adjust in

17:34:25   10  what your Honor said is, Judge Sinatra didn't say these

17:34:28   11  are the least restrictive measures that would assure his

17:34:31   12  appearance and eliminate his danger to the community.

17:34:51   13          MAGISTRATE JUDGE ROEMER:  Geez, I thought he

17:34:53   14  did because there were transcript cites that were in the

17:34:56   15  papers and he said something to the effect that the

17:34:58   16  judge in Florida didn't impose the least restrictive

17:35:02   17  conditions.

17:35:03   18          MR. COHEN:  Right, that is what he said.

17:35:05   19          MAGISTRATE JUDGE ROEMER:  So I took that

17:35:06   20  then that he then imposed what he thought were the least

17:35:22   21  restrictive conditions, right.

17:35:23   22          MR. COHEN:  I think what Judge Sinatra did,

17:35:25   23  as your Honor said, that Judge Valle, V-a-l-l-e, what

17:35:30   24  Judge Valle did was not the least restrictive, so then

17:35:36   25  he imposed these.  But I don't know that his Honor made

17:35:39   2   the determination that these conditions would be the

17:35:43   3   least restrictive that would assure the appearance.

17:35:48   4           MAGISTRATE JUDGE ROEMER:  I think he did.

17:35:51   5   That is what you're supposed to do that is what the

17:35:53   6   statute says you're supposed to do.  So, my only point,

17:35:57   7   we're here today to argue, you want certain

17:36:01   8   modifications to the conditions of release.  We're not

17:36:03   9   starting over with whether he should be detained or not

17:36:06   10  be detained or what the conditions should be all over

17:36:09   11  again.

17:36:09   12          MR. COHEN:  So I would point out, Judge,

17:36:12   13  that he is in complete compliance with all of the terms

17:36:14   14  that have been required of him.  The Federal Probation

17:36:18   15  Office stated that he has no concerns at all that the

17:36:31   16  defendant poses a flight risk and has no objections to

17:36:35   17  our requested change in the conditions of the

17:36:37   18  defendant's release from home detention to curfew.  And

17:36:41   19  attached to my reply papers at exhibit -- I think it was

17:36:45   20  the last exhibit, is a letter from -- yeah, exhibit D to

17:36:51   21  my reply papers, actually, a letter from Mr. Macaluso,

17:36:55   22  so, stating exactly that.

17:36:57   23          MAGISTRATE JUDGE ROEMER:  I've discussed it

17:36:59   24  with Mr. Macaluso, and I -- really, just about 15, 20

17:37:03   25  minutes ago, and he says he has been fully compliant, so

1

17:37:08   2   --

17:37:08   3        MR. COHEN:  Judge, I think you've got it.  I

17:37:11   4   think you understand my points.  I can, you know, run

17:37:14   5   through all of the reasons that I feel that the

17:37:16   6   restrictions placed on Mr. Gerace are unnecessary, and,

17:37:22   7   you'll forgive me, but discriminatory and punitive.  And

17:37:25   8   I think Mr. Tripi, you know, has some animus towards my

17:37:32   9   client that I don't have any evidence to support the

17:37:37  10   basis for the animus.

17:37:39  11        MAGISTRATE JUDGE ROEMER:  I'll tell you, I

17:37:41  12   don't like when accusations are thrown around.  You just

17:37:44  13   said you have no evidence of that other than he is

17:37:47  14   aggressively pursuing this case.  And if he said the

17:37:51  15   same thing about you, I would not to like hear it from

17:38:10  16   him.

17:38:10  17        MR. COHEN:  I have nothing to support the

17:38:11  18   animus.  The things he has done, is a matter of record.

17:38:15  19   Referring the IOC and referring to organized crime,

17:38:19  20   these things are repugnant as a civil rights attorney,

17:38:23  21   but you got it, Judge, and you've heard my arguments and

17:38:28  22   I'm available to respond to any arguments.

17:38:31  23        MAGISTRATE JUDGE ROEMER:  Thank you.

17:38:32  24        MR. COHEN:  Thank you.

17:38:33  25        MAGISTRATE JUDGE ROEMER:  Mr. Cullinane, are

```
          1
17:38:34  2   you arguing?
17:38:34  3               MR. CULLINANE:  Yes.  Thank you, Judge.
17:38:35  4               MAGISTRATE JUDGE ROEMER:  Okay.
17:38:37  5               MR. CULLINANE:  Judge, thank you very much.
17:38:46  6   Judge, I want to address some of the things that Mr.
17:38:48  7   Cohen stated on the record.  It's clear to me, the Court
17:38:52  8   is very familiar with this case and gone through the
17:38:54  9   docket and is familiar with the procedural history here.
17:38:59  10  In fact, the judge, the defendant appears before Judge
17:39:07  11  Valle down in Miami back in March.  And, at that time,
17:39:25  12  Judge Valle said this is an interesting case, in fact, I
17:39:29  13  would order you detained if not for the government's
17:39:32  14  motion at that time.  And the government has explained
17:39:35  15  its position and why it took that position at time and
17:39:39  16  asked for, rather than detention, restrictive
17:39:42  17  conditions.  And the government did not oppose home
17:39:44  18  detention at that time.  The defendant then appears
17:39:47  19  before you and there is an order setting conditions of
17:39:49  20  release on the record, in which your signature is on and
17:39:53  21  it contains information about the conditions imposed
17:39:56  22  upon Mr. Gerace, which include, among other things,
17:40:00  23  electronic monitoring for home detention and he ordered
17:40:06  24  that he not imbibe any alcohol.  What coincides around
17:40:09  25  the same time is the fact that when this defendant
```

1

17:40:12 2  appeared before Judge Valle down in Miami, the probation

17:40:17 3  report stated he had used cocaine one year earlier than

17:40:20 4  that date.  Turned out he had cocaine in his system at

17:40:24 5  that time and he had lied to the probation office.  Had

17:40:27 6  our had our office known then at that time.  That would

17:40:31 7  have changed our position.

17:40:32 8          MAGISTRATE JUDGE ROEMER:  Mr. Cullinane,

17:40:34 9  same thing to you that I told to Mr. Cohen.  We're here

17:40:37 10 now.  We're going forward.  Both people seem to want to

17:40:43 11 go backwards to what happened in Florida or what

17:40:46 12 happened after that.  And as far as this testing

17:40:50 13 positive for cocaine, I assume that was brought up to

17:40:53 14 Judge Sinatra.

17:40:54 15         MR. CULLINANE:  It was, it was in the

17:40:55 16 papers.

17:40:56 17         MAGISTRATE JUDGE ROEMER:  Okay.  Then he had

17:40:57 18 that.  He made his decision.

17:41:01 19         MR. CULLINANE:  You're exactly right, and

17:41:02 20 Judge, I mention that for this fact, and I'll get right

17:41:05 21 to the point here.  Mr. Gerace would like to change his

17:41:11 22 conditions from home detention to curfew.  This

17:41:15 23 defendant has demonstrated throughout his history here

17:41:17 24 and all of his characteristics that that is not

17:41:20 25 appropriate.  We went before Judge Sinatra, and you're

1

17:41:24   2   exactly right of your memory of the transcript, which I

17:41:27   3   have in front of me.  Judge Sinatra stated, "After

17:41:29   4   reviewing the record and after hearing from both sides,

17:41:33   5   the lesser restrictive condition that he refrain from

17:41:42   6   visiting or working at Pharaoh's, except between certain

17:41:48   7   designated hours, serves the purpose of Title 18 U.S.C.

17:41:57   8   Section 3142(c)(1)(B)."  This issue has been up before

17:42:01   9   Judge Sinatra in the past.  There is nothing that has

17:42:04   10  changed since the parties appeared before Judge Sinatra

17:42:07   11  regarding Mr. Gerace and any --

17:42:09   12          MAGISTRATE JUDGE ROEMER:  I think Mr. Cohen

17:42:11   13  argues two things that have changed.  One is he has now

17:42:16   14  reviewed all of the discovery in the case and he

17:42:18   15  believes the case is much weaker than he thought it was

17:42:21   16  even before he started looking at it.  That is his one

17:42:25   17  argument.  And the second argument is there has been

17:42:27   18  compliance for the last seven months.  Those are, I take

17:42:30   19  it, are the two arguments as to why the conditions

17:42:33   20  should be released.

17:42:34   21          MR. CULLINANE:  Let me address those.  First

17:42:35   22  of all, he has not reviewed all of the discovery and we

17:42:39   23  have not provided Jencks material in this case.  There

17:42:53   24  is an offense reference to a woman named Katrina Gerace,

17:42:58   25  which he called "Hurricane Katrina."  He has no

information regarding her from us of whether there is

Jencks material or not, which I'm not going to confirm

on the record, but Jencks material has not been provided

to his office.  So, in his papers, he alleges perjury

and false statements and other things.  As far as I

know, Katrina Gerace is not charged in this courthouse

or elsewhere in this district with any federal

violation.  So, for him saying that, that is not exactly

correct, and he is attempting to mislead the Court from

the character and background of Mr. Gerace and the

charges in which he faces, five of which are very

serious, and involve a former co-defendant, a former DEA

special agent, and rather, he is trying to talk about

this other person and trying to make the Court believe

this one case rests on one person.  I can tell you,

Judge, in a proffer to this case, this case involves

numerous witnesses, and it's inappropriate and improper

to attempt to bludgeon the name of this one person on

some unfounded belief that this person committed some

sort of violation, whether before this Court or a grand

jury.  That, in fact, has not happened, so it's an

attempt to move away from the record before your Honor.

        Second, your Honor, there is information

about compliance.  And I know that Mr. Macaluso has

1

17:45:19   2   filed a report and you had an opportunity to speak with

17:45:22   3   him.  I'm not so sure that is correct that there has

17:45:25   4   been full compliance, and my concern stems from, your

17:45:28   5   Honor, the motion that was put in as well as the

17:45:32   6   response that we filed.  Mr. Cohen then filed a reply

17:45:38   7   and he said, well, Mr. Gerace is allowed to speak with

17:45:45   8   people from Pharaoh's, just not while he is at

17:45:49   9   Pharaoh's.  Your Honor, I have the transcript which I

17:45:52   10   believe you have at docket 118.

17:45:56   11        MAGISTRATE JUDGE ROEMER:  Before you go down

17:45:58   12   this road, Mr. Cullinane, I called Judge Sinatra and I

17:46:01   13   asked him --

17:46:02   14        MR. CULLINANE:  Yes.

17:46:03   15        MAGISTRATE JUDGE ROEMER:  -- what his

17:46:03   16   position is.  And he had no problem with the employees

17:46:07   17   going over to Mr. Gerace's house or talking to him on

17:46:10   18   the phone, just not at the establishment.  So that is

17:46:14   19   where I am.

17:46:15   20        MR. CULLINANE:  Well, I actually appreciate

17:46:16   21   the fact that you talked to Judge Sinatra.  Because I

17:46:19   22   have to tell you, it's a little confusing, but I think

17:46:22   23   the language was not exactly clear for us.  It seemed on

17:46:26   24   the face of it he would leave a checklist for the

17:46:29   25   manager.

1

17:46:29  2      MAGISTRATE JUDGE ROEMER:  I understand your

17:46:30  3  position completely.

17:46:31  4      MR. CULLINANE:  So, to let you know, that is

17:46:33  5  where we're coming from.  I'm not trying to mislead

17:46:36  6  anyone.  That was our understanding.

17:46:37  7      MAGISTRATE JUDGE ROEMER:  Yes.

17:46:38  8      MR. CULLINANE:  Nevertheless, your Honor,

17:46:40  9  compliance is not a changed circumstance.  This issue of

17:46:43 10  Pharaoh's and whether he needs to meet with people

17:46:46 11  there, whether construction workers or other venders, or

17:46:49 12  whatever, this update to Pharaoh's, that is not a

17:46:52 13  changed circumstance.  And, in fact, what Judge Sinatra

17:46:55 14  said in the transcript, and which I believe he

17:46:57 15  referenced in his Webmaster, he said this transcript

17:47:01 16  will serve as well of documentation of the decision is

17:47:04 17  the fact that Mr. Gerace had an issue that came up,

17:47:09 18  rather than put anything in doubt, contact Mr. Macaluso

17:47:13 19  and work with probation, which has always been the case

17:47:16 20  that people should contact the probation officer first.

17:47:19 21  They are well trained and they can handle this.  And he

17:47:25 22  can then work with probation to try and accommodate his

17:47:28 23  schedule and if there is some off schedule with one

17:47:31 24  contractors.  That is still available to Mr. Gerace to

17:47:42 25  do.  Nothing has changed the meantime since we came

1

17:47:45  2   before Judge Sinatra on this very issue.

17:47:49  3           Let me add as well, the defendant's own

17:47:52  4   determination, own evaluation, own review of the case is

17:47:55  5   also not a changed circumstance.  Simply because Mr.

17:47:59  6   Cohen, and, Judge, I think for the record, obviously you

17:48:01  7   know this, but just simply because Mr. Cohen to date has

17:48:05  8   reviewed some discovery, but not everything, as I said,

17:48:09  9   Jencks has not been turned over, that doesn't mean there

17:48:12 10   say changed circumstance in this case.  What is still

17:48:15 11   outstanding, Mr. Gerace has an indictment with five

17:48:30 12   charges against him and co-conspirators, and all of

17:48:31 13   which are serious, some more serious than others.  His

17:48:35 14   background, which has been problematic throughout this

17:48:38 15   time and there are no changed circumstances today that

17:48:49 16   should dictate any change in what Judge Sinatra has

17:48:52 17   already ordered.  Again, he went before Judge Valle and

17:48:56 18   you and Judge Sinatra, he is under the least restrictive

17:49:00 19   conditions that are imposed today, and shall not be

17:49:11 20   amended for any purpose.

17:49:13 21           I'll rely, again, your Honor, on our filing

17:49:15 22   papers, there is more information there, but I know

17:49:18 23   you're familiar with this case.

17:49:20 24           While I have the floor, though, and you'll

17:49:23 25   tell me if you want me to continue, the government also

1

17:49:25   2    made a cross motion though regarding the removal of

17:49:40   3    earned leave.  I don't know if you want to be heard at

17:49:44   4    this time on that.

17:49:45   5             MAGISTRATE JUDGE ROEMER:  Sure, go ahead.

17:49:46   6             MR. CULLINANE:  Judge, as we put in the

17:49:48   7    papers, the government was not aware at the time and

17:49:51   8    that is, obviously, in March of 2021, that while someone

17:49:55   9    is on home detention, they can acquire what is called

17:49:58  10    earned leave, and it's only been the last couple of

17:50:01  11    months that I can tell you Mr. Tripi and I have learned

17:50:05  12    about that.  And as I footnoted in our response and in

17:50:08  13    the cross motion section, we conferred with AUSA Tim

17:50:13  14    Lynch, Joe Guerra, and the former U.S. Attorney JP

17:50:16  15    Kennedy, none of whom knew about this opportunity for

17:50:20  16    the defendants to apply earned leave.  This is new

17:50:22  17    information to us.  It's not in the four corners of the

17:50:25  18    order setting conditions of release.  I've since had an

17:50:29  19    opportunity to review and become aware of documents that

17:50:35  20    are signed between the defendant himself and the

17:50:37  21    probation officer that document how a defendant

17:50:39  22    understands that he can acquire, he or she can acquire

17:50:43  23    earned leave during the course of their being on home

17:50:47  24    detention.  Those are not documents that the government

17:50:49  25    is a party to.  So I'm providing some information and

1

17:50:52 2    background that none of us knew and in fact of the

17:50:56 3    persons I mentioned I'm the least experience but you

17:50:58 4    have people obviously like Joe Guerra and JP Kennedy,

17:51:03 5    nearly 30 years in the office, on this opportunity of

17:51:07 6    earned leave.  And, Judge, we're obviously opposed to

17:51:11 7    any modification to curfew at this time.  But we're also

17:51:15 8    asking that earned relief be removed from Mr. Gerace.

17:51:19 9              MAGISTRATE JUDGE ROEMER:  I can tell you the

17:51:20 10   leave program has been in existence over 20 years here

17:51:24 11   in this court.  I hear you that maybe you didn't know

17:51:27 12   about it.  I discussed it with probation about, you

17:51:32 13   know, educating everyone about this program.  It's been

17:51:35 14   around for a long time.  So, but I'm not going to remove

17:51:42 15   -- the program is in existence, he is eligible for it,

17:51:46 16   he gets it.  I'm not changing the program or taking him

17:51:50 17   out of it at this time.

17:51:51 18             MR. CULLINANE:  Judge, I ask you to consider

17:51:52 19   the fact, as we put in the moving papers, the fact that

17:51:55 20   we've become aware that he has been in places that have

17:51:59 21   been part of the investigation in which criminal conduct

17:52:03 22   has occurred.  As a result, we're asking to you

17:52:05 23   seriously consider --

17:52:06 24             MAGISTRATE JUDGE ROEMER:  I'll let you do

17:52:07 25   this, if you want to submit to Court and the counsel a

1

17:52:10  2   list of places you don't think he should go, I'll listen

17:52:13  3   to that, or whatever.  But the only limitation on the

17:52:19  4   earned leave, it says, specifically, you can't go to a

17:52:23  5   bar or any place where its primary activity is serving

17:52:28  6   alcohol.  There are no other limitations.  So, if you

17:52:33  7   want to tell me, okay, he shouldn't be able to go here,

17:52:38  8   there or whatever, I'll consider that.  But I'm not

17:52:41  9   taking him off the program.  Okay?

17:52:44  10          MR. CULLINANE:  Judge, finally, the

17:52:46  11  government put in a motion for GPS data relating to Mr.

17:53:00  12  Gerace since he has been on this home detention.

17:53:03  13          MAGISTRATE JUDGE ROEMER:  When they go on

17:53:04  14  home detention, particularly Mr. Gerace, was on GPS,

17:53:16  15  there is a record of where he went.  Probation office

17:53:18  16  has reviewed that.  If he didn't go where he was

17:53:21  17  supposed to go, they would have violated.  And that

17:53:26  18  didn't happen and they informed me he went where he said

17:53:30  19  he was going to go.

17:53:37  20          MR. CULLINANE:  And I understand.  And,

17:53:39  21  Judge, that would be, as I think I heard you, that would

17:53:41  22  be, if he went, for example, a bar, which is a place

17:53:44  23  that primarily serves alcohol for only that purpose.

17:53:48  24          MAGISTRATE JUDGE ROEMER:  If they say, you

17:53:49  25  can go to this restaurant, this restaurant here, and you

1

17:53:52  2   can eat dinner.  If it shows that he didn't go to that

17:53:56  3   restaurant and went to another location, he would be in

17:54:01  4   violation.

17:54:08  5              MR. CULLINANE:  Correct.

17:54:08  6              MAGISTRATE JUDGE ROEMER:  That didn't

17:54:09  7   happen.

17:54:09  8              MR. CULLINANE:  Correct.

17:54:10  9              MAGISTRATE JUDGE ROEMER:  Okay.

17:54:11  10             MR. CULLINANE:  And we're not asking for a

17:54:13  11  violation of probation rules, we're asking because of

17:54:15  12  our investigation --

17:54:16  13             MAGISTRATE JUDGE ROEMER:  I'm denying your

17:54:17  14  request.  Okay.

17:54:18  15             MR. CULLINANE:  Thank you, Judge.

17:54:19  16             MAGISTRATE JUDGE ROEMER:  All right.

17:54:20  17  Anything else then, Mr. Cullinane?

17:54:21  18             MR. CULLINANE:  Not at this time, your

17:54:24  19  Honor.  Thank you.

17:54:24  20             MAGISTRATE JUDGE ROEMER:  Mr. Macaluso or

17:54:26  21  Officer Macaluso?

17:54:27  22             PROBATION:  Yes, your Honor.  In terms of

17:54:29  23  our office, we submitted a memo to the court dated

17:54:33  24  October first.  The defendant has been in compliance

17:54:35  25  with his conditions of release for his seven months on.

1

17:54:39  2   We have no objection with him going from home detention

17:54:43  3   to curfew staying on electronic monitoring with all

17:54:46  4   conditions to remain.

17:54:49  5            MAGISTRATE JUDGE ROEMER:  Okay.  You have no

17:54:50  6   objection if he goes from home detention to curfew.

17:54:53  7   What about going to his business?

17:54:57  8            PROBATION:  The business, your Honor, that

17:54:59  9   would be up to your Honor.  I did tell the defendant

17:55:02  10  that and I told Mr. Cullinane that if you wanted him

17:55:06  11  there at a certain time, I could put a zone around the

17:55:09  12  business and he could only be there for a certain time.

17:55:12  13  If he was on curfew from 7 to 7 and you only warranted

17:55:16  14  him at the business from 7 a.m. to noon, I could put a

17:55:20  15  zone around the business so we would be notified if he

17:55:24  16  stayed there any longer.

17:55:25  17           MAGISTRATE JUDGE ROEMER:  I have to ask.  Is

17:55:27  18  his ankle monitor any bigger than anybody else's ankle

17:55:32  19  monitor?

17:55:33  20           PROBATION:  No, your Honor.  It's a standard

17:55:36  21  GPS.  It's not bigger or smaller.  There is a smaller

17:55:39  22  unit, but it's RF, but he is on GPS and so it's a little

17:55:45  23  bit bigger.

17:55:45  24           MAGISTRATE JUDGE ROEMER:  Mr. Cohen.

17:55:46  25           MR. COHEN:  Briefly, sir.  The place where

1

17:55:49  2   my client went which was of concern to his U.S.

17:55:54  3   Attorney, he went with his parents to the casino for

17:55:59  4   gambling, which he had permission to do.  With regard to

17:56:02  5   the suggestion by the AUSA that there was no perjury and

17:56:07  6   since they didn't turn over the 3500 material to me, how

17:56:11  7   would I ever know?  Ms. Nigro went on the radio and on

17:56:17  8   social media and posted the things that she testified to

17:56:20  9   the grand jury about.  And if this Court has any doubt

17:56:24  10  as to whether Ms. Nigro committed perjury, we would

17:56:28  11  welcome a hearing.  And my first witness will be Joel

17:56:32  12  Daniels.  Lastly, Judge, well second to last, there are

17:56:37  13  scores of camera at the club at Pharaoh's on 999 Aero

17:56:44  14  Drive.  My client is not -- the government has not only

17:56:51  15  seized all of the footage, but we can do one better,

17:56:55  16  they can have live stream and they can watch what goes

17:57:05  17  on at the club.  And if they think there should be an

17:57:08  18  additional camera, although I think almost every quare

17:57:12  19  inch of that place is covered except the bathrooms,

17:57:16  20  Peter will put in cameras.  They are welcome to monitor.

17:57:21  21  Also, their claims, tens of thousands of materials that

17:57:25  22  they have against my client, if this were a civil case,

17:57:36  23  that would be sanctionable trying to bury the other side

17:57:39  24  with nonsensical alleged evidence.  But everything they

17:57:44  25  turned over to me, tens of thousands of pages, I had an

1

17:57:48  2   army at my office go through it.  And as the government

17:57:53  3   concedes, there was nothing there.  I'd like some of

17:57:56  4   that evidence that that will be the basis for another

17:58:00  5   motion, but the claim that --

17:58:03  6                   MAGISTRATE JUDGE ROEMER:  Well, we've

17:58:05  7   already filed motions in the case.

17:58:06  8                   MR. COHEN:  I beg your pardon?

17:58:08  9                   MAGISTRATE JUDGE ROEMER:  We've already

17:58:09 10   filed motions in the case, so any motion now would be

17:58:13 11   untimely.  I have the pretrial motions in front of me

17:58:15 12   now.

17:58:16 13                   MR. COHEN:  I see.  But I've been screaming

17:58:19 14   in from the rafters in the motions that have been filed,

17:58:23 15   I want the evidence that they have.  And if they are

17:58:26 16   saying there is no other evidence than the Jencks.

17:58:29 17                   MAGISTRATE JUDGE ROEMER:  The discovery rule

17:58:31 18   does not say you have to turn over all evidence in your

17:58:35 19   case, that is not the case, that is not what the rule

17:58:44 20   says.  There are certain types of evidence they have to

17:58:46 21   turn over.  They don't have to turn over all their

17:58:49 22   evidence.  They don't have to try their case before they

17:58:52 23   try their case.

17:58:52 24                   MR. COHEN:  I understand, your Honor.  But

17:58:54 25   we also, this Court has a long and rich history of

|           |    |                                                              |
|-----------|----|--------------------------------------------------------------|
|           | 1  |                                                              |
| 17:58:58  | 2  | rejecting trial by ambush.  And this Court has many          |
| 17:59:02  | 3  | times said, you know, the rules for turning over Jencks      |
| 17:59:06  | 4  | and Giglio and things after the jury has been sworn and      |
| 17:59:14  | 5  | this Court has said no, no, no.  Give the defense plenty     |
| 17:59:18  | 6  | of time to review this.  We usually get things well         |
| 17:59:21  | 7  | before.  But, in my case, I have nothing except an           |
| 17:59:24  | 8  | indictment and the tens of thousands of pages that show      |
| 17:59:27  | 9  | no criminality.  So, I'm a little bit in the dark with       |
| 17:59:32  | 10 | this entire case, and I think your Honor gets that.          |
| 17:59:35  | 11 | With that, Judge, I rely on my papers for the balance of     |
| 17:59:39  | 12 | my position.                                                 |
| 17:59:39  | 13 | MAGISTRATE JUDGE ROEMER:  Thank you, sir.                    |
| 17:59:40  | 14 | MR. COHEN:  Thank you.                                        |
| 17:59:41  | 15 | MAGISTRATE JUDGE ROEMER:  Mr. Cullinane,                     |
| 17:59:41  | 16 | anything?                                                     |
| 17:59:42  | 17 | MR. CULLINANE:  Just very briefly, your                      |
| 17:59:44  | 18 | Honor.  Thank you.  Judge, just as to the last point         |
| 17:59:49  | 19 | raised by Mr. Cohen.  The government has complied with       |
| 17:59:53  | 20 | its responsibilities and requirements for discovery,         |
| 17:59:56  | 21 | and, in particular, I referenced Jencks material, that       |
| 18:00:00  | 22 | was not required to be turned over at this time.  And        |
| 18:00:10  | 23 | that is what I was referring to earlier.  Other than         |
| 18:00:12  | 24 | that, we have complied with everything and they have         |
| 18:00:16  | 25 | everything in their hands.                                   |

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  |                                                              |
| 18:00:19 | 2  | MAGISTRATE JUDGE ROEMER:  By statute you're                  |
| 18:00:20 | 3  | not required.                                                |
| 18:00:21 | 4  | MR. CULLINANE:  Correct.  We have complied.                  |
| 18:00:23 | 5  | Two brief points, I want to make sure and just to be         |
| 18:00:26 | 6  | clear, I don't believe anything has changed between the      |
| 18:00:29 | 7  | time we appeared before Judge Sinatra and today.  Judge      |
| 18:00:33 | 8  | Sinatra, essentially, has already looked at this issue       |
| 18:00:35 | 9  | and made a determination on this and the government          |
| 18:00:37 | 10 | submits there is nothing to be changed today in terms of     |
| 18:00:40 | 11 | home detention.                                              |
| 18:00:41 | 12 | MAGISTRATE JUDGE ROEMER:  Let's just be                      |
| 18:00:42 | 13 | clear, and this, again, goes back to how we started off      |
| 18:00:46 | 14 | this argument.  Mr. Cohen, basically, I think, was           |
| 18:00:48 | 15 | arguing that he should not be detained, should not be on     |
| 18:00:52 | 16 | any type of conditions.  I said, well, that                  |
| 18:00:55 | 17 | determination has already been made.  The statute says I     |
| 18:01:00 | 18 | can modify those conditions.  If you wanted to say now I     |
| 18:01:06 | 19 | want him detained, then you have to show a change of         |
| 18:01:08 | 20 | conditions.  Right?                                          |
| 18:01:10 | 21 | MR. CULLINANE:  Correct.                                      |
| 18:01:10 | 22 | MAGISTRATE JUDGE ROEMER:  I think those are                  |
| 18:01:11 | 23 | two different parts of the statute.  And I think they        |
| 18:01:14 | 24 | are different.  I think you don't necessarily have to        |
| 18:01:17 | 25 | show that anything changed in order to modify the           |

1

18:01:20   2   condition.  I mean, that would generally be a reason why

18:01:23   3   it would be something changed or whatever.  But that is

18:01:26   4   not that part of the statute, right?

18:01:28   5           MR. CULLINANE:  What is permissible here is

18:01:30   6   that you have discretion and in terms of them presenting

18:01:33   7   information to you regarding Mr. Gerace, nothing has

18:01:36   8   changed that should dictate that there should be, within

18:01:41   9   your discretion, a change in any circumstances, that

18:01:52   10  Judge Sinatra, essentially, already heard about -- heard

18:01:54   11  from the parties, reviewed, asked great questions about

18:01:57   12  and made a determination at the end about.  For those

18:02:00   13  reasons, the government submits there should not be any

18:02:03   14  change from home detention to curfew.

18:02:06   15          Finally, Judge, you know, I just want to

18:02:09   16  raise this issue, though, and I heard your order before

18:02:12   17  about the fact that if we want to make a motion, ask for

18:02:16   18  the list of places where he has been, Judge.

18:02:19   19          MAGISTRATE JUDGE ROEMER:  No, no, no.  What

18:02:20   20  I said was you can make a motion saying he shouldn't be

18:02:24   21  able to go to these places.  I didn't say make a motion

18:02:29   22  to find out where he had been.  That is not what I said.

18:02:33   23          MR. CULLINANE:  Well, and I probably

18:02:34   24  misunderstood that.  Let me say that, regardless, either

18:02:39   25  where he is has been or where he is going, that is part

1

18:02:42  2   of the Government's investigation that is admittedly

18:02:46  3   continuing and the government is not interested and

18:02:49  4   would prefer not to publically acknowledge these

18:02:52  5   locations as part of its investigation.  So we ask that

18:03:03  6   is something we wouldn't have to place publically.

18:03:06  7        MAGISTRATE JUDGE ROEMER:  It's difficult for

18:03:07  8   me to tell him not to go somewhere if you don't tell me

18:03:14  9   where it is.

18:03:15  10       MR. CULLINANE:  Judge, we don't mind telling

18:03:17  11  you.  At this time, we don't want to publically

18:03:20  12  acknowledge that and provide that information to him

18:03:31  13  without it first being determined by this Court.  We

18:03:34  14  don't want to put that on a public docket so that the

18:03:39  15  defendant and counsel could see this.  We're asking that

18:03:42  16  is something that could be done under seal, ex parte, to

18:03:46  17  the Court.

18:03:46  18       MAGISTRATE JUDGE ROEMER:  No.

18:03:48  19       MR. CULLINANE:  Thank you, Judge.

18:03:49  20       MAGISTRATE JUDGE ROEMER:  All right.  I'll

18:03:51  21  consider the matter submitted.  Have a good day and stay

18:03:54  22  safe.

18:03:56  23       MR. COHEN:  Thank you, Judge.

24

25

1

2                              *    *    *

3                     CERTIFICATE OF REPORTER

4

5      I certify that the foregoing is a correct transcript

6  of the record to the best of my ability of proceedings

7  transcribed from the audio in the above-entitled matter.

8

9  S/ Karen J. Clark,  RPR

10  Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25