IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.                                                      19-CR-227-JLS

PETER GERACE, JR.,

              Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR MODIFICATION OF RELEASE CONDITIONS AND CROSS-MOTION FOR RECONSIDERATION OF RELEASE CONDITIONS**

The defendant, Peter Gerace, Jr., through his attorney, Steven M. Cohen, Esq., filed a motion for modification of release conditions on behalf of the defendant. See Doc. No. 190. The UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby files the government's response in opposition to the defendant's motion to modify his release conditions and further moves this Court to reconsider its prior decision and requests the Court order that the defendant not be permitted to accumulate "earned leave."

### I.     PROCEDURAL BACKGROUND

On February 25, 2021, the grand jury returned the Second Superseding Indictment against the defendant and his co-defendant, Joseph Bongiovanni. See Doc. No. 89. The indictment charges defendant Gerace with the following:

- Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371 (Count 2);

- Bribing a Public Official, in violation of 18 U.S.C. § 201(b)(1)(A) and (b)(1)(C) (Count 6);

- Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count 7);

- Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count 8); and,

- Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594(c) (Count 9).

Doc. No. 89. Co-defendant Bongiovanni is charged with thirteen additional counts, all of which relate to unlawful conduct he undertook while employed and serving as a Drug Enforcement Administration ("DEA") Special Agent.

As alleged and detailed in the Second Superseding Indictment, co-defendants Gerace and Bongiovanni orchestrated a years-long scheme to defraud the United States and the DEA. Id. In particular, the indictment alleges that defendant Gerace paid co-defendant Bongiovanni bribes in exchange for co-defendant Bongiovanni violating his official and lawful duties as a DEA Special Agent in order to protect and benefit defendant Gerace and others. Id. As defendant Gerace continued to corruptly pay off co-defendant Bongiovanni, defendant Gerace allegedly conspired to use his place of business, that is, Pharaoh's Gentlemen's Club located at 999 Aero Drive, Cheektowaga, New York, to distribute illegal narcotics and conspired to engage in the sex trafficking of women. Id. Generally, as a perusal of the Second Superseding Indictment readily establishes, most of the conduct underlying the

2

charges relates to defendant Gerace's presence at, involvement in, and control of, Pharaoh's Gentlemen's Club.  Id.

On February 28, 2021, pursuant to both the Second Superseding Indictment and related arrest warrant, law enforcement arrested the defendant in Florida (see Doc. No. 107); on March 1, 2021, the defendant appeared before United States Magistrate Judge Alicia O. Valle, United States District Court for the Southern District of Florida.  At the conclusion of the arraignment, Judge Valle ordered the defendant released on conditions as requested by the government, which specifically included a condition that the defendant stay away from Pharaoh's Gentlemen's Club.  See Doc. No. 93, Rule 5(c)(3) documents, including Conditions of Bond and Order of Removal; see also Transcript of Proceedings, March 2, 2021, attached hereto as **Exhibit A**.[1]  However, Magistrate Judge Valle commented, in part, "[w]ell, this was an interesting case because, but for the government's recommendation, this is a case where I think detention would be warranted."  **Exhibit A** at 25 (lines 3–5).

On March 4, 2021, the U.S. Probation provided an amended memorandum which established that the defendant committed an additional crime the day of his arraignment in Florida, that is, March 1, 2021.  In his original pretrial services interview, the defendant stated that he had used cocaine one-and-a-half years ago.  However, subsequent to his appearance before Magistrate Judge Valle (and subsequent to the government finalizing its

---

[1] The government notes that the transcript is dated incorrectly: while the arraignment's transcript states March 2, 2021, the parties, in fact, appeared before Judge Valle for the arraignment on March 1, 2021.

3

recommendation for pretrial conditions), the U.S. Probation Office learned that the defendant tested positive for cocaine. U.S. Probation Officer Andre McCray's March 4, 2021, Memorandum, which is attached hereto as **Exhibit C**, provided an update in pertinent part:

> **It is to be noted that the time of the defendant's initial drug test conducted in the Southern District of Florida, he tested positive for cocaine. Mr. Gerace reported taking some pills at a social gathering but, did not report cocaine use. At the time of the pretrial services interview, the defendant reported a history of cocaine use, with his last date of use being approximately one and a half years ago.**

**Exhibit C** at 1 (emphasis in original). Thus, the initial drug test conducted by the U.S. Probation Office in Florida determined that the defendant lied during his pretrial services interview with the U.S. Probation Office. Id.

On March 8, 2021, the defendant appeared before United States Magistrate Judge Michael J. Roemer, United States District Court for the Western District of New York, whereupon he was re-arraigned in this District and released upon the same conditions previously ordered by Judge Valle. See Doc. No. 105, Order Setting Conditions of Release; see also Transcript of March 8, 2021, Arraignment, attached as **Exhibit B**.

On March 10, 2021, the defendant, through his previous counsel, filed a motion to amend the Order Setting Conditions of Release which precluded him from being present at Pharaoh's Gentlemen's Club. See Doc. No. 108. On April 8, 2021, the government filed a response in opposition to the proposed amendment. See Doc. No. 110. The government argued, in part, that the bulk of the defendant's charged criminal conduct, and the danger he

4

poses to the community, is tied directly to his management, control, and involvement in Pharaoh's Gentlemen's Club.  Id.  The government requested that the defendant be precluded from going to a location, such as Pharaoh's Gentlemen's Club, where U.S. Probation could not easily visit, and where the defendant could meet face-to-face with his cohorts.  Id.

On April 14, 2021, United States District Court Judge John L. Sinatra, Jr. slightly modified the Order Setting Conditions of Release only to permit the defendant to work at Pharaoh's Gentlemen's Club between the hours of 7:30 a.m. and 10:30 a.m.  See Doc. Nos. 111–112.  Judge Sinatra further ordered that "while [the defendant is] on the premises of Pharaoh's Gentlemen's Club, you must be alone at all times, with the exception of a cleaning woman."  Doc. No. 112.  The Court also stated that the defendant must not visit Pharaoh's during any other time of the day and must not have any "verbal or written communication with any employees or staff, with the exception of a to-do list to the managers employed at Pharaoh's Gentlemen's Club."  Id.

On September 10, 2021, the defendant filed the instant motion to modify the terms set forth in both the Order Setting Conditions of Release and Judge Sinatra's modification.  See Doc. No. 190.  The defendant's motion to fails to address the defendant's initial lie to the U.S. Probation Office in Florida regarding the defendant's recent use of cocaine and the defendant's unnecessary presence at Pharaoh's Gentlemen's Club as a result of other employees who complete any number of tasks.  Id.  Rather, the defendant relies on his apparent compliance with the conditions imposed by the Court to suggest that the conditions should be modified.  See Doc. No. 190-1 at 10–11 (¶ 53).

5

However, the defendant's motion indicates that it appears the defendant has violated Judge Sinatra's modification order and therefore has not been compliant with the conditions set forth by this Court. Id. As previously addressed, Judge Sinatra ordered that the defendant is "to have no verbal or written communication with any employees or staff, with the exception of a to-do list to the managers employed at Pharaoh's Gentlemen's Club." Doc. No. 112. The defendant's instant motion, though, states that "it should be noted that these [Pharaoh's Gentlemen's Club] employees are able to come and go to Defendant's residence despite his inability to meet with them at his business." Doc. No 118 at 5–6 (¶ 21). Because the defendant is on home detention, the defendant is required to be at his home except for those specified activities in which he can leave (see Doc. No. 105 at 2 (¶ 8(v)(2)(ii)), the employees who "come and go" from the defendant's residence presumably speak with the defendant while at his residence.

Regardless, the defendant generally relies on the same reasons presented in the first motion to modify the conditions of release. Id. In the instant motion, the defendant has provided no additional information showing a change in circumstances that demonstrates that a modification to his conditions of release is necessary for the defendant. Id.

Finally, in anticipation of this filing, the government recently learned that the defendant has accumulated "earned leave" while on home detention and has used the "earned leave" to leave his residence for up to eight hours. As described herein, the defendant's ability to accumulate "earned leave" was not presented either in Court or in the formal Order Setting Conditions of Release (see Doc. No. 105) as part of the requirements of the Court's order of

home detention. The government has learned that the defendant has accumulated "earned leave" and has been present in locations that are part of the instant investigation regarding the defendant's charged conduct. As a result, the government moves this Court to revoke the defendant's ability to accumulate "earned leave" while on home detention.

As set forth below, the government respectfully requests that the Court deny the defendant's motion to permit him additional time to be present at Pharaoh's Gentlemen's Club, consume alcohol, and communicate with Pharaoh's Gentlemen's Club's employees. The defendant's motion amounts to a modification to a term of supervision that amounts to curfew, which the government strongly opposes.

The government further moves this Court to reconsider the Order Setting Conditions of Release and requests that the Court order the defendant not be permitted to accumulate "earned leave" from the U.S. Probation Office. As described herein, unbeknownst to the government, the defendant has accumulated "earned leave" of up to 8 hours per week as part of the terms of home detention supervision, which the government would have opposed had the government been aware that "earned leave" was a part of the supervision imposed in this case. Notably, "earned leave" is not referenced or addressed in either this Court's Order Setting Conditions of Release (see Doc. No. 105), or Judge Sinatra's modification (see Doc. Nos. 111–112), and the government is unaware of the statutory authority for U.S. Probation to grant "earned leave" as a matter of its policy and without judicial authorization.

II. **ARGUMENT**

A. **The Defendant Has Failed to Demonstrate that this Court Should Modify the Conditions of Release.**

When a defendant pursues a modification of pretrial conditions based on "new information," the defendant must proceed under Title 18, United States Code, Section § 3142(f)(2). A hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

> In United States v. Quinones, the court held:
>
> [the court] may reconsider that order and reopen the detention hearing at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event.

2016WL1694998 (W.D.N.Y. Apr. 28, 2016).

Indeed, other courts have similarly held that a defendant must present truly (and material) changed circumstances to require a modification of the terms of release previously ordered by the Court. See United States v. Kube, 2020 WL 1984178 (E.D. Cal. Apr. 27, 2020); United States v. Gay, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020); United States v. Wei Seng Phua, 2015 WL 127715, at *2 (D. Nev. Jan. 8, 2015) ("Contrary to defendants'

8

assertions, the government's factual support and reliance on 18 U.S.C. § 3142(f) are justified because this Court must consider whether new information exists that was not previously known or presented at the detention hearing to determine whether to modify the pretrial release condition at issue."); United States v. Smith, 2012 WL 3776868, at *3 (D. Ariz. Aug. 31, 2012) ("It appears Defendant is under the mistaken impression that federal law authorizes him to repeatedly file multiple motions to modify his release conditions until he gets the ruling he likes. Except for retaining Utah counsel, Defendant has not made any showing, much less the requisite showing, of a material change in circumstances over the last month that was not available at Defendant's hearings in Nevada."); United States v. Lopez, 2019 WL 2393609, at *1 (D. Nev. June 5, 2019); United States v. Barksdale, 2008 WL 2620380, * 2 n. 3 (E.D. Cal. July 1, 2008); United States v. Palega, 2008 WL 11449415, at *1 (D.S.D. Jan. 23, 2008).

As previously addressed by the government, at the defendant's arraignment on March 1, 2021, the government did not move for detention and instead requested that the defendant be released on a strict set of conditions. See Doc. No. 93. Notwithstanding the government's recommendation to Magistrate Judge Valle on March 1, 2021, the defendant presents a danger to this community, which is where his business is located and where he has friends and associates involved in these activities with him, including other Pharaoh's Gentlemen's Club employees.

In this case, the Second Superseding Indictment plainly establishes that the defendant has used Pharaoh's Gentlemen's Club to engage in serious federal crimes. See Doc. No. 89. In returning the pending Second Superseding Indictment, the Grand Jury found probable

cause that, among other things, the defendant paid bribes to protect himself and his business from federal narcotics investigations (see Count 2, ¶¶ 7, 9, 18); that the DEA agent that the defendant bribed interceded on the defendant's behalf with U.S. Probation and made false representations to the FBI that the defendant was a DEA informant in order to dissuade the FBI from continuing an investigation into the defendant and Pharaoh's (id. at ¶¶ 8, 10, 11, 13, 14, 19); that the defendant called the DEA agent he was bribing after a stripper overdosed at Pharaoh's whereupon the co-defendant DEA agent advised the defendant to "get her [the overdosing stripper] out" of Pharaoh's (id. at ¶26); that the defendant possessed with intent to distribute and distributed cocaine over an approximate 13-year period (id. at ¶34); that several female dancers overdosed in Pharaoh's over an approximate 9-year period (id. at ¶35); and, that the defendant maintained Pharaoh's to facilitate prostitution, to obtain sex in exchange for drugs and money, and for use and distribution of cocaine, cocaine base, Adderall, marijuana, and heroin (id. at ¶36).  See also Counts 6-9.

Moreover, as detailed in the Pretrial Services Report, on June 26, 2006, the defendant was convicted of a federal felony, namely, Conspiracy to Defraud the United States, and United States District Court Judge William M. Skretny sentenced the defendant to five months of imprisonment to be followed by 36 months of supervised release.  While on Supervised Release in that case, the defendant reported that he was employed at his parents' restaurant, Pietro's Restaurant on Transit Road.  However, U.S. Probation received information that the defendant was, in fact, operating Pharaoh's Gentlemen's Club and distributing cocaine from that location.  As such, the defendant's history and instant charges

10

show that the defendant has continually and repeatedly used Pharaoh's Gentlemen's Club as a place to conduct unlawful conduct regardless of any type of supervision from the Court.

Following the defendant's first motion to modify his conditions of release (see Doc. No. 108), which the government opposed (see Doc. No. 110), on April 14, 2021, United States District Court Judge John L. Sinatra, Jr. slightly modified the Order Setting Conditions of Release only to permit the defendant to work at Pharaoh's Gentlemen's Club between the hours of 7:30 a.m. and 10:30 a.m. See Doc. Nos. 111–112. Judge Sinatra further ordered that "while [the defendant is] on the premises of Pharaoh's Gentlemen's Club, you must be alone at all times, with the exception of a cleaning woman." Doc. No. 112. The Court also stated that the defendant must not visit Pharaoh's during any other time of the day and must not have any "verbal or written communication with any employees or staff, with the exception of a to-do list to the managers employed at Pharaoh's Gentlemen's Club." Id.

The government again opposes any modification to the pretrial conditions that permit the defendant to be present at Pharaoh's in excess of what Judge Sinatra has already deemed appropriate. While the defendant has moved for a modification based on renovations at Pharaoh's, the current modification ordered by Judge Sinatra (see Doc. No. 112) does not prevent the defendant from accomplishing any of the issues presented in his motion. Indeed, Judge's Sinatra's modification permits the defendant to be present at Pharaoh's for three hours every day; during those three hours, the defendant has ample opportunity to check on the progress of any construction or renovation. Id. The order also does not preclude the

11

defendant from speaking to the contractors conducting work at Pharaoh's Gentlemen's Club (assuming these persons are not also employees of Pharaoh's). Id.

The defendant has also failed to demonstrate that the Court should modify the previous modification permitting the defendant to be present at Pharaoh's Gentlemen's Club for three hours per day. See Doc. No. 190. As previously addressed by the government, the business functions of Pharaoh's, such as ordering food, alcohol, paying bills, etc., can be successfully accomplished without the defendant's physical presence at the business. The defendant has been in this industry for a lengthy period of time and can remedy a number of circumstances or issues by simply calling or emailing one of the routine vendors. Moreover, the defendant employs individuals, including John Ermin and Nicholas Ciechalski, who both handle a variety of aspects of the operations at Pharaoh's, none of which require the defendant's presence. Therefore, the defendant's additional presence at the establishment is not necessary.

Further, the government objects to the defendant's request to remove the condition that the defendant abstain from "any" use of alcohol. See Doc. No. 190-1 at 4–5 (¶ 16). As previously detailed herein, on March 4, 2021, the U.S. Probation informed the parties that on March 1, 2021, the defendant lied to the U.S. Probation Office regarding his recent use of cocaine. While the defendant stated that he had last used cocaine one-and-a-half years ago, the U.S. Probation Office reported that he tested positive for the presence of cocaine, which indicated recent use. Additionally, the defendant previously violated his term of supervised release by distributing cocaine at Pharaoh's, which is also the subject of the pending Second

12

Superseding Indictment. Therefore, the Court appropriately determined that the defendant should abstain from any substances, including alcohol, as the defendant has a history of possessing, using, and distributing cocaine and, equally significant, lying to the U.S. Probation Office about his involvement with cocaine. The government opposes any modification to the order that the defendant refrain from any consumption of alcohol.

Finally, as proffered by the government while appearing before Judge Sinatra on April 14, 2021, the government has investigated and continues to investigate threats made towards witnesses in this case. See Doc. No. 118 at 6–7 (lines 19 through 12). In particular, in November of 2019, an individual received threatening messages via Facebook from a close associate of the defendant. Id. In fact, the investigation has indicated that the defendant was present with the close associate when that close associate used Facebook messenger to send the threat to the individual. Id. Similarly, the defendant has initiated New York State civil actions against persons whom the defendant believes are cooperating with federal investigators and has therefore attempted to circumvent federal discovery laws. Id. at 7–8 (lines 13 through 3).

In this case, the defendant's motion for a modification of the conditions of release has not presented any new information to the Court or pointed to information or data that the court "overlooked" during the detention hearing or subsequent hearing regarding the defendant's motion for release from custody. See United States v. Spencer, 2011 WL 773025, at *3 (W.D.N.Y. Feb. 25, 2011). Rather, the defendant's motion has set forth an opportunity for the government to present information regarding multiple reasons for the Court to deny

13

the defendant's motion. A defendant's compliance with conditions of pretrial release is not the required new, material information to reopen a detention hearing or allow a court to proceed to the merits of a petition to modify conditions. See United States v. Kube, 2020 WL 1984178, *5 (E.D. Cal. Apr. 27, 2020) ("It is presumed that the defendant will abide by the conditions imposed and his demonstrated ability to do so is what allows him to remain on pretrial release. The fact that Defendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing."); see also United States v. Gay, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020). The instant motion does not provide the Court with any information about a change or changes in circumstances that suggests that this Court should modify the Order Setting Conditions of Release.

### B. The Government Moves for Revocation of the Defendant's Ability to Acquire "Earned Leave" While on Home Detention.

In anticipation of this filing, the government recently learned that the defendant has accumulated "earned leave" while on home detention and has used his "earned leave" to leave his residence for up to eight hours at a time. As described herein, the defendant's ability to accumulate "earned leave" was not presented either in Court or in the formal Order Setting Conditions of Release (see Doc. No. 105) as part of the requirements of the Court's order of home detention and thus the government was not aware that this was part of the supervision of the defendant.

"Home detention" is a type of supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. See USSG § 5F1.2, application note 1. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized. Id. Electronic monitoring is an appropriate means of surveillance for home detention. Id. However, alternative means of surveillance may be used if appropriate. Id.

In the Western District of New York, the U.S. Probation Office uses Form AO 199A (title "Order Setting Conditions of Release (Rev. 05/12)"). See generally Doc. No. 105. As described therein, the form's language regarding home detention tracks the language used in the U.S. Sentencing Guidelines manual to describe the requirements and restrictions of home detention. Id.; see also See USSG § 5F1.2, application note 1.

The government notes that neither the U.S. Sentencing Guidelines manual nor the Order Setting Conditions of Release describe, reference, or suggest that a defendant can accumulate "earned leave" while on home detention. The government has learned that the U.S. Probation Office has instituted, as a policy, the ability of defendants to acquire "earned leave" while on home detention. Alternatively, the government has also learned that a person cannot accumulate "earned leave" while on home confinement.

In this case, the Order Setting Conditions of Release ordered by this Court on March 19, 2021, states that the defendant, among other conditions, must

> [p]articipate in one of the following location restriction programs and abide by all the requirements of the program which will be monitored by a Global Positioning Satellite system (G.P.S.). You shall pay all or part of the costs of the program based upon your ability to pay as determined by the officer.
> . . . .
> Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer.

Doc. No. 105 at 2. The Order Setting Conditions of Release does not describe, reference, or suggest that a defendant can accumulate "earned leave" while on home detention.[2]

The government has learned that the defendant has accumulated "earned leave" giving him up to 8 hours of free time per week, subject to verification by U.S. Probation, and independently the government has learned that the defendant has been present in a location that is part of the instant investigation regarding the defendant's charged conduct. As a result, the government moves this Court to revoke the defendant's ability to accumulate "earned leave" while on home detention.

While the government acknowledges that the clause "or other activities as preapproved by the officer" is included in the terms of home detention, as described in the

---

[2] The government adds that numerous supervisory (and experienced) Assistant United States Attorneys in the U.S. Attorney's Office in Buffalo were unaware until recently of the policy that defendants accumulate "earned leave" while on "home detention" as part of pretrial supervision.

16

Order Setting Conditions of Release (see Doc. No. 105), the clause follows itemized permissible exceptions to home detention, such as medical, legal, or employment appointments, and thus appears to permit the U.S. Probation Office to permit the defendant an absence from his residence for good cause and a legitimate necessity. Because of the absence of any reference to "earned leave" when considering this type of pretrial supervision to be served at the defendant's residence, the government was not aware of this term of home detention and would not have agreed to home detention as a condition at the outset of this case had it been aware of the defendant's ability to "earn leave" while under pre-trial supervision.

The government has learned that the defendant has accumulated "earned leave," which the U.S. Probation Office has awarded him, and used the leave to visit various establishments on Saturday evenings. The defendant is charged in this case with multiple conspiracies; the crux of the allegations relate to his agreement, with others, to violate the law and thus engage in a conspiracy. Certainly, face-to-face meetings are one way that conspiracies are initiated, continue, and avoid detection. The investigation to date has indicated that the defendant recently used "earned leave" to visit an establishment where he previously engaged in unlawful conduct during the time period alleged in the Second Superseding Indictment.[3]

---

[3] Relevant Grand Jury transcripts and FBI 302 interviews are available for the Court's *ex parte in camera* review, if necessary.

As described previously herein, the indictment charges the defendant in five counts for violations of Conspiracy to Defraud the United States, Bribing a Public Official, Maintaining a Drug-Involved Premises, Conspiracy to Distribute Controlled Substances, and Conspiracy to Commit Sex Trafficking. See Doc. No. 89. The charges are serious and carry substantial penalties; the government is investigating threats made against an individual and the defendant has attempted to controvert federal discovery laws in order to determine who may be cooperating against him. The defendant has a significant history involving cocaine possession, distribution, and use; he recently lied to the U.S. Probation Office about his recent use of cocaine.

Based on the above information, including the pending charges, history and characteristics of the defendant, and recent investigation of a threat towards an individual, had the government been aware that the defendant could accumulate "earned leave" and visit establishments on Saturday evenings, the government would not have agreed to home detention for the defendant and would have, at a minimum, moved instead for home confinement. In light of the government's previous position, the government requests that Court modify the defendant's Order Setting Conditions of Release to remove the defendant's ability to accumulate "earned leave." The government requests that this Court review the signed Order Setting Conditions of Release and order that the U.S. Probation Office not grant the defendant "earned leave."

C. **The Government Moves for Disclosure of GPS Information Collected by the U.S. Probation Office.**

In this case, the Order Setting Conditions of Release ordered by this Court states that the defendant "which will be monitored by a Global Positioning Satellite system (G.P.S.)" while "[p]articipat[ing]" in home detention. See Doc. No. 105 at 2. In addition, as previously addressed, the government has learned that the defendant has accumulated and used "earned leave" to visit different locations in Western New York. Again, as stated herein, the investigation to date has indicated that the defendant recently used "earned leave" to visit an establishment where he previously engaged in unlawful conduct within the charged time period.

Based upon law enforcement's investigation and the evidence presented before the grand jury, there are relevant locations in this investigation that the defendant should not visit. However, the U.S. Probation Office, through no fault of their own, would not and does not know which locations are relevant in this case. Because of the sensitivity of this investigation, and adherence to grand jury secrecy, the U.S. Attorney's Office is unable to share that information publicly. As a result, the government requests the GPS data collected by the U.S. Probation Office for places the defendant has visited while on "earned leave" status as part of his supervision by the U.S. Probation Office.

**CONCLUSION**

Based upon the information submitted herein, the defendant's motion to reduce his release conditions should be denied; the defendant should not be permitted additional time to

be present at Pharaoh's Gentlemen's Club, to consume alcohol, and to communicate with Pharaoh's Gentlemen's Club's employees. The government further respectfully requests the Court review the signed Order Setting Conditions of Release and order that the U.S. Probation Office not grant the defendant "earned leave" as part of the terms of home detention ordered by the Court.

DATED: Buffalo, New York, October 4, 2021.

| | |
|---|---|
| COREY R. AMUNDSON<br>Chief | JAMES P. KENNEDY, JR.<br>United States Attorney |
| BY: s/JORDAN DICKSON<br>Trial Attorney<br>Public Integrity Section<br>U.S. Department of Justice<br>Criminal Division<br>1301 New York Ave. NW, Suite 1000<br>Washington, D.C. 20530<br>202-597-0508<br>Jordan.Dickson@usdoj.gov | BY: s/JOSEPH M. TRIPI<br>Assistant United States Attorney<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>716/843/5839<br>Joseph.Tripi@usdoj.gov |
| | BY: s/BRENDAN T. CULLINANE<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>716/843-5875<br>Brendan.Cullinane@usdoj.gov |