STATE OF NEW YORK : COUNTY COURT
COUNTY OF ERIE : CRIMINAL TERM : PART 7
_____

THE PEOPLE OF THE STATE OF NEW YORK

  - vs -                                    INDICTMENT # 02284-2019

                                SENTENCING

KATRINA NIGRO aka KATRINA GERACE,

      Defendant.
_____

                       25 Delaware Avenue
                       Buffalo, New York
                       August 19, 2021

B e f o r e:

        HONORABLE KENNETH F. CASE
          County Court Judge

A p p e a r a n c e s:

        JOHN J. FLYNN, ESQ.
        Erie County District Attorney
        BY:  CHRISTOPHER M. McCARTHY, ESQ.
        Assistant District Attorney
        Appearing for the People.

        BRENT SALEVSKY, ESQ.,
        Appearing for the Defendant.

P r e s e n t:

        KATRINA NIGRO,
        Defendant.

                    AMY L. HAYES
              Senior Court Reporter

*People v. Nigro*

2

1        MR. McCARTHY:  Your Honor, the next matter

2   before you is People of the State of New York versus

3   Katrina Gerace, also known as Katrina Nigro, file number

4   02284-2019.

5        Your Honor, Miss Gerace, AKA Nigro, appears

6   before you along with her attorney, Mr. Brent Salevsky.

7   And we're here for the purposes of sentencing.

8        Your Honor, you will recall that Miss Gerace

9   pled before you to one count of vehicular assault in the

10  second degree, under Penal Law 120.03 sub one, a class E

11  felony.  As a result of that plea, a pre-sentence

12  investigation report has been created by the probation

13  department.  I'm in receipt of that, and it is factually

14  accurate.  Judge, we would also note the presence of the

15  victims in this matter, Michael and Lissa Jasinowski, and

16  their civil counsel, Mr. John Fromen, present in the

17  courtroom.

18        Judge, they don't wish to speak, but they have

19  wrote an extensive letter to the Court, which we have

20  submitted, and the Court has acknowledged receipt of as

21  well, along with the defense counsel.

22        Your Honor, that being said, the pre-sentence

23  report asks for a period of incarceration.  The People

24  agree with that.  We know the victims are seeking a period

25  of incarceration.  And we would respectfully make that

AMY L. HAYES
Senior Court Reporter

*People v. Nigro*

3

1      request before sentencing.  Thank you.

2              MS. SALEVSKY:  Brent Salevsky on behalf of Miss

3      Nigro, Judge.  Firstly, I have had an opportunity to

4      review the pre-sentence investigation.  I don't find any

5      material errors or omissions, and we're prepared to move

6      forward today.

7              THE COURT:  Thank you.

8              MR. SALEVSKY:  Thank you, Judge.  And I just ask

9      to be heard at the appropriate time.

10             THE COURT:  You certainly may be heard on behalf

11     of your client with regard to sentence.

12             MR. SALEVSKY:  Thank you, Judge.  Before you

13     today, Miss Nigro, she's thirty-nine years old.  She

14     stands convicted of a felony DWI that occurred in October

15     of 2019.  I think most importantly, Judge, Ms. Nigro

16     hasn't been sitting on her hands since October of 2019.

17     She, in fact, I would say, has done more to demonstrate

18     her sobriety to this Court than any defendant I've

19     represented before.  She proactively sought out engagement

20     with Buffalo's DWI Court.  And as Your Honor is surely

21     aware, that includes the installation of a SCRAM monitor,

22     a monitor to monitor alcohol in her system.  In the normal

23     course she would wear that for a period of six months.

24     She's now been wearing that device for more than a year.

25     That's come at a cost to her of several thousand dollars

AMY L. HAYES
Senior Court Reporter

*People v. Nigro*

4

1    as well, Judge.  She completed substance abuse counseling

2    at ECMC.  That was, of course, that took approximately two

3    years for her to complete.  Recognizing the underlying

4    issues with her dependency, she also engaged in trauma

5    therapy at ECMC.  She's continuing in that program to

6    date.  As a part of DWI Court, Judge, she was required to

7    do regular check-ins there, toxicology tests, in addition

8    to that SCRAM monitor that I previously discussed.

9         Personally, she's taken this matter very

10   seriously.  She's participated closely with me and the

11   defense on the case.  She has repeatedly expressed remorse

12   towards the victims in this case.  She understands the

13   serious nature of the case.  In addition to the, I'll say

14   extensive treatment that she's completed while this case

15   has been pending, she's also been working to better

16   herself personally.  She's completed numerous educational

17   courses through Cornell.  She's completed an opiate

18   overdose course.  She's living with her parents now, whom

19   support her and are helping her with her sobriety.

20        Judge, it's my position that the interest of

21   justice here would be served by a sentence to a term of

22   probation.  I would ask that conditions include that she

23   continue in mental health counseling and any recommended

24   substance abuse treatment.  I think that a sentence to

25   probation would act as a deterrent for her and would

*People v. Nigro*

5

1     ultimately meet the end goals to the criminal justice

2     system, which would be rehabilitation.

3              THE COURT:  Thank you.  Ms. Nigro, you have a

4     right to speak on your own behalf before the Court imposes

5     sentence.  Is there anything you'd like to say?

6              THE DEFENDANT:  Sure.  I am a completely

7     different person after eighteen years in the adult

8     industry, married to an organized leader of crime.  I've

9     seen pretty much everything horrible you can fathom, from

10    different judges, politicians, and everything going on.

11    It's an extreme trauma.  It started in 2013 with a

12    traumatic brain injury, being held hostage upstairs at

13    Pharaoh's.  I have not been able to get help, including an

14    incident that he had with a girl who like manipulated me

15    and now has some random, trying to set charges that are

16    all lies.  It has been ongoing of my mugshots posted on

17    his Facebook, all this stuff, when he's not legally

18    supposed to do it.  And the FBI talked to me yesterday,

19    and they'll probably meet me in jail or wherever I am to

20    discuss this further with Tripi.  It really does, the

21    federal case completely affects this.  And between Judge

22    Michalski in charge of it and in between my suicide, I

23    wasn't trying to drunk drive, I tried to kill myself.  It

24    was a horrible accident.  I never meant to kill myself and

25    hit another car.  I was driving to Zoar Valley.  I had no

*People v. Nigro*

6

1    value, I had nothing, and I just couldn't do it anymore.

2    But I went already on my own into extensive trauma

3    therapy.  I work with Brandy Gross, who's a federal

4    witness victims coordinator.  And she found the right

5    counselors because I couldn't get them, because I can't

6    talk about the case, which is the trauma of it.  It's been

7    absolutely hell.  And I did try to kill myself three

8    times.  And this is the first time I'm stable.  You know,

9    and like I really made a difference, I've been studying.

10   I got accepted into Yale.  I would like to start it

11   September 15th, but I can push it off, obviously, until

12   the next semester.  My family and everyone appreciates

13   everything I've done.  And over the course since COVID,

14   I've done a lot for neighbors and everything, volunteer

15   work, and got my life stabilized, financially and

16   everything.

17              THE COURT:  Thank you.  First, to Lissa and

18   Michael Jasinowski, thank you for being here.  I can't

19   begin to imagine how difficult it is for you to be sitting

20   here.  But more importantly, how difficult it was to live

21   through this, and you continue to live through it.  You

22   very easily could have been killed in this accident, and

23   on your anniversary left your two young children without

24   parents.  And I guess, Miss Nigro, when I look at your

25   record, I certainly am cognizant of, at least to some

*People v. Nigro*

7

1    degree, as well as I could be --

2                    THE DEFENDANT:  Of course.

3                    THE COURT:  -- based on what's in the

4    pre-sentence report, of your circumstances.  And from

5    reading the pre-sentence report, I have some idea of what

6    you have been through.  But, in this case, I think your

7    blood came back at a point two zero.  You were operating a

8    car.  And these fine people over here didn't deserve what

9    they got.

10                   THE DEFENDANT:  I agree.

11                   THE COURT:  They're dealing with a lifetime

12   of --

13                   THE DEFENDANT:  I absolutely agree.

14                   THE COURT:  And with your record, coupled with

15   what they have to deal with.  And I do agree that you

16   voluntarily placed yourself in the DWI C.O.U.R.T.S.

17   Program and have been wearing the ankle monitor.  And of

18   course, I'm taking all of that into consideration.  And I

19   hope that what you have said here today is accurate.  But

20   I think from everything I've heard now and read, the best

21   thing, at this point, is for me to impose the maximum

22   sentence I can while still placing you on probation so

23   that there are some concrete sanctions here, followed by

24   continued supervision.  Because I think that's not only in

25   your best interest, I think it's in the best interest of

*People v. Nigro*

8

1   the community to make sure that you continue to remain

2   sober.

3           And so for your conviction then for vehicular

4   assault in the second degree, a class E felony, it's

5   hereby the judgment of the Court that you are sentenced to

6   a split sentence, which is a definite sentence of six

7   months in the County Correctional Facility, followed by

8   five years of probation.  The conditions of your probation

9   are on a two-page document that our court officer is about

10   to hand you.  You can review those with your attorney and

11   sign the bottom of the second page to indicate that you

12   have reviewed and understand each of those conditions of

13   probation.  Of course, you must install an ignition

14   interlock device on any vehicle owned or operated by you

15   for the duration of your probation.  Although, I don't

16   think, looking at your record, you will ever have a New

17   York State driver's license again.

18           THE DEFENDANT:  No, I have no desire for one.

19   After my accident, I was seriously injured.  I have mesh

20   in my stomach and metal arms, and I barely started moving

21   out of my wheelchair only six months ago.  In all reality,

22   I almost feel that the six months isn't the most

23   beneficial because, as a leader in organized crime, those

24   people are comfortable for me.  And I worked so hard to

25   get out of the strip clubs and out of the industry and

AMY L. HAYES
Senior Court Reporter

*People v. Nigro*

1   pawn shops, and I'm just putting myself with them.  And I

2   only started viewing their thoughts as wrong.  I almost

3   would rather have the ankle monitor on for a whole other

4   year and stick with a harder treatment program, instead of

5   having my parents and everyone take care of me like I'm a

6   burden, instead of having taxpayers pay for this.  I can

7   afford the monitor.  I can afford transportation.  I have

8   two other court cases going on in the federal court case,

9   which I do have to work and talk to the FBI and Tripi on a

10  pretty weekly basis.  There's a lot going on with that

11  court case.  But as me, it shows I'm an adult by taking on

12  responsibilities on my own instead of the Court, instead

13  of COs doing everything for you, instead of sitting around

14  reading magazines.

15           MR. SALEVSKY:  I think what she's getting at,

16  Judge, is she believes that a term with, a continuing term

17  with the ankle bracelet would be more beneficial to her

18  than a term of incarceration.  Would you reconsider,

19  Judge?

20           THE COURT:  I won't.  But I appreciate your

21  argument.

22           MR. SALEVSKY:  Thank you, Your Honor.

23           THE COURT:  Your license is also revoked for one

24  year.  There's a mandatory surcharge of three hundred

25  dollars, a crime victim assistance fee of twenty-five

*People v. Nigro*

1    dollars, and a DNA databank fee of fifty dollars, which

2    can be paid through prison funds or within sixty days of

3    your release.

4              MR. SALEVSKY:  Thank you, Your Honor.

5              THE COURT:  That's the sentence of the Court.

6    You have thirty days within which to appeal.

7              MR. SALEVSKY:  Thank you, Your Honor.

8

9                    *       *       *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*People v. Nigro*

```
 1                        C E R T I F I C A T I O N

 2

 3

 4       Date:  8/24/21

 5

 6

 7         I certify that the foregoing 10 pages are a correct

 8       transcription of the proceedings recorded by me in this matter.

 9

10

11                        _____
                          AMY L. HAYES,
12                        Senior Court Reporter.

13

14

15

16

17

18

19

20

21

22

23

24

25
```