IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

      v.                                                  19-CR-227

PETER GERACE JR.,

           Defendant.

───────────────────────────────────────────────

## OPPOSITION TO DEFENDANT GERACE'S MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE

The defendant, Peter Gerace, Jr., through his attorney, Steven M. Cohen, Esq., filed a motion for reconsideration of release conditions previously imposed by this Court. *See* Doc. No. 239. The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi and Brendan T. Cullinane, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby files the government's response in opposition to the defendant's motion for reconsideration of his release conditions.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2021, the grand jury returned the Second Superseding Indictment against the defendant and his co-defendant, Joseph Bongiovanni. *See* Doc. No. 89. The indictment charges the defendant with the following:

- Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371 (Count 2);

- Bribing a Public Official, in violation of 18 U.S.C. § 201(b)(1)(A) and (b)(1)(C) (Count 6);

- Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count 7);

- Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count 8); and,

- Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594(c) (Count 9).

Doc. No. 89. Co-defendant Bongiovanni is charged with thirteen additional crimes, all of which relate to unlawful conduct he undertook while employed and serving as a Drug Enforcement Administration ("DEA") Special Agent.

As alleged and detailed in the Second Superseding Indictment, co-defendants Gerace and Bongiovanni orchestrated a years-long scheme to defraud the United States and the DEA. *Id*. In particular, the indictment alleges that the defendant paid co-defendant Bongiovanni bribes in exchange for co-defendant Bongiovanni violating his official and lawful duties as a DEA Special Agent in order to protect and benefit the defendant and others. *Id*. As the defendant continued to corruptly pay off co-defendant Bongiovanni, the defendant allegedly conspired to use his place of business, that is, Pharaoh's Gentlemen's Club located at 999 Aero Drive, Cheektowaga, New York, to distribute illegal narcotics and conspired to engage in the sex trafficking of women. *Id*. As the Second Superseding Indictment readily establishes, most of the conduct underlying the charges relates to the defendant's presence at, involvement in, and control of, Pharaoh's Gentlemen's Club. *Id*.

On February 28, 2021, pursuant to both the Second Superseding Indictment and related arrest warrant, law enforcement arrested the defendant in Florida. *See* Doc. No. 107. On March 1, 2021, the defendant appeared before United States Magistrate Judge Alicia O. Valle, United States District Court for the Southern District of Florida. At the conclusion of the arraignment, Judge Valle ordered the defendant released on conditions as requested by the government, which specifically included a condition that the defendant stay away from Pharaoh's Gentlemen's Club. *See* Doc. No. 93; Rule 5(c)(3) Documents, including Conditions of Bond and Order of Removal; *see also* Transcript of Proceedings, March 2, 2021, attached hereto as **Exhibit A**. However, Magistrate Judge Valle commented, in part, "[w]ell, this was an interesting case because, but for the government's recommendation, this is a case where I think detention would be warranted." **Exhibit A** at 25.

On March 4, 2021, the U.S. Probation Office provided an amended memorandum which established that the defendant committed an additional crime on March 1, 2021, the day of his arraignment in Florida. In his original pretrial services interview, the defendant stated that he had last used cocaine one-and-a-half years ago. However, subsequent to his appearance before Magistrate Judge Valle (and subsequent to the government finalizing its recommendation for pretrial conditions), the defendant tested positive for cocaine. U.S. Probation Officer Andre McCray's March 4, 2021, Memorandum, which is attached hereto as **Exhibit B**, provided an update in pertinent part:

> "It is to be noted that [at] the time of the defendant's initial drug test conducted in the Southern District of Florida, he tested positive for cocaine. Mr. Gerace reported taking some pills at a social gathering but, did not report cocaine use. At the time of the pretrial services interview, the defendant reported a history of cocaine use, with his last date of use being approximately one and a half years ago."

3

**Exhibit B** at 1. Thus, the initial drug test conducted by the U.S. Probation Office in Florida determined that the defendant was using illegal narcotics and lied during his pretrial services interview with the U.S. Probation Office. *Id*.

On March 8, 2021, the defendant appeared before United States Magistrate Judge Michael J. Roemer, whereupon he was re-arraigned in this District and released upon the same conditions previously ordered by Judge Valle. *See* Doc. No. 105, Order Setting Conditions of Release; *see also* Transcript of March 8, 2021, Arraignment, attached as **Exhibit C**.

On March 10, 2021, the defendant, through his previous counsel, filed a motion to amend the Order Setting Conditions of Release which precluded him from being present at Pharaoh's Gentlemen's Club. *See* Doc. No. 108.  On April 14, 2021, this Court slightly modified the Order Setting Conditions of Release.  Specifically, the Court modified the defendant's conditions only to permit the defendant to work at Pharaoh's Gentlemen's Club between the hours of 7:30 a.m. and 10:30 a.m.  *See* Doc. Nos. 111, 112.  The Court further ordered that "while [the defendant is] on the premises of Pharaoh's Gentlemen's Club, you must be alone at all times, with the exception of a cleaning woman."  Doc. No. 112.  The Court also stated that the defendant must not visit Pharaoh's during any other time of the day and must not have any "verbal or written communication with any employees or staff, with the exception of a to-do list to the managers employed at Pharaoh's Gentlemen's Club." *Id*.

On September 10, 2021, the defendant filed another motion to modify the terms set forth in both the Order Setting Conditions of Release and this Court's modification. *See* Doc. No. 190. Specifically, the defendant requested (1) that his electronic monitoring be changed from home detention to a curfew; (2) that any restrictions on his ability to be present at his place of business be removed; and (3) that the condition prohibiting him from using alcohol be eliminated. *Id*. The government opposed the defendant's motion and incorporates its opposition as if set forth fully herein. *See* Doc. No. 202. Following a hearing, Magistrate Judge Roemer denied the defendant's motion to modify his conditions of release. Doc. No. 214. Magistrate Judge Roemer found the defendant's arguments—namely, (1) the current restrictions make it difficult for him to run his business; (2) the weight of the evidence against him is weak; and (3) he has thus far been compliant with his conditions of release—to be "unpersuasive." *Id*. In denying the defendant's motion, Magistrate Judge Roemer reasoned, in part,

> "The charges in this case against defendant are serious, involving bribing a public official, drug dealing and sex trafficking. The presiding judge in this case, Hon. John L. Sinatra, Jr., has already determined that the current conditions of release are the least restrictive combination of conditions necessary to assure reasonably the safety of any other person and the community . . . Defendant has failed to provide sufficient reasons to modify now these conditions. While the Court understands that defendant's conditions of release might make it more difficult for him to run his business, Judge Sinatra already considered that argument when he initially modified defendant's conditions of release to allow defendant to be present at his business during certain hours of the day. The condition that defendant not use alcohol is supported by his substance abuse history. In fact, he tested positive for cocaine on the date of his arrest. With regard to the weight-of-the-evidence argument, defense counsel basically argue that they have reviewed the evidence provided during discovery and are of the opinion that the government's case is weak. In particular, counsel attacks the credibility of a possible government witness. These arguments, however, were, or could have been, made previously and therefore do not provide a basis to change the conditions of release . . . Finally, the fact that defendant has been compliant with his conditions of release is laudable, but that was what he was supposed to do. It shows that the conditions imposed have been effective.

5

*Id*. Despite Magistrate Judge Roemer's reasoned decision, the defendant filed the instant motion asking this Court to overturn Magistrate Judge Roemer's decision and again modify the defendant's conditions of release. *See* Doc. No. 239.

As set forth below, the government urges the Court to deny the defendant's motion to reopen the bail/detention hearing and modify his conditions of release, including changing his home confinement to a curfew, permitting him to be present at Pharaoh's Gentlemen's Club whenever he pleases, and allowing him to drink alcohol. On the other hand, the government hereby notifies the Court that if the hearing is reopened, the government may at such hearing move for detention consistent with the comment of Magistrate Judge Valle, in part, "[w]ell, this was an interesting case because, but for the government's recommendation, this is a case where I think detention would be warranted."

## ARGUMENT

I.  **The Defendant Has Failed to Demonstrate that this Court Should Modify the Conditions of Release.**

When a defendant pursues a modification of pretrial conditions based on "new information," the defendant must proceed under Title 18, United States Code, Section § 3142(f)(2). *See, e.g.*, *United States v. Wei Seng Phua*, No. 2:14–cr–00249–APG–PAL, 2015 WL 127715, at *2 (D. Nev. Jan. 8, 2015) ("Contrary to defendants' assertions, the government's factual support and reliance on 18 U.S.C. § 3142(f) are justified because this Court must consider whether new information exists that was not previously known or presented at the detention hearing to determine whether to modify the pretrial release condition at issue."). A hearing "may be reopened . . . at any time before trial if the judicial officer finds that

6

information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). The defendant, here, has failed to demonstrate that (1) new information exists that was not known to him at the time the Court previously modified his conditions, and (2) the information presented by the defendant materially alters the necessity of the conditions previously imposed.

### A. The Defendant has not Presented New Information that was Unknown to him when he Previously Asked this Court to Modify his Conditions.

In *United States v. Quinones*, 13-CR-83S, 2016 WL 1694998 (W.D.N.Y. Apr. 28, 2016), the court made clear that:

> "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event. Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened."[1]

*Id*. at *1 (quotations and citations omitted). Indeed, other courts have similarly held that a defendant must present truly (and material) changed circumstances to require a modification

---

[1] To the extent it remains unclear- if the defendant is moving for reconsideration of this Court's prior order regarding the conditions of release, the government asserts there is no new information. If the defendant is seeking de novo review of Magistrate Judge Roemer's decision, the analysis and end result denying the defendant's request for modification should be the same because "the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." United States v. Aguirre, No. 15-CR-143, 2016 WL 11644638, at *2 (W.D.N.Y. July 28, 2016). Here, the defendant has proffered no "new evidence" as detailed *infra.*

of the terms of release previously ordered by the court. *See, e.g.*, *United States v. Kube*, Case No. 1:19-cr-00257-NONE-SKO, 2020 WL 1984178, at *5 (E.D. Cal. Apr. 27, 2020) (finding compliance with conditions of release not to be new information warranting reopening of bail hearing); *United States v. Gay*, Case No. 4:20-cr-40026-JES-JEH, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020); *United States v. Lopez*, Case No.: 2:16-cr-00265-GMN-CWH-2, 2019 WL 2393609, at *1 (D. Nev. June 5, 2019); *United States v. Smith*, No. CR–12–1298–PHX–GMS (ECV), 2012 WL 3776868, at *4 (D. Ariz. Aug. 31, 2012) ("It appears Defendant is under the mistaken impression that federal law authorizes him to repeatedly file multiple motions to modify his release conditions until he gets the ruling he likes. Except for retaining Utah counsel, Defendant has not made any showing, much less the requisite showing, of a material change in circumstances over the last month that was not available at Defendant's hearings in Nevada."); *United States v. Barksdale*, No. CR S-08-0263 FCD, 2008 WL 2620380, at *2 n.3 (E.D. Cal. July 1, 2008) ("Once a hearing is reopened, it is this court's position that it is reopened for the purpose of the court's receiving any information, within reason, not submitted at the original detention hearing. The purpose of such a rule is to allow the new information justifying reopening to be considered in context, taking into account information either side may have gathered. Any information presented is of course subject to the court's own weighing of the evidence in light of all relevant factors, including the timing of its disclosure.").

The defendant seemingly argues the following are new pieces of information not previously known to him, thus warranting a reconsideration of his conditions of release:

8

- The defendant owns and operates Pharaoh's, which requires him to oversee construction, staff, and other day-to-day business activities (*See* Doc. No. 239-1 at 7–8);

- The defendant's interpretation of discovery provided to him, and the credibility of someone the defendant believes to be a potential witness for the government, suggests the government's case against him is weak (*See* Doc. No. 239-1 at 9–13); and

- The probation officer assigned to the defendant recommended to the Magistrate Judge that the defendant's home confinement be altered to a curfew requirement (*See* Doc. No. 239-1 at 16–17).

However, none of this information, singularly or collectively, is new information warranting a reopening of the hearing or a modification of the defendant's conditions. First, the defendant and his counsel presented the Court with information concerning the defendant's ownership and operation of Pharaoh's prior to the Court's previous modification of the defendant's conditions of release. *See* Doc. No. 108. The only additional information the defendant provides in the instant motion is that there is construction occurring at the club and that there have been instances of malfunctioning equipment. *See* Doc. 239-1 at 7–8. But this information is not new. This information falls under the same umbrella of information about the defendant's responsibilities at Pharaoh's that was previously considered by this Court. In the context of pretrial release conditions, the government has never disputed that the defendant has responsibilities at Pharaoh's. These responsibilities are not new. They are standard responsibilities of any business owner or operator that the defendant certainly could have anticipated (and likely already knew about) at the time he previously requested a modification of his conditions. Simply listing additional responsibilities of a business operator is not new information warranting reopening of a detention hearing or modification of conditions.

Second, the defendant's interpretation of the discovery provided to him and his characterization of the reliability of a person the defendant believes is a government witness is not new information warranting the reopening of a detention hearing or a modification of release conditions. As the court said in *Quinones*, "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." 2016 WL 1694998, at *1. The defendant's attempt to distinguish *Quinones* because the defendant in that case was detained is unavailing. As explained above, courts have routinely held that the requirement that new information be discovered to reopen a detention hearing applies with equal weight to a request to modify release conditions as it does to modify detention status. *See Wei Seng Phua*, 2015 WL 127715, at *2. All the defendant does, here, is exactly what the court in *Quinones* said was insufficient to constitute "new information." Namely, the defendant suggests that, in his view, the evidence against him is weak. This, of course, runs contrary to reality in which a grand jury found probable cause that the defendant committed conspiracy to defraud the United States, bribery of a public official, maintaining a drug involved premises, conspiracy to distribute controlled substances, and conspiracy to commit sex trafficking. *See* Doc. No. 89. As Magistrate Judge Roemer said plainly, "The charges in this case against defendant are serious." Doc. No. 214. The defendant's disagreement with the grand jury's assessment of the evidence is not new information that was previously unavailable to him.

The defendant's claims about a supposed grand jury witness allegedly perjuring herself are not actually based on any information the defendant has about what was or was not said

10

in the grand jury. The information the defendant proffers about this individual is not new. Rather, the defendant rehashes tired attacks against this individual's credibility that he could have raised previously. His attempts to discredit someone he believes to be a government witness do not constitute new evidence warranting the reopening of the detention hearing or modification of release. Indeed, the defendant's opinions about this witness are not new information as the defendant, prior to being charged but after he was aware of the government's investigation, filed a state civil lawsuit against the witness- a lawsuit that has since been enjoined by order of this Court. The defendant's opinions about the witness and the strength of the case against him are not new information, and the defendant's attempts to characterize the value of any single witness to the government's case is misguided. Contrary to the defendant's apparent fixation on his ex-wife, a myriad of witnesses have been identified through the government's investigation such that the case against the defendant, and his co-defendant, is very strong. At a minimum, the current conditions should remain in place because the defendant is facing the specter of a lengthy prison sentence and he has the financial means to flee the district and he associates with individuals who place witnesses and potential witnesses in fear.

      Third, the probation officer's recommendation that the defendant's home confinement be altered to a curfew provision is not new information. In *United States v. Esposito*, 354 F. Supp. 3d 354 (S.D.N.Y. 2019), the defendant suggested that his "impeccable record" of compliance with conditions of pretrial release was new information that warranted the reopening of the detention hearing and reconsideration of his conditions of release. *Id.* at 360. The court found that the defendant's record of compliance "does not constitute new

11

information" and denied the defendant's motion for reconsideration of his pretrial release condition. *Id.*; *see also Kube*, 2020 WL 1984178, at *5 ("It is presumed that the defendant will abide by the conditions imposed and his demonstrated ability to do so is what allows him to remain on pretrial release. The fact that Defendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing.")  The government argued in *Esposito*, as it does here, that compliance with pretrial release conditions simply means the release conditions are doing what they are supposed to do. *See id*. That the defendant has complied with his conditions and the probation officer has acknowledged that compliance by recommending a downgrade in the defendant's supervision level, only shows that the current set of conditions is doing its job.  The probation officer's recommendation based on the defendant's compliance with his conditions is not new information warranting the reopening of the detention hearing or a reconsideration of his conditions of release.

      **B.**    **None of the information Presented by the Defendant has a Material Bearing on whether there are Conditions of Release that will Reasonably Assure the Appearance of the Defendant and the Safety of any other Person and the Community.**

The information proffered by the defendant in the instant motion does not have a material bearing on whether the current set of conditions is appropriate.  The defendant's desire to be able to come and go as he pleases before a curfew, have unfettered access to his business, and to drink alcohol completely disregards the specifics of the crimes with which he is charged and the prior consideration by this Court of the appropriate conditions of release. In this case, the Second Superseding Indictment plainly establishes that the defendant has used Pharaoh's Gentlemen's Club to engage in serious federal crimes. *See* Doc. No. 89.  In

12

returning the Second Superseding Indictment, the grand jury found probable cause that, among other things, the defendant paid bribes to protect himself and his business from federal narcotics investigations (*see* Count 2, ¶¶ 7, 9, 18); that the DEA agent that the defendant bribed interceded on the defendant's behalf with U.S. Probation and made false representations to the FBI that the defendant was a DEA informant in order to dissuade the FBI from continuing an investigation into the defendant and Pharaoh's (*id*. at ¶¶ 8,10, 11, 13, 14, 19); that the defendant called the DEA agent he was bribing after a stripper overdosed at Pharaoh's whereupon the co-defendant DEA agent advised the defendant to "get her [the overdosing stripper] out" of Pharaoh's (*id*. at ¶26); that the defendant possessed with intent to distribute and distributed cocaine over an approximate thirteen-year period (*id*. at ¶34); that several female dancers overdosed in Pharaoh's over an approximate nine-year period (*id*. at ¶35); and, that the defendant maintained Pharaoh's to facilitate prostitution, to obtain sex in exchange for drugs and money, and for use and distribution of cocaine, cocaine base, Adderall, marijuana, and heroin (*id*. at ¶36). *See also* Doc. No. 89, Counts 6-9. Indeed, the Grand Jury's finding is conclusive because a properly constituted grand jury conclusively determines the existence of probable cause to believe the defendant perpetrated the offenses alleged. *See Gerstein v. Pugh,* 420 U.S. 103, 117, n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Moreover, as detailed in the Pretrial Services Report, on June 26, 2006, the defendant was convicted of a federal felony, namely, Conspiracy to Defraud the United States, and United States District Court Judge William M. Skretny sentenced the defendant to five months of imprisonment to be followed by 36 months of supervised release. While on Supervised Release in that case, the defendant reported that he was employed at his parents'

restaurant, Pietro's Restaurant on Transit Road. However, U.S. Probation received information that the defendant was, in fact, operating Pharaoh's Gentlemen's Club and distributing cocaine from that location. As such, the defendant's history and instant charges show that the defendant has continually and repeatedly used Pharaoh's Gentlemen's Club as a place to conduct unlawful conduct regardless of any type of supervision from the Court.

Even the defendant's own motion, here, makes it appear that the defendant has violated the Court's modification order and therefore has not been compliant with the conditions set forth by this Court. As previously addressed, the Court ordered that the defendant is "to have no verbal or written communication with any employees or staff, with the exception of a to-do list to the managers employed at Pharaoh's Gentlemen's Club." Doc. No. 112. The defendant's instant motion, though, states that "it should be noted that these [Pharaoh's Gentlemen's Club] employees are able to come and go to Defendant's residence despite his inability to meet with them at his business." Doc. No. 239 at 8. Because the defendant is on home detention, the defendant is required to be at his home except for those specified activities in which he can leave (*see* Doc. No. 105 at 2 (¶ 8(v)(2)(ii)), the employees who "come and go" from the defendant's residence presumably speak with the defendant while at his residence.

The information the defendant presents in the instant motion changes none of this. That Pharaoh's is undergoing construction, or that the defendant thinks the case against him is weak, or that the defendant's probation officer believes the defendant has complied with his conditions of release in this case, does not make the defendant any less of a danger to the

14

community. The fact remains that the grand jury found probable cause that the defendant used Pharaoh's to engage in and facilitate his criminal activity. To suggest that any of the information the defendant presents would change the Court's calculus on the danger the defendant presents shows a lack of acknowledgement by the defendant of the seriousness of the allegations against him. Because the information the defendant presents cannot reasonably "move the needle" on whether he presents a danger to the community, the information should not be considered to have a material bearing on the defendant's conditions of pretrial release.

Additionally, the Court has already accommodated the defendant by permitting him to be present at Pharaoh's for three hours each day. *See* Doc. No. 112. This accommodation makes it possible for the defendant to accomplish any of the tasks presented in his motion. During those three hours, the defendant will have ample opportunity to check on the progress of any construction or renovation and will be able to leave a to-do list for the Pharaoh's management team related to the construction or renovation. *See id*. The order also does not preclude the defendant from speaking to the contractors conducting work at Pharaoh's (assuming these persons are not also employees of Pharaoh's). *Id*. Moreover, the defendant employs individuals, including John Ermin and Nicholas Ciechalski, who both handle a variety of aspects of the operations at Pharaoh's, none of which require the defendant's presence.

As to the defendant's desire to drink alcohol for business purposes, the tasting and purchasing of alcohol, like the rest of the business functions of Pharaoh's, can be successfully

accomplished by others, without the defendant's physical presence at the business. The defendant has been in this industry for a lengthy period of time and can remedy a number of circumstances or issues by simply calling or emailing one of the vendors he routinely uses. Significantly, as previously detailed herein, on March 4, 2021, the U.S. Probation Office informed the parties that on March 1, 2021, the defendant lied to the U.S. Probation Office regarding his recent use of cocaine. While the defendant stated that he had last used cocaine one-and-a-half years ago, the U.S. Probation Office reported that he tested positive for the presence of cocaine, which indicated recent use. Additionally, the defendant previously violated his term of supervised release by distributing cocaine at Pharaoh's, which is also one of the subjects of the pending Second Superseding Indictment. Therefore, the Court appropriately determined that the defendant should abstain from any substances, including alcohol, as the defendant has a history of possessing, using, and distributing cocaine and, equally significant, lying to the U.S. Probation Office about his substance use.

Finally, as proffered by the government while appearing before the Court on April 14, 2021, the government has and will continue to investigate any express or implied threats made towards witnesses in this case. *See* Doc. No. 118 at 6–7. In particular, in November of 2019, an individual received threatening messages via Facebook from a close associate of the defendant. *Id*. In fact, the investigation has indicated that the defendant was present with the close associate when that close associate used Facebook messenger to send the threat to the individual. *Id*. Similarly, the defendant has initiated New York State civil actions seemingly designed to retaliate against persons whom the defendant believes are cooperating with federal investigators and to attempt to circumvent federal discovery laws. *Id*. at 7–8.

16

The government acknowledges that pretrial release conditions may make it more difficult for the defendant to operate Pharaoh's or otherwise live as he wishes to. But such is the consequence for the grand jury finding probable cause that the defendant has committed serious federal crimes and for the defendant's prior decisions to lie about using illegal drugs. The defendant should not be given a free pass to continue to operate as he did prior to being indicted because the Court properly found conditions were necessary to protect the community.

## CONCLUSION

The government respectfully urges the Court to maintain the defendant's current conditions of pretrial release and to deny his motion.

DATED: Buffalo, New York, January 21, 2022

| | |
|---|---|
| COREY R. AMUNDSON<br>Chief | TRINI E. ROSS<br>United States Attorney |
| BY: s/JORDAN DICKSON<br>Trial Attorney<br>Public Integrity Section<br>U.S. Department of Justice<br>Criminal Division<br>1301 New York Ave. NW, Suite 1000<br>Washington, D.C. 20530<br>202-597-0508<br>Jordan.Dickson@usdoj.gov | BY: s/JOSEPH M. TRIPI<br>Assistant United States Attorney<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>716/843/5839<br>Joseph.Tripi@usdoj.gov<br><br>BY: s/BRENDAN T. CULLINANE<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>716/843-5875<br>Brendan.Cullinane@usdoj.gov |