```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF NEW YORK


  UNITED STATES OF AMERICA,    *       Docket No.
                                       1:19-cr-00227-JLS-MJR
                               *
                               *       Buffalo, New York
              v.               *       June 23, 2020
                               *       12:36 p.m.
                               *
  JOSEPH BONGIOVANNI (1),              STATUS CONFERENCE
  PETER GERACE, JR. (3),       *
                               *
              Defendants.      *
                               *
 * * * * * * * * * * * * * * * *


                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:            TRINI R. ROSS,
                               UNITED STATES ATTORNEY,
                               By BRENDAN T. CULLINANE, ESQ.,
                                  JOSEPH M. TRIPI, ESQ.,
                               Assistant United States Attorney,
                               Federal Centre,
                               138 Delaware Avenue,
                               Buffalo, New York  14202,
                               Appearing for the United States.


For Defendant (1):             HARRINGTON & MAHONEY,
                               By JAMES P. HARRINGTON, ESQ.,
                               70 Niagara Street,
                               Third Floor,
                               Buffalo, New York  14202.

For Defendant (3):             HOGANWILLIG, PLLC,
                               By STEVEN M. COHEN, ESQ.,
                               2410 North Forest Road,
                               Suite 301,
                               Getzville, New York  14068.
```

```
1   The Courtroom Deputy:        KIRSTIE L. HENRY

2   Court Reporter:              BONNIE S. WEBER,
                                 Notary Public,
3                                Robert H. Jackson Courthouse,
                                 2 Niagara Square,
4                                Buffalo, New York  14202,
                                 Bonnie_Weber@nywd.uscourts.gov.
5

6         Proceedings recorded by mechanical stenography,
                  transcript produced by computer.
7

8             (Proceedings commenced at 12:36 p.m.)

9

10            **THE CLERK:**  All rise.

11            The United States District Court for the Western

12  District of New York is now in session.  The Honorable John

13  Sinatra presiding.

14            **THE COURT:**  Please be seated.

15            **THE CLERK:**  United States versus Joseph Bongiovanni

16  and Peter Gerace, Jr.  Case number 19-CR-227.  This is the date

17  set for a status conference.

18            Counsel, please state your appearances for the record.

19            **MR. TRIPI:**  Joseph Tripi and Brendan Cullinane for the

20  United States.  Good morning, Your Honor.

21            **MR. HARRINGTON:**  Judge, James Harrington for Joseph

22  Bongiovanni and Mr. Bongiovanni is waiving his presence.

23            **MR. COHEN:**  Steven M. Cohen appearing for Peter Gerace

24  and Mr. Gerace is waiving his presence this morning.

25            **THE COURT:**  Very good.  Good morning, everyone.
```

1      **MR. TRIPI:** Good morning.

2      **MR. COHEN:** Morning.

3      **THE COURT:** All right. We have two different topics
4 and we will do one at a time. First, regarding the motion by
5 both defendants for procedure similar to the one in United
6 States versus Hawit.

7      I've studied the papers and have a plan. I'm going to
8 hold the motion in abeyance and I am going to get your comments
9 on this plan, but I am going to hold the motion in abeyance for
10 now and revisit the basis for the nondisclosure of the search
11 warrant application materials.

12      And I'm going to do that in-camera at a later date
13 with the Government. And I will do that when I set a trial
14 date.

15      I will pick a day and have the Government lawyers come
16 over, sit with me and tell me about whether the reasons still
17 hold about why these materials need to remain sealed.

18      This approach is consistent with, for example,
19 Mr. Gerace's point in his reply, when he says: It is a matter
20 of basic fairness; any such ongoing investigative activities
21 should be disclosed fully to the court and a record made so that
22 the judiciary can ensure that there is a good faith basis for
23 the prosecution's continued opposition to the defense disclosure
24 motions.

25      The rationale for this approach is probably not so

1  much tied to the trial date, but more related to the passage of
2  time; from the beginning of time until where we are now, versus
3  where we are in three months, six months, whenever it's time to
4  schedule the trial.
5          So things may change or they may not.  We may be
6  exactly in the same spot from the Government's perspective, but
7  I will need to hear that from them, I think, and we will go
8  there.
9          So Mr. Tripi, do you want to comment on that
10 procedure?
11         **MR. TRIPI:**  Happy to just have that discussion with
12 the Court when the time -- when the time is appropriate or
13 whenever you deem it appropriate, so that's no issue from our
14 perspective.
15         In terms of the Hawit case, I would just like to point
16 out a couple of things.  One, that case is very different from
17 the case at bar.
18         That was the FIFA World Cup corruption case,
19 essentially, and it didn't involve allegations of, you know,
20 tipping off informants, you know -- and I'm paraphrasing the
21 indictment.
22         It didn't involve the spectre of motorcycle gangs
23 working at the premises where sex trafficking was alleged to
24 have occurred.  It didn't involve sort of some of the grit that
25 is encompassed by some of the charges of this indictment.

1            And, you know, even though on the face of it it's a
2    RICO case and it was a white collar -- pretty much a
3    straightforward white collar bribery case.
4            That's much different than what this investigation is
5    and what this charged case is, obviously, from your in-camera
6    review of the search warrants.
7            So I wanted to point out the differences in Hawit.
8    In -- in Hawit, it was the Government making the request.  We're
9    not making the request.
10           I know that prosecutor, Kristin Mace.  We've had
11   conferences through the years.  There must have been a reason
12   for it.
13           Obviously, that's not available to me, but I would
14   also note that all of those were the individual devices of the
15   people that were at issue in those four search warrants, we've
16   already disclosed.
17           It was a limited unsealing at that.  We have already
18   made a limited unsealing for the person we concede has made a
19   standing in their device, which was Mr. Gerace.
20           And he's already filed his Franks motions and you've
21   already denied them.
22           So the other one, the other motions that incorporate
23   the Bongiovanni affidavits, et cetera, are much more robust and
24   I would venture a guess, not having reviewed the affidavits in
25   that Hawit case, described a much far -- more far reaching

1  potential for continuing investigations.
2          Seems like those search warrant affidavits must have
3  been much more limited, so I'm happy to come over and describe
4  to you what our continuing investigation is as we run up to
5  trial.
6          But also, I would like to point out -- you know,
7  from -- for the majority of the search warrants, both this court
8  and Judge Roemer have an assumed standing, without finding it
9  for the purposes of the decisions.  And they have not
10 established materiality.
11         I have yet to hear an argument for how these search
12 warrant affidavits do anything to help them prepare for trial,
13 when it's going to be pursuant to the local practice and rules
14 in this district, that they will be getting witness lists,
15 Jencks material, all of those things in the run up to trial.
16         So I think -- I think to kind of balance the Court's
17 plan a little bit in -- and I don't think this is on all fours
18 with Hawit for sure -- and I think that the practice here, they
19 are going to be prepared for trial to the extent that the
20 affiants -- what my plan would be -- obviously, the Court must
21 have a different view of it, but what my plan would be is the
22 affiant for many of these affidavits was Special Agent Curtis
23 Ryan.
24         For example, there are portions of the affidavit that
25 have already been disclosed because we have had hearings that

1  relate to the issues in the hearings before Judge Roemer.
2          So I would do the same thing in the run up to trial.
3  There would be some redactions, but potentially some additional
4  disclosure, based upon what he's going to testify at trial.
5          But I don't envision a completely unredacted search
6  warrant in this case at any point, because the aspects of the
7  investigation that remain ongoing, it could be five, ten more
8  years of ongoing investigation.  I don't have a crystal ball.
9          **THE COURT:**  Right.  And that's kind of where I'm
10 thinking.  You know, you will be able to -- you will be to --
11 you will know what's getting disclosed for trial at that point
12 and then, you know, there is a little bit of math --
13         **MR. TRIPI:**  I understand.
14         **THE COURT:**  -- with a nominator/denominator, et cetera
15 and then we will talk about what's missing, what can't be
16 disclosed.
17         And then you can come and tell me whether there is any
18 of it that can be unsealed and any of it that can't be unsealed
19 and I will have to make a judgement on it at that time.
20         **MR. TRIPI:**  Thank you for letting me elaborate.
21         **THE COURT:**  That's my plan.
22         Mr. Harrington, Mr. Cohen, one at that time.  Is that
23 plan adequate?
24         **MR. HARRINGTON:**  Judge, I don't have an objection to
25 the plan, with the caveat -- and that depends on the timing of

1  it.

2              And when I started practicing in this court, we got
3  nothing for discovery.  Now, we get hundred pages of junk in
4  every case, most of which is really totally useless for
5  discovery.

6              And, again, the real discovery comes with Jencks and
7  the 3500 material.  The real -- the real issue here is how soon
8  we get whatever it is we are going to get before trial, so that
9  we can really make use of it.

10             You know, we can spend a year, year and a half, two
11  years trying to get ready for trial and that -- those things are
12  vital to us.

13             Mr. Tripi sits there and says I don't see that they
14  have made an allegation of anything that's necessary for them to
15  prepare for trial.  How do we know that, when we don't know what
16  it is that's there?

17             So, I mean, it's a bit of a specious argument, but,
18  you know, the procedure you laid out, Judge, is all right or
19  it's all right with me with the understanding that what we're
20  really talking about here is fairness and due process and we
21  need a lot of time to use whatever it is.

22             If there is nothing there, then you can make that
23  determination that we don't need a lot of time.  But my request
24  of the Court is that this be done long before trial and that
25  the -- that this court give us really ample time to do it and

1  that the Court consider an extensive time for the disclosure of
2  Jencks.
3        I mean, this case has been pending for quite a while
4  now.  I've seen no other indictments.
5        Mr. Tripi is sitting here saying, well, I don't know;
6  maybe it is going to be five years or ten years, we're going to
7  indictment somebody with something without regard to statutes of
8  limitations or anything else.
9        I mean, almost every case I have over here now, the
10 prosecution makes the same argument; it's too dangerous.  We
11 can't -- we can't give you this information.
12       **THE COURT:**  Just -- I think we ought to be able to --
13 when we are all sitting here, setting the trial date, all be
14 able to schedule that visit and stage things in a way that makes
15 sense.
16       **MR. TRIPI:**  Yeah.
17       **THE COURT:**  I mean, we wouldn't come in here and set a
18 trial date in 60 days and expect --
19       **MR. TRIPI:**  Judge, I --
20       **THE COURT:**  -- so I think we have built enough time
21 into the schedule.
22       **MR. TRIPI:**  Judge, I don't think there is anyone who
23 could claim that I've ever not given Jencks early in a case.
24       In fact, in the Kingsman motorcycle club case, that's
25 the Pirk decision, we made it available almost five months

1   before trial, subject to lockdown protective orders, which those
2   attorneys diligently complied with.
3           So that's always the issue. You know, sometimes there
4   is protective orders and people make errors and mistakes and
5   things of that nature. I'm very much in favor of attorneys
6   being prepared.
7           I very much disfavor of witnesses getting tampered
8   with. That's the balance that we're trying to strike.
9           I have even invited Mr. -- and there has been a lot of
10  letters and a lot of papers that I've invited Mr. Harrington
11  over to review some Grand Jury transcripts of certain DEA and
12  law enforcement agents who will testify against his client.
13          That offer remains on the table. He could set up an
14  appointment next week and look at those, so I'm very much in
15  favor -- I'm not in fear of Federal agents getting tampered
16  with, right?
17          But there is over 80 witnesses that went into the
18  Grand Jury. The vast majority of them are not law enforcement.
19          **THE COURT:** Mr. Cohen, anything on the construct that
20  I've described here?
21          **MR. COHEN:** I would underscore everything that
22  Mr. Harrington said. And I think that he may have misspoken
23  when he says he gets hundred pages of nothing, because I've
24  gotten hundreds of thousands of pages of nothing, and it's been
25  a costly process for my client to review that.

1            If this were a civil context -- if I were to give an
2    opposing party hundreds of thousands of pages of garbage, the
3    Court would impose sanctions upon me in a civil case.
4            This is the Government.  They turned over what they
5    had, what they claim to be the evidence that was seized and
6    there wasn't a single and culpatory shred of evidence that I was
7    able to discern, despite the fact that my client paid a lot of
8    money to have it reviewed.
9            The offer of it -- that Mr. Tripi made to
10   Mr. Harrington hasn't been extended to me.  I would ask that it
11   be extended to me because I would like to review whatever Grand
12   Jury minutes Mr. Tripi is willing to share with me.
13           I recognize that the 3500 material and Grand Jury
14   material is generally turned over closer to trial, but if he's
15   offering to give me a glimpse of that now, I would appreciate
16   it.
17           And I would also review -- anything I would review,
18   although, I do not believe my client presents any risk to any
19   witnesses in terms of tampering.
20           As an officer of the Court, I would maintain in
21   confidence the identity of any witnesses whose Grand Jury
22   testimony I looked at and I would not share that with my client.
23           Although, I would share the evidence that was gleaned
24   from that.  I can say that this is the first case in my
25   career -- I've been practicing quite a long time and in every

1	Federal case that I've had, the question is, you know, do the
2	photographs constitute pornography; was the income fully
3	disclosed in the tax returns; was the substance really a
4	scheduled drug.
5	          In this case, there is zero evidence of anything.  I
6	mean, Katrina Nigro, his ex-wife, we know has been bitterly
7	casting dispersions against my client on the radio and in
8	Facebook.
9	          I would think that the U.S. Attorneys Office knew or
10	should have known she had credibility problems, but she was
11	allowed to testify before the Grand Jury.
12	          She did testify before the Grand Jury.  I would like
13	to see some evidence, so that I can begin to prepare a defense.
14	          With that, Your Honor, I have nothing more to say on
15	that portion of today's pretrial.
16	          **MR. TRIPI:**  My offer to Mr. Harrington was to make
17	selective DEA agent transcripts available.
18	          I don't know how useful that will be to Mr. Cohen, but
19	he's welcome to look at those transcripts.  We're not making
20	others available to him at this time.
21	          **THE COURT:**  Okay.  Good.  That's what I will do and
22	among the four of you and my law clerk, someone will remind me
23	to make sure we set up that in-camera review when I set the
24	trial date.
25	          Onto the next motion, which is the motion -- I'm not

1  quite sure procedurally what we have got here, but this kind
2  of -- back to the other issue?
3           **MR. TRIPI:**  I'm really sorry -- before we move on from
4  issue one, in terms of setting a trial date, when do you foresee
5  us getting together to do that, because I had planned to ask for
6  one today.
7           If you're not ready to do that, I do not want to push
8  the envelope.
9           **THE COURT:**  No.  I can set a trial date right now, but
10 are we not doing things with Judge Roemer?
11          **MR. TRIPI:**  Well, yeah.  We just got done with the
12 hearing, briefing and oral argument, and that will -- I think
13 that will wrap up some time in March.
14          And then it will be a matter of -- and those are under
15 advisement of 30 days, objections to Your Honor.
16          So maybe we are premature -- I don't know, but --
17          **THE COURT:**  It feels like we are, but, I mean, if you
18 can sketch out what the schedule is going to look to get the
19 case to me, then I can set a trial date.
20          But if there is a lot of variability with Judge Roemer
21 still, then I think we might be wasting our time setting a trial
22 date.
23          **MR. HARRINGTON:**  I would prefer to defer it, Judge,
24 until we wrap up with Judge Roemer.
25          **MR. COHEN:**  Your Honor, I would like to get this case

1    to trial as soon as humanly possible.
2             Obviously, Mr. Harrington and I have -- and
3    Mr. LaTona, you know, we have to make sure that motions fully --
4    have been made and adjudicated.
5             I would --
6             **THE COURT:**  And my guess is -- my guess is that we
7    would end up in the same sort of place anyway, if I tried to
8    predict versus just wait for Roemer to give me an R and R and
9    then I will, you know, review it and go from there.
10            And then I will have you in here at that time to set
11   the trial date.  My guess is we would be roughly in the same
12   place, so --
13            **MR. TRIPI:**  Okay.
14            **THE COURT:**  -- so hang tight.
15            The motion related to the release, Mr. Cohen, was a
16   little bit procedurally awkward, since there was an appeal and
17   also a letter was sent to us from someone in your office, which
18   was not e-filed.  We had to e-file that, so just stay on top of
19   that.
20            Maybe she didn't have access to your log-on or
21   something like that, but let's move on.
22            Procedurally, I think we have got some kind of a --
23   maybe a situation that's governed by the rule that she cited in
24   her letter and the Rule of Criminal Procedure 37, but we have
25   the appeal pending, an appeal from Judge Roemer's text order,

1    and then we something -- we have some kind of a motion for me to
2    review that or to look at the issue.
3            In any event, it kind of looks like it might fit into
4    Rule 37, which says that if a timely motion is made to me for
5    relief that I lacked authority to grant because of an appeal
6    that has been docketed and is pending, the Court may either
7    defer consideration of the motion or deny the motion -- and the
8    case law says on the merits or I can state either that I would
9    grant the motion if the Court of Appeals remands for that
10   purpose or that the motion raises a substantial issue.
11           And I think that that's the rule for me that dovetails
12   with the Rule of Appellate Procedure.
13           I would still need to get some briefing from the
14   Government on all of this, so I just wanted to see if we kind of
15   are operating -- I'm prepared to treat the motion, Mr. Cohen, as
16   a motion for review of a release order under 3145.
17           **MR. COHEN:**  Thank you, Your Honor.  I would want to
18   disclose too that I got a call from Catherine O'Hagan Wolfe, the
19   clerk of the Second Circuit, and she asked why I didn't just
20   make the appeal of the magistrate's ruling to you directly or
21   ask Your Honor to review it and that was a mistake on my
22   office's part.
23           So the 12.1(b) indicative ruling route, that is to --
24   sort of to correct a procedural error that I made, but thank you
25   for the 3145 route.

1                We'll do that.  We'll brief it.  There are no issues
2      that are new, that the U.S. Attorneys is not aware of, but
3      because Judge Roemer relied very heavily on Your Honor's prior
4      ruling in this case and the transcript clearly reveals that His
5      Honor deferred to you, we're asking you to take a fresh look at
6      this, especially given the facts that did not exist at the time
7      that you made the initial ruling regarding the conditions of
8      release.
9                **THE COURT:**  Since the motion is under 3145 for me to
10     review the release order, then -- then that's all we need and
11     maybe you don't need your appeal.
12               You can withdraw the appeal, but I'm not advising you.
13     I am just --
14               **MR. COHEN:**  No, no.  I know exactly what --
15               **THE COURT:**  We don't need to deal with these
16     indicative order rules.
17               **MR. COHEN:**  Got it.  Got it.
18               **THE COURT:**  Mr. Tripi, do you see it any differently?
19               **MR. TRIPI:**  I agree.  It was -- awkward was a good
20     word and now I have a full understanding of what happened, but I
21     think some time for Mr. Cohen to file the motion under 3145 to
22     you, I respond, I think we can wrap that up relatively quickly.
23               I don't think any briefing is due to the Second
24     Circuit until some time in March, so I think we can probably
25     address this well before that.

1            **THE COURT:**  Okay.  So if -- if the appeal were
2    withdrawn, then you would want to brief to me right after that,
3    wouldn't you, Mr. Cohen?
4            When would you want a deadline on --
5            **MR. COHEN:**  Well, I'll tell you what I would like,
6    Judge.  I don't know if it's practical, but I think it is the
7    easiest.
8            If Your Honor would grant me permission to make the
9    application for Your Honor to review the magistrate's decision
10   nunc pro tunc, because it wouldn't be timely if I filed it
11   today.
12           Then what I would do is I would immediately withdraw
13   the appeal from the Second Circuit and we would go that route.
14           And then depending on where Your Honor rules, we would
15   then maybe have relief in the future or U.S. Attorneys or I
16   could go up to the Second Circuit.
17           But if you would give me nunc pro tunc relief to file
18   the application for review of the magistrate's order, I'll get
19   that done by the end of next week.
20           **THE COURT:**  Right.  The 3154 would be timely when you
21   file it.  So the end of next week, is what you're telling me?
22           **MR. COHEN:**  Yes, sir.
23           **THE COURT:**  All right.  January 14th.
24           And does the Government need two weeks?
25           **MR. TRIPI:**  One week is fine, Judge.

1                **THE COURT:**  Okay.
2                **MR. TRIPI:**  Thanks.
3                **THE COURT:**  All right.  Then I will decide, based on
4    what I see, whether I need to have you in here.  So
5    January 14th, Mr. Cohen.
6                January 21st, Mr. Tripi.
7                **MR. TRIPI:**  Thank you.
8                **MR. COHEN:**  Thank you, sir.
9                **THE COURT:**  Anything further, folks?
10               **MR. TRIPI:**  No, Judge.
11               **MR. COHEN:**  Not an behalf of defendant Gerace.
12               **THE COURT:**  Yes.  In your papers, Mr. Cohen, just make
13   it clear at that point if you have withdrawn your appeal, to
14   satisfy our jurisdictional concerns.
15               **MR. COHEN:**  Yes, sir.
16               **THE COURT:**  Okay.  Thank you.
17               **MR. HARRINGTON:**  Thank you.
18               **THE COURT:**  Have a good day.
19               **MR. TRIPI:**  Have a good day.
20
21                    (Proceedings concluded at 12:58 p.m.)
22                              *   *   *
23
24
25

19

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York before the Honorable John L. Sinatra, Jr.

_s/ Bonnie S. Weber_   February 14, 2022
Signature              Date

**BONNIE S. WEBER**

Official Court Reporter
United States District Court
Western District of New York