UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA                    1:19-CR-227 JLS (MJR)

                                            REPORT, RECOMMENDATION
                                            AND ORDER

        v.


PETER GERACE, JR.,

                        Defendant.


        This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr.,

pursuant to 28 U.S.C. § 636(b)(1), for all pre-trial matters and to hear and report upon

dispositive motions. (Dkt. No. 4)

## BACKGROUND

        On February 25, 2021, a federal grand jury in the Western District of New York

returned an 18-count indictment against defendants Peter Gerace, Jr. and Joseph

Bongiovanni (the "Indictment").[1] (Dkt. No. 89) Gerace is charged in Count 2 (conspiracy

to defraud the United States, in violation of Section 371 of Title 18 of the United States

Code); Count 6 (paying a bribe to a public official, in violation of Sections 201(b)(1)(A)

and 201(b)(1)(C) of Title 18 of the United States Code); Count 7 (maintaining a drug-

involved premises, in violation Section 856(a)(1) of Title 21 of the United States Code and

---

[1] The February 25, 2021 indictment was the second superseding indictment filed in this case.
The initial indictment, filed on November 31, 2019, charged defendant Bongiovanni only. (Dkt.
No. 1) The first superseding indictment, filed on June 4, 2020, charged Bongiovanni as well as
Michael Masecchia. (Dkt. No. 46) Defendant Masecchia entered a plea agreement with the
Government on December 9, 2020. (Dkt. Nos. 68, 69) Thus, defendants Bongiovanni and
Gerace are the current defendants charged in this matter and the second superseding
indictment is the operative charging document.

Section 2 of Title 18 of the United States Code); Count 8 (conspiracy to distribute controlled substances, in violation Section 846 of Title 21 of the United States Code); and Count 9 (conspiracy to commit sex trafficking, in violation of Section 1594(c) of Title 18 of the United States Code). (*Id.*)

*The Charges*[2]

From in or around 2001, until his retirement on or about February 1, 2019, Joseph Bongiovanni served as a Special Agent ("SA") for the Drug Enforcement Agency ("DEA") and was assigned to the Buffalo, New York, DEA Resident Office. The Government alleges that, during this time, Bongiovanni had friends and associates whom he knew to be involved in the possession, use, and distribution of controlled substances. The Government contends that it was Bongiovanni's belief that some of these friends and associates who were involved with narcotics distribution were also members of, or connected to, Italian Organized Crime ("IOC"). It is alleged that Peter Gerace, Jr., the owner and principal operator of Pharaoh's Gentlemen's Club ("Pharaoh's), located at 999 Aero Drive, Cheektowaga, New York, was one such friend and associate of Bongiovanni. Pharaoh's is a commercial business where patrons can purchase food, beverages, and dances with topless dancers or performers. The Government alleges that between 2009 and continuing to in or about February 2019, Bongiovanni, Gerace, and others conspired to distribute cocaine, cocaine base, methamphetamine, amphetamine (commonly known as Adderall), marijuana, and heroin, and that they conspired to utilize Pharaoh's to facilitate the use, manufacture, and distribution of these controlled substances. Gerace

---

[2] The information included in this section is taken from the Indictment. The Court has not included every allegation contained in the Indictment, but instead has provided a summary of the information and charges that are relevant to Gerace's instant motions.

purportedly also provided drugs and money to Pharaoh's employees in exchange for sex with Gerace and others. It is alleged that Gerace maintained a drug-involved premises at Pharaoh's from 2006 through December 12, 2019 and that, between 2009 and 2018, he conspired to engage in sex trafficking.

The Government further charges that beginning in or around 2005 through in or around August 2019, Bongiovanni, Gerace, and others conspired to defraud the United States and the DEA, in that Bongiovanni routinely used his position as SA for the DEA to shield his friends and associates, including Gerace, from criminal prosecution for drug trafficking. The Indictment alleges that Bongiovanni accepted cash bribes from Gerace and others on a reoccurring basis over the course of the conspiracy. In return, Bongiovanni purportedly used his position with the DEA to ensure that his friends and associates, including Gerace, would not be investigated or prosecuted for narcotics distribution.[3] The Government claims that Bongiovanni regularly provided information to his friends and associates about the existence and status of DEA investigations and cooperators. It is alleged that Bongiovanni also provided his friends and associates with advice and guidance regarding law enforcement techniques to help them avoid arrest and prosecution. It is further alleged that Bongiovanni would feign legitimate, active investigations against his friends and associates in order to prevent other law

---

[3] The Indictment alleges that Michael Masecchia, the co-defendant who has entered a guilty plea, also conspired with Bongiovanni and others to defraud the United States and the DEA. The Indictment alleges that Masecchia is a friend and associate of Bongiovanni and that Masecchia is a member or associate of IOC in the Western District of New York and elsewhere. Masecchia is alleged to have been involved in the distribution of controlled substances for over twenty years and is alleged to have regularly bribed Bongiovanni in exchange for Bongiovanni's protection from investigation and prosecution over the course of the conspiracy.

enforcement agents from investigating them, and also to ensure that any information about those seeking to cooperate against them would be funneled to Bongiovanni.

Specifically with respect to Gerace, it is alleged that Bongiovanni (1) falsely advised an FBI agent and others that Gerace was acting as Bongiovanni's confidential informant, thereby induing the agent to abandon a narcotics investigation into Gerace and Pharaoh's; (2) created an official DEA 6 report which falsely stated that Gerace was a DEA source; (3) made statements to other agents to dissuade them from investigating Gerace and Pharaoh's for narcotics trafficking; and (4) lied to members of the DEA about the true nature of his relationship with Gerace as well as his connections with other individuals he believed to be associated with Italian Organized Crime.

The Government contends that Bongiovanni engaged in this criminal activity for the financial gain of at least $250,000, in the form of bribes paid by Gerace and others. The Government also accuses Bongiovanni of engaging in this conduct to ingratiate himself with individuals Bongiovanni believed were members of, or associated with, IOC. The Government claims that on or about February 1, 2019, Bongiovanni removed, from the DEA Buffalo Resident Office, a DEA working file containing, *inter alia*, an Organized Crime Drug Enforcement Task Force investigation initiation form for "Operation Past Due." It is alleged that Bongiovanni removed this file without permission or authorization, and that he concealed it in the basement of his residence. It is also alleged that on or about February 1, 2019, Bongiovanni's last day as SA for the DEA before his retirement, Bongiovanni caused his DEA cell phone to be wiped clean of all data.

*Gerace's Motions*

On July 12, 2021, Gerace filed pretrial motions seeking the following relief: (1) suppression of evidence seized pursuant to search warrants; (2) the disclosure of grand jury materials; (3) striking of prejudicial surplusage from the Indictment; (4) dismissal of Count 7 and Count 9 of the Indictment; (5) production of a bill of particulars; (6) disclosure of *Brady* material; (7) preservation of rough notes; (8) pre-trial notice pursuant to Federal Rule of Evidence 807; (9) disclosure of impeachment materials for any hearsay declarant; (10) joinder; (11) severance; and (12) leave to supplement or file further motions.[4] (Dkt. Nos. 147, 148) The Government filed a response and a request for reciprocal discovery on August 13, 2021. (Dkt. No. 178) Defendant filed a reply on August 27, 2021. (Dkt. No. 185) Gerace filed supplemental memorandums of law in support of his requests to strike prejudicial surplusage from the Indictment and to obtain disclosure of grand jury evidence. (Dkt. Nos. 250, 265) The Government filed a response to the supplemental briefs on April 21, 2022 and defendant filed a reply on April 25, 2022.[5] (Dkt. No. 274, 277)

## DISCUSSION

The Court will first address Gerace's motion to suppress evidence and his motion for dismissal of certain counts of the Indictment, before turning to his non-dispositive

---

[4] Defendant Bongiovanni has also filed pretrial motions, including a motion to suppress evidence obtained during a search of his cell phone. (Dkt. No. 81, 149) The Court will address Bongiovanni's pretrial motions, including his request for suppression of evidence and all other dispositive and non-dispositive requests, in a separate Report, Recommendation and Order. The Court notes here, however, that Bongiovanni's pretrial motions include a request to join in all pretrial motions made by co-defendant Gerace. (Dkt. No. 149, pg. 4) Bongiovanni's request for joinder is granted. Thus, to the extent applicable or relevant, any recommendations or decisions made by this Court herein as to Gerace's motions shall also be deemed a finding and/or order as to defendant Bongiovanni.

[5] Defendant Bongiovanni also specifically joined in the supplemental briefing requesting disclosure of grand jury evidence and instructions. (Dkt. No. 265, 277)

motions and other omnibus discovery demands as well as the Government's request for reciprocal discovery.

### *Motion to Suppress Evidence*

Gerace moves to suppress all evidence seized as a result of (1) the execution of federal search warrants at his residence, 5145 Lexor Lane, Clarence, New York, on November 29, 2019 and February 26, 2021; (2) the execution of a federal search warrant at Pharaoh's Gentlemen's Club on November 29, 2019; and (3) the execution of a federal search warrant to search the contents of a cell phone seized from him in Florida on February 28, 2021.[6]  (Dkt. No. 147, pgs. 12-14) The Court finds, for the following reasons, that there is no basis to suppress evidence obtained from the searches of Gerace's cell phone, residence, and business.

#### Cell Phone Search Warrant

On March 12, 2021, United States Magistrate Judge H. Kenneth Schroeder, Jr. signed a warrant authorizing the search of a cell phone seized by law enforcement, from

---

[6] All three of the warrants challenged by Gerace are filed under seal. On April 28, 2021, Gerace moved to unseal the applications, affidavits and attachments associated with these warrants. (Dkt. No. 113) The issue was briefed and the Court heard oral argument, at which time the Government indicated that it had provided defendant with a redacted version of the affidaivt submitted in support of the application to search his cell phone, but that it was the Government's position that the remainder of the warrant applications should remain sealed. This Court denied Gerace's motion to unseal the remainder of the warrant applications on June 29, 2021. (Dkt. No. 138) Gerace moved for reconsideration and this Court denied his request. (Dkt. Nos. 151, 174) Gerace appealed, and on November 1, 2021, presiding District Court Judge Sinatra affirmed this Court's denial of the motion to unseal the warrants. (Dkt. No. 208) On November 5, 2021, Gerace filed a motion before the District Court asking it for "adoption of a search warrant application disclosure order similar to that issued by the Court in *United States v. Hawit*, 2017 WL 3016794 (E.D.N.Y. 2017)." (Dkt. No. 210) *Hawit* permitted the deferred disclosure of search warrant applications three months before trial, and defendants in that case were permitted to file suppression motions following the deferred disclosure. On January 7, 2022, Judge Sinatra issued an order stating that it would hold Gerace's request based on *Hawit* in abeyance, and that it would "revisit the basis for non-disclosure of the search warrant applications, *in camera*, after a trial date is set." (Dkt. 238)

Gerace, on February 28, 2021.[7] (*See* 1:21-MJ-00022) The warrant application was supported by an affidavit from Curtis Ryan, Special Agent of Homeland Security Investigations, United States Department of Homeland Security. (*Id.*) Agent Ryan's affidavit explained that on February 25, 2021, a federal grand jury indicted Gerace and Bongiovanni, and that Gerace was specifically charged with conspiring to defraud the government; paying a bribe to a public official; maintaining a drug-involved premises; conspiring to distribute controlled substances; and conspiring to commit sex trafficking. Ryan stated that Gerace was arrested on February 28, 2021, in the Southern District of Florida, at which time law enforcement seized the subject cell phone from his person. (*Id.*) Agent Ryan averred that a law enforcement investigation showed that Gerace used his cell phone to communicate with co-conspirator Bongiovanni as well as with other individuals who were previously charged with, or convicted of, drug trafficking and related crimes. (*Id.*) Ryan also noted that witnesses reported seeing Gerace use cocaine and provide cocaine to others. (*Id.*) Agent Ryan went on to aver that, based on his training and experience, narcotics traffickers frequently use portable communication and storage devices to maintain (1) addresses, email addresses, and telephone numbers related to their drug trafficking activities; (2) photographs and information regarding drug trafficking and their drug trafficking associates; and (3) bank and other financial records. (*Id.*) Ryan stated that he believed, based on his training and experience, that Gerace utilized his cell phone to contact other suppliers, co-conspirators, and customers regarding narcotics distribution and the other crimes listed in the Indictment, and that these communications

---

[7] In support of his motion to suppress, Gerace submitted a declaration stating that he was the sole person who used and possessed the cell phone seized from him, by law enforcement, on February 28, 2021. (Dkt. No. 113-2) Based on these averments, defendant has established standing to challenge the search of the phone.

would be retained on the phone. (*Id.*) Based on Agent Ryan's representations, Judge Schroeder found probable cause to issue the search warrant. (*Id.*)

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1969). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238 (internal citations omitted). To that end, warrant affidavits are entitled to "a presumption of validity", *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *See United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Further, in determining whether probable cause exists to issue a warrant, "the Court must look for a reasonable nexus between the criminal activities described in the warrant application and the place to be searched." *United States v. Nix*, 15-CR-6126, 2016 U.S. Dist. LEXIS 181050 (W.D.N.Y. Apr. 25, 2016), *adopted by* 2017 U.S. Dist. LEXIS 1680 (W.D.N.Y. Jan. 5, 2017). "[A] showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). Indeed, the existence of an indictment "supports a finding of probable cause to believe a crime was committed." *United States v. Pirk*, 292 F. Supp. 3d 584, 589 (W.D.N.Y. 2017).

Here, the warrant application contained ample support for Judge Schroeder's probable cause finding. The charges in the Indictment were themselves sufficient to

establish probable cause that Gerace conspired to traffic narcotics and that he engaged in other illegal activities. *See United States v. Mouzon*, 16 CR 284, 2016 WL 7188150, at *4 (S.D.N.Y. Dec. 2, 2016) (judge issuing search warrant could have relied solely on facts in indictment to establish probable cause that defendant engaged in criminal activity); *United States v. Lahey*, 967 F. Supp. 2d 698, 726 n.33 (S.D.N.Y. 2013) (case law "suggest[s] that the fact that the Grand Jury had already returned [an] [i]ndictment against [the defendant]. . ., without more, supports probable cause to search his residence"); *United States v. Feng Ling Liu, No.* 12 Cr. 93, 2014 WL 101672, at *5 (S.D.N.Y. Jan. 10, 2014) (citing cases approving practice of relying on indictment to establish probable cause). Agent Ryan then provided a nexus between the criminal activities charged in the Indictment and the object to be searched by explaining that drug traffickers often use cell phones to store addresses and phone numbers of criminal associates; to take photos and videos of drugs, drug proceeds, and criminal associates; and to communicate through text and voice messages about their illegal activities. *See United States v. Brown*, 676 F. Supp. 2d 220 (S.D.N.Y. 2009) (issuing magistrate permitted to rely on affiant's opinion that cellphone would likely contain evidence of criminal activity "as well as the commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including telephone numbers and other contact information…on communication devices used by that individual."). Moreover, "[c]ourts have commonly [] found probable cause to search cellphones possessed by defendants arrested in connection with ongoing drug-distribution crimes based on the experience of agents familiar with narcotics trafficking that traffickers commonly use cellphones to communicate in the course of their narcotics distribution, as well as to store relevant

information, including the names and contact information of suppliers, purchasers, and confederates." *United States v. Hoey*, 15 Cr. 229, 2016 U.S. Dist. LEXIS 7261 (S.D.N.Y. Jan. 21, 2016) (collecting cases). The warrant application here was additionally supported by corroborating information that Gerace used his cell phone to communicate with Bongiovanni and other potential co-conspirators, and that witnesses reported observing Gerace use cocaine and provide cocaine to others.[8]

Gerace contends that the information in the warrant application was stale, and therefore insufficient to establish probable cause, because the affidavit failed to specify that the conspiracy allegations in the Indictment ended anywhere from 15 to 27 months before law enforcement seized Gerace's phone and applied for the warrant. Defendant similarly argues that the information was stale because no time frame was provided as to when witnesses purportedly saw Gerace use and distribute cocaine, and because the application did not set forth the dates of communication between Gerace and his co-conspirators. The Court disagrees.[9]

---

[8] The Court rejects defendant's argument that probable cause was lacking because the application did not establish an indica of reliability as to the witnesses who provided information about Gerace's cocaine use. As noted above, the Indictment served as probable cause that Gerace engaged in a conspiracy to distribute narcotics. Information that witnesses saw Gerace use and provide others with cocaine corroborated the allegations of the Indictment. Thus, even without information as to the reliability or credibility of these witnesses, the search warrant application still contained sufficient probable cause to believe that a crime was committed, and that evidence of a crime was located on Gerace's phone.

[9] At the time he moved against the search warrants, Gerace requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (Dkt. No. 147) He argued that Agent Ryan purposefully omitted the dates of the conspiracy charges in the Indictment, as well as the dates of alleged communications between Gerace and his co-conspirators, to hide the fact that law enforcement's information was stale. After briefing and oral argument, this Court denied Gerace's request for a *Franks* hearing because the allegations of staleness and lack of probable cause could be determined from the four-corners of the warrant application, and because Gerace failed to make a substantial showing that the omission of information was designed to mislead or was made in reckless disregard of misleading the issuing judge. (Dkt. Nos. 174, 201) Gerace appealed, and on December 7, 2021, the District Court affirmed this Court's denial of defendant's request for a *Franks* Hearing. (Dkt. Nos. 223)

Generally, "the facts in an affidaivt supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). However, there is no "bright-line rule for staleness." *Id.* Instead, the determination "must be made on the basis of the facts of each case." *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981). The two critical factors in determining whether facts supporting a search warrant are stale are "the age of those facts and the nature of the conduct alleged to have violated the law." *Id.* To that end, when facts supporting the warrant "present a picture of continuing conduct or an ongoing activity…the passage of time between the last described act and the presentation of the application becomes less significant." *Id.*

Narcotics conspiracies, in particular, represent "the very paradigm of continuing enterprises for which courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) (internal quotations marks and citations omitted). Consequently, courts in the Second Circuit have found probable cause to remain current in narcotics cases, like this one, even when the gap between the most recent information and the search was substantial. For example, in *Rivera v. United States*, the Second Circuit noted that its precedents have upheld relying on information "22 days to 18 months old" in search warrant applications related to ongoing narcotics investigations. 928 F.2d 592, 602 (2d Cir. 1991) (in the context of narcotics conspiracies, "intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale). The same rationale is to be

applied here, where Gerace's alleged criminal conduct was not a singular and isolated incident but instead part of a conspiracy to distribute narcotics, bribe a public official, and engage in other illegal activity over a sustained period of time. *See e.g., Singh*, 390 F.3d at 181-82 (no staleness from lapse of twenty months between information in affidavit and the search warrant application where alleged criminal activity was of an ongoing and long-term nature); *Rowell*, 903 F.2d at 903 (finding that an eighteen-month delay from the informant's statement to the wiretap application was not stale in a narcotics conspiracy).

The type of the evidence at issue here also supports a finding that the information in the warrant application was not stale. "Staleness is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, but is rarely relevant when it is a computer file. Computer and computer equipment are 'not the type of evidence that rapidly dissipates or degrades.'" *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012); *quoting United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010). Like a computer, the cell phone seized from Gerace had the ability to retain large amounts of personal data, photographs, communications, and other records for long periods of time. Moreover, a cell phone is not the type of evidence that rapidly dissipates or degrades. Thus, even though the dates of the alleged criminal activity ended months before the date of the warrant application, there remained a substantial basis to believe that evidence of criminality would be found on his Gerace's phone.[10]

---

[10] The Court rejects Gerace's argument that the application is defective because it fails to show that the seized phone was the same one used by Gerace during the conspiracy. Even if the phone seized at the time of Gerace's arrest was not the same phone used to communicate with Bongiovanni and others, commonsense principles of data transfer and retention for modern cell phones, as well as the ongoing nature of the criminal conduct alleged here, suggest that relevant evidence would still have been stored on the phone in Gerace's possession at the time of his arrest.

Given the nature of the conduct alleged and the evidence sought to be recovered, and bearing in mind the substantial deference owed to a magistrate judge's finding of probable cause, it cannot be said that the gaps in time here rendered the information stale. *See United States v. Wells*, 20 Cr. 633, 2021 U.S. Dist. LEXIS 224151 (S.D.N.Y. Nov. 18, 2021) (upholding warrants obtained approximately 10 to 14 months after the last-dated criminal acts specified in the applications, since applications "detailed criminal activity spanning many months, showed that this activity was part of a broader pattern of fraudulent conduct, and indicated that evidence could be recovered from cellular devices long after it was created."). In other words, even if the warrant expressly stated that the conspiracy allegations ended between 15 and 27 months before the seizure, probable cause still would have existed for issuance of the warrant to search the cell phone.

Furthermore, had Agent Ryan's affidavit provided an insufficient basis for the probable cause determination, which it did not, the Court would still recommend that defendant's motion to suppress be denied. The Supreme Court has made clear that the exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral and detached magistrate was based on "objective good faith." *United States v. Leon*, 468 U.S. 897, 918-23 (1984) (the exclusionary rule "cannot be expected to apply, and should not be applied, to deter objectively reasonable law enforcement activity"). There are four circumstances in which the good faith exception does not apply: (1) where the issuing judge has been knowingly misled; (2) where the issuing judge wholly abandoned his or her judicial role; (3) where the application is so lacking in indica of probable cause as to render reliance on it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is

unreasonable. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). None of these circumstances apply here. The record is bereft of any evidence that Judge Schroeder was knowingly misled or that he abandoned his judicial role. Also, for the myriad of reasons just explained, it cannot be said that the warrant was so facially deficient, or so lacking in probable cause, that the officers' reliance on it was unreasonable. Indeed, as the Supreme Court and the Second Circuit have held, an officer is not "required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he requested." *United States v. Buck*, 813 F.2d 588, 591 (2d Cir. 1987); *quoting Massachusetts v. Sheppard*, 468 U.S. 981-90 (1984).

*Warrants to Search Gerace's Residence and Pharaoh's*[11]

On November 29, 2019, this Court issued a warrant authorizing the search of Gerace's residence, located at 5145 Lexor Lane, Clarence, New York, and Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York.[12] (*See* 19-MJ-

---

[11] In his pretrial motion, Gerace challenged the validity of the federal warrants to search his home and business. (Dkt. Nos. 147, 148) The Government responded that Gerace's request should be deemed waived because he "provides no evidence, makes no claims, and makes no argument as to the [specific] basis for his request to suppress evidence." (Dkt. No. 178, pg. 33) Because Gerace has generally moved for suppression of evidence recovered from his home and business pursuant to the federal warrants, and because these warrant applications remain under seal, the Court will proceed to make a recommendation on the merits of Gerace's suppression motion.

[12] Gerace submitted, in support of his suppression motions, a declaration stating that he has owned and resided at 5145 Lexor Lane since June 25, 2018. (Dkt. No. 113-2) Thus, Gerace has standing to challenge the search of his residence. Gerace submitted another declaration stating that he is the sole shareholder in Pharaoh's GC, Inc., a corporate entity. (Dkt. No. 132-2) Gerace avers that he owns 100% of the business's stock, worked there regularly, kept an office there, maintained all business records, paid all the bills, and ordered all food, drink, and other items for the business. (*Id.*) The Court is not convinced that these statements are sufficient to establish Gerace's standing as to Pharaoh's. However, the Court need not reach this issue since it concludes, for all the reasons stated *infra*, that the search of the business was lawful.

05303) The warrant application was supported by, *inter alia*, a forty-one page affidavit by Agent Ryan. (*Id.*) The search warrant affidavit provided a detailed description of an ongoing investigation into alleged criminal activities by Gerace and others and included detailed summaries of information obtained from numerous witnesses. (*Id.*) Further attachments to the search warrant application included applications, affidavits and attachments of other search warrants previously authorized and related to the facts of this case. (*Id.*) On February 26, 2021, this Court authorized another warrant to search Gerace's residence at 5145 Lexor Lane. (*See* 21-MJ-5072) The February 26, 2021 warrant application included, *inter alia*, the entire application, affidavit, and attachments previously submitted to this Court in support of the November 29, 2019 warrant. (*Id.*)

The Court has again reviewed, *in camera*, the complete applications, affidavits, and attachments submitted in support of the February 26, 2021 and November 29, 2019 search warrants. Based on this review, the Court again finds a substantial basis to conclude that evidence of criminality would be found at 5145 Lexor Lane (Gerace's residence) and 999 Aero Drive (Pharaoh's Gentlemen's Club). Thus, there was probable cause to issue the search warrants for the residence and the business. Moreover, the Court finds that even if the search warrants had been issued without sufficient probable cause, which they were not, the good faith exception to the exclusionary rule would prevent suppression here. Like the circumstances of the cell phone search warrant, the record here is wholly devoid of evidence that any exception to *Leon* would apply as to the warrants to search Gerace's home and business.

For all of these reasons, the Court finds no basis to suppress evidence recovered from Gerace's residence, Pharaoh's Gentlemen's Club, or Gerace's cell phone, and recommends that defendant's motion to suppress evidence be denied in its entirety.

### *Motion to Dismiss Counts 7 and 9 of the Indictment*

Gerace moves to dismiss Count 7, charging him with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. (Dkt. No. 147, pgs. 4-5) He also moves to dismiss Count 9, charging him with conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c). (*Id.*) Defendant submits that Counts 7 and 9 must be dismissed for "lack of specificity" pursuant to Rule 12(b)(3)(B)(iii) of the Federal Rules of Criminal Procedure. (*Id.*)

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense." *United States v. Stringer*, 730 F.3d 120, 123-24 (2d Cir. 2013); *accord* Fed. R. Crim. P. 7(c)(1). Similarly, a count is properly pled if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal of conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). To meet this standard, the indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Stringer*, 730 F.3d at 124 (quotations omitted). Provided "charges in the indictment have stated the elements of the offense and provided minimal protection against double jeopardy," the Second Circuit "has 'repeatedly refused, in absence of any showing of prejudice, to dismiss charges for lack of specificity.'" *Id.*; *quoting United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999). *See also United States*

*v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014) (a defendant moving to dismiss a count in the indictment "faces a high standard in seeking to dismiss[.]").

A charge of maintaining a drug-involved premises requires the Government to prove that a defendant knowingly maintained any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance, or that he aided and abetted another in doing so. *See* 21 U.S.C. § 856(a)(1); 18 U.S.C. § 2. Here, Count 7 of the Indictment tracks the language of this statute by alleging that, between 2006 and continuing until on or about December 12, 2019, Gerace knowingly used and maintained Pharaoh's, located at 999 Aero Drive, Cheektowaga, New York, for the purpose of manufacturing, distributing, and using controlled substances, including cocaine, cocaine base, methamphetamine, amphetamine, heroin, and marijuana. In fact, not only does Count 7 track the language of the statute, but it also provides (1) the address of the premises used or maintained; (2) the specific types of illegal narcotics involved; and (3) a time frame as to the alleged illegal activity. Thus, Count 7 properly contains the elements of the offense charged and informs Gerace of the charges against which he must defend, providing him protection against double jeopardy. No additional specificity is required.[13]

---

[13] The Court rejects Gerace's argument that Count 7 is defective for lack of specificity because it does not allege any specific instances where defendant "manufactured" illegal substances at Pharaoh's, as opposed to using or distributing them there. First, Count 7 tracks the language of the statute and contains enough information to apprise Gerace of the charge against him. Moreover, Rule 7(c) does not require the Government to allege specific instances of each means of violating a statute. "An indictment may charge alternative ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evidence justified a finding that the statute was violated in any of the ways alleged." *United States v. Astolas*, 487 F.2d 275, 280 (2d Cir. 1973).

To prove Gerace guilty of Count 9, the Government must prove that defendant conspired with at least one other individual to commit the substantive crime of sex trafficking by force, fraud, or coercion, as defined by 18 U.S.C. § 1591(a), (b)(1). *See* 18 U.S.C. § 1594(c). Count 9 alleges that, beginning in or about 2009 and continuing to in or about 2018, Gerace unlawfully conspired with others, known and unknown, to "knowingly recruit, entice, harbor, transport, provide, obtain and maintain, by means, in and affecting interstate and foreign commerce, persons, and to benefit, financially and by receiving anything of value, from participation in a venture with has engaged in such acts, knowing and in reckless disregard of the fact that means of force, fraud and coercion, and a combination of such means, would be used to cause such persons to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a) and 1591(b)(1)." (Dkt. No. 89)

Count 9 sufficiently tracks the relevant language of both the applicable conspiracy statute as well as the sex trafficking by force, fraud, or coercion statute. Indeed, it is well established that an indictment for conspiracy to commit a criminal offense may be stated with less specificity than an indictment charging the commission of that substantive offense. *See United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002). Instead, an indictment charging conspiracy "need only put the defendants on notice that they are being charged with a conspiracy to commit the underlying offense." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1994). Count 9 satisfies this requirement. It alleges that there was an agreement; approximately when and where that agreement was made or put into practice; and the substantive offense for which that agreement was formed.

Count 9 adequately informs Gerace of the charges against him so as to protect him from double jeopardy. No further specificity is needed.

The Court rejects Gerace's argument that Count 9 is defective because it fails to allege any overt or substantive act taken in furtherance of the conspiracy. Unlike the general conspiracy provision of 18 U.S.C. § 371, the Government need not allege or prove an overt act to sustain a sex trafficking conspiracy conviction charged pursuant to 18 U.S.C. § 1594(c). *See United States v. Pascacio-Rodriguez*, 749 F.3d 353, 362 n. 42 (5th Cir. 2014) (noting that Section 1594 does not require the government to prove that an overt act was committed in furtherance of the conspiracy); *United States v. Wilson*, 10-60102, 2010 WL 2991561, at *5, n. 1 (S.D. Fla. Jul. 27, 2010) (holding that conspiracy under section 1594(c) is proved by establishing that the defendant agreed to cause the victim to engage in a commercial sex act and does not require proof of an overt act). Likewise, the Court rejects Gerace's argument that Count 9 is insufficiently specific because it fails to identify any victim; how the victim was enticed or recruited; and what specific threat, coercion, or fraud is alleged to have been used against the victim. Gerace is essentially asking for evidentiary details and an explanation as to how the Government will prove this charge at trial. Such specificity is plainly not required under Rule 7(c) and the case law discussed above.[14]

For these reasons, it is recommended that Gerace's motion to dismiss Count 7 and Count 9 of the Indictment be denied.

---

[14] The Government represents that the information Gerace seeks regarding Count 9, including the identity of the alleged victims, the specific commercial sex acts alleged, and the specific types of fraud, force, or coercion used, either has been or will be provided to defendant during discovery and/or in pretrial disclosures, to the extent that such material is relevant and "otherwise appropriate for disclosure." Dkt. No. 178, pg. 21.

## Motion to Strike Prejudicial Surplusage

Gerace moves to strike all references to "IOC" or "Italian Organized Crime" from the Indictment.[15] (Dkt. Nos. 147, pgs. 1-3; 250) He argues that references to Italian Organized Crime are extremely prejudicial and not relevant to any genuine issues in the case.

The Federal Rules of Criminal Procedure provide that "the court on motion of the defendant may strike surplusage from the indictment." *See* Fed. R. Crim. P. 7(d). Courts in this Circuit have made clear that motions to strike surplusage are granted only where the challenged assertions are "not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990). "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *United States v. DePalma*, 461 F. Supp. 778, 797 (S.D.N.Y. 1978). Because the standard for surplusage is exacting, only rarely is alleged surplusage stricken or removed from an indictment. *Id.*

Here, the Indictment does not allege that Gerace was a member of, or associated with, IOC. The Indictment does allege, however, that Bongiovanni *believed* that Gerace and others were associated with IOC, and that this belief served as motivation, at least in part, for Bongiovanni's actions in accepting bribes in exchange for helping Gerace and others avoid criminal prosecution for drug trafficking. Likewise, the Government proffers that, at trial, it will introduce evidence that Bongiovanni believed, or had reason to believe, that Gerace and others were connected to IOC, and that he unlawfully manipulated his position as a DEA special agent to ingratiate himself with these individuals by accepting

---

[15] Together with his motion, defendant provides a chart listing all references to IOC or Italian Organized Crime in the Indictment. (Dkt. No. 250-1)

their bribes and helping them avoid apprehension and prosecution. Therefore, it appears that the allegations in the Indictment related to IOC are relevant and likely admissible as to Bongiovanni's motive for engaging in bribery and conspiring to defraud the United States and the DEA. *See United States v. Blum*, 62 F.3d 63, 68 (2d. Cir. 1995) (noting that evidence directly related to showing motive is plainly admissible).

For the reasons just stated, Gerace has not satisfied the exacting standard required for striking references to IOC from the Indictment at this juncture of the case. However, this matter has not yet proceeded to trial and this Court is not aware of all specific evidence and testimony the Government intends to introduce to the jury. In addition, Judge Sinatra will preside over the trial of this case and will ultimately decide on the admissibility of all such evidence. Should the District Judge determine, at the time of trial, that evidence of Bongiovanni's desire to ingratiate himself with perceived members of IOC is not admissible, or should the Government fail to offer any admissible evidence to support this theory, the analysis here may change. Moreover, it is the trial court that will determine whether the Indictment is submitted to the jury, when it is submitted, and in what form. "It is axiomatic that an indictment is merely an allegation and proof of nothing. The court routinely instructs the jury on this point. Secondly, there is nothing in the law that requires submission of the indictment to the jury. While the court may elect to do so, the ultimate decision to submit it in its entirety, or in some redacted form, will depend on the nature of the trial evidence when the time comes for making that decision." *United States v. Johnson Contracting of WNY, Inc.*, 11-CR-00241, 2012 U.S. Dist. LEXIS 169086 (W.D.N.Y. Sept. 18, 2012); *quoting United States v. Bruno*, 1:09-CR-29, 2009 U.S. Dist. LEXIS 74278 (N.D.N.Y. Aug. 21, 2009).

For these reasons, Gerace's motion to strike surplusage from the Indictment is denied, without prejudice to renewal before Judge Sinatra at the time of trial.

### *Motion to Disclose Grand Jury Evidence and Instructions*

Gerace moves for disclosure of all grand jury evidence, testimony or instructions that reference "Italian Organized Crime", "IOC", "La Cosa Nostra", or "LNC." (Dkt. Nos. 147, 265, 250, 277) Defendant submits that any reference to Italian Organized Crime or similar terms during grand jury proceedings was prejudicial and inflammatory, and that a disclosure of grand jury material is authorized where defense establishes that a ground may exist to dismiss the indictment. *See* Fed. R. Crim. P. 6(e)(E)(ii).[16]

"The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991) (citations and punctuations omitted). As a result of its investigatory function, "the grand jury paints with a broad brush." *Id.* Further, grand jury proceedings are entitled to a "presumption of regularity", *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974), and "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *R. Enterprises, Inc.*, 498 U.S. at 300. Moreover, law in this Circuit is clear that grand jury proceedings receive a presumption of secrecy and

---

[16] The Government previously provided defendant with redacted grand jury transcripts of the testimony of seven members of law enforcement. (Dkt. No. 274, pg. 3) Thus, defendant is in possession of at least some of the testimony and evidence presented to the grand jury in this case. Defendant now indicates that a review of the portions of grand jury testimony provided to him "revealed the rampant introduction of hearsay evidence of an extremely prejudicial nature." Thus, it appears that defendant's request for additional grand jury material was prompted, at least in part, by his review of material already provided by the Government. To the extent the Court discusses specific grand jury testimony by law enforcement in the context of this motion, that testimony has already been provided to defense counsel and was discussed in the briefing by both parties.

closure. *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996). Because of these principles, a defendant seeking disclosure of grand jury minutes must show a particularized need, in that (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding, which defendant alleges here is the Indictment and pending criminal case against him; (2) the need for disclosure outweighs the need for continued secrecy, and (3) the request is structured to cover only what is needed. *Id.*

The Court finds that defendant has not satisfied the high burden of demonstrating a particularized need for the disclosure of additional grand jury material, nor has he established any potential basis to dismiss the Indictment based on the grand jury proceedings. To that end, the Court rejects defendant's argument that the prejudicial nature of references to Italian Organized Crime "improperly undermined the grand jury's independence in violation of Mr. Gerace's constitutional right to an unbiased grand jury." Instead, the record demonstrates that to the extent the grand jury heard references to Italian Organized Crime, those references were relevant to the allegations and evidence presented against Bongiovanni, Gerace and their co-conspirators. Moreover, references to Italian Organized Crime and similar terms appear to be part and parcel of the *res gestae* of events that was being investigated by the grand jury. For instance, the Indictment alleges that Bongiovanni believed that Gerace and other co-conspirators were connected to IOC, and that this belief partially motivated Bongiovanni's criminal conduct.[17] In addition, a retired FBI agent testified, before the grand jury, that in 2009, he was intent on

---

[17] The Government stated during oral argument that individuals will testify at trial that Bongiovanni made statements indicating that he believed Masecchia was a "made guy" within Italian Organized Crime. In addition, the Indictment alleges that on or about July 11, 2013, Bongiovanni received an email from a fellow law enforcement agent advising him, in part, that "Masecchia is an associate and possibly made member of the Buffalo LCN family." (Dkt. No. 89)

investigating "mafia" presence in Buffalo, New York. The agent explained that he received information that Gerace was distributing cocaine, and that he believed that if he was able to "flip" Gerace as a cooperator, it would potentially help further his investigation into "mafia" activities in Buffalo.[18] The agent further testified that Bongiovanni invited him to participate in a meeting with Bongiovanni and Gerace, and that Bongiovanni later asked the agent about his investigation of Gerace. As a result of these conversations, the agent received the impression that Gerace was Bongiovanni's informant, and the agent ceased investigating Gerace at that time. Further, a Niagara Falls police detective testified, before the grand jury, that he worked on an Organized Crime Drug Enforcement Task Force investigation called "Operation Past Due", which entailed investigating a collection agency used to distribute narcotics and launder money. The officer testified that he believed some of the targets named in "Operation Past Due" were involved in traditional Italian Organized Crime. He further testified that documents regarding Operation Past Due were discovered in Bongiovanni's home after his retirement, and that Bongiovanni, who was not part of the investigation, had no reason for possessing these documents.

The testimony cited in these examples illustrates that real or perceived connections to Italian Organized Crime by co-conspirators constituted relevant evidence that was within the scope of the grand jury's investigation. Indeed, the testimony tended to show that members of law enforcement believed that Gerace and other potential co-conspirators were connected to, or associated with, Italian Organized Crime. Moreover, it tended to show that Bongiovanni may have shared that belief, and that this belief may

---

[18] According to defendant, the agent also testified that it was his belief that Gerace may have information about Italian Organized Crime as a result of his family relationships. To this end, defendant alleges that there was testimony that Gerace's father held a position with Laborers Local 210, and that this labor union was associated with IOC.

have motivated him, in part, to shield Gerace and others from criminal prosecution. The testimony in question was also directly relevant to at least two overt acts in the conspiracy charge, namely that Bongiovanni caused an agent to cease an investigation of Gerace by falsely representing that Gerace was his confidential informant and that Bongiovanni improperly removed a file related to Operation Past Due from the DEA Resident Office and concealed it in his home. Thus, it cannot be said that the Government introduced testimony about Italian Organized Crime without a foundation of relevancy or solely to inflame the grand jury.[19] Absent such a showing of misconduct, there is no reason to conclude that the need for disclosure of the additional grand jury transcripts outweighs the need for secrecy or that disclosure is needed to prevent possible injustice in another judicial proceeding. For these same reasons, the Court sees no need to review the grand jury testimony *in camera*. *See United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) ("Review of grand jury minutes is rarely permitted without specific factual allegations of

---

[19] The facts here are distinguishable from the cases relied on by defendant. Indeed, those cases involved the presentation of evidence or statements that were wholly irrelevant to the charges being investigated or were designed only to inflame the grand jurors. *See e.g., United States v. Serubo*, 604 F.2d 807 (3d Cir. 1979) (prosecutor commented upon the veracity of witnesses and gave a graphic, misleading and irrelevant reference to "La Cosa Nostra hatchet men"); *United States v. Hogan*, 712 F.2d 757 (2d Cir. 1983) (AUSA told grand jury that defendant was a "real hoodlum"; presented evidence that defendant committed crimes unrelated to the drug charges under investigation, including murder; and made himself an unsworn witness); *United States v. Vetere*, 663 F. Supp. 381 (S.D.N.Y. 1981) (grand jurors presented with factual errors about the offense and "non-relevant, highly prejudicial and erroneous information about [defendant's] criminal record"); *United States v. Hill*, 88 Cr. 154, 1989 U.S. Dist. LEXIS 2791 (S.D.N.Y. Mar. 22, 2989) (evidence that defendant admitted he was a "five-time felony offender" and that his girlfriend accused him of selling crack and neglect was irrelevant to the crimes under investigation); *United States v. Leeper*, 06-CR-58, 2006 U.S. Dist. LEXIS 32147 (W.D.N.Y. May 22, 2006) (grand jurors told that defendant had already been indicted for the offense by a previous grand jury, that they were there only to correct an "oversight" or "omission in paperwork", and that a jury had already been picked and the trial had started).

government misconduct.").[20]

Gerace further contends that references about his alleged or perceived connections to Italian Organized Crime prevented the grand jury from acting impartially and caused them to indict on this basis alone.[21] This testimony, while indeed prejudicial to Gerace, was also relevant to the conduct under investigation by the grand jury. Thus, the references do not show impropriety, nor do they provide a basis for the Court to either require further disclosure or review the materials *in camera* at this time. Indeed, much of this testimony will ultimately be disclosed, before trial, when the Government provides defendant with *Jencks* material pursuant to the District Court's pretrial order. Moreover, as noted previously, the grand jury's investigatory powers are broad, and are not limited to information or evidence that would be admissible at trial. To the extent the Government seeks to introduce evidence about Italian Organized Crime to the jury at the time of trial, Judge Sinatra will determine whether that specific evidence is relevant, whether it constitutes hearsay, and whether it is unduly prejudicial. Moreover, limiting instructions can be provided to the extent deemed appropriate and necessary by the District Court.

For all of these reasons, the Court denies defendant's motion for disclosure of grand jury testimony.

---

[20] To the extent defendant argues that grand jury testimony regarding IOC was "improper hearsay", this claim must also be rejected. The Rules of Evidence do not apply in grand jury proceedings. *See* Fed. R. Evid. 1101(d)(2); *R. Enterprises, Inc.*, 498 U.S. at 298 (It is well-established that hearsay is admissible in grand jury proceedings.) Defendant specifically contends that the grand jury was improperly presented with "unsworn hearsay testimony of a former Strike Force prosecutor that he would prosecute Gerace." According to the Government, the retired FBI agent discussed above testified that after he explained his investigation of Gerace to Bongiovanni, Bongiovanni stated "nobody would ever prosecute that case." The agent further testified that, in response, he advised Bongiovanni of a [former AUSA] who indicated he would prosecute. In light of the context of this discussion and the charges here, the Court does not find the testimony to be improper.

[21] Gerace notes that his ex-wife made public statements that she was a witness before the grand jury in this case and that she testified about "organized crime in Buffalo."

***Other Omnibus Demands***

*Bill of Particulars*

Gerace moves for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. (Dkt. No. 147, pgs. 5-11) Defendant seeks particularization as to, *inter alia*, where the alleged criminal conduct occurred; the identities of all known co-conspirators; the date, location and amount of each cash bribe alleged to have been paid to Bongiovanni by Gerace; the date, time, location, type and amount of controlled substances alleged to have been distributed; and the date, time, place and specifics of the alleged sex trafficking, including the identity of victims and perpetrators and the manner of coercion, enticement, or recruitment. (*Id.*) Gerace also seeks further details regarding the conspiracy to defraud charge, including the identity of any other individuals who provided payment or bribes to Bongiovanni; the specific information purportedly provided by Bongiovanni to Gerace; and the identity of the federal agent who Bongiovanni allegedly dissuaded from investigating Gerace and Pharaoh's. (*Id.*)

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In

determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). It is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Further, a defendant is not generally entitled to receive details of the government's conspiracy allegations through a bill of particulars. *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006).

The Indictment here is 45-pages long and provides a thorough explanation of the charges, including a detailed explanation of how Gerace, Bongiovanni, and others allegedly orchestrated a years-long scheme to defraud the United States and the DEA. The charges are not difficult to understand. The Government essentially claims that Gerace and others paid bribes to Bongiovanni, and that Bongiovanni used his position as SA for the DEA to shield Gerace and others from investigation and prosecution for narcotics distribution. The Indictment also alleges that Gerace conspired to distribute various controlled substances, that he maintained a drug-involved premises at his business (Pharaoh's), and that he conspired to engage in the sex trafficking of women. Further, the Government submits that it has provided extensive discovery that has exceeded the requirements of Rule 16. The Government has apparently provided, *inter alia*, flight records, phone records, evidentiary seizures, border crossing and border search information, cell phone extraction data, and photos seized depicting defendants in various locations outside of New York. (Dkt. No. 178, pg. 26) The Government also

represents that it has made certain grand jury transcripts available at its offices for defendant's review.[22] (*Id.*)

Considering allegations in the Indictment in conjunction with materials produced in discovery, the Court finds that defendant has been provided with sufficient information to inform him of the charges against him, prepare a defense, avoid surprise at trial, and ensure against double jeopardy. The additional details sought by Gerace amount to an attempt to use a bill of particulars as a discovery device. Stated another way, defendant seeks information about the manner in which each violation occurred, but that would impermissibly demand evidentiary detail and unduly intrude upon the Government's theories. *See United States v. Sattar*, 272 F. Supp. 2d 348, 375 (S.D.N.Y. 2003) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories."); *United States v. Barret*, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("the nature of the wheres, when and with whoms of a conspiracy are frequently held to be beyond the scope of a bill of particulars); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying request for "names of all co-conspirators and/or aidors and abettors…of the defendant"); *United States v. Taylor*, 11CR85A, 2012 U.S. Dist. LEXIS 43111, (W.D.N.Y. Mar. 9, 2012) (denying bill of particulars for § 856 count alleging a four-year time span); *United States v. Ramos-Cruz*, 11-CR-151-A, 2014 U.S. Dist. LEXIS

---

[22] The Government also notes that defendant will be provided with pre-trial submissions in accordance with the District Court's scheduling order, including a Government witness list with summaries of anticipated testimony; an exhibit list; a pre-trial memorandum; and *Jencks* and *Giglio* material. (Dkt. No. 178, pg. 26)

96825, (W.D.N.Y. July 16, 2014) (denying particularization on § 856 count where indictment alleged the time span was from a date unknown to 2009).

For these reasons, Gerace's request for a bill of particulars is denied.

### Disclosure of Brady Material

Defendant moves for the disclosure of *Brady* material, including all pleadings and the transcripts of all proceedings related to the District Court's injunction against Gerace's New York State civil lawsuit against his ex-wife. (Dkt. No. 147, pgs. 14-15)

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id*. at 144.

30

The Government acknowledges its affirmative continuing duty to provide defendant with exculpatory evidence, as well as evidence that the defense might use to impeach the Government's witnesses at trial. (Dkt. No. 178, pg. 49-50) The Government also agrees to provide impeachment *Brady* material in accordance with the schedule set by the District Court prior to trial and no later than when the Government produces and delivers its *Jencks* materials. *Id.* Given the Government's representations and for the reasons just stated, defendant's motion to compel the production of *Brady/Giglio* material is denied as moot. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

With respect to his request for pleadings or other materials relevant to the injunction issued by the District Court in the New York State civil lawsuit, defendant notes that he is "aware that the injunctive proceedings occurred before the District Court and agrees that the District Court should determine what is discoverable under *Brady* in this respect." (Dkt. No. 147, pgs. 14-15) Thus, to the extent defendant believes that there is outstanding material related to this proceeding that he does not have and that qualifies as *Brady*, he may renew his request before the District Court.

*Preservation of Rough Notes*

Gerace moves for an order requiring the preservation of all agent notes and/or investigative notes related to this case, and requests that the Government compile a list of any notes destroyed in the course of the investigation. (Dkt. No. 147, pg. 17) The Government indicates that all federal law enforcement agents routinely retain notes taken

during investigations, and that the Government will request that agents continue to retain their notes relevant to this investigation. (Dkt. No. 178, pgs. 53-54)

Defendant's motion for the preservation of rough notes is granted. The Government notes that it is not aware of any document discoverable under Rule 16 or under the *Brady* doctrine which was destroyed either before, during, or after the investigation in this matter. (Dkt. No. 178, pg. 55) However, the Government states that if it becomes aware of any items that were destroyed at any time in this investigation, the Government will notify defendant at a reasonable time. (*Id.*)

### *Federal Rule of Evidence 807*

Gerace requests prior notice of any statements the Government intends to offer at trial pursuant to the residual hearsay exception set forth in Rule 807 of the Federal Rules of Evidence. (Dkt. No. 147, pg. 17) The Government agrees that should it determine that the residual exception to the hearsay rule applies, it will notify defendant of any such statements it intends to introduce, prior to trial and in accordance with the District Court's pretrial order. (Dkt. No. 178, pg. 55)

### *Impeachment Material as to Hearsay Declarant*

Gerace seeks disclosure of any evidence and/or other information in the Government's possession or control which would tend to impeach the credibility of any hearsay declarant whose statement will be offered at trial. (Dkt. No. 147, pg. 18) Rule 806 of the Federal Rules of Evidence provides that where a hearsay statement is admitted, the opposing party is permitted to attack the credibility of the declarant. The Government acknowledges that this request falls under its *Brady* and/or *Giglio* obligations, and that it

has committed to disclosing this information, prior to trial and in accordance with the District Court's pretrial order. (Dkt. No. 178, pg. 56)

*Joinder*

Gerace moves to join in all motions made by co-defendant Bongiovanni. (Dkt. No. 147, pg. 18) As noted above, the Court will address Bongiovanni's pretrial motions in a separate Report, Recommendation and Order. Gerace's motion for joinder is granted. Thus, to the extent relevant and applicable, the Court's future decisions and findings with respect to co-defendant's motions will apply equally to Gerace.

*Severance*

Gerace moves to sever the counts in the Indictment that only charge co-defendant Bongiovanni and seeks to sever the trial of defendant Gerace on Counts 2 and 8. (Dkt. No. 147, pg. 3-4)

A request to sever either counts or defendants is best handled by the District Judge, who will ultimately preside over the trial. *See United States v. Mireles*, 08 CR 34, 2009 U.S. Dist. LEXIS 109176 (WDNY Nov. 23, 2009) (Severance motions "are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented.") Thus, Gerace's motion for severance is denied without prejudice to renew his request before Judge Sinatra.

*Leave to Supplement and File Further Motions*

Defendant asks for leave to make other and further motions and to supplement the instant motions as may be deemed appropriate at a future date. (Dkt. No. 147, pg. 18) To the extent that defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions

is granted.  To the extent that defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

### *Government's Request for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case which the defendant has in his possession and intends to introduce at trial, and a written summary of any expert witness testimony.  (Dkt. No 178, pg. 58.)  The Government also requests that defendant disclose any statements he intends to offer at trial pursuant to Rule 807 of the Federal Rules of Civil Procedure. (*Id.*) The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial.  *See* Fed. R. Crim. P. 16(c).

### CONCLUSION

For the foregoing reasons, it is recommended that defendant Peter Gerace, Jr.'s motion to suppress evidence and motion to dismiss Count 7 and Count 9 of the Indictment be denied. (Dkt. Nos. 147, 148) It is ordered that defendant Peter Gerace, Jr.'s omnibus discovery demands are decided in the manner detailed above (Dkt. Nos. 147, 148, 250, 265) and the Government's request for reciprocal discovery is granted (Dkt. No. 178).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED**.


Dated:  August 4, 2022
        Buffalo, New York


_____
MICHAEL J. ROEMER
United States Magistrate Judge