IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
—————————————————————————————

UNITED STATES OF AMERICA,

        v.                                   19-CR-227-JLS

PETER GERACE, JR.,

                    Defendant.
—————————————————————————————

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE ROEMER'S REPORT AND RECOMMENDATION

The defendant, PETER GERACE, JR., through his attorney, Joseph M. LaTona, Esq., filed objections to Magistrate Judge Roemer's Report and Recommendation ("R&R") denying each of the defendant's substantive pretrial motions. *See* ECF No. 296 (Gerace's Objections); ECF No. 291 (Judge Roemer's R&R). THE UNITED STATES OF AMERICA, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi and David J. Rudroff, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby responds to defendant's objections.

## PROCEDURAL HISTORY

The defendant is charged in a Second Superseding Indictment with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 2), bribing a public official, in violation of 18 U.S.C. § 201(b)(1)(A) and (b)(1)(C) (Count 6), maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count 7), conspiracy to

distribute controlled substances, in violation of 21 U.S.C. § 846 (Count 8), and conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c) (Count 9). Second Superseding Indictment, ECF No. 89.

The defendant is charged alongside his co-conspirator and co-defendant Joseph Bongiovanni in Counts 2 and 8. *See id.* Co-defendant Bongiovanni is also charged with thirteen additional counts, all of which relate to conduct he undertook as a Drug Enforcement Administration ("DEA") Special Agent.

The Second Superseding Indictment alleges in detail that the defendant and co-defendant Bongiovanni orchestrated a years-long scheme to defraud the United States DEA. *See id.* The indictment alleges that the defendants did this by the defendant paying co-defendant Bongiovanni bribes in exchange for co-defendant Bongiovanni violating his official and lawful duties as a DEA Special Agent to protect and benefit the defendant and others. *See id.* As the defendant continued to corruptly pay off co-defendant Bongiovanni, the defendant allegedly conspired to use his place of business to distribute illegal narcotics and conspired to engage in the sex trafficking of women. *See id.*

The grand jury returned the Second Superseding Indictment on February 25, 2021. The defendant subsequently filed several pretrial motions. ECF Nos. 147, 148. The government opposed. ECF No. 178. The defendant filed a reply and supplemental memoranda of law. ECF Nos. 185, 250, 265, 275. The government responded to the

defendant's supplemental memoranda.  ECF Nos. 274, 277.  Judge Roemer denied each of the defendant's substantive pretrial motions, outlined below.  *See* ECF No. 291.

Since the Second Superseding Indictment was handed up, the defendant has also filed motion after motion seeking to unseal search warrant applications and for a *Franks* hearing, despite addressing these issues in his omnibus pretrial motion.  *See, e.g.*, ECF Nos. 113, 132, 133, 151, 152, 171, 179, 195, 203, 209, 210, 226.  This Court previously affirmed Judge Roemer's R&R denying the defendant's and co-defendant Bongiovanni's motions to unseal search warrant applications "at this stage".  *See* ECF No. 208.  This Court also previously affirmed Judge Roemer's R&R denying the defendant's motion for a *Franks* hearing.  *See* ECF No. 223.  This Court has held in abeyance the defendant's motion to adopt an order similar to that which was issued in *United States v. Hawit*, No. 15-cr-22 (PKC), 2017 WL 3016794 (E.D.N.Y. Jul. 14, 2017).  ECF No. 238.

### THE DEFENDANT'S OBJECTIONS

The defendant now objects to Magistrate Judge Roemer's recommendations and orders to deny the defendant's substantive pretrial motions.  *See* ECF No. 296.  The defendant objects to the following rulings by Magistrate Judge Roemer:

1. Denying the defendant's motion for access to grand jury instructions and other materials (*Id*. at 1–5);

2. Denying the defendant's motion to strike surplusage (*Id*. at 5–6);

3. Denying the defendant's motion to suppress evidence obtained from the defendant's cell phone (*Id*. at 6–9);

4. Denying the defendant's motion for a bill of particulars (*Id*. at 9–11);

5.      Denying the defendant's motion to sever (*Id.* at 11–12); and

6.      Denying the defendant's motions to dismiss (*Id.* at 12).


Each of the defendant's objections lack support in law and fact.[1]  The Court should adopt Judge Roemer's R&R, affirm his orders and findings, and set this matter for trial.[2]


## STANDARD OF REVIEW

There are two different standards of review under which this Court must consider Judge Roemer's recommendations and orders.  First, the Court must conduct a *de novo* review of Judge Roemer's recommendations to deny the defendant's motions to dismiss and motion to suppress.  28 U.S.C. § 636(b)(1)(C).  Second, the Court must review Judge Roemer's orders regarding the remainder of the defendant's objections to determine if the defendant has established that the orders were "clearly erroneous or contrary to law."  *See* 28 U.S.C. § 636(b)(1)(A).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006); *United States v. Feneziani,* No. 05-CR-290E, 2007 WL 1613630, at *1 (W.D.N.Y. Jun. 1, 2007).  "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous."  *Anderson*

---

[1] The government hereby incorporates by reference its prior responsive filings on the issues objected to by the defendant, here.  *See* ECF Nos. 123, 169, 178, 194, 207, 225, 274, 277.

[2] Judge Roemer granted co-defendant Bongiovanni's request to join the defendant's motions, to the extent they are applicable to co-defendant Bongiovanni.  *See* ECF No. 291 at 5 n.4, n.5.  To the extent co-defendant Bongiovanni has standing to raise any motion advanced by the defendant in his objections, the government's opposition filed herein is intended to apply equally to co-defendant Bongiovanni's position.

*v. Bessemer City*, 470 U.S. 564, 574 (1985). Under the "clearly erroneous" standard of review, the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. *See Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007). Rather, "[t]his standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused his discretion." *United States v. Pirk*, 282 F. Supp. 3d 585, 590 (W.D.N.Y. 2017) (quoting *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotation marks omitted)); *see also S.E.C. v. Verdiramo*, 890 F. Supp. 2d 257, 266 (S.D.N.Y. 2011) ("The clearly erroneous standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes[.]" (quotation marks omitted)).

## ARGUMENT

I.  **The Court should Affirm Judge Roemer's Order Denying the Defendant's Motion for Access to Grand Jury Instructions and Materials**

The Court should affirm Judge Roemer's order denying the defendant's motion for disclosure of grand jury minutes and materials.[3] The defendant objects to Judge Roemer's order, suggesting that because the grand jury heard "prejudicial hearsay" related to Italian Organized Crime ("IOC"), Judge Roemer should have ordered disclosure of all grand jury

---

[3] As Judge Roemer points out, the government has, as a courtesy, provided the defendant with early access to certain grand jury transcripts that would otherwise only be disclosed as *Jencks* material. *See* ECF No. 291 at 22 n.16. The government has provided a fulsome summary of the pertinent material in its under seal filing at ECF Nos. 274, 277. To avoid having to file this opposition under seal, the government respectfully requests the Court review ECF Nos. 274 and 277 in the event it needs more factual information regarding the grand jury testimony at issue.

testimony, evidence, and instructions, that related to IOC in any way. *See* ECF No. 297 at 1–5. The defendant argues that Judge Roemer did not properly consider governing case law. *See id*. The defendant is wrong. Judge Roemer's order properly applied binding precedent, was legally sound, and was not clearly erroneous or contrary to law.

A.   Pertinent Legal Principles

It is well settled that "grand jury proceedings are presumed lawful and regular." *United States v. Torres*, 901 F.2d 205, 232 (2d. Cir 1990); *see Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974) (noting grand jury proceedings are entitled to a "presumption of regularity"). A federal grand jury "sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51 (1992). A federal grand jury is empowered to "investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 342–43 (1950). And it is indisputable that a federal grand jury may hear and consider hearsay evidence. *Costello v. United States*, 350 U.S. 359, 364 (1956).

An indictment returned by an unbiased and appropriately constituted grand jury is considered facially valid. *See Williams*, 504 U.S. at 54–55. A court may not dismiss an indictment based on a defendant's challenge "that there was inadequate or incompetent evidence before the grand jury." *Costello*, 350 U.S. at 364; *see Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) (reaffirming its holding in *Costello* that an indictment cannot be dismissed based on a challenge to the reliability or competence of the evidence presented

to the grand jury). Nor is a prosecutor required to present a particular subset of evidence, including exculpatory evidence, to a grand jury. *Williams*, 504 U.S. at 52–55.

As Judge Roemer made clear, "law in this Circuit is clear that grand jury proceedings receive a presumption of secrecy and closure." ECF No. 291 at 22 (citing *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996)). Thus, a defendant seeking disclosure of grand jury material, including grand jury transcripts, evidence, and instructions, has the burden of establishing a particularized need for the grand jury material that outweighs the presumptions of secrecy and regularity afforded to grand jury proceedings. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *In re Grand Jury Subpoena (General Motors Corp.)*, 32 F.R.D. 175, 180 (S.D.N.Y. 1963). To make such a particularized showing, a defendant must show that (1) the material sought is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure outweighs the need for continued secrecy, and (3) the request is structured to cover only what is needed. *In re Grand Jury Subpoena*, 103 F.3d at 239. Consequently, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." *Torres*, 901 F.2d at 232.

B. <u>Analysis</u>

Judge Roemer properly found that the "defendant has not satisfied the high burden of demonstrating a particularized need for the disclosure of additional grand jury material, nor has he established any potential basis to dismiss the Indictment based on the grand jury proceedings." ECF No. 296 at 23. This finding is not clearly erroneous or contrary to law. In fact, this finding appropriately applies precedent from this Circuit and the Supreme Court.

The defendant has repeatedly attempted to argue that since the grand jury heard hearsay evidence, implicating IOC and the defendant's alleged involvement in a different investigation, the defendant was so prejudiced that the indictment was not returned by an unbiased grand jury. *See, e.g.*, ECF No. 296 at 1–5. Judge Roemer found this argument unpersuasive. *See* ECF No. 291 at 23–26. As Judge Roemer appropriately noted,

> [T]he record demonstrates that to the extent the grand jury heard references to [IOC], those references were relevant to the allegations and evidence presented against Bongiovanni, Gerace and their co-conspirators. Moreover, references to [IOC] and similar terms appear to be part and parcel of the *res gestae* of events that [were] being investigated by the grand jury.

ECF No. 291 at 23. Because this evidence was relevant to the grand jury's investigation into the defendant and his co-conspirators, the introduction of this evidence was not "gratuitously prejudicial" as the defendant suggests in his objections. *See* ECF No. 296 at 4. Rather, the evidence was pertinent to the grand jury's ongoing investigation. The introduction of such evidence to the grand jury reveals nothing close to prosecutorial misconduct in front of the grand jury. Nor does the defendant's identification of relevant evidence that happens to cast him in a negative light constitute a particularized need for additional disclosures that outweigh the continued need for grand jury secrecy. The defendant has established nothing but a desire to go on a fishing expedition to gather as much secret information as possible from the grand jury proceedings that led to his indictment. That is not a legitimate reason to seek the disclosure of grand jury material and grand jury instructions.

## C.     Inapplicability of Cases Cited by the Defendant

The defendant has accused Judge Roemer of misapplying or ignoring precedent that the defendant claims support his motion. *See* ECF No. 296 at 2 ("The Magistrate/Judge

apparently ignored the *Williams* decision and its applicability to this case . . . Contrary to the Magistrate/Judge's on-the-record statement, there is no indication that he read or considered the Second Circuit decision in *Estepa*[.]").[4] Part of the problem with these accusations is that the precedent cited by the defendant does not actually support his position.

The defendant cites *Williams* to support his contention that dismissal of the indictment might be appropriate because the defendant believes his ex-wife "perjured" herself in front of the grand jury in a statement made about the defendant's former attorney. *See* ECF No. 296 at 2. Regardless of the actual truth of this allegation, nothing in *Williams* or *Bank of Nova Scotia* stands for the proposition that an unproven allegation by a defendant that a grand jury witness made a false statement while testifying is grounds for dismissal of an indictment. *See Williams*, 504 U.S. at 46–47; *Bank of Nova Scotia*, 487 U.S. at 260–61. In fact, in *Bank of Nova Scotia*, the Court stated, "Because the record does not reveal any prosecutorial misconduct with respect to these [inaccurate summaries], they provide no ground for dismissing the indictment . . . Although the Government may have had doubts about the accuracy of certain aspects of the summaries, this is quite different from having knowledge of falsity." 487 U.S. at 260–61. The defendant has not made, and cannot legitimately make, any claim that the government was unequivocally certain that the comment made by the defendant's ex-wife

---

[4] The defendant also makes passing reference to a Department of Justice ("DOJ") policy that directs prosecutors to "do nothing to inflame or otherwise improperly influence the grand jurors." ECF No. 296 at 4. The defendant seemingly suggests that the government somehow violated that provision of DOJ policy in this case. The government did not violate any DOJ policy in its presentation to the grand jury. Even if it had, internal DOJ policies do not confer substantive rights to criminal defendants. *See United States v. Fish*, No. 05-CR-228A, 2006 WL 3731292, at *11 (W.D.N.Y. Dec. 18, 2006) (citing *United States v. Myers*, 123 F.3d 350, 355–56 (6th Cir. 1997)).

about the defendant's former lawyer was false at the time the comment was made. The defendant's reliance on *Williams* is misplaced, and *Bank of Nova Scotia* further shows the frailty of his argument.

The defendant then cites the Second Circuit's decision in *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972), to support his contention that he should have access to secret grand jury material because, he claims, the *Estepa* court reversed a conviction and instructed the district court to dismiss an indictment because of "the prosecution's '. . . undue reliance upon hearsay before the grand jury . . . .'" ECF No. 296 at 2–3. *Estepa* does not support the defendant's contention for the exact reasons Judge Roemer gave in ordering that the defendant's motion be denied. In *Estepa* the court did note the importance of prosecutors not relying on "undue" or "needless" hearsay evidence in front of the grand jury. *See* 471 F.2d at 1136–37. But as Judge Roemer repeatedly pointed out in his R&R, the hearsay evidence about which the defendant complains was not undue or needless. As Judge Roemer said,

> [T]he record demonstrates that to the extent the grand jury heard references to [IOC], those references were relevant to the allegations and evidence presented against Bongiovanni, Gerace and their co-conspirators. Moreover, references to [IOC] and similar terms appear to be part and parcel of the *res gestae* of events that [were] being investigated by the grand jury.

ECF No. 291 at 23. Moreover, the *Estepa* court took issue with the prosecutor using a law enforcement witness "who knew least, rather than subject the other officers, or himself, to some minor inconvenience" to relay hearsay information to the grand jury. *See* 471 F.2d at 1135. As the government explained in its under seal filing, *see generally* ECF No. 274, the government's presentation of witnesses, with whose testimony the defendant takes issue, was not gratuitous nor an attempt to avoid a "minor inconvenience." The witnesses had relevant

first-hand, personal knowledge to share with the grand jury about the defendant and his co-defendant. And as Judge Roemer pointed out, the evidence the defendant claims was prejudicial, was relevant to the grand jury's investigation. *See* ECF No. 291 at 23. *Estepa* is inapposite.

Similarly, the defendant's reliance on *United States v. Acquest Development, LLC*, 932 F. Supp. 2d 453 (W.D.N.Y. 2013), is misplaced. In *Acquest*, the court found it appropriate to dismiss the indictment without prejudice when the prosecutor introduced a probable cause finding by Judge Arcara which was "extremely similar" to the charges ultimately handed up in the indictment. *See id.* at 456–60. Nothing of the sort happened, here. The statement protested by the defendant is that an FBI Special Agent testified a prosecutor told him that he would prosecute a case involving the defendant, in response to co-defendant Bongiovanni saying, "nobody would ever prosecute that case." *see* ECF No. 296 at 3; ECF No. 274 at 9. That response was relevant and specific to one of the allegations being investigated by the grand jury—that co-defendant Bongiovanni took steps to protect the defendant. It was not an unnecessary introduction of a formal judicial finding of probable cause like occurred in *Acquest*. That decision does not support the defendant's position.

Finally, the defendant misstates the holding and improperly relies upon *United States v. Jacobson*, 691 F.2d 110 (2d Cir. 1982), to claim that "the Second Circuit reversed a conviction, holding issues regarding grand jury misconduct by the prosecution would best be resolved by an 'adversary argument upon a full record . . . .'" ECF No. 296 at 5 (citing *Jacobson*, 691 F.2d at 116). First, the court in *Jacobson* did not reverse the defendant's

conviction. 691 F.2d at 116. Second, the court's holding was much more limited than the broad-sweeping characterization the defendant gives it. The *Jacobson* court remanded the proceedings because the government had made inconsistent and confusing claims in its briefing and at oral argument about what occurred in front of two separate grand jury panels that heard evidence against the defendant. *See id*. at 115–16. The court took issue with what appeared to be factual inaccuracies in the government's briefing about what occurred in front of the grand jury and, thus, required disclosure of the underlying grand jury materials. *See id*. The court did not hold, as the defendant seems to suggest, that any time a defendant makes a claim regarding grand jury misconduct, the defendant is entitled to all secret grand jury material so that an adversary argument on a full record can be made.

As explained above, the defendant has the burden of establishing a particularized need for the grand jury material that outweighs the presumptions of secrecy and regularity afforded to grand jury proceedings. *See Pittsburgh Plate Glass Co.*, 360 U.S. at 400 (1959). To make such a particularized showing, a defendant must show that (1) the material sought is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure outweighs the need for continued secrecy, and (3) the request is structured to cover only what is needed. *In re Grand Jury Subpoena*, 103 F.3d at 239. The defendant, here, has made no such showing. And Judge Roemer's R&R denying the defendant's motion was certainly not clearly erroneous or contrary to law. The Court should affirm Judge Roemer's order.

## II. The Court should Affirm Judge Roemer's Order Denying the Defendant's Motion to Strike Surplusage.

The Court should affirm Judge Roemer's order denying the defendant's motion to strike the term "IOC" from the indictment. The indictment uses the term "IOC" to allege that the defendant's co-conspirator, co-defendant Bongiovanni, *believed* the defendant and others were associated with IOC. *See, e.g.*, Second Superseding Indictment, ECF No. 89 at 19 (emphasis added). In part because of that belief and to ingratiate himself with those he believed to be a part of IOC, it is alleged, co-defendant Bongiovanni took actions that violated co-defendant Bongiovanni's official and lawful duties as a DEA agent in exchange for bribes from the defendant. *See id*. at 17–26. Allegations related to the state of mind and motive behind the defendant's co-conspirator's criminal behaviors are relevant to the charges the defendant faces and not, as the defendant claims, prejudicial surplusage. The defendant raises no points or authorities in his objection to suggest that Judge Roemer acted clearly erroneously or contrary to law. *See* ECF No. 296 at 5–6. Judge Roemer's order should be affirmed.

### A. Pertinent Legal Principles

To strike language from an indictment, a defendant must meet an "exacting standard" by showing that "the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'" *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (quoting *United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982)). Regardless of the level of prejudice particular language in the indictment imputes onto a defendant, "if evidence of the allegation is admissible and relevant to the charge . . . it may not be stricken." *Scarpa*, 913 F.2d at 1013. And where, as here, the evidence or allegation in question relates

to a defendant's motive for committing a crime, it is well-settled that the evidence is almost always relevant. *See Moore v. United States*, 150 U.S. 57, 61 (1893) ("[C]onsiderable latitude is allowed on the question of motive." (internal quotations omitted)); *United States v. Tierney*, 760 F.2d 382, 387 (1st Cir. 1985) ("Where, as here, the disputed evidence is offered to show motive, the relevancy hurdle is at its nadir. Motive is, by definition, subjective in nature; it is a state of mind that is shown by proving the emotion that brings it into being. Thus, as to such testimony, Professor Wigmore observed that: '[A] circumstance showing the probability of appropriate ensuing action . . . is always relevant . . . .'") (citations omitted)); *United States v. Day*, 591 F.2d 861, 874–75 (D.C. Cir. 1978) ("[I]n general, *any fact may be offered* which by possibility can be conceived as tending with others towards the emotion in question." (emphasis in original)).

Additionally, motions to strike surplusage "are rarely granted" in this Circuit. *United States v. Johnson Contracting of WNY, Inc.*, No. 11-CR-00241 (A)(M), 2012 WL 5943176, at *6 (W.D.N.Y. Sep. 18, 2012) (citing *United States v. Jimenez*, 824 F. Supp. 351, 369 (S.D.N.Y. 1993)). The rarity of the defendant's desired relief is logical because an indictment's language does not necessarily influence a jury's consideration of the charges as "[i]t is axiomatic that an indictment is merely an allegation and proof of nothing. The court routinely instructs the jury on this point." *United States v. Bruno*, No. 1:09-CR-29 (GLS), 2009 WL 2601249, at *6 (N.D.N.Y. Aug. 21, 2009).

B.    Analysis

Judge Roemer properly applied *Scarpa, Johnson Contracting,* and other precedent to deny the defendant's motion.  As Judge Roemer correctly indicated, the indictment

> does allege, however, that Bongiovanni *believed* that Gerace and others were associated with IOC, and that this belief served as motivation, at least in part, for Bongiovanni's actions in accepting bribes in exchange for helping Gerace and others avoid criminal prosecution for drug trafficking.

ECF No. 291 at 20 (emphasis in original).  Thus, the use of the term IOC was a relevant factual allegation.  It was not surplusage.  And as Judge Roemer made clear, this Court can, at trial, decide both issues of admissibility and whether the indictment can go back with the jury during deliberations.  *See* ECF No. 291 at 21.  Regardless, the term IOC has relevance to the allegations against the defendant.  As such, Judge Roemer's order denying the defendant's motion was proper and not clearly erroneous or contrary to law.


In his objections, the defendant asserts that Judge Roemer should have adopted a procedure used in *United States v. Allen*, No. 09–CR–329, 2014 WL 1745933 (W.D.N.Y. Apr. 30, 2014).  In *Allen*, the court held that the inclusion of a highly prejudicial nickname was surplusage and, therefore, needed to be struck from the indictment.  2014 WL 1745933, at *6.  But the court noted that "The Government may be permitted to introduce this evidence if it is needed to identify the defendant, connect him with the crime, or prove some other matter of significance with respect to the crimes charged."  *Id.*  Judge Roemer did not adopt such a procedure.  The defendant has pointed to no authority that shows Judge Roemer's decision to not adopt such a procedure was clearly erroneous or contrary to law.  And should the Court treat the defendant's objection as a newly submitted motion before this Court, the Court

should still not adopt the procedure from *Allen*. A charging instrument is not evidence. The use of a term in an indictment does not prejudice the defendant in front of the jury in any way that cannot be cured by a limiting instruction. And the Court can decide, at the time of trial to instruct the jury as such. The Court should affirm Judge Roemer's order denying the defendant's motion.

III.     **The Court should Affirm Judge Roemer's Order Denying the Defendant's Motion to Suppress.**

The Court should affirm Judge Roemer's recommendation to deny the defendant's motion to suppress evidence obtained through the search of the defendant's cell phone. *See* ECF No. 291 at 6–14. Judge Roemer correctly opined that the Cell Phone Warrant was supported by probable cause, the probable cause was not stale, and, in any event, suppression would not be warranted because law enforcement relied on the warrant in good faith. *Id.* The defendant objects to each of those findings.[5] As discussed below, however, the defendant's objections are without merit, the Court should adopt the R&R in those respects, and the motion to suppress should be denied.

_____

[5] In his objections, the defendant discusses prior motions practice regarding his attempts to unseal the Cell Phone Warrant. As this Court is aware, the application for the Cell Phone Warrant was sealed to protect the ongoing investigation, but a redacted version of the application was provided to the defense. This Court previously ordered that the warrant would remain sealed and that the Court would revisit the basis for non-disclosure, *in camera*, after a trial date is set. ECF Nos. 208, 238. That Order is the law of the case, and the government does not read the defendant's objections as challenging that determination. Nevertheless, to the extent the Court reads the defendant's objections as challenging that prior Order, the government reincorporates its prior arguments here. *See* ECF Nos. 169, 194, 207, 225.

A.    The Cell Phone Warrant was Supported by Probable Cause.

Judge Roemer correctly recommended the Court deny suppression of the fruits of the search of the defendant's cell phone because the Cell Phone Warrant was based on probable cause.  Specifically, Judge Roemer found that the Second Superseding Indictment provided probable cause to believe that the defendant had engaged in narcotics trafficking.  *See* ECF No. 291 at 8–9.  Moreover, Special Agent Ryan's averments that the defendant was known to use his cell phone to communicate with co-defendant Bongiovanni and others involved in narcotics trafficking, as well as his professional knowledge—based on his extensive training and experience—that narcotics traffickers are known to store evidence of their trafficking activities on their cell phones, established probable cause to believe that the defendant's cell phone would contain evidence of those crimes.  *Id.* at 9–10.

The defendant objects to that conclusion, arguing that "the application failed to factually establish any nexus between Mr. Gerace's alleged possession and distribution of controlled substances and the cell phone itself," ECF No. 296 at 8, and that "an affiant's experience and training is not enough to justify the issuance of a search warrant."  *Id.* at 9.

The defendant's objections wholly ignore the fact that Special Agent Ryan's opinions were corroborated by his investigation.  Specifically, Special Agent Ryan averred that the investigation established that the defendant used his cell phone to regularly communicate with co-defendant Bongiovanni and others involved in narcotics trafficking.  *See* ECF No. 178, Ex. B ¶ 10.  As Judge Roemer properly concluded, these factors, taken together, establish probable cause to believe that evidence of narcotics trafficking would be found on the defendant's cell

phone. *See United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985); *see also United States v. Sosa,* 379 F. Supp. 3d 217, 221 (S.D.N.Y. 2019) ("And the mere fact the [cell phone] Warrant Application relied on practical considerations and law enforcement's expertise as one of the links in the chain connecting the subject property to the alleged criminal activity does not vitiate this Court's probable cause finding."); *United States v. Brown,* 676 F. Supp. 2d 220, 228 (S.D.N.Y. 2009) (finding probable cause to search a cell phone based on affiant's training and experience with similar investigations because the court "is entitled to rely on that opinion, as well as the commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including telephone numbers and other contact information . . . on communication devices used by the individual"); *United States v. Benevento,* 836 F.2d 60, 71 (2d Cir. 1987) (citing to DEA Special Agent's extensive experience investigating narcotics trafficking in support of affirming denial of motion to suppress). This conclusion is also consistent with extensive case law holding that the experience of investigating agents is sufficient to establish probable cause to search cell phones possessed by defendants arrested in connection with ongoing drug-distribution crimes. *See, e.g.*, *United States v. Hoey,* No. 15 CR 229, 2016 WL 270871, at *9 (S.D.N.Y. Jan. 21, 2016) (collecting cases).

The defendant's reliance on *United States v. Guzman,* No. S5 97 CR 786(SAS), 1998 WL 61850, at *4 (S.D.N.Y. 1998), *United States v. Rios,* 881 F. Supp. 772, 773–77 (D. Conn. 1995), and *United States v. Gomez,* 652 F. Supp. 461, 461–63 (E.D.N.Y. 1987) is misplaced. *See* ECF No. 296 at 9. Those cases are not only not authoritative, but also easily distinguishable. Indeed, all three cases involved warrants issued to search a defendant's residence based exclusively on the affiant's boilerplate assertion that, in his or her experience,

evidence was likely to be found in the defendant's home.  *See Guzman*, 1998 WL 61850, at

*2–*4; *Rios*, 881 F. Supp. at 774–77; *Gomez*, 652 F. Supp. at 462–63.  But a cell phone is

fundamentally different than a residence, and by its nature is much more likely to contain

evidence of narcotics trafficking—especially historical evidence—as laid out in the warrant

application.  *See* ECF No. 178, Ex. B ¶ 12 (describing, in detail, the ways in which cell phones

are used to facilitate drug trafficking and store evidence the same).  Moreover, unlike the cases

cited by the defendant, the Cell Phone Warrant application did not rely solely on boilerplate

assertions; instead, Special Agent Ryan's professional opinion was corroborated by, among

other things, the allegation that the defendant often used his cell phone to communicate with

co-defendant Bongiovanni and others.  *See* ECF No. 178, Ex. B ¶¶ 10.  The defendant's

position is unsupported by any of the cases he cites.  Judge Roemer's analysis of probable

cause was sound.  The Court should adopt Judge Roemer's findings in this regard.


      B.      <u>The Probable Cause Supporting the Cell Phone Warrant was not Stale.</u>

Judge Roemer also rejected the defendant's staleness arguments, finding that the

ongoing, conspiratorial nature of the crimes under investigation, coupled with the nature of

the evidence sought, supported a finding that the probable cause was not stale.  *See* ECF No.

291 at 10–13.


The defendant objects to this conclusion by again reiterating the temporal gap between

the alleged end of the defendant's criminal activity and the issuance of the Cell Phone

Warrant.  ECF No. 296 at 8.  However, the defendant also asserts that Judge Roemer should

not have relied on his commonsense inference that cell phone users often transfer date from one phone to another. *Id.* Both arguments are meritless.

Although it is well-settled that a warrant may be lacking probable cause "where the evidence supporting it is not sufficiently close in time to the issuance of the warrant that probable cause can be said to exist as of the time of the search[,]" *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (quotation marks omitted) (citing *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993)), "there is no bright-line rule for staleness," *United States v. Boles*, 914 F.3d 95, 105 (2d Cir. 2019), and the determination "must be made on the basis of the facts of each case." *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981). As relevant here, where a warrant application "present[s] a picture of continuing conduct or an ongoing activity . . . the passage of time between the last described act and the presentation of the application becomes less significant." *See id*. Narcotics conspiracies are an example of "the very paradigm of continuing enterprises for which courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990). Moreover, the nature of the evidence sought is critical to this analysis. Although "[s]taleness is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, [it is] rarely relevant when it is a computer file. Computer and computer equipment are 'not the type of evidence that rapidly dissipates or degrades.'" *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (quoting *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010)).

Here, Judge Roemer correctly found that, given the nature of the evidence sought, and the nature of the crimes under investigation, and considering the deference owed to an issuing

Judge's finding of probable cause, "it cannot be said that the gaps in time here rendered the information stale."  ECF No. 291 at 13 (citing *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (noting that Second Circuit precedent has upheld warrants in ongoing narcotics investigations that are based on information up to 18 months old, and stating "intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.")); *see United States v. Wells*, No. 20-CR-633, 2021 WL 5401494, at *4–*5 (S.D.N.Y. Nov. 18, 2021) (upholding warrants obtained 10 to 14 months after the criminal conduct in the applications because the applications "detailed criminal activity spanning many months, showed that this activity was part of a broader pattern of fraudulent conduct, and indicated that evidence could be recovered from cellular devices long after it was created").  Judge Roemer, therefore, correctly rejected the defendant's arguments—reasserted in his objections without additional explanation—that the time between the defendant's criminal conduct and the Cell Phone Warrant application rendered the probable cause stale.

The defendant seemingly disagrees with Judge Roemer's "commonsense" conclusion that a person who replaces a cell phone will often transfer data from the old phone to the new one.  *See* ECF No. 296 at 8.  This is meritless.  A Court reviewing the issuance of a search warrant accords "considerable deference to the probable cause determination of the issuing magistrate."  *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)).  While this Court must undertake *de novo* review, reviewing courts still show deference to the issuing Magistrate and ask only whether the issuing Magistrate had a "substantial basis" for his or her decision.  *See United States v. Guay*, 464 F.

Supp. 3d 507, 513 (W.D.N.Y. 2020).

Here, Judge Roemer was entitled to credit his commonsense and experience when evaluating the Cell Phone Warrant and impute that commonsense and life experience to the issuing Magistrate. The fact that the defendant does not ultimately agree with Judge Roemer's experience does not render his conclusions facially incorrect.[6] The Court should therefore reject the defendant's objections, adopt the R&R, and deny the motion to suppress.

C. <u>Even Assuming that the Cell Phone Warrant was not Based on Probable Cause, Suppression would be Inappropriate because the Agents Relied on the Warrant in Good Faith.</u>

Judge Roemer correctly found that, even if the Cell Phone Warrant was lacking in probable cause, suppression would not be warranted because law enforcement applied for and relied on the warrant in objective good faith. *See* ECF No. 291 at 13–14. The defendant now objects to that recommendation, arguing that Special Agent Ryan misled the issuing Magistrate by omitting the dates of criminal activity in the Second Superseding Indictment. ECF No. 296. at 9. The Court should reject that argument.

As the Court is well-aware, the exclusionary rule "cannot be expected to apply, and should not be applied, to deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. 897, 918–23 (1984). Thus, the good faith exception does not apply where:

---

[6] Indeed, if, as the defendants appear to argue, the only permissible inference is that a person under investigation must have destroyed the evidence, it is hard to imagine how the government could ever obtain a search warrant. Every search warrant application would be lacking in probable cause because courts would be required to assume that the target destroyed any evidence that might have existed in the place to be searched. This is clearly not the law.

(1) the judge issuing the warrant was knowingly misled; (2) the judge wholly abandoned his or her judicial role; (3) the application is so lacking in probable cause that reliance on it is unreasonable; or (4) the warrant is so facially deficient that reliance upon it is unreasonable. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008).

None of those criteria are present here. Although the defendant appears to argue that Judge Schroeder was knowingly misled by Special Agent Ryan's failure to include certain dates of criminal conduct in the Cell Phone Warrant application, the defendant has not put forth one shred of evidence that this was a deliberate attempt to withhold material information from Judge Schroeder.

Instead, Special Agent Ryan explicitly stated in the application "I have set forth only the information I believe is necessary to establish probable cause." ECF No. 178, Ex. B ¶ 3. Special Agent Ryan also specified that cell phones were capable of retaining relevant information for long periods of time. *Id.*, Ex. B ¶ 12. Thus, omitting specific timeframes was not intentional deception because the dates of charged conduct were immaterial given the nature of the crimes allegedly committed and the fact that the warrant was meant to search a cell phone. Moreover, Special Agent Ryan specifically referenced the case number of the Second Superseding Indictment in his affidavit. This belies any credible claim that he attempted to deceive Judge Schroeder. Despite reasserting his baseless claims of misconduct, the defendant has not established that the government acted in bad faith, and suppression is not appropriate here.

As such, the Court should adopt the R&R and affirm Judge Roemer's recommendation denying the defendant's motions to suppress.

IV. **The Court should Affirm Judge Roemer's Order Denying the Defendant's Motion for a Bill of Particulars.**

The Court should affirm Judge Roemer's order denying the defendant's motion for a bill of particulars. In his pretrial motions, the defendant requested a bill of particulars, essentially seeking an outline of the government's theory of the case. *See* ECF No. 147 at 5–11.[7] Judge Roemer correctly denied the defendant's motion, reasoning that the lengthy and detailed Second Superseding Indictment combined with the extensive discovery provided by the government was sufficient to apprise the defendant of the allegations against him and allow him to prepare a defense. ECF No. 291 at 27–30. The defendant now objects to that ruling. *See* ECF No. 296 at 9–11.

A. Pertinent Legal Principles

The Second Circuit has held

> A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. Acquisition of evidentiary detail is not the function of the bill of particulars. So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion.

_____

[7] Co-defendant Bongiovanni made a similar motion for a bill of particulars. *See* ECF No. 148 at 5–11. Judge Roemer denied co-defendant Bongiovanni's motion, too. *See* ECF No. 292 at 43–46. In his own objections, co-defendant Bongiovanni did not address Judge Roemer's order denying his motion for a bill of particulars. *See generally* ECF No. 298. But to the extent the Court considers it proper for co-defendant Bongiovanni to join the defendant's motion for a bill of particulars, the government's argument, here, is intended to apply equally to co-defendant Bongiovanni's motion.

*Torres*, 901 F.2d at 234 (citations omitted).  The purpose of a bill of particulars is to "apprise a defendant of the nature of the charges against them so that he can adequately prepare a defense, avoid prejudicial surprise at trial[,] and plead double jeopardy in subsequent related actions." *United States v. Greater Syracuse Board of Realtors*, 437 F. Supp. 376, 379 (N.D.N.Y. 1977).  Importantly, a bill of particulars is not a discovery device, and should not be used as such.  *Wong Tai v. United States*, 273 U.S. 77, 82 (1927).  Thus, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003).  A bill of particulars also should not be ordered where the information sought is available elsewhere or has already been provided.  *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987).

B.    Analysis

Here, after assessing the record, Judge Roemer correctly found that

> [c]onsidering allegations in the Indictment in conjunction with materials produced in discovery, the Court finds that defendant has been provided with sufficient information to inform him of the charges against him, prepare a defense, avoid surprise at trial, and ensure against double jeopardy. The additional details sought by Gerace amount to an attempt to use a bill of particulars as a discovery device.

ECF No. 291 at 29.  Judge Roemer cited extensive case law supporting that conclusion.  *Id.* (collecting cases).

In response, the defendant has failed to allege a single way in which the failure to obtain a bill of particulars would leave him unable to prepare a defense, avoid prejudice, or plead double jeopardy in a future prosecution. Instead, the defendant accuses Judge Roemer of failing to apply clearly inapplicable case law.

For example, the defendant cites *United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998), for the proposition that "a bill of particulars is especially appropriate when a conspiracy count covers a long period of time." ECF No. 296 at 10. But *Barnes* does not stand for that proposition. *Barnes* involved a 33-count indictment charging the most prominent members of the Latin Kings street gang in a racketeering conspiracy. *Id*. at 664. Defendant Barnes was charged in a single count of that 33-count indictment, which substantively charged a drug conspiracy yet encompassed the entire RICO-conspiracy. *Id*. However, defendant Barnes was neither a member nor an associate of the Latin Kings and was not charged in the numerous violent crimes in aid of racketeering that were specifically described in twenty-five counts. *Id*. Thus, absent a bill of particulars, Barnes was left unable to ascertain the allegations against him or claim double jeopardy later, and the Court ordered a bill of particulars. *Id*. at 665–66.

Here, by contrast, and as Judge Roemer recognized, the 49-page Second Superseding Indictment lays out with great specificity the allegations against the defendant and co-defendant Bongiovanni, including what each is alleged to have done. Combined with the discovery provided to date, the defendant has sufficient notice of the allegations against him,

can prepare for trial, and can assess ostensible double jeopardy claims in the future. *Barnes* is unavailing.

The defendant also cites several cases for the proposition that the location of the charged crimes should be specified. *See* ECF No. 296 at 10–11. But the decisions in those cases do not specify why particularization was appropriate on the facts of those cases, and they are therefore of little assistance here. *See, e.g.*, *United States v. Mannino*, 480 F. Supp. 1182, 1185–86 (S.D.N.Y. 1979) (summarily ordering particularization). Moreover, the cases cited by the defendant that do discuss why particularization was necessary are readily distinguishable from the instant case. *See, e.g.*, *United States v. Orsini*, 406 F. Supp. 1264, 1265 (E.D.N.Y. 1976) (noting that the defendant moved for a bill of particulars within the context of preparing an alibi defense). The defendant, here, has not identified a single case in which a bill of particulars was required under the relevant circumstances—specifically, a case involving a lengthy indictment, supplemented by extensive discovery, and where the defendant has not identified any specific reason that a bill of particulars is necessary to ascertain the charges against him, avoid prejudicial surprise, or assess double jeopardy claims.

Instead, it is apparent, and Judge Roemer correctly recognized, that the defendant's request is nothing more than an improper attempt to use a bill of particulars as a discovery device. The motion was therefore correctly denied. *See* ECF No. 296 at 29 (collecting cases in which courts deny bills of particulars that are improperly sought as discovery devices). The order was not clearly erroneous or contrary to law. The Court should affirm that order.

## V.    **The Court should Deny the Defendant's Motion to Sever.**

Judge Roemer denied the defendant's motion to sever without prejudice, noting that this Court is best positioned to determine whether severance is appropriate.  *See* ECF No. 291 at 33.  The defendant, in his objections to the R&R, renewed his motion to sever under Federal Rules of Criminal Procedure 8 and 14.  The defendant's prior filings have made clear that he seeks to sever the counts in the Second Superseding Indictment that only charge co-defendant Bongiovanni and to sever the trial of the defendant on Counts 2 and 8 that charge both defendants.  *See* ECF No. 147 at 3.  The defendant's motion should be denied because the counts were properly joined under Federal Rule of Criminal Procedure 8(b) because they all arise from the same series of acts and the defendant has failed to show substantial prejudice that would warrant severance under Rule 14(a).

### A.    Pertinent Legal Principles

"Joint trials 'play a vital role in the criminal justice system'" by "promot[ing] efficiency and 'serv[ing] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209–10 (1987)).  Joint trials also "provid[e] a 'more accurate assessment of relative culpability,' avoid[] victims and witnesses having to testify repeatedly, and avoid[] the random favoring of 'the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand,'" which together creates "a powerful presumption in favor of joint trials of defendants indicted together."  *United States v. Coley*, 498 F. Supp. 3d 415, 418 (W.D.N.Y. 2020).  Multiple courts, including the Second Circuit, recognize that most joint trials harbor at least some level of prejudice against the defendants, but the benefits of

efficiency and judicial economy normally outweigh any risks. *See e.g.*, *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994); *United States v. Cardascia*, 951 F.2d 474, 482–83 (2d Cir. 1991). Federal Rules of Criminal Procedure 8 and 14 were designed with these considerations in mind and aim "to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without *substantial* prejudice to the right of the defendants to a fair trial." *Zafiro*, 506 U.S. at 540 (emphasis added and internal quotations omitted); *see Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968) (same). Significantly, "[i]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.

Severance under Rule 8 and Rule 14 are two distinct inquiries. *See United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008). Rule 8(b) provides that, "[t]he indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed R. Crim. P. 8(b). Additionally, "[a]ll defendants need not be charged in each count." *Id*. In the Second Circuit, "the same series of acts or transactions" includes criminal acts between two or more individuals that "are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *Rittweger*, 524 F.3d at 177 (internal quotations omitted); *see United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990); *see also United States v. Turoff*, 853 F.2d 1037, 1044 (2d Cir. 1988) (explaining inquiry under Rule 8(b) involves "applying . . . commonsense" to ensure joinder is permissible). A "common plan" in this context refers to a common goal or purpose for the series of acts rather than the actual act of conspiring. *See United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). Further,

a non-frivolous conspiracy charge is sufficient to support joinder of the defendants. *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1990). "[M]embers of two or more [legal] conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy." *Rittweger*, 524 F.3d at 178.

Distinctly, under Rule 14(a), a court may order separate trials on certain counts or for certain defendants, or other relief, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a). The showing of prejudice to warrant severance must be "substantial" in order to minimize the risk of "undermin[ing] the policies behind Rule 8" and to respect the "gains in trial economy" and general benefits that joinder supplies. *United States v. Werner*, 620 F.2d 922, 928–29 (2d Cir. 1980); *see also United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (describing "a preference in the federal system for providing defendants who are indicted together with joint trials" due to "economy, convenience and avoidance of delay"). Severance under Rule 14(a) is only proper, then, if there is a "'serious risk that a joint trial would compromise a specific trial right of [the defendant's], or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. McCoy*, 235 F. Supp. 3d 427, 436 (W.D.N.Y. 2017) (quoting *Zafiro*, 506 U.S. at 539); *see also Werner*, 620 F.2d at 928 (describing showing of prejudice necessary to find a Rule 14 violation as "substantial"). To be clear, "[t]he fact that evidence may be admissible against one defendant but not against others does not require separate trials." *United States v. Rucker*, 586 F.2d 899, 902 (2d Cir. 1978); *see also United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996) ("The fact that one of several codefendants is tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that

would require a new trial."); *United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982) ("[T]he fact that evidence may be admissible against one defendant but not against another defendant does not necessarily require a severance.").  Before severing the trials of two defendants, the court should consider if there are alternative methods to reduce prejudice, such as jury instructions "to consider the evidence against each defendant individually for each count." *Hernandez*, 85 F.3d at 1029–30; *see also United States v. DeVillio*, 983 F.2d 1185, 1192–93 (2d Cir. 1993) (finding an "explicit limiting instruction" not to consider evidence adequately reduced risk of prejudice and did not require severance); *Losada*, 674 F.2d at 171 (endorsing jury instructions "to consider the evidence separately with respect to each defendant" as sufficient means to reduce prejudice).  Indeed, juries are presumed capable of sorting evidence and separately considering each count and each defendant.  *See United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998); *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996).

B.      <u>Joinder is Proper Under Rule 8(b)</u>

The counts in the indictment are all properly joined because they all involve the same alleged course of conduct—co-defendant Bongiovanni using his official position to protect and benefit his friends and associates, including the defendant.  The charges included in the Second Superseding Indictment stem from one overarching "series of acts or transactions" lasting from approximately 2005 through 2019 in which co-defendant Bongiovanni, in exchange for bribes, would use his official position within the DEA to aid and protect his friends and associates, including the defendant, from drug-related investigations by—among other activities—providing confidential information, dissuading other government agents from investigating, and falsifying official documents, meaning their joinder in the same

indictment and trial is permissible. The fact that co-defendant Bongiovanni is alleged to have entered into two separate conspiracies to do this is of no consequence to whether the counts are properly joined.

Co-defendant Bongiovanni serves as the unifying participant amongst the two conspiracies and the additional substantive counts. It is the similarity in co-defendant Bongiovanni's conduct across the two conspiracies charged that makes joinder proper. The defendant allegedly received substantially the same general protections and benefits from co-defendant Bongiovanni's conduct as those who bribed co-defendant Bongiovanni as alleged in Count 1. The witnesses, evidence, and general facts relevant to the charges faced by the defendant are all intertwined with those relevant to co-defendant Bongiovanni. The operative set of facts is more than sufficient to establish proper joinder of counts against multiple defendants under Rule 8(b) and controlling precedent. The defendant's motion for severance under Rule 8(b) should be denied.

C.     Severance Under Rule 14 is Unjustified

Likewise, the defendant has failed to show that he will be substantially prejudiced from being tried jointly with co-defendant Bongiovanni. As the defendant correctly notes, the references to IOC are included to show a part of the state-of-mind allegations underlying the motive behind the actions co-defendant Bongiovanni undertook relating to the abuse of his position as a public official. ECF No. 147 at 4. Essentially, the defendant is arguing that admissible evidence against his co-defendant is so overwhelmingly prejudicial that the Court should jeopardize judicial economy and require witnesses and the public, generally, to endure

two trials of substantially the same evidence. That argument must fail. The type of prejudice the defendant claims exists, if it exists at all, can be properly dealt with using limiting instructions and admonishments to the jury about considering evidence against each defendant separately. As explained above, the Second Circuit has repeatedly upheld such steps as sufficient to deal with any prejudice that arises from a joint trial. *See, e.g.*, *DeVillio*, 983 F.2d at 1192–93; *Losada*, 674 F.2d at 171. The defendant has not shown "that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *See United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). The defendant's motion for severance under Rule 14 should be denied.

## VI.   The Court should Affirm Judge Roemer's Order Denying the Defendant's Motions to Dismiss.

The Court should affirm Judge Roemer's recommendation to deny the defendant's motion to dismiss Count 7 and Count 9. In his objections, the defendant "reiterates the position set forth in his omnibus motion and supporting memorandum of law" and provides no additional argument or precedential support. Count 7 charges the defendant with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, and Count 9 charges the defendant with conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c). *See* Second Superseding Indictment, ECF No. 89. The defendant claims the counts are defective due to a "lack of specificity." ECF No. 147 at 7 (citing Fed. R. Crim. P. 12(b)(3)(B)(iii)). The defendant's motion, renewed in his objections, is wholly inconsistent with well-established law governing the propriety of charging instruments. Counts 7 and 9 properly track the pertinent statutory language and provide adequate notice

to the defendant of the allegations against him. The Court should affirm Judge Roemer's recommendation to deny the defendant's motion to dismiss should be denied.

A.     Pertinent Legal Principles

A defendant moving to dismiss a count in the indictment "faces a high standard in seeking to dismiss[.]" *United States v. Smith*, 985 F. Supp. 2d. 547, 561 (S.D.N.Y. 2014) (quotations omitted). A properly pled count in the indictment need only "contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. To meet this standard, the indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quotations omitted); *see* Fed. R. Crim. P. 7(c). As long as the "charges in an indictment have stated the elements of the offense and provided minimal protection against double jeopardy," the Second Circuit "has 'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" *Stringer*, 730 F.3d at 124 (quoting *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999). Indeed, "[a]n indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001).

In his prior filings, the defendant relies on *Russell v. United States*, 369 U.S. 749 (1962) in support of his motion to dismiss, claiming *Russell* stands for the ubiquitous applicability of the proposition that an "indictment must do more than parrot a 'criminal statute' as it must

contain 'a statement of the facts and circumstances as will inform the accused of the specific offense . . . .'" ECF No. 148 at 2. The defendant fails to properly describe and apply *Russell*. *Russell* did hold that the specific indictment in question was insufficient, but "it is clear that the Supreme Court's decision in *Russell* must be seen as addressed to the special nature of a charge of refusal to answer questions in a congressional inquiry and *not as a broad requirement applicable to all criminal charges* that the indictment specify how each essential element is met." *Stringer*, 730 F.3d at 125–26 (emphasis added) (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 109–10 (2007). The *Stringer* court further clarified the limitations of <u>Russell</u> by noting,

> The message of the Supreme Court's discussions in *Russell* and *Resendiz-Ponce* is that for certain statutes specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment, *but there is no such universal requirement*.

*Stringer*, 730 F.3d at 126 (emphasis added). The court went on to list those instances in which an indictment has been held to the heightened standard of pleading derived from *Russell* including for "charges of criminal falsity" and "the type of controlled substance alleged to have been manufactured, distributed, dispensed, or possessed when charging under the controlled substances statute, 21 U.S.C. § 841." *Id.* at 126–27. Notably, the defendant has never cited authority—binding or otherwise—that holds or suggests that the statutes charged in Counts 7 and 9 are held to the heightened standard of pleading from *Russell*. No such authority exists.


B.   <u>Analysis: Count 7</u>

Count 7 sufficiently and properly pleads the essential elements and facts necessary to comport with *Hamling* and Federal Rule of Criminal Procedure 7(c). To prove the defendant

is guilty of Count 7, the government must prove he permanently or temporarily knowingly used or maintained any place for the purpose of manufacturing, distributing, or using any controlled substance, or aided and abetted another in doing so. 21 U.S.C. § 856(a)(1); 18 U.S.C. § 2; *see United States v. Pirk*, 1:15-CR-00142 EAW, 2018 WL 6629679, at *7 (W.D.N.Y. Dec. 19, 2018). Count 7 in the indictment charges precisely that. It specifies for the defendant the approximate time period during which he is alleged to have committed this crime and outlines how he violated the essential elements of the statute. *See* Second Superseding Indictment, ECF No. 89 at 30.

But Count 7 does more than just the bare minimum required by Rule 7(c) and controlling precedent. It also provides the defendant with notice as to the name and address of the alleged drug-involved premises and identifies each type of illegal narcotic the government intends to prove the premises was used or maintained for the purpose of manufacturing, distributing, or using. Additionally, it incorporates allegations included in Count 2, which charges the defendant and co-defendant Bongiovanni with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Second Superseding Indictment, ECF No. 89 at 17–26. Count 2 lays out, in detail, a number of overt acts allegedly perpetrated in furtherance of the conspiracy, some of which involve the use or maintenance of the drug-involved premises identified in Count 7. *See id.* The detail included in Count 7 "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. Nothing more is required.

The defendant has claimed that Count 7 is deficient because it does not "specify the date, specific type and amount of controlled substance and/or individuals involved with any of the possessions and/or distributions of controlled substance purportedly occurring at Pharaoh's" and that this "renders it impossible to investigate and/or present any alibi defense." ECF No. 148 at 3. Despite the partial factual inaccuracy of this claim, Judge Roemer properly noted that such detail is not required. *See* ECF No. 291 at 17. Nothing in 21 U.S.C. § 856(a)(1), *Hamling*, or any other controlling statute or case law requires the indictment to include the type of specifics the defendant claims make the indictment deficient. In fact, a court in this district denied a motion to dismiss when a defendant made a virtually identical argument to the defendant, claiming that the count charging him with a violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 "utterly fails to set forth a plain, concise and definite written statement of the essential facts that allege that [the defendant] maintained a drug involved premises at 974 Jefferson Avenue[.]" *United States v. Wood*, 17-CR-103V, 2019 WL 7630768, at *9–*10 (W.D.N.Y. Aug. 30, 2019). The count at issue in *Wood*, like Count 7 in this case, tracked the statutory language, included the address of the alleged drug-involved premises, and identified the illegal narcotics the premises was allegedly used or maintained for the purpose of manufacturing, distributing, and using. 17-CR-103V, ECF No. 84 at 36. Unlike Count 7 in this case, however, the pertinent count in *Wood* did not incorporate the allegations included in any other counts. *See id*. Thus, Count 7 in this case provides more detailed allegations than the count charging the same crime in *Wood* provided. Nevertheless, the judge in *Wood* denied the motion to dismiss and held that the pertinent count "adequately advises the defendant of the nature of the charge and expressly tracks the language of the statute." *Wood*, 2019 WL 7630768, at *10.

The defendant also has taken issue with the fact that Count 7 does not identify specific instances of the defendant manufacturing illegal narcotics when Count 7 alleges that "Pharoah's was maintained 'for the purpose of manufacturing' controlled substances." *See* ECF 148 at 3. To be clear, identifying such specific instances would be unnecessary under Rule 7(c) even if Count 7 solely alleged the defendant used the drug-involved premises for the purpose of manufacturing illegal narcotics. But Count 7 is charged in the conjunctive—that the defendant used and maintained a drug-involved premises for the purpose of manufacturing, distributing, and using illegal narcotics. *See* ECF 89 at 30. The defendant has seemingly taken issue with Count 7 being charged in the conjunctive, apparently arguing that the government must allege specific instances of manufacturing, distributing, *and* using illegal narcotics in order to sufficiently plead Count 7. But this argument runs afoul of a fundamental principle of criminal procedure that "[a]n indictment may charge alternate ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evidence justifies a finding that the statute was violated in any of the ways alleged." *United States v. Astolas*, 487 F.2d 275, 280 (2d Cir. 1973). To the extent the defendant is, in fact, arguing that the government has to allege specific instances of each means of violating a statute because Count 7 is charged in the conjunctive, he has misinterpreted Rule 7(c) and *Astolas.*

Count 7 sufficiently and properly tracks the pertinent statutory language and provides the defendant with notice of the charges and allegations he faces. The Court should affirm Judge Roemer's recommendation and deny the defendant's motion to dismiss Count 7.

C.    Analysis: Count 9

Similarly, Count 9 sufficiently and properly pleads the essential elements and facts necessary to comport with *Hamling* and Federal Rule of Criminal Procedure 7(c).  To prove the defendant guilty of Count 9, the government must prove the defendant conspired with at least one other to commit the substantive crime of sex trafficking by force, fraud, or coercion, as defined by 18 U.S.C. § 1591(a), (b)(1).  18 U.S.C. § 1594(c).  Proving conspiracy to commit sex trafficking by force, fraud, or coercion is different from proving the substantive crime.  *See United States v. Wilson*, No. 10–60102–CR, 2010 WL 2991561, at *5 (S.D. Fla. Jul. 27, 2010) ("Of course, an indictment for conspiracy [under 18 U.S.C. § 1594(c)] does not equate with an indictment charging the underlying crime itself.") (citing *United States v. Bayer*, 331 U.S. 532, 542 (1947) ("[T]he agreement to do the act is distinct from the act itself.")).

Significantly, unlike the general conspiracy provision of 18 U.S.C. § 371, no overt act needs to be alleged or proved to support a sex trafficking conspiracy charged pursuant to 18 U.S.C. § 1594(c).  *See, e.g.*, *United States v. Pascacio-Rodriguez,* 749 F.3d 353, 362 n.42 (5th Cir. 2014) (noting that section 1594 does not require the government to prove an overt act was committed in furtherance of the conspiracy); *Wilson*, 2010 WL 2991561, at *5 (holding that conspiracy under section 1594(c) is proved by establishing that the defendant agreed to cause the victim to engage in a commercial sex act); *see also Whitfield v. United States*, 543 U.S. 209, 213–14 (2005) (holding when Congress omits an explicit reference to an overt act in a conspiracy statute, it dispenses with that requirement); *cf. United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) ("[I]n an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all

39

the elements essential to the commission of the offense which is the object of the conspiracy.").

Count 9 adequately pleads each of the essential elements of 18 U.S.C. § 1594(c) and puts the defendant on notice of the charges against him. It provides the defendant with the approximate timeframe and general location in which his conspiracy is alleged to have taken place. It lays out each of the elements of the substantive offense the defendant is alleged to have conspired to commit and alleges that the defendant made an agreement with others knowingly, willfully, and unlawfully to commit the substantive offense. Nothing more is required of Count 9.

> The defendant complains that Count 9
>
> > does not allege the commission of any overt act in furtherance of the purported conspiracy. It fails to allege any substantive act purportedly undertaken in furtherance of the conspiracy. Count 9 fails to identify any alleged victim of the purported conspiracy. The count fails to particularize exactly how an alleged victim was enticed or recruited. Furthermore, Count 9 does not specify any threat, coercion or use of fraud to cause any alleged victim to engage in a commercial sex act.

ECF No. 148 at 4. The defendant's complaints would only have clout if he were charged with the substantive crime of sex trafficking. But he is not. The defendant is charged only with conspiracy to commit sex trafficking. As the Supreme Court has repeatedly said, "[T]he essence of a conspiracy is an *agreement* to commit an unlawful act." *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (quotations omitted) (emphasis added); *Ianelli v. United States*, 420 U.S. 770, 777 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act[.]"). The Court in *Jimenez Recio* elaborated further

saying, "That agreement is 'a distinct evil,' which 'may exist and be punished whether or not the substantive crime ensues.'" 537 U.S. at 274 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). These teachings from the Supreme Court make clear that when the government charges a defendant with 18 U.S.C. § 1594(c), a statute that does not require pleading or proof of an overt act in furtherance of the conspiracy, the indictment need only allege that the defendant and another *agreed* to commit the substantive offense of sex trafficking. Hypothetically, there could be no actual sex trafficking victim, no commercial sex act, and no fraud, force, or coercion by the defendant, and the defendant could still be found guilty of conspiracy under 18 U.S.C. § 1594(c) if he agreed with another to commit the substantive offense. Thus, to satisfy Rule 7(c)'s pleading requirement, Count 9 need only allege that there was an agreement, approximately when and where that agreement was made or put into practice, and the substantive offense about which the agreement was formed. Identity of specific victims, specific sex acts, and specific types of fraud, force, and coercion would be superfluous when the defendant is only charged with conspiracy.

Nothing the defendant claims should be included in Count 9 is required by the authorities outlined above. The defendant is essentially asking this Court to dismiss a count of the indictment because Count 9 does not provide an outline of the government's trial strategy and evidence. But Rule 7(c) does not require the indictment to include a dissertation on the government's case. It only requires "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(C). That is exactly what Count 9 provides. Every piece of information the defendant seeks, to the extent it is material to Count 9 and otherwise appropriate for disclosure, has been or will be provided to

the defendant in discovery. There is nothing in the rules of criminal procedure or controlling case law that requires the government to outline every piece of its evidence in the indictment. Count 9 comports with controlling law. The Court should affirm Judge Roemer's recommendation and deny the defendant's motion to dismiss Count 9.

## CONCLUSION

For all of the foregoing reasons, the Court should adopt and affirm Judge Roemer's R&R in all respects and set this case for trial.

DATED: Buffalo, New York, September 23, 2022.

COREY R. AMUNDSON                    TRINI E. ROSS
Chief                                United States Attorney


BY:    s/JORDAN DICKSON              s/JOSEPH M. TRIPI
       Trial Attorney               Assistant United States Attorney
       Public Integrity Section     Western District of New York
       U.S. Department of Justice   138 Delaware Avenue
       Criminal Division            Buffalo, New York 14202
       1301 New York Ave. NW, Suite 1000    716-843-5839
       Washington, D.C. 20530       Joseph.Tripi@usdoj.gov
       202-597-0508
       Jordan.Dickson@usdoj.gov


                            BY:    s/DAVID J. RUDROFF
                                   Assistant United States Attorney
                                   Western District of New York
                                   138 Delaware Avenue
                                   Buffalo, New York 14202
                                   716-843-5806
                                   David.Rudroff@usdoj.gov