IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

               v.                                   19-CR-227-JLS

PETER GERACE, JR.

                     Defendant.
_____

## GOVERNMENT'S RESPONSE
## IN OPPOSITION TO THE DEFENDANT'S MOTION SEEKING TO FILE
## UNTIMELY MOTIONS AND TO FILE AN OVERSIZED BRIEF

The defendant, PETER GERACE, JR., through his attorney, Stephen M. Cohen, Esq., filed a motion and declaration purporting to show cause why the defendant should be permitted to file an untimely motion to suppress the search of the defendant's cell phone pursuant border search authority on April 27, 2019.  See Doc. No. 316, 316-1, 316-2.  THE UNITED STATES OF AMERICA, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, Michael J. Adler, and David J. Rudroff,  Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby responds to defendant's motion.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On or about February 1, 2019, co-defendant Bongiovanni retired from the DEA in Buffalo, New York while under federal investigation.

On March 29, 2019, co-defendant Bongiovanni was interviewed by the Department of Justice, Office of the Inspector General.  In part, co-defendant Bongiovanni was interviewed about his relationship with defendant Gerace.

On April 27, 2019, defendant Gerace entered the United States from Jamaica, and his phone was seized, searched, and returned to attorney, Thomas J. Eoannou, Esq., who at the time was representing the defendant's brother, Anthony Gerace, in a case that was pending before this Court in Case No. 19-CR-86.

On October 31, 2019, co-defendant Joseph Bongiovanni was charged by Indictment in this case on October 31, 2019, with, among other things, Conspiracy to Defraud the United States (Count 1), Conspiracy to Distribute Controlled Substances (Count 2), Bribery (Count 3), Obstruction of Justice (Counts 4 through 9), and Making False Statements (Counts 10 and 11).  See Doc. No. 1.  At the time, defendant Gerace was referenced as unnamed and unindicted Coconspirator 1, as follows:

    (i)      Count 1- Overt Acts 24, 25, 26, 27, 28, 46, 49, 51, 52, 56, 57;

    (ii)     Count 2- incorporating Count 1 by reference;

    (iii)    Count 3- incorporating Count 1 by reference;

    (iv)    Count 5;

    (v)     Count 6;

    (vi)    Count 7;

    (vii)   Count 10; and,

    (viii)  Count 11

Case 1:19-cr-00227-JLS-MJR   Document 320   Filed 11/28/22   Page 3 of 22

Notably, Count 1, Overt Act 49 specifically referenced Coconspirator 1 and the cell phone number (716-725-1931) for the phone that is the subject of the defendant's motion, as follows:

> 49.     On or about May 4, 2017, Coconspirator 1 left a voicemail message on the defendant **BONGIOVANNI**'s DEA issued cell phone, as follows:
>
> > "Hey Joe, it's [Coconspirator 1]. Listen, if a guy is dealing drugs he's got a regular phone…it's a phone that's, one of those Tracfones. Is there a way to ping it like police do? Where they can tell where you're at? I just want to know if you could do that or not. Give me a call back 725-1931."
>
> to which the defendant **BONGIOVANNI** responded via text message, "Yes but you would need a warrant to get a ping order."

On December 12, 2019, just two months after the initial Indictment charging defendant Bongiovanni, a federal search warrant was executed at defendant Gerace's business and residence.  See Case No. 19-M-5303 (signed on November 29, 2019).  The defendant was apparently out-of-town during the execution of the search warrants and was not present at either search location.

On June 4, 2020, a Superseding Indictment was filed charging co-defendant Bongiovanni and Michael Masecchia, who has since plead guilty.  See Doc. No. 46. Defendant Gerace remained an unnamed and unindicted Coconspirator 1 in the Superseding Indictment.   The specific references to Coconspirator 1 in both the Indictment and Superseding Indictment, coupled with the execution of federal search warrants at defendant

3

Gerace's residence and business, placed defendant Gerace and his counsel on notice that Gerace was under investigation.[1]

On July 8, 2020, defense counsel Stephen Cohen, Esq., wrote a letter to the undersigned stating, in part, that he was "working with Joel Daniels, Esq. to attempt to recover evidence[,]" as follows:



Accordingly, attorney Cohen has been among defendant Gerace's team of lawyers since before he was ever charged in this case.

On July 9, July 15, July 20, and August 24, 2020, the undersigned and defense counsel Stephen Cohen, Esq., exchanged correspondence regarding defendant Gerace's consent to search devices seized during the execution of a search warrant at Pharaohs, and regarding the return of property seized by law enforcement during the execution of the search warrant. Attorney Joel Daniels, Esq., was copied on these communications.

---

[1] There was also a great deal of media reporting relating to this case.

On October 12, 2020, the defendant, through attorney Cohen, filed a civil suit in New York State Supreme Court, Erie County, against two individuals that the defendant believed to be potential witnesses in this federal prosecution.   See Erie County, Index No. 812394/2020.   Litigation pertaining to this lawsuit followed and issues were decided by United States District Court Judge John L. Sinatra, Jr.   Currently, the state civil action is stayed/enjoined.

On February 16, 2021, the government responded to omnibus motions filed by co-defendant Bongiovanni.   See Doc. No. 87.   In this publicly available document, the government advised that **Coconspirator 1's [Gerace] cell phone had been seized and searched.**   See Doc. No. 87 at 6 (emphasis added).   Moreover, defendant Gerace full-well knew his phone had been seized at the border, searched, and returned to him.

On February 25, 2021, a sealed Second Superseding Indictment was returned charging the defendant in the instant case.   See Doc. No. 90.

The defendant was arraigned in the Southern District of Florida, and was represented by attorney Joel Daniels via Zoom.   Thereafter, on March 4, 2021, defendant Gerace and co-defendant Bongiovanni were arraigned via Zoom in the Western District of New York on the Second Superseding Indictment.   See Doc. No. 95.   On March 4, 2021, the Court entered a Sixth Amended Scheduling Order applicable to each defendant.   See Doc. No. 97.

On March 22, 2021, attorney Joseph LaTona, Esq., formally joined the defense team by filing a Notice of Appearance.  See Doc. No. 106.  During the course of the litigation, attorney LaTona has indicated he would be handling pre-trial motions on  behalf of the defendant.

On April 29, 2021, the government filed for an injunction of the civil lawsuit filed in State of New York, County of Erie, under Index No. 812394/2020.  See Doc. Nos. 115-118.

On June 15, 2021, counsel for the defendant wrote an email to the chambers of United States District Court Judge John L. Sinatra, Jr. ("District Court Judge Sinatra") indicating he would be joining the federal criminal defense team on behalf of defendant Gerace, as follows[2]:



From:       Steven M. Cohen
To:         Kristen Flick; Tripi, Joseph (USANYW)
Cc:         Cullinane, Brendan (USANYW); Dickson, Jordan (CRM); Corey Hogan; Stephanie Sweeney
Subject:    RE: Status of Motion re: US v Gerace
Date:       Tuesday, June 15, 2021 4:04:13 PM
Attachments: image002.jpg
            image003.png

In consultation with the client, I am appearing as additional defense counsel in the criminal case.  That will give me the flexibility to appear on and receive notice related to the current sealed motion, and then moving forward, to assist Mssrs Daniels and LaTona in the criminal matter.

Thank you.

Steve Cohen

On July 1, 2021, although some defense motions pertaining to unsealing search warrants had been filed, the defense filed a Fourth Motion for an Extension of Time to File Pre-Trial Motions.  See Doc. No. 140.  The motion, which sought an extension of time from

---

[2] As set forth above, defense counsel Stephen Cohen, Esq., had also been involved as early as July 2020, requesting the return of items seized by law enforcement during the execution search of the defendant's business, and had exchanged correspondence with the government.

July 7, 2021, until July 12, 2021, was filed by co-defendant Bongiovanni's attorney on behalf of both defendants and with the consent of Gerace's attorneys Joel Daniels, Esq., and Joseph LaTona, Esq.

On July 12, 2021, both defendant Gerace and co-defendant Bongiovanni filed pre-trial motions. See Doc. Nos. 147-148. As a result of these and other pending defense motions, government responses, and defense replies (see, e.g., Doc. Nos. 113, 119, 120, 122, 123, 126, 132, 133), the government was not required to file a motion to set a trial date. See Doc. No. 97 (Sixth Amended Scheduling Order directing the government to file a motion to set a trial date "if no motions are filed").

On July 22, 2021, the government and the defendant, appearing by attorney Cohen, appeared for oral argument before District Court Judge Sinatra regarding the defendant's motion to vacate District Court Judge Sinatra's order enjoining the state civil action previously filed by attorney Cohen on behalf of Gerace. In describing the timeline of events that transpired prior to the state civil lawsuit, the government stated, in part:

> On April 27, 2019, Mr. Gerace entered the country, the United States, from Jamaica. And upon entering into the United States, his cell phone was seized, searched, pursuant to border search authority, and was returned to him within a matter of [a] day or so—a couple of days, I believe.[3]

---

[3] A copy of the transcript will be provided under cover of separate letter as **Exhibit A**. The quoted portion appears on page 5, lines 9 through 13.

In response, during the same court appearance on July 22, 2021, attorney Cohen specifically acknowledged the border search of defendant Gerace's phone on the record before District Court Judge Sinatra, as follows:

> […] that Mr. Gerace entered the United States and his cell phone was seized for a day, not a single word mentioned that anything improper or inappropriate or illegal was found on the phone.[4]

On July 27, 2021, the parties appeared before District Court Judge Sinatra regarding a Curcio matter.  See Doc. No. 170.  Additional appearances related to the Curcio issue occurred on August 4 and August 10, 2021, whereupon defendant Gerace decided not to waive a potential conflict and continued with attorneys LaTona (for pre-trial matters) and Cohen.  See Doc. No. 172; see also Minute Entry August 10, 2021.

On September 10, 2021, defendant filed a motion to modify conditions of release.  See Doc. No. 190.  On September 30, 2021, the parties appeared before the Court, including attorney Cohen, and at that time the Court denied defendant Gerace's request for a Franks hearing and scheduled an evidentiary hearing as to defendant Bongiovanni for November 18, 2021.  See Doc. No. 201.

On October 27, 2021, oral argument was held regarding Gerace's motion to modify his conditions of release.  See Doc. No. 206.  During oral argument before this Court, attorney Cohen stated, in  part, "[B]ut everything they turned over to me, tens of thousands of pages, **I had an army at my office go through it**."  See Doc. No. 224 at page 25, line 24 through

---

[4] **Exhibit A** at page 12, lines 5 through 8.

page 26, line 2 (emphasis added).  Attorney Cohen continued, "I'd like some of that evidence that will be the basis of another motion[,]" and the Court interjected as follows:

```
              MAGISTRATE JUDGE ROEMER:  Well, we've
already filed motions in the case.
              MR. COHEN:  I beg your pardon?
              MAGISTRATE JUDGE ROEMER:  We've already
filed motions in the case, so any motion now would be
untimely.  I have the pretrial motions in front of me
now.
```

Id. at page 26, lines 3 through 12.  Attorney Cohen went on to repeat his claim that he had reviewed "the tens of thousands of pages [of discovery] that show no criminality." Id. at page 26, lines 9-10.

On November 17, 2021, the government filed witness and exhibit lists for the Bongiovanni evidentiary hearing and on November 18, 2021, the hearing commenced.  See Doc. Nos. 215-219. The evidentiary hearing continued on January 5, 2022.  See Doc. No. 233.

On January 7, 2022, during an appearance before District Court Judge Sinatra, attorney Cohen described his review of the discovery provided by the government, as follows:

```
        MR. COHEN:  I would underscore everything that
Mr. Harrington said.  And I think that he may have misspoken
when he says he gets hundred pages of nothing, because I've
gotten hundreds of thousands of pages of nothing, and it's been
a costly process for my client to review that.
```

See Doc. No. 247 at page 10, lines 21-25.

On January 14, 2022, attorney Cohen filed a declaration in support of a motion to modify Gerace' conditions of release wherein he stated, in part: "Furthermore, after reviewing the discovery that has been provided to Defendant thus far it is clear that the Government has overstated the strength of their case against Defendant[.]"  See Doc. No. 239-1, page 4 at ¶ 16.  In his Declaration, Attorney Cohen further swore that he had conducted a thorough review of hundreds of thousands of pages of discovery turned over by the government in April 2021, as follows:

> 48. On or about April 5, 2021, the United States Attorney's Office turned over hundreds of thousands of pages discovery materials which include large scale investigations spanning over the course of a decade.
>
> 49. A thorough review of the discovery materials, at great expense to Defendant, has provided only documentation of a single sale of marijuana to an undercover officer in 2018 by an employee of Pharoah's, and two undercover controlled purchases of narcotics by employees of Pharoah's in 2015.  Nothing inculpatory was contained within this material.

Id. at page 9, paragraphs 48-49.

On April 26, 2022, the parties argued motions.  See Doc. No. 278.  During that appearance, the Court questioned the government vigorously regarding legal issues pertaining to the border search of co-defendant Bongiovanni's phone.  After counsel for Gerace observed that questioning, attorney LaTona made reference to the border search of Gerace's phone, the following exchange ensued:

But what I understand from Mr. Gerace is that in approximately at some point in 2019, he was abroad.  He came back and his cell phone was seized.  And other lawyers were involved a little bit at that point.  And my understanding is what Mister --

THE COURT:  This was when, Mr. LaTona?

MR. LATONA:  Twenty-nineteen.  This is a warrantless seizure of --

THE COURT:  Now, this is the first I've heard of this, right?

MR. LATONA:  No, I -- Judge, we have asked -- I understand.  I'm not --

MR. TRIPI:  Hang on right there.  They've had discovery of that since the minute they were indicted, all right?  So, this is not new information.  So, don't say that the defense -- Mr. Daniels had it, Mr. Cohen has it, and

Mr. LaTona has it.

MR. LATONA:  Well, what we wanted was all of the information and, you know, whatever they had extracted.  Then, here's the one thing --

MR. TRIPI:  They have all of that.

MR. LATONA:  Here's the one thing we don't know.  Was that used in any way, shape, or manner to get the warrant in 2019?  We don't know that, because we've never seen those applications.  So, that, you know, that's an issue that we have.

MR. TRIPI:  If he's got a border search issue, he's never raised it.  They've been provided the extraction two years ago roughly, information from the extraction, texts between Bongiovanni and Gerace, whole bunch of information from the extraction --

THE COURT:  Can you just tell me -- he looked at the border search?

MR. TRIPI:  Yeah.  So, Mister -- within a short period of time from when Mr. Bongiovanni travelled, Mr. Gerace also travelled.  He was also subject to a border search.  Same thing --

THE COURT:  Where did he travel to?

```
            MR. TRIPI:  He traveled -- the name of the country

where he was escapes me.  If I said the Dominican, I might be

wrong.  I might be conflating the two.  It was somewhere in
```

```
     US v BONGIOVANNI, et al -- 04/26/2022 -- ORAL ARGUMENT
                                                              85
the Caribbean.

            THE COURT:  And essentially, something very similar

happened?

            MR. TRIPI:  Something very similar happened.  His

phone was seized, searched, returned to Mr. Eoannou within a

couple days.  His phone was given back to him, and law

enforcement retained the extraction and did conduct an

investigation.

     They've had that information for about two years, so if

they wanted to move to suppress it, they should have.  I

thought they were making a tactical decision to try to

distance themselves from that phone.  I have no idea.  But

they've had that stuff.  I have a discovery binder.  I can

tell you exactly when, but it was a couple years --
```

THE COURT:  What about Title 3?

MR. TRIPI:  There were no Title 3 intercepts.  And,
in fact, the indictment here, there's an overt act that's a
voicemail message.  I don't remember the number of the overt
act, I can look it up, but there's a voicemail message that's
left to Bongiovanni from Gerace.  That was from Gerace's
phone.  That's how we got it.  So, that information is
essentially on the face of the indictment.

THE COURT:  And the defendants have that?

MR. TRIPI:  Yes.  Yes.

MR. LATONA:  What we don't have is whether or not

US v BONGIOVANNI, et al -- 04/26/2022 -- ORAL ARGUMENT                    86

anything -- any of that material was used to get the search
warrants.

MR. TRIPI:  That's irrelevant.

MR. LATONA:  It's not irrelevant.

THE COURT:  Yeah, but -- yeah, well, I guess, why
would it be relevant?

MR. LATONA:  Well, it could be relevant in terms of
any kind of potential taint.  I mean, if we don't know --

THE COURT:  Taint from what?

MR. LATONA:  From improper seizure of --

THE COURT:  Yeah, but you didn't move to suppress
that.  You've had the information.  You didn't move to
suppress that.

MR. LATONA:  That's because we don't know whether or
not they're in the warrants.

THE COURT:  No.  I think that boat has sailed,
Mr. LaTona.

MR. LATONA:  Okay.  Judge, the only other thing is
Bill of Particulars.  We'll rely on the pleadings.

See Doc. No. 281 at page 83, line 10 through page 86, line 17.  As to the notion of filing additional motions related to the border search of defendant Gerace's phone, disclosed by the government over one-year earlier, the Court stated, in part, "I think that boat has sailed[.]"

Following the April 26, 2022, oral argument, and notwithstanding sweeping proclamations about having reviewed hundreds of thousands of pages of discovery purporting to show no criminality, Gerace's lawyers began to informally feign lack of awareness of the border search of Gerace's phone to the government.  The government responded, consistent with other statements on the record, that the discovery had been provided years earlier, and the government prepared a document summarizing disclosures that had been made.  In particular, the government indicated that the information was disclosed on May 22, 2020, and again on April 5, 2021.  Excerpts of the disclosures follow:

May 22, 2020, Discovery Index:

| GOV-00017597 | GOV-00017597 | | PG Voicemail to JB |
|---|---|---|---|

| | CELLULAR TELEPHONE EXTRACTION DATA | |
|---|---|---|
| HSI Cell Phone Extraction_P Gerace | | |

April 5, 2021, Discovery Index:

| GOV-00146916 | GOV-00146953 | Texts between Gerace and Bongiovanni |
|---|---|---|

| GOV-00148704 | GOV-00148706 | P GERACE Phone Border Search report and chain |
|---|---|---|

| Non-Bates Numbered Discovery Provided to All Defendants | | |
|---|---|---|
| ████████████ | | |
| Gerace- Border Cell Search | | |

After the government emailed the document summarizing all of the times the phone information had been disclosed, attorney Cohen responded via email "Thank you Joe[,]" on June 29, 2022.

Indeed, the government has produced the entire cell phone extraction twice; isolated text messages between Bongiovanni and Gerace; isolated a voicemail message between Bongiovanni and Gerace; provided a Report of Information (ROI) authored by HSI Special Agent Curtis Ryan documenting the border search of the phone; and provided the chain of custody documents.  The ROI and chain of custody documents, which were disclosed along with the cell phone extraction on April 5, 2021, are excerpted as follows:



10/12/2021 13:55 EST                                                                 Page 2 of 2

## DETAILS OF INVESTIGATION

On April 25, 2019 SA Curtis Ryan, HSI Buffalo, coordinated with SA Michael Manzo, HSI Newark, and requested HSI Newark detain Peter GERACE's mobile phone if GERACE entered the United States as scheduled at Newark on April 27, 2019.

On April 27, 2019 Peter GERACE entered the Unites States at Newark International Airport.  SA Robert Van Etten, HSI Newark, detained the iPhoneX GERACE was carrying when he entered the United States.  The detention was documented on CBP Form 6051D, No. 836457.  The reason for detention was for Border Search by forensic examination.  GERACE was given a copy of the 6051D.  CBP admitted GERACE to the United States as a United States Citizen.

On April 30, 2019 SA Ryan received the iPhoneX and accompanying 6051D by FedEx parcel from SA Van Etten.

On May 3, 2019 SA Ryan transferred custody of the iPhone X to SA James Donoghue for forensic examination.

On May 10, 2019 SA Donoghue transferred custody of the iPhoneX to SA Ryan and provided SA Ryan with the phone extraction report.  SA Ryan reviewed the phone extraction and determined the extraction had evidentiary value.  The extraction was maintained as evidence.

On May 10, 2019 SA Ryan returned the iPhoneX to the office of Attorney Thomas Eoannou. ███████ ██████ signed for the iPhoneX.

---

PEDHA2000367  No. 836457

| DEPARTMENT OF HOMELAND SECURITY | | |
|---|---|---|
| U.S. Customs and Border Protection | | |

**Detention Notice and Custody Receipt for Detained Property**
Handbook 5200-09

| 1. Held for other agency? Yes ☐ No ☐ | | | | |
|---|---|---|---|---|
| Name of Agency | | | | |
| 2. Certified Mail No. | | | | |
| 3. Investigative Case No. | | | | |
| 4. General Order No. | | 8. Time (Use 24 Hours) 13:00 hrs | | 9. Entry Number |
| 5. Command Center Notified? ☐ Yes ☐ No Date: Time: | | 11. Seal or Other ID No. FED - N3862367 | | |
| 6. Port Code 4601 | 7. Date of Detention (mm/dd/yyyy) 04/27/2019 | 12. Misc. Nos. | | |
| 10. Detained from: | | 13. Remarks: I Phone X (Code #123456) | | |

Name: Peter George GERACE
Address: 5145 Lexor Lane, Clarence, NY 14031

Telephone No. (716) 725-1931

14. FPF No. (For CBPLab Use Only)

15. Point of Contact Information - Send all correspondence to:
SA Curtis Ryan - HSI Buffalo
Telephone No. (716)908-0275  Fax No. ( )

16. Additional Information/Action Request from Importer/Exporter/ Subject

17. Reason for Detention: Border Search

18. Tests or Inquiries to be Conducted: Forensics

### 19. PROPERTY  (By Line Item) Attach CBP 58 if conveyance

| a. Line Item No. | b. Description | c. Packages Number Type | d. Measurement Qty.   UM | e. Est. Dom. Value | f. Samples Sent to the CBP Lab Yes or No | Date |
|---|---|---|---|---|---|---|
| 001 | iPhone X | 1 PER | 1 | $ | Yes  No ☒ | / / |
|  |  |  |  | $ | Yes  No | / / |
|  |  |  |  | $ | Yes  No | / / |
|  |  |  |  | $ | Yes  No | / / |

20. Detaining Officer Name
Michael Van Etten
Print                    Signature                    04/27/2019
                                                                        Date

### 21. ACCEPTANCE/CHAIN OF CUSTODY

| a. Line Item No. | b. Description | c. Print Name/Title/Organization | d. Signature | e. Date |
|---|---|---|---|---|
| 001 | iPhone X | Curtis Kryan/SA HSI | | 4-30-19 |
| 001 | iPhone X | Donoghue/SA/HSI | | 5/3/19 |
| 001 | iPhone X | Curt Ryan/SA/HSI | | 5/10/19 |
| 001 | iPhone X | T. Eoannou | | |

16

Despite the defendant's claims to the contrary, the defense has been on notice of the border search since April 27, 2019, and all information necessary to file a timely motion was provided to the defendant no later than April 5, 2021.

## **ARGUMENT**

The defense has been on notice of the border search since April 27, 2019, and all information necessary for the defense to file a timely suppression motion was provided to the defendant no later than April 5, 2021.  The parties are currently scheduled to select a trial date on November 30, 2022, and the defendant's efforts to file untimely motions are an effort at tactical delay.

The defendant is not permitted to hold motions in abeyance only to file them late in order to delay a trial.  Attorney LaTona has been involved continuously representing the defendant since March 2021, almost the inception of the case.  Attorney Cohen has been involved representing the defendant related to these matters since as early as July 2020, and at the latest his involvement in the criminal case commenced on June 15, 2021, when he emailed chambers for District Court Judge Sinatra.

Moreover, the record is clear that the defense was aware of the border search of defendant Gerace's phone.  Indeed, when he was opposing the government's motion for an injunction or seeking to have defendant Gerace's conditions of release modified, attorney Cohen claimed to have reviewed hundreds of thousands of pages of discovery provided by the government.  Accordingly, several of attorney Cohen's current claims, as set forth in his

November 14, 2022, Declaration (<u>see</u> Doc. No. 316-1) are perplexing and incongruent with his prior representations, or other facts, as follows:

a.     "Since that scheduling order (Doc 97) my office has been provided […] including documents that were delivered in paper." <u>See</u> Doc. No. 316-1 at ¶ 12. Regarding this claim, the government responds:

     i.     All discovery has been provided by the government in digital format that is searchable, and the relevant cell phone extraction was provided in digital format.

     ii.     The only items provided in paper were the return of the original documents law enforcement seized from defendant Gerace at Pharaohs.

     iii.     None of the original paper documents seized from Pharaohs and returned by the government are relevant to the cell phone seized and searched on April 27, 2019, as detailed above.

b.     "Despite my best efforts I could not get through the data until late-October 2022." <u>See</u> Doc. No. 316-1 at ¶ 17. However, when attorney Cohen was making grandiose and derogatory claims regarding the strength of the government's case during his opposition to the government's motion for an injunction of the defendant's civil lawsuit, or in support of his motion to modify defendant Gerace's conditions of release, attorney Cohen claimed to have reviewed all of the discovery, which included the border search cell phone extraction, as follows:

     i.     On October 27, 2021, "[B]ut everything they turned over to me, tens of thousands of pages, I had an army at my office go through it." <u>See</u> Doc. No. 224 at page 25, line 24 through page 26, line 2; <u>see also id.</u> at page 26, lines 9-10.

     ii.     On January 7, 2022, "I've gotten hundreds of thousands of pages of nothing[.]" <u>See</u> Doc. No. 247 at page 10, lines 21-25.

     iii.     On January 14, 2022, "On April 5, 2021, the United States Attorney's Office turned over hundreds of thousands of pages of discovery materials […] [a] thorough review of the discovery materials, at great expense to the Defendant […]. <u>See</u> Doc. No. 239-1 at page 9, paragraphs 48-49.

c.    "The motion Defendant Gerace now seeks to bring through his replacement trial counsel […]"  <u>See</u> Doc. No. 316-1 at ¶ 31.

    i.    Attorney LaTona has been a member of the defense team since virtually the inception of the case.

    ii.    Attorney Cohen has been involved representing the defendant since July 2020, or not later than June 15, 2021, as described above.

d.    "This motion could not have been filed before transcripts of proceedings dealing with Bongiovanni's cell phone search were provided in January 2022."  <u>See</u> Doc. No. 316-1 at ¶42.

    i.    This claim is baseless as the defense has been aware of the border search of Gerace's phone for several years, and nothing contained in transcripts of Bongiovanni's suppression hearing impacted Gerace's case.  Simply put, it is not good cause for the defendant to "wait and see" how co-defendant Bongiovanni's motion fared before deciding to file one of his own.  Indeed, the border search of Gerace's phone was well-known to the defense, and attorney Cohen made specific reference to it on the record before District Court Judge Sinatra on July 22, 2021, as follows:

    (a)    "[…] that Mr. Gerace entered the United States, and his cell phone was seized for a day, not a single word mentioned that anything improper or inappropriate or illegal was found on the phone.[5]

The defense had all the information necessary to file a motion to suppress the border search of defendant Gerace's phone as early as April 27, 2019, and no later than April 5, 2021, which was over seventeen months ago.  Moreover, on October 27, 2021, this Court advised attorney Cohen than any additional motions would be untimely.  Notwithstanding the Court's clear admonishment, the defense waited another year to even attempt to bring the

---

[5] **Exhibit A**, Transcript July 22, 2021, at page 12, lines 5 through 8.

instant motion.  When the defense raised the specter of the border search again on April 26, 2022, the Court stated, "I think that boat has sailed[.]"

Federal Rule of Criminal Procedure 12(c)(1) permits a Court to set a motions deadline, which this Court did when it set the defense motion deadline for July 7, 2021, and then extended the motions deadline to July 12, 2021, pursuant Fed. R. Crim. P. ("Rule") 12(c)(2). Rule 12(c)(3) provides that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." "To satisfy the 'good cause' standard of Rule 12(c)(3) defendant must establish that the basis for the motion was not (and could not have been) known before the expiration of the motion deadline."   United States v. Sanders, No. 19CR00125RJAJJM001, 2020 WL 8513483, at *3 (W.D.N.Y. Oct. 9, 2020), report and recommendation adopted, No. 19-CR-125-A, 2021L 81654 (W.D.N.Y. Jan. 11, 2021).  The defense has failed to establish good cause for its untimely motion.

As stated above, the defense had all of the information required to file a motion to suppress the border searched cell phone no later than April 5, 2021.  Nevertheless, the defense is seeking to file an untimely suppression motion over 14 months after the motions deadline, which was July 12, 2021, and approximately one-year after this Court specifically told attorney Cohen, on October 27, 2021, that an additional motion would be untimely.  The defendant's claim that he could not have filed the motion before October 22, 2022, is spurious at best and is belied by the record.

As set forth above, shortly after the border search, the defendant's phone was returned to an attorney representing his brother.  As a result, the phone is not in the government's possession.  The defendant's decision to forego filing a motion to suppress appeared to be a strategic decision to distance the defendant from the phone. The defendant's initial strategic decision was likely due to the fact that filing a timely motion to suppress the border searched cell phone would have required the defendant to submit an affidavit of standing. Filing an affidavit of standing would have forever bound the defendant to the cell phone.  Indeed, on April 26, 2022, the government stated its belief that the defense made a strategic decision when the government stated:

> They've had the information for about two years, so if they wanted to move to suppress it, they should have.  [The government] thought [the defense] was making a strategic decision to distance themselves from that phone.

See Doc. No. 281, page 85.

The Second Circuit has made it clear that the strategic decisions, or even inadvertence of defense counsel, do not establish cause for filing of an untimely motion.  See United States v. Yousef, 327 F.3d 56, 125 (2d Cir. 2003) (collecting cases); see also United States v. Simmons, No. 08-CR-1280 (VEC), 2020 WL 6381805, at *4 (S.D.N.Y. Oct. 29, 2020) ("Second Circuit case law seems fairly clear that under Rule 12, as amended in 2014, a party's failure to raise a 12(b)(3) issue before trial constitutes a complete waiver of that issue absent a showing of good cause, such that a court cannot exercise discretion to review an untimely 12(b)(3) motion.").  Here, whether the defendant's decision not to file a timely motion to suppress was strategic, or inadvertent, the defendant has failed to demonstrate good cause to file an untimely motion to suppress.

## CONCLUSION

The defendant's motion seeking to file an oversized and untimely motion to suppress should be denied.

DATED:  Buffalo, New York, November 28, 2022.


COREY R. AMUNDSON                      TRINI E. ROSS
Chief                                  United States Attorney


BY:   s/JORDAN DICKSON          BY:   s/JOSEPH M. TRIPI
      Trial Attorney                  Assistant United States Attorney
      Public Integrity Section        Western District of New York
      U.S. Department of Justice      138 Delaware Avenue
      Criminal Division               Buffalo, New York 14202
      1301 New York Ave. NW, Suite 1000    716/843/5839
      Washington, D.C. 20530          Joseph.Tripi@usdoj.gov
      202-597-0508
      Jordan.Dickson@usdoj.gov   BY:   s/DAVID J. RUDROFF
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       Western District of New York
                                       138 Delaware Avenue
                                       Buffalo, New York  14202
                                       716/843-5806
                                       David.Rudroff@usdoj.gov

                                 BY:   s/MICHAEL J. ADLER
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       Western District of New York
                                       138 Delaware Avenue
                                       Buffalo, New York  14202
                                       716/843-5857
                                       Michael.Adler@usdoj.gov