IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                           19-CR-227-JLS

PETER GERACE, JR.

                Defendant.

---

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S MOTION TO SEVER

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, David J. Rudroff, and Michael J. Adler, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby files its opposition to defendant Peter Gerace, Jr.'s ("Gerace") motion to sever. (Dkt. No. 321).

### PROCEDURAL AND FACTUAL BACKGROUND

Gerace is presently charged in a Second Superseding Indictment with violations of Title 18, United States Code, Sections 371, 201(b)(1)(A), 201(b)(1)(C), and 1594(c), and Title 21, United States Code, Sections 856(a)(1) and 846.

The charges against Gerace arise out of a nearly 14-year period during which Gerace owned and operated Pharaohs Gentlemen's Club ("Pharaohs") in Cheektowaga, New York. During that time, Gerace is alleged to have possessed and distributed narcotics using

Pharoah's as a base of operations, trafficked women for commercial sex acts, and bribed his co-defendant, Joseph Bongiovanni ("Bongiovanni"), then a Special Agent with the DEA, to protect Gerace and his associates—many of whom Bongiovanni believed to be associated with Italian Organized Crime ("IOC")—from scrutiny or law enforcement interference. *See* Dkt. 89, Counts 2, 6-9.

Bongiovanni is also charged with using his position as a DEA Special Agent to provide similar benefits to Michael Massechia and others—again, believed to be associates of IOC—who were trafficking narcotics in the Western District of New York. Dkt. 89, Count 1. Additionally, Bongiovanni is charged with conspiracy to distribute controlled substances, accepting a bribe, and several counts related to obstructing justice once he learned that he was under federal investigation. *Id.*, Counts 3-5, 10-18. Due to the overlap between the allegations against Bongiovanni separately, Gerace separately, and the two defendants together, all charges were joined in a single Second Superseding Indictment pursuant to Federal Rule of Criminal Procedure 8(b) ("Rule 8(b)").

After extensive pretrial motions and hearings, the Court scheduled a joint trial to begin June 21, 2023. Gerace now moves to sever Counts 1, 3, 4, 10, 11, 16, 17, and 18, from the remaining charges in the Second Superseding Indictment. *See* Dkt. 321. Gerace incorrectly argues that the charges are improperly joined under Rule 8(b), and that he would be prejudiced in a joint trial by evidence related to Bongiovanni's connection to IOC. As discussed below, neither position is meritorious, and the Court should deny the motion.

**ARGUMENT**

I. **The Court should deny Gerace's motion to sever.**

Gerace moves to sever Counts 1, 3, 4, 10, 11, 16, 17, and 18, from the remaining charges in the Second Superseding Indictment, alleging that they are improperly joined under Federal Rule of Criminal Procedure 8(b). Dkt. 321 at 3-7. Gerace also moves to sever "those counts charging . . . Bongiovanni on which any organized crime evidence is offered from the counts charging [Gerace]" on the ground that he would be prejudiced by a joint trial on those charges. *Id.* at 7-8. However, as discussed below, Gerace cannot establish a basis for severance. Instead, the charges against the defendants are inextricably intertwined, will involve the presentation of extensive and overlapping evidence, and are therefore properly joined under Rule 8(b). Moreover, Gerace will not prejudiced by a joint trial, however any alleged prejudice that does result can be mitigated by appropriate jury instructions. Under the circumstances, the efficiency gained from a joint trial outweighs any alleged prejudice to Gerace. The Court should deny the motion.

A. **The charges against the defendants are properly joined under Rule 8(b).**

Joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused to come to trial." *Bruton v. United States*, 391 U.S. 123, 134 (1968). Joint trials also "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Thus, the Second Circuit has "long held that there is a preference for the joint trial of defendants who have been indicted together. *United States v. Muzaffar*, 714 Fed.Appx. 52,

3

54 (2d Cir. 2017). Indeed, "joint trials play a critical role in the criminal justice system." *Richardson*, 481 U.S. at 209.

As relevant here, joinder of offenses in multiple defendant cases is governed by Rule 8(b), which provides:

> [An] indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. *All defendants need not be charged in each count.*

(emphasis added). A non-frivolous conspiracy charge is sufficient to support joinder of the defendants. *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1990). In fact, even if the defendant is not alleged to be part of a single conspiracy, joinder is proper if a count with which the defendant is charged is integrally related to a conspiracy charge. *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990). It is also not required that each defendant be alleged to have participated in each charged conspiracy in multi-conspiracy cases. Proper joinder requires only that all defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting Fed. R. Crim. P. 8(b)). "[T]he same series of acts or transactions" includes criminal acts between two or more individuals that "are unified by some substantial identity of facts or participants or arise out of a common plan or scheme." *Id.* (internal quotations omitted).

Here, there is no question that the defendants are charged with crimes that share an identity of facts or arise out of a common scheme or plan.[1]  *See id.*  Counts 1 and 2 both charge Bongiovanni with, among other things, conspiring to defraud the United States government by shielding friends and associates that he believed were members or associates of IOC—including Gerace—from law enforcement scrutiny in exchange for cash payments, drugs, and other personal benefits.  Dkt. 89, Counts 1 and 2.  The remaining counts either charge Bongiovanni with actions taken in furtherance of that scheme or to conceal it, or they charge Gerace with additional criminal conduct perpetrated during the pendency of the conspiracy to defraud.  *Id.*, Counts 3 through 18. Thus, the charges against the defendants are inextricably intertwined, and, contrary to Gerace's argument here, the simple fact that Gerace was an active participant in the conspiracy described in Count 2, but not that conspiracy described in Count 1, does not mean those charges were improperly joined.  *Rittweger*, 524 F.3d at 177.

The Second Circuit addressed a very similar argument in *Rittweger*, in which a single indictment charged two separate fraud conspiracies. 524 F.3d at 176-77.  There, two of the defendants were charged in one conspiracy, but not a second conspiracy in the same

---

[1] Notably, Gerace's conclusory severance motion fails to specify how the counts identified in Exhibit A to his motion are allegedly misjoined with the remaining charges.  The only Count that Gerace addresses with any specificity is Count 16, which charges obstruction of justice related to Bongiovanni's removal and retention of a DEA file upon his retirement.  *See* Dkt. 321 at 3-4.  In that vein, Gerace argues that by failing to incorporate Count 2 (the conspiracy between himself and Bongiovanni), Count 16 should be severed.  *Id.*  However, by Gerace's own admission, this same conduct alleged in Count 16 (against Bongiovanni) is also alleged in Count 2, overt act 33 (against Bongiovanni and Gerace), and in Count 1, overt act 55 (against Bongiovanni and Messechia).  Therefore, Gerace must agree that Count 16, which he now moves to sever, involves the same allegations on which he will be tried.

5

indictment.  *Id*.  Just as Gerace appears to do here, the defendants argued that the counts regarding the conspiracy they were involved in should not have been joined with the counts charging the separate conspiracy.  *Id.* at 177.

The Second Circuit rejected that argument, noting that Rule 8(b) does not require that all defendants be charged in the same conspiracy or conspiracies.  *Id.* (citing *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir.2003) (upholding joinder of co-defendants although neither party was charged in the conspiracy counts of the other)).  Instead, the Court held that, "[p]rovided that the defendants are 'alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses,' Fed.R.Crim.P. 8(b), members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy." *Rittweger,* 524 F.3d at 178; *see also United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (upholding joinder of charges alleging separate conspiracies where they "were a part of a series of acts that shared a common purpose" and where "there was an overlap of participants and acts").

Here, just as in *Rittweger* and *Attanasio*, the separate conspiracies charged in Counts 1 and 2 of the Second Superseding Indictment are part of a series of acts sharing a common purpose—to defraud the United States by protecting friends, associates, and individuals believed to be   members or associates of IOC from law enforcement scrutiny in exchange for money—and involved overlapping participants and acts.  *Rittweger*, 524 F.3d at 178; *Attanasio*, 870 F.2d at 815.  Moreover, the additional charges identified in Exhibit A to

Gerace's motion either underlie, were undertaken in furtherance of, or were committed to avoid prosecution for, the conspiracies described in Counts 1 and 2. For the same reasons, they are properly joined in the Second Superseding Indictment. The Court should deny the motion.

### B. Joinder is not prejudicial to Gerace.

Having failed to establish that the charges in the Second Superseding Indictment are improperly joined, Gerace must establish prejudicial joinder under Rule 14. Severance motions based on prejudicial joinder should be granted only where joinder presents a serious risk that a specific trial right of a defendant would be compromised or when the jury would be prevented from making a reliable judgment. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Unless there has been misjoinder, a defendant must show that prejudice from a joint trial is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials. *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998).

In that vein, Gerace appears to argue that he is prejudiced by joinder because allegations related to or referencing IOC pertain only to Bongiovanni, and he would therefore be prejudiced by reference to organized crime during trial. That is incorrect.

First, the Second Superseding Indictment specifically alleges that Gerace is one of the persons whom Bongiovanni believed was associated with IOC, and thus wanted to ingratiate himself with. Specifically, Count 2 alleges:

> It was part of the conspiracy that, in exchange for payments he received and in order to ingratiate himself to individuals whom

7

> he believed were members and associates of IOC, the defendant BONGIOVANNI utilized his position as a DEA SA to attempt to dissuade other members of law enforcement: from conducting investigations of his coconspirators, friends, associates and individuals the defendant believed to be connected to or associated with IOC, **including the defendant GERACE** and others; and from conducting investigations into any individuals who may have been able to expose his criminal activities and those of his friends, associates, and individuals the defendant believed to be connected to or associated with IOC.

Dkt. 89, Count 2 ¶ 5 (emphasis added).

The Second Superseding Indictment further alleges:

> It was part of the conspiracy that the defendant BONGIOVANNI would falsely deny to other agents of the DEA the existence and extent of connections between himself and individuals he knew to be involved in the possession, use, distribution, and importation of controlled substances, and individuals he believed were connected to or associated with IOC.

*Id.*, Count 2 ¶ 12.

> It was part of the conspiracy that the defendant BONGIOVANNI would conceal his possession, use, and distribution of controlled substances, the bribes he received, and the assistance he provided to his friends, associates, coconspirators, and individuals who he believed were members of, connected to, or associated with IOC.

*Id.*, Count 2 ¶ 15.

> Between on or about November 6, 2009, and on or about October 31, 2018, the defendant BONGIOVANNI did not document in any DEA reports or memoranda any information about the defendant GERACE and did not document the substance of any in-person or telephonic contacts he had with the defendant GERACE, who, for a period of time, was on

> supervision by the United States Probation Office for the Western District of New York and who was an individual whom the defendant BONGIOVANNI knew and had reason to know was involved in possession, use, and distribution of controlled substances, and had reason to believe to be a member of, connected to, or associated with IOC.

*Id.*, Count 2 ¶ 23.

Thus, the Second Superseding Indictment contains numerous allegations regarding Bongiovanni's belief that Gerace was associated with IOC, and, as discussed below, the government intends to offer evidence in support of those allegations. Gerace cannot plausibly argue that separate trials are necessary because he would be prejudiced by evidence regarding Bongiovanni's association with IOC in the remaining charges.

Additionally, the proof at trial will establish that Gerace, in fact, held himself out as being associated with IOC—or, at least was aware that others believed he was. This evidence is directly relevant to the charges at issue, and will be offered for their effect on those around Gerace.[2] For example, one witness from Pharaohs testified in Grand Jury that she heard Gerace refer to himself as a member of "the mafia":

---

[2] The defendant argues that the government has constrained its trial proof, and may not argue that Gerace was, in fact, associated with IOC. Dkt. 321 at 2-3. This argument is incorrect as the allegations set forth in the Superseding Indictment are clear, and the government has plainly stated that it will present all relevant and admissible evidence, including evidence of Gerace's statements and reputation, in support of the charges. Indeed, as discussed below, evidence that Gerace held himself out as, wished to be known as, and/or knew he was believed by others to be associated with IOC, and such evidence is directly relevant to the charges against him, without the government alleging that he was, in fact, a member or associate.

9

```
 7    Q.   And did your boss -- did you hear rumors or did he
 8         indicate being part of the Mafia or any connection to the
 9         Mafia, the mob?
10    A.   I heard him saying it.
11    Q.   What did you hear him say?
12    A.   To a lot of people.
13    Q.   What would he say?  Like what?
14    A.   That he has got connections, he is in the mob, all
15         the police are his friends, but he said it in such a way that
16         I did not believe him.
```

The witness went on to confirm that she heard Gerace make these claims "more than once."

Another witness testified that she heard people allege that Gerace's family was involved in organized crime. When discussing Gerace's relationship with one such individual, the witness testified.



```
14    Q.   ■■■■, as a result of ■■■■■■■■ with
15         Mr. Gerace, did you start to have an understanding about who
16         ■■■■■ was?
17    A.   Yes.
18    Q.   And what his reputation was?
19    A.   Yes.
20    Q.   What did you learn?
21    A.   I guess I learned that there was affiliations of
22         different people and they have businesses and I would overhear
23         people saying things like, you know -- like organized crime or
24         whatever but I would overhear it from other people.
```

When the witness confronted Gerace about this reputation, he apparently replied "there is no mafia." This testimony will demonstrate Gerace's awareness of his reputation for having IOC connections.

Yet another witness, in a private conversation with a third-party about Gerace, stated:

> **Author** ▆▆▆▆▆▆▆▆▆▆
> **Sent** 2019-11-16 16:04:02 UTC
> **Body** Yes it is. No I jyst quit my job. But being w peter is a full time job. Italian man u get it
>
> **Author** ▆▆▆▆▆▆▆▆▆▆
> **Sent** 2019-11-16 16:04:30 UTC
> **Body** Oh I get it!
>
> **Author** ▆▆▆▆▆▆▆▆▆▆
> **Sent** 2019-11-16 16:05:08 UTC
> **Body** Alot of work being w Italian man😊😊😊
>
> **Author** ▆▆▆▆▆▆▆▆▆▆
> **Sent** 2019-11-16 16:05:52 UTC
> **Body** Yup lots especially the royal ones
>
> **Author** ▆▆▆▆▆▆▆▆▆▆
> **Sent** 2019-11-16 16:05:57 UTC
> **Body** Mob ones

[3]

The government will use this and other evidence at trial to establish that Gerace held himself out as, or allowed others to believe that he was, associated with IOC in order to obtain benefits for himself and to attempt to exert influence or control over others. This is directly

---

[3] These excerpts are examples only and should not be construed as a complete statement of the proof the government intends to offer.

relevant to the charges involving drug distribution, sex trafficking (through force, fraud, and coercion), bribery, and others—without attempting to establish that Gerace was, in fact, associated with IOC. Under these circumstances, Gerace cannot plausibly claim that reference to IOC in the charges against only Bongiovanni will prejudice him such that severance under Rule 14 is warranted.

Moreover, judicial efficiency supports a joint trial here. The charges against Bongiovanni, his relationship with Gerace, Bongiovanni's efforts to protect Gerace from law enforcement scrutiny, the details of the conspiracy to defraud the United States, the details of drug possession and use at Pharoah's, commercial sex acts, and Bongiovanni's efforts to protect Gerace are all relevant and admissible at either a trial of Bongiovanni alone, or a joint trial with both defendants. As a result, there would be substantial overlap in evidence between a single-defendant trial of Bongiovanni and a joint trial of both defendants. Because there is little prejudice to Gerace, judicial efficiency militates in favor of a joint trial—especially where, as here, the government anticipates that its case-in-chief will take six to eight weeks and involve approximately 100 witnesses or more.

Further, assuming *arguendo*, that reference to IOC at trial only pertains to Bongiovanni, any spillover effect on Gerace may be easily mitigated by a curative instruction. Indeed, juries are presumed capable of separately considering each count and each defendant at trial. *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996); *see also, United States v. Salameh*, 152 F.3d 115, 116 (2d Cir. 1998); *United States v. DeVillio*, 983 F.2d 1185, 1192–93 (2d Cir. 1993) (finding an "explicit limiting instruction" not to consider evidence adequately

reduced risk of prejudice and did not require severance); *United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982) (endorsing jury instructions "to consider the evidence separately with respect to each defendant" as sufficient means to reduce prejudice).  Gerace asks this Court to reject this basic presumption, and to instead assume—without adequate basis—that reference to IOC is so prejudicial the jury will be rendered unable to follow this Court's explicit instructions.  The Court should deny the motion.

Lastly, prejudice is always informed by the crimes with which the defendant has been charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see also, United States v. Sanpedro*, 352 Fed. Appx. 482, 485 (2d Cir. 2009).  Gerace is charged with, among other things, bribing a federal agent to conceal a multi-year sex and drug trafficking conspiracy, including conspiring to sex traffic young women through force, fraud, and coercion by, among other things, exploiting their drug addictions; using law enforcement connections to cover-up that a young woman overdosed at Pharaohs and to protect Pharaohs from investigation; and, using Pharaohs to distribute controlled substances for nearly a decade. *See* Dkt. 89, Counts 2, 6-9.  When the references and proof relating to IOC are balanced against the heinous crimes Gerace is charged with, severance is unwarranted.

For all these reasons, severance is not required under Rule 14, and the Court should deny Gerace's motion.

## CONCLUSION

For the foregoing reasons, Gerace's motion to sever should be denied.

DATED:  Buffalo, New York, December 9, 2022.

| | |
|---|---|
| COREY R. AMUNDSON<br>Chief | TRINI E. ROSS<br>United States Attorney |

BY:  s/JORDAN DICKSON
Trial Attorney
Public Integrity Section
U.S. Department of Justice
Criminal Division
1301 New York Ave. NW, Suite 1000
Washington, D.C. 20530
202-597-0508
Jordan.Dickson@usdoj.gov

BY:  s/JOSEPH M. TRIPI
Assistant United States Attorney
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843/5839
Joseph.Tripi@usdoj.gov

BY:  s/DAVID J. RUDROFF
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York   14202
716/843-5806
David.Rudroff@usdoj.gov

BY:  s/MICHAEL J. ADLER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York   14202
716/843-5857
Michael.Adler@usdoj.gov