UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA,**

          Plaintiff,

                              **DECLARATION**

-vs-

                              Case No. 19-CR-227

**JOSEPH BONGIOVANNI,**
**PETER GERACE, JR.**

          Defendant.

---

STEVEN M. COHEN, Esq., being duly sworn, deposes and says:

### BACKGROUND

1. Declarant is the attorney presently retained to represent Defendant, Peter Gerace, Jr. This declaration is in support of Mr. Gerace's motion pursuant to 18 U.S.C. §3145 (a)(2) for a modification of bail conditions.

2. This motion is made with the consent of the Office of Federal Probation, specifically, PO Michael Macaluso, with whom I spoke and who left a voicemail message to me that his office has no objection to modifying the current order from home confinement with GPS tracking, to a curfew with GPS tracking.

3. I followed up Mr. Macaluso's voicemail with a telephone conversation, and represent as an officer of the Court that Mr. Macaluso made the aforementioned representation to me, and this motion is on consent of the Office of Probation.

{H3612257.1}

4. AUSA Joseph Tripi, Esq. has already communicated his opposition to this motion, such that this motion is not on consent of the United States Attorney's Office, and is in fact vigorously and intensely opposed by them.

5. On February 25, 2021, Defendant was indicted by a Federal Grand Jury in five (5) counts of a Second Superseding Indictment, with codefendant Joseph Bongiovanni. Dkt 89

6. That same day, an Arrest Warrant was issued by the Clerk of the Court (WDNY). (See Dkt 107 which is the filed Return of the Warrant filed 3/22/21 with the original warrant dated 2/25/21)

7. On March 1, 2021 Defendant was arrested on an indictment warrant while on vacation in Florida and arraigned before United States Magistrate Judge Alicia O. Valle in the United States District Court for the Southern District of Florida on March 2, 2021.

8. Magistrate Alicia O. Valle released Defendant on conditions pursuant to 18 U.S.C. §3142 (3)(a). Dkt 93, Rule 5(c)(3) (Condition of Bond and Order of Removal).

9. The Conditions of Bond and Order of Removal provide for Mr. Gerace to refrain from the use of alcohol, to participate in Home Detention, and to stay away from his business, Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York. Both his home and his place of business are located in the Western District of New York. (See Southern District of Florida Criminal Docket 0:21-mj-06112-AOV at that docket's 2 and 3, which are re-filed in the instant Docket 1:19-cr-00227 at Dkt 93)

10. On March 25, 2021, Defendant moved to modify the terms and conditions of his release, requesting that Defendant Gerace be allowed to be physically present at his business. Dkt 108

11. Asst. United States Attorney Joseph M. Tripi vigorously opposed then, as he does now, the request to alter release terms and conditions. Dkt 110

12. The Hon. John L. Sinatra, Jr. heard oral argument in the United States District Court for the Western District of New York on April 14, 2021. Dkt 111

13. In reviewing the terms and conditions imposed upon Defendant's release, the Court weighed the infringement of Defendant's constitutional rights against his potential for danger and/or risk of flight. (Exhibit A, Transcript of April 14th proceedings)

14. The Court specifically determined, "(I) find that the combination of conditions previously imposed is not the least restrictive combination of conditions to reasonably assure the safety of others in the community. And in particular, I find that the condition that Mr. Gerace stay away from Pharoah's Gentlemen's Club at 999 Aero Drive, Cheektowaga, is more restrictive than necessary, as stated, to reasonably assure the safety of others and the community." *See* Exhibit A at 20-21.

15. The Court altered the terms and conditions to provide for Defendant's physical access to his business from 7:30 A.M. until 10:30 A.M., ordering that Defendant was to be alone in the building, and precluding any contact with any other employees of Pharoah's or any individuals effectuating product deliveries. *See* Exhibit A, Transcript of Proceedings, April 14, 2021, at 21. See also Dkt 112, which is the Modification Order.

16. It must be noted that the entirety of the premises, with the exception of rest rooms and closets, is monitored by approximately 60 cameras, remote access to which has been offered to the United States Attorney, indeed all law enforcement.

17. The AUSA continues to speak of the "dangerousness" of allowing Mr. Gerace even basic freedoms, which compels me to ask what evidence exists that Peter Gerace poses a danger to society?

18. In Mr. Tripi's opposition to the application for Mr. Gerace's access to his business, he noted "Unfortunately, the investigation of the defendant has taken time" and [defendant] "consented to searches of electronic devices seized from his home and business in December 2019." (Dkt 110, p. 6)

19. The Defense agrees with both of those assertions, the government has taken quite a bit of time to "investigate" this case, and Mr. Gerace has been cooperative in consenting to searches of his home and business.

20. Mr. Tripi goes on to say with great emphasis that "US Probation received information that the defendant was in fact operating Pharaoh's and distributing cocaine from that [Pharaoh's] location. Accordingly, on October 31, 2009, US Probation conducted a search, as described in the post-search memorandum attached as Exhibit B." (Dkt 110, p. 8)

21. The detail left out of any part of Mr. Tripi's recitation is that Exhibit B references information that the property was put under surveillance by a joint task force of US Probation, FBI and Cheektowaga Police, that the officers "moved in, subject was secured and the building was cleared...*__however, no controlled substances were found__*." Dkt 110-4 [Emphasis added]

22. Dkt 110-4, relied upon by Mr. Tripi in his 4/8/21 Response (Dkt 110) is a Memorandum dated February 16, 2010, reporting on an 11 year old suspicion from October 31, 2009 that proved unfounded. Even if controlled substances were found in that 2009 raid, or

any evidence was found supporting any of the charges for which Mr. Gerace was indicted in the Second Superseding Indictment of February 25, 2021, the statutes of limitation would have long run.

23. Mr. Trippi alleged for at least the second time with great fervor in open Court on April 14, 2021 that Mr. Gerace threatened someone on a Facebook post back in 2019. (Transcript at p. 7) He has yet to produce any documentation of any such threat.

24. I represent, as a senior member of the Defense Bar, and as an officer of the Court, that I have received not one shred of documentary or credible evidence that Mr. Gerace has committed the crimes set forth in the superseding indictment that includes Mr. Gerace, to wit: Count 2 (conspiracy to defraud the US), Count 6 (paying a bribe to a public official), Count 7 (maintaining a drug-involved premises), Count 8 (conspiracy to distribute drugs) and/or Count 9 (conspiracy to commit sex trafficking).

25. This is the first time in my career that by the time a trial in federal court has been scheduled, I have absolutely no idea what evidence exists to incriminate my client. None.

26. Your declarant, Steven M. Cohen, Esq., replaced Joel Daniels, Esq. as trial counsel on or about August 10, 2021. See Minute Entry of 8/10/21

27. On September 10, 2021, declarant filed another motion to modify the defendant's conditions of release after a thorough review of all discovery material turned over by the United States Attorney's Office which contained no direct or credible evidence that the Defendant was involved in any of the crimes alleged in the indictment. *See generally* Cohen Declaration, paragraphs 22-38, Dkt 190-1

28. Mr. Tripi, again, offered no credible evidence that Mr. Gerace poses a threat of danger to anyone.

29. The Government filed its response to this motion on October 4, 2021, Dkt 202, saying in summary, that the motion should not be granted because of the seriousness of the crimes alleged and because the Defendant tested positive for cocaine when he was arrested on February 28, 2021, after saying he had not used cocaine for about a year and a half. Dkt 202

30. In its response, the Government also made a cross-request in the context of this motion asking to exclude the Defendant from the Earned Leave Program, which allowed the Defendant to accumulate "earned leave" of up to 8 hours per week as part of the terms of home detention supervision, and for probation to disclose GPS information collected by the U.S. Probation Office.[1] See generally Dkt 202, p. 14-19

31. If the Gov't had any evidence at all of "dangerousness", it would not need to resort to a 2010 memo of a 2009 raid which yielded nothing of a criminal nature, and would not have needed to remind the Court that Mr. Gerace tested positive for cocaine on the day of his arrest. The gov't would surely have had more to offer this Court as justification for its position that Mr. Gerace not be allowed to work full time, or leave his home-confinement, or take his son to extra-curricular activities, or have wine with dinner.

32. On November 9, 2021, Hon. Michael J. Roemer denied Defendant's motion to modify his conditions of release, explaining, "Hon. John L. Sinatra, Jr. has already determined that the current conditions of release are the least restrictive combination of conditions necessary to assure reasonably the safety of any other person and the community. *See*

---

[1] The Court considered what has been termed here a "cross-request" to have been an actual cross motion by the prosecution, as referenced in the Text Order at Dkt 214.

{H3612257.1}  5

Text Order at Dkt 214, Transcript of April 14, 2021 [118], at 20-21; Modification Order [112]; *see also* 18 U.S.C. 3142(c)(1)(B)."

33. Hon. Michael J. Roemer also denied the government's cross-motion for the Defendant to be excluded from the Earned Leave Program and for the disclosure of certain GPS information collected by the U.S. Probation Office. Dkt 214

34. I have personally confirmed that Defendant has remained fully cooperative with pretrial services with United States Probation Officer Michael Macaluso and confirmed that Mr. Gerace has remained compliant with all terms and conditions of release.

## PHARAOH'S GENTLEMEN'S CLUB

35. Defendant has been the owner of Pharoah's Gentlemen's Club since 2018 and has been employed there for over fifteen (15) years.

36. It has now been over fifteen (15) months since my declaration in support of modification of bail release conditions (Dkt 190-1) and I represent as an officer of the Court that I haven't received any direct or credible evidence even to this date that my client has committed any of the crimes for which he has been indicted.

37. Pharoah's has approximately seventy employees at any one time which include dancers, bartenders, security personnel, servers, kitchen help, and floor managers. I have, to date, interviewed 113 present and past employees and have received no indication that Defendant Peter Gerace has committed any of the crimes for which he has been indicted. None at all.

38. As the owner of the club, Defendant would generally engage in periodic tastings of various new brands of alcohol that may be purchased and served by the club, as well as seasonal tastings of new menu items prepared within the kitchen at Pharoah's.

39. The condition imposed precluding Defendant's attendance at the club in the presence of other people has prevented him from the ability to participate in these meetings which occur in the ordinary course of business. Furthermore, the preclusion of the consumption of alcohol has restricted his ability to test product that would be purchased for resale, another regular function of running the club which occurs in the ordinary course of business.

40. The club has also been undergoing substantial reconstruction including, but not limited to, the installation of new booths, bars, flooring, seating areas, stages, and new pavement in the parking lot which reconstruction is estimated to cost hundreds of thousands of dollars.

41. The currently imposed conditions of bail have precluded Defendant from oversight of construction and the ability to view and select and test products for use at the club.

42. Defendant has also been unable to respond to the club when issues have arisen with malfunctioning equipment and to immediately resolve any issues to ensure continuation of standard business operations.

43. In the event of a delivery while Defendant Gerace is at the club, Defendant is forced to vacate the premises to comply with the pretrial supervision orders and cannot return to his business until they have completed the delivery precluding him from the ability to check the delivery in the presence of the delivery person and ensure everything that was ordered was in fact delivered.

44. For the entirety of his ownership of Pharoah's, Defendant has held employee meetings every three (3) months, which generally include his management staff as well as security and bartenders.

## EVIDENCE OF THE PENDING CHARGES

45. On or about April 5, 2021, the United States Attorney's Office turned over voluminous discovery materials which include data from large-scale investigations spanning longer than a decade.

46. A thorough review by my office of the discovery materials has provided documentation of only a single sale of marijuana to an undercover officer in 2018 by an employee of Pharoah's, and two undercover controlled purchases of a small quantity of narcotics by employees of Pharoah's in 2015. ***Neither contained any evidence linking the Defendant to this conduct.***

47. After interviewing over 100 employees, it is quite clear that all employees are aware that the possession, use, sale or purchase of drugs will result in immediate termination by Peter Gerace, who has maintained a zero tolerance for drugs on those premises.

48. Although two (2) search warrants were executed both at Defendant's home on Lexor Lane in Clarence, New York, and at Pharoah's Nightclub, ***there was no evidence recovered that substantiate any claims made against Defendant in the Indictment***. Or at least none that the prosecution has chosen to share even as of this late date.

49. Although there are hundreds of thousands of documents and digital bits pertaining to multiple investigations into various drug organizations, it should be noted that none of those investigations reveal any direct evidence connecting Defendant to those narcotics investigations, and further no direct evidence connecting Defendant to any crimes associated with sex trafficking.

50. If such evidence existed, why would the US Attorney keep it from defense counsel? Or the Court? Or if the Court has been made aware of actual evidence against my client, why would the Court choose to keep that evidence from defense counsel, unless the intention here is to prevent counsel from being able to mount a defense?

51. Mr. Gerace's defense team is aware of only one "witness" to the terrible crimes of which Mr. Gerace has been accused: Ex-Wife Katrina Nigro.

52. Based on Ms. Nigro's radio show/podcast/social media posts, she claims to be the primary witness who convinced the Federal Grand Jury to indict her ex-husband Peter Gerace. Some of the discovery provided to Defendant by the United States Attorney's Office includes recorded phone calls placed by Katrina Nigro during her confinement at the Erie County Correction Facility in 2017.

53. During these two phone calls, Ms. Nigro admitted that the Town of Amherst Court ordered a two (2) doctor examination to determine whether she was mentally competent to participate in court proceedings due to her extreme falsifications during court proceedings. A copy of these calls will be provided to the Court upon request. Ms. Nigro's false claims are well known to her circle of friends, well known to police agencies and were, or should have been well known to Mr. Tripi had he conducted even a modicum of due diligence into Ms. Nigro before subjecting a grand jury to her prevarications.

54. It should also be noted that Ms. Nigro was recently incarcerated for six months for vehicular assault in Erie County, a sentence which was handed down by Erie County Judge Hon. Kenneth F. Case on August 19, 2021. Judge Case also sentenced her to 5 years of probation, which she is currently on.

55. I mention this because during the sentencing proceeding before Judge Case, Ms. Nigro attempted to manipulate the Court into imposing a lesser sentence by stating that she is working with Assistant United States Attorney Joseph Tripi in the instant case, and as a government asset, should be accorded some leniency. *See* Exhibit B, p. 5.

56. It has also been revealed that Ms. Nigro perjured herself in the Federal Grand Jury Proceedings, which record has been sealed but is available upon request. This same Ms. Nigro made unsubstantiated accusations that resulted in the disqualification of Mr. Gerace's chosen trial attorney, Joel Daniels, Esq.

57. A review of a total of 868,000 pieces of "evidence," including but not limited to 458,000 digital data files, 12,000 financial documents, and 398,000 miscellaneous data, has ***revealed no evidence the Defendant has committed any crimes***.

58. All applications for search warrants of Mr. Gerace's home and premises have been sealed.

59. It is submitted that the revelation of the weaknesses of the evidence supporting the Federal Indictment, as well as the discovery of the perjury committed by Ms. Nigro and the illegal phone search at the border, would constitute a change in circumstances since the Court's decision to alter terms of Defendant's release on April 2021.

## RISK OF FLIGHT

60. As previously discussed herein, Defendant is the owner of a profitable business in Cheektowaga, New York, and he is willing to provide a substantial bond to demonstrate his intent to appear at any and all court appearances, although there has never been an instance of Mr. Gerace failing to appear before any court at any time.

61. Defendant is in the midst of paying considerable sums to renovate the appearance of the club, which would increase its profitability. It is counterintuitive that Defendant would flee the area to evade prosecution.

62. Defendant also owns a house in Clarence, New York and is the custodial parent of his minor son who is enrolled in school in the WDNY.

63. Defendant has been regularly briefed with respect to the nature and quality of the evidence that has been provided by the United States Attorney's office, and he has repeatedly expressed his desire to stand trial so that he may be publicly exonerated.

64. Defendant's desire to prove his innocence suggests that he is not a flight risk.

65. Defendant has fervently maintained his innocence since the commencement of the proceedings against him.

## RISK OF DANGER

66. During the arguments that took place on April 14, 2021, before the Honorable John L. Sinatra, the Government alluded to potential messages received by a potential witness from an individual who may have been with Defendant.

67. Specifically, the Government stated, "There has been a witness that received threats through a Facebook account during a scenario where Mr. Gerace was present with the person who was – we're still investigating it. So, I don't want to go too far into it. But essentially, calling the witness a snitch and things of that nature, which was perceived as a threat by the witness." See Exhibit B p. 6-7.

68. When asked for the date of this alleged incident, the Government indicated that it occurred in or around November 2019. See Exhibit B, p. 7.

69. To date, defense counsel has not received physical evidence of this alleged threat.

70. In reviewing the discovery provided by the United States Attorney's Office, I have seen no further evidence that Defendant has acted in any manner that could be perceived as intimidating or violent since this alleged incident from 2019.

71. It should be noted that this incident is alleged to have occurred before Defendant's arrest and prior to his involvement with Federal Probation Officer, Michael Macaluso.

72. Mr. Macaluso has indicated that Defendant had been completely compliant with pretrial services for the past twenty-two (22) months, and that he has no concerns that Defendant poses a risk of flight and has no objections to a change in the conditions of Defendant's release to comply with a curfew rather than home detention.

WHEREFORE, Defendant respectfully requests that the release conditions be modified to a release secured by a bond.

Dated:   December 29, 2022

S/ Steven M. Cohen

Steven M. Cohen, Esq.
*Attorney for Defendant Gerace*
HoganWillig, PLLC
2410 North Forest Road, Suite 301
Amherst, New York 14068
Tel: 716.932.6754 | Fax: 716.932.6718
scohen@hoganwillig.com

TO:   TRINI E. ROSS, ESQ.
Joseph Tripi, Esq.
United States Attorney for the Western District of New York
138 Delaware Avenue
Buffalo, New York 14202