# EXHIBIT B

```
STATE OF NEW YORK : COUNTY COURT
COUNTY OF ERIE : CRIMINAL TERM : PART 7
```
---

THE PEOPLE OF THE STATE OF NEW YORK

  - vs -                       INDICTMENT # 02284-2019

                                  SENTENCING

KATRINA NIGRO aka KATRINA GERACE,

    Defendant.

---

                            25 Delaware Avenue
                            Buffalo, New York
                            August 19, 2021

B e f o r e:

        HONORABLE KENNETH F. CASE
           County Court Judge


A p p e a r a n c e s:

        JOHN J. FLYNN, ESQ.
        Erie County District Attorney
        BY:  CHRISTOPHER M. McCARTHY, ESQ.
        Assistant District Attorney
        Appearing for the People.

        BRENT SALEVSKY, ESQ.,
        Appearing for the Defendant.

P r e s e n t:

        KATRINA NIGRO,
        Defendant.


                            AMY L. HAYES
                        Senior Court Reporter

1    MR. McCARTHY: Your Honor, the next matter
2    before you is People of the State of New York versus
3    Katrina Gerace, also known as Katrina Nigro, file number
4    02284-2019.
5        Your Honor, Miss Gerace, AKA Nigro, appears
6    before you along with her attorney, Mr. Brent Salevsky.
7    And we're here for the purposes of sentencing.
8        Your Honor, you will recall that Miss Gerace
9    pled before you to one count of vehicular assault in the
10   second degree, under Penal Law 120.03 sub one, a class E
11   felony. As a result of that plea, a pre-sentence
12   investigation report has been created by the probation
13   department. I'm in receipt of that, and it is factually
14   accurate. Judge, we would also note the presence of the
15   victims in this matter, Michael and Lissa Jasinowski, and
16   their civil counsel, Mr. John Fromen, present in the
17   courtroom.
18       Judge, they don't wish to speak, but they have
19   wrote an extensive letter to the Court, which we have
20   submitted, and the Court has acknowledged receipt of as
21   well, along with the defense counsel.
22       Your Honor, that being said, the pre-sentence
23   report asks for a period of incarceration. The People
24   agree with that. We know the victims are seeking a period
25   of incarceration. And we would respectfully make that

People v. Nigro

3

1   request before sentencing. Thank you.

2   MS. SALEVSKY: Brent Salevsky on behalf of Miss
3   Nigro, Judge. Firstly, I have had an opportunity to
4   review the pre-sentence investigation. I don't find any
5   material errors or omissions, and we're prepared to move
6   forward today.

7   THE COURT: Thank you.

8   MR. SALEVSKY: Thank you, Judge. And I just ask
9   to be heard at the appropriate time.

10  THE COURT: You certainly may be heard on behalf
11  of your client with regard to sentence.

12  MR. SALEVSKY: Thank you, Judge. Before you
13  today, Miss Nigro, she's thirty-nine years old. She
14  stands convicted of a felony DWI that occurred in October
15  of 2019. I think most importantly, Judge, Ms. Nigro
16  hasn't been sitting on her hands since October of 2019.
17  She, in fact, I would say, has done more to demonstrate
18  her sobriety to this Court than any defendant I've
19  represented before. She proactively sought out engagement
20  with Buffalo's DWI Court. And as Your Honor is surely
21  aware, that includes the installation of a SCRAM monitor,
22  a monitor to monitor alcohol in her system. In the normal
23  course she would wear that for a period of six months.
24  She's now been wearing that device for more than a year.
25  That's come at a cost to her of several thousand dollars

*People v. Nigro*

4

1   as well, Judge. She completed substance abuse counseling
2   at ECMC. That was, of course, that took approximately two
3   years for her to complete. Recognizing the underlying
4   issues with her dependency, she also engaged in trauma
5   therapy at ECMC. She's continuing in that program to
6   date. As a part of DWI Court, Judge, she was required to
7   do regular check-ins there, toxicology tests, in addition
8   to that SCRAM monitor that I previously discussed.
9               Personally, she's taken this matter very
10  seriously. She's participated closely with me and the
11  defense on the case. She has repeatedly expressed remorse
12  towards the victims in this case. She understands the
13  serious nature of the case. In addition to the, I'll say
14  extensive treatment that she's completed while this case
15  has been pending, she's also been working to better
16  herself personally. She's completed numerous educational
17  courses through Cornell. She's completed an opiate
18  overdose course. She's living with her parents now, whom
19  support her and are helping her with her sobriety.
20              Judge, it's my position that the interest of
21  justice here would be served by a sentence to a term of
22  probation. I would ask that conditions include that she
23  continue in mental health counseling and any recommended
24  substance abuse treatment. I think that a sentence to
25  probation would act as a deterrent for her and would

1  ultimately meet the end goals to the criminal justice
2  system, which would be rehabilitation.
3      THE COURT: Thank you. Ms. Nigro, you have a
4  right to speak on your own behalf before the Court imposes
5  sentence. Is there anything you'd like to say?
6      THE DEFENDANT: Sure. I am a completely
7  different person after eighteen years in the adult
8  industry, married to an organized leader of crime. I've
9  seen pretty much everything horrible you can fathom, from
10 different judges, politicians, and everything going on.
11 It's an extreme trauma. It started in 2013 with a
12 traumatic brain injury, being held hostage upstairs at
13 Pharaoh's. I have not been able to get help, including an
14 incident that he had with a girl who like manipulated me
15 and now has some random, trying to set charges that are
16 all lies. It has been ongoing of my mugshots posted on
17 his Facebook, all this stuff, when he's not legally
18 supposed to do it. And the FBI talked to me yesterday,
19 and they'll probably meet me in jail or wherever I am to
20 discuss this further with Tripi. It really does, the
21 federal case completely affects this. And between Judge
22 Michalski in charge of it and in between my suicide, I
23 wasn't trying to drunk drive, I tried to kill myself. It
24 was a horrible accident. I never meant to kill myself and
25 hit another car. I was driving to Zoar Valley. I had no

1  value, I had nothing, and I just couldn't do it anymore.
2  But I went already on my own into extensive trauma
3  therapy. I work with Brandy Gross, who's a federal
4  witness victims coordinator. And she found the right
5  counselors because I couldn't get them, because I can't
6  talk about the case, which is the trauma of it. It's been
7  absolutely hell. And I did try to kill myself three
8  times. And this is the first time I'm stable. You know,
9  and like I really made a difference, I've been studying.
10 I got accepted into Yale. I would like to start it
11 September 15th, but I can push it off, obviously, until
12 the next semester. My family and everyone appreciates
13 everything I've done. And over the course since COVID,
14 I've done a lot for neighbors and everything, volunteer
15 work, and got my life stabilized, financially and
16 everything.
17             THE COURT: Thank you. First, to Lissa and
18 Michael Jasinowski, thank you for being here. I can't
19 begin to imagine how difficult it is for you to be sitting
20 here. But more importantly, how difficult it was to live
21 through this, and you continue to live through it. You
22 very easily could have been killed in this accident, and
23 on your anniversary left your two young children without
24 parents. And I guess, Miss Nigro, when I look at your
25 record, I certainly am cognizant of, at least to some

*People v. Nigro*

7

```
 1  degree, as well as I could be --
 2          THE DEFENDANT:  Of course.
 3          THE COURT:  -- based on what's in the
 4  pre-sentence report, of your circumstances.  And from
 5  reading the pre-sentence report, I have some idea of what
 6  you have been through.  But, in this case, I think your
 7  blood came back at a point two zero.  You were operating a
 8  car.  And these fine people over here didn't deserve what
 9  they got.
10          THE DEFENDANT:  I agree.
11          THE COURT:  They're dealing with a lifetime
12  of --
13          THE DEFENDANT:  I absolutely agree.
14          THE COURT:  And with your record, coupled with
15  what they have to deal with.  And I do agree that you
16  voluntarily placed yourself in the DWI C.O.U.R.T.S.
17  Program and have been wearing the ankle monitor.  And of
18  course, I'm taking all of that into consideration.  And I
19  hope that what you have said here today is accurate.  But
20  I think from everything I've heard now and read, the best
21  thing, at this point, is for me to impose the maximum
22  sentence I can while still placing you on probation so
23  that there are some concrete sanctions here, followed by
24  continued supervision.  Because I think that's not only in
25  your best interest, I think it's in the best interest of
```

AMY L. HAYES
Senior Court Reporter

1   the community to make sure that you continue to remain
2   sober.
3          And so for your conviction then for vehicular
4   assault in the second degree, a class E felony, it's
5   hereby the judgment of the Court that you are sentenced to
6   a split sentence, which is a definite sentence of six
7   months in the County Correctional Facility, followed by
8   five years of probation. The conditions of your probation
9   are on a two-page document that our court officer is about
10  to hand you. You can review those with your attorney and
11  sign the bottom of the second page to indicate that you
12  have reviewed and understand each of those conditions of
13  probation. Of course, you must install an ignition
14  interlock device on any vehicle owned or operated by you
15  for the duration of your probation. Although, I don't
16  think, looking at your record, you will ever have a New
17  York State driver's license again.
18          THE DEFENDANT: No, I have no desire for one.
19  After my accident, I was seriously injured. I have mesh
20  in my stomach and metal arms, and I barely started moving
21  out of my wheelchair only six months ago. In all reality,
22  I almost feel that the six months isn't the most
23  beneficial because, as a leader in organized crime, those
24  people are comfortable for me. And I worked so hard to
25  get out of the strip clubs and out of the industry and

People v. Nigro

9

```
 1   pawn shops, and I'm just putting myself with them.  And I
 2   only started viewing their thoughts as wrong.  I almost
 3   would rather have the ankle monitor on for a whole other
 4   year and stick with a harder treatment program, instead of
 5   having my parents and everyone take care of me like I'm a
 6   burden, instead of having taxpayers pay for this.  I can
 7   afford the monitor.  I can afford transportation.  I have
 8   two other court cases going on in the federal court case,
 9   which I do have to work and talk to the FBI and Tripi on a
10   pretty weekly basis.  There's a lot going on with that
11   court case.  But as me, it shows I'm an adult by taking on
12   responsibilities on my own instead of the Court, instead
13   of COs doing everything for you, instead of sitting around
14   reading magazines.
15           MR. SALEVSKY:  I think what she's getting at,
16   Judge, is she believes that a term with, a continuing term
17   with the ankle bracelet would be more beneficial to her
18   than a term of incarceration.  Would you reconsider,
19   Judge?
20           THE COURT:  I won't.  But I appreciate your
21   argument.
22           MR. SALEVSKY:  Thank you, Your Honor.
23           THE COURT:  Your license is also revoked for one
24   year.  There's a mandatory surcharge of three hundred
25   dollars, a crime victim assistance fee of twenty-five
```

AMY L. HAYES
Senior Court Reporter

People v. Nigro

10

```
 1    dollars, and a DNA databank fee of fifty dollars, which
 2    can be paid through prison funds or within sixty days of
 3    your release.
 4              MR. SALEVSKY:  Thank you, Your Honor.
 5              THE COURT:  That's the sentence of the Court.
 6    You have thirty days within which to appeal.
 7              MR. SALEVSKY:  Thank you, Your Honor.
 8
 9                        *        *       *
```

AMY L. HAYES
Senior Court Reporter

People v. Nigro

11

CERTIFICATION

Date: 8/24/21

I certify that the foregoing 10 pages are a correct transcription of the proceedings recorded by me in this matter.

*[signature]*
AMY L. HAYES,
Senior Court Reporter.