UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**UNITED STATES OF AMERICA**

                        Plaintiff

|  |  |
|---|---|
|  | **DEFENDANT PETER GERACE'S OBJECTIONS TO THE MAGISTRATE/JUDGE'S REPORT, RECOMMENDATION AND ORDER DATED DECEMBER 19, 2022** |
| -vs- |  |
|  | Case No. 19-CR-227 |
| **PETER GERACE, JR.** |  |

                        Defendant
_____

## PROCEDURAL HISTORY

On October 26, 2022, Mr. Gerace requested leave (Dkt 311) to file a motion to suppress evidence with a supporting memorandum that exceeded the page limit set by the Local Rules of the Western District of New York. (WDNY Local Rule 12(c)). The Court ordered Mr. Gerace to show cause as to why this motion should not be considered untimely under a previously issued scheduling order (Dkt 312). Mr. Gerace, by counsel, filed a Declaration on November 14, 2022, showing cause for his request to file a motion to suppress that exceeded the page limit. (Dkt 316-1) Defendant also filed as an exhibit to this motion a complete and substantive draft of the Motion to Suppress. (Dkt 316-2) The Government filed a response to Mr.

{H3624881.1}

Gerace's request on November 28, 2022 (Dkt 320), and Mr. Gerace filed a reply on December 2, 2022. (Dkt 327)

On December 19, 2022, Magistrate Judge Roemer issued a Report and Recommendation regarding Mr. Gerace's pre-trial motions. (Dkt 330)  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 59(b)(2) of the Local Criminal Rules of the Western District of New York, Mr. Gerace hereby files objections to the Magistrate Judge's Report and Recommendation, seeking the District Judge's review *de novo*. In support of his objections, Mr. Gerace's counsel has incorporated by reference all factual representations and legal arguments previously filed on behalf of the defense, and specifically includes the substantive draft motion itself (Dkt 316-2) as an integral part of this application.

## I.   THE FOURTH AMENDMENT REQUIRES THAT THIS COURT ENTERTAIN MR. GERACE'S MOTION TO SUPPRESS

The Magistrate Judge opined that Mr. Gerace's Motion to Suppress Evidence was untimely because he failed to meet the Court's deadline established under Rule 12(c)(1). (Doc. 330, 6). The Magistrate Judge stated that this failure constituted a complete waiver of Mr. Gerace's suppression issue, unless he could show good cause. Id. The Magistrate found no good cause to consider Mr. Gerace's Motion to Suppress (Doc. 330, 7).

A. <u>Motions to Suppress are timely if they are filed before trial</u>

Defendant Gerace objects to the initial determination that his Motion to Suppress is untimely. The FRCrimP 12(c)(1) allows Judges to set procedural deadlines, but such deadlines may not violate legal due process. We respectfully assert that any judicially created deadline that shortens the timeline provided for criminal defendants to file Motions to Suppress to address the Government's violation of their Fourth Amendment rights amounts to a violation of legal and Constitutional due process.

The Supreme Court does not seem to have yet addressed whether FRCrimP Rule 12(b)(3) allows defendants to file Motions to Suppress Evidence up until trial, regardless of any Court-imposed deadlines. However, an examination of the Advisory Committee Notes and other analogous Supreme Court decisions suggests that Motions to Suppress filed before the start of trial cannot be considered untimely, or even if they are considered untimely, the necessity of Constitutional protections amount to good cause.

While a criminal defendant's Constitutional rights must be protected by Courts, the United States Supreme Court has concluded that a criminal defendant can waive his Constitutional rights in some instances where issues are not raised before trial. *See* <u>Davis v. United States,</u> 411 U.S. 233 (1973). In <u>Davis v. United States</u>, the Supreme Court addressed waiver under Rule 12(b)(2), for objections in

the institution of the prosecution or in the indictment that must be raised by motion

before trial. 411 U.S. 233 (1973). The Supreme Court noted:

> [a]ccording to the Notes of the Advisory Committee on
> Rules, the waiver provision was designed to continue
> existing law…which…was...that defendants who pleaded
> to an indictment and went to trial without making any
> nonjurisdictional objection to the grand jury, even one
> unConstitutionally composed, waived any right of
> subsequent complaint on account thereof. Id at 237.

In stark contrast to this limitation on a criminal defendant's ability to assert

his Constitutional rights was the Supreme Court's decision in Kaufman v. United

States. See 394 U.S. 217 (1969).  In Kaufman, the Supreme Court created a

permissive standard for whether a criminal defendant could access collateral

relitigation. In creating this allowance, the Court opined:

> Where a federal trial or appellate Court has had a 'say'
> on a federal prisoner's claim, there may be no need for
> collateral relitigation. But what if the federal trial or
> appellate Court said nothing because the issue was not
> raised? What if it is unclear where the 'say' was on the
> merits? What if new law has been made or facts
> uncovered relating to the Constitutional claim since the
> trial and appeal?...These problems raise, not the issue
> whether relitigation is necessary, but whether one
> adequate litigation has been afforded.  Kaufman, 394
> U.S. 217, 230.

Although the reasoning in the preceding passage seems to apply to a pretrial

motion to dismiss the indictment, the Supreme Court made a distinction between an

express waiver as outlined by the Advisory Committee and a permissive

Constitutional standard in the absence of a waiver provision. As a result, the Court ruled that Rule 12(b)(2) specifically allows for the waiver of a specific type of Constitutional claim if it is not timely asserted. <u>Id</u> at 240.

Defendant Gerace's Motion to Suppress raises many of the concerns specifically addressed in <u>Kaufman</u>. Gerace has not had the opportunity for the Court to consider the merits of his claim, and new law and additional facts have been discovered since the scheduling deadline set by the Court. Therefore, the question of whether Mr. Gerace has received adequate litigation is an issue in this case.

Before applying the <u>Kaufman</u> standard, this Court should look to whether Rule 12(b)(3) provides an express waiver provision applicable to Mr. Gerace. The waiver of a suppression claim is set by the legislature according to the Advisory Committee notes of 12(b)(3). "Subdivision (b)(3) makes clear that objections on evidence on the ground that it was illegally obtained must be raised prior to trial. This is the current rule with regard to evidence obtained as the result of a legal search." Advisory Committee Notes 12.

The Magistrate Judge did not apply the express waiver provision as articulated by the legislature nor did he look to the guidance of the Supreme Court provided in <u>Kaufman</u>. Had he considered either of these authorities, Mr. Gerace's Motion to Suppress would be found timely or would otherwise be heard for good cause. The Magistrate Judge also did not consider the original rationale for procedural deadlines

for pretrial motions brought by criminal defendants as articulated by the United

States Supreme Court:

> The waiver provisions of Rule 12(b)(2) are operative only with respect to claims of defects in the institution of criminal proceedings. If its time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the Court, the witnesses, and the parties have gone to the burden and expense of a trial. If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when prosecution might well be difficult. Id at 241.

Gerace sought leave to file his Motion to Suppress well prior to trial.  In fact,

that application was made on October 28, 2022 (Dkt 311) before a trial date was

even set.  Trial commencement date of June 21, 2023 set on 11/30/22 at hearing -

Dkt 324   This would allow the matter to be concluded long before the parties have

gone to the expense and burden of a trial. Furthermore, there is no danger of

upsetting a valid conviction as Mr. Gerace has not been convicted of the charges.

Therefore, the rationale as to why procedural limitations must be placed on pretrial

motions does not apply to Mr. Gerace's Motion to Suppress.

    B.  <u>Even if Mr. Gerace's Motion to Suppress is deemed Untimely, the exclusionary rule's deterrence effect amounts to good cause.</u>

By bringing his Motion to Suppress the evidence of his cell phone search, Mr. Gerace is seeking to deter the Government's improper and possibly illegal conduct by removing the incentive to disregard it. To properly determine whether there is good cause to allow an untimely filing, the Court must look to the purpose and analysis conducted under the exclusionary rule.

The Supreme Court made clear that the exclusionary rule "is calculated to prevent, not to repair." <u>Elkins v. United States</u>, 364 U.S. 206, 217 (1960). Its purpose is to deter – to compel respect for the Constitutional guaranty in the only effectively available way – by removing the incentive to disregard it." <u>Id</u>. However, the exclusionary rule's application "has been restricted to those areas where its remedial objectives are thought most efficaciously served." <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974).

In <u>Stone v. Powell</u>, the Supreme Court held that in the context of a federal habeas, the contribution of the exclusionary rule to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force. 428 U.S. 465 (1976). There the costs of the exclusionary rule's application is known:

> The costs of applying the exclusionary rule even at trial on direct review are well known: the focus of the trial, and the attention of the participants therein, are diverted

> from the ultimate question of guilt or innocence that
> should be the central concern in a criminal proceeding.
> Moreover, the physical evidence sought to be excluded is
> typically reliable and often the most probative
> information bearing on the guilt or innocence of the
> defendant. <u>Id</u> at 489-90.

Therefore, whether or not Mr. Gerace's Motion to Suppress amounts to good cause under the exclusionary rule requires an analysis of whether the interests safeguarded by deterrence in Mr. Gerace's case are outweighed by the Magistrate Judge's expressed concerns of the public's interest in a speedy trial and compliance with Court's scheduling orders. See <u>Stone v. Powell</u>, 428 U.S. 465 (1976); (Doc. 330, 12).

In the case of Mr. Gerace, none of these concerns are relevant. As Mr. Gerace filed his Motion to Suppress before the start of trial, no attention will be brought away from bearing on the guilt or innocence of Mr. Gerace once trial commences. Further, the evidence sought to be excluded by Mr. Gerace is circumstantial evidence and not physical evidence. It is extremely unreliable, as it is not direct evidence of a crime and is subject to Government interpretation of Mr. Gerace's meaning and intent.

Furthermore, the deterrence effects at issue in Mr. Gerace's Motion to Suppress are incredibly important. Congress has had hearings addressing the Government's use of the warrantless border search to search cell phones. Government's own published policies clarify the search conducted against Mr.

Gerace should not be permitted. The Department of Justice utilized powers not granted to its agents (US Attorney, FBI) by requesting Homeland Security border agents to perform searches on their behalf. Mr. Gerace's employees have been subjected to illegal searches by the Government. Innocent citizens were, Gerace argues, subjected to government overreach at the border in an effort to circumvent Constitutional protections. Deterrence is the only arrow in the quiver of United States citizens to address government abuses of the warrantless search exception that occur at the border.

The Court in Powell also noted that where an opportunity for full and fair litigation is provided the effect of the exclusionary effect is minimal. Id at 494. Mr. Gerace has not had the opportunity to have full and fair litigation of his Fourth Amendment claim. Indeed, the Magistrate's decision explicitly prevents full and fair litigation of his Fourth Amendment claim. Therefore, the effect of the exclusionary rule is astronomically high in Mr. Gerace's case.

The Magistrate Judge raises no concerns of any minimal effect of the exclusionary rule but raises concerns that allowing Mr. Gerace's Motion to Suppress to be heard on its merits would undermine the public's interest in a speedy trial and compliance with Court established deadlines. (Doc. 330, 12).

Neither of these concerns are substantial enough to prevent Mr. Gerace an opportunity to have the Constitutional violations committed against him by the government heard by this Court.

In Parisi v. United States, the Second Circuit held that the district Court has an obligation independently to determine whether a continuance serves the ends of justice in a manner that outweighs both the public interest and the defendant's rights. 529 F.3d 134, 140 (2d Cir. 2008). The Magistrate Judge did not consider the government's troubling conduct in this case and whether the ends of justice would be served by a suppression hearing. Further, Mr. Gerace provided proof in his Motion to Suppress that this particular issue is an important matter for Congress, and that U.S. citizens' rights are being violated regularly by the government's abuses at the border regarding cell phones. The public interest is better served by deterring illegal conduct by federal law enforcement agencies than it would be by prosecuting a wrongly indicted man a few months sooner.

In Barker v. Wingo, the Supreme Court established a four-part test to determine whether a defendant's right to a speedy trial has been violated. 407 U.S. 514 (1972). This test considers the length of the delay, the reason for the delay, the defendant's assertion of the right to a speedy trial, and the prejudice caused by the delay. Id at 530. In this case it is not Mr. Gerace who is asserting the necessity for a speedy trial, but rather the Magistrate Judge who is insisting upon it in the interest

of the public interest. Nonetheless, this Court should look to the factors to determine whether the Speedy Trial Act would be violated.

The length of delay in this case will be minimal as Mr. Gerace has already produced his Motion to Suppress and trial will not be occurring until June 2023. This provides plenty of time for the government to respond and for the Court to properly consider Mr. Gerace's motion. Furthermore, any delay caused by the motion is mainly attributable to the Magistrate Judge's unreasonable adherence to strict procedural interpretations to deny Mr. Gerace the chance to challenge the government's conduct in this case. If the Magistrate had heard Mr. Gerace' Motion to Suppress when it was originally proposed, the Government could have responded and the matter could have been decided well before the June 2023 trial deadline. Instead, the Magistrate required more "good cause" than is necessary and created unnecessary delay.

This delay has been further prolonged by the need for Mr. Gerace to challenge the Magistrate's recommendations to the District Court. There is also the potential for further delay if Mr. Gerace needs to appeal the decision to protect his right to challenge the use of illegally obtained evidence in trial. The procedural hurdles that Mr. Gerace is facing are causing more delay to the public interest and start of trial than consideration of his Motion to Suppress.

The reason for the delay has been addressed by Mr. Gerace in all his filings to show cause as well as throughout his current objections.

Finally, the amount of prejudice that would result to Mr. Gerace as a result of the Court's refusal to hear his Motion to Suppress on its merits is insurmountable. The government's evidence against Mr. Gerace is weak and is based upon a series of misinterpretations of cell phone data they illegally obtained. Should that data be excluded as required by the illegal conduct of the government, they will likely be unable to proceed with prosecution of Mr. Gerace. Therefore, in comparison for the massive need for deterrence and the minimal effect of hearing the motion before the start of trial, Mr. Gerace asks this Court to find good cause based on the necessity of deterrence under the exclusionary rule.

## II.   MR. GERACE HAS ESTABLISHED THE REQUIREMENTS FOR GOOD CAUSE UNDER FCRP 12.

The Magistrate Judge made findings regarding whether there is good cause to hear the Motion to Suppress filed by Mr. Gerace.  His Honor found that Mr. Gerace and his counsel had knowledge of the basis for the motion before the deadline for filing had expired, and therefore there was no good cause for the late filing. (Doc. 330, 7). In addition, the Magistrate Judge determined that no additional review of documents or evidence was needed to raise the suppression issue, meaning the delay was not due to a lack of time to prepare. (Doc. 330, 8). The Judge found that the fact that Mr. Cohen did not come on as counsel until after the pretrial deadline expired

was not a valid reason for good cause. (Doc. 330, 9). Finally, the Judge found that any facts or law that were not available before the evidentiary hearing did not constitute good cause for the late filing. (Doc. 330, 11).

The Magistrate Judge discussed Mr. Gerace's so-called "strategic" decision to not file a Motion to Suppress before the Court's deadline. We respectfully and vigorously assert that it was improper for the Magistrate Judge to read negative intention into counsel's good faith attempt to properly represent Mr. Gerace. This Court should review all the good cause reasons articulated in our initial filing and consider them at face value.

The Magistrate Judge added an extra requirement for good cause that is not supported by case law. Even if this requirement were necessary, Mr. Gerace claims that he did not become aware of the basis for his Motion to Suppress until after the deadline for filing such motions had passed. Mr. Gerace also asserts that he needed to review discovery materials before bringing his Motion to Suppress, and that various issues with counsel and representation prevented him from filing the Motion before the deadline. Certain facts and legal determinations relevant to his Motion to Suppress did not come to light until after a similar motion filed by a co-defendant had been decided.

A. Good Cause does not require the basis for a pretrial motion be known before the expiration of the Court's pretrial deadline.

The Magistrate Judge's assertion that a defendant must show that the basis for their motion was not known before the expiration of the deadline in order to meet the good cause standard of Rule 12(c)(3) is incorrect. See (Doc. 330, 7). The Magistrate Judge cites United States v. Sanders and United States v. Robinson as support for this claim, but these cases do not establish a general trend in the Second Circuit. See id.; 357 F. Supp. 3d 221 (E.D.N.Y 2019). In fact, the Robinson Court specifically noted that it would not hesitate to grant a motion in cases where the defendant did not know of the basis before the deadline expired. See Robinson, 357 F. Supp. 3d 221,  224 (E.D.N.Y 2019). The Sanders Court then cited the Robinson case as establishing a requirement that the defendant know of the basis before expiration of the deadline. Sanders, 2020 U.S. Dist. LEXIS 247087 *8. The Sanders Court's cite of the Robinson Court's decision as standing for the proposition good cause requires knowledge of the basis before the deadline is a misreading of the decision.

Furthermore, this requirement makes no sense in the context of Constitutional rights violations. The Supreme Court has not adopted the approach that a violation of Constitutional rights must be immediately asserted or it will be waived. In fact, cases like Kaufman make it clear that a permissive standard should be adopted in the absence of an express waiver by the legislature, in order to allow the Courts to

address the merits of such cases. A more permissive standard would allow for greater flexibility in addressing Constitutional rights violations.

B. Mr. Gerace' Motion to Suppress required additional factual knowledge that did not exist before expiration of the pretrial motion deadline.

Even if this Court adopts an additional requirement for good cause, Mr. Gerace did not know the basis of his Motion to Suppress until after the deadline to file pretrial motions had expired. The Magistrate/Judge found that Gerace and his defense counsel had sufficient knowledge of the basis for the Motion to Suppress at least three months before the expiration of the Court's scheduling order (Doc. 330, 12). The Magistrate/Judge also found that Mr. Gerace had enough time to investigate any specific circumstances before the Court's scheduling deadline and no additional review of documents and evidence was needed to timely raise his Motion to Suppress. (Doc. 330, 8, 10).

The timeline proposed by the Magistrate Judge in which Mr. Gerace could supposedly conduct a complete investigation and review of discovery is profoundly unrealistic.

The Court issued its last Scheduling Order on March 4, 2021, the day Mr. Gerace was arraigned. Mr. Gerace did not receive information regarding the illegal search conducted by the Government of Gerace's phone at the Newark airport until April 5, 2021. This left Mr. Gerace with only three months to file any pretrial motions before the expiration of the scheduling order on July 12, 2021. The Magistrate

Judge's decision implies that the very first day that Mr. Gerace's counsel received any discovery he had knowledge of the basis to bring a Motion. This ignores the reality of the practice of law. Mr. Gerace could not bring a Motion to Suppress until his counsel had properly reviewed all the evidence and learned the facts surrounding how it was obtained by the government.  As the proposed motion makes clear, indeed as the entire record reflects, an enormous quantity of useless material was dumped on the defense that contains not a shred of inculpatory evidence, nevertheless, Gerace's counsel was required to go through every bit of it.  To this day, the Gerace defense team doesn't have the name of a single victim of any crime for which our client has been indicted; not a single date of the commission of a single crime for which our client has been indicted; no evidence of a single illegal transaction for which our client has been indicted.  Yet the digital and paper documents have flooded in that are entirely irrelevant, yet causes the defendant to spend vast sums of money having his attorneys pore through.

Mr. Gerace and his prior counsel did their utmost to file all pretrial motions by July 12, 2021. However, at the point these pretrial motions were filed, an extensive review of all the discovery sent by the Government had not been performed. (Doc. 316-1, 4-5). To assert a standard that any pretrial motions must be filed before discovery can properly be reviewed or it amounts to a waiver is . Here, Mr. Gerace's prior counsel had to review eight hundred sixty thousand (860,000) items of

evidence to understand the full nature of what the search had revealed. A proper decision about whether to file a motion to suppress requires a full analysis of all the evidence obtained, the legal standard, as well as other considerations in the case. This basis did not exist a mere three months after Mr. Gerace had received discovery from the Government.

Review of this discovery material was necessary to Mr. Gerace's Motion to Suppress, as it revealed employees of Mr. Gerace were also subject to illegal search by the Government and evidenced the Government's ill intent. (Doc. 316-1, 5). Additionally, a complete investigation revealed that federal authorities have advised contacts of Mr. Gerace that there would be "consequences" if they failed to come up with evidence against Mr. Gerace. These discoveries support Mr. Gerace's Motion to Suppress by revealing the calculated effort by the Government to violate Mr. Gerace's Constitutional rights and prevent application of the good faith exception.

Mr. Gerace asserts arguments in his Motion to Suppress whose factual basis would not be available prior to the expiration of the Court's pretrial motion deadline. First, the search of Mr. Gerace's Cell Phone was not within the scope of the Border Search Exception. Second, Mr. Gerace's Fourth Amendment rights were violated by a non-routine search without reasonable suspicion. Finally, the good faith exception cannot apply to the Government's violation of Mr. Gerace's Fourth Amendment rights.

Mr. Gerace argues in his Motion to Suppress that the United States Attorney circumvented the Fourth Amendment warrant requirement by improperly utilizing the authority of Department of Homeland Security Agents to search Mr. Gerace's cell phone. The factual details needed to argue this point were not available before the evidentiary hearing conducted to address Co-Defendant Bongiovanni's suppression motion. It would be impossible for Mr. Gerace to argue that the United States Attorney actively circumvented Fourth Amendment protections until he received the methodology of how the border search was conducted.

The Magistrate Judge disagrees that this constitutes good cause because defense counsel possessed full knowledge of the critical facts necessary to make a motion before the Court's pretrial motion deadline. (Doc. 330, 11). According to the Magistrate Judge, the only critical facts necessary were that Mr. Gerace knew his phone was searched, and the Government intended to introduce evidence from that search in their prosecution of Mr. Gerace. (Doc. 330, 8). According to the Magistrate Judge, any other critical factual details, should have been investigated by counsel to determine the specific circumstances of the border search. See (Doc. 330, 11-12).

An assumption that defense counsel could obtain specific circumstances of the search conducted against Mr. Gerace in a mere three months and still have time to write a full Motion to Suppress defies reason. The Government has opposed Mr. Gerace's attempts to obtain information at every stage of this proceeding. For

example, Mr. Gerace's motion to unseal a search warrant of a search of his house and business was opposed by the Government before the expiration of the pretrial motion deadline. (Dkt. 113-117). It's obvious the Government would not have willingly provided any information on its methodology or procedures in conducting the illegal search of Mr. Gerace. Neither Mr. Gerace nor his counsel could obtain information of government methodology independently of government cooperation. Therefore, a conclusion that Mr. Gerace should have known the basis for his Motion to Suppress prior to expiration of the scheduling order set by the Magistrate Judge is not supported by the facts. A standard that puts the onus on a criminal defendant to somehow investigate Government procedures of a federal agency within three months to avoid an untimely motion cannot be allowed by the Constitution or this Court.

Mr. Gerace asserts a second basis in his Motion to Suppress that the government conducted a non-routine search against him. The basis to bring this claim did not exist prior to the facts provided in Bongiovanni's evidentiary hearing and the legal conclusions provided by Magistrate Judge Roemer. As Magistrate Judge Roemer noted in his recommendation, "neither the Supreme Court nor Second Circuit have expressly ruled as to when the search of a cell phone at a border becomes nonroutine, and what is required by the Fourth Amendment when it does. (Dkt. No, 292 at 23-24). Since the law was not clear, Mr. Gerace needed as many

facts as possible to support his position. However, despite the need for Mr. Gerace to gather as many facts as possible to support a contention that the search was nonroutine, the Magistrate Judge asserts that all the necessary facts could have been obtained within three months. In addition to this unrealistic expectation, the Magistrate Judge went farther to find that since Mr. Gerace's Motion to Suppress was not filed within those three months, it should not be considered.

Finally, Mr. Gerace asserts in his Motion to Suppress the Government's actions were intentional, reckless, or grossly negligent, violative of its own agency policies, and unsupported by any binding appellate precedent. These claims could not have been asserted without the factual details of how the Government conducted the illegal search against Mr. Gerace. Unsurprisingly, these details were not willingly offered up to Mr. Gerace nor were they provided in received discovery. These factual details provide grounds to show that the Government's actions are not protected by good faith.

These arguments could not have been factually supported until the transcripts from the evidentiary hearing of Co-Defendant Bongiovanni were received. The Magistrate Judge addresses good faith in a footnote, noting "Mr. Gerace now seems to argue that the factual differences between the border search of his phone and the border search of Bongiovanni's phone would prevent the good faith doctrine from applying to him." The Magistrate's representation of Mr. Gerace's argument misses

the mark. Mr. Gerace is arguing that the factual differences between an advanced border search of his cell phone and a basic search of Bongiovanni's phone would prevent the good faith doctrine from applying to the Government. This distinction was laid out in their own policies, and by performing it against Mr. Gerace they violated their own polices in pursuit of producing incriminating evidence against Mr. Gerace and attempted to justify it by relying upon the border search exception whose authority they improperly borrowed from another federal agency.

The Supreme Court has clarified that these factual matters are relevant in application of the good faith doctrine. In United States v. Davis, the Court found reliance on appellant precedent to justify the good faith exception applies to "an exceedingly small set of cases" and defense counsel will test Fourth Amendment precedents by arguing that the binding precedent relied upon is distinguishable. 564 U.S. 229, 247-49 (2011). It would not be possible to distinguish precedent without discussing factual distinctions.

Therefore, Mr. Gerace needed to discover additional critical facts before the basis to file his Motion to Suppress existed. As the Western District of New York clarified, "If a party could file a skeleton motion and later fill it in, the purpose of the time limitation would be defeated." Sztorc v. Puredential Insurance Company of America, 2008 U.S. Dis. LEXIS 15725 *2 (W.D.N.Y 2008). The Magistrate Judge appears to have desired Mr. Gerace to file such a skeleton motion with facts limited

to what he could investigate without the government's cooperation in a mere three months. If this view becomes the standard for good cause for criminal defendants whose rights are violated by the government, the Constitutional rights of U.S. citizens will be threatened.

C. <u>Mr. Gerace had many difficulties with Counsel that go beyond simple retention and amount to good cause.</u>

The Magistrate Judge rejects the difficulties Mr. Gerace experienced with counsel as good cause. (Doc. 330, 9). The Magistrate Judge asserts that the record belies the claim that Mr. Cohen was not substantially involved in this matter until August of 2021. (Doc. 330, 10). To support this accusation, the Magistrate Judge references an email informing the District Judge Mr. Cohen would be an additional defense counsel less than one month before the pretrial motion deadline and communications with the Government on a civil matter on Mr. Gerace's behalf. *See* <u>Id</u> at 10.

The Magistrate Judge finds retention of Attorney Cohen as counsel is insufficient to establish good cause for purposes of Rule 12(c)(3). <u>Id</u>. 0Without citing to solid Second Circuit precedence to support this claim, the Magistrate Judge relies on the Eight Circuit and our good friend Magistrate Judge Jeremiah McCarthy. See <u>Id</u>. The Eight Circuit precedent is inapplicable here since Mr. Gerace is filing his motion before the start of trial.

Magistrate Judge McCarthy cites two district cases out of Iowa and the Eighth Circuit for his assertion that retention of new counsel does not amount to good cause. Out of circuit precedent and one Magistrate Judge should not prevent this Court from finding that retention of new counsel can amount to good cause.

Further, Mr. Gerace's difficulties with counsel go beyond retention alone. Joel Daniels, Esq. was directed to file his withdrawal as counsel due to allegations from his ex-wife. (Doc. 316-1, 3). An associate attorney who was working on his case left. (Doc. 316-1, 4). Even if retention alone does not amount to good cause, these considerations in combination amount to good cause.

### III.   NO CASE LAW CITED BY THE MAGISTRATE JUDGE JUSTIFY THE DECISION TO DENY MR. GERACE THE OPPORTUNITY TO HAVE THE TRIAL COURT ADDRESS THE GOVERNMENT'S ILLEGAL CONDUCT

The Magistrate provides no Supreme Court precedent that asserts the proposition that a criminal defendant's Motion to Suppress can be denied a hearing if brought after a procedural deadline set by a Judge under 12(c)(1) of the Federal Rules of Criminal Procedure. Throughout his report, the Magistrate Judge cites twelve cases to support his decision in denying Mr. Gerace the right to have the Court consider the violations of his Fourth Amendment rights by the Government. See United States v. Simmons, 2020 U.S. Dist. LEXIS 202878; United States v. Mustafa, 753 Fed. Appx. 22 (2d Cir. 2018); United States v. Yousef 327 F.3d 56 (2d Cir. 2003); United States v. Sanders 2020 U.S. Dist. LEXIS 247087; United States v. Robinson 357 F.

Supp. 221 (E.D.N.Y. 2019); United States v. Navyr 221 F. Supp. 3d 454 (S.D.N.Y. 2016); United States v. Mulholland 702 Fed. Appx. 7 (2d Cir. 2017); United States v. Billings 2015 U.S. Dist. LEXIS 176160; United States v. Atuana 816 Fed. Appx. 592 (2d Cir. 2020); Indiviglio v. United States, 612 F.2d 624 (2d Cir. 1979); United States v. Trancheff, 633 F.3d 696 (8th Cir. 2011); United States v. Lewis 2018 U.S. Dis. LEXIS 111471.

The cases from the Second Circuit do not address a pretrial Motion to Suppress filed by a criminal defendant. Instead, in all the cited cases from the second circuit, the criminal defendant attempted to address evidence that he wanted to suppress after the commencement of trial. See United States v. Yousef, 327 F.3d 56 (2d Cir. 2003); United States v. Mustafa, 753 Fed. Appx. 22 (2d Cir. 2018); United States v. Atuana, 816 Fed. Appx. 592 (2d Cir. 2020); Indiviglio v. United States, 612 F.2d 624 (2d Cir. 1979); United States v. Mulholland, 702 Fed. Appx. 7 (2d Cir. 2017)(Addressing District Court's Decision in United States v. Nayyar). These cases properly apply the waiver of a criminal defendant's right to file Motions to Suppress post-trial and post-conviction. Mr. Gerace does not dispute that his Motion must be filed before the start of trial to avoid waiver of the issue under the Federal Rules of Criminal Procedure.

In United States. v. Trancheff, the Eighth Circuit found that a pretrial motion to suppress evidence could be found untimely when the criminal defendant

absconded for four years after an issuance of a pretrial motion deadline. 633 F.3d 696 (8th Cir. 2011). The Eight Circuit reviewed the District Court's determination for abuse of discretion and found that the Court reasonably relied on the fact the defendant caused the waiver by absconding from the district for over four years.

This case is not applicable to Mr. Gerace's case as he did not cause the delay in proceedings by absconding. Mr. Gerace actively participated in all Court proceedings since his indictment was issued. Further, Mr. Gerace filed his Motion to Suppress in a timely manner after he was aware of the basis for his claims of government misconduct and illegal actions. Therefore, Trancheff does not authorize a Court to deny hearing Mr. Gerace's Motion to Suppress.

The Southern District of New York case law does not offer any support to the Magistrate's conclusion. In United States v. Simmons, a criminal defendant moved to dismiss the indictment based on new Supreme Court case law. 2020 U.S. Dist. LEXIS 202878 (S.D.N.Y. 2020). The Court found that his Motion was untimely, and he couldn't demonstrate plain error regardless. This case offers no guidance to Mr. Gerace's situation as he has not been convicted of any charges and he filed his Motion to Suppress prior to trial.

The Western District of New York case law provides three opinions by the same Magistrate Judge, Jeremiah J. McCarthy, which stand for the proposition that judicial authority under 12(c)(1) can be used to shorten the deadline under which a

criminal defendant can file Motions to Suppress before trial. Mr. Gerace asserts that the opinion of one Magistrate Judge should offer little weight when balanced against the Supreme Court's guidance and deadlines set by the legislature as addressed above. Even if this Court believes that there are some situations in which a Motion to Suppress can be denied hearing due to timeliness before trial these cases do not support a denial in the case of Mr. Gerace.

In United States v. Lewis, the Court did not allow a criminal defendant to correct his motion to suppress before trial was commenced. 2018 U.S. Dis. LEXIS 111471. However, the Court denied his motion to suppress initially on grounds the criminal defendant did not make prima facie showing of his entitlement to suppression and his motion to suppress lacked an affidavit from defendant establishing proper standing. Id. Here, Mr. Gerace did not even have the benefit of the Court addressing the merits of his Motion to Suppress in any capacity. Furthermore, there were no procedural defects in his Motion to Suppress that would allow the Court to deny its consideration.

In United States v. Billings, the Appointed Magistrate found that a criminal defendant's pretrial motion seeking a variety of relief including suppression of evidence was denied due to failure to comply with a judge issued scheduling order. 2015 U.S. Dist. LEXIS 176160. However, the Court denied the defendant's motion without prejudice, thereby allowing a renewed motion demonstrating good cause.

_Id_. Here Mr. Gerace has provided numerous reasons that amount to good cause that were not given proper weight by Magistrate Judge Roemer.

In United States v. Sanders, a defendant filed a motion to suppress evidence seized in a traffic stop. 2021 U.S. Dist. LEXIS 4982 (W.D.N.Y). The Court concluded at oral argument that the criminal defendant had failed to establish his entitlement on a motion to suppress regarding the evidence seized from the traffic stop. Almost a year later, new counsel attempted to file a supplemental motion seeking to suppress the motion. The Appointed Magistrate found that Rule 12(c)(3) has been applied to efforts to supplement timely filed motions and retention of new counsel and the inadvertence of one's attorney are insufficient to establish good cause. This determination was objected to by the criminal defendant and brought before the District Judge. United States v. Sanders, 2021 U.S. Dist. LEXIS 4982 (W.D.N.Y). Upon consideration of the issue by the District Court, they did not reaffirm the Magistrate's denial of the criminal defendant's Motion to Suppress due to procedural untimeliness. See _Id_. Instead, the District Court considered the merits of the motion and found that the implied allegation that the criminal defendant did not violate the Vehicle & Traffic Law does not raise the required "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion to suppress necessary to warrant a hearing. Therefore, the Court had discretion to deny

a hearing where the criminal defendant fails to support the factual allegations of the motion with an affidavit from a witness with personal knowledge.

While these decisions show that at least one Magistrate Judge in the Western District of New York believes that judicial deadlines created under 12(c)(1) can override a criminal defendant's entitlement to file suppression motions up until trial, it does not support a wide reach of that opinion.The lack of case law addressing this particular issue suggests that most Courts understand the importance and necessity of addressing Motions to Suppress pretrial, and that necessity of the exclusion doctrine alone provides good cause and limits judicial discretion in denying a hearing on their motion.

Finally, the Eastern District of New York provides one case that supports the contention that a Judge can set a pretrial deadline that amounts to waiver of bringing Motions to Suppress. In United States v. Robinson, the New York Eastern District Court denied a criminal defendant's Motion to Suppress when he had initially raised the allegation in a suppression motion a year and a half previously which was denied due to failure to submit a supporting affidavit. In Robinson, defense counsel admitted that he possessed full knowledge of the basis for the making the motion when he made his decision not to pursuit it initially but chose not to present it based on his assessment of its likelihood of success. While this case does support the underlying premise that waiver can occur, the circumstances are not applicable to

Mr. Gerace. Mr. Gerace did not have the basis to bring his Motion to Suppress until well after the scheduling order deadline set by the Court. Additionally, Mr. Gerace argues that a criminal defendant's ability to file suppression motions will be greatly reduced if they cannot wait until they have discovered the necessary facts before bringing the motion. Such a standard would encourage Government malfeasance in delaying the receipt of information or obscuring it in vast discovery so that the motion deadline runs before the Court can consider the Government's illegal actions. This Court should determine that judicially created deadlines should not override Gerace's right to bring this Motion to Suppress.

Dated: January 3, 2023
      Amherst, New York

                                         */s/Steven M. Cohen, Esq.*
                                         Steven M. Cohen, Esq.
                                         *Attorney for Defendant Gerace*
                                         HoganWillig, PLLC
                                         2410 North Forest Road, Suite 301
                                         Amherst, New York 14068
                                         Tel: 716.932.6754 | Fax:
                                         716.932.6718
                                         scohen@hoganwillig.com