IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                                                        19-CR-227-JLS

PETER GERACE, JR.

            Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby files its response to defendant Peter Gerace, Jr.'s ("Gerace") objections to Magistrate Judge Romer's Report and Recommendation recommending that this Court deny his untimely motion to suppress. (Dkt. 341).

### PRELIMINARY STATEMENT

Defense counsel, Steven M. Cohen, has been involved in this matter on Gerace's behalf since at least July 8, 2020. At the latest, he should have been aware on April 5, 2021, that Gerace's cell phone was seized and searched pursuant to the border search doctrine—giving him three months before the Court's July 7, 2021, pretrial motions deadline to research the law and prepare the motion he now seeks to file.

Rather than file a motion to suppress the contents of his cell phone by the court's deadline, Gerace waited until November 2022—approximately fifteen months after the Court's deadline to file pretrial motions passed to move for leave to file his untimely motion. As discussed below, a party seeking to file a pretrial motion after the deadline set by the court must show good cause—that is, a justification for his untimeliness and prejudice. Gerace cannot do so here, and Judge Roemer properly recommended that this Court deny his motion.

In his objections, Gerace raises new issues with no support in relevant case law, asserts the same misleading grounds for his tardiness that he asserted before Judge Roemer, and utterly fails to justify his late filing. The Court should adopt the Report and Recommendation and deny Gerace's motion.

## PROCEDURAL AND FACTUAL BACKGROUND

On or about February 1, 2019, co-defendant Bongiovanni retired from the DEA while under federal investigation. As part of that federal investigation, the Department of Justice, Office of the Inspector General interviewed Bongiovanni on March 29, 2019. That interview included his relationship with Gerace. Approximately one month later, on April 27, 2019, Gerace was entering the United States from Jamaica when his phone was seized, searched, and returned to attorney Thomas J. Eoannou.

On October 31, 2019, a federal grand jury returned an Indictment charging Bongiovanni with, among other things, Conspiracy to Defraud the United States (Count 1), Conspiracy to Distribute Controlled Substances (Count 2), Bribery (Count 3), Obstruction of

Justice (Counts 4 through 9), and Making False Statements (Counts 10 and 11). *See* Dkt. 1. At the time, the Indictment referenced Gerace as unnamed and uncharged Co-conspirator 1 in Count 1 (Overt Acts 24, 25, 26, 27, 28, 46, 49, 51, 52, 56, 57), Count 2 (incorporating Count 1 by reference), Count 3 (incorporating Count 1 by reference), Count 5, Count 6, Count 7, Count 10, and Count 11. Notably, Count 1, Overt Act 49, specifically referenced Co-conspirator 1 and the phone number for the cell phone Gerace now seeks to suppress.

On December 12, 2019, just two months after the Indictment charging Bongiovanni and referencing Gerace as Co-conspirator 1, federal search warrants were executed at Gerace's business and residence. *See* Case No. 19-M-5303. Gerace was not present at either location.

On June 4, 2020, a federal grand jury returned a Superseding Indictment charging Bongiovanni and Michael Masecchia, who has since pled guilty. *See* Dkt. 46. Gerace remained an unnamed as unindicted Co-conspirator in the Superseding Indictment. The specific references to Co-conspirator 1 in both the Indictment and Superseding Indictment, coupled with the execution of federal search warrants at Gerace's residence and business, placed him and his counsel on notice that Gerace was under investigation.[1]

On July 8, 2020—a little over one month after the Superseding Indictment was returned and one year before the eventual deadline to file pretrial motions—defense counsel on this motion, Mr. Cohen (who claims here to have been unable to file pretrial motions on

---

[1] There was also a great deal of media reporting relating to this case.

time), wrote a letter to AUSA Joseph M. Tripi stating, in part, that he was "working with Joel Daniels, Esq. to attempt to recover evidence."

Over the ensuing six weeks, AUSA Tripi and Mr. Cohen exchanged correspondence regarding Gerace's consent to search devices seized during the execution of a search warrant at his business and the return of property seized during the execution of the search warrant.

On October 12, 2020, the defendant, through Mr. Cohen, filed a civil suit in New York State Supreme Court, Erie County, against two individuals that the defense believed are potential witnesses in this prosecution. *See* Erie County, Index No. 812394/2020. Litigation pertaining to this lawsuit followed in this Court. As a result, the state civil action is currently stayed/enjoined.

On February 16, 2021, the government responded to omnibus motions filed by Bongiovanni. *See* Dkt. 87. Critically, in that publicly filed document, the government advised that Gerace's cell phone had been seized and searched. *See* Dkt. 87 at 6.

Approximately one week later, on February 25, 2021, a federal grand jury returned a sealed Second Superseding Indictment charging Gerace in the instant case. *See* Dkt. 90. After the Court arraigned Gerace on the Second Superseding Indictment, the Court entered a Sixth Amended Scheduling Order applicable to each defendant. *See* Dkt. 97. Under the Sixth Amended Scheduling Order, Gerace's pretrial motions were due by July 7, 2021. *Id.* This deadline was extended to July 12, 2021, at Gerace and Bongiovanni's joint request.

4

Dkt. 142. Thus, Gerace had five months after he was Indicted to investigate and prepare pretrial motions.

On July 12, 2021, both Gerace and Bongiovanni filed pre-trial motions. *See* Dkts. 147-148. Ten days later, on July 22, 2021, the government and Gerace, appearing by Mr. Cohen, appeared before this Court for oral argument on the defendant's motion to vacate Judge Sinatra's order enjoining the New York State civil action referenced above. During that argument, the government stated, in part:

> On April 27, 2019, Mr. Gerace entered the country, the United States, from Jamaica. And upon entering into the United States, his cell phone was seized, searched, pursuant to border search authority, and was returned to him within a matter of [a] day or so—a couple of days, I believe.

In response, Mr. Cohen specifically acknowledged the border search of Gerace's cell phone, stating:

> […] that Mr. Gerace entered the United States and his cell phone was seized for a day, not a single word mentioned that anything improper or inappropriate or illegal was found on the phone.

On April 26, 2022, the parties argued pretrial motions. *See* Dkt. 278. During that appearance, the Court vigorously questioned the government regarding the border search of Bongiovanni's phone. After counsel for Gerace observed that questioning, attorney LaTona referenced the border search of Gerace's phone:

5

    But what I understand from Mr. Gerace is that in approximately at some point in 2019, he was abroad. He came back and his cell phone was seized. And other lawyers were involved a little bit at that point. And my understanding is what Mister --

    THE COURT: This was when, Mr. LaTona?

    MR. LATONA: Twenty-nineteen. This is a warrantless seizure of --

    THE COURT: Now, this is the first I've heard of this, right?

    MR. LATONA: No, I -- Judge, we have asked -- I understand. I'm not --

    MR. TRIPI: Hang on right there. They've had discovery of that since the minute they were indicted, all right? So, this is not new information. So, don't say that the defense -- Mr. Daniels had it, Mr. Cohen has it, and Mr. LaTona has it.

    MR. LATONA: Well, what we wanted was all of the information and, you know, whatever they had extracted. Then, here's the one thing --

    MR. TRIPI: They have all of that.

    MR. LATONA: Here's the one thing we don't know. Was that used in any way, shape, or manner to get the warrant in 2019? We don't know that, because we've never seen those applications. So, that, you know, that's an issue that we have.

    MR. TRIPI: If he's got a border search issue, he's never raised it. They've been provided the extraction two years ago roughly, information from the extraction, texts between Bongiovanni and Gerace, whole bunch of information from the extraction --

    THE COURT: Can you just tell me -- he looked at the border search?

    MR. TRIPI: Yeah. So, Mister -- within a short period of time from when Mr. Bongiovanni travelled, Mr. Gerace also travelled. He was also subject to a border search. Same thing --

    THE COURT: Where did he travel to?

> MR. TRIPI: He traveled -- the name of the country where he was escapes me. If I said the Dominican, I might be wrong. I might be conflating the two. It was somewhere in

the Caribbean.

THE COURT: And essentially, something very similar happened?

MR. TRIPI: Something very similar happened. His phone was seized, searched, returned to Mr. Eoannou within a couple days. His phone was given back to him, and law enforcement retained the extraction and did conduct an investigation.

They've had that information for about two years, so if they wanted to move to suppress it, they should have. I thought they were making a tactical decision to try to distance themselves from that phone. I have no idea. But they've had that stuff. I have a discovery binder. I can tell you exactly when, but it was a couple years --

7

> THE COURT: What about Title 3?
>
> MR. TRIPI: There were no Title 3 intercepts. And, in fact, the indictment here, there's an overt act that's a voicemail message. I don't remember the number of the overt act, I can look it up, but there's a voicemail message that's left to Bongiovanni from Gerace. That was from Gerace's phone. That's how we got it. So, that information is essentially on the face of the indictment.
>
> THE COURT: And the defendants have that?
>
> MR. TRIPI: Yes. Yes.
>
> MR. LATONA: What we don't have is whether or not

> anything -- any of that material was used to get the search warrants.
>
> MR. TRIPI: That's irrelevant.
>
> MR. LATONA: It's not irrelevant.
>
> THE COURT: Yeah, but -- yeah, well, I guess, why would it be relevant?

> MR. LATONA: Well, it could be relevant in terms of any kind of potential taint. I mean, if we don't know --
>
> THE COURT: Taint from what?
>
> MR. LATONA: From improper seizure of --
>
> THE COURT: Yeah, but you didn't move to suppress that. You've had the information. You didn't move to suppress that.
>
> MR. LATONA: That's because we don't know whether or not they're in the warrants.
>
> THE COURT: No. I think that boat has sailed, Mr. LaTona.
>
> MR. LATONA: Okay. Judge, the only other thing is Bill of Particulars. We'll rely on the pleadings.

8

*See* Dkt. 281 at page 83, line 10 through page 86, line 17.

Following oral argument, and notwithstanding sweeping proclamations about having reviewed hundreds of thousands of pages of discovery purporting to show no criminality (*see* Dkt. 239-1, page 4 ¶ 16 [Mr. Cohen claiming to have reviewed the discovery that was provided and concluding that "the government has overstated the strength of their case"], and page 9, ¶¶ 48-49 [minimizing Gerace's criminal conduct after "a thorough review of the discovery materials" at "great expense" to Gerace]; Dkt. 247, page 10, lines 21-25 [Mr. Cohen claiming to have reviewed hundreds of thousands of documents]), Gerace's lawyers began to informally feign lack of awareness of the border search of Gerace's phone to the government. The government responded, consistent with other statements on the record, that the discovery had been provided years earlier, and the government prepared a document summarizing disclosures that had been made. In particular, the government indicated that the information was disclosed on May 22, 2020, and again on April 5, 2021. Excerpts of the disclosures follow:

May 22, 2020, Discovery Index:

| GOV-00017597 | GOV-00017597 | PG Voicemail to JB |
|---|---|---|

| CELLULAR TELEPHONE EXTRACTION DATA | |
|---|---|
| HSI Cell Phone Extraction_P Gerace | |

April 5, 2021, Discovery Index:

| GOV-00146916 | GOV-00146953 | Texts between Gerace and Bongiovanni |
|---|---|---|
| GOV-00148704 | GOV-00148706 | P GERACE Phone Border Search report and chain |

Non-Bates Numbered Discovery Provided to All Defendants

Gerace- Border Cell Search

After the government emailed the document summarizing this information, Mr. Cohen responded via email "Thank you Joe[,]" on June 29, 2022.

In sum, the government produced: (1) the entire cell phone extraction twice; (2) isolated text messages between Bongiovanni and Gerace; (3) an isolated voicemail message between Bongiovanni and Gerace; (4) a Report of Investigation ("ROI") authored by an HSI Special Agent documenting the border search of the phone; and (5) chain of custody documents. The ROI, which was disclosed along with the cell phone extraction on April 5, 2021, provides:



Despite the defendant's claims to the contrary, the defense has known of the border search since April 27, 2019, and all information necessary to file a timely motion was provided to the defendant no later than April 5, 2021.

## STANDARD OF REVIEW

The Court must conduct a *de novo* review of Judge Roemer's recommendation to deny the defendant's motion to suppress. 28 U.S.C. § 636(b)(1)(C).

## ARGUMENT

The Court should adopt Magistrate Judge Roemer's Report and Recommendation and deny Gerace leave to file his untimely motion to suppress. As discussed in the government's response to the motion (Dkt. 320),[2] Gerace was well-aware of the facts and law relevant to his proposed motion by April 5, 2021, at the latest. Rather than move to suppress the contents of his cell phone in a timely manner, Gerace made what appears to be a strategic decision and did not challenge the search of his cell phone—one that he appears to have second-guessed. However, Gerace has not established—and cannot establish—good cause to file his motion after the deadline set by the Court. Judge Roemer correctly recommended that this Court deny the motion as untimely.

---

[2] The government incorporates all arguments made in its response to Gerace's motion here. *See* Dkt. 320.

I.  **GERACE'S DUE PROCESS CLAIMS ARE RAISED FOR THE FIRST TIME IN HIS OBJECTIONS, AND, IN ANY EVENT, ARE BELIED BY SECOND CIRCUIT PRECEDENT.**

Although the plain language of Rule 12(c)(1) allows the Court to set a deadline for pretrial motions and provides that the deadline is the start of trial "*if the court does not set one,*" Gerace argues here that setting a pretrial motion deadline before the start of trial violates due process. Dkt. 341 at 1-5. Initially, the Court should reject this argument because it was not presented to Judge Roemer for consideration and is instead raised for the first time in Gerace's objections. Additionally, however, Gerace's argument is completely unsupported, and the plain language of Rule 12 as well as Second Circuit precedent establish that a Court may deny an untimely motion to suppress made after the Rule 12 deadline, even if made before trial.

First, the Court should reject this argument because Gerace raises it for the first time in his objections to Judge Roemer's Report and Recommendation. Indeed, Gerace did not argue that he has a due process right to bring an untimely pretrial motion either in his moving papers or his reply papers. *See* Dkts. 316 and 329. "It is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Sun*, 19-CR-00135, 2022 WL 1744170, *2 (W.D.N.Y. May 31, 2022) (citations and internal quotation marks omitted); *Tarafa v. Artus*, No. 10 Civ. 3870, 2013 WL 3789089, *2 (S.D.N.Y. July 13, 2013) ("new arguments and factual assertions cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all"); *see also Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7896, 1994 WL 445638, *4, n.2 (S.D.N.Y. August 17, 1994) (rejecting new arguments not made to Magistrate Judge because "[i]f the

Court were to consider formally these untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments"). Accordingly, the Court should not consider Gerace's new arguments.

Regardless, if the Court were to consider this argument, it is meritless. Gerace does not cite a single case—at any level—in which a court has held that denying an untimely motion to suppress violates due process. This is not surprising. First, the plain language of Rule 12 contradicts Gerace's position. Rule 12(c)(1) provides that "[t]he court may . . . set a deadline for the parties to make pretrial motions . . . . *If the court does not set one, the deadline is the start of the trial.*"   Fed. R. Crim. P. 12(c)(1) (emphasis added).

Additionally, courts around the country routinely deny as untimely motions to suppress that are made before trial, but after the Rule 12 deadline. *See, e.g., United States v. Kopp*, 562 F.3d 141, 143 (2d Cir. 2009) ("A party waives its ability to move to suppress evidence if it fails to do so *by the pre-trial deadline set by the court*, except that the district court may grant relief from that waiver for good cause") (internal quotation marks omitted) (emphasis added); *United States v. Howard*, 998 F.2d 42, 52 (2d Cir. 1993) (same); *see also United States v. Suggs*, 703 Fed. Appx. 425, 428 (7th Cir. 2017) (denying as untimely motion to suppress evidence filed after Rule 12 deadline but before trial); *United States v. Sweat*, 573 Fed. Appx. 292, 295 (4th Cir. 2014) (denying as untimely motion to suppress evidence made on the eve of trial and after Rule 12 deadline); *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) (denying as untimely motion to suppress evidence made after withdrawal of guilty plea but before trial).

As such, even if Gerace's arguments were properly before this Court—which they are not—his position is contradicted by precedent from the Second, Fourth, Sixth, and Seventh Circuits.[3]  Gerace does not have a due process right to bring an untimely motion, and the Court should reject this argument.

## II. THE DETERRENT EFFECT OF SUPPRESSING EVIDENCE DOES NOT CONSTITUTE GOOD CAUSE.

Gerace next argues that the general deterrent effect of suppressing evidence on his cell phone constitutes good cause for his untimely motion. Dkt. 341 at 6-11. He appears to argue generally that the balance of equities weighs in favor of allowing his untimely motion because if he is successful the government will be dissuaded from executing border searches in the future, whereas the only cost to allowing his motion is a potential delay in trial.  *Id.*

As an initial matter, this argument, too, is raised for the first time in Gerace's objections.  Nowhere in his motion or his reply before Judge Roemer did Gerace argue that the deterrent effect served by a successful motion to suppress constitutes good cause for his 15-month delay in filing pretrial motions.  Thus, the Court should reject this argument.  *Sun*, 2022 WL 1744170, *2; *Tarafa*, 2013 WL 3789089, *2; *Abu-Nassar*, 1994 WL 445638, *4, n.2.

Additionally, however, Gerace has not cited a single case in which a court has held that the potential deterrent effect of suppressing evidence is good cause for an untimely motion.[4]  Indeed, good cause is not merely a reason to allow the untimely filing, as Gerace

---

[3] The government's citations do not reflect an exhaustive survey of Circuit precedent.
[4] Because Gerace's motion is plainly untimely, and should be denied as untimely, the

14

appears to believe. Instead, "good cause" is shown where the party demonstrates the justifiable cause for the failure to raise the claim on time, together with prejudice from the error. *Davis v. United States*, 411 U.S. 233, 242 (1973). Here, the potential deterrent effect of succeeding on his motion has no bearing on whether Gerace has justified his late filing. Should the Court consider this argument, it should reject it outright.

### III. JUDGE ROEMER PROPERLY FOUND THAT GERACE DID NOT ESTABLISH GOOD CAUSE FOR HIS UNTIMELY MOTION.

Turning to the potential justifications Gerace offers for his untimely filing, Judge Roemer properly found that they did not establish good cause, and Gerace has not established otherwise in his objections to the Report and Recommendation. Instead, Gerace appears to restate his same, unavailing arguments that his attorney did not have adequate time to prepare the motion to suppress by the July 12, 2021, deadline.

As noted above, good cause requires a movant to show both a good reason for the untimely filing, and prejudice from the error. *Davis*, 411 U.S. at 242. In this District, the movant must generally "establish that the basis for the motion was not (and could not have been) known before the expiration of the motion deadline." *United States v. Sanders*, 19-CR-00125, 2020 WL 8513483, *3 (W.D.N.Y. 2020); *United States v. Robinson*, 357 F. Supp. 3d 221, 224 (E.D.N.Y. 2019) ("the analysis of whether a suppression claim has been preserved

---

government will not address the merits of the proposed motion. Nonetheless, the government notes that there is no deterrent effect to be had where, as here, there is no government misconduct to dissuade. As discussed in its prior filings, warrantless border searches are constitutionally sound, and the government did not violate the Fourth Amendment by seizing and searching Gerace's cell phone here.

15

focuses on whether the particular ground for suppression pressed later could have been, but was not, advanced prior to the expiration of the Court-mandated guidelines").

Here, Judge Roemer examined and correctly rejected each of Gerace's proffered justifications for his untimely motion. Dkt. 330 at 7-13. In response, Gerace first argues that Judge Roemer misread or misapplied *Sanders* and *Robinson*. He claims that the *Sanders* court misread *Robinson* as "standing for the proposition good cause requires knowledge of the basis before the deadline," and that Judge Roemer therefore should not have relied on *Sanders* for that proposition. Dkt. 341 at 13. However, *Sanders* and *Robinson* stand for exactly the opposite of what Gerace contends. Judge Roemer correctly cited those cases for the proposition that, in the Western District of New York, courts generally require a defendant to show that he did not know—and could not have known—the basis for the motion before the deadline to establish good cause.

Because the law requires Gerace to establish that he did not know and could not have known the basis for his motion before the deadline, he next argues that Judge Roemer incorrectly rejected his proffered justifications for his untimely motion. Dkt. 341 at 14-21. Specifically, Gerace claims that the three months between the completion of discovery and the Rule 12 pretrial motion deadline was insufficient to discover the basis for this motion due to the volume of discovery and the need to develop additional facts. *Id.*

However, as Judge Roemer properly found, Gerace possessed all the facts necessary to make his untimely motion well before the deadline set by the court. Dkt 330 at 7-8. Gerace

16

was provided with all discovery by April 5, 2021, at the latest. With discovery, the government produced the full extraction of Gerace's cell phone, relevant excerpted portions of Gerace's cell phone contents, ROI's establishing that a border search had been conducted, and indexes to assist the defense in its review of the materials. Prior to the discovery deadline, Gerace knew that his cell phone had been seized and searched because he was present for the seizure, and the government had mentioned the border search in numerous court appearances, as described above. Lastly, the face of the Indictment incorporates information obtained through the border search, such as the voicemail that Gerace left for Bongiovanni asking if law enforcement could track a cell phone. Thus, by April 5, 2021, Gerace was aware that: (1) his cell phone had been seized and searched, (2) the search was conducted pursuant to the border search exception and without a warrant, (3) the search involved a full forensic extraction of his cell phone, and (4) the government intended to use evidence obtained from that search at trial. Therefore, as Judge Roemer correctly found, Gerace possessed all information necessary to bring this motion well before the pretrial motion deadline.

Gerace contends that this knowledge was insufficient. Instead, in his view, he could not bring this motion by July 12, 2021, because he had not reviewed the entirety of the discovery provided, he did not yet know that other border searches had been conducted, and he had not yet ascertained how the border search was conducted. Dkt. 341 at 14-18. But again, Gerace has not explained how this information prevented him from bringing this motion by the Rule 12 deadline.

First, defense counsel did not need to review every single document produced by the government to know the facts critical to this motion. In fact, now, having ostensibly reviewed every document produced by the government, Gerace has still not identified any that would affect this motion. This, in addition to the fact that "[c]ourts have held that counsel's failure to conduct proper pretrial investigation does not establish good cause for a defendant's failure to raise an argument covered by Rule 12(b)(3) in a timely fashion." *United States v. Duncan,* 18-CR-289, 2019 WL 5824205, *7 (S.D.N.Y. November 7, 2019) (collecting cases). Second, Gerace has not established how the border search of third parties' cell phones affects his motion, nor has he even tried to establish standing to contest those searches. Lastly, Gerace's argument that he could not ascertain how the searches at issue were conducted until after the evidentiary hearing on Bongiovanni's motion is belied by the record. The government not only turned over a full extraction of Gerace's cell phone (strongly implying that a full extraction was obtained), but also an ROI from HSI Special Agent Curtis Ryan detailing that search.

Lastly, Gerace's claim regarding lack of continuity of counsel also does not constitute good cause. Gerace claims that Judge Roemer failed to consider that his original attorney was disqualified, and that Mr. Cohen's associate left his firm. He then claims that Judge Roemer inappropriately relied on out of Circuit precedent for the proposition that retention of new counsel does not constitute good cause. Dkt. 341 at 21-22.

First, as a factual matter, Gerace does not explain why the withdrawal of Mr. Daniels and Mr. Cohen's associate prevented him from filing his motion by the deadline. As the

18

government established, Mr. Cohen was involved in Gerace's defense at least as early as July 8, 2020—one year before pretrial motions were due—in fact, seven months before Gerace was formally Indicted. As Judge Roemer correctly emphasized, at any point in time, Gerace was represented by two, sometimes three, experienced defense attorneys (one of whom appears to have been retained specifically to assist in preparing pretrial motions). Dkt. 330 at 10. Thus, Gerace cannot rely on his difficulties in representation to establish good cause.

Lastly, although Gerace argues that Judge Roemer should not have relied on out-of-Circuit precedent to find that retention of new counsel does not constitute good cause, at least one District Judge in this District has found that it does not as well. *See, e.g., United States v. Sanders*, 19-CR-125-A, 2021 WL 81654 (W.D.N.Y. 2021) (Arcara, J., adopting Report and Recommendation in which Magistrate found that retention of new counsel was not good cause to file untimely motion); *United States v. Reid*, 12-CR-200-A, 2014 WL 1338811 (W.D.N.Y. 2014) (same). Thus, Magistrate Judge Roemer was correct in his analysis and conclusion that retention of new counsel is not good cause to bring an untimely motion. That conclusion is supported by the authorities cited by Judge Roemer, as well as other cases in the Western District of New York. The Court should deny the motion as untimely.

In sum, despite his "kitchen sink" approach here, Gerace cannot escape the core facts: at least three months before the pretrial motion deadline, Gerace knew or should have known the basis for his untimely motion yet did not bring it. If three months was insufficient to prepare motions, he did not move for an adjournment of the deadline. Instead, Gerace made a strategic decision not to challenge the search of his cell phone (presumably because it was a

valid border search), and now, having seen how Bongiovanni's similar motion played out, has second-guessed his strategy and wants a second bite at the apple.

## CONCLUSION

For the foregoing reasons, the Court should adopt Judge Roemer's Report and Recommendation, and deny Gerace's motion for leave to file an untimely motion.

DATED:   Buffalo, New York, January 17, 2023.

|  |  |
|---|---|
| COREY R. AMUNDSON<br>Chief | TRINI E. ROSS<br>United States Attorney |

BY:   s/JORDAN DICKSON
       Trial Attorney
       Public Integrity Section
       U.S. Department of Justice
       Criminal Division
       1301 New York Ave. NW, Suite 1000
       Washington, D.C. 20530
       202-597-0508
       Jordan.Dickson@usdoj.gov

BY:   s/JOSEPH M. TRIPI
       Assistant United States Attorney
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       716/843/5839
       Joseph.Tripi@usdoj.gov

BY:   s/DAVID J. RUDROFF
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York   14202
       716/843-5806
       David.Rudroff@usdoj.gov

BY:   s/NICHOLAS T. COOPER
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York   14202
       716/843-5830
       Nicholas.Cooper@usdoj.gov