IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

            v.                                    19-CR-227-JLS

PETER GERACE JR.,

                Defendant.
_____

## OPPOSITION TO DEFENDANT GERACE'S MOTION
## TO MODIFY PROTECTIVE ORDER

The defendant, PETER GERACE JR., through his attorney, Eric M. Soehnlein, Esq., filed a motion to modify the protective order governing discovery in this case. ECF No. 394. The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby files the government's opposition to the defendant's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2021, the grand jury returned the Second Superseding Indictment against the defendant and his co-defendant, Joseph Bongiovanni. The defendant is charged with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 2), bribing a public official, in violation of 18 U.S.C. § 201(b)(1)(A) and (b)(1)(C) (Count 6), maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count 7), conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846

(Count 8), and conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c) (Count 9).  Second Superseding Indictment, ECF No. 89.

The defendant is charged alongside his co-conspirator and co-defendant Joseph Bongiovanni in Counts 2 and 8.  *See id.*  Co-defendant Bongiovanni is also charged with thirteen additional counts, all of which relate to conduct he undertook as a Drug Enforcement Administration ("DEA") Special Agent.

The Second Superseding Indictment alleges in detail that the defendant and co-defendant Bongiovanni orchestrated a years-long scheme to defraud the United States DEA. *See id.*  The indictment alleges that the defendants did this by the defendant paying co-defendant Bongiovanni bribes in exchange for co-defendant Bongiovanni violating his official and lawful duties as a DEA Special Agent to protect and benefit the defendant and others. *See id*.  As the defendant continued to corruptly pay off co-defendant Bongiovanni, the defendant allegedly conspired to use his place of business to distribute illegal narcotics and conspired to engage in the sex trafficking of women.  *See id.*

On March 24, 2023, the grand jury returned an indictment charging the defendant with, among other things, three counts of witness tampering.  *See* 23-cr-37, ECF No. 1.  The allegations in that indictment stem from the defendant's participation in tampering with someone he believed to be a witness in the federal investigation that led to the charges against him in this case.  *See id*.  This Court detained the defendant pending trial in that matter.  *See id*. at ECF No. 8.  Pending before this Court is a motion to join the indictment in 23-cr-37 with the indictment in this case.  *See* ECF. No. 411.

Trial in this matter is currently scheduled to begin on June 21, 2023. To facilitate prompt resolution of this matter, the government agreed to provide early disclosure of 3500 material. To facilitate that early disclosure, the government asked that the Court enter a protective order to ensure the safety of witnesses. ECF Nos. 331, 332. The Court entered a protective order that, in part, prohibited defense counsel from disclosing 3500 material to the defendants prior to May 10, 2023, forty-two days before trial is set to begin. ECF No. 347.

The defendant now, as he has tried to do several times before, raises the specter of supposed constitutional and statutory violations resulting from the grand jury hearing testimony from K.N. and from the government conducting court-authorized searches of the defendant's home and business. *See* ECF No. 394. The defendant claims his counsel needs immediate input from the defendant in order to bring these supposed violations to the Court's attention. *See id*. The defendant raises the prospect of these speculative violations in an effort to convince the Court to modify the protective order and allow defense counsel to provide early disclosure of certain 3500 material to the defendant. *See id*. The Court should deny the defendant's motion because (1) the defendant's indictment for witness tampering bolsters the Court's earlier finding of good cause in limiting the defendant's personal access to the 3500 material until closer to trial, and (2) the defendant has failed to establish good cause to modify the protective order as the current protective order does not foreclose the defendant from raising any nonfrivolous claims in front of this Court.

## ARGUMENT

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate

relief." Fed. R. Crim. P. 16(d)(1); *see also In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir.2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir.1991) (noting that because the language of Rule 16(d)(1) "is . . . permissive," the district court may "limit or otherwise regulate discovery had pursuant to the Rule"). Rule 16's "good cause" standard for protective orders "requires courts to balance several interests, including whether dissemination of the discovery material inflicts 'hazard to others,' and whether 'the imposition of the protective order would prejudice the defendant.'" *United States v. Castricone*, No. 20-cr-133-LJV-MJR, 2021 WL 841405, at *1–*2 (W.D.N.Y. Mar. 5, 2021) (quotation marks omitted).

## I.   <u>Good Cause to Prohibit Early Disclosure to the Defendant Still Exists.</u>

The Court should reject the defendant's request for modification. This Court has already, by issuing the protective order in this case, made a finding that good cause existed to prohibit disclosure of 3500 material to the defendant before May 10, 2023. *See* ECF No. 347. This finding of good cause has only been bolstered by the defendant's recent indictment on witness tampering charges. Good cause for protective orders has been found when there are legitimate concerns for witness safety. *See United States v. Garcia*, 406 F. Supp. 2d 304, 307 (S.D.N.Y.2005) ("Where there is a legitimate concern for witness safety, a protective order of the sort requested by the Government will facilitate the valuable practice of early and expansive disclosure of 3500 material while reducing the danger of obstruction of justice."). The new indictment charges the defendant with three counts of tampering with a witness who the defendant believed was cooperating with federal investigators in an investigation into the defendant. *See* 23-cr-37, ECF No. 1. By virtue of the indictment being handed up, a grand

jury comprised of the defendant's peers found probable cause that the defendant tampered with the witness by using, or aiding others in using, Facebook to intimidate, threaten, and harass the witness.  *See Sciortino v. Zampano*, 385 F.2d 132, 133 (2d Cir. 1967).  Such a finding by the grand jury only makes clearer the risk to witness safety presented by early disclosure of 3500 material to the defendant, himself.[1]

The specific early disclosures requested by the defendant present serious risks to witness safety.  First, the disclosure of specific statements made by K.N. about the defendant will likely draw significant ire from the defendant directed at K.N.  The defendant has already, in an apparent effort to either intimidate and retaliate against K.N., or to get early disclosure of K.N.'s anticipated testimony, taken the extraordinary step of suing her in state court.  *See* ECF Nos. 114, 115, 116, 117.  Defense counsel have repeatedly made public statements about K.N. to attempt to discredit her publicly before trial begins.  *See, e.g.*, <https://www.wgrz.com/article/news/investigations/the-judge-the-strip-club-owner-and-the-ex-wife/71-c5c6b9d3-87ba-43ee-9adf-d3c23d176e75> ("Gerace's legal team provided us a warning about talking to [K.N.]: 'It's unfortunate that anyone would believe a word [K.N.] says. We know her history. Telling tales is nothing new to her.'").  It appears that the defendant and his defense team believe K.N. is a critical witness in the government's case.  Armed with specific statements made by K.N. and ample time to formulate a plan to prevent her from testifying, it is certainly fathomable that the defendant would engage in additional

---

[1] To the extent the Court requires additional information regarding the government's concerns regarding witness safety, the government respectfully requests the Court refer to the government's prior ex parte affidavit in support of its motion for a protective order.  *See* ECF No. 332.

witness tampering—through proxies despite his pre-trial detention-- and continue his pursuit of attempting to dissuade K.N. from testifying.

Early disclosure of the search warrant affidavit presents the same concerns to the government.  The search warrant affidavit identifies individuals who provided information that tends to inculpate the defendant.  Given the defendant's indictment for witness tampering and the seriousness of the charges he faces, the government is concerned that the more time the defendant has with the statements made by these witnesses, the more likely the statements and witness identities will be disseminated to third parties, thereby putting those witnesses in danger.  Simply put, the government does not trust that the defendant will comply with the terms and conditions of the Protective Order, and the defendant's history of hurting people, committing felonies, and lying to probation, coupled with his access to powerful and corrupt individuals, and his contacts in the criminal underworld should persuade the Court to reject the defendant's arguments.  The defendant has a team of defense lawyers; the government has produced volumes of organized and searchable discovery to the defense since the defendant was charged; and, as of this writing, the government has produced 3500 material for ninety-eight [98] potential trial witnesses, and the parties are still almost 3 months away from trial.[2]

As such, good cause still exists to maintain the current protective order.  The Court should deny the defendant's motion.

---

[2] Now, only after obtaining voluminous 3500 material and after the government negotiated the Protective Order and agreed to produce material early in good faith, the defense rehashes old and tired arguments as a tactical ploy to modify the Protective Order.  The Court should see this defense motion for precisely what it is and reject it.

## II.   **The Defendant Fails to Establish Good Cause for Modification.**

The defendant's requested modification should also be denied because the defendant has failed to establish that there is good cause for such a modification.  "The Second Circuit has not directly addressed the meaning of 'good cause' in the context of modification of a protective order in a criminal case." *United States v. Evans*, No. 17 Cr. 684, 2021 WL 1535054, at *1 (S.D.N.Y. Apr. 18, 2021).  But courts within the Second Circuit "have generally applied the same standard that exists in civil cases." *Id.* (citing *United States v. Maxwell*, No. 20 Cr. 330, 2020 WL 5237334, at *1 n.2 (S.D.N.Y. Sept. 2, 2020) (collecting cases)).  In civil cases, there is a "strong presumption" against modifying a protective order if the parties to the protective order reasonably relied on it.  *United States v. Calderon*, No. 15 Cr. 25, 2017 WL 6453344, at *3 (D. Conn. Dec. 1, 2017) (citing *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001)).  "That presumption can be overcome only if there is a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *United States v. Ngono*, No. 16 CR. 367 (PAC), 2021 WL 2850626, at *3 (S.D.N.Y. July 8, 2021) (quotation marks and citations omitted).

Regardless of whether the presumption applies[3], the defendant has failed to establish that there is good cause to modify the protective order in the manner he requests.  The

---

[3] To the extent the Court finds it necessary to analyze whether the presumption against modification applies, the government asserts that the presumption against modification is applicable in this case.  "Courts consider several factors in determining whether a protective order reasonably invited reliance: (1) the order's scope; (2) the order's express language; (3) the level of inquiry the court gave prior to granting the order; (4) the nature of the reliance; and (5) the type of material that the party seeking modification is attempting to access." *Ngono*, 2021 WL 2850626, at *2 (quotation marks and citations omitted).  As to factors one, two, and three, the order is narrowly tailored to protect witnesses and unwarranted dissemination of information.  The order entered in this case is not the standard protective order entered into in most cases in this district.  It is specific and tailored to the particular

defendant seemingly asserts that good cause exists for him to immediately personally review K.N.'s 3500 material and the search warrant affidavit to help his counsel determine whether statements made by K.N. or other witnesses were false.  *See* ECF No. 394.  The defendant ostensibly seeks to rehash a motion to dismiss the indictment he has already put before this Court—which was rejected—based on alleged false statements made by K.N. before the grand jury and motions to challenge the propriety of the searches of his home and business.  *See, e.g.*, ECF Nos. 147, 203, 296.  The defendant's stated needs for modification lack merit for at least two reasons.

First, there is little to no legal merit in further motions to dismiss based on alleged inaccurate statements to the grand jury or motions to suppress based on alleged inaccurate statements included in a search warrant. As the government has briefed previously, absent a showing of prosecutorial misconduct before the grand jury, an allegation of false statements by a witness before the grand jury is not a basis for a court to dismiss an indictment.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 260–61 (1988) ("Because the record does not reveal any prosecutorial misconduct with respect to these [inaccurate summaries], they provide no ground for dismissing the indictment . . . Although the Government may have had doubts about the accuracy of certain aspects of the summaries, this is quite different from having knowledge of falsity.").  Thus, even if the defendant were able to provide his counsel

---

circumstances of this case. As to factor four, the government has relied on the language of the order in determining when to disclose the 3500 material.  As to the final factor, as the government argues below, the information the defendant is seeking would not materially change his ability to mount a defense. The current order permits the defendant to review the 3500 material in thirty-seven days.  The factors outlined above weigh in favor of the presumption against modification.

with information that contradicted something K.N. said to the grand jury, the defendant would still have to establish prosecutorial misconduct in order for a motion to dismiss to be cognizable.  He cannot do so.  Because there was no prosecutorial misconduct.

Additionally, the "defendant is permitted to challenge the veracity of a search warrant in limited circumstances."  *United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).  One such circumstance occurs when the defendant can establish that erroneous information was included in the warrant affidavit, but only when the defendant can establish, "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."  *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (emphasis added).  Thus, even if the defendant's review of the warrant affidavit allowed him to point out an inaccurate statement made by a witness to his counsel, the defendant would still have to establish that the warrant affiant, not any of the witnesses who provided information, engaged in providing the court with deliberate falsehoods or otherwise showed a reckless regard for the truth.  He cannot do so.  Because the affiant did not engage in providing the issuing court with deliberate falsehoods or show a reckless disregard for the truth, and the Court has already rejected similar arguments seeking to controvert the search warrants in this case.

Second, the defendant's stated purposes in personally reviewing the 3500 material earlier than currently permitted ignores that defense counsel can endeavor to achieve the stated purposes without the defendant's present involvement.  If defense counsel seeks to establish that K.N. made false statements in front of the grand jury, defense counsel or their

investigators can attempt to contact K.N.'s counsel and conduct an interview.  Alternatively, defense counsel could interview other witnesses or review documents to try and prove that K.N. made false statements.  Indeed, one of the defendant's attorneys has already shown an apparent proclivity for investigating allegations of falsehoods by K.N., when he filed a "verified complaint" and sued K.N. civilly in state court for libel, abuse of process, and intentional infliction of emotional distress based on conduct allegedly occurring several years ago.  Of course, as the Supreme Court has described, cross-examination is "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).  And nothing about disclosure of 3500 material to the defendant, himself, on May 10, 2023, will prevent the defendant and his team from thoroughly cross-examining K.N. at trial.

Similarly, if defense counsel wants to establish that witnesses who provided information used in the search warrant provided the affiant with false statements, defense counsel can attempt to interview those witnesses, review documents, or conduct other investigation to do what they contend they need to do.  It is also worth noting that nothing in the protective order prevents defense counsel from asking the defendant what he remembers or knows about a particular topic.  For example, there is no person better equipped to tell defense counsel about what happened inside of Pharaoh's Gentlemen's Club in the defendant's presence than the defendant, himself.  Such a conversation does not require counsel to confront the defendant with specific statements made by specific witnesses.  And to the extent it does, such conversations can be had on May 10, 2023.

The defendant has failed to establish good cause for his requested modification to the protective order.  The defendant's motion should be denied.

## CONCLUSION

The defendant's motion to modify the Protective Oder (*see* ECF No. 347) should be denied.


COREY R. AMUNDSON                    TRINI E. ROSS
U.S. Department of Justice           United States Attorney
Chief, Public Integrity Section


BY:   *s/ Jordan Dickson*            BY:   *s/ Joseph M. Tripi*
      JORDAN DICKSON                        JOSEPH M. TRIPI
      Trial Attorney                        Assistant United States Attorney
      Public Integrity Section              United States Attorney's Office
      U.S. Department of Justice            Western District of New York
      Criminal Division                     138 Delaware Avenue
      1301 New York Ave. NW, Ste. 1000      Buffalo, New York 14202
      Washington, D.C. 20530                716-843-5839
      202-597-0508                          joseph.tripi@usdoj.gov
      jordan.dickson@usdoj.gov


BY:   *s/ Nicholas T. Cooper*        BY:   *s/ David J. Rudroff*
      NICHOLAS T. COOPER                    DAVID J. RUDROFF
      Assistant United States Attorney      Assistant United States Attorney
      United States Attorney's Office       United States Attorney's Office
      Western District of New York          Western District of New York
      138 Delaware Avenue                   138 Delaware Avenue
      Buffalo, New York 14202               Buffalo, New York 14202
      716-843-5830                          716-843-5806
      nicholas.cooper@usdoj.gov             david.rudroff@usdoj.gov