IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                             19-CR-227-JLS
                                                                            23-CR-037-JLS

JOSEPH BONGIOVANNI, and
PETER GERACE JR.,

                        Defendants.

---

## GOVERNMENT'S CONSOLIDATED REPLY TO DEFENDANTS' RESPONSES IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR JOINDER OF INDICTMENTS

**THE UNITED STATES OF AMERICA**, through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby files this consolidated reply to the defendants' responses in opposition to joinder of the Second Superseding Indictment in Case No. 19-CR-227-JLS with the Indictment in Case No. 23-CR-037-JLS.

## STATEMENT OF FACTS

Peter Gerace Jr. ("Gerace") is currently charged by Second Superseding Indictment, Case No. 19-CR-227, with, among other things, bribing his co-defendant/former DEA Special Agent Joseph Bongiovanni ("Bongiovanni"). As alleged in Case No. 19-CR-227, Gerace bribed Bongiovanni to protect Gerace and Pharaohs Gentlemen's Club (PGC). Bongiovanni's protection helped enable the drug and sex trafficking activities occurring at Gerace's strip club to continue unabated by federal authorities. Accordingly, in addition to

conspiracy to defraud the United States based upon bribes he paid to Bongiovanni, Gerace is charged with conspiracy to commit sex trafficking through force fraud and coercion, narcotics conspiracy, and maintaining PGC as a drug-involved premises. Similarly, Bongiovanni is charged with conspiracy to defraud the United States, bribe receiving, narcotics conspiracy, obstruction of justice, and false statements.

The initial indictment in Case No. 19-CR-227 was returned on October 31, 2019, and it was unsealed on November 5, 2019, which was the day Bongiovanni was arrested. Upon unsealing, the case received a great deal of media attention. Gerace was referenced as Co-Conspirator 1 in the initial indictment, which contained detailed allegations that made it obvious that Gerace and PGC were under federal investigation.

Months earlier, on or about April 9, 2019, the victim in Case No. 23-CR-037 ("Witness 1"), was arrested by a local police department and was charged with stealing Gerace's Rolex watch. One of the individuals who arrested Witness 1 was a detective who had become friendly with Gerace over time, and who had also been involved arresting Gerace's ex-wife on numerous occasions. Text messages between Gerace and the detective indicate that they were coordinating real time to effectuate Witness 1's arrest on April 9, 2019.

After Witness 1 was arrested, she was brought to the local police station for processing. There, a supervisor in the local police department spoke with Witness 1 and determined that Witness 1 may have information relevant to a federal investigation. As a result, federal agents were contacted and interviewed Witness 1. During the interview on April 9, 2019, Witness

2

1 provided information about Gerace, PGC, and others associated with Gerace, which was documented in a report authored by one of the agents.

A few months later, in or about July 2019, Witness 1 was assaulted and threatened by an associate of Gerace. Witness 1 reported, in sum and substance, that she was placed in a headlock and Gerace's associate stated that she was, "going to fucking kill [Witness 1]."

On October 17, 2019, Witness 1 testified before the Federal Grand Jury, which returned the Indictment in Case No. 19-CR-227-JLS on October 31, 2019.

As a result of the foregoing, Gerace concluded that Witness 1, a former PGC dancer who had been intimate with Gerace, was a government witness. On November 19, 2019, Gerace was present at his residence, located at 5154 Lexor Lane, Clarence, New York, with two female associates. All three of them were drinking alcohol in Gerace's basement bar, and all three of them were using cocaine that Gerace provided (i.e., Gerace distributed the cocaine).

While they were in Gerace's basement, Witness 1's name came up and Gerace called her a "snitch bitch". By that point, on a prior occasion, Gerace had told his female associate, in sum and substance, that Gerace had Witness 1 arrested for stealing his watch and that law enforcement had Witness 1 detox for three days and then she snitched to the feds [about Gerace and PGC]. While still in Gerace's basement, Gerace started getting at least one of them "revved up" and "pumped up" about Witness 1 being, in Gerace's words, a "snitch" and a "snitch bitch."

3

At the time, Witness 1 had one of the females blocked on Facebook, but Witness 1 and the other female were still Facebook friends. Thus, while in the basement and after Gerace made his comments, the blocked female used the unblocked female's Facebook account to send the above- referenced threatening and intimidating messages. Gerace was in the basement as the messages were composed and read or uttered aloud.

The threatening, intimidating, and harassing Facebook messages sent to Witness 1, are set forth below:

> Hay u ray ass bitch
>
> It [ ]
>
> *I'm good g to see u and when I do well use your imagination bitch u snitch junkie cunt*
>
> Ur a fucking a funny cunt you would do whatever for drugs in filling [ ] in on how much of a scum bag u are like u wanted to claim peters home like u deserved it bitch u deserve nothing u nasty cunt learn how to be a mother cause your husband was just at my place filling me in how my h of a pull head junkie u are too bad u couldn't take char down oops she is to smart cause you are the biggest piece of shit I've ever met that why nina was fucking your husband and being a mother to your daughter u junkie ass pond scum
>
> *Plan on nothing peter knows better u fucking nark*
>
> *Girl h don't want to fuck with me u know how I get down*

4

> I hope u fucking is cunt
>
> Od bitch.ckme het ur shampoo bitch
>
> Haha your a joke go kill yourself u dirty com gussling whore

(Emphasis added).

As used in the above message, terms like "snitch" and "nark" are derogatory terms commonly used by criminals and/or criminal associates for individuals who cooperate with law enforcement. Moreover, Witness 1 is aware of Gerace's association with bikers and interpreted the messages as a threat to her physical safety due to her cooperation.

At the point in time Gerace and others made the Facebook threats, the public information in the original Indictment (see Doc. No. 1) alleged, among other things, the following:

- BONGIOVANNI did not investigate his friends and associates and used position […] to shield his friends and associates, including those he believed were connected to or associated with IOC, from criminal investigations. See Doc. No. 1, Manner and Means ¶4.

- [I]n exchange for payments […] BONGIOVANNI utilized his position as a DEA SA to dissuade other members of law enforcement from conducting investigations […]; and from conducting investigations into any individuals who may have been able to expose his criminal activities and those of his friends, associates, and individuals the defendant believed to be connected to or associated with IOC. See Doc. No. 1, Manner and Means ¶5.

The original Indictment referenced Gerace as "Coconspirator 1" at least 18 times. See Doc. No. 1; Count 1, Overt Acts 24, 25, 26, 27, 28, 46, 48, 49, 51, 52, 53, 56, 57, and Counts 5, 6, 7, 10, and 11. Additionally, the Indictment specifically referenced Gerace's phone number,

5

and that he had a "gentlemen's club." See Doc. No. 1; Count 1, Overt Acts 48-49. Undoubtedly, Gerace knew he was under investigation before Witness 1 was threatened on November 19, 2019.

On February 25, 2021, a federal Grand Jury returned an eighteen-count Second Superseding Indictment against the defendant charging him as follows: Title 18, United States Code, Section 371 (Count 2- Conspiracy to Defraud the United States); Title 18, United States Code, Sections 201(b)(1)(A) and 201(b)(1)(C) (Count 6- Paying a Bribe to a Public Official); Title 21, United States Code, Section 856(a)(1) (Count 7- Maintaining a Drug-Involved Premises; Title 21, United States Code, Section 846 (Count 8- Conspiracy to Distribute Controlled Substances); and, Title 18, United States Code, Section 1594(c) (Count 9- Conspiracy to Commit Sex Trafficking).

On March 24, 2023, a different federal Grand Jury returned a four-count indictment against the defendant charging him with witness tampering (Counts 1 through 3), and possession with intent to distribute and distribution of cocaine (Count 4). As set forth above, the witness tampering and cocaine distribution alleged in indictment 23-CR-037-JLS occurred after the defendant knew he was the target of a federal investigation, and such conduct was plainly intended to prevent Witness 1 from cooperating and providing information about the defendant (as detailed in Case No. 19-CR-227-JLS).

**LEGAL STANDARD**

Rule 13 of the Federal Rules of Criminal Procedure states that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information

if all offenses and all defendants could have been joined in a single indictment or information." This standard is satisfied where the acts charged are "unified by some substantial identity of facts or participants or arise out of a common scheme or plan." United States v. Attanasio, 870 F.2d 809, 814 (2d Cir. 1989) (citations and internal quotations omitted).

Defendants may be joined in a single indictment pursuant to Rule 8(b) where they have participated: (1) in the same act or transaction, or (2) in the same series of acts or transactions constituting an offense or offenses. United States v. Lawson, 677 F.3d 629 (4th Cir. 2012). It is not required that each defendant be charged with each count of an indictment. United States v. Weisman, 624 F.2d 1118, 1129 (2d Cir. 1980). Moreover, joinder of counts is proper pursuant to Rule 8(a), which permits joinder of offenses that "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Pursuant to Rule 14(a) the court may grant relief from joinder of defendants or offenses, or a consolidation of trial if consolidation will prejudice a defendant. Prejudice under Rule 14(a) exists "only when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Rittweger, 524 F.3d 171, 179 (2d Cir. 2008) (citation and internal punctuation omitted). The fact that evidence may be admissible against one defendant but not another does not require a severance. Id. Moreover, where the evidence is straightforward, and/or when appropriate limiting instructions can be given to the jury, joinder is not improper. Id. at 180.

## ARGUMENT

Defendant Gerace argues that joinder should be denied because joinder would be improper under Rule 8, and because joinder of the witness tampering charges in Case No. 23-CR-037, with the narcotics, sex trafficking, bribery, and other charges in Case No. 19-CR-227 would cause undue prejudice to the defendant. See Doc. No. 424. Similarly, defendant Bongiovanni argues that joinder of the witness tampering charges against Gerace will "prejudice" Bongiovanni. See Doc. No. 425. Both defendants' arguments lack merit and should be rejected.

### I. The Testimony and Evidence Underlying the Proof in Case No. 23-CR-037 is Admissible at Trial in Case No. 19-CR-227 Regardless of Whether Joinder is Granted, and thus Judicial Economy Favors Joinder.

The government contends that evidence of the witness tampering would be admissible in the trial of case No. 19-CR-227, regardless of whether the charges were formally brought. It is well-settled that evidence that a defendant attempted to influence the testimony of a witness or attempted to impeded or prevent a witness from testifying is admissible to show consciousness of guilt. United States v. Harmon, 721 F.3d 877, 884 (7th Cir. 2013) ("Evidence of intimidation of a witness raises an inference of consciousness of guilt which raises an inference of actual guilt."); see also United States v. Rhodes, 736 F. App'x 375, 377 (4th Cir. 2018) ("Evidence of a defendant's attempt to tamper with the testimony of a witness is clearly relevant and probative of the defendant's consciousness of guilt, and courts have generally concluded that such evidence is not unfairly prejudicial."); United States v. Smart, 60 F.4th 1084, 1093 (8th Cir. 2023) (eve of trial witness tampering admitted during trial over defense objection). Where, as here, the same evidence would be used to prove each count [in

8

the indictments], the counts may be tried together.  United States v. Rivera, 546 F.3d 245, 253 (2d Cir. 2008).

Here, joinder will prevent the victim and multiple witnesses from returning to court to testify in two separate trials about the same conduct and would also prevent the defendant from sitting through two trials involving the same conduct.  Trials of any length are costly, and time consuming, and joint trials promote the economical and efficient administration of justice by avoidance of needles trials.  United States v. Halper, 590 F.2d 422 (2d Cir. 1978); see also United States v. McGrath, 558 F.2d 1102, 1106 (2d Cir. 1977); see also United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980).  Indeed, the Supreme Court has stated that joint trials play a vital role in the criminal justice system, both in promoting efficiency and in serving the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. Zafiro v. United States, 506 U.S. 534, 537 (1993).

Accordingly, because the evidence should be admitted at trial regardless of joinder, judicial economy strongly favors joinder and consolidation of indictments in Case No. 19-CR-227 and Case No. 23-CR-037.

## II. Joinder is Proper Under Rules 13 and 8(b) of the Federal Rules of Criminal Procedure.

Rule 13 of the Federal Rules of Criminal Procedure states that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information."  This standard is satisfied where the acts charged are "unified by some

9

substantial identity of facts or participants or arise out of a common scheme or plan." Attanasio, 870 F.2d at 814.  Defendants may be joined in a single indictment pursuant to Rule 8(b) where they have participated: (1) in the same act or transaction, or (2) in the same series of acts or transactions constituting an offense or offenses.  United States v. Lawson, 677 F.3d 629 (4th Cir. 2012).

The standard for joinder of indictments is easily satisfied in this case.  The witness tampering indictment emanated from investigation of the conspiracies and substantive offenses charged in Case No. 19-CR-227, and the witness tampering occurred within two weeks of unsealing the initial indictment in Case No. 19-CR-227.  See United States v. Molina, 789 F. Supp. 106, 109 (E.D.N.Y. 1992), aff'd, 48 F.3d 1213 (2d Cir. 1994) (joinder of obstruction charge was appropriate where it was an attempt to prevent or interfere with the trial on the original heroin charges, and thus it arose out of the conspiracy to distribute heroin); see also United States v. Gotti, No. S4 02 CR 743 (RCC), 2004 WL 32858, at *6 (S.D.N.Y. Jan. 6, 2004) (witness tampering charges joined with murder charges).  Not all defendants must be charged in all counts to justify joinder.  United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990).

Here, there is an obvious logical connection between the two indictments, which arose out of the same series of acts or transactions constituting offenses.  Defendant Gerace and others only threatened and tampered with Witness 1 after Gerace concluded that Witness 1 was a "snitch" pertaining to the charges in Case No. 19-CR-227.  As a result, defendant Gerace and others sent threatening and intimidating messages to Witness 1 in order to

10

influence and prevent the witness from providing information relevant to the charges now pending against Gerace in Case No. 19-CR-227-JLS.

Accordingly, joinder of indictments is proper.

### III. Joinder of Indictments would not Substantially Prejudice Either Defendant.

Neither defendant Gerace nor Bongiovanni would suffer substantial prejudice from joinder of the offenses. Prejudice under Rule 14(a) exists "only when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Rittweger, 524 F.3d at 179.

Here, Gerace (see Doc. No. 424) claims that he may wish to testify as to some counts but not others, and Bongiovanni (see Doc. No. 425) claims that he would like to call Gerace on his behalf at trial, but neither defendant has provided any specifics about any proposed testimony, or how joining the witness tampering charges in Case No. 23-CR-037 prevents either or both of them from testifying in Case No. 19-CR-227. To the extent there is any perceived risk of prejudice to Bongiovanni, it can be cured with proper instructions, and "juries are presumed to follow their instructions." Richardson v. Marsh, 481 U.S. 200, 211 (1987).

While all evidence introduced against any defendant in a criminal trial is prejudicial, the witness tampering charges in Case No. 23-CR-037 are no more inflammatory than the complex fraud, bribery, narcotics, and sex trafficking charges in Case No. 19-CR-227.

11

Therefore, because neither defendant has identified any specific trial right that would be compromised or would prevent the jury from making a reliable judgment if joinder is granted, the Court should grant the government's motion for joinder.[1]

## CONCLUSION

For all of the foregoing reasons, joinder pursuant to Rule 13 is proper, and a single trial serves the interests of the public, judicial economy, and the parties to this action.

DATED: Buffalo, New York, April 13, 2023.

                                          TRINI E. ROSS
                                          United States Attorney

BY:   s/JOSEPH M. TRIPI
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5839
        Joseph.Tripi@usdoj.gov

---

[1] The government also incorporates arguments contained in its responses in opposition (see Doc. Nos. 354, 365) to the defendant Bongiovanni's severance motions, and in its motion for joinder (see Doc. No. 411) as though set forth fully herein.