UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

19-CR-227 (JLS) (MJR)

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

Defendants.

UNITED STATES OF AMERICA,

v.

23-CR-37 (JLS) (MJR)

PETER GERACE, JR.,

Defendant.

## DECISION AND ORDER

Defendant Peter Gerace, Jr. moves to suppress all evidence seized during the November 2019 searches of his home and his business, Pharaoh's Gentlemen's Club, based on purported violations of *Franks v. Delaware*, 438 U.S. 154 (1978). Dkt. 432.[1] The Government responded in opposition (Dkt. 440), and Gerace replied in further support (Dkt. 448). For the reasons below, the Court DENIES Gerace's motion in its entirety.

---

[1] All docket references are to the 19-CR-227 docket. And all page references to docket entries refer to the numbering automatically generated by CM/ECF, which appears in the header of each page.

## DISCUSSION

### I.   Timeliness

Gerace's motion is timely.  Federal Rule of Criminal Procedure 12 provides

that a defendant must move to suppress before trial by "pretrial motion if the basis

for the motion is then reasonably available[,] and the motion can be determined

without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C).  If a defendant makes

an untimely motion, the court may consider it if he or she "shows good cause." Fed.

R. Crim. P. 12(c)(3).

Gerace filed the motion on April 12, 2023—a little over two months before the

original trial date and four months before the current trial date.[2]  His motion is

based on the search warrant application for his home and Pharaoh's, which counsel

received in redacted form on or after February 14, 2023.[3]  While counsel perhaps

could have filed this motion a couple of weeks sooner, the Court cannot conclude

that the motion is untimely under Rule 12(b)(3).

Indeed, the Court contemplated that Gerace may move to suppress after

receiving this search warrant application.  On November 5, 2021—after several

rounds of litigation over unsealing this and other search warrant applications—

---

[2] On May 17, 2023, the Court granted co-defendant Joseph Bongiovanni's motion for
a continuance of the trial date—after granting the motion by Bongiovanni's counsel
to withdraw, and after assigning Bongiovanni two new attorneys—and re-set the
trial date for August 14, 2023.  Dkt. 484.

[3] On February 14, 2023, the Court issued a text order authorizing the Government's
proposed redactions to this search warrant application (Case No. 19-M-5303), and
directed the Government to disclose the redacted application to Gerace and
Bongiovanni pursuant to the governing protective order.  Dkt. 372.

Gerace asked the Court to adopt a procedure that would allow him to file any suppression motions after receiving the applications. *See* Dkt. 210. On January 7, 2022, the Court held that motion in abeyance and instructed the parties that it would revisit the issue after setting a trial date. *See* Dkt. 238. At a November 30, 2022 status conference, the Court set trial to commence on June 21, 2023, and discussed with the parties disclosure of 3500 materials—specifically, early disclosure—among other things. *See* Dkt. 324. The Government moved for a protective order on December 21, 2022. Dkt. 331; Dkt. 332. At a January 6, 2023 status conference, the Court discussed the proposed protective order; it then issued the protective order on January 9, 2023. Dkt. 346; Dkt. 347. Thereafter, the Government provided the Court, on a rolling basis, with proposed redactions to certain search warrant applications—including the one underlying Gerace's motion here.

Because Gerace filed this instant motion before trial, a reasonable amount of time after receiving the underlying search warrant application, and consistent with the procedure crafted by the Court, his motion is timely.

## II.   Merits of *Franks* Motion

Gerace argues that material misrepresentations and omissions in the search warrant application for his home and Pharaoh's require a *Franks* hearing and suppression of all evidence seized pursuant to the warrant because the good-faith exception to the exclusionary rule does not apply. The Court denies Gerace's motion, in full, because (1) Gerace did not make the substantial preliminary

3

showing required for a *Franks* hearing, (2) probable cause exists to support issuance

of the warrant regardless of the claimed misstatement and omissions, and (3) in any

event, the good-faith exception to the exclusionary rule applies, making suppression

inappropriate.

## A. *Franks* Hearing

### 1. Legal Standards

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers,
> and effects, against unreasonable searches and seizures, shall not be
> violated, and *no warrants shall issue, but upon probable cause,
> supported by oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be seized.*

U.S. Const. amend. IV (emphasis added). The Supreme Court "has interpreted the

warrant clause as containing an implicit guarantee that the information in a

warrant application is truthful in the sense that the information put forth is

believed or appropriately accepted by the affiant as true." *United States v.

McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021) (quoting *Franks v. Delaware*, 438 U.S.

154, 165 (1978)) (internal quotation marks omitted).

Along those lines, "where the defendant makes a substantial preliminary

showing that a false statement knowingly and intentionally, or with reckless

disregard for the truth, was included by the affiant in the warrant affidavit," and

"the allegedly false statement is necessary to the finding of probable cause, the

Fourth Amendment requires that a hearing be held at the defendant's

request." *Franks*, 438 U.S. at 155–56. To invoke *Franks*, a defendant must

4

demonstrate that: (1) "'there were intentional and material misrepresentations or omissions' in the warrant affidavit"; and (2) "the 'alleged falsehoods or omissions were necessary to the . . . probable cause finding.'" *United States v. Fernandes*, 50 F. Supp. 3d 398, 403 (W.D.N.Y. 2014) (quoting *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014)).

As to the first prong, a defendant must present "credible and probative evidence that a misstatement or omission in a warrant application was designed to mislead or was made in reckless disregard of whether it would mislead." *United States v. Nejad*, 436 F. Supp. 3d 707, 719 (S.D.N.Y. 2020) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013)) (internal quotation marks and alterations omitted). Misstatements or omissions "caused by 'negligence or innocent mistakes' do not warrant suppression." *Rajaratnam*, 719 F.3d at 153 (quoting *Franks*, 438 U.S. at 171) (alterations omitted).[4]

A reviewing court may infer recklessness "where the omitted information was 'clearly critical' to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (citations omitted). But courts should not

---

[4] Gerace suggests that reliance on *Franks*-related caselaw that predates *Davis v. United States*, 564 U.S. 229 (2011), is improper. *See* Dkt. 448, at 4–5. *Davis* dealt with the exclusionary rule, and the good-faith exception to that rule, and did not address *Franks* or the standard set by that case and its progeny. *See Davis*, 564 U.S. at 232 ("Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."). The Court has applied *Davis* to its analysis of the good-faith exception to the exclusionary rule. *See infra* Section II.B. But the Court does not read *Davis* to alter the *Franks* analysis.

"automatically draw[]" such an inference "simply because a reasonable person would have included the omitted information." *Rajaratnam*, 719 F.3d at 154. Indeed, "the mere intent to exclude information is insufficient" because "'[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" *United States v. Awadallah*, 349 F.3d 42, 67–68 (2d Cir. 2003) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).

As to the second prong, "courts 'gauge materiality by a process of subtraction' or addition depending on whether misstatements or omissions are at issue." *Nejad*, 436 F. Supp. 3d at 719 (quoting *Awadallah*, 349 F.3d at 65). Courts "should disregard the allegedly false statements, . . . insert the omitted truths, . . . and determine whether there remains a residue of independent and lawful information sufficient to support probable cause." *Id.* (internal quotation marks and citations omitted). In this context, the reviewing court analyzes probable cause *de novo*. *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000).

If a court determines that a warrant application "contains both lawful and tainted allegations," the application is valid so long as "the lawful information, considered independently, supports probable cause." *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985). This is because the "ultimate inquiry on a motion to suppress is not . . . whether the affidavit contains false allegations or material omissions, but whether after putting such aside, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.*; *see*

6

*also United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997) ("Every statement in a warrant affidavit does not have to be true.").

A court "need order a hearing only if the defendant makes an offer of proof suggesting knowing falsity or reckless disregard (as opposed to negligence), and if, setting the suspect information aside, there is no longer probable cause to support the search." *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004). On the other hand, "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

To make the substantial preliminary showing required for a hearing, the person challenging the warrant must offer "specific allegations accompanied by an offer of proof" because "[u]nsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge." *Nejad*, 436 F. Supp. 3d at 719 (quoting *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)). He or she "must show by a preponderance of the evidence" that each prong is satisfied. *Ferguson*, 758 F.2d at 848.

### 2. Analysis

Gerace does not make the substantial preliminary showing on either prong required to establish a *Franks* violation.

Gerace argues that the affidavit omitted: (1) information about a law enforcement agency's unwillingness to pursue a specific investigative technique

regarding Pharaoh's after a particular date, rendering the search warrant application stale; (2) information about the sentence each source would receive without credit for assisting authorities; (3) information about the reliability of certain unspecified sources; (4) firsthand information about connections to certain groups/organizations specified in the affidavit; (5) the full circumstances surrounding a criminal charge against a source; (6) corroborating facts regarding specified allegations in paragraphs 43 through 47, 49 through 53, and 58 of the affidavit, instead relying on the affiant's training and experience; and (7) information regarding a purported Pharaoh's policy, in effect during the relevant period, to fire any employee involved with drug use or distribution. Gerace also argues that a slight difference in word choice between the affiant's statement in the affidavit and in grand jury testimony constituted a misstatement.[5]

### i. Knowing Falsity or Reckless Disregard

As to the first prong, Gerace presents no "credible and probative evidence" that any omission or misstatement "was designed to mislead or was made in reckless disregard of whether it would mislead." *See Nejad*, 436 F. Supp. 3d at 719 (internal quotation marks, citations, and alterations omitted). The only reference in

---

[5] In addition, Gerace cites several favorable facts included in the affidavit, which he claims should have prompted the magistrate judge not to issue the search warrant. Such facts—which Gerace concedes the affidavit contains, and which Gerace does not appear to claim are false—constitute neither omissions nor misstatements.

The Court cites these examples to summarize Gerace's claimed omissions and misstatements, mindful that the specific details exist in documents sealed pursuant to a protective order. But the Court has considered each specific purported omission and misstatement raised by Gerace in reaching its decision here.

Gerace's motion to the affiant's intent is the claim that the affiant's use of "she" in his affidavit to describe an encounter involving an attempt to obtain drugs at Pharaoh's, but the use of "we" to describe the same encounter in the affiant's grand jury testimony, demonstrate that the affiant "is inherently untrustworthy." *See* Dkt. 432, at 4 ¶¶ 12, 13. This slight semantic difference does not equate to inherent untrustworthiness. And Gerace's conclusory claim does not constitute the required credible and probative evidence.

Nor does the statement that Gerace's counsel "understands that throughout the indictment period, Pharaoh's had a strict policy that any employee involved with drug use or distribution inside of the club would be fired" demonstrate the required intent to mislead. *See id.* at 9 ¶ 33. For example, Gerace's motion does not state how counsel "understands" the policy. Gerace falls short of presenting credible and probative circumstances that the affiant intentionally or recklessly omitted such information from his affidavit.

Under certain circumstances, a reviewing court may infer recklessness. But such an inference is not appropriate here. Gerace does not cite any omitted information "clearly critical" to the probable cause determination to trigger the inference. *See Rivera*, 928 F.2d at 604 (internal quotation marks and citations omitted). Indeed, Gerace concedes the affidavit "contains a number of factual assertions which are favorable to [him]." Dkt. 432, at 8 ¶ 31; *see also id.* at 9 ¶¶ 32(a)–(c). The affiant's inclusion of such favorable information makes an inference of recklessness inappropriate.

In sum, Gerace did not make the substantial preliminary showing of the affiant's intent to mislead or reckless disregard of misleading the magistrate judge that is necessary to establish a *Franks* violation. Regardless, in the interest of completeness, the Court will consider whether the omissions and misstatement Gerace claims were material to the probable cause determination.

### ii. Materiality and Probable Cause

Even if the omissions and misstatements Gerace cites were as he claims, sufficient information exists—adding in the purported omissions and subtracting the purported misstatement—to support probable cause as to Gerace's home and Pharaoh's.

Probable cause "requires a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *McKenzie*, 13 F.4th at 236 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause to conduct a search exists where "the available facts would 'warrant a person of reasonable caution' to believe that contraband or evidence of a crime is present." *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). Courts assessing probable cause should "consider the 'totality of the circumstances.'" *Id.* (quoting *Harris*, 568 U.S. at 244). They should read the affidavit in support of the search warrant "as a whole" and should "construe[] [the affidavit] realistically." *Salameh*, 152 F.3d at 113. Along those lines, courts "have repeatedly been warned not to 'interpret the affidavit in a hypertechnical, rather than a commonsense, manner.'" *Canfield*, 212 F.3d at 719 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)) (alterations omitted).

10

The Court has conducted a *de novo* review of the search warrant application

for Gerace's home and Pharaoh's, adding in the purported omissions and correcting

the purported misstatement.  Upon that review, the Court is confident that the

application establishes probable cause to search both locations.[6]

The application to search Gerace's home and Pharaoh's consists of a forty-

one-page affidavit, which contains information from eleven sources with specific

information about Gerace, his home, or Pharaoh's, as well as information from two

law enforcement sources.  The application also attaches three authorized search

warrant applications related to this case, *see* Dkt. 370, at Attachments C, D, E—

which themselves contain source information, including information about Gerace—

as well as the original indictment in this case, *see id.* at Attachment F.

As to Gerace's home, Source 1[7] provided firsthand information regarding the

presence of drugs at Gerace's home less than two months before the search warrant

issued.  *See* Dkt. 370, at 11 ¶ 24 n.3; *id.* at 13 ¶ 24(u).  Source 1 also referenced

recurring events at Gerace's home where drugs were available.  *See id.* at 13

---

[6] In the ensuing analysis, the Court provides examples of details from the affidavit
that establish probable cause as to each premises.  This discussion summarizes
information in the application related to probable cause; the Court's probable cause
determination was not limited to these examples.  Rather, as the law instructs, the
Court considered the totality of the circumstances and read the affidavit as a whole
to determine that probable cause exists as to each premises.

[7] Source 1 is identified by name in the affidavit and provides details about how
he/she knows Gerace and is familiar with Gerace's home and Pharaoh's.  *See* Dkt.
370, at 11 ¶ 24.  Law enforcement has corroborated certain information provided by
Source 1 through independent investigation.  *See id.* at 12 ¶ 24(q) & n.5.  The
information contained in Gerace's pending motion to re-open his detention hearing
(Dkt. 491) does not change the Court's analysis here.

¶ 24(v).  In addition, Source 5[8] identified Gerace's source of drugs.  *See id* at 20 ¶¶ 29(k), (n).

As to Pharaoh's, Source 1 stated that a particular person has distributed drugs to Source 1 at Pharaoh's, *see id.* at 12 ¶ 24(i), and that Source 1 observed drugs at Pharaoh's during a particular event, *see id.* ¶ 24(t).  Sources 2, 4, 7, 8, and 9[9] stated that they have used drugs at Pharaoh's.  *See id.* at 15 ¶ 26(b), 17 ¶ 28(h), 23 ¶ 31(e), 23 ¶ 32(c), 26 ¶ 35(f).  Source 7 also purchased drugs from Pharaoh's on one occasion.  *See id.* at 23 ¶ 31(i).  Source 3[10] has sold drugs at Pharaoh's on several occasions and witnessed a Pharaoh's employee, who Source 3 identified by name, sell drugs at Pharaoh's.  *See id.* at 16 ¶ 27(b), 17 ¶ 27(h).  Source 6[11] has witnessed people use drugs at Pharaoh's and identified people who sold drugs there.  *See id.* at 21 ¶¶ 30(h), (i).  Sources 3 and 6 stated that others, including Pharaoh's employees, know drugs were available or sold at Pharaoh's.  *See id.* at 16 ¶¶ 27(b)–(d), 22 ¶ 30(p).  In addition, the affidavit states that law enforcement had investigations into drug trafficking at Pharaoh's at two separate times.  *See id.* at 26 ¶ 37(a), 27 ¶ 37(b); *see also id.* at 27 ¶¶ 37(i), (j).

---

[8] Source 5 is identified by name in the affidavit and provides details about how he/she knows Gerace and is familiar with Pharaoh's.  *See id.* at 19 ¶ 29.

[9] Sources 2, 4, 7, 8, and 9 are identified by name in the affidavit, and each provides details about how he/she is familiar with Pharaoh's.  *See id.* at 15 ¶ 26 (Source 2), 18 ¶ 28 (Source 4), 23 ¶ 31 (Source 7), 23 ¶ 32 (Source 8), 25 ¶ 35 (Source 9).

[10] Source 3 is identified by name in the affidavit and provides details about how he/she is familiar with Pharaoh's.  *See id.* at 16 ¶ 27.

[11] Source 6 is identified by name in the affidavit and provides details about how he/she is familiar with Pharaoh's.  *See id.* at 21 ¶ 30.

The absence from the affidavit of one law enforcement agency's decision not to use a particular investigative technique at Pharaoh's in the future does not constitute a material omission. *See United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993) (An "otherwise sufficient application for a search warrant need not relate unproductive or unsuccessful efforts in the court of the investigation."). Here, the affidavit disclosed certain unsuccessful investigative steps at Pharaoh's—and also explained why those steps likely failed. *See* Dkt. 370, at 29 ¶ 40(f) & n.23. Under these circumstances, and in light of the totality of circumstances set forth in the affidavit, the fact that one agency elected not to take certain further steps does not defeat probable cause.

Nor does that omission render stale all information preceding the date one agency declined to further pursue a particular investigative technique. There is "no bright line rule for staleness"—although the facts contained in a supporting affidavit "must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). Passage of time is relevant to determining probable cause but "is not controlling"; rather, it is "but one factor to be considered, along with the kind of property sought and the nature of the criminal activity." *Singh*, 390 F.3d at 181–82.

Courts also consider the duration of the alleged criminal activity. *See id.* at 182. Along those lines, "[f]acts of past criminal activity that by themselves are too

stale can be sufficient if the affidavit also establishes a pattern of continuing

criminal activity so there is reason to believe that the cited activity was probably

not a one-time occurrence." *Wagner*, 989 F.2d at 75.  In a situation involving "a

pattern of continuing criminal activity, . . . the passage of time between the last

alleged event and the warrant application is less significant." *United States v.*

*Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (internal quotation marks and citation

omitted); *see also Singh*, 390 F.3d at 182 (where information in affidavit "indicated

an activity of an ongoing and long-term nature, . . . the passage of time between the

furnishing of the information and the execution of the warrant was not significant

under the circumstances").

A modest time lag between a fact or facts offered in support of probable cause

"generally [will] not affect probable cause" where the warrant "was sought at the

culmination of a major investigation into ongoing, long-term criminal activity."

*United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985); *see also Rivera*, 928 F.2d at

603 ("In investigations of ongoing narcotics operations, . . . intervals of weeks or

months between the last described act and the application for a warrant [does] not

necessarily make the information stale.") (citing cases).  *Cf. Wagner*, 989 F.2d at 74–

75 (fact that confidential informant purchased small amount of marijuana from a

woman almost seven weeks prior to the search was stale, but if the woman "were in

any way linked to the ongoing conspiracy, the warrant would not have been stale").

Here, the affidavit contains numerous examples that demonstrate long-term

and recurring alleged criminal activity involving Gerace and Pharaoh's.  First, the

14

affiant stated that he sought the warrant in connection with an ongoing criminal investigation of federal criminal offenses, including, among other things, conspiracy to distribute controlled substances. *See* Dkt. 370, at 4 ¶ 4. The information from numerous sources, discussed above, indicated long-term and recurring drug use and transactions at Pharaoh's. Law enforcement initiated investigations into drug trafficking at Pharaoh's multiple times, several years apart. More than one source stated that drug use and sales at Pharaoh's were common knowledge among employees.[12] As to Gerace's home, Source 1 recounted drug use at Gerace's home less than two months before the search warrant issued. *See id.* at 11 ¶ 24 n.3, 13 ¶ 24(u). Source 1 also referenced recurring events at Gerace's home where drugs were available. *See id.* ¶ 24(v). Under these circumstances, the affidavit was not stale.

Moreover, the affidavit contains sufficient information for the Court to ascertain the eleven sources' reliability. When "assessing the existence of probable cause based on an informant's information, 'the core question . . . is whether the information is reliable.'" *McKenzie*, 13 F.4th at 237–38 (quoting *Wagner*, 989 F.2d at 72). Information may be sufficiently reliable to support probable cause if: (1) the "person providing the information has a track record of providing reliable

---

[12] And the search warrant application does not focus solely on drugs, drug evidence, or the current presence of drugs at Pharaoh's or Gerace's home. Rather, the affidavit cites an investigation for other potential crimes—separate from drug trafficking—and lists items other than drugs for which probable cause exists as to Pharaoh's and Gerace's home.

information"; or (2) the information "is corroborated in material respects by independent evidence." *Wagner*, 989 F.2d at 72–73.

Courts may assess reliability by inquiring into an informant's veracity—although "it is improper to discount an informant's information simply because he [or she] has no proven record of truthfulness or accuracy." *Id.* at 73. Courts also may assess reliability by considering the quality of an informant's sources of information—for example, "the degree to which his [or her] information is based on reliable means, such as first-hand observations or second-hand information from reliable sources, rather than on unreliable means such as rumor or innuendo." *Id.* A court should determine whether such information is reliable "by examining the 'totality of the circumstances' bearing on its reliability." *Smith*, 9 F.3d at 1012 (quoting *Gates*, 462 U.S. at 230–31).

As stated above, the Court conducted a *de novo* review of the search warrant application for probable cause. The affidavit details how each source was familiar with the people or premises they provided various types of information about. Information from different sources was largely consistent, and the sources corroborated aspects of each other's information. Law enforcement investigation corroborated certain source information as well. Where a source was facing criminal charges and cooperating with the hope of receiving a favorable disposition of his or her case, the affiant disclosed that fact. *See* Dkt. 370, at 16 ¶ 27, 18 ¶ 28, 19 ¶ 29, 21 ¶ 30, 22 ¶ 31, 26 ¶ 36 & n.20. Under these circumstances, the specific benefit a source might receive has a negligible effect—if any—on probable cause.

To the extent that information related to certain groups/organizations mentioned in the affidavit bears on probable cause,[13] the affidavit contains specific information, provided by sources, as to the relevance or role of those groups/organizations here. *See id.* at 12 ¶ 24(o), 17 ¶¶ 27(k), (l); *see also id.* at 11 ¶ 24(h) & n.4, 12 ¶¶ 24(j), (k), 13 ¶¶ 24(w), (x), (y), (ee), 15 ¶ 26(d), 16 ¶¶ 26(g), (j), ¶ 27(e), 18 ¶ 28(d), 22 ¶ 30(k), (l), (m).

Finally, the affiant does not improperly rely on his training and experience. A "government agent's expert opinion . . . 'is an important factor to be considered by the judge' when making a probable cause determination." *United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (quoting *Fama*, 758 F.2d at 838), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989). While an agent's opinion, "standing alone, might not be sufficient" to establish probable cause, "when viewed together with . . . other evidence in the government's affidavits," an agent's opinion can establish probable cause. *Id.* Here, the affiant does not rely on his training and experience alone but, as discussed above, cites specific, firsthand information from numerous sources. And he connects his training and experience to the facts in the affidavit. The affiant's training and experience—together with the specific facts contained in the affidavit—establish probable cause as to each premises.

\* \* \*

---

[13] In this Court's view, probable cause as to each premises does not depend on the references to these groups/organizations.

17

Gerace is not entitled to a *Franks* hearing here because he has not made a substantial preliminary showing of knowing falsity or reckless disregard, and—even if he had—probable cause to support the search of each premises remains.

## B. Good-faith Exception

Nevertheless, in the interest of completeness, the Court will consider whether the good-faith exception to the exclusionary rule would apply, had the search warrant application failed to establish probable cause.

If, after undertaking the *Franks* analysis, a court concludes that the supporting affidavits lack probable cause, it:

> may admit seized evidence unless: (1) the issuing magistrate relied on an affidavit that the affiant knew was false or would have known was false had he or she not acted in "reckless disregard of the truth"; (2) the "magistrate wholly abandoned his judicial role"; (3) the "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

*Singh*, 390 F.3d at 181 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). In other words, the "'good faith' exception to the exclusionary rule allows the admission of evidence, despite the absence of probable cause, 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *Smith*, 9 F.3d at 1015 (quoting *Leon*, 468 U.S. at 920); *see also United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996) ("Under *Leon*, evidence is admitted when the police act with objective good faith pursuant to a search warrant, even if the magistrate erred in issuing the warrant.").

18

The good-faith exception will not apply "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his [or her] reckless disregard of the truth." *Leon*, 468 U.S. at 923. This is because "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis*, 564 U.S. at 238 (citation omitted). Where such police conduct is not at issue, the analysis is different—as in *Leon*, which "held that the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis*, 564 U.S. at 238–39 (quoting *Leon*, 468 U.S. at 922).

Had the search warrant application failed to establish probable cause, the good-faith exception to the exclusionary rule would apply here. The affiant, acting in good faith, sought the warrant from the magistrate judge. Gerace does not claim that members of law enforcement exceeded the scope of the warrant when executing it. After examining the search warrant application and Gerace's arguments, the Court cannot conclude that the affiant exhibited deliberate, reckless, or grossly negligent disregard for Gerace's Fourth Amendment rights. *See Davis*, 564 U.S. at 238; *see also supra* Section II.A.2. None of the exceptions applies.

## CONCLUSION

For the reasons above,[14] the Court DENIES Gerace's motion for a *Franks*

hearing and to suppress (Dkt. 432) in its entirety.

SO ORDERED.

Dated:      May 30, 2023
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

[14] The Court has considered all arguments raised by Gerace, including any not specifically referenced here, in reaching its decision. *See* Dkt. 432; Dkt. 448. In particular, the Court considered Gerace's argument that he needs the unredacted version of this search warrant application, *see* Dkt. 448, at 3, and rejects it for the reasons stated in its February 14, 2023 text order, *see* Dkt. 372.