IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

              v.                                                    19-CR-227-JLS

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

              Defendants.
_____

UNITED STATES OF AMERICA,

              v.                                                    23-CR-37-JLS-MJR

PETER GERACE, JR.,

              Defendant
_____

## GOVERNMENT'S RESPONSE TO DEFENDANT GERACE'S MOTION TO REOPEN DETENTION HEARING AND SET CONDITIONS OF RELEASE.

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby files its response to defendant Peter Gerace's motion to reopen the detention hearing and set conditions of release.  Dkts. 490-493.

## BACKGROUND AND PROCEDURAL HISTORY

On February 25, 2021, a Grand Jury sitting in the Western District of New York

returned an 18-count Second Superseding Indictment in case 19-CR-227-JLS.  Defendant Gerace was charged in Counts 2, 6, 7, 8, and 9 of the Second Superseding Indictment as follows: Count 2 charged defendant Gerace with Conspiracy to Defraud the United States; Count 6 charged defendant Gerace with Paying a Bribe to a Public Official; Count 7 charged defendant Gerace with Maintaining a Drug-Involved Premises; Count 8 charged defendant Gerace with Conspiracy to Distribute Controlled Substances; and Count 9 charged defendant Gerace with Conspiracy to Commit Sex Trafficking.  See Dkt. 89.

Defendant Gerace was arrested in Florida on March 1, 2021.  At an initial appearance in the Southern District of Florida on March 2, 2021, defendant Gerace was ordered released on various conditions recommended by the government.  See Dkt. 93.  This Court later reduced the conditions, over the government's objection, on April 14, 2021.  See Dkt. 112. This Court reduced the conditions again, over the government's objection, on January 19, 2023.  See Dkt. 361.

On March 23, 2023, a Grand Jury sitting in the Western District of New York returned a four-count Indictment in case 23-CR-37-JLS.  Defendant Gerace was charged in Counts 1 through 4 as follows: Count 1 charged defendant Gerace with Tampering with a Witness; Count 2 charged defendant Gerace with Tampering with a Witness; Count 3 charged defendant Gerace with Tampering with a Witness; and Count 4 charged defendant Gerace with Distribution of Cocaine.  See Dkt. 1, 23-CR-37-JLS.

On March 24, 2023, defendant Gerace was arraigned on the 23-CR-37 Indictment, and the government moved for detention.  A detention hearing for defendant Gerace was held and the government proceeded by proffer.   After hearing the government's proffer, the defendant requested a continuance of the detention hearing.  <u>See</u> **Exhibit A – Transcript of March 24, 2023, Detention Hearing**.  The detention hearing was continued on March 27, 2023.  The Court ordered the defendant detained pending trial, finding that no condition or combination of conditions w[ould] reasonably assure the safety of any other person and the community.   The Court also addressed potential defense motions for temporary release pending trial, stating "I'll consider every motion on the merits.  I always do.  But if you're going to make a motion for temporary release to prepare for trial, it can't be on this record, because I've already considered all these things.  So there's got to be something new and compelling for me to consider in order to justify something like a temporary release under subdivision I."  <u>See</u> **Exhibit B – Transcript of March 27, 2023, Detention Hearing**, pg. 36.

On March 28, 2023, the government filed its motion for joinder of the indictments. <u>See</u> Dkt. 411.  On April 28, 2023 this Court ordered that indictment 23-CR-37 would be consolidated with the second superseding indictment 19-CR-227 for trial.  <u>See</u> Dkt. 442.

Despite the Court's admonition to the defense not to attempt to relitigate the detention hearing without "something new and compelling", on May 22, 2023, the defendant submitted his Motion to Reopen the Detention Hearing and for Pretrial Release, largely consisting of regurgitated arguments that previously failed to sway the Court.  <u>See</u> Dkts. 490-493.  The government's response ensues.

**ARGUMENT**

I.   **THE DEFENDANT HAS FAILED TO MAKE A THRESHOLD SHOWING FOR THIS COURT TO CONSIDER THE MERITS OF HIS MOTION TO REOPEN THE DETENTION HEARING.**

First, as a matter of procedure, the detention hearing may not be reopened because <u>no</u> "information exists that was not known to the movant at the time of the hearing <u>and</u> that has a <u>material</u> bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community" under 18 U.S.C. § 3142(f) (emphasis added).













## II.     NO CONDITION OR COMBINATION OF CONDITIONS WILL REASONABLY ASSURE THE SAFETY OF THE COMMUNITY IF THE DEFENDANT IS RELEASED.

Even if the Court were to consider the underlying facts in the defendant's motion as changes in circumstance, the Court would nonetheless lack a basis to release the defendant under 18 U.S.C. § 3142(f).  Given the nature of the offenses charged, the defendant's ties to law enforcement, the defendant's willingness to engage in witness tampering, and the defendant's criminal history, there is no condition or combination of conditions that will assure that the defendant will not pose a danger to the safety of any other person or the community.  See 18 U.S.C. § 3142(f).  When a defendant is charged with committing certain

offenses, the Bail Reform Act imposes "a presumption ... that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). In the instant matter, a statutory presumption applies, under 18 U.S.C. §§ 3142(e)(3)(A) based upon the nature of the narcotics offense that the defendant is charged with. It is the government's position that the defendant cannot overcome the presumption that there is no condition or combination of conditions that will reasonably assure his appearance as required and the safety of the community.

To determine whether the defendant has rebutted the presumptions of dangerousness and flight, the Court must consider the four factors listed in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that the defendant's release would present.

The factors under Section 3142(g) still weigh heavily in favor of detention. The nature and circumstances of the charged offenses are serious. In the Second Superseding Indictment, the defendant is charged with Conspiracy to Defraud the United States, Paying a Bribe to a Public Official, Maintaining a Drug-Involved Premises, Conspiracy to Distribute Controlled Substances, and Conspiracy to Commit Sex Trafficking. In the 23-CR-37 Indictment, the defendant is charged with three counts of Tampering with a Witness and with Distribution of Cocaine.

In an effort to avoid relitigating the same facts and arguments relied upon by the government in the detention hearing held in March 2023, the government incorporates, by reference, the transcripts from March 23, 2023, and March 27, 2023.  See **Exhibit A** and **Exhibit B**.  The Court relied heavily in its determination to detain defendant Gerace on the danger he posed to witnesses in the upcoming trial.

Furthermore, the government has received and vetted new information related to suspected witness tampering which it believes should further weigh heavily in favor of detention.  On March 13, 2023, a government witness returned to her home to find a dead rat on her mother's vehicle parked in her driveway.  The next day, the same government witness found another dead rat on the vehicle belonging to her roommate.  The dead rat was removed from the vehicle and placed in the trash.  Photographs of these dead rats were provided by the witness to the government.  FBI Agents also responded to the witness's residence and observed the dead rats.  The photographs are depicted below.





The government witness receiving dead rats at their home is the same government witness subjected to earlier, more subtle attempts at intimidation.[2]  In particular, this is the same government witness who received unsolicited text messages from a local attorney indicating "I got a call from Peter Gerace's attorney, Steve Cohen concerned that the feds might be trying to intimidate you or even just bring you in for questioning.  He saw that I was your attorney in the past and reached out to me for me to make sure you were OK and knew I'm here if you need representation."  The text message is depicted below:

---

[2] At the time of the government proffers on March 24 and March 27, 2023, information relating to the dead rats was still being vetted.  The timing of the placement of the dead rats generally coincides with the timeline relating filing of a complaint against the witness, which attached the Second Superseding Indictment charging Gerace as an exhibit, the government publicly moving to extend the deadline, by affidavit under seal, for dismissal of the criminal complaint, and with the unsolicited "attorney" text messages referenced below.



The witness indicated that they had never been represented by this attorney before. When that subtle approach failed to prevent the witness from communicating with the government, circumstances indicate a more direct approach was utilized.

## III.   THE DEFENDANT'S ATTEMPTS TO REBUT THE GOVERNMENT'S PROFFER FALL SHORT ONCE AGAIN.

In an effort to undermine the government's proffer regarding Gerace's use of his relationship with a local Judge to improperly change his son's last name, the defendant makes misrepresentations to this Court about what occurred on March 27, 2023, at the detention hearing. The defendant argues in his motion for release that "Mr. Gerace's son's mother came to Court on March 27 and made it clear that she was consulted about the name change of her son, she had been involved in the process, the process took months to complete, and

that she was there to support Mr. Gerace at the Detention Hearing asking for his release from custody." Dkt. 493 pg. 8 (emphasis added).   The defendant used this inaccurate claim to support his contention that "the defense proved that the Government's allegations were untrue" regarding the defendant's son's name-change and the domestic violence against the defendant's son's mother.  The government was present for the detention hearing, as was this Court.  Mr. Gerace's son's mother did not speak.  She did not submit a letter or statement on the defendant's behalf.  What actually happened, as reflected in the official transcript from the proceeding, is that defense counsel made a spectacle of the woman's appearance at the detention hearing, sitting with the defendant's family, and then conflated her appearance in court with her acquiescence to a variety of broad-sweeping claims that the government's proffer was inaccurate.  See **Exhibit B**, pg. 22.  The woman herself remained silent.  Given the tactics that this defendant has shown a willingness to employ against people he perceives to be witnesses against him, and the documented history of domestic violence, this Court should view this argument with the utmost skepticism.

Next, in an effort to undermine this Court's reliance on the fraudulent EIDL loan applications, the defendant argues that the blame lies with accountants and bank representatives, but not him.  The defendant completely fails to address the basic facts – that he signed a loan application representing that his business did not present live performances of a prurient sexual nature, and that he had not been charged with a felony.  The defendant's claim – that because he did not misappropriate the funds or fail to repay the loan he should be commended – appears deliberately obtuse.  That does not absolve him of culpability for lying to obtain the money in the first place.

14

**IV.    THE DEFENDANT SHOULD NOT BE RELEASED FROM CUSTODY DUE
        TO THE 54-DAY ADJOURNMENT OF THE TRIAL BECAUSE HE
        CONTINUES TO POSE A DANGER TO THE COMMUNITY.**

Finally, the defendant argues that he should be released due to the adjournment of the

trial from June 21, 2023, until August 14, 2023.  See Dkt. 493 at § IV.  This argument fails

because it has absolutely no bearing at all on whether there are any conditions which will

reasonably assure the safety of any other person or the community.  Even if the Court were

to consider this argument, the defendant's pretrial detention – assuming that it lasts from

March 2023 through October 2023 – will be significantly shorter than the average federal

defendant in the Western District of New York who takes their case to trial.  As this Court is

well aware, it is not unusual for defendants who are detained pending trial to remain detained

for a matter of years – not months.  In fact, in United States v. Donte Walker, 18-CR-237-

JLS, the defendant was detained from November 2018 up until (and throughout) his February

23, 2022, trial date.  Defense counsel cites to United States v. Tigano, a case where the

defendant was detained for 6 years, 9 months, and 26 days after his arrest and before the

commencement of his trial, as if that case somehow prohibits pretrial detention for the five-

month period between this defendant's incarceration and the commencement of his trial date.

880 F.3d 602, 610 (2d Cir. 2018).  It does not.  Tigano addresses a Sixth Amendment speedy

trial claim, not an evaluation of the factors outlined in Title 18, United States Code, Section

3142(g).


When deciding on detention, this Court should consider that a conspiracy of this

nature is inherently more dangerous because of the coordinated criminal activity.  Defendant

Gerace is indicted for his involvement in serious coordinated activity including drug

trafficking, sex trafficking, and witness tampering. He is indicted for coordinating and conspiring with, among others, a sworn DEA agent. His unindicted co-conspirators include drug dealers, organized crime associates, and even a local Judge. In United States v. Marino, 731 F.Supp.2d 323 (S.D.N.Y. August 7, 2010), the defendant was charged with Racketeering Conspiracy, but was not charged with the substantive sex trafficking or drug trafficking offenses. The defendant in Marino argued that, since he was not charged with the substantive offenses, the presumption under § 3142(e) should not apply. The Marino court rejected this argument, holding that predicate acts committed by other members of the conspiracy could be considered in determining whether presumption of danger to the community arose. Id. The Second Circuit has also repeatedly weighed in on this issue, stating in United States v. Ciccone, "**we made it quite clear** in United States v. Colombo, 777 F.2d 96, 98 (2d Cir. 1995), **that the BRA [Bail Reform Act] does not require that the defendant himself commit acts of physical violence as a condition precedent to a detention order**." 312 F.3d 535, 542 (2d Cir. 2002) (emphasis added).

As alleged, the defendant engaged in a drug trafficking conspiracy. "The Second Circuit also has stated that high penalty drug crimes are among 'the most serious' of offenses and that, as a result, Congress limited detention eligibility to these and certain other enumerated offenses." United States v. Argraves, 2009 WL 1859226, at *4 (D. Conn. June 26, 2009). "'Persons charged with major drug felonies are often in the business of importing and distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.'" United States v.

Shea, 749 F.Supp. 1162, 1166 (D. Mass. 1990) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 20, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3203).

In considering the strength of the evidence, the Court's role "is not to determine guilt or innocence." United States v. Jones, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008). Instead, the Court's purpose is only to assess "'the likelihood that the person will fail to appear or will pose a danger to any person or to the community.'" Id. (quoting United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985)). As the government has stated consistently, the strength of this case will be the testimony of well-over 100 witnesses, co-conspirators, and victims, whose testimony will be largely corroborated by documentary evidence, phone records, cell phone extractions, photos, and other evidence. The testimony of each of these numerous witnesses also serves to corroborate the testimony of the others.

The defendant's assertion that he is the custodial parent of his son fails to rebut the presumption that he will pose a danger to the community if released. In United States v. Manso, the defendant asked the court to re-open his detention hearing and order him released based mainly on his claim that his ailing wife needed him to provide care for her. No. 13-CR-83S, 2014 WL 6674715 (W.D.N.Y. 2014). The Honorable Hugh B. Scott, United States Magistrate Judge, denied the defendant's motion, and noted that "crediting personal hardships can lead to disparate treatment of otherwise similarly situated defendants. The detention factors in 18 U.S.C. § 3142(g) do not appear to allow the Court to override concerns about flight and danger to the community because of personal hardships alone." Id. Similarly, in the context of motions for release under Title 18, United States Code, Section 3145(c), the

Second Circuit has held that circumstances which are "purely personal" do not typically rsie to the level of "exceptional" warranting release pending sentence.  See, e.g., United States v. Luciano, 108 F.3d 1370, 1997 WL 120567, *2 & n. 1 (2d Cir. Feb. 24, 1997) (table) (noting that district courts have rejected "purely personal circumstances" as not sufficiently exceptional reasons to release defendants pursuant to § 3145(c) and citing cases).  The history and characteristics of defendant Gerace weigh heavily against pretrial release.   The defendant's criminal history, history of domestic violence, law enforcement connections, and willingness to engage in witness tampering counsel against release.

## V.   THE CONDITIONS PROPOSED BY THE DEFENDANT ARE INSUFICCIENT TO ASSURE THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY.

Due to the defendant's extensive contacts in both the criminal community and the law enforcement community, there are no conditions or combination of conditions that can reasonably assure the safety of any other person or the community.  The defendant proposes a combination of conditions including home detention, GPS location monitoring, computer monitoring, and a signature bond.  Dkt. 493 at 4.  This is insufficient to reasonably assure the safety of the community.  Phone/computer monitoring and home detention does not prevent the defendant from meeting with or talking to criminal confederates at his home, or from using a "land line" or another person's phone to engage in such communication.  The defendant has demonstrated, as evidenced by the conduct underlying the witness tampering indictment, that he prefers to use third parties to threaten and intimidate witnesses. Defendant Gerace's conduct continuously demonstrates that he is willing and able to utilize proxies to engage in criminal conduct, including witness tampering.  The threat posed to the

community is the defendant's presence, at all, in the community, where he can have unrecorded conversations and more easily provide directives to confederates. U.S. Probation is unable to monitor who visits Gerace at his residence, and Gerace has already demonstrated the ability to commit other crimes (i.e., EIDL Loan fraud) undetected by U.S. Probation while on pre-trial release.

This Court already determined the defendant to be a danger to any other person and the community, especially to witnesses in the case against him. Nothing has changed. Therefore, it is respectfully recommended that the defendant be detained pending the outcome of Court proceedings.

## <u>CONCLUSION</u>

Based upon the foregoing, the defendant's motion should be denied in its entirety. There is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community.

DATED: Buffalo, New York, May 30, 2023.

TRINI E. ROSS
United States Attorney

BY:   s/NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5830
Nicholas.Cooper@usdoj.gov