IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

          v.                                    19-CR-227-JLS

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

               Defendants.
_____

UNITED STATES OF AMERICA,

          v.                                    23-CR-37-JLS-MJR

PETER GERACE, JR.,

               Defendant
_____

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION OF THE DEFENDANT'S MOTION FOR RECOSIDERATION AND/OR THE COURT'S SUA SPONTE  RECONSIDERATION OF RELEASE CONDITIONS

       **THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby files this supplemental memorandum in opposition of the setting of release conditions.

## BACKGROUND AND PROCEDURAL HISTORY

       As pertinent to this filing, on May 31, 2023, the parties engaged in oral argument regarding the defendant's motion to re-open the defendant's detention hearing pursuant to

Title 18, United States Code, Section 3142(f).  Upon conclusion of the argument, the Court held that the defendant failed to meet his burden to establish that there was new information, that is, "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).  Accordingly, the Court denied the defendant's motion.  *See* Minute Entry, Doc. No. 499.

However, the Court indicated on the record that it was considering *sua sponte* reconsideration of the defendant's release conditions and invited the parties to submit any additional information by Friday, June 2, 2023.  The Court was particularly focused upon new information proffered by the government that dead rats were placed on the property at the home of a witness and, as a result, this memorandum will set forth the timeline of events (including pertaining to the dead rats), argument, and legal authority that should compel this Court to adhere to its March 28, 2023 decision to detain the defendant because "the Government has proven by clear and convincing evidence that no condition or combination of conditions  will reasonably assure the safety of any other person and the community."  *See* Case No. 23-CR-37, Doc. No. 8 at 2.  Nothing that has transpired since that time has weakened the government's proof against the defendant in either Case No. 19-CR-227 or 23-CR-37.  In reaching its decision the Court specifically held that "the weight of the evidence is strong; the defendant is subject to a lengthy period of incarceration if convicted; [and] the defendant's prior criminal history."  *Id.*

## THE GOVERNING LAW

As set forth above, the Court denied the defendant's motion to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f).  To the extent the Court may *sua sponte* reconsider its own detention determination in this case, reconsideration of a prior decision is generally only justified in one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law to prevent manifest injustice.  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  Reconsideration should be denied when a movant "seeks solely to relitigate an issue already decided."  *Schader v. CSX Trasp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

The Second Circuit has made clear that, when a finding of dangerousness is related to violent conduct, it need not be shown that the defendant personally engaged in the violence. *United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985); *see also United States v. Salerno*, 481 U.S. 739, 744 (1987) ("The activities of a criminal organization […] do not cease with the arrest of its principals and their release on even the most stringent of bail conditions.").

To the extent the Court may be *sua sponte* reconsidering its prior decision to impose restrictive release conditions, the Second Circuit has expressly held that "the Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails.  It is a fundamental principle of fairness that the law protects 'the interests of rich and poor criminals in equal scale, and its hand extends as far to each.'"  *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019).

Because the defendant is charged via indictment with drug trafficking and violent crime, the charges pending against the defendant trigger the rebuttable presumption that he is a flight risk and a danger to the community. *See* 18 U.S.C. §3142(e)(3)(A) and B; *see also United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).   Notwithstanding this rebuttable presumption, the burden of persuasion remains with the Government to demonstrate dangerousness by clear and convincing evidence, and risk of flight by a preponderance of the evidence. *United States v. Fernandes*, 50 F. Supp. 3d 406, 408 (W.D.N.Y. 2014) (citing *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985)).   The Government may sustain its burden by reliance on the presumptions of flight and dangerousness. *Id.*; *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991). Moreover, "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption." *Id.*   Even if a defendant does introduce rebuttal evidence, the presumption does not disappear, but rather "continues to be weighed along with other factors to be considered when deciding whether to release a defendant." *Id.* (quoting *Rodriguez*).   In other words, even if this Court has determined that defendant Gerace has produced rebuttal evidence, the rebuttable presumption has not disappeared and must continue to be weighed along with other factors.

The government may proceed by proffer.  Indeed, "[i]t is well established in this circuit that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).  Moreover, witness tampering is a crime that threatens the integrity of the trial process and supports a finding that a defendant is a danger to the community.  *Id.* (collecting cases).

There is no bright-line rule for when the length of pretrial confinement violates due process. *United States v. Melendez-Carrion*, 820 F.2d 56, 59 (2d Cir. 1987).  Pretrial detention satisfies due process only if its purpose is regulatory rather than punitive. *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012).  Permissible regulatory purposes include "preventing danger to the community" and ensuring a defendant's "presence at trial." *Id.*  To determine if pretrial detention has transgressed from regulatory to punitive, the Second Circuit considers three factors: (1) the strength of the evidence justifying detention; (2) the Government's responsibility for the delay in proceeding to trial; and (3) the length of the detention itself.  *Id.*

## FACTS RELATING TO WITNESS TAMPERING AND "DEAD RATS"

Given the Court's familiarity with the facts of the case in support of its prior detention determination, the government's focus in this filing is to amplify details pertaining to the placement of dead rats at the residence of a witness.  The following timeline applies:

| | |
|---|---|
| April 2019: | ████████████████ was arrested ████████████ and provided information to federal law enforcement about Gerace and Pharaohs Gentlemen's Club (PGC). |
| July 2019: | ████████████████ was assaulted at a bar by a long-time PGC employee and Gerace associate.  During the assault the assailant referenced ████ snitching on Gerace and/or PGC. |
| ████████████ | ████████████████████████ |
| October 31: 2019: | Indictment 19-CR-227 was returned charging Bongiovanni, and it referenced Gerace as Coconspirator 1. |
| November 19, 2019: | Gerace and others ████████████████████ sent threatening messages to ████████████ ████████ |



.

December 12, 2019:    Law enforcement executed federal search warrants at PGC and
                      Gerace's residence.





March 14, 2023:        [REDACTED] contacted the FBI at the advice of [REDACTED] attorney to report that rats had been thrown on [REDACTED] [REDACTED]. The FBI conducted follow-up interviews and responded to the location and observed the dead rat. [REDACTED]







March 28, 2023:        The Court detained Gerace.  There have been no reported witness tampering incidents since that time, ▮▮▮▮▮▮▮▮▮▮

## **ARGUMENT**

This Court should hold firm in its finding that defendant Gerace is a danger to the community.  There was no information that this Court overlooked or undervalued in reaching its sound conclusion that the defendant should be detained.  In the two months that defendant Gerace has been detained, there has not been (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law to prevent manifest injustice.  *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255.  To the contrary, the government has proffered additional information circumstantially establishing that defendant Gerace may be engaged in additional witness tampering activity.

### I.        **Gerace has a pattern of tampering and intimidating witnesses while on release.**

Since defendant Gerace realized that he was a target of this federal investigation, he and others have engaged in a pattern of attempting to obstruct justice by intimidating and

tampering with witnesses.  Courts have recognized the inherent power of a trial court to remand a defendant, such as defendant Gerace, without bail before trial when such defendant jeopardizes the court's processes by threatening government witnesses.  *United States v. Payden*, 768 F.2d 487, 490 (2d Cir. 1985)

First, after Gerace deduced who several of the witnesses were, he used his vast financial resources to file a civil lawsuit against them in an effort to silence and intimidate them and to dissuade them from cooperating with law enforcement or appearing at court proceedings.  Gerace, a wealthy strip club owner who lives in a large home in Clarence, New York, filed the lawsuit against two women with little means and no assets.  The fact that Gerace hired an attorney to file a lawsuit to obtain an uncollectable judgment demonstrates its nefarious purpose, that is, to intimidate, harass, and deter the witnesses.

Second, an associate of Gerace assaulted ███████████  shortly after she provided information to the authorities about Gerace.  To the extent there is not evidence that Gerace directed the assault, the event nevertheless underscores his dangerousness.  In particular, if Gerace did not direct the assault, it demonstrates that loyal associates of Gerace would act on his behalf to harm or threaten witnesses on sight-- even in the absence of a direct instruction.

Third, at the time the threatening Facebook messages were sent to ███████████ ███████████████████.  The Facebook threats exemplify Gerace's ability to motivate and utilize others to tamper with witnesses.  Moreover, the messages were sent while Gerace was

in the comfort of his own home, using another person's phone and Facebook account.
███████████████████████████████████████████████████████
███████████████████████████████████████ The grand jury
determined that there is probable cause to believe Gerace is responsible for the threats, *see*
Case No. 23-CR-37-JLS, and its probable cause finding is controlling.

Fourth, as detailed above, circumstantial evidence strongly compels the conclusion
that Gerace was behind the dead rats that were placed at ███████████, and the
purpose was to intimidate ████ and prevent ███ from continuing to be a cooperating
witness as the case proceeds to trial.

    a. **The Court should weigh the evidence and find Gerace responsible for the dead rats.**

As the above timeline demonstrates, ████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

───────────────────

■ ████████████████████████





"The law draws no distinction between direct and circumstantial evidence in requiring the government to carry its burden of proof." *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir. 2005) (citation omitted). This Court's finding may be based entirely on circumstantial evidence as long as the inferences of culpability drawn from the circumstances are reasonable, *see id.*, and "[t]he possibility that inferences consistent with innocence as well as with guilt might be drawn from circumstantial evidence is of no matter[.]" *Id.; see also United States v. Enix*, 209 F. Supp. 3d 557, 573 (W.D.N.Y. 2016) ("[C]ircumstantial evidence can be just as persuasive as direct evidence.").

The possibility of innocent explanations pertaining to the placement and timing of the rats should not matter and should not deter this Court from continuing to find that defendant Gerace is a danger to the community. ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████        ███████████

<hr />

■ ████████████████████████████████████████████████████
████████████████



███████████████████

Based upon the timing, placement, and circumstances, the Court should consider the dead rats and hold firm in its conclusion from just two months ago that defendant Gerace is a danger to the community. The only thing that has changed since then is that additional circumstances have revealed he likely was engaged in more witness tampering than the Court realized at the time, and that since he has been detained no government witnesses have reported any issues. Just like the timing and placement of the dead rats, that is no coincidence.

## ANALYSIS OF THE FACTORS SET FORTH IN 18 U.S.C. § 3142(g)

**(1) The nature and circumstances of the charged offenses**

The nature and circumstances of the charged offense weigh heavily in favor of detention.

In Case No. 19-CR-227, Gerace is facing up to life imprisonment for bribing a DEA agent, conspiring to distribute and distribution of controlled substances, maintaining a drug-involved premises, and for victimizing vulnerable women by exploiting their drug addictions and leveraging the power imbalance between them in order to coerce them into engaging in commercial sex acts with him, his friends, and associates.

In Case No. 23-CR-37, Gerace is facing up to 20 years of imprisonment for distributing cocaine and threatening a woman her perceived to be an important witness against him in Case No. 19-CR-227. Gerace's conduct strikes at the heart of the integrity of the proceedings

in this case and compels the conclusion he should remain detained.  *See, Payden,* 768 F.2d at 490.

Accordingly, this factor weighs heavily in favor of detention.

**(2) The weight of the evidence against the person[20]**

The weight of the evidence against this defendant is very strong. The evidence in this case consists of well-over 100 witnesses, including women Gerace and others exploited and victimized; dozens of exhibits; incriminating text messages from Gerace's phone; and volumes of other evidence.  The government has previously proffered text messages from Gerace's phone between Gerace and deceased Judge Michalski, but here is another text message corroborative of sex trafficking from Gerace's phone on October 16, 2017, which states:

> **Gerace:**       **"You took one of my top weekend girls"**
>
> **Other:**        **"And she does anal…lol[21]**

---

[20] This is a factor that the U.S. Probation Department does not take into consideration when making its recommendations.

[21] Excerpt of Gerace phone extraction:

Based upon the information set forth in the Second Superseding Indictment in Case No. 19-CR-227, Indictment 23-CR-37, the Government's Pre-Trial Memorandum (previously filed under seal), the evidence proffered by the government on March 24, March 27, and May 31, 2023, and as detailed herein and in the government's prior filing dated May 30, 2023, the evidence is very strong and this factor weighs heavily in favor of detention.

**(3) The history and characteristics of the person, including such matters as the person's family ties, employment history, length of residence in the community, criminal history, and record concerning appearance at court proceedings**

This factor weighs heavily in favor of detention.

The defendant is a prior federally convicted felon who violated his supervised release conditions in that case by using drugs and working at PGC. Moreover, the defendant has a history of lying to U.S. Probation in both his prior federal case and upon arrest in this case. Accordingly, to the extent this Court would need to rely upon representations by the defendant that he would adhere to conditions set—the defendant's representations are unworthy of belief. The Court should not trust the defendant to adhere to his word. Defense counsel has repeatedly stated that the defendant is on trial for his life. This Court should consider the cost-benefit analysis from the defendant's perspective. The risk of tampering with a witness and getting caught (resulting in a remand pending trial) – versus the reward of successfully tampering with witnesses and preventing them from testifying against him at trial (avoiding a potential life sentence). The defendant has every motive to continue tampering with witnesses should he be released on any conditions.

The defendant has a history of abusing women in domestic incidents, and as

17

previously proffered by the government was convicted of assault based upon one of the incidents involving his ex-wife.

The defendant has engaged in criminal conduct while on pre-trial release, including EIDL loan fraud, as previously proffered in detail by the government, and as detailed above and in prior proffers his history includes acts of witness tampering and intimidation. Moreover, he has boasted about having law enforcement and judicial contacts and has described himself to one witness as untouchable. The information previously proffered to the Court and located in his cell phone corroborates and supports the defendant's boasts regarding his law enforcement and judicial contacts.

The defendant's employment at PGC is the location of many of the defendant's crimes. The defendant's employees include members of the Outlaws Motorcycle Club. One member of the Outlaws MC has previously made false and misleading statements on Gerace's behalf, as outlined in a prior filing in this case (*see* Doc. No. 110), and law enforcement has long considered the Outlaws MC to be a dangerous and violent criminal organization. See, e.g., United States v. Starrett, 55 F.3d 1525, 1533 (11th Cir. 1995) ("The Outlaw Motorcycle Club (the "Outlaws") is one of the four largest national 'one-percenter' motorcycle clubs. Witnesses testified that the term 'one-percenter'—usually depicted by the symbol '1% er'—is motorcycle gang parlance meaning that the club is comprised of the one percent of the overall biker population who maintain total independence from society, and who are known to cause the most trouble, or 'raise the most hell.'"); see also United States v. Bowman, 302 F.3d 1228, 1231 (11th Cir. 2002) (former international president of the Outlaws convicted of

racketeering, conspiracy to murder, and various other offenses); <u>United States v. Lawson</u>, 535 F.3d 434, 438 (6th Cir. 2008), <u>as amended</u> (Oct. 9, 2008) (RICO prosecution relating to Outlaws MC "Green Region", including a murder at a strip club.).

As to family ties, while the defendant's family is located in this area, the defendant's attorney recently made admissions to The Buffalo News concerning the defendant's relatives, as follows:

> "There is no way this jury is going to be able to unhear the term Italian organized crime," Cohen said. They're not going to unhear the term mafia. And they're also not going to be able to unhear the fact that Peter does have relatives who were involved in that. Peter himself was never involved in Italian organized crime. But he has relatives who likely were."

*See,* https://buffalonews.com/news/local/crime-and-courts/ex-dea-agent-strip-club-owner-should-be-tried-together-judge-says/article_d2592222-e9ed-11ed-aec6-e7ad940a8f3e.html (visited June 2, 2023).

Accordingly, this factor weighs heavily in favor of detention.

**(4) The nature and seriousness of any risk of danger if the person is released**

As set forth above, the defendant poses a danger to the community in a multitude of ways if released.  Whether through witness tampering, fraud schemes, or drug and sex trafficking activity through PGC, the defendant is an undeniably danger if he is released pending trial.  Simply put, where there is a will there is a way.

If the defendant is released, U.S. Probation does not have the ability to monitor his activity and meetings 24 hours per day, 7 days per week.  Monitoring of his phone will not provide the content of any communications, or threats, and certainly will not detect whether he is using a burner phone.  Monitoring his location will not work either.  The defendant has committed and engaged in crimes using a computer, and a phone and social media account of a third-party.   If the defendant is out of custody, where his calls, mail, and visits are unmonitored, it is much easier for him to carry on and to place actual or perceived witnesses in danger or in fear.

This Court should not indulge the defendant's offer to create a de facto jail at his residence because doing so would be woefully insufficient to protect the community. Electronic monitoring, home incarceration, and assurances by the defendant and others that he will comply with conditions are insufficient in the face of the flight risk and danger he poses.  *See, United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001).  Although the defendant has great means, "[t]he Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails.  It is a fundamental principle of fairness that the law protects 'the interests of rich and poor criminals in equal scale, and its hand extends as far to each.'" *United Boustani*, 932 F.3d at 82.

Since the defendant has been detained, there have not been issues with witness tampering.  His detention may have had a chilling effect on any of his loyalists and has

undoubtedly made it more difficult for him to effectively communicate with others who may be inclined to tamper with witnesses on his behalf.   In jail, the content of his calls are monitored and recorded; his visits are documented; and his behavior is monitored and observed.   At home – they are not.

Accordingly, this factor weighs heavily in favor of detention.

## FIVE MONTHS OF DETENTION DOES NOT OFFEND DUE PROCESS OR IMPAIR HIS SIXTH AMENDMENT RIGHT TO COUNSEL

To the extent the defense raised the length of pre-trial detention due to the adjournment of the trial, such concerns do not offend due process.   Indeed, each relevant factor in the analysis weighs heavily in favor of the government.   *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012).   First, as set forth above and in the government's prior arguments, the weight of the evidence justifying detention is strong.   Second, the government is not responsible for the delay in the start of trial from June 21, 2023, until August 14, 2023.   Third, approximately five months of pre-trial detention is insignificant.   Defendants in the Western District of New York and elsewhere are often incarcerated for several years pre-trial before a trial commences.   *See United States v. Hill*, 462 F. App'x 125, 127 (2d Cir. 2012) (collecting cases).

Similarly, the defendant's detention in a local jail does not deprive him of his right to counsel.   In *United States v. Echeverri*, the court rejected a claim that a defendant's pre-trial detention "over 200 miles round trip" from the Eastern District of New York denied his right to counsel.   No. 91-CR-885 (DRH), 1992 WL 81876, at *2 (E.D.N.Y. Mar. 31, 1992); *see also*

*United States v. Allick*, No. CRIM.A. 2011-020, 2012 WL 32630, at *4-5 (D.V.I. Jan. 5, 2012) (no violation of Sixth Amendment right to counsel where counsel had to fly from the Virgin Islands to Puerto Rico where the defendant was detained); *United States v. Goudelock*, No. 18-CR-138 (JLS), 2022 WL 17687999, at *5 (W.D.N.Y. Dec. 15, 2022) (denying motion for a new trial based upon the defendant's claim that his pre-trial detention violated his Fourteenth Amendment rights and Sixth Amendment right to counsel) (Sinatra, J.).

## **CONCLUSION**

Based upon the foregoing, the Court should not reconsider its decision to detain the defendant and should reaffirm its finding that he is a danger to the community.  There has not been an intervening change in controlling law; new evidence; or the need to correct a clear error of law to prevent manifest injustice.  To the contrary, there is additional compelling evidence that should reassure the Court that it correctly determined that the defendant is a danger to the community.  All of the factors pursuant to Title 18, United States Code, Section 3142(g) weigh heavily in favor of detention, and the five months that the defendant will have served in jail before trial neither violates Due Process, nor the defendant's Sixth Amendment right to counsel.

There is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community, and the defendant should remain detained pending trial.

DATED:  Buffalo, New York, June 2, 2023.

TRINI E. ROSS
United States Attorney


BY:   s/JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5839
Joseph.Tripi@usdoj.gov


BY:   s/NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5830
Nicholas.Cooper@usdoj.gov