IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

       v.                                                                         19-CR-227-JLS

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

                Defendants.

---

UNITED STATES OF AMERICA,

       v.                                                                 23-CR-37-JLS-MJR

PETER GERACE, JR.,

                Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT GERACE'S MOTION TO PRECLUDE EXPERT WITNESS TESTIMONY

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby files its response to defendant Peter Gerace's motion to preclude expert witness testimony regarding sex trafficking.  Dkt. 509.

## INTRODUCTION

This Court should permit the expert testimony of Rebecca Bender on the topic of sex trafficking because (1) she is qualified to offer testimony on the topic, (2) the topic is beyond the ken of the average juror and relevant to the facts of the case, and (3) she will not be offering her opinion as to any of the evidence specific to this case.

## THE LAW

Under Federal Rule of Evidence 702(a), an expert witness may testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The district court may exclude expert testimony that touches upon an ultimate issue when (1) it is not helpful to the trier of fact; (2) it pertains to a criminal defendant's mental state; or (3) it is unduly prejudicial, confusing, or time-consuming under Federal Rule of Evidence 403. *See United States v. Boissoneault*, 926 F.2d 230, 232 (2d Cir. 1991). However, "[i]t is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).

Rule 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. "Evidence is unfairly prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (internal quotation marks omitted). On appellate review, "Rule 403 determinations

command especial deference because the district court is in the best position to do the balancing mandated by Rule 403." *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011) (internal quotation marks omitted).

The Second Circuit has routinely upheld the admission of expert testimony to explain the workings of criminal transactions and enterprises. *See, e.g.*, *United States v. Shine*, No. 20-314, 2022 WL 761520, at *4 (2d Cir. March 14, 2022) (finding no abuse of discretion in admitting expert testimony of special agent regarding "common practices and methods used in the sex trafficking industry"); *United States v. Boissoneault*, 926 F.2d 230, 232 (2d Cir. 1991) (finding no abuse of discretion in admitting expert testimony regarding "the characteristics and operating methods of narcotics dealers") (collecting cases); *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993) (same, pertaining to the structure of organized crime families).

Rule 702 only requires that an expert witness have "scientific, technical, or other specialized knowledge" gained through "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. As is relevant here, scientific knowledge is not required; "other specialized knowledge" may suffice. *See, e.g., Locascio*, 6 F.3d at 937 (holding that expert who had been an FBI agent for 17 years, with 5 years on the Organized Crime Program and as a supervisor for two of those years had sufficient specialized knowledge); *United States v. Simmons*, 923 F.2d 934, 946 (2d Cir. 1991) (holding that a veteran DEA agent was "well-suited" to offer expert testimony about coded narcotics terminology).

## DISCUSSION

In this case, one of the ultimate issues is whether Gerace conspired to commit sex trafficking by means of force, threats of force, or coercion. Ms. Bender's testimony concerning the business of commercial sex, methods of coercion and persuasion, and human trafficking will be relevant and helpful to the jury. Ms. Bender's testimony will assist the jury in understanding (1) the significance of the relationship between a sex trafficking victim and the trafficker; (2) the coercive tactics employed by traffickers to target vulnerable victims; (3) why vulnerable populations like drug addicts, the homeless, the mentally ill, and previous sexual assault victims, make good targets for traffickers; (4) the significance of harms on the victim, including violence (or express or implied threats of violence), drug withdrawal, homelessness, and financial hardship; and (5) the impact of contributing circumstances employed by the trafficker to control their victims, such as isolation, financial dependency, physical abuse, emotional manipulation, and sleep deprivation. Without Ms. Bender's testimony, "the jury would have. . .no way of determining whether the victim's experiences were common, unique, or implausible." *United States v. Warren*, 774 F. App'x 778, 782 (4th Cir. 2019). "By and large, the relationship between prostitutes and pimps is <u>not</u> the subject of common knowledge," and a trier of fact "in the dark about that relationship may be unprepared to assess the veracity of an alleged pimp, prostitute, or other witness testifying about prostitution." *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) (emphasis added).

Ms. Bender's testimony will be similar in function to that of experienced narcotics agents who provide expert testimony to "describe the characteristics and operating methods of narcotics dealers" and explain the "use and meaning of codes and jargon developed by

4

drug dealers to camouflage their activities." *Boissoneault*, 926 F.2d at 232-33 (collecting cases). In that vein, Courts have routinely affirmed the admission of expert testimony in the field of prostitution and/or sex trafficking where it is helpful and relevant to a jury. *See e.g.*, *United States v. Parks*, 849 F. App'x 400, 404 (4th Cir. 2021); *United States v. Young*, 955 F.3d 608, 615-16 (7th Cir. 2020); *United States v. Geddes*, 844 F.3d 983, 991 (8th Cir. 2017); *United States v. Bryant*, 654 F. App'x 807, 813-14 (6th Cir. 2016); *United States v. Brinson*, 772 F.3d 1314, 1318-20 (10th Cir. 2014). *United States v. Bryant*, 654 F. App'x 807, 814 (6th Cir. 2016); *United States v. Biancofiori*, No. 16 CR 306-1, 2018 WL 2463387, at *3 (N.D. Ill. June 1, 2018) (purpose of [expert] testimony was to inform the jury about the common dynamics that occur in the operation of the sex trafficking industry); *United States v. Bell*, No. CR 17-20183, 2022 WL 1014497, at *4 (E.D. Mich. Apr. 5, 2022); *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *5 (6th Cir. Jan. 27, 2022) (physical and psychological impacts of drug dependency, addiction, and withdrawal).

Ms. Bender is a qualified expert witness on the topic of sex trafficking and prostitution. Ms. Bender has professionally interacted with over 1300 human trafficking victims as the founder and CEO of the Rebecca Bender Initiative ("RBI"). Ms. Bender also has personal experience as an individual who was sex trafficked for approximately six years, including through strip clubs. Ms. Bender trains professionals and law enforcement agencies, including members of the FBI and the Department of Homeland Security Investigations, to identify and investigate sex trafficking committed through the use of force, fraud, and coercion. Ms. Bender has trained over 115,000 law enforcement professionals in the field of sex trafficking, including trainings focused on topics regarding assessing culpability, coercive control,

typologies of trafficking, the illusion of choice, why victims don't run away, and money laundering (as it intersects with human trafficking). Ms. Bender has conducted trainings for undercover officer schools, the International Association of Chiefs of Police, the International Association of Human Trafficking Investigators, and the District Attorney's Association. As a consultant, Ms. Bender has worked with law enforcement on over a dozen undercover operations. During these operations, Ms. Bender conducted interviews of approximately 5 to 10 victims per night. Those interviews included discussing with the victims, *inter alia*: how they arrived at the city they are in; coercive tactics used by the trafficker; and vulnerabilities that each specific victim may have. Ms. Bender has conducted well over 50 of the interviews described above. Ms. Bender was appointed to the National Advisory Council to Congress by the United States Department of Health and Human Services. She has received numerous public and private awards for her work, described in detail on her curriculum vitae, which is attached hereto and incorporated by reference as **Exhibit A**.

Ms. Bender has testified or assisted as an expert witness in State Courts in California, Oregon, and Texas, as well as United States District Court for the Northern District of Texas. Ms. Bender's extensive work experience and life experience qualifies her to offer expert testimony on this subject. *See United States v. Brooks*, 610 F.3d 1186, 1195-97 (9th Cir. 2010) (detective was a qualified expert in the business of prostitution where her testimony was based on 20-25 prostitution investigations and related work as an undercover officer). Even if Ms. Bender lacks "the academic prestige or clinical experience of some experts," she is nevertheless qualified by her "extensive experience investigating human trafficking[.]" *Warren*, 774 F. App'x at 782. *See also United States v. Arslanouk*, 853 F. App'x 714, 718-19 (2d

Cir. 2021) (Summary Order) (rejecting defendant's argument that an FBI agent should not have been qualified as an expert because he had not received specialized training, authored publications, or been previously qualified as an expert).  In *United States v. Kidd*, a commercial sex act exploitation and child pornography case, the government sought to introduce expert testimony of the psychological relationship between a pimp and the women prostituted. 385 F.Supp.3d 259, 260-61 (S.D.N.Y. July 1, 2019).  The defendant moved to preclude the expert testimony, arguing that the testimony was unreliable, not probative, and highly prejudicial. *Id*.  In addressing the reliability argument, the district court stated:

> Despite the prevalence of such expert testimony regarding the psychology of the pimp-prostitute relationship, Kidd cites no case where such testimony was disallowed on Daubert grounds. Indeed, case law quite commonly upholds this type of testimony against Daubert challenges. See, e.g., *United States v. Kelly*, No. 07 CR. 374, 2008 WL 5068820, at *9 (E.D.N.Y. July 10, 2008) ("The courts have deemed prostitution rings and the relationships between prostitutes and pimps to be subjects in which expert testimony may be relevant.").

The court also considered cases rejecting a *Daubert* challenge, finding:

> [N]o considerable debate exists within the literature as to the destructiveness or control aspects of a pimp-prostitute relationship." *United States v. King*, 703 F. Supp. 2d 1063, 1072 (D. Haw. 2010) (rejecting a Daubert challenge to Cooper's testimony premised on the argument that Cooper implemented no "accepted psychiatric or psychological test ... to arrive at her ... opinions about how [pimps] create and maintain a sex trafficking organization").

*Id.*, 263–64.  Ultimately, the district court ruled that the expert testimony was reliable, relevant, and that its probative value outweighed its potential prejudice.  *Id.* at 265.  The district court in *Kidd* specifically relied on the law of this Circuit that "[s]ocial science research, theories and opinions cannot have the exactness of hard science methodologies and expert testimony need not be based on statistical analysis in order to be probative." *United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008).

The defendant contends that Ms. Bender's proffered testimony regarding the common practices and methods used in the sex trafficking industry is readily apparent to the average juror.  *See* Dkt. 509 at 6.  It is not.  **The Second Circuit has ruled that it is not**.  In *Shine*, the Second Circuit upheld the district court's decision to permit the expert witness to testify as to the "common practices regarding the business of prostitution generally," where the district court acted as a vigilant gatekeeper of the scope of the testimony.  2022 WL 761520 at *4 (2d Cir. March 14, 2022) (citing *United States v. Young*, 955 F.3d 608, 615 (7th Cir. 2020) (concluding that expert testimony that "defined key terms and explained common sex-trafficking dynamics" was "reliable and helpful for the jury")).  In *United States v. Joseph*, the district court precluded a defense expert from offering testimony regarding role-playing in the context of sexually explicit conversations on the internet.  542 F.3d 13 (2d Cir. 2008).  The Second Circuit reversed the conviction for unrelated reasons, but "urge[d] the District Court to give a more thorough consideration to the defendant's claim to present [the expert's] testimony, in the event it is offered at retrial."  *Id*. at 21.  The Second Circuit noted:

> Dr. Herriot's field of study and experience qualified him to offer relevant testimony. He has conducted a large number of interviews and studied chat-room conversations to understand sexual behavior on the Internet. Social science "research, theories and opinions cannot have the exactness of hard science methodologies," *Jenson v. Eveleth Taconite Co.,* 130 F.3d 1287, 1297 (8th Cir.1997), and "expert testimony need not be based on statistical analysis in order to be probative," *United States v. Long,* 328 F.3d 655, 668 (D.C.Cir.2003). "[P]eer review, publication, potential error rate, etc.... are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir.2000). In such cases, the place to "quibble with [an expert's] academic training" is "on cross-examination" and goes to his "testimony's weight ... not its admissibility." *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995).
>
> *Id*. at 21–22.

Ms. Bender's expert testimony is admissible because it is based upon her specialized knowledge, training, and experience. To the extent the defense questions Ms. Bender's credentials, they are free to explore that subject during cross-examination, but such matters pertain to the weight of the testimony, not its admissibility. The Second Circuit has routinely affirmed expert testimony as to the workings of criminal transactions and enterprises. This case should not be treated differently.

## CONCLUSION

Based upon the foregoing, the defendant's motion should be denied in its entirety and this Court should permit Ms. Bender to testify in the manner described above.

DATED: Buffalo, New York, June 15, 2023.

                                                TRINI E. ROSS
                                                United States Attorney

BY:   s/NICHOLAS T. COOPER
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5830
        Nicholas.Cooper@usdoj.gov