IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

      v.                                                      19-CR-227-LJV

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

          Defendants.

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

      v.                                                      23-CR-37-LJV

PETER GERACE, JR.,

          Defendant.

───────────────────────────────────────────────

## GOVERNMENT'S MOTION FOR A GAG ORDER

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby moves for a gag order regarding the above-captioned cases.

## SUMMARY OF THE ARGUMENT

The government is requesting a gag order because counsel for defendant Gerace continues to make comments to the local media in order to denigrate witnesses, potentially pollute the jury pool, and to otherwise try this case through the media. Defendant Gerace's counsel has, almost from the inception of this case, been on a campaign to try this case

through the media and has repeatedly made critical comments about witnesses, the judiciary, evidence, and prosecutors. The government's serious concern for the integrity of the trial and witness safety, in light of the repeated commentary by defense counsel to the media about expected government witnesses, evidence, and court rulings, provides sufficient justification for the Court to issue such an order.[1] Based upon defendant Gerace's counsel's conduct to date, and the fact that he has described himself on his public Linkedin profile as someone who controls case narratives through the media, there is no end in sight to his tactical extrajudicial commentary.[2] The Court should grant the government's motion for a gag order.[3]

---

[1] Pursuant to the Victims' Rights and Restitution Act ("VRRA"), the United States has the responsibility to "arrange for . . . reasonable protection from a suspected offender and persons acting in concert with or at the behest of the suspected offender." 34 U.S.C. § 20141(c)(2). With witnesses who have "suffered direct physical [and/or] emotional . . . harm as a result of the commission of a crime," the government is statutorily obligated to make every effort to ensure witness safety. *Id.* at (e)(2).

[2] In its Combined Pretrial Memorandum and Motions in Limine, filed under seal on April 26, 2023, the government provided notice that if such conduct continued, it would file the instant motion for a gag order. Since that time, defense counsel has doubled down and unfairly criticized virtually every adverse judicial decision, as detailed *infra*.

[3] As excerpted below, Gerace's defense counsel, Attorney Steven Cohen, Esq.'s ("Attorney Cohen") public Linkedin profile previously stated in part: "**Cohen successfully uses media to garner public support for clients, or conversely to keep matters out of the press.**" (Emphasis added) (visited March 25, 2022). Recently, this account apparently has been made private.

Linkedin    Join now    Sign in

broad range of cases.

His practice is unique in that, as a civilian, he is brought in to handle sensitive government matters requiring utmost confidentiality and discretion. In addition to suing governments, Cohen represents/advises agencies as special counsel and politicians of all parties in dealing with politically/media sensitive matters that clients need to remain off-grid. Cohen successfully uses media to garner public support for clients, or conversely to keep matters out of the press.

He has testified before Congress regarding prosecutorial misconduct.

Cohen is brought in by agencies to train personnel in Constitutional compliance, use of force, warrantless searches, lawful

Join to view Steven's full profile

View full profile

2

## A.     <u>Legal Principles Regarding Gag Orders</u>

"Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. California*, 314 U.S. 252, 271 (1941). As such, a court has the authority to order prior restraint of public statements (so-called "Gag Orders") pertaining to any matter in front of it. *See United States v. Salameh,* 992 F.2d 445, 447 (2d Cir. 1993). Such a prior restraint "normally carries a heavy presumption against its constitutionality." *Id.* at 447 (citing *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 570 (1976). However, a court may impose such restrictions in the pursuit of "protect[ing] the integrity of the judicial system" and to ensure a "fair trial." *Salameh*, 992 F.2d at 447. Specifically, a court is authorized to prohibit "extrajudicial statements by any lawyer, party, witness, or court official" which would divulge "prejudicial matters," including the "identity of prospective witnesses or their probable testimony." *Sheppard v. Maxwell,* 384 U.S. 333, 361 (1966). The speech of an attorney engaged in a judicial proceeding may be subject to greater limitations in comparison to other citizens or members of the media. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1073 (1991); *see also United States v. Brown,* 218 F.3d 415, 425 (5th Cir. 2000) ("The Supreme Court and other Courts of Appeals have recognized a 'distinction between participants in the litigation and strangers to it,' pursuant to which gag orders on trial participants are evaluated under a less stringent standard than gag orders on the press." (citing *Gentile*, 501 U.S. at 1071–72; *News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1512–13 & n.16 (11th Cir. 1991); *In re Dow Jones,* 842 F.2d 603, 608–09 (2d Cir. 1988); *Levine v. United States District Court*, 764 F.2d 590, 595 (9th Cir. 1985))).

Although an order restraining an attorney's speech must not constitute a "blanket prohibition" extending to all topics of a given case *Salameh,* 992 F.2d at 447, an order of prior

3

restraint prohibiting certain public statements made by attorneys is constitutionally permissible when there is a "substantial likelihood of materially prejudicing an adjudicative proceeding." *Gentile*, 501 U.S. at 1075; *see In re Application of the New York Times Co.,* 878 F.2d 67, 68 (2d Cir.1989) (decision on legality of a "gag order," based on analysis of the likelihood of prejudicial effect of attorney statements made to the media.).

Prior to restraining speech in this manner, a court must also determine if "other alternative remedies" would suffice in reducing the public statements' prejudicial effect. *United States v. Wilson*, 925 F. Supp. 2d 410, 412 (E.D.N.Y. 2013) (citing *Dow Jones,* 842 F.2d at 611. Among these alternative means, the Supreme Court has listed measures such as: venue change, certain warnings to the parties and media, as well as anonymous, and sequestered juries, respectively. *See Sheppard,* 384 U.S. at 358–63. Most importantly, the Court must consider the overall effectiveness of the prior restraint order, in comparison to the less constitutionally burdensome alternatives, in light of the posed threat at hand. *See Salameh,* 992 F.2d at 447.

The Supreme Court has made it clear that "trial judges have a responsibility to avoid the creation of a 'carnival atmosphere' in high-profile cases." *United States v. Brown*, 218 F.3d 415, 429 (5th Cir. 2000) (citing *Sheppard*, 384 U.S. at 358). "Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and ex parte statements by counsel [or parties] giving their version of the facts obviously threaten to undermine [the] basic tenet that the outcome of a trial must be decided by impartial jurors." *Id.* (citing *Gentile*, 501 U.S. at 1070) (punctuation omitted).

B.   **Analysis**

This case has received significant local and some national media attention. The government's request for a gag order is predicated on its concerns for the integrity of the upcoming criminal trial, including witness safety. Defendant Gerace's counsel's insistence on making accusations in the press against witnesses, the judiciary, and others is an effort to create a "carnival like" atmosphere and to use the press to garner public support for his client in contravention of the "basic tenet that the outcome of a trial must be decided by impartial jurors." *See Brown supra*. Indeed, the repeated, public besmirching of witnesses and trial participants in the media could be a catalyst for those who would intimidate and tamper with witnesses on Gerace's behalf.

In fact, as the Court is aware, a grand jury indicted defendant Gerace for tampering with a person he believed to be a witness against him in this case. Defendant Gerace is detained because he is a danger to the community, which includes his ability to act through proxies. *See* Case No. 23-CR-37; *see also* Doc. No. 504. Moreover, Attorney Cohen used a third-party attorney to approach a represented government witness when his attempts to interview the witness through her attorney failed, as follows:

5



*See* Doc. No. 498, at 12-13.[4] Furthermore, defendant Gerace, through Attorney Cohen, has sued individuals he believed to be witnesses against him in state court in an effort to discredit, intimidate, or silence them,[5] and the government previously outlined, *ex parte*, additional concerns about witness safety. *See* Doc. No. 332 (motion for a protective order). These concerns are serious and may warrant the Court's intervention to ensure that witnesses can safely testify in this case.

---

[4] Indeed, Attorney Cohen's action, by using a third-party attorney to contact a government witness he knew to be represented by a different attorney, caused United States District Court Judge John L. Sinatra, Jr. to warn the Gerace defense team: "I'm just simply going to say, as an issue-spotting-kind-of-person, it does cause me some concern, so I would advise the defense team to be careful on that front." *See* Transcript of Proceedings, March 27, 2023, at 21.

[5] The government obtained an injunction of the state civil lawsuit and the Second Circuit affirmed District Court Judge Sinatra's Decision and Order. *See* Second Circuit Mandate, Doc. No. 495, at 5 ("Here, the potential interests of the government are considerable, whereas the potential prejudice faced by Gerace is *de minimis*. Indeed, this is exactly the type of case—where a criminal enterprise thrives off of gathering and using confidential law enforcement intelligence—that merits the relief granted by the district court.").

Against this backdrop, the government's concerns are exacerbated by defendant Gerace's lawyers' choice to repeatedly use the press to discredit government witnesses before trial even begins. In particular, Attorney Cohen has, on multiple occasions, publicly identified and attempted to discredit Katrina Nigro, an individual the defense has long expected to be a government witness against defendant Gerace. Attorney Cohen has also made outlandish and inaccurate extrajudicial comments about a variety of other topics, including: (i) questioning the impartiality of United States District Court Judge Sinatra; (ii) besmirching government witnesses; (iii) falsely describing the discovery produced or made available by the government; (iv) improperly attacking the motives and reputation of government counsel; and (v) critical commentary about adverse decisions and rulings. For example, Attorney Cohen has stated, among other things:

1. "Cohen lambasted Gerace's ex-wife, Katrina Nigro, and Assistant U.S. Attorney Joseph Tripi, the lead prosecutor in the ongoing federal investigation into organized crime. 'A disgruntled and disturbed ex-wife has been casting aspersions against some very fine people, and Judge Michalski is one in a long list who have been victimized by her,' Cohen said." *See*, Michel, Lou & Herbeck, Dan, The Buffalo News, Mar. 24, 2022, <https://buffalonews.com/news/local/crime-and-courts/feds-search-home-of-state-supreme-court-justice-john-michalski-who-was-hit-by-train/article_566a67f2-ab82-11ec-8254-ab64dd8b3b22.html>

2. "It's unfortunate that anyone would believe a word Ms. Nigro says. We know her history. Telling tales is nothing new to her." *See,* Brown, Steve & O'Rourke, Joseph, 2WGRZ News Publication, May 4, 2021, <https://www.wgrz.com/article/news/investigations/the-judge-the-strip-club-owner-and-the-ex-wife/71-c5c6b9d3-87ba-43ee-9adf-d3c23d176e75>

3. "Steven M. Cohen, an attorney for Peter Gerace, has raised questions about her credibility in a lawsuit accusing her of libeling and slandering Peter Gerace." *See,* Herbeck, Dan, The Buffalo News, Aug. 29, 2021, <https://buffalonews.com/news/local/crime-and-courts/witness-in-organized-crime-probe-sent-to-jail-for-six-months-for-vehicular-assault/article_5d54c7b8-0116-11ec-9278-1b9ba7fdc3c1.html>

4. "A disgruntled and disturbed ex-wife has been casting aspersions against some very fine people, and Judge Michalski is one in a long list

7

who have been victimized by her," Cohen said. … "Regrettably, a naive assistant U.S. attorney has swallowed everything this woman says hook, line and sinker."  *See*, Herbeck, Dan, The Buffalo News, Mar. 22, 2022, <https://buffalonews.com/news/local/crime-and-courts/feds-search-home-of-state-supreme-court-justice-john-michalski-who-was-hit-by-train/article_566a67f2-ab82-11ec-8254-ab64dd8b3b22.html>

5. "I have no evidence of a crime committed by Mr. Gerace. I don't have the names of a single witness. I am befuddled," Cohen said.[6]  *See*, Michel, Lou, The Buffalo News, Nov. 22, 2022, <https://buffalonews.com/news/local/trial-date-set-for-strip-club-owner-ex-dea-agent-in-organized-crime-case/article_430b4fe8-70ec-11ed-b0d4-bb0f6d5eb35b.html>

6. "My client still is terribly disadvantaged. I don't know the name of a single witness, a single victim, a single transaction for which my client has been indicted. That is ludicrous," he said.  "Mr. Tripi continues to say my client is a danger. He hasn't been able to point to a single instance where my client has threatened anyone directly or indirectly," Cohen said.[7]  *See*, McAndrew, Mike, The Buffalo News, Jan. 11, 2023, <https://buffalonews.com/news/local/crime-and-courts/prosecutors-can-keep-witnesses-secret-for-now-in-bribery-case-tied-to-organized-crime/article_54189566-90f9-11ed-9fa9-5f078216dfae.html>

7. Steven M. Cohen, said it is his understanding that all four of the charges involved one witness "who I am very much looking forward to cross-examining under oath." "We are not at all surprised that the U.S. Attorney is attempting to bring additional charges now. It has become apparent that there's no direct evidence against Peter" that he is facing in June in court, Cohen said Saturday."  *See*, Becker, Maki, The Buffalo News, Mar. 25, 2023, <https://buffalonews.com/news/local/crime-and-courts/peter-gerace-jr-witness-tampering-human-trafficking-organized-crime/article_5ff462e6-cb43-11ed-a878-63084e90f921.html>

8. "There is no way this jury is going to be able to unhear the term Italian organized crime," Cohen said. "They're not going to unhear the term mafia. And they're also not going to be able to unhear the fact that Peter does have relatives who were involved in that. Peter himself was never involved in Italian organized crime. But he has relatives who likely were." […]  When the judge tells jurors to disregard something that they have heard or seen in court, it rarely affects the jurors like it is intended,

---

[6] This statement was made to the media after the government permitted members of the Gerace defense team to review certain Grand Jury transcripts, including some with witness names unredacted, at the U.S. Attorney's Office on March 9, 2022, and after voluminous discovery was provided under the terms of a protective order.

[7] *See id.*

> Cohen said. Curative instructions "fall far short of what's in the best interest of our client," he said. *See*, Lakamp, Patrick, The Buffalo News, May 5, 2023, <https://buffalonews.com/news/local/crime-and-courts/ex-dea-agent-strip-club-owner-should-be-tried-together-judge-says/article_d2592222-e9ed-11ed-aec6-e7ad940a8f3e.html>

9. "The government is doing everything in its power to prevent Gerace's defense from preparing our client for trial," he said. **"Regrettably, they have found a sympathetic judge who has ordered all these restrictions."** (Emphasis added.)[8] *See*, Lakamp, Patrick and Michel, Lou, The Buffalo News, May 31, 2023, <https://buffalonews.com/news/local/judge-refuses-to-suppress-evidence-from-searches-of-geraces-home-and-strip-club/article_eeee9966-ff1a-11ed-8610-6fccddc702b4.html>

10. **"This judge continues to be particularly harsh to Mr. Gerace, and we see no legitimate basis for that,"** said Steven M. Cohen, who with attorneys Eric M. Soehnlein and Joseph M. LaTona, represents Gerace. **"He appears to accept whatever the prosecution says at face value, even though they are bare allegations not supported by evidence."** (Emphasis added.) *See*, Lakamp, Patrick, The Buffalo News, June 6, 2023, <https://buffalonews.com/news/local/judge-refuses-to-release-strip-club-owner-ahead-of-bribery-sex--and-drug-trafficking/article_3fd18366-0475-11ee-a8d3-5fb60c07e3c4.html>

11. "The assistant United States attorney continues to make allegations and propound innuendo, no evidence," Cohen said. "We look forward to a trial before impartial jurors so that our client can be acquitted and finally move beyond these baseless allegations." "There seems to be no depths to which he will not plunge to attack Mr. Gerace," Cohen said. *See*, Lakamp, Patrick and Michel, Lou, The Buffalo News, June 11, 2023, <https://buffalonews.com/news/local/crime-and-courts/prosecutor-calls-late-judge-michalski-unindicted-co-conspirator-in-gerace-sex-trafficking-case/article_732e1112-0573-11ee-bf9d-ebe59a91d8da.html>

12. "This is not a case where they have any evidence," Cohen said of the government, even after all of the executed search warrants. "There's nothing going to be on the table. You know, here are the handcuffs that

---

[8] The sentiment expressed by Attorney Cohen to the Buffalo News on May 31, 2023, preceded the Gerace defense team decision to place the names of two witnesses on its witness list (filed under seal on June 16, 2023), which required Judge Sinatra to recuse himself. Contrary to Attorney Cohen and the Gerace defense team's proffer, Judge Sinatra characterized the defense inclusion of such witnesses as apparent tactics and gamesmanship. *See* Lakamp, Patrick, The Buffalo News, June 21, 2023, <https://buffalonews.com/news/local/crime-and-courts/judge-recuses-himself-from-strip-club-owner-case-after-voicing-suspicion-of-legal-gamesmanship/article_b3bd89ee-103e-11ee-82da-53ded94b7e1b.html> ("From the bench […] Sinatra said including the two on the witness list 'appears to be gamesmanship' and he said he was 'skeptical of the tactic.'").

were used to chain the girls to the wall. Doesn't exist. Here's a picture of the container that the girls were shipped off to Shanghai. Doesn't exist. Here are the drugs that were caught or bought on premises. Doesn't exist. So this is all about character." *See*, Lakamp, Patrick, The Buffalo News, June 21, 2023, <https://buffalonews.com/news/local/crime-and-courts/judge-recuses-himself-from-strip-club-owner-case-after-voicing-suspicion-of-legal-gamesmanship/article_b3bd89ee-103e-11ee-82da-53ded94b7e1b.html>

Attorney Cohen has made these and other similar comments since the inception of the case and after virtually every court appearance and/or significant decision. This Court has the ability to reset the bounds of propriety and to ensure that running commentary by defense counsel in the media will not: (i) dilute the jury pool; (ii) disrupt the trial; (iii) cause witnesses to feel intimidated; (iv) potentially motivate others to engage in witness tampering; and (v) improperly transmit information to potential jurors. This case should be tried in Court and not devolve into a "carnival like" atmosphere as Attorney Cohen attempts to use the media to garner public support for defendant Gerace in contravention of the "basic tenet that the outcome of a trial must be decided by impartial jurors." *See Brown supra*;[9] *see also* n.3 *supra*.

The government request for a gag ordering precluding public comment regarding witnesses' testimony that has occurred, is in progress, or that is expected to occur would be narrowly tailored to protect witness safety and the integrity of the trial while ensuring protection of the defendants' and counsel's right to free speech. The government's request would be limited to preventing counsel from commenting on witnesses, testimony, evidentiary rulings, and court decisions. The government's request would not restrain the media's ability to cover the case or report upon events occurring in court or in filings. *See*

---

[9] During the course of this litigation, comments about this case attributable to prosecution trial counsel appearing news articles have been taken from arguments in Court and/or filings on the public docket, unlike counsel for defendant Gerace.

10

*Brown*, 218 F.3d at 425 ("gag orders on trial participants are evaluated under a less stringent standard than gag orders on the press"). Given Mr. Cohen's history of lambasting prospective government witnesses before trial has even begun, the government is concerned about the chilling effect similar comments may have if directed at other witnesses, particularly those who are unrepresented. If defense counsel is permitted to spin a witness's testimony in the press and accuse that witness of lying, there is serious potential that other witnesses will decide not to show up to trial or testify truthfully out of fear that they will be portrayed as liars who are responsible for defendant Gerace's plight. Given the concerns about witness tampering discussed above, such public commentary about witness testimony creates a legitimate risk to the integrity of this trial. Moreover, Attorney Cohen's endless expression of opinions about the judiciary, the proof, and the parties risks polluting the jury pool and/or the jury once it is selected. It appears obvious that defendant Gerace's media campaign is designed to reach a potential juror and to improperly plant a seed of doubt in such juror's mind through inadmissible and hyperbolic defense attorney commentary to the media. The defense tactic of pursuing potential jury nullification through the above-described media campaign is one the Court should promptly stifle. *See Standefer v. United States*, 447 U.S. 10, 22 (1980) (juries have no right to nullify).

Counsel will have every opportunity to cross-examine witnesses during trial, under the supervision of the Court and within the bounds of the Rules of Evidence. But counsel's continuing antics demonstrate that a narrowly drawn gag order is the only way to ensure that counsel's attack on certain witnesses' credibility, character, and the nature of the evidence, will not continue in local newspapers after court is done for the day. If such tactics continue unabated in the lead up to and during trial, there is a "substantial likelihood" these

11

proceedings will be prejudiced. *See Gentile*, 501 U.S. at 1075. Accordingly, the government requests a limited gag order to prevent counsel from continuing to comment in a manner similar to the examples set forth above.

## CONCLUSION

The Court should grant the government's motion for a gag order and prohibit attorneys from making extrajudicial comments expressing opinions about witnesses, evidence, judicial decisions, and opposing counsel.

DATED:   June 27, 2023.

| COREY R. AMUNDSON | TRINI E. ROSS |
|---|---|
| Chief | United States Attorney |

BY:   s/JORDAN DICKSON  
Trial Attorney  
Public Integrity Section  
U.S. Department of Justice  
Criminal Division  
1301 New York Ave. NW, Ste. 1000  
Washington, D.C. 20530  
202-597-0508  
jordan.dickson@usdoj.gov  

BY:   s/JOSEPH M. TRIPI  
s/NICHOLAS T. COOPER  
s/DAVID J. RUDROFF  
Assistant United States Attorney  
United States Attorney's Office  
Western District of New York  
138 Delaware Avenue  
Buffalo, New York 14202  
716.843.5839  
Joseph.Tripi@usdoj.gov