IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                        19-CR-227-LJV

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

              Defendants.
_____

UNITED STATES OF AMERICA,

        v.                                        23-CR-37-LJV-MJR

PETER GERACE, JR.,

              Defendant
_____

## <u>GOVERNMENT'S REQUESTS TO CHARGE</u>

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby files its requests to charge.

      DATED:  Buffalo, New York, July 7, 2023.

TRINI E. ROSS                           COREY R. AMUNDSON
United States Attorney                  Chief


BY:  s/JOSEPH M. TRIPI            BY:   s/JORDAN DICKSON
     s/DAVID J. RUDROFF                 Trial Attorney
     s/NICHOLAS T. COOPER               U.S. Department of Justice
     Assistant United States Attorneys  Criminal Division
     United States Attorney's Office    Public Integrity Section
     Western District of New York       1301 New York Ave. NW
     138 Delaware Avenue                Washington, D.C. 20530
     Buffalo, New York 14202            202/597-0508
     716/843-5839                       Jordan.Dickson@usdoj.gov
     Joseph.Tripi@usdoj.gov

## **INDEX**

**REQUEST**                                                                 **PAGE NO.**

1     General Requests ...........................................................................................1

2     The Indictment and the Statute: Counts 1 and 2 ...................................... 2

3     Conspiracy Defined (Purpose of the Statute)...........................................20

4     Elements of the Conspiracy .....................................................................22

5     Element 1: Existence of Agreement .........................................................23

6     Element 2: Membership in the Conspiracy ..............................................25

7     Element 3: Commission of an Overt Act ..................................................28

8     Element 4: Commission of an Overt Act in Furtherance of the Conspiracy.............30

9     The Indictment and the Statute: Counts 3 and 8; Conspiracy .................31

10    Statute Defining Offense ..........................................................................33

11    Purpose of the Statute ..............................................................................35

12    Elements of the Conspiracy .....................................................................36

13    Element 1: Existence of Agreement .........................................................37

14    Element 2: Membership in the Conspiracy ..............................................39

15    Objectives of the Conspiracy ...................................................................42

16    Defendant's Role in the Conspiracy .........................................................47

17    Special Verdict Form ................................................................................48

18    The Indictment and the Statute: Count 7 .................................................52

19    Elements of the Offense ...........................................................................53

20    Element 1: Using or Maintaining a Place.................................................54

# INDEX

**REQUEST**                                                    **PAGE NO.**

21    Element 2: Purpose...........................................................................................55

22    Element 3: Knowledge......................................................................................56

23    The Indictment and the Statute: Counts 4 and 5 .......................................57

24    Bribery Defined (Purpose of the Statute)....................................................59

25    Elements of the Offense ..................................................................................60

26    Element 1: Recipient was a Public Official...................................................62

27    Element 2: Demand or Receipt of Something of Value.............................63

28    Element 3: Corrupt Intent to Influence an Official Act or Violate an Official Duty..64

29    The Indictment and the Statute: Count 6 ...................................................66

30    Elements of the Offense ..................................................................................68

31    Element 1: Recipient was a Public Official...................................................69

32    Element 2: Offer of Something of Value ......................................................70

33    Element 3: Corrupt Intent to Influence an Official Act or Violate a Lawful Duty ....71

34    Stream of Benefits............................................................................................74

35    Mixed Motive not a Defense ..........................................................................75

36    The Indictment and the Statute: Count 9 ...................................................76

37    Count 9: Conspiracy to Engage in Sex Trafficking by Force, Fraud, or Coercion ....77

38    Conspiracy to Engage in Sex Trafficking by Force, Fraud, or Coercion
      Elements of Conspiracy ..................................................................................78

39    Count 9: First Element: Existence of Agreement........................................79

40    Count 9: Second Element: Membership in the Conspiracy ......................81

# INDEX

**REQUEST**                                                                 **PAGE NO.**

41    Object of the Conspiracy ...................................................................84

42    Object of the Conspiracy – Government Not Required to Prove Substantive
      Crime of Sex Trafficking by Force, Fraud, or Coercion ...........................................85

43    Object of the Conspiracy – Sex Trafficking by Force, Fraud, or Coercion ..............86

44    Recruiting, Enticing, Harboring, Providing, Obtaining, Maintaining,
      Patronizing, or Soliciting...................................................................87

45    Use of Force, Fraud, or Coercion ........................................................88

46    Commercial Sex Act ........................................................................92

47    Affecting Interstate Commerce .............................................................93

48    The Indictment and the Statute: Counts 10 through 16...........................................94

49    Elements of the Offense ...................................................................98

50    Element 1: Altering or Destroying Evidence .........................................................99

51    Element 2: Knowing Conduct ...............................................................100

52    Element 3: Intent to Impede Investigation ...........................................................101

53    The Indictment and the Statute: Counts 17 and 18..............................................102

54    Purpose of the Statute ....................................................................104

55    Elements of the Offense ...................................................................105

56    Element 1: Statement or Representation.........................................................106

57    Element 2: Materiality ....................................................................107

58    Element 3: False, Fictitious, or Fraudulent Statement .........................................108

59    Element 4: Knowing and Willful Conduct.........................................................109

60    Element 5: Matter Within the Jurisdiction of the United States Government ........110

# INDEX

| REQUEST | | PAGE NO. |
|---|---|---|
| 61 | Unanimity Explained | 111 |
| 62 | The Indictment and the Statute: Counts 19 through 21 | 112 |
| 63 | Purpose of the Statute | 114 |
| 64 | Elements of the Offense | 115 |
| 65 | Element 1: Defendant Used Intimidation or Corrupt Persuasion | 116 |
| 66 | Element 2: Intent to Influence Testimony in Court (Counts 19 and 20) | 117 |
| 67 | Element 2: Intent to Hinder Communication to Law Enforcement (Count 21) | 118 |
| 68 | The Indictment and the Statute: Count 22 | 119 |
| 69 | Elements of the Offense | 120 |
| 70 | Element 1: Possession of Narcotics | 121 |
| 71 | Definition of Possession | 122 |
| 72 | Inference from Control over Place where Found | 124 |
| 73 | Element 2: Knowledge that the Drugs were Narcotics | 125 |
| 74 | Method of Proving Knowledge | 126 |
| 75 | Element 3: Distribution or Intent to Distribute | 127 |
| 76 | Definition of Distribution | 128 |
| 77 | Intent to Distribute | 129 |
| 78 | Aiding and Abetting – Title 18, United States Code, Section 2(a) | 131 |
| 79 | Pinkerton Charge | 134 |
| 80 | Acts and Declarations of Co-Conspirators | 136 |

iv

# **INDEX**

**REQUEST**                                                   **PAGE NO.**

81     Impossibility of Success ........................................................................137

82     Success of Conspiracy Immaterial ........................................................138

83     Failure to Name a Defendant.................................................................139

84     Specific Investigation Techniques not Required ...................................140

85     Accomplices Called by the Government ...............................................141

86     Witness Using or Addicted to Drugs ....................................................143

87     Admission of Defendant ........................................................................144

88     Consciousness of Guilt from False Exculpatory Statement...................145

89     Charts and Summaries............................................................................146

90     Similar Acts – Intent, Knowledge, Absence of Mistake .......................147

91     Consciousness of Guilt from Falsification of Evidence .........................148

92     Consciousness of Guilt from Intimidation of a Witness........................149

**REQUEST NO. 1**                **GENERAL REQUESTS**

  The government respectfully requests that the Court give the following General Instructions[1] to the jury:

  a. Function of Court and Jury

  b. Statements of Court and Counsel Not Evidence

  c. Burden of Proof and Presumption of Innocence

  d. Reasonable Doubt

  e. Indictment Is Not Evidence

  f. Consider Each Defendant Separately

  g. Multiple Counts – Multiple Defendants

  h. Variance – Dates

  i. Government Treated Like Any Other Party

  j. Improper Considerations: Race, Religion, National Origin, Sex, or Age

  k. Witness Credibility – General Instruction

  l. Judicial Notice and Stipulations (If Applicable)

  m. Jury to Draw No Adverse Inference from Defendant's Failure to Testify (If Applicable and Requested by Defense)

  n. Jury Notes

  o. Right to See Exhibits and Hear Testimony; Communications with Court

  p. Submitting the Indictment

  q. Sympathy

  r. Punishment is Not To Be Considered by the Jury

  s. Verdict of Guilt or Innocence Must Be Unanimous

---

[1] *See* Modern Federal Jury Instructions-Criminal ¶¶ 1.02, 2.01, 3.01, 4.01, 5.02, 5.05, 5.10, 9.01, 9.03, 9.04, 9.07.

**REQUEST NO. 2**          **THE INDICTMENT AND THE STATUTE: COUNTS 1 AND 2**

The defendant, Joseph Bongiovanni, is charged in Count 1, and both defendants are charged in Count 2, with violating Title 18, United States Code, Section 371, which provides that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency of the United States, in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each is guilty of an offense against the United States.

Both Count 1 and Count 2 include the following introductory allegations:

At all times relevant to this Indictment:

1. The defendant, JOSEPH BONGIOVANNI ("BONGIOVANNI"), began his career in law enforcement as an Erie County Sheriff Deputy in or about 1995.  In or about 1998, the defendant BONGIOVANNI joined the Drug Enforcement Administration ("DEA") as a Special Agent ("SA") and his career with the DEA took him out of the Buffalo area for a period of time. In or about 2001, until his retirement on or about February 1, 2019, the defendant BONGIOVANNI was assigned to Buffalo, New York, DEA Resident Office.

2. As a DEA SA, the defendant BONGIOVANNI was a "public official" as defined in Title 18, United States Code, Section 201(a)(1).

3. The defendant BONGIOVANNI had friends and associates who he knew were involved in possession, use, distribution, and importation of controlled substances.  The defendant BONGIOVANNI's friends and associates who were involved in possession, use, and distribution, and importation of controlled substances, included, among others, individuals he believed to be members of, connected to, or associated with Italian Organized Crime (IOC) in the Western District of New York and elsewhere.

4. PETER GERACE JR. ("GERACE"), is a friend and associate of defendant BONGIOVANNI.  GERACE, for a period of time, was on supervision by the United States Probation Office for the Western District of New York.  GERACE is also the owner and principal

operator of Pharaoh's Gentlemen's Club ("Pharaoh's"), located at 999 Aero Drive, Cheektowaga, New York. GERACE employs topless dancers, bartenders, bouncers, managers, and kitchen staff at Pharaoh's where food, beverages, and dances with topless dancers are sold to patrons. Several of GERACE's male employees at Pharaoh's are members of a motorcycle club called the Outlaws Motorcycle Club ("Outlaws MC").

5. Michael Massecchia ("Masecchia"), is a friend and associate of defendant BONGIOVANNI and is a member or associate of IOC in the Western District of New York, and elsewhere. Massecchia has been involved in the possession with intent to distribute, and distribution of, controlled substances for over twenty (20) years in the Western District of New York and elsewhere. Massecchia had been a target or subject of several DEA cases during defendant BONGIOVANNI's tenure as a DEA special agent, but Massecchia was never arrested or charged in any DEA cases or investigations during defendant BONGIOVANNI's tenure as a DEA special agent.

6. The DEA was an agency within the executive branch of the Government of the United States, and the DEA is charged with, among other things, investigating narcotics trafficking activity and enforcing the controlled substance laws of the United States. The DEA required its SAs to uphold the rule of law, and to act with integrity in their personal and professional actions.

7. As a DEA SA, the defendant BONGIOVANNI was specially trained in the investigation of drug trafficking activity and was familiar with DEA policy, record keeping, procedures, and databases.

8. The lawful functions and official duties of DEA SAs included, but were not limited to, initiating and conducting investigations; interviewing witnesses and DEA confidential sources; protecting the identity of witnesses and DEA confidential sources; protecting the integrity, confidentiality, and operational security of federal and state investigations; collecting and preserving evidence; preparing truthful and accurate DEA memoranda and reports; preparing search warrant and criminal complaint affidavits, documenting information that was helpful to current and future DEA investigations; arresting individuals who had violated federal and state drug laws; preparing and proposing DEA cases for prosecution; and acting with honesty and integrity in their representations and communications with prosecutors and other members of law enforcement.

9. The defendant BONGIOVANNI, through training and experience, was familiar with how the DEA and other law enforcement agencies

conducted drug trafficking investigations, and how DEA agents and other law enforcement officers utilized de-confliction databases as a means to coordinate investigations with other agents and law enforcement agencies.

10.     De-confliction databases enabled law enforcement officers conducting an investigation of a specific individual or specific individuals to be alerted if another law enforcement officer or agency had an investigative interest in the same individual or individuals.

Count 1 incorporates those introductory allegations and further charges only

the defendant, Joseph Bongiovanni, with:

2.     Beginning in or about 2008 and continuing until in or about August 2019, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, JOSEPH BONGIOVANNI, did knowingly, willfully, and unlawfully combine, conspire, and agree with Michael Masecchia and others, known and unknown:

a.     to defraud the United States and the Drug Enforcement Administration (DEA), an agency of the United States, by interfering with and obstructing by means of deceit, craft, and trickery, the lawful and legitimate governmental functions and rights of the DEA, that is:

i.     the right to have its business and its affairs, and the transaction of the official business of the DEA conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction; and

ii.     the right to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of his duties by the defendant, JOSEPH BONGIOVANNI, in his official capacity as a DEA SA free from corruption, partiality, improper influence, bias, dishonesty and fraud in dealing with the DEA and other law enforcement agencies;

b.     directly and indirectly, corruptly to give, offer, and promise a thing of value to a public official, with intent to induce a public official to do an act and omit to do an act in violation of his lawful duty as opportunities arose, in violation of Title 18, United States Code, Section 201(b)(1)(C); and

4

c.   directly and indirectly, corruptly to demand, seek, receive, accept, and agree to receive and accept, a thing of value personally, in return for being induced to do an act and omit to do an act in violation of official duty as opportunities arose, in violation of Title 18, United States Code, Section 201(b)(2)(C).

## **Manner and Means**

3.   The conspiracy was carried out by the Manner and Means set forth below.

4.   It was part of the conspiracy that, in order to build trust and maintain continuity with his coconspirators, the defendant BONGIOVANNI did not investigate his friends and associates and used his position as a DEA SA in Buffalo, New York, to shield his friends and associates, and others including Masecchia, who he believed were connected to or associated with IOC, from criminal investigations.

5.   It was part of the conspiracy that, in exchange for payments he received and in order to ingratiate himself to individuals whom he believed were members and associates of IOC, the defendant BONGIOVANNI utilized his position as a DEA SA to attempt to dissuade other members of law enforcement: from conducting investigations of his coconspirators, friends, associates and individuals the defendant believed to be connected to or associated with IOC, including Masecchia and others; and from conducting investigations into any individuals who may have been able to expose his criminal activities and those of his friends, associates, and individuals the defendant believed to be connected to or associated with IOC.

6.   It was part of the conspiracy that, in exchange for payments he received, and to ingratiate himself to individuals he believed to be connected to or associated with IOC, the defendant BONGIOVANNI used his position as a DEA SA to gain and provide information about federal investigations, and about individuals cooperating or suspected to be cooperating with law enforcement, to enable his coconspirators, friends, and associates to continue their drug trafficking activities without disruption by law enforcement.

7.   It was part of the conspiracy that, between in or about 2008 and in or about 2017, in exchange for bribes totaling approximately at least $250,000 in United States currency paid by Masecchia, working with others, the defendant BONGIOVANNI used his position as a DEA SA

to protect the coconspirator drug traffickers who were paying him bribes and their associates.

8.  It was part of the conspiracy that the defendant BONGIOVANNI was paid bribes by Masecchia, who was working with others, on a recurring basis in exchange for regular debriefings whereby the defendant BONGIOVANNI provided information designed to protect and conceal the drug trafficking activities of his friends, associates, and coconspirators.

9.  It was part of the conspiracy that, utilizing state and DEA de-confliction databases, the defendant BONGIOVANNI would be alerted when other agents were looking at the drug trafficking activity of individuals associated with the defendant BONGIOVANNI or under his protection.

10. It was part of the conspiracy that, in exchange for bribes he received and in order to create the appearance of a legitimate DEA investigation and to maximize his ability to utilize de-confliction databases to monitor the activities of other law enforcement agents and agencies, and to ensure no other law enforcement agents or agencies successfully investigated the drug traffickers under the defendant BONGIOVANNI's paid protection, the defendant BONGIOVANNI initiated a DEA case file in the names of coconspirator drug traffickers who were paying the defendant BONGIOVANNI protection bribes.

11. It was part of the conspiracy that the defendant BONGIOVANNI utilized his access to DEA databases and information, meetings with other law enforcement officers and Assistant United States Attorneys, and knowledge of law enforcement techniques, methods, and procedures, to advise and assist drug traffickers in avoiding law enforcement scrutiny and detection.

12. It was part of the conspiracy that, in exchange for bribes he received, defendant BONGIOVANNI provided information to his coconspirators about the existence of investigations, the status of investigations, the identity of cooperators, and specific information, including specific techniques utilized or under consideration in investigations that he learned through his position as a DEA SA and his interactions with other members of law enforcement.

13. It was part of the conspiracy that, in exchange for bribes he received and to protect the continuing drug trafficking operations of his coconspirators, after opening a DEA file, the defendant BONGIOVANNI feigned legitimate investigation so that information about his coconspirators, and anyone seeking to cooperate against them,

would be funneled towards him, and so inducing other members of law enforcement to defer investigation of his coconspirators to him.

14. It was part of the conspiracy that, after feigning legitimate investigation for a period of time so that information about his coconspirators, and anyone seeking to cooperate against them, would be funneled towards him, the defendant BONGIOVANNI closed the DEA file related to drug traffickers under defendant BONGIOVANNI's paid protection knowing that, even with the file closed, he would continue to receive de-confliction notices related to individuals under his protection.

15. It was part of the conspiracy that, even after the defendant BONGIOVANNI closed the DEA file related to drug traffickers under the defendant BONGIOVANNI's paid protection, he continued to represent to others in law enforcement that he had an active investigation in an effort to dissuade other members of law enforcement from commencing and developing an investigation of his friends, associates, and coconspirators.

16. It was part of the conspiracy that the defendant BONGIOVANNI made false entries and representations in DEA documents, and false statements and representations to other members of law enforcement, in order to protect his friends, associates, and coconspirators from investigation, arrest, prosecution, and potential incarceration.

17. It was part of the conspiracy that the defendant BONGIOVANNI would falsely deny to other agents of the DEA the existence and extent of connections between himself and individuals he knew to be involved in the possession, use, distribution, and importation of controlled substances, and individuals he believed were connected to or associated with IOC.

18. It was part of the conspiracy that the defendant BONGIOVANNI provided cover stories to his coconspirators and would instruct such individuals that, if the communications or meetings between the defendant and the coconspirators were ever questioned by law enforcement, the conspirators should conceal the true nature of their relationship with the defendant BONGIOVANNI by pretending the defendant BONGIOVANNI was recruiting such individuals to be DEA informants.

19. It was part of the conspiracy that, upon request, the defendant BONGIOVANNI made efforts to use his position as a DEA SA to help coconspirators get out of trouble with other law enforcement agencies.

20.     It was part of the conspiracy that the defendant BONGIOVANNI would conceal his possession, use, and distribution of controlled substances, the bribes he received, and the assistance he provided to his friends, associates, coconspirators, and individuals who he believed were members of, connected to, or associated with IOC.

## Overt Acts

21.     In furtherance of the conspiracy and to effect the objects thereof, the following overt acts were committed in the Western District of New York, and elsewhere, by the defendant and others.

22.     Between in or about 2008 and in or about 2017, Masecchia, working with others, paid the defendant BONGIOVANNI, who accepted, bribes on a recurring basis totaling approximately at least $250,000 in United States currency in exchange for protection from arrest and prosecution.

23.     Between in or about 2008 and in or about 2017, the defendant BONGIOVANNI provided information about investigations, including the status of specific investigative techniques, potential witnesses, and confidential sources during routine recurring meetings with drug traffickers who were paying him bribes.

24.     On or about November 25, 2012, the defendant BONGIOVANNI learned that friends and associates of individuals paying him bribes were arrested by the New York State Police in relation to the seizure of marijuana, U.S. currency, and other items, and the defendant BONGIOVANNI began acquiring information about the arrests and made arrangements to open a DEA case to take control of the case from the New York State Police.

25.     On or about November 28, 2012, the defendant BONGIOVANNI authored a DEA 6 summary report and caused the initiation of DEA Case Number C2-13-0026.

26.     On or about December 24, 2012, the defendant BONGIOVANNI caused the preparation of DEA 202 forms adding target names to the file in DEA Case Number C2-13-0026, including the names of drug traffickers and associates who were paying him bribes.

27.     On or about December 24, 2012, the defendant BONGIOVANNI caused the DEA preparation and entry of three (3) separate DEA 202 forms in DEA Case Number C2-13-0026 with signatures that do not belong to the DEA Special Agent listed as the co-case agent on the DEA 202 form.

28.    In or about January 2013, the defendant BONGIOVANNI submitted names, including the names of drug traffickers and associates who were paying him bribes, and the defendant's contact information, to "Safety-Net," a state de-confliction system.

29.    In or about April 2013, the defendant BONGIOVANNI became aware of an individual, known to the Grand Jury, who could cooperate against the drug traffickers paying the defendant BONGIOVANNI bribes, and the defendant BONGIOVANNI signed up the individual as a DEA confidential source ("CS") with himself as the handling agent.

30.    On or about April 29, 2013, the defendant BONGIOVANNI signed up the individual DEA CS with himself as the handling agent for a period from April 29, 2013, until April 29, 2014.

31.    On or about May 2, 2013, in DEA Case Number C2-13-0026, the defendant BONGIOVANNI indexed names related to individuals who were paying the defendant BONGIOVANNI bribes to give the appearance of legitimate investigation and so that DEA de-confliction database procedures would alert him if other members of law enforcement were investigating the individuals and associates of individuals who were paying the defendant BONGIOVANNI bribes.

32.    Between on or about April 29, 2013, and on or about September 9, 2013, the defendant BONGIOVANNI ensured that the CS provided no cooperation against the drug traffickers who were paying him bribes, and on September 9, 2013, the defendant BONGIOVANNI caused the completion of form DEA-512(d) deactivating the DEA CS.

33.    On or about May 23, 2013, defendant BONGIOVANNI sent an email regarding DEA Case Number C2-13-0026 to members of the United States Attorney's Office, Western District of New York, and a Special Agent with the Internal Revenue Service (IRS) stating that "we are making strides in the street and will report back soon."

34.    On or about June 18, 2013, a fellow DEA agent conducted surveillance on a warehouse in Buffalo, New York that was controlled by a coconspirator who was a source of bribe payments to the defendant BONGIOVANNI, and after the fellow DEA agent made relevant observations, the fellow DEA agent was advised by the defendant BONGIOVANNI to discontinue the surveillance.

35.    On or about July 11, 2013, the defendant BONGIOVANNI received an email from a fellow member of law enforcement advising him, in part, that "Masecchia is an associate and possibly made member of the

9

Buffalo LCN family," an IOC group operating in Buffalo, New York, and elsewhere.

36. On or about July 16, 2013, the defendant BONGIOVANNI sent an email to members of the United States Attorney's Office, Western District of New York, and a Special Agent with the IRS, and copied his supervisor in the DEA Buffalo Resident Office, that read in part "we are working on GPS warrant for trackers to locate these grow operation [sic] a CI [confidential informant] reported they are turning the grow over in 8 to 9 weeks. Joe."

37. On or about July 30, 2013, defendant BONGIOVANNI notified the DEA CS he/she would be deactivated as a DEA CS pursuant to BONGIOVANNI's entry in Confidential Source Deactivation form DEA-512d.

38. On September 9, 2013, the defendant BONGIOVANNI de-activated the CS who had an ability to cooperate in DEA Case Number C2-13-0026, and falsely stated in the "Confidential Source Deactivation" form DEA-512d, "The CS can no longer provide services or information for any open investigation."

39. On or about September 9, 2013, the defendant BONGIOVANNI caused the preparation and entry of "Confidential Source Deactivation" form DEA-512d with a false and fraudulent signature line for the co-case agent.

40. On or about September 11, 2013, the defendant BONGIOVANNI prepared a DEA 6 report in DEA Case Number C2-13-0026 wherein he made false, fraudulent, fictitious, and misleading statements as follows: "Agents are presently waiting for approval from the United States Attorney's Office (WDNY) to utilized [sic] GPS trackers to aid in the investigation."

41. On or about September 26, 2013, the defendant BONGIOVANNI met with other members of law enforcement and an Assistant United States Attorney at the United States Attorney's Office for the Western District of New York regarding in DEA Case Number C2-13-0026 during which meeting, specific investigative techniques were discussed.

42. On or about December 31, 2013, the defendant BONGIOVANNI made false and misleading statements in a DEA 6 report in DEA Case Number C2-13-0026.

43.     On or about April 7, 2014, the defendant BONGIOVANNI made false and misleading statements in a DEA 6 report in DEA Case Number C2-13-0026.

44.     On or about July 7, 2014, the defendant BONGIOVANNI made false and misleading statements in a DEA 6 report in DEA Case Number C2-13-0026.

45.     Between on or about April 30, 2013, and on or about November 4, 2014, the defendant BONGIOVANNI made false representations regarding DEA Case Number C2-13-0026 to others in law enforcement that he did not have a source who could provide information about the locations of marijuana grow operations being controlled and operated by those who were paying the defendant BONGIOVANNI bribes.

46.     Between in or about 2008 and in or about 2017, during routine and recurring meetings with individuals paying the defendant BONGIOVANNI bribes, the defendant BONGIOVANNI passed along information regarding specific techniques utilized or being considered by other members of law enforcement in DEA Case Number C2-13-0026.

47.     During conversation with other members of law enforcement involved in the investigation of DEA Case Number C2-13-0026, the defendant BONGIOVANNI falsely stated that he did not have a confidential informant and, as a result, marijuana grow locations could not be located to further the investigation in DEA Case Number C2-13-0026.

48.     On or about November 4, 2014, in preparation for closing DEA Case Number C2-13-0026, the defendant BONGIOVANNI prepared a DEA 6 report wherein he made false, fraudulent, fictitious, and misleading statements as follows: "The confidential informant associated with this case/file is no longer viable and can not provide credible information in furtherance of this investigation.  This agent will not [sic] prepare this case for closure."

49.     On or about January 28, 2015, the defendant BONGIOVANNI prepared a DEA 6 report in DEA Case Number C2-13-0026 officially closing the DEA file related to investigation of individuals and associates of individuals who were paying him bribes.

50.     On or about January 28, 2015, the defendant BONGIOVANNI prepared a DEA 210 form "Defendant Disposition Report" wherein he made false, fraudulent, fictitious, and misleading statements as follows: "On January 6, 2015- [name redacted] plead in New York State court and sentenced (sic) to 36 months probation."

51.     On or about February 21, 2016, the defendant BONGIOVANNI attended a party in Toronto, Canada with friends and associates involved in possession, use, and distribution of cocaine.

52.     In or about August 2016, the defendant BONGIOVANNI used his position as a DEA SA in an attempt to dissuade a member of a different federal law enforcement agency from investigating some of the defendant BONGIOVANNI's friends and associates.

53.     At various times while the defendant BONGIOVANNI was a DEA SA assigned to the Buffalo Resident Office, he possessed, used and distributed, and observed others possess, use, and distribute, cocaine.

54.     On or about February 1, 2019, the defendant BONGIOVANNI's last day as a DEA SA in the Buffalo Resident Office due to his retirement from the DEA, the defendant caused his DEA issued cellular telephone to be wiped clean such that all data was deleted from the telephone.

55.     On a date unknown to the Grand Jury, but before on or about February 1, 2019, without authorization or permission, the defendant BONGIOVANNI removed the DEA working file in DEA Case Number C2-13-0026, which contained DEA database information (including de-confliction database information), administrative subpoenas and responses, cellular telephone toll analysis, and other DEA records and property, including an Organized Crime Drug Enforcement Task Forces investigation initiation form for Operation Past Due, from the DEA Buffalo Resident Office and stored and concealed this DEA property in the basement of his residence.

56.     During the course of the conspiracy, defendant BONGIOVANNI advised a coconspirator, who was working with Masecchia and known to the Grand Jury, of a cover story for their interactions, that is, if anyone [in law enforcement] ever questioned [the coconspirator] he should say that defendant BONGIOVANNI was talking to [the conspirator] about becoming defendant BONGIOVANNI's informant.

57.     At times, including an occasion following the execution of a federal search warrant at defendant BONGIOVANNI's residence on June 6, 2019, defendant BONGIOVANNI met with a coconspirator, who was working with Masecchia and is known to the Grand Jury, and advised the coconspirator that if he was ever approached [by law enforcement] "I'll coach you on it, I'll get you prepared."

58.     On or about August 23, 2019, Masecchia possessed quantities of marijuana, cocaine, and other controlled substances, $27,950 in

bundled U.S. currency, eight firearms, various rounds of ammunition, and drug paraphernalia at 5907 Main Street, Williamsville, New York.

Count 2 incorporates the introductory allegations I read to you earlier and further charges both defendants with:

2.    Beginning in or about 2005 and continuing until in or about February 2019, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendants, JOSEPH BONGIOVANNI, and PETER GERACE JR., did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown:

   a.    to defraud the United States and the Drug Enforcement Administration (DEA), an agency of the United States, by interfering with and obstructing by means of deceit, craft, and trickery, the lawful and legitimate governmental functions and rights of the DEA, that is:

      i.    the right to have its business and its affairs, and the transaction of the official business of the DEA conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction; and

      ii.    the right to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of his duties by the defendant, JOSEPH BONGIOVANNI, in his official capacity as a DEA SA free from corruption, partiality, improper influence, bias, dishonesty and fraud in dealing with the DEA and other law enforcement agencies;

   b.    directly and indirectly, corruptly to give, offer, and promise a thing of value to a public official, with intent to induce a public official to do an act and omit to do an act in violation of his lawful duty as opportunities arose, in violation of Title 18, United States Code, Section 201(b)(1)(C); and

   c.    directly and indirectly, corruptly to demand, seek, receive, accept, and agree to receive and accept, a thing of value personally, in return for being induced to do an act and omit to do an act in violation of official duty as opportunities arose, in violation of Title 18, United States Code, Section 201(b)(2)(C).

**Manner and Means**

3.    The conspiracy was carried out by the Manner and Means set forth below.

4.    It was part of the conspiracy that, in order to build trust and maintain continuity with his coconspirators, the defendant BONGIOVANNI did not investigate his friends and associates and used his position as a DEA SA in Buffalo, New York, to shield his friends and associates, and others, including the defendant GERACE, from criminal investigations.

5.    It was part of the conspiracy that, in exchange for payments he received and in order to ingratiate himself to individuals whom he believed were members and associates of IOC, the defendant BONGIOVANNI utilized his position as a DEA SA to attempt to dissuade other members of law enforcement: from conducting investigations of his coconspirators, friends, associates and individuals the defendant believed to be connected to or associated with IOC, including the defendant GERACE and others; and from conducting investigations into any individuals who may have been able to expose his criminal activities and those of his friends, associates, and individuals the defendant believed to be connected to or associated with IOC.

6.    It was part of the conspiracy that, in exchange for payments he received, the defendant BONGIOVANNI used his position as a DEA SA to gain and provide information to enable his coconspirators, friends, and associates to continue their drug trafficking activities without disruption by law enforcement.

7.    It was part of the conspiracy that, at various times between in or about 2005 and in or about 2017, defendant BONGIOVANNI provided information he learned during the course of his duties as a DEA SA, including information learned through participating in investigations, to the defendant GERACE.

8.    It was part of the conspiracy that defendant BONGIOVANNI used his position as a DEA SA to influence other federal agents, including from the Federal Bureau of Investigation (FBI) and the DEA, to dissuade them from investigating the defendant GERACE and Pharaoh's.

9.    It was part of the conspiracy that the defendant GERACE paid defendant BONGIOVANNI cash bribes on a recurring basis to protect the defendant GERACE and GERACE's business, Pharaoh's Gentlemen's Club from federal narcotics investigations.

10.     It was part of the conspiracy that defendant BONGIOVANNI falsely
        represented that the defendant GERACE was defendant
        BONGIOVANNI's source of information to protect the defendant
        GERACE and Pharaoh's from federal investigations.

11.     It was part of the conspiracy that the defendant BONGIOVANNI
        falsely represented to the DEA that the defendant GERACE was
        defendant BONGIOVANNI's source of information about ongoing
        drug trafficking activity in an effort to protect the defendant GERACE
        and Pharaoh's from federal investigations.

12.     It was part of the conspiracy that the defendant BONGIOVANNI
        would falsely deny to other agents of the DEA the existence and extent
        of connections between himself and individuals he knew to be involved
        in the possession, use, distribution, and importation of controlled
        substances, and individuals he believed were connected to or associated
        with IOC.

13.     It was part of the conspiracy that the defendant BONGIOVANNI
        provided cover stories to his coconspirators and would instruct such
        individuals that, if the communications or meetings between the
        defendant and the coconspirators were ever questioned by law
        enforcement, the conspirators should conceal the true nature of their
        relationship with the defendant BONGIOVANNI by pretending the
        defendant BONGIOVANNI was recruiting such individuals to be DEA
        informants.

14.     It was part of the conspiracy that, upon request, the defendant
        BONGIOVANNI made efforts to use his position as a DEA SA to help
        coconspirators get out of trouble with other law enforcement agencies.

15.     It was part of the conspiracy that the defendant BONGIOVANNI
        would conceal his possession, use, and distribution of controlled
        substances, the bribes he received, and the assistance he provided to his
        friends, associates, coconspirators, and individuals who he believed
        were members of, connected to, or associated with IOC.

## Overt Acts

16.     In furtherance of the conspiracy and to effect the objects thereof, the
        following overt acts were committed in the Western District of New
        York, and elsewhere, by the defendant and others.

17.     In or about 2005, defendant GERACE learned information from the execution of a DEA search warrant in which defendant BONGIOVANNI participated.

18.     Between in or about 2013 and in or about 2016, the defendant BONGIOVANNI, accepted cash bribes on a recurring basis from the defendant GERACE in exchange for protection from arrest and prosecution.

19.     Between on or about November 1, 2009, and on or about November 3, 2009, in response to information he received from the defendant GERACE, the defendant BONGIOVANNI contacted the United States Probation Office in an effort to intercede on the defendant GERACE's behalf and to help the defendant GERACE mitigate any sanctions that might be imposed by the Probation Office for the defendant GERACE violating the terms and conditions of his term of federal supervised release.

20.     On or about November 6, 2009, the defendant BONGIOVANNI authored an official DEA 6 report in which the defendant BONGIOVANNI made false, fraudulent, fictitious, and misleading statements, namely, that that the defendant GERACE had acted as a confidential source and had provided information to the DEA in narcotics investigations.

21.     On or about November 6, 2009, in the DEA 6 report referenced above, the defendant BONGIOVANNI omitted documenting any telephone number for the defendant GERACE

22.     In or about November 2009, the defendant BONGIOVANNI engaged in conduct and made statements portraying the defendant GERACE as a DEA confidential source, when in fact the defendant GERACE was not a DEA confidential source, in order to dissuade an FBI Special Agent from investigating and potentially charging the defendant GERACE with federal criminal offenses.

23.     Between on or about November 6, 2009, and on or about October 31, 2018, the defendant BONGIOVANNI did not document in any DEA reports or memoranda any information about the defendant GERACE and did not document the substance of any in-person or telephonic contacts he had with the defendant GERACE, who, for a period of time, was on supervision by the United States Probation Office for the Western District of New York and who was an individual whom the defendant BONGIOVANNI knew and had reason to know was involved in possession, use, and distribution of controlled substances,

and had reason to believe to be a member of, connected to, or associated with IOC.

24.     On or about February 21, 2016, the defendant BONGIOVANNI attended a party in Toronto, Canada with friends and associates involved in possession, use, and distribution of cocaine.

25.     In or about June 2016, in response to another DEA SA in the Buffalo Resident Office subpoena of phone records showing contacts between the defendant GERACE and the defendant BONGIOVANNI, the defendant BONGIOVANNI attempted to dissuade and discourage another DEA SA from further investigating the defendant GERACE by asking his colleague if he "hated Italians," and by making other comments to his fellow DEA SA to dissuade and discourage the DEA SA from continuing to investigate the defendant GERACE and others.

26.     On a date unknown to the Grand Jury, in response to a telephone call from the defendant GERACE after a stripper overdosed on drugs at Pharaoh's in Cheektowaga, New York, the defendant BONGIOVANNI advised the defendant GERACE to "get her out" of the gentlemen's club.

27.     On or about May 4, 2017, the defendant GERACE left a voicemail message on the defendant BONGIOVANNI's DEA issued cell phone, as follows:

> "Hey Joe, it's Peter. Listen, if a guy is dealing drugs he's got a regular phone…it's a phone that's, one of those Tracfones. Is there a way to ping it like police do? Where they can tell where you're at? I just want to know if you could do that or not. Give me a call back 725-1931."

to which the defendant BONGIOVANNI responded via text message, "Yes but you would need a warrant to get a ping order."

28.     At various times while the defendant BONGIOVANNI was a DEA SA assigned to the Buffalo Resident Office, he possessed, used and distributed, and observed others possess, use, and distribute, cocaine.

29.     On or about November 1, 2018, the defendant BONGIOVANNI authored and submitted an internal DEA memorandum in which he made false and misleading statements as follows: "It should be known that any contact I have had with [the defendant GERACE] in the past was minimal in-person contact and primarily consisted of random telephonic communication based on the fact we were childhood friends. I would sometimes randomly encounter [the defendant GERACE] at a

restaurant or golf outing and have not made plans to meet him socially in several years."

30.    On or about December 10, 2018, the defendant BONGIOVANNI authored and submitted an internal DEA memorandum wherein he made false and misleading statements as follows: "I have and will report all contact with [the defendant GERACE] to a DEA supervisor like I have in the past[.]"

31.    On or about January 28, 2019, the defendant BONGIOVANNI authored and submitted an internal DEA memorandum wherein he made false and misleading statements regarding the nature of the defendant GERACE's relationship with another DEA SA in the Buffalo Resident Office.

32.    On or about February 1, 2019, the defendant BONGIOVANNI's last day as a DEA SA in the Buffalo Resident Office due to his retirement from the DEA, the defendant caused his DEA issued cellular telephone to be wiped clean such that all data was deleted from the telephone.

33.    On a date unknown to the Grand Jury, but before on or about February 1, 2019, without authorization or permission, the defendant BONGIOVANNI removed the DEA working file in DEA Case Number C2-13-0026, which contained DEA database information (including de-confliction database information), administrative subpoenas and responses, cellular telephone toll analysis, and other DEA records and property, including an Organized Crime Drug Enforcement Task Forces investigation initiation form for Operation Past Due, from the DEA Buffalo Resident Office and stored and concealed this DEA property in the basement of his residence.

34.    At various times between in or about 2006, and on or about February 1, 2019, defendant GERACE possessed with intent to distribute, and distributed cocaine, a Schedule II controlled substance.

35.    At various times between in or about 2009 and in or about 2018, female dancers employed at Pharaoh's have overdosed inside Pharaoh's after ingesting controlled substances.

36.    Beginning in or before 2009, and continuing until at least in or about February 2019, and later, defendant GERACE, knowingly maintained the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, to facilitate prostitution; to provide drugs and money to Pharaoh's employees in exchange for sex with the defendant GERACE and others; and for use and distribution of controlled substances, including cocaine, cocaine base, and

amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances.

**REQUEST NO. 3**          **CONSPIRACY DEFINED (PURPOSE OF THE STATUTE)**

In Count 1, the defendant, Joseph Bongiovanni, is accused of having been a member of a conspiracy to violate certain federal laws and to defraud the United States. In Count 2, both defendants are accused of having been members of a conspiracy to violate certain federal laws and to defraud the United States. A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."  Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed.

The charge of conspiracy to defraud the government does not mean that one of the illegal objects must be to cause the government to suffer a loss of money or property as a consequence of the conspiracy. It would also be a conspiracy to defraud if one of the objects was to obstruct, interfere, impair, impede or defeat the legitimate functioning of the government through fraudulent or dishonest means, as I will define these terms.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses

a greater threat to the public's safety and welfare than individual conduct and increases the

likelihood of success of a particular criminal venture.[2]

---

[2] Adapted from Modern Federal Jury Instructions-Criminal ¶¶ 19.01, 19.02, Instruction 19-2, 19-12.

**REQUEST NO. 4**          **ELEMENTS OF CONSPIRACY**

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt separately for both Counts 1 and 2:

First, that two or more persons entered the unlawful agreement charged in the indictment;

Second, that the defendants knowingly and willfully became a member of the conspiracy;

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

Fourth, that the overt act that you find to have been committed was committed to further some objective of the conspiracy.[3]

---

[3] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-3.

**REQUEST NO. 5          ELEMENT 1: EXISTENCE OF AGREEMENT**

The first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the indictment.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a

common design existed on the part of the persons charged to act together to accomplish an

unlawful purpose.[4]

---

[4] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-4.

**REQUEST NO. 6**          **ELEMENT 2: MEMBERSHIP IN THE CONSPIRACY**

The second element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant whom you are considering was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

25

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a

criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.[5]

---

[5] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-6.

**REQUEST NO. 7**          **ELEMENT 3: COMMISSION OF AN OVERT ACT**

The third element that the government must prove beyond a reasonable doubt, to establish the offense of conspiracy, is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators, at or about the time and place alleged.

[I have already read the overt acts the government alleges were committed in furtherance of the conspiracy charged in Count 1 and the overt acts the government alleges were committed in furtherance of the conspiracy charged in Count 2. You will have a copy of the indictment with you in the deliberation room and may reference it to refresh your memory of the alleged overt acts.]

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the indictment be proven.

Similarly, you need not find that the defendant committed the overt act. It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the indictment. It is sufficient if you are convinced beyond a reasonable doubt, that it occurred at or about the time and place stated.

There is a limit on how much time the government has to obtain an indictment. For you to find the defendant guilty of conspiracy, the government must prove beyond a reasonable doubt that at least one overt act in furtherance of the conspiracy charged in Count 1 was committed after October 31, 2014.  Separately, the government must prove beyond a reasonable doubt that at least one overt act in furtherance of the conspiracy charged in Count 2 was committed after February 25, 2016.

Finally, you must find that either the agreement was formed or that an overt act was committed in the Western District of New York.[6]

---

[6] Adapted from Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-7.

**REQUEST NO. 8**  **ELEMENT 4: COMMISSION OF AN OVERT ACT IN FURTHERANCE OF THE CONSPIRACY**

The fourth, and final, element that the government must prove beyond a reasonable doubt is that the overt act was committed for the purpose of carrying out the unlawful agreement.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the indictment. In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act that, in and of itself is criminal or constitutes an objective of the conspiracy.[7]

_____

[7] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-8.

**REQUEST NO. 9**          **THE INDICTMENT AND THE STATUTE:**
                          **COUNTS 3 AND 8; CONSPIRACY (21 U.S.C. § 846)**

The defendant, Joseph Bongiovanni, is charged in Count 3, and both defendants are charged in Count 8, with conspiring to commit several violations of the federal drug laws.

Count 3 of the Indictment charges defendant Bongiovanni with conspiring to possess with intent to distribute controlled substances, distributing controlled substances.

Count 8 of the Indictment charges defendant Bongiovanni and defendant Gerace with conspiring to possess with intent to distribute controlled substances, distributing controlled substance, and using or maintaining a drug-involved premises.

Count 3 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

Beginning in or about 2008, and continuing to in or about August 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendant, JOSEPH BONGIOVANNI, did knowingly, willfully, and unlawfully combine, conspire, and agree with Michael Masecchia and others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 1000 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).

All in violation of Title 21, United States Code, Section 846.

Count 8 of the Indictment incorporates the introductory allegations and the allegations in Count 2 that I have already read to you and further alleges the following:

31

Beginning in or about 2009 and continuing to in or about February 2019, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendants, JOSEPH BONGIOVANNI and PETER GERACE JR., did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to commit the following offenses, that is:

a. to possess with intent to distribute, and to distribute, cocaine, cocaine base, methamphetamine, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(C); and

b. to knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, for the purpose of manufacturing, distributing, and using cocaine, cocaine base, methamphetamine, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances.

All in violation of Title 21, United States Code, Section 846.

**REQUEST NO. 10          STATUTE DEFINING OFFENSE (21 U.S.C. § 846)**

Count 3 of the Indictment charges the defendant Bongiovanni with conspiring to: (a) possess with intent to distribute, or to distribute, 1000 kilograms or more of marijuana; and (b) possess with intent to distribute, or to distribute, cocaine, all in violation of Title 21, United States Code, Section 846.

Section 846, as pertinent to this charge, states as follows:

Any person who conspires . . .

. . . to possess with intent to distribute, or to distribute, a controlled substance . . . in violation of Title 21, United States Code, Sections 841(a)(1); is guilty of an offense against the United States.

Count 8 of the Indictment charges defendant Bongiovanni and defendant Gerace with conspiring to (a) possess with intent to distribute, or to distribute, cocaine, cocaine base, methamphetamine, amphetamine (known as Adderall), marijuana, or heroin; and (b) to knowingly, intentionally, and unlawfully use and maintain a place for the purpose of manufacturing, distributing, or using [any controlled substances].

Section 846, as pertinent to this charge, states as follows:

Any person who conspires . . .

. . . to possess with intent to distribute, or to distribute, a controlled substance . . . in violation of Title 21, United States Code, Sections 841(a)(1); and

. . . to use and maintain any place . . . for the purpose of manufacturing or distributing any controlled substance . . . in violation of Title 21, United States Code, Section 856(a);

is guilty of an offense against the United States.

Title 21, United States Code, Section 846.

**REQUEST NO. 11**          **PURPOSE OF THE STATUTE - 21 U.S.C. § 846**

Under this statute, the defendants are accused of having been members of a conspiracy to violate certain federal laws.  A conspiracy is a kind of criminal partnership — a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes".

Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy was not actually committed.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.[8]

---

[8] Adapted from Title 21, United States Code, Section 846; Modern Federal Jury Instructions ¶ 19.01, Instruction No. 19-2.

**REQUEST NO. 12            ELEMENTS OF CONSPIRACY**

In order to satisfy its burden of proof with respect to Counts 3 and 8, the government must establish each of the following two essential elements beyond a reasonable doubt for each Count:

(1) that two or more persons entered the unlawful agreement charged in the Indictment; and,

(2) that the defendant knowingly and willfully became a member of the conspiracy.

In proving that Mr. Bongiovanni is guilty of Count 3 and that each defendant is guilty of Count 8, the government is not required to prove the commission of any overt act in furtherance of the conspiracy.[10]

---

[10] Adapted from Modern Federal Jury Instructions ¶ 19.01, Instruction 19-3; *see United States v. Shabani*, 513 U.S. 10 (1994) (government need not prove commission of any overt acts in furtherance of conspiracy in violation of 21 U.S.C. § 846); *United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1989) ("The only elements of a section 846 narcotics conspiracy offense are the existence of a conspiracy and defendant's willfully joining it"); *United States v. Knuckles*, 581 F.2d 305, 311 (2d Cir. 1978); *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975).

**REQUEST NO. 13          ELEMENT 1: EXISTENCE OF AGREEMENT**

The first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in Counts 3 and 8.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a

common design existed on the part of the persons charged to act together to accomplish an

unlawful purpose.[11]

---

[11] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-4.

**REQUEST NO. 14**          **ELEMENT 2: MEMBERSHIP IN THE CONSPIRACY**

The second element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy as charged in Counts 3 and 8 is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant whom you are considering was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a

criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.[12]

---

[12] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-6.

**REQUEST NO. 15**          **OBJECTIVES OF THE CONSPIRACY**

Count 3 of the Indictment charges several objectives of the conspiracy.  An objective of the conspiracy charged in Count 3 was the distribution of marijuana or cocaine, or possession of marijuana or cocaine with intent to distribute it.  A finding that the defendant conspired to distribute, or possess with intent to distribute, either marijuana, or cocaine, or both controlled substances would be sufficient to satisfy this objective as long as you are unanimous as to the controlled substance or controlled substances involved.   You are instructed, as a matter of law, that marijuana and cocaine are controlled substances, and that either controlled substance

Count 8 of the Indictment also charges several objectives of the conspiracy.   An objective of the conspiracy charged in Count 8 was the distribution of cocaine, or cocaine base, or methamphetamine, or amphetamine, or marijuana, or heroin.  A finding that the defendant conspired to distribute, or possess with intent to distribute, cocaine, or cocaine base, or methamphetamine, or amphetamine, or marijuana, or heroin would be sufficient to satisfy this objective as long as you are unanimous as to the controlled substance or controlled substances involved.   You are instructed, as a matter of law, that cocaine,  cocaine base, methamphetamine, amphetamine, marijuana, and heroin are controlled substances.

Let me talk to you for a few minutes about the meanings of the terms "distribute" and "possession with intent to distribute."  The word "distribute" means to deliver a controlled substance. "Deliver" is defined as the actual, constructive or attempted transfer of a controlled substance.  Simply stated, the words distribute and deliver mean to pass on, or to hand over

42

to another, or to cause to be passed on or handed over to another, or to try to pass on or hand over to another, a controlled substance.

For example, if A tells or orders B to hand over the drugs to C, then A has caused the drugs to be handed over, and therefore has distributed them.

Distribution does not require a sale. Activities in furtherance of the ultimate sale, such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drugs may constitute distribution. In short, distribution requires a concrete involvement in the transfer of the drugs.

The legal concept of "possession" may differ from the everyday usage of the term, so I will explain it in some detail.

Actual possession is what most of us think of as possession; that is, having physical custody or control of an object. For example, if someone had drugs on his person, you may find that he had possession of the drugs. The law recognizes that possession may be sole or joint. If one person alone possesses a controlled substance, that is sole possession. It is possible, however, that more than one person can have control over the same drugs. If this is so, then these people have what is called "joint possession."

A person need not have actual physical custody of an object in order to be in legal possession of it. If an individual has the ability and the intention to exercise substantial

control over an object that he does not have in his physical custody, then he is in possession of that item.  An example of this from everyday experience would be a person's possession of items he keeps in a safe deposit box of his bank.  Although the person does not have physical custody of those items, he has the ability and the intention to exercise substantial control over them and so has what is known as constructive possession of them.

Here is another example.  Suppose A is negotiating the price of heroin with B. Standing next to A is C, who has several envelopes of heroin in his pocket.  After a period of negotiation, A directs C to hand over to B a few of the envelopes.  B then hands A some money.  In this situation, you could find that C had possession of the heroin because he had them in his pocket.  However, you could also find that A had possession of the narcotics because of his proximity to the drugs, his association with the person -- C -- in actual possession of them, and his negotiations over price.  This example is not conclusive, but is simply meant to illustrate the notion of constructive possession.

Your decision about a defendant's intention to distribute a controlled substance involves a decision about the defendant's state of mind.  It is obviously impossible to directly prove the operation of the defendant's mind.  But a wise and intelligent consideration of all the facts and circumstances shown by the evidence and the exhibits in the case may enable you to infer what the defendant's state of mind was.  Since you cannot read a defendant's mind, you must make inferences from his behavior.

In our everyday affairs, we are continuously called upon to decide from the actions of others what their state of mind is. Experience has taught us that, frequently, actions speak louder and more clearly than spoken or written words. Therefore, you may well rely in part on circumstantial evidence in determining the defendant's state of mind.

It is sufficient in determining intent to distribute if you find that a defendant intended to cause or assist the distribution of the drugs. Basically, what you are determining is whether the drugs possessed were for personal use or for the purpose of distribution. Often it is possible to make this determination from the quantity of drugs found in a person's possession.

The possession of a large quantity of narcotics does not necessarily mean that a person intended to distribute them. On the other hand, a person may have intended to distribute narcotics even if he did not possess large amounts of them. Other physical evidence, such as paraphernalia for the packaging or processing of drugs, can show such an intent. There might also be evidence of a plan to distribute. You should make your decision whether a person intends to distribute any narcotics in his possession from all of the evidence presented.

The conspiracy in Count 3 charges that the controlled substances involved were marijuana and cocaine.

The conspiracy in Count 8 charges that the controlled substances involved were cocaine, cocaine base, methamphetamine, amphetamine, marijuana, and heroin. In this regard, let me instruct you that the purity of the drugs involved is not an element of this crime,

so you need not be concerned with that.  You need only find that the co-conspirators agreed to distribute or possess with intent to distribute any quantity of the controlled substance.

Another objective of the conspiracy in Count 8 was to maintain or use a place for the purpose of manufacturing or distributing cocaine base.  In a little bit, when I discuss Count 7, I will provide you with instructions the crime of maintaining a place for the purpose of manufacturing, distributing, or using controlled substances.  Those instructions are equally applicable here.[9]

---

[9] *United States v. Salameh*, 152 F.3d 88, 147 (2d Cir. 1998) ("The defendant must be shown to have agreed to commit a *particular offense* and not merely a vague agreement to do something wrong. A court's jury charge comports with this rule when it sets forth the essential nature of the plan by accurately describing the essence of the [conspiracy's] underlying illegal objective[s], and then instructs the jury that the government must demonstrate an agreement as to the objective[s] of the conspiracy. The government is not required to demonstrate that the defendant agreed to all of the conspiracy's objectives, as long as the defendant shared some knowledge of the [conspiracy's] unlawful aims and objectives."). (citations and punctuation omitted; emphasis in original); *see also United States v. Rodriguez*, 68 F. App'x 237, 242 (2d Cir. 2003) (Summary Order) ("the jury was correctly instructed that the government was not obliged to prove all the objectives beyond a reasonable doubt, it was specifically told that if it did not so find, 'you ... must be unanimous as to the object you do find. That is, you must all be in agreement with respect to at least one of the alleged objects of the conspiracy.' Further, the jury was instructed that if it found a drug conspiracy proved, it would be asked to indicate whether the scheme involved crack, powder cocaine, or both. Far from constituting error, these careful instructions ensured that the jury did not conflate the various conspiratorial objectives nor the two drugs at issue in determining if the government met its burden of proof.") (citations omitted); Title 21, United States Code, Section 841 (adapted).

**REQUEST NO. 16**          **DEFENDANT'S ROLE IN CONSPIRACY**

As I have instructed you, if a person, with an understanding of the unlawful character of a conspiracy, intentionally engages, advises, or assists, for the purpose of furthering the illegal undertaking, he thereby becomes a knowing and willful participant, a conspirator.

Before you conclude a defendant was a member of the conspiracy, you must be satisfied that he knowingly associated himself with the conspiracy with the intent to aid in the accomplishment of one or more of its unlawful purposes.

I further instruct you, however, that is not necessary that a defendant receive any monetary benefit from his participation in the conspiracy or have a financial stake in the outcome as long as he in fact participated in it in the way I have just explained.[13]

───────────────────────

[13] *United States v. Zambrano*, 776 F.2d 1091, 1095-96 (2d Cir. 1985); *United States v. Torres*, 901 F.2d 205, 222-24, 244-45 (2d Cir. 1990).

**REQUEST NO. 17**               **SPECIAL VERDICT FORM**

I want to address for a moment the verdict form which is being provided to you.  As I have said, one of the objectives of Count 3 is that the defendant Bongiovanni conspired to possess with intent to distribute, or to distribute, 1000 kilograms or more of marijuana.

The amount of the controlled substance involved is unrelated to the issue of whether the defendant is, in fact, guilty.  You will note, however, that the verdict form requires that, in the event you determine the defendant to be guilty of the conspiracy charged in Count 3 involving a mixture or substance containing marijuana.

With regard to marijuana, you must also determine whether the weight of that mixture or substance for which the defendant is responsible was at least 1000 kilograms of marijuana, or if he was responsible for less than 1000 kilograms of marijuana, then it was at least 100 kilograms or more of marijuana, or it was less than 100 kilograms of marijuana.  The verdict form has a place for you to indicate your findings in this regard.

Let me now discuss with you how, if your determination on Count 3 makes it necessary, you are to determine the quantity of marijuana for which defendant Bongiovanni is responsible.  In a conspiracy case such as this one, a member of the conspiracy is responsible for the amount of drugs that he himself agreed to distribute or possess with intent to distribute. In addition, that conspirator is also responsible for all reasonably foreseeable amounts of drugs that other conspirators agreed to distribute or possess with intent to distribute, in furtherance of the criminal activity that the defendant jointly undertook with them. In other

words, a defendant is responsible for drug amounts that are within the scope of the conspiracy that he joined and that are reasonably foreseeable to him.  Your verdict with regard to all of the questions that you answer on the verdict sheet must be unanimous.

We, the Jury, return the following verdicts in United States v. Joseph Bongiovanni et al., Docket Nos. 19-CR-227-LJV and 23-CR-37-LJV.

## COUNT 3

### (Narcotics Conspiracy)

### The Grand Jury Charges That:

Count 3 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

Beginning in or about 2008, and continuing to in or about August 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendant, JOSEPH BONGIOVANNI, did knowingly, willfully, and unlawfully combine, conspire, and agree with Michael Masecchia and others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 1000 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).

All in violation of Title 21, United States Code, Section 846.

See Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Thomas, 274 F.3d 655 (2d Cir. 2001) (en banc); United States v. Jackson, 335 F.3d 170, 175, 180-83 (2d Cir. 2003); United States v. Martinez, 987 F.2d 920, 924-26 (2d Cir. 1993).

As I have instructed you before, if you find that the conspiracy as alleged had any one of the charged objectives, the illegal purpose element is satisfied, so long as you are all in agreement with respect to at least one of the alleged objectives of the conspiracy.

How do you find on Count 1 as to the defendant, _____?

[   ] Guilty          [   ] Not Guilty

If you answered "Guilty" to Count 3 proceed to part "a".

If you answered "Not Guilty" to Count 1 proceed to Count 4 (do not answer part "a").

a.      Did you unanimously find that one of the objectives of the conspiracy was to possess with intent to distribute or to distribute marijuana?

[   ] Yes          [   ] No

If you answered "Yes", proceed to part "1".  If you answered "No", proceed to Count 4.

1.      We, the Jury, find that the amount of the mixture or substance containing cocaine base was:

_____  1000 kilograms or more

_____  Less than 1000 kilograms but at least 100 kilograms

_____  less than 100 kilograms

I certify the above verdict to be true and accurate.


DATED:         _____ \_\_\_\_\_, 2023.




_____
JURY FOREPERSON


(PLEASE REMEMBER THAT YOUR VERDICT MUST BE UNANIMOUS)

**REQUEST NO. 18          THE INDICTMENT AND THE STATUTE: COUNT 7**

The defendant, Peter Gerace, is charged in Count 7 of the Indictment with maintaining a drug involved premises and aiding and abetting that crime, in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.  Title 21, United States Code, Section 856(a)(1) provides that "[I]t shall be unlawful to knowingly [use or maintain] any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."[14]  I will also remind you that maintaining a drug involved premises is one of the objectives of the conspiracy charged in Count 8, and I have previously instructed you on that count.

Count 7 of the Indictment incorporates the introductory allegations and the allegations in Count 2 that I have already read to you and further alleges as follows:

Beginning in or about 2006, and continuing until on or about December 12, 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendant, PETER GERACE JR., did knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, for the purpose of manufacturing, distributing, and using cocaine, cocaine base, methamphetamine, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances.

All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

---

[14] Title 21, United States Code, Section 856(a)(1); Title 18, United States Code, Section 2; Modern Federal Jury Instructions ¶ 56.06, Instruction 56-39.

**REQUEST NO. 19**          **ELEMENTS OF THE OFFENSE**

In order to find the defendant guilty of maintaining a drug involved premises as charged in the indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant permanently or temporarily used or maintained the place described in the Indictment;

Second, that the defendant maintained that place for the purpose of manufacturing, distributing or using any controlled substance; and

Third, that the defendant acted knowingly.[15]

---

[15] Modern Federal Jury Instructions ¶ 56.06, Instruction 56-40.

**REQUEST NO. 20**         **ELEMENT 1: USING OR MAINTAINING A PLACE**

      The first element that the government must prove beyond a reasonable doubt is that the defendant permanently or temporarily used or maintained the premises described in the Indictment, specifically the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York.

      To "maintain" a place means to exercise significant supervisory control over the activities that occur and the people who are in that place over a period of time.  For example, a person who owns and resides in a house or apartment exercises such control while a casual visitor does not.

      In determining whether the defendant permanently or temporarily used or maintained the premises, you should consider all of the relevant evidence, taking into account such factors as how much control the defendant exercised over the property, the duration of that control, and whether the defendant was responsible for furnishing, repairing, protecting, and providing food and other supplies to those at the place[16]

      The terms "use" is given its ordinary meaning.

---

[16] Modern Federal Jury Instructions ¶ 56.06, Instruction 56-41.

**REQUEST NO. 21**          **ELEMENT 2: PURPOSE**

The second element that the government must prove beyond a reasonable doubt is that the defendant permanently or temporarily used or maintained the premises for the purpose of manufacturing, distributing, or using any controlled substance.

To establish this element, the government must prove that the drug activity was a significant or important reason why the defendant maintained the place. The government is not required to prove that the drug activity was the defendant's only purpose in maintaining the place, although that would obviously satisfy this element.[17]

---

[17] Modern Federal Jury Instructions ¶ 56.06, Instruction 56-42.

**REQUEST NO. 22**          **ELEMENT 3: KNOWLEDGE**

The third element that the government must prove beyond a reasonable doubt is that the defendant acted knowingly.

An act is done knowingly when it is done voluntarily and intentionally and not because of accident, mistake, or some other innocent reason.

The question of whether a person acted with knowledge is a question of fact for you to determine, like any other fact question. Direct proof of knowledge is not always available, and such proof is not required. The ultimate fact of whether someone knew something at a particular time, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.[18]

---

[18] Modern Federal Jury Instructions ¶ 56.06, Instruction 56-43.

**REQUEST NO. 23**          **THE INDICTMENT AND THE STATUTE: COUNTS 4 AND 5**

The defendant, Joseph Bongiovanni, is charged in Counts 4 and 5 with a violation of section 201(b) of Title 18 of the United States Code. That section, which I shall refer to as the bribery section, provides that:

"Whoever being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for—

(1) being influenced in the performance of any official act; or

. . .

(2) being induced to do or omit to do any act in violation of the official duty of such official or person;"[19]

[shall be guilty of a crime].

Count 4 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges as follows:

Beginning in or about 2008, and continuing to in or about 2017, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for being induced to do an act and omit to do an act in violation of his official duty as opportunities arose; that is the defendant, JOSEPH BONGIOVANNI, was paid at least $250,000 in United States currency to, among other acts, open and close a DEA case file; to

---

[19] Title 18, United States Code, Section 201; Modern Federal Jury Instructions ¶ 16.02, Instruction 16-8.

open and close a DEA CS; to cause the issuance of DEA administrative subpoenas; to cause the entry of names, locations, and phone numbers in de-confliction databases; to make false and misleading entries in DEA reports and forms; to make false and misleading statements to other members of law enforcement; to provide information about federal investigations, law enforcement methods and techniques, and the identity of individuals cooperating and potentially cooperating with law enforcement in order to conceal the drug trafficking activities, and to help such drug trafficking activities continue, of individuals associated with the defendant, including individuals the defendant believed to be connected to and associated with IOC.

All in violation of Title 18, United States Code, Section 201(b)(2)(C).


Count 5 of the Indictment incorporates the introductory allegations and the allegations in Count 2 that I have already read to you and further alleges as follows:

Beginning in or about 2009, and continuing to on or about June 6, 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return being influenced in the performance of an official act and for being induced to do an act and omit to do an act in violation of official duty, as opportunities arose; that is the defendant, JOSEPH BONGIOVANNI, was paid United States currency to, among other acts and omissions, omit to enforce the drug laws of the United States against Peter Gerace Jr., and against Pharaoh's Gentlemen's Club located at 999 Aero Drive, Cheektowaga, New York; to falsely advise an Federal Bureau of Investigation (FBI) Special Agent (SA) that Peter Gerace Jr. was a DEA confidential source, thereby inducing the FBI SA to abandon a narcotics investigation into Peter Gerace Jr. and Pharaoh's Gentlemen's Club; to provide advice and information to Peter Gerace Jr.; to help Peter Gerace Jr. and Pharaoh's Gentlemen's Club avoid federal narcotics investigations; to make statements to his co-worker, a fellow DEA SA, to dissuade and discourage the fellow DEA SA from investigating Peter Gerace Jr., and Pharaoh's; to make false and misleading statements to other members of law enforcement; to provide information about law enforcement methods and techniques; and, to help such drug trafficking activities continue.

All in violation of Title 18, United States Code, Sections 201(b)(2)(A) and 201(b)(2)(C).

**REQUEST NO. 24**          **BRIBERY DEFINED (PURPOSE OF THE STATUTE)**

The purpose of the bribery section is to protect the public from the consequences of corruption in public service. It is a major concern of organized society that the community have the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions.

In short, the purpose of this statute is to assure high standards of ethical behavior by government employees, and to enforce uniform treatment of all citizens who have matters before governmental agencies.[20]

---

[20] Modern Federal Jury Instructions ¶ 16.02, Instruction 16-9.

**REQUEST NO. 25**          **ELEMENTS OF THE OFFENSE**

In order to find the defendant guilty of the crime of bribery as charged in Count 4, the government must prove each of the following elements beyond a reasonable doubt:

First, that between in or about 2008 and in or about 2017, the defendant demanded, sought, received, or agreed to receive something of value;

Second, that at that time the defendant was then a public official by virtue of his being a Drug Enforcement Administration Special Agent; and

Third, that the defendant did so with the corrupt intent of being induced to do an act or omit to do an act in violation of his official duty.

In order to find the defendant guilty of the crime of bribery as charged in Count 5, the government must prove each of the following elements beyond a reasonable doubt:

First, that between in or about 2009 and on or about June 6, 2019, the defendant demanded, sought, received, or agreed to receive something of value;

Second, that at that time the defendant was then a public official by virtue of his being a Drug Enforcement Administration Special Agent; and

Third, that the defendant did so with the corrupt intent to be influenced in the performance of an official act or for being induced to do an act or omit to do an act in violation of his official duty. [21]

---

[21] Adapted from Modern Federal Jury Instructions ¶ 16.02, Instruction 16-10; *see also* Title 18, United States Code, Section 201(b)(2)(C).

**REQUEST NO. 26**          **ELEMENT 1: RECIPIENT WAS A PUBLIC OFFICIAL**

The first element that the government must prove beyond a reasonable doubt is that at the time in question the defendant was then a public official by virtue of his being a Drug Enforcement Administration Special Agent.

"Public official" is defined in the bribery statute as a "Member of Congress … or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government or a juror."[22]

---

[22] Modern Federal Jury Instructions ¶ 16.02, Instruction 16-11.

**REQUEST NO. 27**  **ELEMENT 2: DEMAND OR RECEIPT OF SOMETHING OF VALUE**

The second element that the government must prove beyond a reasonable doubt is that between in or about 2008 and 2017 for Count 4 and between in or about 2009 and June 6, 2019 for Count 5, the defendant demanded, sought, received, or agreed to receive something of value.

The bribery section makes no distinction between demanding, seeking or receiving a bribe; the mere seeking of a bribe is just as much a violation of the statute as the actual receiving of one.[23]

---

[23] Modern Federal Jury Instructions ¶ 16.02, Instruction 16-12.

**REQUEST NO. 28**          **ELEMENT 3: CORRUPT INTENT TO INFLUENCE AN OFFICIAL ACT OR VIOLATE AN OFFICIAL DUTY**

The third element that the government must prove beyond a reasonable doubt is that the defendant demanded, sought, or received the thing of value with the corrupt intent of being induced to do an act or omit to do an act in violation of his official duty, for Count 4, and with the corrupt intent of being influenced in the performance of an official act or for being induced to do an act or omit to do an act in violation of his official duty, for Count 5.

Corrupt intent for bribery means a quid pro quo requirement; that is, there must be a specific intent to demand, seek, or receive something of value in exchange for being influenced in the performance of official acts or violating official duties.

A public official's "official duty" encompasses a public official's job responsibilities as dictated, either orally or in writing, by governing statutes, rules, and regulations.

An "official act" means any decision or action on any question, matter, cause, suit, proceeding, or controversy that may at any time be pending or that may by law be brought before any public official in his official capacity or in his place of trust.

The question, matter, cause, suit, proceeding, or controversy must involve a formal exercise of governmental power similar in nature to a lawsuit before a court, a determination before an agency or a hearing before a committee. It also must be something focused and specific that is pending or may be brought before a public official.

To qualify as an "official act," the public official must make a decision or take an action on that question, matter, cause, suit, proceeding, or controversy, or agree to do so. The public official in fact does not have to intend to perform the "official act," so long as he agrees to do so. An agreement to do so need not be explicit, and the public official need not specify the means that he or she will use to perform his or her end of the bargain.

A public official can perform an "official act" by making a decision or taking an action on a question, matter, cause, suit, proceeding, or controversy on a matter pending or brought before the official. A public official, however, also takes an "official act" if the official uses his or her official position to exert pressure, or advise another public official, knowing or intending that pressure, or advice will form the basis for an "official act" by the second official. Simply setting up a meeting, talking to another official, or organizing an event, or agreeing to do so, however, without more does not constitute an "official act."[24]

---

[24] Adapted from Modern Federal Jury Instructions ¶ 16.02, Instruction 16-13; *United States v. Alfisi*, 308 F.3d 144, 151 n.3 (2d Cir. 2002).  For the instruction on "official act," *see McDonnell v. United States*, 579 U.S. 550, 567–580 (2016).  For the instruction on "official duty," *see United States v. Fernandez*, Nos. 19-15044; 19-15165, 2022 WL 3581793, at *2–*5 (11th Cir. Aug. 22, 2022); *see also United States v. Bailey*, No. 19-156-1 (CKK), 2023 WL 2139365, at *3–*6 (D.D.C. Feb. 21, 2023) (interpreting "lawful duty" as used in section 201(b)(1)(C)); *United States v. Trinh*, Case No. 2:15-cr-00179(A)-CA, 2017 WL 3835138, at *4 (E.D. Cal. Aug. 31, 2017) (same as *Bailey*); *United States v. Young*, 87 F. Supp. 3d 805, 806 (W.D. Va. 2015) (same as *Bailey*); *cf. United States v. Cruz*, 946 F.2d 122, 123 (11th Cir. 1991) (affirming law enforcement officer who provided an investigative target with information relating to the IRS and FBI's investigations in exchange for money violated his lawful duty).

**REQUEST NO. 29**          **THE INDICTMENT AND THE STATUTE: COUNT 6**

The defendant, Peter Gerace, is charged in Count 6 with a violation of section 201(b)

of Title 18 of the United States Code.  That section, which I shall refer to as the bribery section,

provides that:

"Whoever, directly or indirectly, corruptly gives, offers or promises anything of value
to any public official or person who has been selected to be a public official, or offers or
promises any public official or person who has been selected to be a public official to give
anything of value to another person or entity, with intent—

(1) to influence any official act; or

. . .

(2) to induce such public official or person who has been selected to be a public official
to do or omit to do any act in violation of the lawful duty of such official or person,"

shall be guilty of a crime.[25]

Count 6 of the Indictment incorporates the introductory allegations and the allegations

in Count 2 that I have already read to you and further alleges as follows:

Beginning in or about 2009, and continuing to on or about June 6, 2019, the exact
dates being unknown to the Grand Jury, in the Western District of New York, the defendant,
PETER GERACE JR., did, directly and indirectly, corruptly give, offer, and promise a thing
of value to a public official, namely a DEA Special Agent, with intent to induce the
performance of an official act and to induce a public official to do an act and omit to do an
act in violation of his lawful duty, as opportunities arose; that is, the defendant, PETER
GERACE JR. paid and facilitated bribe payments to Joseph Bongiovanni, a DEA Special
Agent, in United States currency to among other acts, to falsely advise an Federal Bureau of
Investigation (FBI) Special Agent (SA) that the defendant PETER GERACE JR. was a DEA
confidential source, thereby inducing the FBI SA to abandon a narcotics investigation into
the defendant PETER GERACE JR. and Pharaoh's Gentlemen's Club; to create an official
DEA 6 document falsely stating that the defendant PETER GERACE JR. was a DEA source;
to provide advice and information to the defendant PETER GERACE JR.; to help the
defendant PETER GERACE JR. and Pharaoh's Gentlemen's Club avoid federal narcotics

---

[25] Title 18, United States Code, Section 201; Modern Federal Jury Instructions ¶ 16.01,
Instruction 16-1.

investigations; to induce Bongiovanni to use his position as a DEA SA to make statements to his co-worker, a fellow DEA SA, to dissuade and discourage the fellow DEA SA from investigating the defendant PETER GERACE JR. and Pharaoh's; to make false and misleading statements to other members of law enforcement; to provide information about law enforcement methods and techniques; to help such drug trafficking activities continue; and to make false statements in official DEA memoranda in order to minimize the relationship between Bongiovanni and the defendant PETER GERACE JR. as a means to conceal their conspiratorial relationship.

All in violation of Title 18, United States Code, Sections 201(b)(1)(A) and 201(b)(1)(C).

**REQUEST NO. 30**         **ELEMENTS OF THE OFFENSE**

In order to find the defendant guilty of the crime of bribery as charged in the indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that between in or about 2009 and on or about June 6, 2019, the defendant, Peter Gerace, offered, promised or gave money or something else of value to Joseph Bongiovanni;

Second, that Joseph Bongiovanni was then a public official by virtue of his being a Drug Enforcement Administration Special Agent; and

Third, that the defendant, Peter Gerace, did so with the corrupt intent to influence an official act or to induce that official to perform an act or omit to perform an act in violation of his lawful duty.[26]

---

[26] Modern Federal Jury Instructions ¶ 16.01, Instruction 16-3

**REQUEST NO. 31**        **ELEMENT 1: RECIPIENT WAS A PUBLIC OFFICIAL**

The first element that the government must prove beyond a reasonable doubt is that at the time in question Joseph Bongiovanni was then a public official by virtue of his being a Drug Enforcement Administration Special Agent.

"Public official" is defined in section 201 as a "Member of Congress … or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government or a juror."

The government does not have to prove that the defendant knew that Joseph Bongiovanni was a federal official, as long as the defendant believed he was dealing with a government official.[27]

---

[27] Adapted from Modern Federal Jury Instructions ¶ 16.01, Instruction 16-4.

**REQUEST NO. 32**          **ELEMENT 2: OFFER OF SOMETHING OF VALUE**

The second element that the government must prove beyond a reasonable doubt is that between in or about 2009 and on or about June 6, 2019, the defendant, Peter Gerace, offered, promised, or gave money or something else of value to Joseph Bongiovanni.

The bribery section makes no distinction among offering, promising, and giving a bribe; the mere offer or promise of a bribe is just as much a violation of the statute as the actual giving of one.[28]

---

[28] Adapted from Modern Federal Jury Instructions ¶ 16.01, Instruction 16-5.

**REQUEST NO. 33**        **ELEMENT 3: CORRUPT INTENT TO INFLUENCE AN OFFICIAL ACT OR VIOLATE A LAWFUL DUTY**

The third element that the government must prove beyond a reasonable doubt is that the defendant gave, promised, or offered the money or thing of value with the corrupt intent to influence an official act of that official or to induce that official to perform or omit to perform acts in violation of his lawful duty.

Corrupt intent for bribery means a quid pro quo requirement; that is, there must be a specific intent to give, offer, or promise something of value in exchange for influencing the public official's performance of official acts or violation of lawful duties.

A public official's lawful duty encompasses statutory, regulatory, or official duties imposed upon the person receiving the bribe, either orally or in writing, by virtue of and specific to the office stewarded by the person receiving the bribe.

An official act means any decision or action on any question or matter that may at any time be pending or that may by law be brought before any public official in his official capacity or in his place of trust.

The question, matter, cause, suit, proceeding, or controversy must involve a formal exercise of governmental power similar in nature to a lawsuit before a court, a determination

71

before an agency or a hearing before a committee. It also must be something focused and specific that is pending or may be brought before a public official.

To qualify as an "official act," the public official must make a decision or take an action on that question, matter, cause, suit, proceeding, or controversy, or agree to do so. The public official in fact does not have to intend to perform the "official act," so long as he agrees to do so. An agreement to do so need not be explicit, and the public official need not specify the means that he or she will use to perform his or her end of the bargain.

A public official can perform an "official act" by making a decision or taking an action on a question, matter, cause, suit, proceeding, or controversy on a matter pending or brought before the official. A public official, however, also takes an "official act" if the official uses his or her official position to exert pressure, or advise another public official, knowing or intending that pressure, or advice will form the basis for an "official act" by the second official. Simply setting up a meeting, talking to another official, or organizing an event, or agreeing to do so, however, without more does not constitute an "official act."

In considering this element, remember that it is the defendant's intent to influence the public official's actions, and not the subsequent actions of the public official, that is important. Thus, the government does not have to prove that the public official accepted the bribe or did the act sought. It is not necessary that the public official even had the power or authority to perform the act that the defendant sought. For the same reason, it does not matter that the

defendant intended to influence an official act that was lawful, or even desirable or beneficial to the public interest. [29]

---

[29] Adapted from Modern Federal Jury Instructions ¶ 16.01, Instruction 16-6; *United States v. Alfisi*, 308 F.3d 144, 151 n.3 (2d Cir. 2002).  For the instruction on "official act," *see McDonnell v. United States*, 579 U.S. 550, 567–580 (2016).  For the instruction on "lawful duty," *see United States v. Bailey*, No. 19-156-1 (CKK), 2023 WL 2139365, at *3–*6 (D.D.C. Feb. 21, 2023); *United States v. Trinh*, Case No. 2:15-cr-00179(A)-CA, 2017 WL 3835138, at *4 (E.D. Cal. Aug. 31, 2017) (same as *Bailey*); *United States v. Young*, 87 F. Supp. 3d 805, 806 (W.D. Va. 2015) (same as *Bailey*); *cf. United States v. Cruz*, 946 F.2d 122, 123 (11th Cir. 1991) (affirming law enforcement officer who provided an investigative target with information relating to the IRS and FBI's investigations in exchange for money violated his lawful duty).

**REQUEST NO. 34**     **STREAM OF BENEFITS**

For Counts 4 and 5, it is sufficient if the government proves that Mr. Bongiovanni solicited or received something of value as part of a stream of benefits that was, for Count 4, corruptly intended to influence violations of Mr. Bongiovanni's official duties, as opportunities arose, and, for Count 5, corruptly intended to influence particular official acts or violations of Mr. Bongiovanni's official duties, as opportunities arose. The same is true for Count 6. It is sufficient if the government proves that Mr. Gerace gave or offered something of value as part of a stream of benefits that was corruptly intended to influence particular official acts or violations of Mr. Bongiovanni's lawful duties, as opportunities arose.

In other words, for Counts 4 through 6, the government does not need to establish that a specific bribe payment was made in exchange for a specific official act or violation of duty. It is sufficient if the government proves that the bribe was solicited or received, or given, offered, or paid, with the intent that Mr. Bongiovanni's services were retained on an "as needed" basis, so that whenever the opportunity presented itself, Mr. Bongiovanni would perform official acts on an identified focused, concrete, and specific question or matter or that Mr. Bongiovanni would violate an identified official or lawful duty, as charged in the specific count you are considering.[30]

---

[30] *See United States v. Silver*, 948 F.3d 538, 556–67 (2d Cir. 2020); *United States v. Ganim*, 510 F.3d 134, 142 (2d Cir. 2007).

**REQUEST NO. 35**          **MIXED MOTIVE NOT A DEFENSE**

Because people rarely act for a single purpose, the government does not need to prove that Mr. Bongiovanni or Mr. Gerace were solely motivated by a corrupt purpose when they engaged in the charged bribery conduct.  If you find beyond a reasonable doubt that the bribery conduct charged in Counts 4 through 6 was at least in part done with corrupt intent, then it makes no difference that Mr. Bongiovanni or Mr. Gerace may also have had another lawful motive, like friendship, for soliciting or receiving, or giving or offering, the thing of value.[31]

---

[31] *See United States v. Reichberg*, 5 F.4th 233, 240 (2d Cir. 2021); *United States v. Coyne*, 4 F.3d 100, 113 (2d Cir. 1993) (noting that where a defendant argues friendship provided an innocent motivation for his actions, it is proper to instruct the jury that "a valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability" (internal quotation marks omitted)).

**REQUEST NO. 36          THE INDICTMENT AND THE STATUTE: COUNT 9**


The defendant, Peter Gerace, is charged in Count 9 of the Indictment with conspiracy

to commit sex trafficking, in violation of Title 18, United States Code, Section 1594(c).


Count 9 of the Indictment alleges as follows:

Beginning in or about 2009 and continuing to in or about 2018, the exact dates being
unknown, in the Western District of New York, and elsewhere, the defendant, PETER
GERACE JR., did knowingly, willfully, and unlawfully combine, conspire, and agree
with others, known and unknown, to knowingly recruit, entice, harbor, transport,
provide, obtain, and maintain by any means, in and affecting interstate and foreign
commerce, persons, and to benefit, financially and by receiving anything of value,
from participation in a venture which has engaged in such acts, knowing and in
reckless disregard of the fact that means of force, threats of force, fraud, and coercion,
and a combination of such means, would be used to cause such persons to engage in
a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)
and 1591(b)(1).

All in violation of Title 18, United States Code, Section 1594(c).

**REQUEST NO. 37**          **COUNT 9: CONSPIRACY TO ENGAGE IN SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION**

**Sex Trafficking Conspiracy Separate From Substantive Offense**

The defendant is charged with having been a member of a conspiracy to violate Title 18, United States Code, Section 1591.  In a few moments, I will instruct you on the elements of that offense, which is the crime that Count Nine of the Indictment alleges that the defendant conspired to commit.

A conspiracy is a kind of criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."

Indeed, you may find a defendant guilty of the crime of conspiracy even though the substantive crime which was the object of the conspiracy was not actually committed.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture. [32]

---

[32] Adapted from Modern Federal Jury Instructions, ¶ 19.01, Instruction 19-2.

**REQUEST NO. 38**     **CONSPIRACY TO ENGAGE IN SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION- ELEMENTS OF CONSPIRACY**

In order to satisfy its burden of proof with respect to the conspiracy charge, the government must establish each of the following two essential elements beyond a reasonable doubt:

First, that a conspiracy to commit sex trafficking of an adult by force, threats of force, fraud or coercion was formed, reached, or entered into by two or more persons; and

Second, that at some time during the existence of the conspiracy, the defendant knowingly and willfully became a member of the conspiracy.

The government is not required to prove the defendant committed any overt act in furtherance of the conspiracy charged in Count 9.

*See* Adapted Modern Federal Jury Instructions ¶19.01, Instruction 19-3; *see also United States v. Labat*, 905 F.2d 18, 21 (2d Cir. 1990) ("Since the essence of conspiracy is the agreement and not the commission of the substantive offense that is its objective, the offense of conspiracy may be established even if the collaborators do not reach their goal."); *United States v. Gerace*, No. 119CR227JLSMJR, 2022 WL 17478270, at *8 (W.D.N.Y. Aug. 5, 2022), *report and recommendation adopted sub nom. United States v. Bongiovanni*, No. 19CR227JLSMJR, 2022 WL 17139489 (W.D.N.Y. Nov. 22, 2022) ("the Government need not allege or prove an overt act to sustain a sex trafficking conspiracy conviction charged pursuant to 18 U.S.C. § 1594(c)") (citing *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 362 n. 42 (5th Cir. 2014); *United States v. Shine*, No. 20-314, 2022 WL 761520 (2d Cir. Mar. 14, 2022) (*see* Jury Instructions, Hon. Frank P. Geraci, Jr., United States District Court, Western District of New York in *United States v. Valentino Shine*, 17-CR-28(G), Doc. No. 499 at 78 ("you may find the defendant guilty of the crime of sex trafficking conspiracy even if you find no sex trafficking was actually committed and even if no member of the conspiracy committed an act in furtherance of the conspiracy. Similarly, you may find the defendant guilty of conspiracy even if it was impossible for him to carry out the crime of sex trafficking successfully")).

**REQUEST NO. 39**       **COUNT 9: FIRST ELEMENT: EXISTENCE OF AGREEMENT**

The first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in Count 9.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a

common design existed on the part of the persons charged to act together to accomplish an

unlawful purpose.[33]

---

[33] Modern Federal Jury Instructions ¶19.01, Instruction 19-4

**REQUEST NO. 40**          **COUNT 9: SECOND ELEMENT- MEMBERSHIP IN THE CONSPIRACY**

The second element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in Count 9 existed, you must next ask yourselves, who the members of that conspiracy were. In deciding whether the defendant was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Second Superseding Indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan.

The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved.  In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities.  Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his/her part.  Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt.  A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member.  A person may know, or be friendly with, a criminal, without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of the defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing participant in the unlawful agreement - that is to say, a conspirator.[34]

---

[34] Modern Federal Jury Instructions, ¶ 19.01, Instruction 19-6.

**REQUEST NO. 41**          **OBJECT OF THE CONSPIRACY- SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION**

     The government must prove the two elements I have just described beyond a reasonable doubt to prove the sex trafficking conspiracy alleged in Count 9.  However, I will now describe the object of the conspiracy charged in Count 9, sex trafficking by force, fraud, or coercion pursuant to Sections 1591(a) and 1591(b)(1) of Title 18 of the United States Code.

     Section 1591(a) criminalizes, in pertinent part, "Whoever knowingly (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains . . . [or] maintains by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act[.]"[35]

---

[35] Title 18, United States Code, Section 1591.

**REQUEST NO. 42**        **OBJECT OF THE CONSPIRACY- GOVERNMENT NOT REQUIRED TO PROVE SUBSTANTIVE CRIME OF SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION**

You may find the defendant guilty of the crime of sex trafficking conspiracy even if you find no sex trafficking was actually committed and even if no member of the conspiracy committed an act in furtherance of the conspiracy. Similarly, you may find the defendant guilty of conspiracy even if it was impossible for him to carry out the crime of sex trafficking successfully.[36]

---

[36] *United States v. Shine*, No. 20-314, 2022 WL 761520 (2d Cir. Mar. 14, 2022) (*see* Jury Instructions, Hon. Frank P. Geraci, Jr., United States District Court, Western District of New York in *United States v. Valentino Shine*, 17-CR-28(G), Doc. No. 499 at 78 ("you may find the defendant guilty of the crime of sex trafficking conspiracy even if you find no sex trafficking was actually committed and even if no member of the conspiracy committed an act in furtherance of the conspiracy. Similarly, you may find the defendant guilty of conspiracy even if it was impossible for him to carry out the crime of sex trafficking successfully")).

**REQUEST NO. 43**          **OBJECT OF THE CONSPIRACY- SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION**

The object of the conspiracy alleged in Court 9, sex trafficking by force fraud or coercion, consists of the following elements:

First, that the defendant knowingly transported, recruited, enticed, harbored, provided, obtained, maintained, patronized or solicited a person by any means, or benefitted financially from participation in a venture which engaged in one of those acts;

Second, that the defendant knew or was in reckless disregard of the fact that force, fraud, or coercion would be used with respect to this person;

Third, that the defendant knew or was in reckless disregard of the fact that this person would be engaged in a commercial sex act, as I will define that term for you;

Fourth, that the defendant's conduct was in or affecting interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States. [37]

---

[37] *See* Adapted from Modern Federal Jury Instructions, ¶ 47A.03, Instruction 47A-18; *see also* 18 U.S.C. § 1591(a)(1) & (a)(2); *United States v. Jungers,* 702 F.3d 1066 (8th Cir. 2013); *United States v. Shine*, No. 20-314, 2022 WL 761520 (2d Cir. Mar. 14, 2022) (*see* Jury Instructions, Hon. Frank P. Geraci, Jr., United States District Court, Western District of New York in *United States v. Valentino Shine*, 17-CR-28(G), Doc. No. 499 at 73-74).

**REQUEST NO. 44**       **RECRUITING, ENTICING, HARBORING, PROVIDING, OBTAINING, MAINTAINING, PATRONIZING, OR SOLICITING**

The first element of the object of the conspiracy to commit sex trafficking through force, fraud or coercion is that the defendant knowingly transported, recruited, enticed, harbored, provided, obtained, maintained, patronized, or solicited a victim by any means. [38]

To "harbor" someone means simply to provide shelter to that person.

To "obtain" someone means to acquire, control, or possess that person, even if only for a short period.

An act is done knowingly when it is done purposely and intentionally, as opposed to mistakenly or inadvertently.

---

[38] Adapted from Modern Federal Jury Instructions, ¶ 47A.03, Instruction 47A-19.

**REQUEST NO. 45**           **USE OF FORCE, FRAUD, OR COERCION**

The second element of the object of the conspiracy to commit sex trafficking through force, fraud, or coercion is that the defendant knew or was in reckless disregard of the fact that force, fraud, or coercion would be used with respect to a victim.

Fraud, as I just used that term, means that the defendant knowingly made a misstatement or omission of a material fact to entice [a victim]. A material fact is one that would reasonably be expected to be of concern to a reasonable person in relying upon the representation or statement in making a decision.

Coercion, as I just used that term, means a threat of serious harm or physical restraint against a person. A threat is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm. In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat. The term "serious harm" includes both physical and non-physical types of harm, including psychological, financial, or reputational harm, that is sufficient under all of the surrounding circumstances to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.  Fear of severe withdrawal symptoms from narcotics addiction meets the definition of serious harm under the statute.  In

88

determining whether the defendant made a threat of serious harm that could reasonably be believed by [a victim], you should consider [a victim's] particular station in life, physical and mental condition, age, education, training, experience, and intelligence. You may consider the victim's special vulnerabilities and whether the victim was vulnerable in some way such that the actions of the defendant, even if not sufficient to compel another person to engage in commercial sex acts, would have been enough to compel a reasonable person of the same background and in the same circumstances.

Coercion, as I just used that term, can also mean that the defendant engaged in a course of behavior intended to cause [a victim] to believe that if she did not engage in a commercial sex act as directed by the defendant, [a victim] would suffer serious harm.

To satisfy this element, the government must prove that force, fraud, or coercion, as I just defined those terms, was used, and also that the defendant knew or was in reckless disregard of the fact that it would be used, against the victim.

Whether or not the defendant had this knowledge is a question of fact to be determined by you on the basis of all the evidence. An act is done knowingly only if it is done purposely and deliberately, and not because of accident, mistake, negligence, or other innocent reason. If you find that the evidence establishes, beyond a reasonable doubt, that the defendant actually knew that coercion would be used, then this element is satisfied. Even if the evidence does not establish actual knowledge, this element is satisfied if you find that the government has proved, beyond a reasonable doubt, that the defendant acted with reckless disregard of

the facts concerning the use of coercion. The phrase "reckless disregard of the facts" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the victim was coerced to engage in a commercial sex act.

In considering whether the defendant knew that force, fraud or coercion would be used to cause a victim to engage in a commercial sex act, you are to apply the definition of "knowingly" that I previously provided to you. Remember whether a defendant acted knowingly may be proven by what the defendant said and did, and by all the facts and circumstances surrounding the case, since direct proof of a person's state of mind is rarely available.

To establish that a defendant "recklessly disregarded" the fact that force, fraud, or coercion would be used against a victim, the government must prove that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. Stated another way, a person's reckless disregard of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.

I further instruct you that the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew you may

consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge.

The government is not required to prove that a defendant knew that his acts were, or would be, unlawful. [39]

___

[39] Adapted from Modern Federal Jury Instructions, ¶ 47A.03, No. 47A-21; *see also United States v. Shine*, No. 20-314, 2022 WL 761520, at *3 (2d Cir. Mar. 14, 2022)(no error where court instructed jury that "reasonable fear of severe withdrawal symptoms can meet the definition of serious harm," under section 1591); *United States v. Mack*, 808 F.3d 1074 (6th Cir. 2015); *United States v. Fields*, No. 8:13-cr-198-T-30TGW, 2013 WL 5278499, at *1 (M.D. Fla. Sept 18, 2013) *aff'd*, 625 Fed. App'x 949, 952 (11th Cir. 2015); *United States v. Groce*, 15-cr-078-wmc, 2016 WL 10703155, at *3 (W.D. Wisc. Oct. 20, 2016) *vacated on other grounds*, 891 F.3d 260 (7th Cir. 2018); *United States v. Bradley*, 390 F.3d 145, 153 (1st Cir. 2004); *United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015).

**REQUEST NO. 46**          **COMMERCIAL SEX ACT**

The third element of the object of the conspiracy to commit sex trafficking through force, fraud or coercion is that the defendant knew that a victim would be engaged in a commercial sex act.  The term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person."  The thing of value may be money or any other tangible or intangible thing of value that may be given to or received by any person, regardless of whether the person who receives it is the person performing the commercial sex act.[40]

---

[40] Adapted from Modern Federal Jury Instructions, ¶ 47A.03, No. 47A-22; *see also United States v. Raniere,* 55 F.4th 354, 362 (2d Cir. 2022).

**REQUEST NO. 47**              **AFFECTING INTERSTATE COMMERCE**

The fourth element of the object of the conspiracy to commit sex trafficking through force, fraud or coercion is that the defendant's conduct was in or affecting interstate or foreign commerce.

Interstate or foreign commerce simply means the movement of goods, services, money, and individuals between any two or more states.

To satisfy this element, the government must prove that the defendant's conduct affected interstate commerce in any way, no matter how minimal. You do not have to find that the defendant's conduct actually affected interstate commerce if you find that the defendant's conduct would have affected interstate commerce if the defendant had successfully and fully completed his actions. Finally, the government is not required to prove that the defendant knew he was affecting interstate commerce.

In determining whether the defendant's conduct was "in or affecting interstate or foreign commerce," you may consider whether the defendant used means or facilities of interstate or foreign commerce, such as telephones, the internet, or hotels which substantially affected interstate commerce, or whether he purchased or used items that had moved in interstate or foreign commerce.[41]

---

[41] Modern Federal Jury Instructions, ¶ 47A.03, Instruction No. 47A-23; Pattern Crim. Jury Instr. 5th Cir. 2.68 (2015); United States v. Campbell, 111. F. Supp. 3d 340, 344-46 (W.D.N.Y. 2015) (Wolford, J.) (citing United States v. Evans, 476 F.3d 1176, 1179 (11th Cir. 2007))

**REQUEST NO. 48**            **THE INDICTMENT AND THE STATUTE: COUNTS 10 THROUGH 16**

The defendant, Joseph Bongiovanni, is charged in Counts 10 through 16 of the Indictment with tampering with evidence in a federal investigation, in violation of Title 18, United States Code, Section 1519.  That section provides that "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States, or any case filed under title 11, or in relation to or contemplation of any such matter or case, [shall be guilty of a crime.]"[42]

Count 10 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

On or about November 4, 2014, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, did knowingly falsify and make false entries in records and documents with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, an agency of the United States, that is, the defendant, JOSEPH BONGIOVANNI, made false and misleading statements in DEA 6 reports he prepared relating to the status of a drug trafficking investigation in DEA Case Number C2-13-0026 and the viability and credibility of the confidential source who was providing information to the DEA regarding a drug trafficking organization in order to close the DEA file and investigation into the organization and shield members and associates of the organization from arrest and prosecution.

All in violation of Title 18, United States Code, Section 1519.

Count 11 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

---

[42] Title 18, United States Code, Section 1519.

On or about January 28, 2015, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, did knowingly falsify and make false entries in records and documents with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, an agency of the United States, that is, the defendant, JOSEPH BONGIOVANNI made false and misleading statements in DEA 6 reports he prepared relating to the status of a drug trafficking investigation in DEA Case Number C2-13-0026 and the viability and credibility of the confidential source who was providing information to the DEA regarding a drug trafficking organization in order to close the DEA file and investigation into the organization and shield members and associates of the organization from arrest and prosecution.

All in violation of Title 18, United States Code, Section 1519.

Count 12 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

On or about November 1, 2018, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, did knowingly falsify and make false entries in a record and document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, JOSEPH BONGIOVANNI, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, including Peter Gerace Jr., and the drug trafficking activities of such individuals, made false and misleading statements in a memorandum relating to the nature of his relationship and extent of his communications with Peter Gerace Jr. in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between the defendant JOSEPH BONGIOVANNI and Peter Gerace Jr.

All in violation of Title 18, United States Code, Section 1519.

Count 13 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

On or about December 10, 2018, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, did knowingly falsify and make false entries in a record and document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General,

and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, JOSEPH BONGIOVANNI, in an investigation regarding the nature of the relationship between the defendant JOSEPH BONGIOVANNI and individuals involved in drug trafficking activities, including Peter Gerace Jr., and the drug trafficking activities of such individuals, made false and misleading statements in a memorandum relating to the nature of his relationship and extent of his communications with Peter Gerace Jr. in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between the defendant JOSEPH BONGIOVANNI and Peter Gerace Jr.

All in violation of Title 18, United States Code, Section 1519.

Count 14 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

On or about January 28, 2019, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, did knowingly falsify and make false entries in a record and document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, JOSEPH BONGIOVANNI, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, including Peter Gerace Jr., and the drug trafficking activities of such individuals, made false and misleading statements in a memorandum relating to the nature of his relationship and extent of his communications with Peter Gerace Jr., in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between the defendant JOSEPH BONGIOVANNI and Peter Gerace Jr. and to misrepresent the true nature of the relationship between Peter Gerace Jr. and a DEA Special Agent known to the Grand Jury.

All in violation of Title 18, United States Code, Section 1519.

Count 15 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

Beginning on a date unknown but no later than on or about February 1, 2019, to on or about February 8, 2019, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, did knowingly alter, destroy, mutilate and conceal a record and tangible object with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General,

and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, JOSEPH BONGIOVANNI, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, and the drug trafficking activities of such individuals, did cause the contents of, and data on, his DEA-issued cellular telephone to be deleted.

All in violation of Title 18, United States Code, Section 1519.

Count 16 of the Indictment incorporates the introductory allegations and the

allegations in Count 1 that I have already read to you and further alleges the following:

Beginning on a date unknown, but no later than on or about February 1, 2019, and continuing to on or about June 6, 2019, in the Western District of New York, the defendant JOSEPH BONGIOVANNI, did knowingly conceal and cover up records, documents, and tangible objects, with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, JOSEPH BONGIOVANNI, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, and the drug trafficking activities of such individuals, did unlawfully take, remove, conceal, and store the working file in DEA Case Number C2-13-0026 in his residence.

All in violation of Title 18, United States Code, Section 1519.

**REQUEST NO. 49**          **ELEMENTS OF THE OFFENSE**

In order to prove the defendant guilty of tampering with evidence in a federal investigation, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant altered or falsified or destroyed or mutilated or concealed or covered up or made a false entry in any record, document, or object that can be used to record or preserve information as alleged in the Indictment;

Second, that the defendant acted knowingly; and

Third, that the defendant acted with the intent to impede, obstruct, or influence an investigation or a matter within the jurisdiction of a department or agency of the United States Government.[43]

---

[43] Modern Federal Jury Instructions ¶ 46.13, Instruction 46-79.

**REQUEST NO. 50**          **ELEMENT 1: ALTERING OR DESTROYING EVIDENCE**

The first element the government must prove beyond a reasonable doubt is:

For Counts 10, 11, 12, 13, and 14: that the defendant falsified or made false entries in any record, document or tangible object as alleged in the Indictment.

For Count 15: that the defendant altered, destroyed, mutilated, or concealed any record, document or tangible object as alleged in the Indictment.

For Count 16: that the defendant concealed or covered up any record, document or tangible object as alleged in the Indictment.[44]

---

[44] Modern Federal Jury Instructions ¶ 46.13, Instruction 46-80.

**<u>REQUEST NO. 51</u>**         **<u>ELEMENT 2: KNOWING CONDUCT</u>**

The second element the government must prove beyond a reasonable doubt is that the defendant acted knowingly.

A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.[45]

---

[45] Modern Federal Jury Instructions ¶ 46.13, Instruction 46-81.

**REQUEST NO. 52**          **ELEMENT 3: INTENT TO IMPEDE INVESTIGATION**

The third element the government must prove beyond a reasonable doubt is that the defendant acted with the intent to impede, obstruct or influence an investigation or a matter within the jurisdiction of a department or agency of the United States Government.

The government is not required to prove that the defendant knew his conduct would obstruct a federal investigation, or that a federal investigation would take place, or that he knew of the limits of federal jurisdiction. However, the government is required to prove that the investigation that the defendant intended to impede, obstruct, or influence did, in fact, concern a matter within the jurisdiction of an agency or department of the United States.[46]

---

[46] Modern Federal Jury Instructions ¶ 46.13, Instruction 46-82.

**REQUEST NO. 53**         **THE INDICTMENT AND THE STATUTE: COUNTS 17
                          AND 18**

The defendant, Joseph Bongiovanni, is charged in Counts 17 and 18 of the Indictment

with knowingly and willfully making false statements to a department or agency of the United

States.

Count 17 alleges the following:

On or about March 29, 2019, in the Western District of New York, the defendant,
JOSEPH BONGIOVANNI, in a matter within the jurisdiction of the executive branch of the
United States, did willfully and knowingly make materially false, fictitious, and fraudulent
statements and representations to special agents of the Department of Justice, Office of the
Inspector General, in that the defendant denied ever witnessing Peter Gerace Jr., consume
narcotics; the defendant denied that Peter Gerace Jr. ever called him while a staff member or
customer was actively overdosing at the gentlemen's club operated by Peter Gerace Jr.; and
the defendant denied ever initiating contact with Peter Gerace Jr., whereas in truth and in
fact, and as the defendant then and there well knew, the defendant had witnessed Peter Gerace
Jr. consume narcotics; Peter Gerace Jr. did call the defendant while a staff member was
overdosing; and the defendant did previously initiate contact with Peter Gerace Jr.

All in violation of Title 18, United States Code, Section 1001(a)(2).

Count 18 alleges the following:

On or about June 6, 2019, in the Western District of New York, the defendant,
JOSEPH BONGIOVANNI, in a matter within the jurisdiction of the executive branch of the
United States, did willfully and knowingly make materially false, fictitious, and fraudulent
statements and representations to special agents of the Department of Justice, Office of the
Inspector General, and Homeland Security Investigations in that the defendant stated as
follows:

(i) he denied he was in a close relationship with Peter Gerace Jr.;

(ii) that he had not spoken with defendant Peter Gerace Jr. in over a year;

(iii) that he had never attended a party with Coconspirator 2, a person known to the
Grand Jury;

(iv) that he never socialized with Coconspirator 3, a person known to the Grand Jury,
and they never went on any trips together;

(v) that Coconspirator 3's number was in the defendant's telephone because
Coconspirator 3 had done the defendant's landscaping;

(vi) that Peter Gerace Jr. once tried to cooperate with the DEA and that the defendant
recused himself at the time because he knew Peter Gerace Jr. personally;

(vii) that defendant Peter Gerace Jr. and the defendant were together, with others, a
few years ago at Lake Erie around the 4th of July by chance encounter;

(viii) that he kept the file regarding DEA Case Number C2-13-0026 in his house because it was an old case and he thought it would come up again and the defendant wanted to verify everything was on the up and up; and

(ix) that Peter Millitello was the source in DEA Case Number C2-13-0026;

whereas in truth and in fact, and as the defendant then and there well knew,

(i) he did have a close relationship with Peter Gerace Jr.;

(ii) he had spoken with Peter Gerace Jr. within the preceding year;

(iii) he did attend a party with Coconspirator 2;

(iv) he did socialize with Coconspirator 3 and they were on a trip to Toronto, Canada together;

(v) Coconspirator 3's number was in his telephone for reasons other than landscaping;

(vi) Peter Gerace Jr. did not try to cooperate with DEA and the defendant did not recuse himself;

(vii) Peter Gerace Jr. and the defendant were not together at Lake Erie around the 4th of July a few years ago by chance encounter;

(viii) he did not keep the file regarding DEA Case Number C2-13-0026 in his house to verify everything was on the up and up; and

(ix) Peter Millitello was not the source in DEA Case Number C2-13-0026.

All in violation of Title 18, United States Code, Section 1001(a)(2).

The relevant statute on this subject is section 1001(a) of Title 18 of the United States Code. It provides:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

. . .

(2) makes any materially false, fictitious or fraudulent statement or representation;

. . .

shall be [guilty of a crime].[47]

---

[47] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-1.

**REQUEST NO. 54**          **PURPOSE OF THE STATUTE**

The purpose of § 1001 is to protect the authorized functions of the various governmental departments from any type of misleading or deceptive practice and from the adverse consequences that might result from such deceptive practices.

To establish a violation of § 1001, it is necessary for the government to prove certain essential elements—which I will soon describe for you—beyond a reasonable doubt. However, I want to point out now that it is not necessary for the government to prove that the government agency was, in fact, misled as a result of the defendant's action. It does not matter that the agency was not misled, or even that it knew of the misleading or deceptive act, should you find that the act occurred. These circumstances would not excuse or justify a false, fictitious or fraudulent statement made willfully and knowingly about a matter within the jurisdiction of the government of the United States. [48]

---

[48] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-2.

**REQUEST NO. 55**                    **ELEMENTS OF THE OFFENSE**

In order to prove the defendant guilty of the crime charged, the government must establish beyond a reasonable doubt that:

First, on or about the date specified, the defendant made a statement or representation;

Second, that this statement or representation was material;

Third, the statement or representation was false, fictitious or fraudulent;

Fourth, the false, fictitious or fraudulent statement was made knowingly and willfully; and

Fifth, the statement or representation was made in a matter within the jurisdiction of the government of the United States.[49]

---

[49] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-9; *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015).

**REQUEST NO. 56**            **ELEMENT 1: STATEMENT OR REPRESENTATION**

The first element that the government must prove beyond a reasonable doubt is that the defendant made a statement or representation. In this regard, the government need not prove that the defendant physically made or otherwise personally prepared the statement in question. It is sufficient if defendant caused the statement charged in the indictment to have been made. Under this statute, there is no distinction between written and oral statements.[50]

---

[50] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-10.

**REQUEST NO. 57**          **ELEMENT 2: MATERIALITY**

The second element the government must prove beyond a reasonable doubt is that the defendant's statement or representation was material.

A fact is material if it was capable of influencing the government's decisions or activities. However, proof of actual reliance on the statement by the government is not required.[51]

---

[51] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-11.

**REQUEST NO. 58**      **ELEMENT 3: FALSE, FICTICIOUS, OR FRAUDULENT STATEMENT**

The third element that the government must prove beyond a reasonable doubt is that the statement or representation was false, fictitious or fraudulent. A statement or representation is "false" or "fictitious" if it was untrue when made, and known at the time to be untrue by the person making it or causing it to be made. A statement or representation is "fraudulent" if it was untrue when made and was made or caused to be made with the intent to deceive the government agency to which it was submitted.

If the government's question was ambiguous, so that it reasonably could be interpreted in several ways, then the government must prove that defendant's answer was false under any reasonable interpretation of the question.[52]

---

[52] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-12.

**REQUEST NO. 59**          **ELEMENT 4: KNOWING AND WILLFUL CONDUCT**

The fourth element that the government must prove beyond a reasonable doubt is that the defendant acted knowingly and willfully.

An act is done knowingly if it is done purposely and voluntarily, as opposed to mistakenly or accidently.

An act is done willfully if it is done with an intention to do something the law forbids, that is, with a bad purpose to disobey the law.[53]

---

[53] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-13.

**REQUEST NO. 60**          **ELEMENT 5: MATTER WITHIN THE JURISDICTION OF THE UNITED STATES GOVERNMENT**

As I have told you, the fifth element with respect to each false statement count is that the statement or representation be made with regard to a matter within the jurisdiction of the government of the United States. I charge you that the Department of Justice and the Department of Homeland Security are departments of the United States government.

There is no requirement that the statement be actually directed to or given to the Department of Justice or the Department of Homeland Security. All that is necessary is that you find that it was contemplated that the statement was to be used in a matter that was within the jurisdiction of the government of the United States government. To be within the jurisdiction of a department or agency of the United States government means that the statement must concern an authorized function of that department or agency.

In this regard, it is not necessary for the government to prove that the defendant had actual knowledge that (e.g., the false statement) was to be used in a matter that was within the jurisdiction of the government of the United States. It is sufficient to satisfy this element if you find that the false statement was made with regard to a matter within the jurisdiction of the government of the United States.[54]

---

[54] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-14.

**REQUEST NO. 61**          **UNANIMITY EXPLAINED**

Counts 17 and 18 of the indictment allege a number of false or fraudulent statements.

The government is not required to prove that all of the statements that are alleged in Counts 17 or 18 of the indictment are, in fact, false.

Each juror must agree with each of the other jurors, however, that the same statement or representation alleged in Counts 17 or 18 to be false, fictitious or fraudulent is, in fact, false, fictitious, or fraudulent. The jury need not unanimously agree on each such statement alleged, but, in order to convict, must unanimously agree upon at least one such statement as false, fictitious or fraudulent when knowingly made or used by the defendant. [55]

---

[55] Adapted from 2A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 40:15 (6th ed. updated through February 2019); *see also United States v. Crisci*, 273 F.3d 235, 239 (2d Cir. 2001) (affirming conviction and sentence and finding that the district court did not improperly charge the jury that it could convict [defendant] under Section 1001 if any one of the seven charged statements was false wherein the district court also instructed the jury that in order to convict [defendant] under Section 1001, it had to unanimously agree on "any statement that the defendant made in violation of the false statement statute.").

**REQUEST NO. 62**          **THE INDICTMENT AND THE STATUTE: COUNTS 19 THROUGH 21**[56]

The defendant, Peter Gerace, is charged in Counts 19 through 21 of the Indictment with tampering with a witness by intimidation or corrupt persuasion and aiding and abetting that crime.


Count 19 alleges the following:

On or about November 19, 2019, in the Western District of New York, the defendant, PETER GERACE, JR., and others, did knowingly use intimidation, threaten, and corruptly persuade, and attempt to use intimidation, threaten, and corruptly persuade Witness 1, a person known to the Grand Jury, by sending intimidating, threatening, and harassing Facebook messages to Witness 1 with the intent to influence, delay, and prevent the testimony of Witness 1 in an official proceeding, that is, a federal grand jury investigation and subsequent criminal proceedings involving the defendant, PETER GERACE, JR., in the United States District Court for the Western District of New York.

All in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.


Count 20 alleges the following:

On or about November 19, 2019, in the Western District of New York, the defendant, PETER GERACE, JR., and others, did knowingly use intimidation, threaten, and corruptly persuade, and attempt to use intimidation, threaten, and corruptly persuade Witness 1, a person known to the Grand Jury, by sending intimidating, threatening, and harassing Facebook messages to Witness 1 with the intent to cause and induce Witness 1 to withhold testimony from an official proceeding, that is, a federal grand jury investigation, and subsequent criminal proceedings involving the defendant, PETER GERACE, JR., in the United States District Court for the Western District of New York.

All in violation of Title 18, United States Code, Sections 1512(b)(2)(A) and 2.

---

[56] These counts reflect the charges in Case No. 23-CR-0037, which are joined for trial.

Count 21 alleges the following:

On or about November 19, 2019, in the Western District of New York, the defendant, PETER GERACE, JR., and others, did knowingly use intimidation, threaten, and corruptly persuade, and attempt to use intimidation, threaten, and corruptly persuade Witness 1, a person known to the Grand Jury, by sending intimidating, threatening, and harassing Facebook messages to Witness 1 with the intent to hinder, delay, and prevent communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense.

All in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

The relevant statute on this subject is 18 U.S.C. § 1512(b). It provides, in pertinent part:

Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so . . . with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

. . .

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .

shall be [guilty of a crime].[57]

---

[57] Adapted from Modern Federal Jury Instructions ¶ 46.09, Instruction 46-55.

**REQUEST NO. 63**          **PURPOSE OF THE STATUTE**

The statute is designed to protect persons who are victims of federal crimes, persons who may be called to testify or give evidence in a federal proceeding—either civil or criminal—and persons who have information about federal crimes. The integrity of the federal system of justice depends upon the cooperation of such victims and potential witnesses. If persons with information do not come forward, produce evidence and appear when summoned, the criminal justice system will be significantly impaired. This statute was devised to make it unlawful for anyone to tamper with such a witness in the manner described by the statute.[58]

---

[58] Modern Federal Jury Instructions ¶ 46.09, Instruction 46-56.

**REQUEST NO. 64**                **ELEMENTS OF THE OFFENSE**

In order to prove the defendant guilty of tampering with a witness by intimidation or corrupt persuasion, the government must prove each of the following elements beyond a reasonable doubt:

First, that on or about the date charged, the defendant knowingly used intimidation, threatened, or corruptly persuaded Phylicia Hunt, or attempted to do so, and

Second:

For Count 19, the defendant acted knowingly and with the intent to influence, delay, or prevent the testimony of [Victim][59] in an official federal proceeding;

For Count 20, the defendant acted knowingly and with the intent to cause or induce [Victim] to withhold testimony from an official proceeding;

For Count 21, the defendant acted knowingly and with intent to hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense. [60]

---

[59] The victim's name is not provided in these publicly filed proposed instructions.

[60] Adapted from Modern Federal Jury Instructions ¶ 46.09, Instruction 46-57.

**REQUEST NO. 65**          **ELEMENT 1: DEFENDANT USED INTIMIDATION OR CORRUPT PERSUASION**

The first element the government must prove beyond a reasonable doubt is that the defendant knowingly used intimidation, threatened, or corruptly persuaded [Victim], or attempted to do so.

Intimidation includes frightening a person, inspiring or affecting him by fear or deterring him by threats. It does not matter whether or not the person alleged to be the object of the threat is actually frightened, or thinks he is in physical danger. It is enough that the threat had a reasonable tendency to make the person fearful.

A threat is simply the expression of an intention to do harm. A threat may be communicated by words as well as gestures. In order to find that the defendant used threats, as charged in the indictment, you need not find that he intended to carry out the threat. The real issue is whether the words allegedly used were in fact uttered by him, expressed an intention to do harm, and that the defendant was aware of or recklessly disregarded that the communication would be threatening.[61]

To "corruptly persuade" means to act knowingly with a wrongful or evil purpose to convince or induce another person to engage in certain conduct.[62]

---

[61] *Counterman v. Colorado*, No. 22-138, 600 U.S. ____ (2023).
[62] Modern Federal Jury Instructions ¶ 46.09, Instruction 46-58.

**REQUEST NO. 66**          **ELEMENT 2: INTENT TO INFLUENCE TESTIMONY IN COURT (COUNTS 19 AND 20)**

The second element the government must prove beyond a reasonable doubt for Count 19 is that the defendant acted knowingly and with the intent to influence, delay, or prevent the testimony of [Victim] in an official federal proceeding.

The second element the government must prove beyond a reasonable doubt for Count 20 is that the defendant acted knowingly and with the intent to cause or induce [Victim] to withhold testimony from an official federal proceeding.

To act with the intent to influence the testimony of a witness means to act for the purpose of getting that witness to change or color or shade his or her testimony in some way. It is not necessary for the government to prove that the witness's testimony was in fact changed in any way.

An official proceeding means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal. You are instructed that a federal grand jury investigation is an official proceeding.

The law does not require that the federal proceeding be pending at the time of defendant's actions as long as the proceeding was foreseeable such that defendant knew that his actions were likely to affect the proceeding.[63]

---

[63] Adapted from Modern Federal Jury Instructions ¶ 46.09, Instruction 46-59.

117

**REQUEST NO. 67**          **ELEMENT 2: INTENT TO HINDER COMMUNICATION TO LAW ENFORCEMENT (COUNT 21)**

The second element the government must prove beyond a reasonable doubt for Count 21 is that the defendant acted knowingly and with the intent to hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

If you find that defendant acted with the intent to hinder or prevent communication by [Victim] to a specific law enforcement officer or group of officers, this element is satisfied if that officer or one of the group of officers was a federal law enforcement officer. A federal law enforcement officer is an officer or employee of the federal government who is authorized to act on behalf of the federal government in the prevention, detection, investigation, or prosecution of federal crimes. The government is not required to prove that the defendant knew that the officer was a federal law enforcement officer.

On the other hand, if you find that the defendant was not acting with the intent to prevent communication to a particular officer or group of officers, then this element is satisfied only if the government proves beyond a reasonable doubt that there was a reasonable likelihood that had [Victim] been able to communicate with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.[64]

---

[64] Adapted from Modern Federal Jury Instructions ¶ 46.09, Instruction 46-60.

**REQUEST NO. 68**          **THE INDICTMENT AND THE STATUTE: COUNT 22**[65]

The defendant, Peter Gerace, is charged in Count 22 of the Indictment with the distribution and possession of a controlled substance.

Count 22 alleges the following:

On or about November 19, 2019, in the Western District of New York, the defendant, PETER GERACE, JR., did knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute, cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

The defendant is charged with violating the Drug Abuse Prevention and Control Act. That law makes it a crime "for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." [66]

---

[65] This count number applies to Count 4 of Indictment 23-CR-37.
[66] Title 21, United States Code, Section 841.

**REQUEST NO. 69**          **ELEMENTS OF THE OFFENSE**

In order to prove this charge against the defendant the government must establish beyond a reasonable doubt each of the following three elements of the crime:

First, that the defendant possessed narcotic drugs;

Second, that the defendant knew that he possessed narcotic drugs; and

Third, that the defendant possessed the narcotic drugs with the intent to distribute them.

Alternatively, the government can prove the defendant guilty of Count 22 if it has proved beyond a reasonable doubt each of the following two elements of the crime:

First, that the defendant distributed narcotics; and

Second, that the defendant distributed the narcotics knowingly.[67]

---

[67] Adapted from Modern Federal Jury Instructions ¶ 56.01, Instruction 56-2.

120

**REQUEST NO. 70**          **ELEMENT 1: POSSESSION OF NARCOTICS**

The first element the government must prove beyond a reasonable doubt is that the defendant possessed cocaine.

To establish this element, the government must prove that the material that the defendant is charged with possessing or distributing is, in fact, cocaine. The government may prove this through either direct evidence or through circumstantial evidence. An example of direct evidence is the testimony of a chemist who has done a chemical analysis of the material. Circumstantial evidence would be evidence from which you could infer that the material was cocaine, such as testimony concerning the names used by the defendant to refer to the material or testimony about the material's appearance. Whether the government relies on direct or circumstantial evidence to prove that the material in issue was cocaine, it must prove so beyond a reasonable doubt.[68]

---

[68] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-3.

**REQUEST NO. 71**                **DEFINITION OF POSSESSION**

As I have instructed you, the government must prove beyond a reasonable doubt that the defendant "possessed" the drugs. The legal concept of possession may differ from the everyday usage of the term, so I will explain it in some detail.

Actual possession is what most of us think of as possession; that is having physical custody or control of an object. For example, if you find that the defendant had the drugs on his person, you may find that he had possession of the drugs. However, a person need not have actual physical custody of an object in order to be in legal possession of it. If an individual has the ability and intent to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item. An example of this from everyday experience would be a person's possession of items he keeps in the safe deposit box of his bank. Although the person does not have physical custody of those items, he exercises substantial control over them and so has legal possession of them.

The law also recognizes that possession may be sole or joint. If one person alone possesses something, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over the drugs. This is called joint possession. If you find that the defendant had such power and intention, then he possessed the drugs under this element even if he possessed the drugs jointly with another.

Here is an example. Suppose A is negotiating the price of heroin with C. Standing next to A is B, who has several envelopes of heroin in his pocket. After a period of negotiation, A

directs B to hand over to C a few of the envelopes. C then hands A some money. In this situation, you could find that B had possession of the narcotics because he had them in his pocket. However, you could find that A also had possession of the narcotics because of his proximity to the drugs, his association with B, the person in actual possession of them, and his negotiations over price. This example is not conclusive, but is simply meant to illustrate these concepts.

Possession of drugs cannot be found solely on the ground that the defendant was near or close to the drugs. Nor can it be found simply because the defendant was present at a scene where drugs were involved, or solely because the defendant associated with a person who did control the drugs or the property where they were found. However, these factors may be considered by you, in connection with all other evidence, in making your decision whether the defendant possessed the drugs.[69]

---

[69] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-4.

**REQUEST NO. 72**          **INFERENCE FROM CONTROL OVER PLACE WHERE FOUND**

A defendant may own or have control over the place where the narcotics are found, such as an apartment or a vehicle. When the defendant is the sole person having such ownership or control, this control is significant evidence of the defendant's control over the drugs themselves, and thus of his possession of the drugs. You should note, however, that the defendant's sole ownership or control of a residence or vehicle does not necessarily mean that the defendant had control and possession of the drugs found in it.

A defendant may also share ownership or control of the place where drugs are found. In this event the drugs may be possessed by only one person, or by some of the people who control the place, or by all of them. However, standing alone, the fact that a particular defendant had joint ownership or control over the place where the drugs were found is not sufficient evidence to find that the defendant possessed the drugs found there. In order to find that a particular defendant possessed drugs because of his joint ownership or control over the place where they were found, you must find beyond a reasonable doubt that the defendant knew about the presence of the drugs and intended to exercise control over them.[70]

---

[70] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-5.

**REQUEST NO. 73**          **ELEMENT 2: KNOWLEDGE THAT THE DRUGS WERE NARCOTICS**

The second element the government must prove beyond a reasonable doubt is that the defendant knew that he possessed narcotics.

To establish this element, the government must prove that the defendant knew that he possessed narcotics, and that his possession was not due to carelessness, negligence or mistake. If you find that the defendant did not know that he had narcotics in his possession, or that he didn't know that what he possessed was, in fact, narcotics, then you must find the defendant not guilty.

Although the government must prove that the defendant knew that he possessed narcotics, the government does not have to prove that the defendant knew the exact nature of the drugs in his possession. It is enough that the government proves that the defendant knew that he possessed some kind of narcotic.[71]

---

[71] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-6.

**REQUEST NO. 74**            **METHOD OF PROVING KNOWLEDGE**

Your decision whether the defendant knew the materials he possessed were narcotics involves a decision about the defendant's state of mind. It is obviously impossible to prove directly the operation of the defendant's mind. But a wise and intelligent consideration of all the facts and circumstances shown by the evidence and the exhibits in the case may enable you to infer what the defendant's state of mind was.

In our everyday affairs, we are continuously called upon to decide from the actions of others what their state of mind is. Experience has taught us that, frequently, actions speak louder and more clearly than spoken or written words. Therefore, you may well rely in part on circumstantial evidence in determining the defendant's state of mind.

For example, if the defendant was the sole occupant of a residence or a vehicle, it is reasonable to conclude that the defendant knew about items in the residence or vehicle. The defendant's behavior may also indicate knowledge. Nervousness in the presence of the drugs or flight from the site at which authorities have identified drugs may indicate that the defendant knew that the materials in question were narcotics. Also, the possession of a large quantity of drugs may indicate that the defendant knew what he had in his possession. These examples are neither exhaustive nor conclusive. It is up to you, based on all the evidence, to determine whether the defendant knew that he possessed narcotics.[72]

---

[72] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-7.

**REQUEST NO. 75**       **ELEMENT 3: DISTRIBUTION OR INTENT TO DISTRIBUTE**

The third element the government must prove beyond a reasonable doubt is that the defendant either (a) distributed the narcotics or (b) intended to distribute them. In order to prove the defendant is guilty, the government must prove one of these circumstances beyond a reasonable doubt. It need not prove both.[73]

---

[73] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-9.

**REQUEST NO. 76**             **DEFINITION OF DISTRIBUTION**

The word "distribute" means to deliver a narcotic. "Deliver" is defined as the actual, constructive or attempted transfer of a narcotic. Simply stated, the words distribute and deliver mean to pass on, or to hand over to another, or to cause to be passed on or handed over to another, or to try to pass on or hand over to another, narcotics.

Distribution does not require a sale. Activities in furtherance of the ultimate sale, such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drugs may constitute distribution. In short, distribution requires a concrete involvement in the transfer of the drugs.[74]

---

[74] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-10.

**REQUEST NO. 77**  **INTENT TO DISTRIBUTE**

As an alternative to proving that the defendant actually distributed the drugs, to satisfy the third element the government may prove that the defendant possessed narcotics with the intent to distribute them. To prove the third element in this way, the government must prove beyond a reasonable doubt that the defendant had control over the drugs with the state of mind or purpose to transfer them to another person.

The same considerations that apply to your determination whether the defendant knew he possessed narcotics apply to your decision concerning the defendant's intention to distribute them. Since you cannot read the defendant's mind, you must make inferences from his behavior. However, you may not convict the defendant unless these inferences convince you beyond a reasonable doubt that the defendant intended to distribute the narcotics.

When I say that you must find that the defendant intended to distribute the narcotics, this does not mean that you must find that the defendant intended personally to distribute or deliver the drugs. It is sufficient if you find that the defendant intended to cause or assist the distribution of the narcotics.

Basically, what you are determining is whether the drugs in the defendant's possession were for his personal use or for the purpose of distribution. Often it is possible to make this determination from the quantity of drugs found in the defendant's possession.

The possession of a large quantity of narcotics does not necessarily mean that the defendant intended to distribute them. On the other hand, a defendant may have intended to

distribute narcotics even if he did not possess large amounts of them. Other physical evidence, such as paraphernalia for the packaging or processing of drugs, can show such an intent. There might also be evidence of a plan to distribute. You should make your decision whether the defendant intended to distribute the narcotics in his possession from all of the evidence presented.[75]

---

[75] Modern Federal Jury Instructions ¶ 56.01, Instruction 56-11.

**REQUEST NO. 78**          **AIDING AND ABETTING – TITLE 18, UNITED STATES CODE, SECTION 2(a)**

As an alternative method to determining a defendant's guilt under Counts 6,[76] 7, 19, 20, and 21 of the Indictment, you must consider whether the defendant aided and abetted another to commit the crime charged in each of those counts.

The aiding and abetting statute, section 2(a) of Title 18 of the United States Code provides that: "Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal."

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof.  A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find the defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged and that the defendant aided or abetted that person in the commission of the offense.

---

[76] Modern Federal Jury Instructions ¶ 11.01, Instruction 11-1, at Comment n.2 ("the trial court may instruct the jury on such a theory when the evidence so warrants, whether or not a violation of section 2 was charged in the indictment).

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime and that he participate in the crime by doing some act to help make the crime succeed.

To establish that defendant knowingly associated himself with the crime, the government must establish that the defendant had the mental state required for the principal offense.

To establish that the defendant participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and

abettor. An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense. If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty.[77]

---

[77] Modern Federal Jury Instructions ¶ 11.01, Instruction 11-1, 11-2.

**REQUEST NO. 79**                    **PINKERTON CHARGE**

There is another method by which you may evaluate the possible guilt of the defendant, Mr. Gerace, for the substantive charges in Counts 6 and 7 in the indictment even if you do not find that the government has satisfied its burden of proof with respect to each element of that crime.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant, was a member of the conspiracies charged in the indictment—for defendant Gerace the conspiracies charged in Counts 2, 8 and 9—and thus, guilty on one of the conspiracy counts, then you may also, but you are not required to, find him guilty of the substantive crimes-- for Mr. Gerace for the substantive charges in Counts 6 and 7 in the indictment if you find, beyond a reasonable doubt, each of the following elements:

First, that the crime charged in the substantive count was committed;

Second, that the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

Fourth, that the defendant was a member of that conspiracy at the time the substantive crime was committed;

Fifth, that the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crimes charged, even though he did not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a co-conspirator who commits a crime pursuant to a conspiracy is deemed to be the agent of the other conspirators. Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the crimes committed by its members.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty unless the government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, that crime.[78]

---

[78] Modern Federal Jury Instructions ¶ 19.03, Instruction 19-13.

**REQUEST NO. 80**          **ACTS AND DECLARATIONS OF CO-CONSPIRATORS**

You will recall that I have admitted into evidence against one or both of defendants the declarations and statements of others because these declarations and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial. The reasonably foreseeable declarations and statements of any member of a conspiracy made in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be those of all of the members. It is the jury's function to determine whether the evidence, including the co-conspirators' declarations and statements, is credible and convincing. The burden of proving beyond a reasonable doubt that a conspiracy existed and that the defendants were members of that conspiracy remains with the government.[79]

---

[79] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-9.

**REQUEST NO. 81**          **IMPOSSIBILITY OF SUCCESS**

It is not a defense to a conspiracy charge that the object of the conspiracy could not be achieved because of circumstances that the conspirators did not know about. Thus, you may find the defendants guilty of conspiracy even though it was impossible for them to carry out their plan successfully.[80]

---

[80] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-10.1; *United States v. Wallace*, 85 F.3d 1063, 1068 (2d Cir. 1996).

**REQUEST NO. 82**          **SUCCESS OF CONSPIRACY IMMATERIAL**

The government is not required to prove that any of the members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy.  You may find the defendant guilty of conspiracy if you find that the government proved beyond a reasonable doubt the elements I have explained, even if you find that the government did not prove that any of the conspirators actually committed the substantive offense.  Conspiracy is a criminal offense separate from the offense that was the objective of the conspiracy; conspiracy is complete without the commission of the object crime offense.[81]

---

[81] S1 Modern Federal Jury Instructions-Criminal 6.18.371G; *see also United States v. Watkins*, 339 F.3d 167, 178 (3d Cir. 2003); *United States v. Uzzolino*, 651 F.2d 207, 213-14 (3d Cir. 1981); *United States v. Shoup*, 608 F. 2d 950, 956-59 (3d Cir. 1979).

**REQUEST NO. 83**          **FAILURE TO NAME A DEFENDANT**

You may not draw any inference, favorable or unfavorable, towards the government or the defendants on trial, from the fact that certain persons were not named as defendants in the indictment or that certain persons were named as co-conspirators but not indicted.  The fact that these persons were not indicted must play no part in your deliberations.

Whether a person should be named as a co-conspirator or indicted as a defendant is a matter within the sole discretion of the United States Attorney and the grand jury.  Therefore, you may not consider it in any way in reaching your verdict as to the defendants on trial.[82]

[82] Modern Federal Jury Instructions-Criminal ¶ 3.01, Instruction 3-4.

**REQUEST NO. 84**          **SPECIFIC   INVESTIGATION   TECHNIQUES   NOT REQUIRED**

During the trial, you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques.

You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty.  However, you also are instructed that there is no legal requirement that the government use particular investigative techniques to prove its case. There is no requirement to test every piece of evidence.  Law enforcement techniques are not your concern.

Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.[83]

---

[83] Modern Federal Jury Instructions-Criminal ¶ 4.01, Instruction 4-4.

**REQUEST NO. 85          ACCOMPLICES CALLED BY THE GOVERNMENT**

You have heard witnesses who testified that they were actually involved in planning and carrying out the crimes charged in the Indictment.  There has been a great deal said about these so-called accomplice witnesses in the summations of counsel and whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those very reasons, the law allows the use of accomplice testimony.  Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself, for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here nor will I repeat all of the arguments made on both sides.  However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

You should ask yourselves whether these so-called accomplices would benefit more by lying or by telling the truth.  Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth?  Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witnesses.[84]

---

[84] Modern Federal Jury Instructions-Criminal ¶ 7.01, Instruction 7-5.

**REQUEST NO. 86**         **WITNESS USING OR ADDICTED TO DRUGS**

There has been evidence introduced at the trial that the government (or defendant) called as a witness a person who was using (or addicted to) drugs when the events he observed took place or who is now using drugs. I instruct you that there is nothing improper about calling such a witness to testify about events within his personal knowledge.

On the other hand, his testimony must be examined with greater scrutiny than the testimony of any other witness. The testimony of a witness who was using drugs at the time of the events he (or she) is testifying about, or who is using drugs (or an addict) at the time of his testimony may be less believable because of the effect the drugs may have on his ability to perceive or relate the events in question.

If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.[85]

---

[85] Modern Federal Jury Instructions-Criminal ¶ 7.01, Instruction 7-9-1.

**REQUEST NO. 87**          **ADMISSION OF DEFENDANT**

There has been evidence that the defendant made certain statements in which the government claims he admitted certain facts charged in the indictment.

In deciding what weight to give the defendant's statements, you should first examine with great care whether each statement was made and whether, in fact, it was voluntarily and understandingly made. I instruct you that you are to give the statements such weight as you feel they deserve in light of all the evidence.[86]

---

[86] Modern Federal Jury Instructions-Criminal ¶ 5.07, Instruction 5-19.

**REQUEST NO. 88**         **CONSCIOUSNESS   OF   GUILT   FROM   FALSE
EXCULPATORY STATEMENT**

You have heard testimony that the defendant made certain statements outside the courtroom to law enforcement authorities in which the defendant claimed that his conduct was consistent with innocence and not with guilt. The government claims that these statements in which he exonerated or exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that the defendant is, in fact, guilty of the crime for which he is charged.

Whether the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.[87]

---

[87] Modern Federal Jury Instructions-Criminal ¶ 6.05, Instruction 6-11.

**REQUEST NO. 89**          **CHARTS AND SUMMARIES**

The government has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[88]

---

[88] Modern Federal Jury Instructions-Criminal ¶ 5.05, Instruction 5-12.

**REQUEST NO. 90**          **SIMILAR ACTS – INTENT, KNOWLEDGE, ABSENCE OF MISTAKE**

The government has offered evidence tending to show that on a different occasion one of the defendants engaged in conduct similar to the charges in the indictment.

In that connection, let me remind you that the defendant is not on trial for committing this act not alleged in the indictment. Accordingly, you may not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged. Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other, similar act was admitted for a much more limited purpose and you may consider it only for that limited purpose.

If you determine that the defendant committed the acts charged in the indictment and the similar acts as well, then you may, but you need not draw an inference that in doing the acts charged in the indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons.

Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act he must also have committed the acts charged in the indictment.[89]

---

[89] Modern Federal Jury Instructions-Criminal ¶ 5.10, Instruction 5-25.

147

**REQUEST NO. 91**          **CONSCIOUSNESS OF GUILT FROM FALSIFICATION OF EVIDENCE**

You have heard testimony that the defendant, Mr. Bongiovanni, knowingly attempted to falsify evidence in this case. If you find that the defendant attempted to falsify evidence in order to mislead investigating authorities, you may, but need not, infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that the defendant is, in fact, guilty of the crime for which he is charged.

Whether evidence that the defendant falsified evidence shows that the defendant believed that he was guilty and the significance, if any, to be given to such evidence, are matters for you, the jury, to decide.[90]

---

[90] Modern Federal Jury Instructions-Criminal ¶ 6.05, Instruction 6-14.

**REQUEST NO. 92**        **CONSCIOUSNESS OF GUILT FROM INTIMIDATION OF A WITNESS**

You have heard testimony that the defendant, Mr. Gerace, attempted to intimidate or coerce a witness whom he believed was to be called by the government against him.

If you find that the defendant did coerce or intimidate a witness whom he believed the government was going to call, you may, but are not required to, infer that the defendant believed that he was guilty of the crime for which he is here charged.

Whether evidence of the defendant's intimidation or coercion of a witness shows that the defendant believed that he was guilty of the crimes for which he is now charged and the significance, if any, to be given to such evidence, is for you, the jury, to decide.[91]

---

[91] Adapted from Modern Federal Jury Instructions-Criminal ¶ 6.05, Instruction 6-16.