IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                                              19-CR-227-LJV

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

        Defendants.

---

UNITED STATES OF AMERICA,

    v.                                                                                              23-CR-37-LJV

PETER GERACE, JR.,

        Defendant.

---

## GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR A GAG ORDER

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, David J. Rudroff, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby files its reply to the defendant's response in opposition (*see* Doc. No. 640) to the government's motion for a gag order (*see* Doc. No. 543).

**ARGUMENT**

The defendant's response in opposition, which contains no legal authority or analysis, contends that the government's motion for a gag order is moot because Steve Cohen, Esq. ("Attorney Cohen"), is off the case and no longer part of the Gerace defense team. The defendant is incorrect for three reasons. First, Attorney Cohen's departure cannot render the substance of a gag order moot when defendant Gerace's current counsel served as co-counsel with Attorney Cohen while he made prejudicial statements to the media. Second, counsel for both defendants have also made extrajudicial, prejudicial comments meriting a gag order. And third, Attorney Cohen's continued representation of Mr. Gerace in other criminal matters, along with persuasive circuit authority, illustrates the continued need for a gag order with regards to him, alone.

    **A.**    **The Motion is Not Moot where Attorney Soehnlein Served as Co-Counsel with Attorney Cohen When Attorney Cohen Made Prejudicial, Extrajudicial Comments**

For starters, Attorney Cohen's departure from the case does not nullify the substance of the government's motion because defendant Gerace's current counsel—specifically, Attorney Eric Soehnlein—served as co-counsel with Attorney Cohen while he made prejudicial comments to the media. Specifically, Attorney Soehnlein was co-counsel with Attorney Cohen from February 24, 2023, *see* Doc. No. 377, until July 12, 2023, when the Court granted his motion to withdraw as counsel, *see* Doc. No. 559. And, during Attorney Soehnlein's initial representation of defendant Gerace, Attorney Cohen made multiple statements to the media injecting prejudice into the jury pool. *See* Doc. No. 543 at 8–10 ¶¶ 7–12. It is common sense that counsel and co-counsel coordinate trial strategy together. *Cf.*

*Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 257 (S.D.N.Y. 2012) ("Having co-counsel attend conferences and confer with one another regarding strategy is essential . . . ."). Accordingly, Attorney Cohen's departure from the case does not moot the concern that Attorney Soehnlein, as a part of defendant Gerace's trial strategy, will strategically undermine the fairness of the trial process in the court of public opinion. As discussed *infra*, Attorney Soehnlein's comments to the media provide firm foundation for this concern. Accordingly, it is simply not the case that Attorney Cohen's departure has put this Court in the position of rendering an opinion on "moot questions or abstract propositions . . . which cannot affect the matter in issue." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

### B. The Motion is Not Moot Where Current Counsel for Both Defendants Have Made Similarly Prejudicial, Extrajudicial Statements.

Similarly, current counsel for both defendants have made comparably prejudicial, extrajudicial statements. Counsel are surely aware of their own statements to the media and how they compare to Attorney Cohen's representations. But if they were not, the government's Motion for Intra-District Transfer, *see* Doc. No. 619-1 (collecting news articles), addressed counsels' comments at length. As that motion explained, attorneys for both defendants—including present counsel—have provided quotes for over **400** pages of news articles (exclusive of other media accounts documenting this prosecution's every development).

For example, on June 21, 2023, after District Court Judge Sinatra recused himself, Gerace's current attorney, Attorney Soehnlein, made statements to The Buffalo News. Defending the defense tactics and maneuvering that caused District Court Judge Sinatra to recuse himself, Attorney Soehnlein gave an interview and stated:

> "We don't have to pick a way to defend [Gerace] until we see the government's proof. That's fair to us," Soehnlein said. "And one very plausible, very likely way to defend this case involves testimony from those individuals [character witnesses]. Because they're going to be talking about Mr. Gerace in connection to circumstances that are very close to the allegations in the government's case. And so we have reserved the right to put on that kind of case," he said. "It's our duty to reserve that right."

*See* Patrick Lakamp, The Buffalo News, Jun. 21, 2023, *Judge recuses himself from strip club owner case after voicing suspicion of legal 'gamesmanship*,' https://buffalonews.com/news/local/crime-and-courts/judge-recuses-himself-from-strip-club-owner-case-aftervoicing-suspicion-of-legal-gamesmanship/article_b3bd89ee-103e-11ee-82da-53ded94b7e1b.html; *see also* Doc. No. 619-1.

For their part, the current attorneys for defendant Bongiovanni plunged into the media fray on September 6, 2023. Rather than waiting to respond in writing to the government's motion for an Intra-District Transfer (*see* Doc. No. 619), they took to their case to the media. Attorney Parker MacKay stated, "A quick review of the motion references little regarding Mr. Bongiovanni or his involvement in any of these new allegations that would justify moving this trial from Buffalo." *See* <https://buffalonews.com/news/local/prosecutors-seek-change-of-venue-for-strip-club-owner-ex-dea-agent-in-bribery-sex/article_748d1d1e-4cdb-11ee-bda2-27ed43151f08.html>. Similarly, Attorney Robert Singer told the news, "We look forward to providing a more detailed response in a future court filing, but consider it ridiculous that the

government continues to fault defense attorneys for 'over-publicizing' this case and, more disturbingly, insinuate that defense attorneys are the possible source of leaks to the media," Singer said. *Id.* Attorney Singer continued, "The insinuation completely lacks merit and is offensive. The fact is the government continues to make bombastic accusations in its public court filings, which the U.S. Attorney and her subordinates know will be read by the public[.]" *Id.*

As these comments make clear, the examples the government provided in its motion for a gag order are "capable of repetition" such that Attorney Cohen's departure ought not to enable defendants to "evad[e] review." *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998).[1] There is no doubt that the Court possesses the authority to enjoin counsel from prejudicing the jury pool through their extrajudicial statements; that current counsel have made comments akin to those examples the government provided in its motion for a gag order; that current counsel is aware of their own comments to the media; and the conduct the government seeks to enjoin is not moot.[2]

---

[1] In that regard, the government emphasizes that the examples of prejudicial comments it listed in its motion for a gag order were just that—examples. The *relief* the government seeks extends to all counsel in this case. *See* Doc. 543 at 12 (seeking an order "prevent[ing] counsel from . . . comment[ing] in a manner *similar* to the *examples* [regarding Attorney Cohen] set forth above").

[2] It is equally certain that the defendants' failure to offer any substantive response to the government's motion for a gag order results in the waiver of their opposition on the merits. *See Silverman v. Miranda*, 116 F. Supp. 289, 3030 (S.D.N.Y. 2015) ("[T]o support a finding of waiver [or abandonment], Defendants must show that Plaintiffs . . . . failed to respond to an argument raised by Defendants."); *cf. Kent v. New York State Pub. Emps. Fed'n, AFL-CIO*, 612 F. Supp. 3d 50, 65–66 (N.D.N.Y. 2020) ("Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3)."); *United States v. Shine*, No. 17-CR-

     **C.    Attorney Cohen's Continued Representation of Defendant Gerace Demonstrates an Ongoing Need for a Gag Order**

Moreover, in addition to the fact that the defendants' current attorneys are not shy about speaking to with the media to criticize the government or manipulate the media narrative, the government's motion for a gag order is not moot because Attorney Cohen is no longer counsel of record for defendant Gerace in this case. Simply put, Attorney Cohen remains one of Gerace's attorneys. Attorney Cohen admitted on the record that his law firm represents defendant Gerace in various other matters, and Attorney Cohen remains Gerace's co-counsel with Attorney Soehnlein in a pending criminal case pending before District Court Judge Sinatra. *See* Case No. 23-CR-60.[3] Attorney Cohen also has copies of the government's sealed witness list, 3500 materials, and has had access to other sensitive information previously produced by the government in sealed court filings. Thus, when Attorney Cohen's current representation of Gerace in a pending federal criminal case and his longtime status as Gerace's attorney are considered in conjunction with Attorney Cohen's access to information about this case (including government witnesses), coupled with Attorney Cohen's proclivity for making public comments to the media, this Court should not hesitate to grant the

---

0028(FPG)(JJM), 2018 WL 1721924, at *1 (W.D.N.Y. Feb. 26, 2018), *report and recommendation adopted*, No. 17-CR-28-FPG, 2018 WL 1718742 (W.D.N.Y. Apr. 9, 2018) (noting that "the government's failure to respond to a defendant's argument may be deemed a waiver"). That is, the defendants' failure to respond to the government's motion for a gag order on the merits generally extinguishes review of such an argument. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

[3] As recently as October 2, 2023, Tyler Eckert, who works for Attorney Cohen, filed a Notice of Appearance in this case. *See* 23-CR-60, Doc. No. 18. The attorneys of record for defendant Gerace are attorneys Cohen, Eckert, and Soehnlein.

requested gag order. *See* Doc. No. 543. Stated otherwise, Attorney Cohen's status as former counsel in this case does not put him beyond the reach of a properly tailored gag order.

Caselaw supports this conclusion. In *United States v. Scarfo*, the court analyzed a gag order imposed upon a defendant's former counsel in a federal criminal prosecution. 263 F.3d 80 (3rd Cir. 2001). However, *Scarfo's* makes clear that the same analysis regarding the propriety of a gag order applies to both current and former attorneys. Specifically, a former attorney is different from other members of the public, the media, or uninvolved attorneys. Accordingly, a former attorney's speech about a pending case could be restrained consistent with the Supreme Court's holding in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). *Gentile* held that an attorney's speech could properly be restrained where it created a "substantial likelihood of material prejudice" to the proceedings. *Id.* at 1075. In determining that the same standard applies, *Scarfo* observed that the former attorney in that case was:

> an insider privy to facts, and [had] a public status removing him from the leagues of common observers or uninvolved attorneys. He was not merely a lawyer with a passing interest in the case. Even following his disqualification, Manno's ties to Scarfo were much more significant than that of a common court observer and member of the public. *Gentile* pertains to gag orders on trial participants; Manno, no longer a trial participant, still retained the raiment and appearance of one and, therefore, was in a position to still materially prejudice the pending proceedings before the Court.

*Id.* at 93–94. The Third Circuit further stated, "[p]reventing a 'carnival atmosphere' in a high profile case is also a legitimate reason to gag an attorney." *Id.* at 94. Ultimately, the Third Circuit determined that the gag order directed towards a defendant's former attorney was unwarranted because there was no identifiable threat to the fairness of the trial or the jury pool as a result of the **single** interview that Scarfo's former counsel gave regarding an interesting legal issue. *Id.* at 95.

But Attorney Cohen has given far more than a single interview—and has touched upon topics outside the realm of novel legal issues. There can be no legitimate debate that Attorney Cohen maintains strong ties with defendant Gerace. Defendant Gerace is an individual with considerable resources, a penchant for litigation, and is a longtime client of Attorney Cohen. As a result, it is reasonable to conclude that Attorney Cohen has a strong financial interest—now and in the future—in maintaining strong ties with defendant Gerace. It is also reasonable to conclude that, given the record and history of conduct in this case, Attorney Cohen will seek to act as an informal mouthpiece for Gerace unless this Court acts. Indeed, Attorney Cohen remains an insider in Gerace's camp that is "privy to the facts" of this case, which "remov[es] him from the leagues of common observers or uninvolved attorneys." *See Scarfo, supra.* Although he is no longer a trial participant in this case, Attorney Cohen retains "the raiment and appearance of one" and is "in a position to still materially prejudice the pending proceedings before the Court." *Id.* Additionally, unlike in *Scarfo*, Attorney Cohen did not give a single interview about an interesting legal issue after he was disqualified, but rather has been on a calculated years-long media campaign in an to attempt to delegitimize the government's case by denigrating government witnesses, prosecutors, evidence, judicial decisions, and a federal judge. As such, *Scarfo*'s principles empower this Court to extend the same gag order to Attorney Cohen, as it would his current attorneys. Accordingly, the Court should issue a gag order and apply it to all current and former counsel for both defendants.

## **CONCLUSION**

The Court should grant the government's motion for a gag order (*see* Doc. No. 543) and prohibit attorneys from making extrajudicial comments expressing opinions about witnesses, evidence, judicial decisions, and opposing counsel.

DATED:   October 10, 2023.

| | |
|---|---|
| COREY R. AMUNDSON<br>Chief | TRINI E. ROSS<br>United States Attorney |

BY:  s/JORDAN DICKSON
Trial Attorney
Public Integrity Section
U.S. Department of Justice
Assistant United States Attorney
United States Attorney's Office
Criminal Division
1301 New York Ave. NW, Ste. 1000
Washington, D.C. 20530
202-597-0508
jordan.dickson@usdoj.gov

BY:  s/JOSEPH M. TRIPI
s/CASEY L. CHALBECK
s/ NICHOLAS T. COOPER
s/DAVID J. RUDROFF
Assistant United States Attorneys
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716.843.5839
Joseph.Tripi@usdoj.gov