UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

JOSEPH BONGIOVANNI,

PETER GERACE, JR.,

Defendants.

_____

UNITED STATES OF AMERICA,

v.

PETER GERACE, JR.,

Defendant.

_____

Case No.: 19-CR-227

Case No.: 23-CR-37

**MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR INTRADISTRICT TRANSFER (DKT. 619)**

Peter Gerace, Jr., by and through his attorneys, Mark A Foti, Esq. and Eric M. Soehnlein, Esq., provides the following memorandum in opposition to the Government's motion for intradistrict transfer (Dkt. 619).

The Government's motion misconstrues the law, and it is at odds with the objective facts of these consolidated cases. The motion should be denied in its entirety.

1

I.      **Introduction**

Justice requires treating criminal defendants consistently.  It means the Court should ensure that criminal defendants receive all of their rights, including the right to present a defense without having to overcome unfair, unnecessary or arbitrary challenges.  It means the Court should follow the law, including the Federal Rules of Criminal Procedure.  It means the Court should make sure a defendant receives a full and fair trial in a Courtroom that is near to the facts and circumstances of the case.  It means any verdict should be rendered by a jury of the defendant's peers.

The Government's motion invites the Court to ignore these tenets by moving Mr. Gerace's trial from Buffalo to Rochester.  In support, the Government relies on arguments that it asserts flow from Rules 18 and 21 of the Federal Rules of Criminal Procedure – rules that the Government misconstrues.

The Government also relies on assertions that are at odds with the objective facts pertinent to this issue.  Stated plainly, the Government's arguments are speculative and hypothetical.  There is no record in this case favoring transfer.

The Government's motion is a thinly-veiled attempt to make the trial more challenging for the defendants and to hinder the defendants' ability to effectively present a defense case.  It should be denied in its entirety.

## II. Legal Landscape

Although the Government cites Rule 7 of the local rules, the Government's motion looks to the case law of Rules 18 and 21 of the Federal Criminal Rules. The Government's argument misconstrues those rules. It also misconstrues the pertinent facts on this issue.

As a threshold matter, the Government's argument as it relates to Rule 21 is without legal basis. Rule 21 of the Federal Rules of Criminal Procedure allows for transfer for trial upon motion of the defendant, not upon motion made by the Government. *See* Fed. R. Crim. 21(a) and (b). That is presumably because the most important interests at play in determining the appropriate location of a trial are the interests of the defendant – the individual who is actually on trial. Because the defendants did not make a motion under Rule 21 in this case, arguments in that regard should be disregarded outright.

The Government's reliance on Rule 18 is not much better. Rule 18 of the Federal Rules of Criminal Procedure provides: "unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of

3

justice." Fed. R. Crim. 18.   The statute makes no mention of the convenience or preference of the prosecution.

Putting aside the Government's mischaracterization of the rules, however, the law still disfavors transfer.

### a. Arguments Based on Rule 21 Should be Disregarded

Even if Rule 21 applied in this context, the Government's arguments flowing from analysis of the rule should be disregarded.

Rule 21(b) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." The Advisory Committee Notes state that the standard to be applied for change of venue in criminal cases pursuant to Rule 21(b) is similar to the standard applied in civil case under Title 18, United States Code, Section 1404(a), which states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." (emphases added).

Application of this analysis does not support intradistrict transfer.  First, Mr. Gerace does not consent to a transfer to the Rochester division and therefore the Government cannot show that "all parties have consented."

Further, the Government has failed to demonstrate that a transfer to the Rochester division is "for the convenience" of any party or witness or in this matter.  As the Court knows, Mr. Gerace and his family reside in Buffalo.  Counsel to Mr. Gerace reside in Buffalo, have familial considerations and other professional considerations, and have prepared to try this case in Buffalo.   The witnesses, including the witnesses Mr. Gerace intends to call in the defense case, reside in Buffalo.   The facts and circumstances giving rise to this prosecution, including the location of Mr. Gerace's business, are in Buffalo.  And four years ago, the Government chose to bring these charges in Buffalo.

### b. The Government's Arguments Based on Publicity and Rule 18 Should Be Disregarded

Analysis under Rule 18 should also counsel the Court to keep the trial in Buffalo.

The Government's first and most expansive argument is that the trial should be moved because of significant pre-trial publicity.   That argument lacks basis in the law.

### i. The Government's Argument Lacks a Basis in the Law

"Substantial publicity alone is not enough to require a change of venue." *United States v. Stevens*, 83 F.3d 60, 66 (2d Cir. 1996) (citing *Dobbert v. Florida,* 432 U.S. 282, 303,

5

97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)). Rather, "[i]n order to prevail on a motion [to change venue], the [moving party] must show 'a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.'" *United States v. Maldonado–Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363, (1966)), cert. denied, 501 U.S. 1211, (1991).

Pretrial publicity is not a unique circumstance in federal criminal matters. *See United States v. Nicolo*, 523 F.Supp.2d 303, 318 (W.D.N.Y. 2007). It is rather common in so-called "high profile" cases for there to be publicity. Id. Nevertheless, a change of venue though is not warranted based on some publicity. Id.

When assessing a transfer motion, "the district court may take into account, inter alia, the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially. The ultimate determination of whether unfavorable publicity renders a fair trial unlikely is committed to the district court's discretion." *Maldonado–Rivera*, 922 F.2d at 967.

In making that assessment, "in the era of modern communications, it is nearly impossible to find a juror who has not been exposed to some measure of information

regarding a highly publicized case." *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir.) (emphasis added), cert. denied, 515 U.S. 1136, 115 S.Ct. 2566, 132 L.Ed.2d 818 (1995). Transfer is not warranted, however, simply because jurors may have some preexisting knowledge of the facts of a case, or even because they may have formed an opinion about the case. *See Nicolo*, 523 F.Supp.2d at 318. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Knapp v. Leonardo*, 46 F.3d at 176 (citing *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). "In other words, the Constitution does not require ignorant jurors, only impartial ones." Id. (citing *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)).

Moreover, whether a change of venue is warranted due to prejudicial pretrial publicity depends to a great extent on the actual jury pool and the difficulty at trial of selecting an impartial jury. Courts have therefore held that a motion for change of venue based on pretrial publicity is usually premature prior to voir dire. *See Nicolo*, 523 F.Supp.2d at 319 (citing *United States v. Ayala–Martinez*, 24 F.Supp.2d 165, 168 (D.P.R.1998) ("since the jury selection process has not yet commenced . . . plaintiff cannot establish [that jurors had formed fixed opinions about the case]. Thus . . . any

7

claim by defendant as to actual prejudice is premature and illusory"); *United States v. Eskridge,* 818 F.Supp. 259, 263 (E.D.Wis. 1993) ("Since voir dire examination is the preferable time for determination of whether pretrial publicity necessitates a change of venue, defendant['s] motion is premature and will be denied without prejudice")).

Courts have also held that in assessing a motion for a change of venue under Rule 21(a), the size of the population and geographic area from which the jury pool is drawn is a relevant factor. *See Nicolo*, 523 F.Supp.2d at 319 (citing *United States v. Lentz*, 352 F.Supp.2d 718, 724 (E.D.Va. 2005) (noting that "the jurors in this division are drawn from a population of more than two million people dispersed across Northern Virginia . . . . Thus, it is unlikely that unbiased jurors cannot be found in this division given its size and breadth")). Significantly, and as the United States Attorney's Office has emphasized in briefing in other recent cases in this district, the Buffalo division of the Western District of New York comprises eight counties with a population of approximately over 1.5 million people spread out over approximately 6,439 square miles. *See* United States Census Bureau State & County QuickFacts, available at http://www.census.gov/quickfacts/table/PST045216/00.

In recent years the United States Attorney's Office for the Western District of New York has consistently and repeatedly argued that the size of the Buffalo division of the district is sufficiently large to ensure a fair jury on high profile federal prosecutions. It has shown no reason to disavow that position in this case.

## ii. The Government's Argument Misrepresents the Facts

The Government's argument also lacks a basis in the facts. Although the events giving rise to this case have received publicity in the Buffalo area, there has been no showing by the Government that the publicity has been so widespread throughout the district that it will likely be difficult to select an impartial jury. What is more, the Government's argument about the source of the publicity – which is critical to its argument and to the law it relies upon – is controverted by objective reality.

The Government's briefing attributes all pre-trial publicity to the defense team. That is not true. On September 12, 2023, the Buffalo News Editorial Board published the Editorial, "Thanks for the Compliment, feds – and the Stories." In responding to the Government's assertion that it has not been a source of media attention, the paper's response was simple and to the point: "who are they kidding?" The article accurately states: "we thank [the Government] for the stories, the vast majority of which were based on government court filings."[1]

In responding to the Government's assertion that the content printed in the paper was driven by an effort of the defendants to saturate the media market with attacks on witnesses and spin on the case, the Editorial Board wrote:

---

[1] The very existence of the Buffalo News editorial makes the defense point better than any brief could. The article was brought about by allegations and statements the Government made in a public filing relating to this motion. It was not a response to any statement, action or filing by the defense team.

9

"exacerbated by defense attorneys and anonymous sources' statements to the media…?" The statement is true…in a way, if you squint at it.  That is to say, if by "exacerbated" the prosecutors mean that defense lawyers and anonymous sources made up a smidgen of that coverage, compared to the deluge of information mined from the government's public filings, well…maybe they have a point.

Here's how the lawyer for one of the defendants more accurately put it:

"The fact is the government continues to make bombastic accusations in its public court filings, which the U.S. attorney and her subordinates know will be read by the public…do federal prosecutors honestly believe that the media will not – or should not – report on these filings?

We'll answer for the prosecutors: Of course they don't. What they're asking is for the judge to protect the trial – assuming the trial needs protection – from the predictable consequences of their own actions.

The Editorial Board, *Thanks for the compliment, feds…and the stories*, THE BUFFALO NEWS,  Sept. 12, 2023.

The Government's manipulation of the media has also been apparent in its prosecution of other cases it has represented as being related to this one.

For instance, the Government is currently prosecuting Simon Gogolack, the individual who was in close proximity to a witness in this case when she recently overdosed and died.  See *United States v. Gogolack*, 23-cr-99 (W.D.N.Y. 2023).   In open court the Government insinuated that Mr. Gogolack played some role in the witness' death and played some role in tampering with that witness. *See* Herbeck, Dan, *Prosecutors Say Wellsville Man Tampered with Government Witnesses*, THE BUFFALO NEWS.

10

September 14, 2023.[2]  The Government has not actually made that link, however.  To the extent Mr. Gogolack is charged with serious federal crimes, they are wholly independent of this case.  There is no link between Mr. Gogolack and the defendants in this case; there is no link between Gogolack and the witness' death.  The Government has chosen to weave a public narrative to the contrary in order to impact this case and in order to cultivate further media attention and pressure.

This has been evident elsewhere in the Government's handling of this case.  At multiple detention hearings, the Government has asserted that a witness poised to testify against Mr. Gerace had dead rats placed in proximity to her.  The Government's bombastic assertion is just that, however.  Despite fulsome Government investigation, there has never been any link between Mr. Gerace and the alleged dead rats.  There have been no charges stemming from the allegation, and defense counsel has not received or reviewed any testimony or other evidence that supports the assertion.  Rather, as defense counsel has repeatedly pointed out, the facts and circumstances of the alleged incidents demonstrate means, motive and opportunity for the witness to have planted those rats herself.  The defense has fully briefed this issue elsewhere in this case, including requesting an evidentiary hearing as a way to fully and fairly confront the allegations.  *See* Dkt 601. The Government's story is unsupported by hard

---

[2] This is another newspaper article that discusses this case based solely on statements and representations made by the Government in public filings and in open Court, without any input from defense counsel.

evidence, but it has repeatedly made and amplified the allegation in public filings and open court as a means to spin its narrative in this case.

As a final point on this issue, even if the Government is correct that the publicity of this case should counsel the matter to be moved to Rochester, it has not shown that a move to Rochester would dampen or diminish any media attention. It is likely that Buffalo-based media will continue to cover the trial from Rochester, reporting into the Buffalo media market at regular intervals. If that is the case, moving the trial to Rochester does nothing to address the concerns set forth by the Government. It will only work to prejudice defendants.

### c. Government Concerns About Courthouse Security are Hypothetical and Should Be Disregarded

The Government argues that concerns over Courthouse security favor moving the trial from Buffalo to Rochester. The only basis for this argument is that the Outlaw Motorcycle Club is mentioned in charging documents (by the Government) and that, in another federal trial involving motorcycle gangs several years ago, Outlaws members allegedly "attended every day of the trial, sat prominently in the gallery, and took notes." Dkt. 619 at p. 14. The Government's filing argues that the Outlaws' presence at that trial "risked the orderly administration of justice." The Government cites no authority for that assertion; to counsels' knowledge that trial proceeded through verdict

and resulted in a conviction by the jury without any allegation of witness intimidation or witness tampering by any party.

More importantly, the Government's concerns on this point are completely hypothetical. This case has had several court appearances in the last several years. Unlike the case referenced by the Government, this trial does not directly involve the Outlaws or any other motorcycle club. Indeed, Mr. Gerace disputes the allegation that he is a member or otherwise formally affiliated with the club. To counsel's knowledge, no member of the Outlaws has attended any Court appearance. We assume that if they had the Government's filing would have pointed to the date and time of any such appearance and made a more specific allegation of witness intimidation.

The Government's speculation about the Outlaws is just that – speculation. It is not based on anything that has occurred in this case. Further, in the event that the Outlaws or any other group or individuals cause an issue at trial, the trial court has options at its disposal to address those issues at trial, all of which are short of moving the trial from Buffalo to Rochester.

### d. The Government has Misrepresented Concerns About Witness Safety

It's true that Mr. Gerace has been indicted for allegedly tampering with a witness by having a third party send a social media message. Mr. Gerace disputes those allegations. But even if they were true, they occurred before Mr. Gerace was ever

13

charged with a federal crime, they were not in person, there was no violence, and they did not continue after Mr. Gerace was charged with a crime.

It's also true that Mr. Gerace, through his former attorney, has pending civil lawsuits involving witnesses in his federal case. Those lawsuits commenced with consultation of former counsel, through the court system in a public manner, and long before Mr. Gerace was ever charged with any federal crime. There is no allegation of violence, and there is no allegation that that conduct occurred after Mr. Gerace was charged.

As was highlighted earlier, the Government's reliance on allegations of dead rats being placed near potential witnesses is without foundation. Despite lengthy and in depth Government investigation, there is no credible evidence linking Mr. Gerace to those alleged incidents. If the Government had it, we assume they would share it with the Court or that they would charge Mr. Gerace with additional crimes. They have not supported their allegations because they cannot support their allegations.

Finally, with regard to witness hesitancy to testify, that is nothing out of the ordinary in a federal trial. Undersigned counsel have had experience in federal cases where witnesses express a desire to avoid live courtroom testimony. Presumably the Court has as well. The Government continues to have all the resources at its disposal

that it has in any other federal case to support those witnesses, as does the Court. There is no reason this matter should be treated differently.

### e. The Government's Hypothetical Concerns About the "Prompt Administration of Justice" Do not Favor Transfer

In its brief, the Government cites concerns of selecting a jury who has no relation to witnesses in this case and concerns that jurors may have strong feelings about prominent figures who may be discussed at trial. To the extent they are valid concerns, they do not favor transfer.

Under Rule 18's analysis regarding the "prompt administration of justice" in the context of jury selection, the Fifth Circuit addressed this issue in *United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002). In that case the Appellate Court noted that the term 'prompt administration' was "not promulgated in the Rules with the intention of permitting courts to avoid even attempting arduous voir dire proceedings. Rather, the triggering purpose of the 'prompt administration' amendment to Rule 18 was to clarify that district courts are authorized to fix the place of trial so as to comply with the Speedy Trial Act. That Act concerns itself solely with the timeliness of when trial *begins*, not with when either voir dire or the entire trial will *conclude* . . . ." 299 F.3d at 342. In other words, the Government's concerns about lengthy voir dire have no role in Rule 18's analysis of the "prompt administration of justice."

While the Government improperly includes voir dire in its argument, it also inexplicably excludes practical considerations that are part of the analysis. Indeed, in discussing the "prompt administration of justice," the Government avoids the topic of general court administration and the effect of transfer on a district court's dockets.

In the Kingsmen case, Judge Wolford noted that while selecting venue *solely* based on judicial convenience would likely be an abuse of discretion, it is a permissible factor to consider. In her view, moving the trial to Rochester would have promoted the administration of justice insofar as her "duty station" is Rochester and that would have alleviated challenges to the management of her docket in lieu of holding the trial in Buffalo. *See United States v. Pirk*, 284 F. Supp. 3d 398, 418, n.10 (W.D.N.Y. 2018). That is just the opposite here, where the Government requests that the presiding judge to sit in another division for a multi-month trial. Thus, this Court is well within its discretion to consider the disruption to its calendar that such a request will entail. Such a transfer will significantly affect this Court's docket and schedule. It will require the re-working of four months of cases where the Court is not available to physically preside in Buffalo. It will require the relocation of court staff. It will require the rescheduling of appearances in other cases. It will interject unnecessary challenges into the trial and other matters that can and should be avoided.

    f. **The Government's Argument About Testimony Regarding "Well-Known Figures" Favors Keeping the Case in Buffalo**

16

Puzzlingly, the Government argues that the fact that the testimony will involve allegations regarding "public and well-known figures" should counsel in favor of transfer. That is not the case.

Mr. Gerace is entitled to a trial by a jury of his peers. That means a jury that resides in or around the same place that he resides. That means a jury that has some sense of shared experience with Mr. Gerace – whether that be understanding the geography of Western New York or appreciating the import of a public figure in the Western New York region.

The Government chose to proceed with allegations about "public and well-known figures." In the event the case is tried in Rochester and not in Buffalo, educating jurors about those individuals – including their role and standing in the Western New York community – becomes a necessary part of the trial. It alters the proof and the presentation of proof at trial in a way that unfairly prejudices defendants because it forces defendants to prove background facts that it would not otherwise be responsible for proving, and it requires defendants' counsel to litigate the sanitized or curated version of the Buffalo region that the Government will undoubtedly attempt to present to the jury.

### III.     The Government's Motion is an Attempt to Unfairly Prejudice Mr. Gerace

Moving the trial to Rochester would unfairly prejudice Mr. Gerace.  First, it will prejudice Mr. Gerace's ability to present a case on his own behalf.  While the contours of the defense case will be tailored to match the proof elicited by the Government in its case in chief, counsel can represent that that the overwhelming majority of the witnesses Mr. Gerace anticipates calling for trial testimony live and work in the Buffalo area.  Forcing these witnesses to travel to Rochester places undue stress on the witnesses, and for those witnesses who need to miss work or other obligations to provide testimony it makes it less likely they will be willing or able to provide that testimony on Mr. Gerace's behalf.

It also unfairly prejudices Mr. Gerace by unfairly straining counsel.  Both of Mr. Gerace's attorneys have young children, and both have made provision to try this case in Buffalo.  Moving the trial to Rochester also interjects substantial expenses into the defense of Mr. Gerace that were not contemplated in undertaking representation.  Moving the trial to Rochester makes the case more difficult for Mr. Gerace's defense and interjects a dynamic into the representation that is likely to adversely and unfairly prejudice Mr. Gerace.

## IV. Conclusion

Moving the trial from Buffalo to Rochester is a drastic remedy that has no basis in the law or in the facts of this case. That is particularly the case here where jury selection has not yet begun (and the parties would presumably not oppose expanded voir dire to protect the trial). If granted, the motion unfairly prejudices the defendants. More importantly, in the event any of the Government's hypothetical fears expressed in its motion papers come near fruition at the trial of this matter, the Court is well-positioned to implement protocols and procedures to protect the integrity of the trial from improper factors, just as judges routinely do in criminal trials in the Western District of New York.

The Government's motion should be denied in its entirety.

s/ Mark A. Foti, Esq.

Mark A. Foti, Esq.
**The Foti Law Firm, P.C.**
16 W Main Street, Suite 100
Rochester, NY 14614
(585) 461-1999
(585) 491-6512

 s/ Eric M. Soehnlein, Esq.

Eric M. Soehnlein, Esq.
**Soehnlein Law, PLLC**
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 771-9092