UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

JOSEPH BONGIOVANNI,                                        Case No.: 19-CR-227

PETER GERACE, JR.,

Defendants.

_____

UNITED STATES OF AMERICA,

v.                                                                          Case No.: 23-CR-37

PETER GERACE, JR.,

_____


## MEMORANDUM IN RESPONSE TO GOVERNMENT'S SUPPLEMENTAL MOTIONS IN LIMINE


Peter Gerace, Jr., by and through counsel (Mark A Foti, Esq. and Eric M.

Soehnlein, Esq.) provides this memorandum in response to the government's

Supplemental Motions in Limine dated September 23, 2024 (Dkt.# 1235).  For the

reasons set forth below, the government's motions should be denied in their entirety.


I.    **The Court Should not Preclude Mr. Gerace from Eliciting Relevant Testimony of Alleged Victims' Prior Sexual Activity with Mr. Gerace or Employment in the Sex Industry**

       a.   **Prior Sexual Activity with Mr. Gerace**

In Count 9 of the Superseding Indictment, the government alleges that:

> Beginning in or about 2009 and continuing to in or about 2018, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, PETER GERACE JR., did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means, in and affecting interstate and foreign commerce, persons, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and a combination of such means, would be used to cause such persons to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a) and 1591(b)(1).

Under the statute and the government's theory of the case, Mr. Gerace's mental state – whether he "knowingly" benefitted from commercial sex acts or whether he did so "in reckless disregard" of the acts of others – is critical to this case.

Rule 412(b) of the Federal Rules of Evidence permits admission of the following:

> **(A)** evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

> **(B)** evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

> **(C)** evidence whose exclusion would violate the defendant's constitutional rights.

> Fed. Rules Evid. R 412

With regard to Rule 412(b)(1)(B), the advisory notes state: "[a]dmissible pursuant to this exception might be evidence of prior instances of sexual activities between the alleged victim and the accused, as well as statements in which the alleged victim expressed an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving the specific accused."  Fed Rules Evid R 412.

With regard to Rule 412(b)(1)(C), the advisory notes state: "[e]vidence of specific instances of conduct may not be excluded if the result would be to deny a criminal defendant the protections afforded by the Constitution. For example, statements in which the victim has expressed an intent to have sex with the first person encountered on a particular occasion might not be excluded without violating the due process right of a rape defendant seeking to prove consent. Recognition of this basic principle was expressed in subdivision (b)(1) of the original rule. The United States Supreme Court has recognized that in various circumstances a defendant may have a right to introduce evidence otherwise precluded by an evidence rule under the Confrontation Clause."

As the Second Circuit has stated, "[t]he constitutional rights contemplated by this exception include an accused's right under the Sixth Amendment to confront a witness. This includes a meaningful opportunity to present a complete defense at trial and to confront witnesses, including by impeaching the credibility of a prosecution witness by cross-examination." *United States v. Rivera*, 799 F.3d 180, 183 (2d Cir. 2015). In that regard, it is well settled that Rule 412 does not exclude evidence of sexual conduct

"included in," "intrinsic to," and "inextricably intertwined" with that charged in an indictment. *United States v. Ray*, 2022 WL 729861, at *1 (S.D.N.Y. Mar. 10, 2022); *United States v. Frey*, 2022 U.S. Dist. LEXIS 116036, 13-14 (E.D.N.Y. June 30, 2022).

Contrary to the arguments of the government, the defense will not argue that any witness' prior (or subsequent) consensual sexual activity with Mr. Gerace constitutes "blanket consent."

Because of the mental state that must be proven under 18 U.S.C. 1591, however, Mr. Gerace reserves the right to elicit testimony about victims' prior and subsequent sexual activity with Mr. Gerace. Without question, instances of prior consensual sexual contact are relevant evidence relating to Mr. Gerace's knowledge, understanding and mental state with regard to the actions and decisions of each witness. They inform his understanding of his relationship with the witnesses; they also inform his reasonable beliefs about the conduct engaged in by the witnesses and by other individuals who may have engaged in sex acts with the witnesses.

### b. Reference to Witness' work in the sex industry, including employment at other gentlemen's clubs

The government also seeks to preclude reference to witness' employment within the sex industry, including at other strip clubs, separate from their work at Mr. Gerace's nightclub. The crux of the government's argument is that those acts, which were

4

wholly independent of Mr. Gerace, "would not tend to prove what transpired during the events charged in the indictment." Dkt.# 1235 at p. 9. That is not true.

The government primarily relies on *United States v. Rivera*, 799 F.3d 180 (2d Cir. 2015), a case where defendants-appellants "operated two bars on Long Island that also functioned as illegal brothels. They advertised a decent salary and free transportation to and from work to recruit attractive, undocumented aliens to work in a role they described as "waitress." The "waitresses," who became the victims in Appellants' scheme, were told they would be expected to dress suggestively, serve drinks, and possibly dance with customers. The reality was very different: Appellants threatened the victims with violence and deportation if they spoke to the authorities or quit, forced them to drink alcohol until they were intoxicated, required them to strip, and compelled them to be fondled by customers, to be groped by customers, and to have sex with customers." *Rivera*, 799 F.3d at 183. Before the trial, the district court had granted the government's motion in limine, precluding cross-examination about the victims' prior work as prostitutes.

On appeal, the Second Circuit found the evidentiary ruling was not err for two reasons. First, the Second Circuit noted that "[t]he focus of the Government's case was that the victims were forced to perform sex acts against their will. Prior sexual conduct for money or pleasure was irrelevant to whether the victims' sexual activities at the bars were the result of coercion." *Rivera*, 799 F.3d at 185. Stated another way, regardless of

the fact that the victims may have engaged in prostitution before their involvement with the defendants, there was no evidence they consented to be beaten, physically threatened, or threatened to be deported, as the defendants' allegedly did to the victims in that case. id.

More importantly, the Second Circuit noted that the evidentiary ruling allowed for effective cross-examination in light of the allegations in the case: Appellants effectively cross-examined the victims and argued that they engaged in prostitution for pecuniary reasons—not because they were forced. The testimony that some of the victims quit working and subsequently returned or chose to work at the bars because they earned more money than they would at their next-best employment option could have been received by the jury as suggesting consent. Thus, the testimony elicited by Appellants' counsel, as emphasized by Rivera's counsel in closing, allowed Appellants to contend that the victims freely consented to engage in prostitution." Id at 186.

This case is very different than the theory in Rivera, where the allegations relating to sex trafficking were different than the conduct engaged in by the victims at other points in time.  Here the government alleges:

> The drug trafficking and sex trafficking at PGC are intertwined. Dozens of witnesses will testify that GERACE used, sold, provided, and facilitated drug deals inside PGC. These witnesses include former PGC employees and patrons. The witnesses will explain that the official rule was that drugs were not allowed inside PGC, but it was a rule in name only.

> In reality, GERACE only was concerned if dancers'
> appearance waned because of drug use, or if employees were
> indiscreet, or if they were arrested and charged by the
> authorities in connection with their drug activities because an
> arrested and charged employee could present a risk to
> GERACE and PGC. The testimony of several former PGC
> dancers and managers, including some sex trafficking
> victims, in combination with testimony from GERACE's ex-
> wife Katrina Nigro, will establish that GERACE conspired to
> engage in sex trafficking through force, fraud, and coercion.
> In addition to the personal gratification that he received from
> receipt of sexual favors from much younger women, by
> providing prostitution services to powerful people, GERACE
> solidified a relationship with members of law enforcement,
> political figures, and judges while insulating himself from
> investigation.

> Dkt.# 441 at p. 59.

The defense anticipates that several of the witnesses would testify that they had

worked in the strip club industry before and after working at Mr. Gerace's nightclub

and that the working conditions at other strip clubs, including the presence and

prevalence of drug use, were similar or worse than those at Mr. Gerace's nightclub.

The defense further anticipates that several of the witnesses would testify that

they engaged in commercial sex acts before, during and after employment at Mr.

Gerace's nightclub and that those acts, which have temporal overlap to the allegations

in this case, were undertaken completely independent of Mr. Gerace because the

witnesses desired money or access to drugs.

Unlike the victims in *Rivera*, who were subjected to physical assault and threats of deportation, the independent conduct of the witnesses here undercuts the credibility of their testimony as it relates to Mr. Gerace. The independent actions of the witnesses, including their choice to work at other strip clubs or to independently engage in commercial sex acts (including contemporaneously with the allegations in this case), will further evidence that they chose to engage in that activity for pecuniary or other reasons – evidence that directly rebuts allegations that such witnesses were coerced into performing commercial sex acts by Mr. Gerace. Foreclosing this testimony will preclude Mr. Gerace from a meaningful opportunity to present a complete defense at trial and to confront witnesses, including by impeaching the credibility of a prosecution witness by cross-examination – a result that is forbidden by the Sixth Amendment and by the plain language of Rule 412 of the Federal Rules of Evidence.

## II.    Admission of Statements Purportedly Made by Joseph Bongiovanni

Pursuant to Fed. R. Evid. 801(d)(2)(E), the government moves to admit: (1) memoranda authored by Mr. Bongiovanni in 2018-2019; (2) statements Mr. Bongiovanni purportedly made to SA Carpenter in an interview in March, 2019; (3) statements Mr. Bongiovanni purportedly made to SA Ryan in June, 2019; and (4) a November, 2009 DEA 6 memorandum authored by Mr. Bongiovanni. The government alleges that each statement is evidence in furtherance of the conspiracy in Count 2 of the Superseding Indictment, which asserts that Mr. Gerace and Mr. Bongiovanni conspired to defraud

the DEA by interfering with and obstructing the lawful and legitimate functions and rights of the DEA.

The Court should decline to grant the government's motion at this time. It instead should not admit the evidence unless the Court finds: 1. The existence of a conspiracy to obstruct justice between Mr. Gerace and Mr. Bongiovanni; and 2. That the statements were in furtherance of the purported conspiracy.

### a. Legal Landscape

Rule 801(d)(2)(E) excludes from the definition of hearsay a statement that 'is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy.'" *United States v. Phillips*, No. 22 Cr. 138 (LJL), 2023 U.S. Dist. LEXIS 183192 at *10 (S.D.N.Y. Oct. 10, 2023) (quoting Fed. R. Evid. 801(d)(2)(E)).

To admit a statement under Rule 801(d)(2)(E), "a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Graham*, 477 F. App'x 818, 822 (2d Cir. 2012); *United States v. Rangott*, 2024 U.S. Dist. LEXIS 130171, at *3-4 (S.D.N.Y. July 22, 2024).

As to the first factor, "[i]n determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). "As to the 'in furtherance' requirement, 'the touchstone is that the statement be designed to promote the accomplishment of the conspiracy's goals." *United States v. Johnson*, 469 F. Supp. 3d 193, 212 (S.D.N.Y. 2019)).

"[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of th[e] [two] prerequisites" identified above. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993). "However, the statements are subject to a motion to strike if the Government fails at trial to establish by a preponderance of the evidence the existence of these foundational facts." *United States v. Esparra*, No. 12 Cr. 844 (RWS), 2014 U.S. Dist. LEXIS 55245, 2014 WL 1569607, at *5 (S.D.N.Y. Apr. 17, 2014).

### b. The Court Should Not Admit the Statements Until it Finds the government has Proven Existence of a Conspiracy

In the defense's view, the lynchpin of the allegations supporting Count 2 against Mr. Gerace and Mr. Bongiovanni are contained at paragraph 18 of the Superseding Indictment, which asserts that between 2013 and 2016 Bongiovanni received cash bribes from Gerace "on a recurring basis" "in exchange for protection from arrest and

prosecution." Without that allegation, there is insufficient proof of a meeting of the minds to evidence a conspiracy between Mr. Gerace and Mr. Bongiovanni.

The basis for the allegation appears to be testimony of Mr. Gerace's ex-wife, Katrina Nigro, **a witness whose credibility has already been called into question by the Court.** On July 19, 2024, this Court granted Mr. Bongiovanni's motion for acquittal under Rule 29, acquitting Mr. Bongiovanni for Count 5 of the Superseding Indictment and noting that Ms. Nigro's trial testimony was markedly different from her testimony before the grand jury. Dkt.# 1077 at pp 5-11. In that regard, the Court ruled that, because of the Ms. Nigro's changed testimony, at trial there was no circumstantial evidence from which a jury could infer beyond a reasonable doubt that the payments were bribes, as opposed to being gratuities or benign exchanges between friends. Moreover, because of Ms. Nigro's changed testimony, there was no temporal connection between the money and acts taken that might have supported an inference that Mr. Bongiovanni accepted the money in exchange for providing future protection to Gerace. Id. at p. 12. As a direct result of Ms. Nigro's changed testimony, the Court granted Mr. Bongiovanni's motion for a judgement of acquittal as to Count 5 of the Superseding Indictment.

It is not clear what Mr. Nigro's testimony will be at the upcoming trial of Mr. Gerace. In the event her testimony mirrors testimony she provided in the first Bongiovanni trial, however, the testimony will not demonstrate that there were

"recurrent" payments from Mr. Gerace to Mr. Bongiovanni, nor will the testimony

establish that any such payments were for a nefarious purpose.  If that is the case, the

defense expects to argue there is insufficient evidence of a meeting of the minds

between Mr. Gerace and Mr. Bongiovanni sufficient to find proof of any conspiracy.

### c.  That the Statements Were in Furtherance of a Purported Conspiracy

Apparently conceding that the evidence at issue may not be directly in

furtherance of Count 2 of the Superseding Indictment, the government argues that "the

conspiracy between the declarant and the defendant need not be identical to any

conspiracy that is specifically charged in the indictment."  Dkt.# 1235 at p. 17.   That

does not mean, however, that all statements attributed to a coconspirator are

automatically attributable to co-defendants.  The statements must be made in

furtherance of some agreed-to illegal purpose.  And where the government alleges there

is a different conspiracy other than the conspiracy that has been charged, "there must be

some independent corroborating evidence of the defendant's participation in the

conspiracy."  *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000).

The government's submission alleges that the four statements made by Mr.

Bongiovanni "conceal *his* crimes and conspiratorial nature of his relationship with Mr.

Gerace; and redirect attention to [another federal agent] in furtherance of conspiracies to

defraud the United States." (italics for emphasis) id at p. 18.  Stated another way, the

government understands that, given the allegations against Mr. Bongiovanni at the time he was making the statements, Mr. Bongiovanni had an independent basis completely unrelated to Mr. Gerace to make false statements to protect himself – independent of any alleged improper agreement he had with Mr. Gerace.

Given that factual predicate it is possible – if not likely – that Mr. Bongiovanni made the allegedly false statements at points in time where it was solely in his best interest to make the statements and not in the interests of Mr. Gerace.  Accordingly, it is possible – if not likely – that the statements were not part of any agreement or conspiracy between Mr. Bongiovanni and Mr. Gerace and that the statements were not made in furtherance of any goal to be advanced on Mr. Gerace's behalf.

Accordingly, the Court should not admit the statements of Mr. Bongiovanni at the time.  Instead, the Court should review the proof in the government's case in chief and then make a decision as to whether the statements may be admitted.

### III.    Admission of Evidence that Mr. Gerace Knew of Unlawful "Sexual Conduct" Under NY State Law and Judicial Notice of the Definition of "Sexual Conduct" Under NY State Law

The government's motion seeks to "admit evidence of Mr. Gerace's knowledge of unlawful 'sexual conduct' under New York State Law" and "to take judicial notice of the definition of 'sexual conduct' under New York law."  Id at p. 19.   Although the specific knowledge and the specific conduct the government seeks to admit is unclear, the government's position seems to be that Mr. Gerace and others were aware that

certain alleged conduct was illegal under New York law, and that the Court should take "judicial notice" of what "sexual conduct" was illegal under New York law, even though the government acknowledges "sexual conduct" is not defined by New York law.  id. at p. 21.

The government's motion must be rejected.  Putting aside the fact that there is no definition of "sexual conduct" under New York law, the evidence the government seeks to admit is not relevant to the issues in this case.  More seriously, inclusion of the broad definition advocated by the government will confuse the jurors with irrelevant, highly prejudicial testimony and interject irrelevant issues into the trial.

### a. New York Law

The government's motion seems to assert that certain uncharged violations of New York law at Mr. Gerace's nightclub constitute uncharged criminal conduct that would be admissible under Rule 404(b).   The government references New York Penal Law Section 230.00 as one section Mr. Gerace may have violated, but the briefing suggests that that is not the sole state statute the government will allege Mr. Gerace or his business violated.[1]

---

[1] If the government seeks to admit evidence in this way, the defense requests the government indicate what New York State laws it believes were violated by Mr. Gerace and his business and provide notice as to what acts, in the government's view, constitute violations of New York law.

In support of its theory, the government asks the Court to take "judicial notice" of the term "sexual conduct" as defined by New York law.  The government does not offer a definition of "sexual conduct."  That is because no definition exists.  Courts that have been asked to create such a definition have explicitly declined to do so – including in the cases relied upon by the government.

In that regard, the government's motion principally relies on *People v. Medina*, 685 N.Y.S.2d 599 (N.Y. Cty. 1999).  There the defendant was charged with misdemeanor prostitution under penal law 230.00.  The defendant moved to dismiss the case, arguing that the charging documents were insufficient as they charged him with agreeing to engage in intercourse for a fee and, because he was a male and the perspective "John" (an undercover police officer) was also male, intercourse could not be accomplished by two people of the same sex.  685 N.Y.S.2d at 600.

In analyzing the issue, the trial court noted that Penal Law § 230.00 provides that "[a] person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee," and that although "sexual conduct" is an element of this offense and all other prostitution-related offenses contained in Penal Law article 230, the term is not defined in the article.  Id.

Reviewing the issue, the court began with analysis of N.Y. Penal Law Section 130.00, a different section of the penal law that criminalizes "sexual intercourse."  While

the court included a lengthy discussion of that subsection, it ultimately found that the

definition in Sections 130 and 230 of the Penal Law were not meant to be the same, and

it rejected the defendant's argument that they should be read to be one and the same.

id. at p. 601.

After rejecting the defense's definition, the Court went on to summarize the case

law with respect to the definition of "sexual conduct."  Its summary is noteworthy:

> In Penal Law article 230, the Legislature eliminated these distinct categories of sexual activities and substituted the term "sexual conduct". By abandoning categories of prohibited conduct, the Legislature opted for an elastic concept which encompassed traditional forms of prostitution but could also adapt to new methods of selling the arousal of sexual desire (*see, for example, People v Hinzmann,* 177 Misc 2d 531 [Crim Ct, Bronx County 1998], where the court determined that the combination of "lap dancing" and the touching of naked breasts and buttocks was within the scope of "sexual conduct"; and  *People v Tribble*, NYLJ, Sept. 29, 1992, at 22, col 3, where the court determined that rubbing an exposed penis against buttocks constituted sexual conduct within the meaning of article 230, but touching breasts or buttocks did not).

> In the absence of a statutory definition of "sexual conduct", on a post verdict motion which challenged section 230.00 as unconstitutionally overbroad and vague, the Supreme Court in *People v Costello* (90 Misc 2d 431, 433 [Sup Ct, NY County 1977], *supra*) defined the term based on a "common understanding of the term 'prostitution' ". The court formulated a three-pronged definition which included "sexual intercourse, deviate sexual intercourse and masturbation" and concluded that these activities were a proper subject for State regulation when performed for a fee. (*Supra.*)

> The three-pronged definition of "sexual conduct" offered in *Costello (supra)* in 1977 has persisted in case law. Some courts have adopted it in its entirety (*see, People v Tribble, supra; People v Fink,* NYLJ, May 22, 1992, at 23, col 4), while other courts have expanded the definition to accommodate new forms of sexual gratification (*see, for example, People v Hinzmann, supra,* at 533-534). However, inasmuch as the *Costello* court derived its definition of "sexual conduct" not from the statute but from "common understanding" which is subject to change, this court is not persuaded that it should accept the categories of sexual activity offered there.
>
> *Medina,* 685 N.Y.S.2d at 601-602.

Following that passage, the Court's definition goes on for several additional passages, analyzing the common-sense meaning of the word "intercourse," "deviant sexual intercourse," and "masturbation." Id at 601-602. From there, the Court declined to formulate a definition of "sexual conduct," rather narrowly holding that same-sex penis-anal penetration would fall within that rubric.[2] Id.

### b. Rule 404(b) and Rule 403

To determine whether the Government may rely on these Rule 404(b) exceptions to introduce other-acts evidence, the Court must examine each party's theory of the case. In other words, "relevance is not the end of the inquiry: evidence admitted under

---

[2] The government relies on *People v. Hinzmann,* 677 N.Y.S.2d 440 (Crim. Ct. 1998) for the proposition that "lap dancing and the touching of naked breasts is within the scope of sexual conduct." Dkt.#1235 at p. 21. That is not true. The *Hinzmann* decision was a ruling on a motion to dismiss for lack of sufficiency of an indictment. Because there is no definition of sexual conduct, the trial court declined to dismiss the case entirely, instead ruling that a reasonable fact finder could hold that the conduct described above fell within the definition of sexual conduct under New York law.

404(b) must be relevant to an issue in dispute." *United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012).

In that regard, the government asserts it wishes to introduce other acts evidence "to show that Mr. Gerace promoted commercial sex acts in knowing contravention of New York state law." Motion in Limine at p. 21. As noted above, what is "in contravention of New York state law" is something that, in many contexts, may be open to interpretation given the lack of a definition for sexual conduct under state law.

More importantly, the evidence the government seeks to admit is both irrelevant and unfairly prejudicial. As the Court knows, for the purpose of 18 U.S.C. 1591, the government must prove that Mr. Gerace knowingly used "means of force, threats of force, fraud, coercion…or any combination of such means…to cause the person to engage in a commercial sex act." 18 U.S.C. 1591(a). That conduct is different than many New York state sexual offenses, which include mere "promotion" of prostitution and other acts that do not require the same level of criminal intent as the federal statute.

Simply put, admission of the evidence will force Mr. Gerace to litigate (1) his knowledge of state laws and the protocols of his nightclub to meet the obligations of those state laws; (2) the content and definition of those state laws; (3) whether the conduct of Mr. Gerace or others violated state laws; and (4) whether the conduct of others is fairly attributable to Mr. Gerace. While these issues litigate sexual activity that

allegedly occurred in Mr. Gerace's nightclub, none of the allegations have direct bearing on whether or not Mr. Gerace violated 18 U.S.C.1591.

For the foregoing reasons, the Court should deny the government's motion in its entirety.

## IV.    Conclusion

For the reasons set forth above, the Court should deny the government's motions in their entirety.

DATED:        September 30, 2024

s/ Mark A. Foti, Esq.                              s/ Eric M. Soehnlein, Esq.

Mark A. Foti, Esq.                                 Eric M. Soehnlein, Esq.
**The Foti Law Firm, P.C.**                        **Soehnlein Law, PLLC**
16 W Main Street, Suite 100                        2100 Main Place Tower
Rochester, NY 14614                                350 Main Street
(585) 461-1999                                     Buffalo, NY 14202
(585) 491-6512                                     (716) 771-9092