IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———————————————————————————

UNITED STATES OF AMERICA,

             v.                                        19-CR-227-LJV
                                                 23-CR-37-LJV

PETER GERACE, JR.,

               Defendant

———————————————————————————

## GOVERNMENT'S MOTION FOR PROTECTIVE ORDER REGARDING JUROR INFORMATION

The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, hereby moves for issuance of a protective order regarding juror information.

## I.   FACTUAL BACKGROUND

As the Court knows, the parties will be using juror questionnaires to assist jury selection.  On Sunday, September 29, 2024, the undersigned contacted Mr. Gerace's attorneys and proposed a protective order regarding the access to, and handling of, juror information related to those questionnaires.  *See* Ex. A at 4 (Correspondence Between the Parties).  As noted in the undersigned's email, such protective orders are not without precedent in our district.  *Id.*; *see, e.g.*, Ex. B, Protective Order, *United States v. Wilson*, 1:19-CR-155 EAW, ECF No. 453, (dated Aug. 30, 2022) (hereinafter the "*Wilson* Order").

The government proposed four modest but important changes to the *Wilson* Order. First, the *Wilson* protective order requires counsel to return "[a]ll electronic and paper copies of the jury list and completed questionnaires . . . to the Court after the jury has been impaneled

or . . . certify that all such copies have been destroyed and that no jury lists or completed questionnaires have been retained in duplicative form." *Wilson* Order at 1 ¶ 1.  Out of concern that (1) a certification process could be cumbersome for both the Court and the parties and (2) to ensure that the order adhered as closely as possible to the Western District of New York's Jury Plan, the undersigned proposed removing the *Wilson* Order's certification language.  *See* W.D.N.Y. Jury Plan at 9 ("Following jury selection, the attorneys (or party) provided the jury list must return to the clerk the jury list and any copies made from the jury list provided to them and/or destroy them.") (hereinafter "Jury Plan").  That is, the undersigned proposed that the parties simply return "[*a*]*ll* electronic and paper copies of the jury list and completed questionnaires" to the Court.  *See* Ex. C, Proposed Protective Order at 1 ¶ 1.  Defense counsel indicated that they object to this proposed change because it does not improve the *Wilson* Order, which they would consent to.  *See* Ex. A at 1, 3.

Second, the *Wilson* Order directs that "[t]he jury list and completed questionnaires may only be disclosed to individuals who have a need to view the information for purposes of jury selection."  *Wilson* Order at 1 ¶ 2.  The Proposed Protective Order clarifies that "[t]he jury list and completed questionnaires may only be disclosed to the parties and their litigation-related staff."  In the government's view, this language is broad enough to ensure that members of the defense team and their staff—including any jury consultant Mr. Gerace might hire—has access to the juror list and any juror questionnaire, while correcting the ambiguity attendant to the *Wilson* Order's "need to view" clause.  *Wilson* Order at 1 ¶ 2 ("The jury list and completed questionnaires may only be disclosed to individuals who have a *need to view* the information for purposes of jury selection." (emphasis added)).  Defense counsel indicated

2

that they object to this proposed change because it does not improve Chief Judge Wolford's order. *See* Ex. A at 1.

Third, the *Wilson* Order proscribed the disclosure, showing, or distribution in "any manner" of "[t]he documents" to "third parties." *See Wilson* Order at 1–2 ¶ 2; *see id.* ("The documents may not be disclosed, shown, or distributed in any manner to third parties."). To make explicit that the Protective Order also proscribes the disclosure of the documents' *content*, the Proposed Protective Order reads as follows: "Neither the documents nor their content may be disclosed, shown, or distributed in any manner—written, oral, or other—to third parties." Proposed Protective Order at 1–2 ¶ 2.

In asking defense counsel to help the undersigned understand their objection to this modification, the undersigned inquired whether it would really be the defense's position that, under the *Wilson* Order, "parties could disclose the *content* of the forms to third parties?" Ex. A at 1–3. In response, defense counsel indicated that they object to the proposed modification because it does not improve the *Wilson* Order. *See id.* at 1.

Fourth, the government proposed a substantive addition to the *Wilson* Order: that no party be "permitted to conduct an extra-judicial interview of either a prospective juror or a prospective juror's family member, friend, or colleague." Proposed Protective Order at 2. Such extra-judicial contact does not serve a legitimate function and can hinder the parties' and the Court's ability to impanel a fair and impartial jury. Prohibiting such extra-judicial investigation of prospective jurors, by contrast, promotes the objectives of the *Wilson* Order by preventing the dissemination of juror information to third parties and reducing opportunities to destroy the jury's impartiality. Defense counsel objected to this modification because, in their view, it "does not have anything to do with the handling of juror

questionnaires[,] . . . instead seeks to expand the content of the order to include other existing rules/restrictions related to jury trials and juror communication[,] . . . . [and] will create the impression that it encompasses all prohibited conduct associated with jury information/communication."  Ex. A at 1.

Though no such protective order was sought in either *Bongiovanni I* or *Bongiovanni II*, experience encourages—not forecloses—adaptation.  The following facts speak to the need for a clear protective order devoid of ambiguity:

> 1.  In both *Bongiovanni* trials, numerous prospective jurors expressed concern for their safety;
>
> 2.  Throughout *Bongiovanni II*, a juror from *Bongiovanni I* has been in repeated contact with the defendant's family;
>
> 3.  Mr. Gerace is a different defendant and has stronger connections to criminal enterprises like the Outlaws Motorcycle Club which claims, as either a member or close associate, a paralegal who closely monitors publicly available legal filings on cases, such as this one, that are of interest to the Outlaws Motorcycle Club;
>
> 4.  Mr. Gerace's private investigator conducted an unauthorized post-verdict interview of a juror in *United States v. Hicks*, a case related to Roderick Arrington's prosecution.  Mr. Hicks then used the content of that interview as the basis for a recusal motion targeting Judge Arcara; and
>
> 5.  The government has growing safety concerns for some of the participants in this trial.

## II.   LEGAL FRAMEWORK

Generally, protective orders are governed by Federal Rule of Criminal Procedure 16, which "grants district courts the discretion to establish conditions 'under which the defense may obtain access to discoverable information.'"  *United States v. Smith*, 985 F. Supp.2d 506, 522 (S.D.N.Y. 2013) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 122 (2d Cir. 2008)).  Specifically, Rule 16(d)(1) provides that a court may, "for good cause,

deny, restrict or defer discovery or inspection, or grant other appropriate relief." This good cause standard applies "even where parties consent to a stipulated protective order." *Smith*, 985 F. Supp.2d at 523 (internal quotation omitted).

The Western District of New York's Jury Plan, however, offers grants district judges additional authority to govern the access to, and distribution of, juror information. Per the Jury Plan, the "[n]ames and personal information concerning persons who have been entered in the jury wheel shall not be disclosed, *except upon order of the Court*." *Id.* at 8 (emphasis added). Moreover, the Jury Plan provides that "[t]he Court may order juror names and personal information to be kept confidential where the interests of justice so require." *Id.* at 9.

## III.   ARGUMENT

The interests of justice require a clear protective order devoid of ambiguity. To that end, the Proposed Protective Order's four minor modifications to the *Wilson* Order reflect small—but important—steps the parties can take to ensure the safe, secure handling of juror information; protect juror privacy; reduce the risk of inadvertently destroying juror impartiality; and promote honest disclosures of information from prospective jurors. As such, the Court should enter the Proposed Protective Order.

### A.   *Juror information should be returned to the Court after the jury has been impaneled.*

The government's first proposal is that the parties be ordered to return "[a]ll electronic and paper copies of the jury list and completed questionnaires to the Court after the jury has been impaneled," and excise the *Wilson* Order's certification procedure. This rule promotes the orderly and secure handling of juror lists and questionnaires because such documents will have to be returned the Court after the jury is impaneled. At the same time, it obviates the

need for counsel to certify that they have not retained in any duplicative form of the jury list or juror questionnaires. If "[a]ll electronic and paper copies of the jury list and completed questionnaires [have been] returned to the Court after the jury has been impaneled," then no party can be said to retain copies of the jury list or questionnaires. And, finally, it adheres closely to the language in the Jury Plan, which states that "[f]ollowing jury selection, the attorneys (or party) provided the jury list must return to the clerk the jury list and any copies made from the jury list provided to them and/or destroy them." Jury Plan at 9.

Though the undersigned asked, defense counsel did not explain their objection to this rule, beyond stating that they did not think it improved the *Wilson* Order. Accordingly, the government does not know whether, and how, the proposed modification would interfere in the defense's utilization of the juror questionnaires. Should the defense provide some explanation for their objection beyond what has been shared, the government reserves the right to re-evaluate its position on this modification.

> B.  *Only the parties and their staff in this litigation should have access to the juror questionnaires and jury list.*

The next proposed modification is more substantive. As noted *infra*, the *Wilson* Order states that, "[t]he jury list and completed questionnaires may only be disclosed to individuals who have a *need to view* the information for purposes of jury selection." *Wilson* Order at 1 (emphasis added). But what constitutes a "need to view"—and, more critically, *who* can claim a "need to view"—is sufficiently ambiguous that the Court should restrict access to juror questionnaires to the parties and the litigation-related staff they employ.

The following hypothetical illustrates the ambiguity: a defendant thinks that he should disclose the identities and private details of certain jurors to a close confidante in the hopes that she will help him learn more about the people who may sit on his jury. The confidante,

unfamiliar with the rules and norms that constrain the parties during jury selection, reaches out to the prospective juror's employer, who then informs the prospective juror that one of the defendant's friends contacted him about the juror.

May the confidante—despite being a third party to whom the parties may not "disclose, show, or distribute" juror information—receive the same information if the defendant enlists her help during the jury selection process?  That is, does she have a "need to view the information" even though the parties would otherwise be prohibited from disclosing the jury list and juror questionnaires to her?

Consistent with the *Wilson* Order's purpose, the only individuals with a "need to view" the jury list and questionnaires are the parties and the staff they employ during the jury selection process.[1]  Otherwise, a loophole exists, and non-staff, third parties without proper training and oversight could access private juror information so long as they had a colorable "need to view" it.  To close this loophole, the government proposes the following language: "[t]he jury list and completed questionnaires may only be disclosed to the parties and their litigation-related staff."

The defense offers no specific objection to this language beyond baldly stating that it does not improve the *Wilson* order.  But it is difficult to understand how the Order is not improved by ensuring that its "need to view" coheres with—not works against—its "no third parties" provision.  And it is equally puzzling why both parties would not welcome the opportunity to eliminate ambiguity over the handling of some our judicial system's most sensitive information—*i.e.*, that of private citizens discharging a sacred public duty.   Other

---

[1]      As the undersigned made clear in her correspondence with the defense, this language would encompass jury consultants Mr. Gerace might employ to assist him in the jury selection process.

courts have adopted similar language, seemingly without controversy with from any party. *See, e.g.*, *United States v. Bundy*, No. 216CR00046GMNPAL, 2018 WL 5266838, at *4 (D. Nev. Oct. 22, 2018) (noting that the protective order applicable to juror information prohibited "the parties and members of their litigations teams from disclosing the names and personally-identifying information of potential jurors and trial jurors outside of their litigation teams"). This Court should do the same.

>    C.    *The Court should clarify that the parties cannot disclose the content of any juror questionnaires to third parties.*

The Court should also clarify that the parties may not disclose the content of any jury list or juror questionnaire to third parties. As noted above, the *Wilson* Order proscribes the disclosure, showing, or distribution in "any manner" of "[t]he *documents*" to "third parties." *See Wilson* Order at 1–2 ¶ 2 (emphasis added); *see id.* ("The documents may not be disclosed, shown, or distributed in any manner to third parties."). Plainly, disclosing the *documents* via fax, mail, bike messenger, photograph, video, or any other manner is strictly prohibited.

But what about providing summaries of the document's *content* to third parties? Read literally, it is unclear if the protective reach of the *Wilson* Order's "any manner" provision extends past the document, itself, and to the document's content. Though the government thinks that any argument justifying the disclosure of such summaries would be unpersuasive,[2] its proposed language would conclusively prohibit such communications: "Neither the documents nor their content may be disclosed, shown, or distributed in any manner—written, oral, or other—to third parties."

---

[2]    After all, courts, like Congress, do not hid elephants in mouseholes. *Cf. Gallina v. Wilkinson*, 988 F.3d 137, 146 (2d Cir. 2021) ("[O]ur interpretive exercise strongly disfavors finding elephants in mouseholes.").

The defense objects to this language. When asked if it was their position that the *Wilson* Order permitted the disclosure of the questionnaires' content to third parties, the defense did not response. Instead, the defense stated that the government's proposed language did not improve the *Wilson* Order. *See* Ex. A at 1. Yet, the defense's unwillingness to state that the *Wilson* Order already prohibits the disclosure of questionnaire content is precisely why clearer language would benefit the protective order. There should be no textual foothold for a party to defend the disclosure of the questionnaire's content to third parties. Accordingly, the Court should make clear what the defense will not: neither the documents nor their content may be disclosed to third parties.

   D.   *The parties should be prohibited from conducting extra-judicial interviews of either a prospective juror or a prospective juror's family members, friends, or colleagues.*

Lastly, the Court should prohibit the parties from conducting extra-judicial interviews of either a prospective juror or her family members, friends, or colleagues. This language, which does not exist in the *Wilson* Order, will set clear guardrails for the parties as they engage in the jury selection process. Accordingly, though the defense objects on grounds that the proposal does not strictly relate to the handling of juror-related documents, it should be welcomed by the Court.

In fact, as other courts have discovered, where parties interview prospective jurors or those who know them, trouble follows. For example, in *United States v. White*, the court had to impanel a new jury venire after a defense investigator interviewed the neighbors of nine prospective jurors. 78 F. Supp. 2d 1025, 1026 (D.S.D. 1999). Though there was no evidence that the defense intimidated any prospective juror, the court concluded that the investigation had "the reasonable tendency . . .to intimidate at least some of the jurors who learn about the investigation." *Id.* at 1027 (internal quotations omitted).

Other courts have found much the same. In *Kiernan v. Van Schaik*, the Third Circuit rejected the proposition that private investigators should be permitted to conduct extra-judicial interviews of jurors, reasoning that "[t]he impartiality of jurors should be tested under the control of the court rather than by the unsupervised activity of investigators with all the undesirable possibilities of intimidation and jury tampering which such surveillance inevitably presents." 347 F.2d 775, 780 (3d Cir. 1965); *see also United States v. Tashjian*, 660 F.2d 829, 835 (1st Cir. 1981) (noting that the government's interview of third parties associated with prospective juror was "improper"). Even the Supreme Court has recognized that a juror's "mere suspicion that he, his family, and friends are being subjected to surveillance by [investigators] is enough to destroy the equilibrium of the average juror and render impossible the exercise of calm judgment upon patient consideration." *Sinclair v. United States*, 249 U.S. 749, 765 (1929).

Perhaps the defense will argue that proscribing such extra-judicial interviews of individuals connected to prospective jurors is unnecessary in a protective order related to juror questionnaires. But this overlooks the fact that Mr. Gerace's (at least) one-time private investigator violated the Second Circuit's prohibition against unauthorized, extra-judicial interviews of jurors in *United States v. Hicks*, 1:15-CR-33 (RJA). *See* Def.'s Mot. for Relief Under R. 60(b) & R. 59(a), at 2, ECF No. 1021, (dated Aug. 14, 2023) ("Since the conclusion of the second trial, the defendant hired a private investigator, Paul H. Lawrence . . . . Through Mr. Lawrence's investigation," which included unauthorized interviews of two jurors, "the Defendant has learned about numerous improprieties during the criminal trials."). Moreover, though sacrificing efficiency, the objection can be resolved by entering a separate protective order prohibiting just the extrajudicial interviews of prospective jurors and the family

members, friends, and colleagues of prospective jurors.  As a substantive matter, however, there is no reason why the Court should not prohibit both parties from performing investigative tactics that imperil the fairness and impartiality of the defendant's jury, especially when someone employed or previously employed by Mr. Gerace has already violated Second Circuit rules.

## IV.   CONCLUSION

The government respectfully requests that the Court enter its Proposed Protective Order.

DATED:  Buffalo, New York, October 6, 2024.

TRINI E. ROSS
United States Attorney

BY:        s/CASEY L. CHALBECK
           Assistant United States Attorney
           Western District of New York
           138 Delaware Avenue
           Buffalo, New York 14202
           716-843-5881
           Casey.Chalbeck@usdoj.gov

# Exhibit A

| | |
|---|---|
| **From:** | Mark Foti |
| **To:** | CHALBECK, CASEY (USANYW) |
| **Cc:** | Eric Soehnlein; Tripi, Joseph (USANYW); Cooper, Nicholas (USANYW); Higgins, Caitlin (USANYW); Champoux, Karen (USANYW); Harf, Elizabeth (USANYW) |
| **Subject:** | Re: [EXTERNAL] Re: Proposed Protective Order re: Jury Information [Gerace] [19-CR-227; 23-CR-37] |
| **Date:** | Friday, October 4, 2024 10:34:00 AM |

Hi Casey,

I appreciate that you wanted to resolve this without litigation. Honestly, we do not feel the order is actually necessary at all (as far as we know, you didn't ask for one in either of the Bongiovanni trials), but in order to conserve judicial resources, we were willing to agree to Judge Wolford's order without litigation because in principle, we understand that it accomplishes an appropriate objective of governing the handling of juror questionnaires and setting restrictions regarding those materials.

We do not feel your proposed changes improve Judge Wolford's order. Particularly because your "most substantive proposed change" does not have anything to do with the handling of juror questionnaires and instead seeks to expand the content of the order to include other existing rules/restrictions related to jury trials and juror communication.

If you feel your proposed amendments improve on Judge Wolford's order in a way that is worth litigating, you're obviously welcome to file the motion, and we'll respond further at that time, but I think you're advocating for an order that creates more problems than it solves. Specifically, I think your proposed order will create the impression that it encompasses all prohibited conduct associated with jury information/communication, and I don't think it's intended to serve that purpose (but I suppose I could be wrong).

Mark


Mark A. Foti
The Foti Law Firm, P.C.
16 W Main Street, Suite 100
Rochester, NY 14614
Office: (585) 461-1999
Fax: (585) 491-6512

Disclaimer: The information in this e-mail and any attachment is confidential. If you receive this e-mail in error, any distribution/copying/use of this communication or the information it contains is prohibited. Please notify me immediately by e-mail and delete the message from your computer.


On Wed, Oct 2, 2024 at 7:38 PM CHALBECK, CASEY (USANYW)
<CASEY.CHALBECK@usdoj.gov> wrote:

> Hi Mark,

Thank you for your email.  I was hoping that we could resolve this without litigation, though I will get started on preparing a motion.  That said, I want to make a good-faith effort to understand your objections in the event we can work through them.  The changes in the proposed (modified) protective order are as follows:

1. I deleted the clause stating that counsel must certify that all copies of jury questionnaires and lists have been destroyed and, instead, proposed that we just return the material to the Court.  We were thinking that this would be both easier than going through some sort of certification process and more responsive to the information security concerns that this particular provision addresses.  Can you help me understand why you object to this proposed change?

2. I proposed that the jury list and completed questionnaires may only be disclosed to members of the defense team and the defendant.  (Please note that this proposal should also read that the questionnaires may be disclosed to the prosecution team.)  I was thinking that this language is broad enough to encompass a jury consulting team that Mr. Gerace, like Mr. Bongiovanni, might hire, and thus would not impede the operations of the defense team.  Can you help me understand why you object to this proposed change?

3. I proposed that neither the documents nor their content could be disclosed to third parties in oral, written, or other form.  I thought that this language was clearer than the original language: "The documents may not be disclosed, shown, or distributed in any manner to third parties."  And I didn't think that this would be an objectionable proposal.  Would it really be the defense's position that, under Chief Judge Wolford's order, parties could disclose the *content* of the forms to third parties?

4. Perhaps the most substantive proposed change is the following: "no party is permitted to conduct an extra-judicial interview of either a prospective juror or a prospective juror's family member, friend, or colleague."  I'm pretty sure that this conduct is already prohibited under Second Circuit caselaw.  Moreover, the provision would bind the government as much as the defense.  Can you help me understand your objection?  Is there alternative language you'd like to propose?

5. My fifth proposed change is a minor and non-substantive.  Please advise as to why you object to syntactical modification.

Please let me know your thoughts.  For your own timeline, please note that I plan to file a motion by the end of the week unless we can resolve this by consent.

Respectfully,


Casey

---

**From:** Mark Foti <mark@fotilaw.com>
**Sent:** Wednesday, October 2, 2024 3:40 PM
**To:** CHALBECK, CASEY (USANYW) <CCHALBECK@usa.doj.gov>
**Cc:** Eric Soehnlein <eric@soehnleinlaw.com>; Tripi, Joseph (USANYW) <JTripi@usa.doj.gov>; Cooper, Nicholas (USANYW) <NCooper@usa.doj.gov>; Higgins, Caitlin (USANYW) <CHiggins@usa.doj.gov>; Champoux, Karen (USANYW) <KChampoux@usa.doj.gov>; Harf, Elizabeth (USANYW) <EHarf@usa.doj.gov>
**Subject:** [EXTERNAL] Re: Proposed Protective Order re: Jury Information [Gerace] [19-CR-227; 23-CR-37]


Hi Casey et al,


We would not object to the protective order issued in the Deandre Wilson case with Peter Gerace substituted for the defendant's name. We object to any version of the order that has been modified other than the case captioning and defendant's name.


Mark A. Foti

The Foti Law Firm, P.C.

16 W Main Street, Suite 100

Rochester, NY 14614

Office: (585) 461-1999

Fax: (585) 491-6512


Disclaimer: The information in this e-mail and any attachment is confidential. If you receive this e-mail in error, any distribution/copying/use of this communication or the information it contains is prohibited. Please notify me immediately by e-mail and delete the message from your computer.

On Sun, Sep 29, 2024 at 7:02 PM CHALBECK, CASEY (USANYW)
<CASEY.CHALBECK@usdoj.gov> wrote:

Dear Mark and Eric:


I hope this email finds you well.  As you know, we will collectively be using juror
questionnaires in the upcoming trial.  To protect the jurors' privacy, we were thinking that
it would be a good idea to have a protective order in place regarding the access to, and
handling of, juror information.  My understanding is that such orders are not without
precedent in our district, and that Chief Judge Wolford routinely issues them when using
juror questionnaires.  I've attached one of her orders from the *Wilson* trial as an example.


Building off the *Wilson* order, we've drafted the attached proposed order for the *Gerace*
case.  To assist your evaluation of our proposal, I've done my best to indicate which parts
of Chief Judge Wolford's *Wilson* order I've deleted or modified.


Please let me know if we can notify the Court that our proposal can be entered by
consent.  If not, please let me know what changes you think should be made.  On that
score, though we're more than happy to work with you, I'd like to get to this resolved
soon so that we have enough time to litigate this, if necessary.


Respectfully,


Casey L. Chalbeck

Assistant United States Attorney

Narcotics & Organized Crime Section

U.S. Attorney's Office/WDNY

138 Delaware Avenue

Buffalo, New York 14202

716.843.5881

Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DEANDRE WILSON,

              Defendant.

**PROTECTIVE ORDER**

1:19-CR-00155 EAW

---

In connection with the upcoming trial in this matter, the Court is requesting prospective jurors to complete questionnaires that will be distributed to counsel and the parties to assist with the jury selection in this matter. In addition, counsel and the parties will be provided with lists of the prospective jurors summoned for the trial. This information may only be used in connection with jury selection in this case. All electronic and paper copies of the jury list and completed questionnaires must either be returned to the Court after the jury has been impaneled or counsel must certify that all such copies have been destroyed and that no jury lists or completed questionnaires have been retained in any duplicative form. The Court will maintain a record copy of all questionnaires.

If any party becomes aware of information suggesting that a prospective juror is disqualified from jury service pursuant to 28 U.S.C. § 1865(b)(1)-(5), that party must immediately bring that information to the attention of the Court.

The jury list and completed questionnaires may only be disclosed to individuals who have a need to view the information for purposes of jury selection. The documents may

- 1 -

not be disclosed, shown, or distributed in any manner to third parties. All parties are reminded that the District's Jury Plan specifically prohibits the disclosure of the names and personal information of prospective and sitting petit jurors.

The defendant Deandre Wilson is permitted to review the jury information referenced herein, including the completed questionnaires, in the presence of his counsel in order to assist with jury selection, but at no time shall he possess the information outside the presence of his counsel. The questionnaire responses may not be carried into or reviewed in any jail facility. Defense counsel are only permitted to review the information with their client at the United States Courthouse, either in the courtroom or in the United States Marshal's space at the courthouse.

Any attorney who obtains access to the jury list and completed questionnaires consistent with the terms of this Protective Order is personally responsible for not only his or her compliance with this Protective Order, but also the compliance of any other individual who is shown the information consistent with the terms of this Protective Order, including in the case of defense counsel the Defendant Deandre Wilson.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       August 30, 2022
             Rochester, New York

- 2 -

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA

        v.                                        19-CR-227-LJV
                                                    23-CR-37-LJV

PETER GERACE, JR.,

           Defendant.

───────────────────────────────

## **PROTECTIVE ORDER**

In connection with the upcoming trial in this matter, the Court is requesting prospective jurors to complete questionnaires that will be distributed to counsel and the parties to assist with the jury selection in this matter. In addition, counsel and the parties will be provided with lists of the prospective jurors summoned for the trial. This information may only be used in connection with jury selection in this case. All electronic and paper copies of the jury list and completed questionnaires must be returned to the Court after the jury has been impaneled ~~or counsel must certify that all such copies have been destroyed and that no jury lists or completed questionnaires have been retained in any duplicative form~~. The Court will maintain a record copy of all questionnaires. If any party becomes aware of information suggesting that a prospective juror is disqualified from jury service pursuant to 28 U.S.C. § 1865(b)(1)-(5), that party must immediately bring that information to the attention of the Court.

The jury list and completed questionnaires may only be disclosed to the parties and their litigation-related staff. Neither the documents nor their content may be disclosed, shown, or distributed in any manner—written, oral, or other—to third parties.  All parties are reminded that the District's Jury Plan specifically prohibits the disclosure of the names and personal information

of prospective and sitting petit jurors.  <span style="color:red">Moreover, no party is permitted to conduct an extra-judicial interview of either a prospective juror or a prospective juror's family member, friend, or colleague.</span>

The defendant, Peter Gerace, Jr., is permitted to review the jury information referenced herein, including the completed questionnaires, in the presence of his counsel in order to assist with jury selection, but at no time shall he possess the information outside the presence of his counsel.  The questionnaire responses may not be carried into or reviewed in any jail facility. Defense counsel are only permitted to review the information with their client at the United States Courthouse, either in the courtroom or in the United States Marshal's space at the courthouse.

Any attorney who obtains access to the jury list and completed questionnaires consistent with the terms of this Protective Order is personally responsible for not only his or her compliance with this Protective Order, but also the compliance of any other individual who is shown the information consistent with the terms of this Protective Order, including, in the case of defense counsel, to defendant Peter Gerace, Jr.

SO ORDERED.