UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                        **MEMORANDUM OF LAW**

                                                          Case No.: 19-CR-227

JOSEPH BONGIOVANNI,

PETER GERACE, JR.,

Defendants.

_____

UNITED STATES OF AMERICA,

v.

PETER GERACE, JR.,                                        Case No.: 23-CR-37


_____

### MEMORANDUM REGARDING POTENTIAL JURY INSTRUCTIONS

Peter Gerace, Jr., by and through counsel (Mark A. Foti, Esq. and Eric M. Soehnlein, Esq.) provides the following memorandum requesting: (1) that the Court include a Buyer-Seller exception instruction to the Narcotics Conspiracy count; and (2) that the Court include a charge instructing the jury of the difference between a bribe and a gratuity in accord to the Supreme Court's recent decision in *Snyder v. United States*.

## I.    The Buyer-Seller Exception

Under the buyer-seller exception, the "mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). This exception to conspiracy liability ensures that defendants who purchase or sell controlled substances only for personal use do not face the "more severe punishments resulting from liability for conspiracy to distribute" narcotics. *United States v. Dove*, 884 F.3d 138, 151 (2d Cir. 2018).

"[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'" *United States v. Parker*, 554 F.3d 230, 235 (2d Cir. 2009) (internal alterations omitted) (quoting *United States v. Wexler*, 522 F.3d 194, 208 (2d Cir. 2008)).

As the Court knows, in considering whether a buyer and seller are co-conspirators, the jury may consider a number of factors, including the length of time the buyer affiliated with the seller, whether there was a common goal among the parties to advance the conspiracy's interests, whether there was an agreement or understanding to redistribute drugs, the established method of payment, the extent to which the transactions were standardized, the quantities of drugs involved, and whether there was mutual trust between the buyer and seller.  In Mr. Gerace's case, there is proof as to

each of the above-mentioned factors that could lead a jury to conclude that Mr. Gerace's drug use was personal and not part of a conspiracy with any party.

For instance, with regard to Jessica Leyland, the defense believes the testimony at trial has demonstrated:

- that Leyland and Gerace did not share a common goal, insomuch as Leyland's drug sales were financially and physically independent from Gerace and occurred both inside and outside of PGC;

- that Leyland and Gerace did not share a common goal, insomuch as Leyland's drug sales in proximity to PGC occurred at points in time when Mr. Gerace did not control PGC;

- that Leyland and Gerace did not have a common agreement to redistribute drugs, since the testimony of their drug transactions involved personal use quantities that were allegedly used by Gerace or Gerace and Leyland together;

- that Leyland and Gerace did not have an established method of payment, as the transactions ranged in price at various points in time and there is no evidence of an organized or systematic financial link between Leyland and Gerace;

- that Leyland and Gerace did not have standardized or regular transactions but rather that their drug interactions were sporadic and consistent with recreational use; and

- that Leyland and Gerace dealt in small, personal use quantities.

The same analysis applies to Mr. Gerace's alleged relationship with Marcus Black.  The defense believes the testimony at trial has demonstrated:

- that Black and Gerace did not have a common understanding regarding the redistribution of drugs and that there is no evidence Gerace participated in or even was aware of the scope of Black's drug dealing;

- that Black and Gerace did not have an established method of payment;

- that transactions between Black and Gerace were not standardized;

- that Black's unlawful drug-dealing activity existed wholly independent and distinct from Mr. Gerace and PGC; and

- that the quantities of drugs involved in transactions involving Black and Gerace were small, personal use quantities.

Stated more generally, the defense believes there is proof that Gerace used recreational quantities of cocaine and that he did so without any conspiratorial agreement with others.

With regard to PGC, the defense also believes the proof demonstrates that Gerace and others at club undertook steps to mitigate and/or prevent drug use/sales and that narcotic use/sales at the club were done clandestinely and without the permission or acquiescence of Gerace. That was demonstrated most recently in the testimony yesterday afternoon, where a former exotic dancer testified she was terminated several times for drug use, including as the result of having her locker searched where the search revealed narcotics. In that vein, the defense also believes the government's witnesses to narcotic transactions linked to Mr. Gerace inside of PGC were not credible. As a result, there is a scenario where the jurors disbelieve witnesses that testify to

narcotic distribution at PGC involving Mr. Gerace, but where they do believe that Mr. Gerace used cocaine on a regular but recreational basis.

Based on the proof at trial, we believe the jurors should be instructed on the buyer-seller exception so they can be aware of the relevant law and carefully weigh the appropriate factors.

## II.    The Court Should Give and Instruction on the Difference Between a Bribe and a Gratuity

The Supreme Court recently decided *Snyder v. United States*, No. 23-108, —S. Ct.—, 2024 WL 3165518 (U.S. June 26, 2024). Snyder addressed the applicability of 18 U.S.C. § 666 to state and local officials insofar as whether that statute criminalized gratuities (as opposed to just bribes).

The opinion contains relevant discussion about 18 U.S.C. § 201(b) and the legal distinction between bribes and gratuities. As the Supreme Court explained:

> Federal . . . law distinguish[es] between two kinds of payments to public officials—bribes and gratuities. As a general matter, bribes are payments made or agreed to before an official act in order to influence the official with respect to that future official act. American law generally treats bribes as inherently corrupt and unlawful . . . Gratuities are typically payments made to an official after an official act as a token of appreciation. *Snyder,* 2024 WL 3165518, at *3 (emphasis in original).

As the Court knows, the Supreme Court's *Snyder* decision was part of the legal authority supporting the Court's Decision and Order granting Mr. Bongiovanni's

Motion for Acquittal of the Bribery charge (Dkt.# 1077). In the defense's view, the government has presented nearly identical proof as to this charge at Mr. Gerace's trial. Without question, most of the government's presentation of proof in this regard was focused on the 2009 time frame, and the government's proof of payments comes from the testimony of Katrina Nigro, who testified the payments occurred sometime in the 2015 timeframe.

Accordingly, Mr. Gerace respectfully requests that the following language be added to the charge in Count 2, Element 1 – Offering a Thing of Value in the current draft jury instructions:

> For the purposes of this Count, federal law makes a distinction between bribery and gratuities. Bribes are payments made or agreed to before an official act in order to influence the official with respect to that future official act. American law generally treats bribes as inherently corrupt and unlawful. To be a bribe, a payment requires that the official have a corrupt state of mind and accept (or agree to accept) the payment intending to be influenced in the official act.

> In contrast, gratuities are payments made to an official after an official act as a token of appreciation. This statute does not make it a crime for state and local officials to accept gratuities that may be given as a token of appreciation after the official act.

We respectfully request the Court include the above language, or similar language, in the Jury Instructions to ensure the jury is fully informed of the law when entering deliberations.

DATED:      December 17, 2024

<u>s/ Mark A. Foti, Esq.</u>

Mark A. Foti, Esq.
**The Foti Law Firm, P.C.**
16 W Main Street, Suite 100
Rochester, NY 14614
(585) 461-1999
(585) 491-6512

<u> s/ Eric M. Soehnlein, Esq.</u>

Eric M. Soehnlein, Esq.
**Soehnlein Law, PLLC**
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 771-9092