

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

---

*Federal Center*                        *716/843-5700*
*138 Delaware Avenue*             *fax 716/551-3052*
*Buffalo, New York  14202*    *Writer's Telephone:  716/843-5881*
                                         *Writer's fax:   716/551-3052*
                                          *Casey.Chalbeck@usdoj.gov*

February 21, 2025

**VIA PACER**
Hon. Lawrence J. Vilardo
United States District Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

         Re:    *United States of America v. Peter Gerace, Jr.*,
                   **Case Numbers: 19-CR-227-LJV; 23-CR-37-LJV**

Dear Judge Vilardo:

      The government offers the following letter in support of its motion for a gag order. *See* Mot. for a Gag Order at 12–14, ECF No. 1442, (dated Feb. 3, 2025) (seeking an order coextensive with the U.S. Marshals Service policies governing prisoner interviews). In his response brief, Mr. Gerace avers that "[t]he government's proposed gag order has no basis in the facts of this case nor in the law." Gerace Reply Br. at 7, ECF No. 1444, (dated Feb. 18, 2025). This conclusion fails for three reasons.

      *First*, it is inconsistent with Mr. Gerace's concession that, "[a]s an inmate in the custody of the [U.S. Marshals Service]," he "must abide by USMS policies". *Id.* If, as Mr. Gerace acknowledges, he is already subject to the USMS interviewing policy, then the judicial codification of that policy does not further burden Mr. Gerace's First Amendment rights. Court-ordered compliance with existent policies would, however, cure the state detention facility's apparent concern that federal inmates housed within its walls are somehow exempted from federal regulation. *See* Mot. for a Gag Order at 2, 17–18 (discussing the local facility's intention "to give Gerace virtually unrestricted access to the news media" in derogation of federalism principles and USMS policy). Rather than address the government's legal argument regarding the supremacy of federal law and policy, Mr. Gerace simply pretends that the federalism conflict he seeks to exploit does not exist. This Court should not let him.

      *Second*, the government's motion *is* premised on the facts: Mr. Gerace has access to protected materials; already shared sealed information with the media; previously initiated correspondence with news outlets; appears aware that there is a policy requiring preclearance

for interviews; and, despite all that, insisted to jail staff that the rules requiring judicial and executive branch approval simply do not apply to him because of a "conflict of interest" that he does not deign to defend in his papers. *See id.* at 8. Indeed, far from being the product of its own speculation, the government's motions come in direct response to Mr. Gerace's coordination with a media outlet to conduct an interview in apparent disregard for federal law regulating that conduct.

*Third*, and in a similar vein, Mr. Gerace's opposition misapprehends the nature of, and need for, the proposed gag order. Mr. Gerace hypothesizes, for instance, that "[i]n the event the policy was being implemented unfairly or improperly . . ., it would give rise to a challenge by Gerace or the media outlet." Resp. in. Opp., at 4. But this hypothetical ignores the actual problem: the policy cannot be implemented absent a Court order because Mr. Gerace feels emboldened to ignore it and exploit the tension between federal and state law governing media access to inmates. A gag order issued by a federal court codifying USMS policy in the context of the unique facts of this case, however, would enable state officials running the detention facility to direct either Mr. Gerace or the media outlet seeking to interview him to follow the USMS policy.

Finally, should Mr. Gerace proceed with an interview, a Special Agent from the Federal Bureau of Investigations intends to be present to ensure that, if Mr. Gerace does violate the Protective Order, the government can seek the "contempt or other sanctions" Mr. Gerace concedes are available. *Id.* at 2 n.1. Because the media is under no obligation to share the entirety of its discussions with Mr. Gerace with the government, the presence of an FBI agent is necessary to ensure that the government can avail itself of a remedy should Mr. Gerace violate the law.

            Very truly yours,

            JOEL LOUIS VIOLANTI
            Acting United States Attorney

       BY:  CASEY L. CHALBECK
            Assistant United States Attorney

CC: Mark Foti, Esq.
    Eric Soehnlein, Esq.
    Joseph M. Tripi, Esq.
    Nicholas T. Cooper, Esq.