IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                         19-CR-227
                                                                               23-CR-37

PETER GERACE, JR.

                         Defendant.

---

## GOVERNMENT'S MOTION FOR A SHOW CAUSE ORDER AS TO DEFENDANT PETER GERACE, JR. AND MOTION FOR HEARING BEFORE THE DISTRICT COURT

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby moves for a Show Cause order as to defendant Peter Gerace, Jr. and for a hearing before the district court.

### INTRODUCTION

Less than 48 hours after this Court ordered defendant Peter Gerace, Jr., "to abide by the United States Marshals Service ("USMS") Policy with respect to media interviews of Gerace," *see* Text Order, ECF No. 1454, (dated Mar. 13, 2025), Gerace orchestrated such a media interview by contacting a reporter from jail and giving an interview without obtaining the approvals required by this Court's order. As the Court noted in its order, "[p]risoner interview requests may only be approved upon the permission of the U.S. Attorney, the judge, the prisoner, the defense attorney and the management of the detention facility where the

prisoner is located." *Id.* Thus, Mr. Gerace flagrantly violated the Court's order when he gave an interview with The Buffalo News, which resulted in an article initially published on March 15, 2025. *See* Dan Herbeck, *In Call From Jail, Gerace Continues to Claim Prosecutors Wrongly Targeted Him*, THE BUFFALO NEWS, (dated Mar. 15, 2025) ("Ex. A").[1]

Mr. Gerace's contempt toward this Court's order is but the latest iteration of his longstanding aversion to complying with the rule of law. This Court should order Mr. Gerace to show cause for why he should not be held in contempt and schedule a hearing—requiring Mr. Gerace's presence—at the earliest opportunity.

## I.   Relevant Background

On January 8, 2025, the USMS contacted the U.S. Attorney's Office and advised that a media entity had reached out to the jail seeking to schedule an interview with defendant Gerace in the immediate future. The U.S. Attorney's Office moved for a temporary stay prohibiting, in sum and substance, Mr. Gerace from providing any interview with the news media in contravention of USMS policy. *See* Mot. for a Temp. Stay, ECF No. 1429, (dated Jan. 8, 2025). This Court issued a temporary stay that same day, *see* Order, ECF No. 1430, (dated Jan. 8, 2025), and subsequently extended its stay until further order, *see* Minute Entry, ECF No. 1437, (dated Jan. 21, 2025).

---

[1] On March 15, 2025, the reporter contacted the U.S. Attorney's Office and requested a comment from the office *after* he interviewed Mr. Gerace during a phone call, which Gerace initiated from jail. As a result, it is obvious that Gerace ignored the approval requirements set forth in the USMS policy and this Court's order.

The USMS media policy states:

> Prisoner interview requests may only be approved upon the permission of the U.S. Attorney, the judge, the prisoner, the defense attorney and the management of the detention facility where the prisoner is located. It is the responsibility of media representatives to obtain the required approvals, making sure that all parties indicate their approval to the U.S. marshal or chief deputy U.S. marshal in the district of the prisoner's court case. If the five permissions are obtained, the U.S. Marshals make a final determination, in which we consider security concerns, operational factors, etc.

USMS Policy Directives 1.3(D)(4)(f), at pg. 3, https://www.usmarshals.gov/sites/default/files/media/document/united-states-marshalsservice-policy-directives-management.pdf, (last accessed Mar. 15, 2025)

The government moved for a gag order coextensive with the USMS policy. *See* Mot. for Gag Order, ECF No. 1442, (dated Feb. 3, 2025); Ltr. Reply in Support of Mot. for gag Order, ECF No. 1445, (dated Feb. 21, 2025). On March 13, 2025, the Court ordered as follows:

> The government's motion is granted in that **this Court orders Gerace** and the Chautauqua County detention facility **to abide by the United States Marshals Service ("USMS") Policy with respect to media interviews of Gerace**. That policy states that "[p]risoner interview requests may only be approved upon the permission of the U.S. Attorney, the judge, the prisoner, the defense attorney and the management of the detention facility where the prisoner is located. It is the responsibility of media representatives to obtain the required approvals, making sure that all parties indicate their approval to the U.S. marshal or chief deputy U.S. marshal in the district of the prisoner's court case. If the five permissions are obtained, the U.S. Marshals make a final determination, in which we consider security concerns, operational factors, etc." Docket Item 1442 at 4. . . .

Text Order, ECF No. 1454, (dated Mar. 13, 2025) (emphasis added).

Not content with abiding by this Court's order, Mr. Gerace gave a 45 minute interview with The Buffalo News 48 hours later. *See* Ex. A.

## II. LEGAL FRAMEWORK

A district court judge has the power to hold an individual in criminal contempt and to impose corresponding fines. 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine . . . at its discretion, such contempt of its authority, [including] . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."). A federal court also has the power, in appropriate circumstances, to punish "summarily" for contempt. *See Harris v. United States*, 382 U.S. 162, 165 (1965); *Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*, 347 F.3d 36, 38 (2d Cir. 2003). To hold Mr. Gerace in criminal contempt, "the government had to prove beyond a reasonable doubt that: (1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful." *United States v. Cutler*, 58 F.3d 825, 834 (2d Cir. 1995).

When the contemptuous conduct occurs in the court's presence, a court may summarily hold the witness in criminal contempt without notice or trial. *See* 18 U.S.C. § 401; FED. R. CRIM. P. 42(b). Whether the court should avail itself of its summary authority is left to the court's discretion, but where time is not of the essence, the court should proceed under Rule 42(a) and provide notice and time for the witness to show cause for why he should not be held in contempt.

4

### III. ARGUMENT

The Court should order Mr. Gerace to show cause as to why he should not be held in criminal contempt. Three of the four criminal contempt elements are plainly satisfied here. First, the Court entered a "reasonably specific order" that Mr. Gerace was to comply with the USMS interviewing policy. *See* Text Order, ECF No. 1454 ("[T]his Court *orders Gerace . . . to abide by the [USMS] Policy* with respect to media interviews of Gerace." (emphasis added)). Second, Mr. Gerace violated that order: *he* initiated a phone call with The Buffalo News to give an interview Saturday, March 15, 2025; no one sought to obtain the requisite five approvals prior to Mr. Gerace's interview.[2] Third, because common sense dictates that prisoners do not accidentally initiate phone calls with the news media and give 45-minute-long interviews about their case, Mr. Gerace's violation of the Court's order was willful. Finally, though the government does not have direct evidence as of this writing that Mr. Gerace was informed of the Court's March 13th Order, he was on notice of the USMS policy and the Court's stay against media interviews in contravention of USMS policy, which ran from January 8, 2025, through this Court's adjudication of the government's motion for a gag order on March 13, 2025. *See* Minute Entry, ECF No. 1437, (dated Jan. 21, 2025). Indeed, the government is not aware of any interviews occurring during that period and, as the government explained in its motion for a gag order, the Warden of the Chautauqua County Jail advised the USMS that Mr. Gerace intentionally avoided seeking permission from the U.S. Attorney's Office and the Court for a media interview because: "Inmate states that the interview is in regards to the US Attorney and Presiding Judge so contacting them for

---

[2] As of this writing, the government does not have a copy of Mr. Gerace's call with The Buffalo News. If and when the government obtains the call, it will advise the Court as to whether Mr. Gerace advised The Buffalo News of the Court's order.

5

approval would be conflict of interest." *See* ECF No. 1442, at 8. Given that context, that Mr. Gerace gave an interview less than 48 hours after this Court ordered him to comply with the USMS policy is, at minimum, circumstantial evidence that Mr. Gerace had knowledge of the Court's order, and disregarded it anyway.

Lastly, the Court should schedule a hearing on Mr. Gerace's apparent disregard for the Court's orders—requiring Mr. Gerace's attendance—at its earliest opportunity.

### IV. CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court (1) issue an order to show cause and (2) schedule a hearing to discuss the government's motion to show cause.

DATED:   Buffalo, New York, March 17, 2025.

                                                  MICHAEL DIGIACOMO
                                                United States Attorney

BY:   s/ CASEY L. CHALBECK
      Assistant United States Attorney
      United States Attorney's Office
      Western District of New York
      138 Delaware Avenue
      Buffalo, New York 14202
      (716) 843-5881
      Casey.Chalbeck@usdoj.gov