UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                         **MEMORANDUM IN OPPOSITION**
                                                                           Case No.: 19-CR-227

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,
Defendants.

_____

UNITED STATES OF AMERICA,

v.

PETER GERACE, JR.,                                        Case No.: 23-CR-37


_____

      Peter Gerace, Jr., by and through counsel (Mark A. Foti, Esq. and Eric M. Soehnlein, Esq.), provides the following memorandum in opposition to the government's motion for a show cause order and motion for a hearing before the District Court to hold Mr. Gerace in contempt of the District Court's March 13, 2025 Order (Dkt.# 1457).

      Even viewing the record in a light most favorable to the government, the government's motion should be denied on submission of papers without need for a hearing.

I.   **Introduction**

The government wants the Court to hold Mr. Gerace in contempt of this Court's March 13, 2025 Order directing Mr. Gerace and the Chataqua County Jail to follow the policies of the United States Marshals Service (USMS) because Mr. Gerace gave a telephonic interview to a reporter from the Buffalo News on March 15, 2025.

The USMS policy at issue is limited to in-person, face-to-face, jailhouse interviews of presently incarcerated inmates. The defense noted that point throughout the underlying briefing. The government did not dispute or disagree with that view. That understanding is consistent with the plain language of the policy, the goals of the policy, the structure of the policy, and the relevant case law. The government does not – and cannot – point to any interpretation or authority to the contrary. Simply put, the government's argument lacks legal and factual authority. It should be rejected.

Because Mr. Gerace's conduct did not violate this Court's Order, he cannot be held in contempt for violating its content. The government's motion should be denied.

II.   **Relevant Facts**

The government's motion ignores critical details that are necessary to evaluate this issue.

On February 3, 2025, the government filed a motion for a gag order regarding Gerace's intent to give a jailhouse interview while in the custody of the USMS. Dkt.#

2

1442. The government's application was brought in contemplation of media's attempts to interview Mr. Gerace *at* the Chautauqua County Jail, a local facility where Mr. Gerace was being held. *Id*. at p. 5. To be clear, it was the parties' understanding that any potential interview was to occur in person while Mr. Gerace was housed at the local facility, and it was also the parties' understanding that the local facility indicated its willingness to allow the interview. *Id*. In support of its motion to prevent the in-person interview, the government cited USMS policy directives, specifically citing Directive 1.3 regarding USMS's responses to media inquiries and other public relations issues.

The stated purpose of Directive 1.3. is "the release of information, including photographs and video, by service employees to news outlets, authors, and television and film studios (hereafter referred to as media)," which is meant to provide "procedures for *media attendance* at court proceedings." *See* Directive 1.3(B) (italics for emphasis). The remaining subparts of the policy, which include directives for responses to media inquiries made to USMS employees, requests for ride-alongs, requests for access to jail facilities, release of prisoner information, release of juvenile justice information, photography of USMS personnel and directives for how to respond to media inquiries when the media wishes to use USMS facilities for entertainment media, are directed at USMS employees and their responsibilities to the media. Notably, most of the subparts contemplate the media's direct access to or physical presence at USMS facilities. No part of the directive is aimed at any inmate, nor does

any part of the directive attempt to restrict an inmate's communication with a specific person (be it family, friend, attorney, or reporter).

Section 1.3(D)(4) is the subsection entitled "Assisting the Media." That section provides directives to USMS employees to generally assist the media in the media's job of gathering "factual, public information." Section 1.3(D)(4)(a). Subsection 1.3(D)(4)(e), the subsection immediately preceding the subsection dealing with interview requests, provides direction to USMS employees when media wants to photograph or televise a defendant in USMS custody, including instruction about providing media access to USMS facilities.

Against that backdrop, the USMS policy says the following about prisoner interview requests:

> Prisoner interview requests may only be approved upon the permission of the U.S. Attorney, the judge, the prisoner, the defense attorney, and the management of the detention facility where the prisoner is located. It is the responsibility of media representatives to obtain the approval of the aforementioned, making sure that all parties indicate their approval to the USM or CDUSM, who may require written approval.

Simply put, the directive deals with media's interaction with USMS employees and the media's physical presence at USMS facilities. No part of the directive attempts to limit who inmates can speak with on the phone or correspond with via letter. It certainly does not seek to bar the content of any speech by an inmate.

4

In its motion, the government also cited case law in support of its request for a gag order.  With regard to media interviews of prisoners, and as was noted in the defense response to the government's motion, the cases cited by the government dealt with media being provided jailhouse access to inmates.  *See, e.g., Pell v. Procunier*, 417 U.S. 817 (1974) (upholding a restriction limiting media's face to face access with state inmates).

Mr. Gerace responded to the government's motion on February 18, 2025.  Dkt # 1444.  In the response, the Gerace defense team made clear it believed Mr. Gerace was bound by the USMS policy because he was in the custody of the USMS.  Mr. Gerace also made clear the defense view that the USMS policy only restricted the media's ability to have face to face, jailhouse contact with Mr. Gerace.  *See, e.g.*, Dkt. 1444 at p. 4 ("Here, the policies set forth by the U.S. Marshal require that, for an in-person interview, any news media must obtain "the permission of the U.S. Attorney, the judge, the prisoner, the defense attorney, and the management of the detention facility where the prisoner is located." USMS Policy Directive 1.3(D)(4)(f). It is the responsibility of the news media – and not the inmate – to obtain approval of the above-mentioned entities.").  Citing relevant case law, the response also acknowledged the USMS policy was likely a permissible restriction on Mr. Gerace's speech because there are alternative channels – written or oral communication – that remain available to Mr. Gerace to correspond with the media.  *Id*. at p. 3. ("The defense acknowledges -- restricting a prisoner's access to

5

face-to-face interviews with media outlets does not violate the First Amendment so long as there are alternative channels of communication open to inmates and the restriction operates in a neutral fashion without regard to the content of the expression.").

On February 21, 2025, the government replied in further support of its motion. Dkt. # 1445. While discussing the need for the local facility to be bound by the USMS policy, nowhere in the reply did the government dispute or contest Mr. Gerace's view that the USMS policy was limited to face-to-face jailhouse interviews.

On March 13, 2025, the Court issued its Order in this matter, which states:

> The government's motion is granted in that this Court orders Gerace and the Chautauqua County detention facility to abide by the United States Marshals Service ("USMS") Policy with respect to media interviews of Gerace. That policy states that "[p]risoner interview requests may only be approved upon the permission of the U.S. Attorney, the judge, the prisoner, the defense attorney and the management of the detention facility where the prisoner is located. It is the responsibility of media representatives to obtain the required approvals, making sure that all parties indicate their approval to the U.S. marshal or chief deputy U.S. marshal in the district of the prisoner's court case. If the five permissions are obtained, the U.S. Marshals make a final determination, in which we consider security concerns, operational factors, etc." Docket Item 1442 at 4. To the extent that the government seeks further relief than this Court's ordering Gerace and Chautauqua County to comply with the USMS policy, that request is denied.

Dkt. # 1454.

On March 15, 2025, Mr. Gerace had a telephonic conversation with a reporter from the Buffalo News.[1]

On March 17, 2025, the government brought the instant motion, asking this Court to hold a hearing and to hold Mr. Gerace in contempt of the Court's March 13, 2025 because of the telephonic interview. Dkt. # 1457. Again, the government's motion does not address the defense's view that the USMS policy is limited to in-person, jailhouse contact between an inmate and the media. And the government's motion does not provide any argument – be it factual or legal – to dispute that interpretation.

The Court should deny the government's motion.

### III. The Court Should Deny the Motion

A district court judge has the power to hold an individual in criminal contempt and to impose corresponding fines. 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine . . . at its discretion, such contempt of its authority,

---

[1] It should be noted that at least some members of the media, who closely followed this issue, also interpreted the Court's Order only to bar in-person interviews and not to bar telephonic or written communication. *See, e.g.*, "Prosecutors want Pharoh's strip club owner held in contempt for giving interviews," Telvok, Daniel, March 18, 2025, available at: Prosecutors want Pharoh's strip club owner held in contempt for giving interviews | News 4 Buffalo (noting that the government's argument was premised on in-person interviews with inmates, the defense's belief that the policy was limited to in-person interviews, and, apparently, Mr. Gerace's understanding that the policy and Court Order were limited to in-person interviews).

[including] . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.").

To hold Mr. Gerace in criminal contempt, the government must prove beyond a reasonable doubt that: (1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful." *United States v. Cutler*, 58 F.3d 825, 834 (2d Cir. 1995). Even examining the record in the light most favorable to the government, those elements are not present here.

The defense previously noted its understanding that the litigation on restrictions of Mr. Gerace's communication with the media was related to in-person, jailhouse interviews. The defense position finds support in the language of the USMS directive, the structure and purpose of the directive, and the case law. The government did not point to any contrary authority. The government did not even dispute the position that the bar on media communication was limited to in-person interviews prior to the Court's Order.

This Court crafted an Order based on the underlying litigation that directly addressed in-person interviews. The Court issued the Order and limited it to compliance with USMS policy while specifically noting that "To the extent that the government seeks further relief than this Court's ordering Gerace and Chautauqua County to comply with the USMS policy, that request is denied."

The defense does not believe Gerace's telephonic interview violated the Court Order because such communication is not prohibited or limited by the USMS policy. Even if the Court did intend to restrict all speech or communication with media, including telephonic or written communication, then the motion should still be denied, because a finding of contempt must still be based on "willful" disobedience of a "reasonably specific order" that is clearly understood by the defendant. Here, the record is clear: there is no willful violation of the Court's Order.

The defense does believe this Court's Order is reasonably specific, as it limits the restrictions to those that are addressed by the USMS policy, which the defense has previously identified as restrictions on in-person interviews. Counsel believes that interpretation is consistent with the Court's previous order on this issue (allowing a stay while the motions were pending) and with the Court's comments at the status conference in on this motion.

In light of Mr. Gerace's clear understanding on this issue, which is memorialized in the prior defense briefing, Mr. Gerace did not understand the Court's Order to bar telephonic interviews and did not willfully violate this Court's Order.

Simply put, even viewing the record in the light most favorable to the government, there is no evidence as to elements necessary to hold Gerace in contempt. For that reason, the government's motion must be denied.

## IV. Conclusion

Regardless of whether the government approves of what Gerace has to say publicly about his case, and regardless of whether defense counsel may advise against public comment, Mr. Gerace's freedom of expression is a constitutionally protected right under the First Amendment  It is clear, and the defense concedes, that the First Amendment rights of those in custody may -- at times -- be narrowly constrained for a limited purpose in accord to well-settled law. But any restriction on Mr. Gerace's constitutional protections must be limited, which the defense understood to be the case here.

This Court's Order, which was entered after defense counsel noted its interpretation of the USMS policy and the law, does not restrict Mr. Gerace's ability to speak on the telephone.  As a result, there can be no finding that Mr. Gerace was in contempt of this Court's March 13, 2025 Order when he gave a telephonic interview to the Buffalo News on March 15, 2025.

For the foregoing reasons, the government's motion must be denied.

DATED:      March 28, 2025

s/ Mark A. Foti, Esq.                                                              s/ Eric M. Soehnlein, Esq.

Mark A. Foti, Esq.                                                              Eric M. Soehnlein, Esq.
**The Foti Law Firm, P.C.**                                              **Soehnlein Law, PLLC**
16 W Main Street, Suite 100                                          2100 Main Place Tower
Rochester, NY 14614                                                       350 Main Street

10

(585) 461-1999                                                                              Buffalo, NY 14202
(585) 491-6512                                                                              (716) 771-9092