1    **UNITED STATES DISTRICT COURT**
     **WESTERN DISTRICT OF NEW YORK**

2    _____

3    **UNITED STATES OF AMERICA,**
                                    Case No. 1:19-cr-227
4              Plaintiff,                  1:23-cr-37
     v.                                     (LJV)
5
     **PETER GERACE, JR.,**              December 11, 2024
6
                   Defendant.
7    _____

          **TRANSCRIPT EXCERPT - EXAMINATION OF JOHN McDONALD**
8           **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
                  **UNITED STATES DISTRICT JUDGE**
9
     <u>**APPEARANCES:**</u>     **TRINI E. ROSS, UNITED STATES ATTORNEY**
10                     **BY: JOSEPH M. TRIPI, ESQ.**
                           **NICHOLAS T. COOPER, ESQ.**
11                         **CASEY L. CHALBECK, ESQ.**
                       Assistant United States Attorneys
12                     Federal Centre, 138 Delaware Avenue
                       Buffalo, New York 14202
13                     For the Plaintiff

14                     **THE FOTI LAW FIRM, P.C.**
                       **BY: MARK ANDREW FOTI, ESQ.**
15                     16 West Main Street, Suite 100
                       Rochester, New York 14614
16                        And
                       **SOEHNLEIN LAW**
17                     **BY: ERIC MICHAEL SOEHNLEIN, ESQ.**
                       350 Main Street, Suite 2100
18                     Buffalo, New York 14202
                       For the Defendant
19
     <u>**PRESENT:**</u>      **KAREN A. CHAMPOUX, USA PARALEGAL**
20                     **BRIAN A. BURNS, FBI SPECIAL AGENT**
                       **MARILYN K. HALLIDAY, HSI SPECIAL AGENT**
21                     **OLIVIA A. PROIA, J.D., PARALEGAL**

22   <u>**LAW CLERK:**</u>    **REBECCA FABIAN IZZO, ESQ.**

23   <u>**COURT CLERK:**</u>   **COLLEEN M. DEMMA**

24   <u>**REPORTER:**</u>     **ANN MEISSNER SAWYER, FCRR, RPR, CRR**
                       Robert H. Jackson Courthouse
25                     2 Niagara Square Buffalo, New York 14202
                       Ann_Sawyer@nywd.uscourts.gov

| | | |
|---|---|---|
| 09:49AM | 1 | (Excerpt commenced at 9:49 a.m.) |
| 09:49AM | 2 | (Jury is present.) |
| 09:49AM | 3 | **THE COURT:** The government can call its next witness. |
| 09:50AM | 4 | **MR. COOPER:** Thank you, Your Honor.  The government |
| 09:50AM | 5 | calls John McDonald. |
| 09:50AM | 6 | |
| 09:50AM | 7 | **J O H N   M c D O N A L D**, having been duly called and sworn, |
| 09:50AM | 8 | testified as follows: |
| 09:50AM | 9 | **MR. COOPER:**  May I inquire, Judge? |
| 09:51AM | 10 | **THE COURT:**  You may. |
| 09:51AM | 11 | |
| 09:51AM | 12 | **DIRECT EXAMINATION BY MR. COOPER:** |
| 09:51AM | 13 | Q.  Good morning, John. |
| 09:51AM | 14 | A.  Good morning. |
| 09:51AM | 15 | Q.  How old are you? |
| 09:51AM | 16 | A.  38. |
| 09:51AM | 17 | Q.  38? |
| 09:51AM | 18 | A.  Yeah. |
| 09:51AM | 19 | Q.  Okay.  And where did you grow up generally? |
| 09:51AM | 20 | A.  This area. |
| 09:51AM | 21 | Q.  Okay. |
| 09:51AM | 22 | A.  716. |
| 09:51AM | 23 | Q.  What's that? |
| 09:51AM | 24 | A.  In the 716, this area. |
| 09:51AM | 25 | Q.  Okay.  So you're from Western New York? |

09:51AM   1   A.   Yeah.

09:51AM   2   Q.   Okay.  And how far have you gone in school, John?

09:51AM   3   A.   Got my GED, college.

09:51AM   4   Q.   Okay.  You have some college, or did you graduate?

09:51AM   5   A.   I'm still going right now.

09:51AM   6   Q.   Got it.  Good for you.

09:51AM   7        I'm gonna kind of jump right into it here, and then we'll

09:51AM   8   move around a little bit.

09:51AM   9        During times in your life, have you struggled with drugs?

09:51AM   10  A.   Yes.

09:51AM   11  Q.   Okay.  When did that start?

09:51AM   12  A.   Young age.  Young.

09:51AM   13  Q.   About how old is a young age?

09:51AM   14  A.   15, 16.

09:51AM   15  Q.   What kind of drugs did you start using at that age?

09:51AM   16  A.   Alcohol, weed.

09:51AM   17  Q.   Okay.  Did that progress over time to harder drugs?

09:51AM   18  A.   Yes.

09:51AM   19  Q.   Can you describe that for the jury?

09:51AM   20  A.   Yeah.  Cocaine.  Heroin.  Everything, really.  Just, I

09:51AM   21  like to party.

09:51AM   22  Q.   Okay.  About what age were you when you started using

09:52AM   23  cocaine?

09:52AM   24  A.   19, 20.

09:52AM   25  Q.   Now, did there come a time when you got involved in

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

09:52AM  1   selling cocaine?

09:52AM  2   A.   Yes.

09:52AM  3   Q.   Okay.  Now, what kind of work, other than selling

09:52AM  4   cocaine, what kind of work were you doing at that time?

09:52AM  5   A.   Construction, roofing.

09:52AM  6   Q.   When you were doing roofing, were you working mostly in

09:52AM  7   the warmer months up here?

09:52AM  8   A.   Yes.

09:52AM  9   Q.   Okay.  In the colder months, were you doing less roofing?

09:52AM  10  A.   Yes.

09:52AM  11  Q.   Were you doing more cocaine selling at that time?

09:52AM  12  A.   Yes.

09:52AM  13  Q.   Okay.  Ultimately, we're gonna fast forward for a second,

09:52AM  14  did there come a time when you were arrested by federal law

09:52AM  15  enforcement and charged here in federal court for charges

09:52AM  16  related to drug distribution and possessing a firearm?

09:52AM  17  A.   Yes.

09:52AM  18  Q.   Okay.  And did you get an attorney on that case?

09:52AM  19  A.   Yes.

09:52AM  20  Q.   Did you ultimately plead guilty on that case?

09:53AM  21  A.   Yes.

09:53AM  22  Q.   Okay.  As a part of your guilty plea, did you enter into

09:53AM  23  what's called a cooperation agreement?

09:53AM  24  A.   Yes.

09:53AM  25  Q.   Okay.  And that guilty plea, did that happen sometime

| | | |
|---|---|---|
| 09:53AM | 1 | around 2020? |
| 09:53AM | 2 | A.  Yeah. |
| 09:53AM | 3 | Q.  Okay.  I'm going to hand you what's marked for |
| 09:53AM | 4 | identification as 3649L. |
| 09:53AM | 5 | **MR. COOPER:**  May I approach the witness, Judge? |
| 09:53AM | 6 | **THE COURT:**  You may. |
| 09:53AM | 7 | **MR. COOPER:**  Do you need this, Mr. Soehnlein?  Are |
| 09:53AM | 8 | you good? |
| 09:53AM | 9 | **MR. SOEHNLEIN:**  No, I don't need to see it.  Thank |
| 09:53AM | 10 | you. |
| 09:53AM | 11 | **BY MR. COOPER:** |
| 09:53AM | 12 | Q.  Do you recognize that, John? |
| 09:53AM | 13 | A.  Yes. |
| 09:53AM | 14 | Q.  Okay.  What do you recognize that to be? |
| 09:53AM | 15 | A.  My plea agreement. |
| 09:53AM | 16 | Q.  Okay.  And did you enter into that with the assistance of |
| 09:53AM | 17 | your attorney? |
| 09:53AM | 18 | A.  Yes. |
| 09:53AM | 19 | Q.  Okay.  And part of that plea agreement, did it include a |
| 09:53AM | 20 | cooperation section? |
| 09:53AM | 21 | A.  Yes. |
| 09:53AM | 22 | Q.  What was your understanding of your obligations in the |
| 09:53AM | 23 | cooperation agreement that you signed? |
| 09:53AM | 24 | A.  That I'd have to come -- come to someone's trial and |
| 09:53AM | 25 | testify. |

09:53AM    1    Q.  Okay.  And have you -- without getting into any more

09:53AM    2    details, just a "yes" or "no" answer to this question, have

09:53AM    3    you done that before today?

09:53AM    4    A.  Yes.

09:53AM    5    Q.  Have you done that at least twice before today?

09:53AM    6    A.  Yes.

09:54AM    7          **MR. COOPER:**  Okay.  Judge, can I approach?

09:54AM    8          **THE COURT:**  Yeah, sure.

09:54AM    9          **MR. COOPER:**  Thank you.

09:54AM   10          **BY MR. COOPER:**

09:54AM   11    Q.  May I have that back, John?  Thanks.

09:54AM   12      So is today the third time that you're testifying in a

09:54AM   13    proceeding like this one?

09:54AM   14    A.  Yes.

09:54AM   15    Q.  Does your cooperation agreement require that you show up

09:54AM   16    when you're called to show up?

09:54AM   17    A.  Yes.

09:54AM   18    Q.  Does it require that you answer any questions that are

09:54AM   19    asked of you truthfully?

09:54AM   20    A.  Yes.

09:54AM   21    Q.  Ultimately, when you entered into that cooperation

09:54AM   22    agreement, John, was it your hope that at on the back end

09:54AM   23    when you were sentenced, you'd receive some sort of benefit?

09:54AM   24    A.  Yes.

09:54AM   25    Q.  Okay.  Now, in this instance, you've actually been

09:54AM    1    sentenced already; is that correct?

09:54AM    2    A.  Yes.

09:54AM    3    Q.  Now, you told us just a moment ago that you've testified

09:54AM    4    at two other proceedings.  Were you sentenced sometime after

09:54AM    5    the second proceeding that you testified at?

09:54AM    6    A.  Yes.

09:54AM    7    Q.  At that time, when you were finally sentenced, had you

09:54AM    8    been pending sentence for quite some time?

09:54AM    9    A.  Yeah, about five years.

09:54AM   10    Q.  Okay.  Ultimately, what was the sentence that you

09:55AM   11    received from a judge in this courthouse?

09:55AM   12    A.  24 months.

09:55AM   13    Q.  Okay.  And did that amount to time served, based on how

09:55AM   14    long you had spent incarcerated?

09:55AM   15    A.  Yes.

09:55AM   16    Q.  Okay.

09:55AM   17    A.  I think I did, like, 26 months.  I think more than what

09:55AM   18    they sentenced me to.

09:55AM   19    Q.  A little extra on the top?

09:55AM   20    A.  Yeah.

09:55AM   21    Q.  Ultimately, you were facing more time than that, right?

09:55AM   22    A.  Yes.

09:55AM   23    Q.  Okay.  And you cooperated, and you ended up serving about

09:55AM   24    26 months; is that accurate?

09:55AM   25    A.  Yes.

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

| | | |
|---|---|---|
| 09:55AM | 1 | Q. Can you give the jury an idea of the timeframe that you |
| 09:55AM | 2 | were involved in distributing cocaine? What years are we |
| 09:55AM | 3 | talking about? |
| 09:55AM | 4 | A. Probably from 2015 to 2019. |
| 09:55AM | 5 | Q. What was the first year you said? |
| 09:55AM | 6 | A. '15. 2015 to 2019. |
| 09:55AM | 7 | Q. And then up to 2019? |
| 09:55AM | 8 | A. Yeah. |
| 09:55AM | 9 | Q. Okay. And what drugs did you distribute? |
| 09:55AM | 10 | A. Cocaine. |
| 09:55AM | 11 | Q. Okay. During that time -- well, withdrawn. |
| 09:55AM | 12 | At any time in your life, have you ever been to a strip |
| 09:56AM | 13 | club before? |
| 09:56AM | 14 | A. Yes. |
| 09:56AM | 15 | Q. Do you like strip clubs? |
| 09:56AM | 16 | A. Yes. |
| 09:56AM | 17 | Q. Have you been to strip clubs a lot? |
| 09:56AM | 18 | A. Yes. |
| 09:56AM | 19 | Q. Have you ever heard of a place called Pharaoh's |
| 09:56AM | 20 | Gentlemen's Club? |
| 09:56AM | 21 | A. Yes. |
| 09:56AM | 22 | Q. Have you been there before? |
| 09:56AM | 23 | A. Yes. |
| 09:56AM | 24 | Q. Okay. I'd like for you to tell the jury how many times |
| 09:56AM | 25 | you've been to Pharaoh's Gentlemen's Club. |

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

09:56AM  1   A.  It's uncountable.

09:56AM  2   Q.  Okay.  More than you can recall or estimate?

09:56AM  3   A.  Four, five times a week, for years.

09:56AM  4   Q.  Okay.  I want to discuss with you now what you observed,

09:56AM  5   and conduct that you've participated in when you were at

09:56AM  6   Pharaoh's Gentlemen's Club.

09:56AM  7       Earlier on your direct examination, you described using

09:56AM  8   cocaine, and I think what you said is "I like to party."

09:56AM  9       During those times that you went to Pharaoh's, four or

09:56AM 10   five times a week for years, were you a heavy cocaine user?

09:56AM 11   A.  Yes.

09:56AM 12   Q.  When you went to Pharaoh's Gentlemen's Club, would you

09:56AM 13   use cocaine there?

09:56AM 14   A.  Yes.

09:56AM 15   Q.  Okay.  Can you tell the jury, if you can, estimate, how

09:56AM 16   many times you personally have used cocaine inside of

09:56AM 17   Pharaoh's?

09:56AM 18   A.  100?  200?

09:57AM 19   Q.  Okay.  Now if you went to Pharaoh's four or five times a

09:57AM 20   week, would it be fair to say that you used cocaine every

09:57AM 21   time you went?

09:57AM 22   A.  Yes.

09:57AM 23   Q.  Okay.

09:57AM 24   A.  Absolutely.

09:57AM 25   Q.  Okay.  Would you go to Pharaoh's if you didn't have any

09:57AM    1    cocaine?

09:57AM    2    A.  I never didn't have cocaine.

09:57AM    3    Q.  Okay.  Let's talk about what you did while you were in

09:57AM    4    Pharaoh's.

09:57AM    5        Where would you use cocaine inside of Pharaoh's

09:57AM    6    Gentlemen's Club?

09:57AM    7    A.  Wherever I was at.

09:57AM    8    Q.  Okay.

09:57AM    9    A.  I didn't hide it.  I did it right out in the open.

09:57AM    10   Q.  You didn't hide it?

09:57AM    11   A.  No.

09:57AM    12   Q.  Let's talk about the geography or the layout of

09:57AM    13   Pharaoh's.  When you walk in the front door, is there, like,

09:57AM    14   a bouncer by the door?

09:57AM    15   A.  Yes.

09:57AM    16   Q.  They ever, like, check your pockets to see if you had

09:57AM    17   cocaine on you?

09:57AM    18   A.  No.

09:57AM    19   Q.  That didn't happen?

09:57AM    20   A.  No.

09:57AM    21   Q.  Okay.  When you got --

09:57AM    22           **THE COURT:**  Right into the microphone, Mr. McDonald.

09:57AM    23           **THE WITNESS:**  Sorry.  No.

09:57AM    24           **MR. COOPER:**  Or just -- or just talk a little louder.

           25

09:57AM    1          **BY MR. COOPER:**

09:57AM    2    Q.  That big -- is there a big open when you walk inside?

09:57AM    3    A.  Yes.

09:57AM    4    Q.  Is that where the stage is?

09:57AM    5    A.  Yes.

09:57AM    6    Q.  Are there tables there?

09:57AM    7    A.  Yes.

09:57AM    8    Q.  Would you sit at those tables and watch dancers?

09:57AM    9    A.  No, I'd sit over to the left where the pool table used to

09:57AM   10    be.

09:57AM   11    Q.  Okay.  So you'd sit by the pool table?

09:58AM   12    A.  Um-hum.

09:58AM   13    Q.  Is that a yes?

09:58AM   14    A.  Yes.

09:58AM   15    Q.  Okay.  When you're sitting over by the pool table, would

09:58AM   16    you use cocaine out in the open in that area?

09:58AM   17    A.  Yes.

09:58AM   18    Q.  Okay.  Did anybody ever come over and throw you out for

09:58AM   19    that?

09:58AM   20    A.  No.

09:58AM   21    Q.  You get in trouble for it?

09:58AM   22    A.  No.

09:58AM   23    Q.  Let's talk about selling cocaine.

09:58AM   24        You told the jury earlier that you've sold cocaine for

09:58AM   25    times in your life from about 2015 to 2019; is that correct?

09:58AM    1    A.  Yes.

09:58AM    2    Q.  Were you going to Pharaoh's during the time that you were

09:58AM    3    a cocaine dealer?

09:58AM    4    A.  Yes.

09:58AM    5    Q.  Okay.  Would you distribute cocaine, whether you sold it

09:58AM    6    or gave it away, to other people at Pharaoh's?

09:58AM    7    A.  Yes.

09:58AM    8    Q.  Did that happen frequently?

09:58AM    9    A.  Yes.

09:58AM   10    Q.  Describe for the jury the different people that you would

09:58AM   11    sell or give cocaine to at Pharaoh's.

09:58AM   12    A.  I believe it was, I mean, everybody.  I'd give the shit

09:58AM   13    away.  I like to party, and I want everyone to have fun, you

09:58AM   14    know what I mean?  I'd give it to dancers, the bouncers,

09:58AM   15    whatever.

09:58AM   16    Q.  Okay.

09:58AM   17    A.  You know what I mean?

09:58AM   18    Q.  Were there times when you went to Pharaoh's with friends?

09:58AM   19    A.  Yes.

09:58AM   20    Q.  Would you share cocaine among your friends while you were

09:58AM   21    there?

09:58AM   22    A.  Yes.

09:59AM   23    Q.  Were there times when you gave cocaine to dancers that

09:59AM   24    were working at Pharaoh's?

09:59AM   25    A.  Yes.

09:59AM  1   Q.  Did that happen frequently?

09:59AM  2   A.  Yes.

09:59AM  3   Q.  Was that something you enjoyed doing while you were

09:59AM  4   there?

09:59AM  5   A.  Absolutely.

09:59AM  6   Q.  Okay.  And you mentioned bouncers.  Would you give

09:59AM  7   cocaine to bouncers?

09:59AM  8   A.  Yes.

09:59AM  9   Q.  Did you get money from them, or you just gave it away?

09:59AM  10  A.  I just gave it to them.  They let me do whatever I want.

09:59AM  11  Q.  Okay.  Did there come a time ultimately, John, when you

09:59AM  12  were not allowed back at Pharaoh's?

09:59AM  13  A.  Yes.

09:59AM  14  Q.  Can you describe for the jury your understanding of why

09:59AM  15  you were not allowed back at Pharaoh's?

09:59AM  16  A.  I went to go in one day.  They said I wasn't allowed in,

09:59AM  17  that Peter reviewed the videotapes, and said that I don't own

09:59AM  18  the place, and I ain't allowed in there.

09:59AM  19  Q.  Okay.  So you were acting like you owned the place?

09:59AM  20  A.  Yeah.

09:59AM  21  Q.  Okay.  At that time when you were a heavy cocaine user,

09:59AM  22  would you, I don't know, would you act inappropriately at the

09:59AM  23  club?

09:59AM  24  A.  Yeah.

09:59AM  25  Q.  Okay.  Is that your understanding of why you weren't

| | | |
|---|---|---|
| 09:59AM | 1 | allowed back there? |
| 09:59AM | 2 | A.  Yeah. |
| 09:59AM | 3 | Q.  Okay. |
| 09:59AM | 4 | **MR. COOPER:**  Just a second please, Judge. |
| 09:59AM | 5 | **THE COURT:**  Sure. |
| 09:59AM | 6 | **MR. COOPER:**  I have no further direct.  Thank you, |
| 10:00AM | 7 | Judge. |
| 10:00AM | 8 | **THE COURT:**  Mr. Soehnlein? |
| 10:00AM | 9 | **MR. SOEHNLEIN:**  Thank you, Judge. |
| 10:00AM | 10 | |
| 10:00AM | 11 | **CROSS-EXAMINATION BY MR. SOEHNLEIN:** |
| 10:00AM | 12 | Q.  Good morning, Mr. McDonald, how are you? |
| 10:00AM | 13 | A.  Good. |
| 10:00AM | 14 | Q.  We've never met before, correct? |
| 10:00AM | 15 | A.  Correct. |
| 10:00AM | 16 | Q.  You've met these folks before, correct? |
| 10:00AM | 17 | A.  Yes. |
| 10:00AM | 18 | Q.  Sitting at that back table there, who did you -- strike |
| 10:00AM | 19 | that -- who do you know the longest? |
| 10:00AM | 20 | A.  Probably Marilyn. |
| 10:00AM | 21 | Q.  Ms. Halliday, correct? |
| 10:00AM | 22 | A.  Yes. |
| 10:00AM | 23 | Q.  Yeah.  She arrested you on a cruise ship at some point in |
| 10:00AM | 24 | time, correct? |
| 10:00AM | 25 | A.  Yes. |

Case 1:19-cr-00227-LJV-MJR   Document 1476   Filed 04/03/25   Page 15 of 29
USA v Gerace - McDonald - Soehnlein/Cross - 12/11/24

15

10:00AM   1   Q.   And when she arrested you, she knew your nickname?   Your

10:00AM   2   nickname is Noodle, or something like that?

10:00AM   3   A.   Yep.

10:00AM   4   Q.   All right.   Just give me a minute here just to try to

10:00AM   5   pull this up.

10:00AM   6       So, I just want to dive into your testimony real quick.

10:00AM   7       You testified you go to strip clubs all the time,

10:00AM   8   correct?

10:00AM   9   A.   Yes.

10:01AM   10  Q.   Yeah.   That's more than just Pharaoh's, correct?

10:01AM   11  A.   Not -- now, it is, but back then it was just Pharaoh's,

10:01AM   12  like, until I got kicked out, and then I switched clubs.

10:01AM   13  Q.   Okay.   And -- and the stuff that you did at Pharaoh's,

10:01AM   14  you did at other clubs?

10:01AM   15           **MR. COOPER:**   Objection.

10:01AM   16           **THE COURT:**   Sustained.

10:01AM   17           **BY MR. SOEHNLEIN:**

10:01AM   18  Q.   Pharaoh's is the only club you've ever been kicked out

10:01AM   19  of?

10:01AM   20  A.   No.

10:01AM   21  Q.   Okay.   Now, you -- when you're going in and you're --

10:01AM   22  you're selling cocaine -- or, you're using cocaine or, you

10:01AM   23  know, you're doing what you're doing in that timeframe, which

10:01AM   24  I think you said was like '15 to '19, correct?

10:01AM   25  A.   Yes.

USA v Gerace - McDonald - Soehnlein/Cross - 12/11/24

16

10:01AM    1    Q.  Now, when you are kicked out of the club, you're told

10:01AM    2    it's because of something that's on the camera system,

10:01AM    3    correct?

10:01AM    4    A.  Yeah.  I was told that Peter reviewed the cameras and

10:01AM    5    didn't like what I was doing, and that I thought I owned the

10:01AM    6    place, and I wasn't allowed in there anymore.

10:01AM    7    Q.  Okay.  So your understanding was, and just "yes" or "no,"

10:01AM    8    Peter reviewed the cameras, correct?

10:01AM    9    A.  Yes.

10:01AM    10   Q.  And Peter was making a decision that you were gonna get

10:01AM    11   kicked out of the club, correct?

10:01AM    12   A.  Yes.

10:01AM    13   Q.  And that was for conduct you had done inside the club,

10:01AM    14   correct?

10:02AM    15   A.  Correct.

10:02AM    16   Q.  Okay.  And inside the club, you were using cocaine,

10:02AM    17   correct?

10:02AM    18   A.  Yes.

10:02AM    19   Q.  Okay.  Now, you have -- I think you -- you pled guilty on

10:02AM    20   February 27th of 2020; do you recall that?

10:02AM    21   A.  Yes.

10:02AM    22   Q.  Correct?  And you had a plea agreement in the case,

10:02AM    23   correct?

10:02AM    24   A.  Correct.

10:02AM    25   Q.  And Mr. Cooper asked you some questions about some of

10:02AM    1    your criminal conduct, correct?

10:02AM    2    A.   Yes.

10:02AM    3    Q.   And that involved distributing cocaine?

10:02AM    4    A.   Yes.

10:02AM    5    Q.   And I think you had a firearm as well?

10:02AM    6    A.   Yes.

10:02AM    7    Q.   And in your plea agreement, the government was seeking an

10:02AM    8    enhancement for obstruction of justice, correct?

10:02AM    9    A.   Yes.

10:02AM   10    Q.   And -- and what did that relate to?

10:02AM   11    A.   Say it again?  I'm sorry?

10:02AM   12    Q.   What -- what was that about?  Why --

10:02AM   13    A.   I cut my ankle monitor off.

10:02AM   14    Q.   Okay.  You cut your ankle monitor off when you were on

10:02AM   15    supervised release?

10:02AM   16    A.   Yeah.

10:02AM   17    Q.   And that was because you wanted to get away?

10:02AM   18    A.   Well, nah, I was -- I was going to jail on Monday, so I

10:02AM   19    cut it off on Friday and enjoyed my weekend.

10:02AM   20    Q.   Okay.  And enjoyed your weekend?  What did you do over

10:03AM   21    the weekend?

10:03AM   22    A.   I just partied, chilled in a motel, had sex, ate food,

10:03AM   23    and went to jail.

10:03AM   24    Q.   Okay.  You -- you used illegal drugs?

10:03AM   25    A.   Yes.

10:03AM    1    Q.  You engaged in sex?

10:03AM    2    A.  Yes.

10:03AM    3    Q.  And you did it without your ankle monitor on?

10:03AM    4    A.  Yes.

10:03AM    5    Q.  You knew you were supposed to have your ankle monitor on,

10:03AM    6    correct?

10:03AM    7    A.  Yes.

10:03AM    8    Q.  That's by order of the Court, correct?

10:03AM    9    A.  Yes.

10:03AM    10    Q.  And -- and that's obstruction of justice?

10:03AM    11    A.  Sure.

10:03AM    12    Q.  Yeah.  And that's something that you did, correct?

10:03AM    13    A.  Yep.

10:03AM    14    Q.  And you did that in what year?

10:03AM    15    A.  '19.  2019.

10:03AM    16    Q.  Okay.  You did it after all this stuff that you testified

10:03AM    17    about at Pharaoh's, correct?

10:03AM    18    A.  Yeah.

10:03AM    19    Q.  Okay.  Now, I asked you about Ms. Halliday.

10:03AM    20        You've met with law enforcement several times.  You met

10:03AM    21    with them on September 13th of 2019, correct?

10:03AM    22    A.  If you say so.

10:03AM    23    Q.  Do you recall that?

10:03AM    24    A.  I mean, it's been a bunch of times, I don't know the

10:03AM    25    dates.

| 10:03AM | 1 | Q. Do you recall how many times? |
| 10:03AM | 2 | A. No, I don't. |
| 10:04AM | 3 | Q. You don't? |
| 10:04AM | 4 | A. No, I don't. |
| 10:04AM | 5 | Q. Okay.  Do you recall meeting with them at least twice |
| 10:04AM | 6 | before you pled guilty, right? |
| 10:04AM | 7 | A. Yes. |
| 10:04AM | 8 | Q. And so that would have been sometime in 2019, correct? |
| 10:04AM | 9 | A. Yes. |
| 10:04AM | 10 | Q. Okay.  And then you recall testifying in -- at other |
| 10:04AM | 11 | matters, that was at least twice, correct? |
| 10:04AM | 12 | A. Yes. |
| 10:04AM | 13 | Q. And then you recall some other times where you had more |
| 10:04AM | 14 | recent meetings in 2023 and 2024 where you called law |
| 10:04AM | 15 | enforcement, correct? |
| 10:04AM | 16 | A. Where I called law enforcement? |
| 10:04AM | 17 | Q. Yeah. |
| 10:04AM | 18 | A. I don't think so. |
| 10:04AM | 19 | Q. You don't recall that? |
| 10:04AM | 20 | A. No. |
| 10:04AM | 21 | Q. Okay.  I'm gonna try and refresh your memory on that real |
| 10:04AM | 22 | quick. |
| 10:04AM | 23 | **MR. SOEHNLEIN:**  Could we show Mr. McDonald 3649K? |
| 10:04AM | 24 | **BY MR. SOEHNLEIN:** |
| 10:05AM | 25 | Q. And all I want you to do is if go to the second page, |

10:05AM   1   this is for the witness, just read the first paragraph there.

10:05AM   2       Do you see that?

10:05AM   3   A.  Yep.  Yep.

10:05AM   4       **MR. SOEHNLEIN:**  That's fine.  You can take it down.

10:05AM   5       **BY MR. SOEHNLEIN:**

10:05AM   6   Q.  All right.  So that refreshes your recollection that

10:05AM   7   there have been times where you have contacted law

10:05AM   8   enforcement, correct?

10:05AM   9   A.  Yeah.

10:05AM   10  Q.  And you've contacted Ms. Halliday, correct?

10:05AM   11  A.  Yep.

10:05AM   12  Q.  You were provided a cell phone number for Ms. Halliday,

10:05AM   13  correct?

10:05AM   14  A.  Yes.

10:05AM   15  Q.  Okay.  And you would contact her when you had

10:05AM   16  information, correct?

10:05AM   17  A.  Or if I needed something.  Like, this building's fucking

10:05AM   18  you up, man.  You need help sometimes.

10:05AM   19  Q.  Right.  And so if -- if you needed something, you felt it

10:05AM   20  was appropriate to contact Ms. Halliday, correct?

10:05AM   21  A.  I mean, that's who I was comfortable with.

10:05AM   22  Q.  Right.  Even though you had an attorney at the time,

10:05AM   23  correct?

10:05AM   24  A.  Yeah.  I don't like him.

10:05AM   25  Q.  Okay.  And so instead of contacting your attorney, you

10:06AM    1    would -- on behalf of the defense Bar, I'm not gonna take

10:06AM    2    offense at that -- you -- you felt comfortable contacting

10:06AM    3    Ms. Halliday, correct?

10:06AM    4    A.   Yeah.

10:06AM    5    Q.   You had her cell phone, correct?

10:06AM    6    A.   Um-hum.

10:06AM    7    Q.   You reach out to her via text, correct?

10:06AM    8    A.   Yep.

10:06AM    9    Q.   And she would be responsive to whatever you needed help

10:06AM    10   with, correct?

10:06AM    11   A.   Sure.

10:06AM    12   Q.   There was even a time where you were trying to schedule

10:06AM    13   some sort of a job interview, correct?

10:06AM    14   A.   Yeah.  Yeah, yeah, yeah.  Yeah.  Yep.

10:06AM    15   Q.   And probation was giving you a hard time, right?

10:06AM    16   A.   Yeah, they wouldn't let me go.

10:06AM    17   Q.   Yeah.  So you had already pled guilty, correct?  Right?

10:06AM    18   A.   Yep.

10:06AM    19   Q.   And you had a problem with probation, right?

10:06AM    20   A.   Yep.

10:06AM    21   Q.   So at that point in time, you're a felon, right?

10:06AM    22   A.   Yeah.

10:06AM    23   Q.   And probation was giving you a hard time, correct?

10:06AM    24   A.   Um-hum.

10:06AM    25   Q.   And you reached out to Special Agent Halliday, correct?

| | | |
|---|---|---|
| 10:06AM | 1 | A.  Yes. |
| 10:06AM | 2 | Q.  For help, right? |
| 10:06AM | 3 | A.  Yep. |
| 10:06AM | 4 | Q.  Because in your head, that's who you were comfortable |
| 10:06AM | 5 | with, right? |
| 10:06AM | 6 | A.  Yes. |
| 10:06AM | 7 | Q.  Okay.  And -- and Special Agent Halliday didn't tell you |
| 10:07AM | 8 | not to contact her, right? |
| 10:07AM | 9 | A.  No. |
| 10:07AM | 10 | Q.  No.  She just told you don't text me, right? |
| 10:07AM | 11 | A.  She said shoot me a text and I'll call you. |
| 10:07AM | 12 | Q.  Okay.  Do you specifically recall those text messages? |
| 10:07AM | 13 | A.  No. |
| 10:07AM | 14 | Q.  Okay. |
| 10:07AM | 15 | **MR. SOEHNLEIN:**  Hold on.  Can we show the witness |
| 10:07AM | 16 | 3649I.  And I just want to show him -- the WiFi is pretty slow |
| 10:07AM | 17 | here today, but I believe it's just the last page. |
| 10:07AM | 18 | **BY MR. SOEHNLEIN:** |
| 10:07AM | 19 | Q.  Okay.  You recall these text messages, correct? |
| 10:07AM | 20 | A.  Yeah. |
| 10:07AM | 21 | Q.  These are text messages that you had with Special Agent |
| 10:07AM | 22 | Halliday, correct? |
| 10:07AM | 23 | A.  Yep. |
| 10:07AM | 24 | Q.  And you had reached out to her for help with probation, |
| 10:07AM | 25 | correct? |

10:08AM    1    A.  Yeah.

10:08AM    2    Q.  Yeah.  And she'd indicated to you that she would call the

10:08AM    3    AUSA on your behalf, correct?

10:08AM    4    A.  Yeah.

10:08AM    5    Q.  Okay.

10:08AM    6    A.  I was here, like, the day before, and it just happened

10:08AM    7    to, like, work.  It all worked out, because I was here for, I

10:08AM    8    think it was a status conference or something, and I seen

10:08AM    9    her.

10:08AM    10       And then the next day, like, all that shit went crazy

10:08AM    11    with my PO, so I sent her a text.

10:08AM    12    Q.  Yeah.  And you wanted help with probation, right?

10:08AM    13    A.  Yeah.

10:08AM    14    Q.  Yeah.  And -- and she didn't tell you not to contact her,

10:08AM    15    right?

10:08AM    16    A.  No.

10:08AM    17    Q.  She told you that she would help you, right?

10:08AM    18    A.  She did help.

10:08AM    19    Q.  Yeah.  And at the bottom -- at the end, she says, by the

10:08AM    20    way, don't text me, let's just talk, right?

10:08AM    21    A.  Yeah.  That's what it says.

10:08AM    22           **MR. SOEHNLEIN:**  Okay.  That's all I have.  Thank you.

10:08AM    23           **MR. COOPER:**  Just a second, Judge.

10:08AM    24

     25

| | | |
|---|---|---|
| 10:08AM | 1 | **REDIRECT EXAMINATION BY MR. COOPER:** |
| 10:08AM | 2 | Q.  John, you have no idea if Marilyn Halliday called Khalid |
| 10:09AM | 3 | Emerson, your probation officer, correct? |
| 10:09AM | 4 | A.  No. |
| 10:09AM | 5 | Q.  You have no idea if that happened.  You have no idea if I |
| 10:09AM | 6 | told Marilyn, we're not getting involved in that.  You have |
| 10:09AM | 7 | no clue, right? |
| 10:09AM | 8 | A.  No. |
| 10:09AM | 9 | Q.  What you know is that whatever you had going on with |
| 10:09AM | 10 | probation ultimately worked out, and she texted you back and |
| 10:09AM | 11 | said great, right? |
| 10:09AM | 12 | A.  Yes. |
| 10:09AM | 13 | Q.  Okay.  So when Mr. Soehnlein was asking you questions |
| 10:09AM | 14 | about Special Agent Halliday intervening on your behalf, |
| 10:09AM | 15 | you're guessing, because it worked out for you, right? |
| 10:09AM | 16 | A.  Yes. |
| 10:09AM | 17 | Q.  You don't know if she reached out to Emerson, right? |
| 10:09AM | 18 | A.  Correct. |
| 10:09AM | 19 | Q.  Emerson would know that, right? |
| 10:09AM | 20 | A.  Correct. |
| 10:09AM | 21 | Q.  And Halliday would know that, right? |
| 10:09AM | 22 | A.  Well, Emerson yelled at me the next day for making a |
| 10:09AM | 23 | phone call.  So I believe, you know -- you know what I mean? |
| 10:09AM | 24 | Something happened somewhere, and he didn't like it. |
| 10:09AM | 25 | Q.  You have no idea if anybody asked for a benefit on your |

10:09AM    1    behalf, do you?

10:09AM    2    A.  No.

10:09AM    3    Q.  Okay.  You were asked some questions about contacting --

10:09AM    4    reaching out directly to Special Agent Halliday; do you

10:09AM    5    remember that?

10:09AM    6    A.  Yeah.

10:09AM    7    Q.  One of the times that you reached out to Special Agent

10:09AM    8    Halliday on the phone, is it because you got threatened or

10:09AM    9    assaulted for being a cooperator?

10:09AM    10           **MR. SOEHNLEIN:**  Objection.

10:09AM    11           **MR. COOPER:**  Judge --

10:09AM    12           **THE COURT:**  Basis?

10:09AM    13           **MR. SOEHNLEIN:**  Beyond the scope of direct.

10:10AM    14           **MR. COOPER:**  Oh, no.

10:10AM    15           **THE COURT:**  No, overruled.

10:10AM    16           **BY MR. COOPER:**

10:10AM    17    Q.  Did you get threatened or assaulted for cooperating with

10:10AM    18    the government?

10:10AM    19    A.  Yes, more than once.

10:10AM    20    Q.  Okay.  Is that a pleasant experience?

10:10AM    21    A.  No, not at all.

10:10AM    22    Q.  Do you want to try to be safe?

10:10AM    23    A.  Yes.

10:10AM    24    Q.  Is calling a federal agent who you know something you do

10:10AM    25    to try to keep yourself safe when you get threatened or

10:10AM     1    assaulted for being a cooperator?

10:10AM     2    A.   Yeah.   And it's more of me just saying fuck you, you know

10:10AM     3    what I'm saying?   To them.

10:10AM     4        Like, I'm in trouble because I hung out in a fucking

10:10AM     5    strip club.   You know what I'm saying?

10:10AM     6        So me being here, I could care less about the cooperation

10:10AM     7    points, it's me saying fuck you.

10:10AM     8    Q.   Okay.   You were asked some questions about being arrested

10:10AM     9    on a cruise ship; do you remember that?

10:10AM    10    A.   Um-hum.

10:10AM    11    Q.   Okay.   Before you got arrested on the cruise ship, let's

10:10AM    12    talk about, maybe, the night before.   Were you acting super

10:10AM    13    inappropriately on the cruise ship?

10:10AM    14    A.   Absolutely.

10:10AM    15    Q.   Were you smoking marijuana in the hallways on the cruise

10:10AM    16    ship?

10:10AM    17    A.   Yes.

10:10AM    18    Q.   Were you taking pizza pies and slapping them on the

10:11AM    19    walls?

10:11AM    20    A.   Yes.

10:11AM    21    Q.   Were you acting like a jerk?

10:11AM    22    A.   Yes.

10:11AM    23    Q.   Did you, when you got arrested at that moment, the next

10:11AM    24    morning, that you were being arrested for the way you

10:11AM    25    contacted yourself on the ship?

10:11AM  1  A.  Yes.

10:11AM  2  Q.  Is that similar to the reason why you think you got

10:11AM  3  kicked out of Pharaoh's Gentlemen's Club?

10:11AM  4  A.  Absolutely.

10:11AM  5          MR. COOPER:  Okay.  I'm good, Judge.

10:11AM  6          THE COURT:  Anything more, Mr. Soehnlein?

10:11AM  7

10:11AM  8              **RECROSS-EXAMINATION BY MR. SOEHNLEIN:**

10:11AM  9  Q.  Ms. Halliday never told you not to contact her, correct?

10:11AM  10  A.  No.

10:11AM  11          MR. SOEHNLEIN:  That's all I have.

10:11AM  12          MR. COOPER:  No, I'm good.  Thank you.

10:11AM  13          THE COURT:  You can step down, sir.  Thank you very

10:11AM  14  much.

10:11AM  15          THE WITNESS:  Thank you.

10:11AM  16          (Witness excused at 10:11 a.m.)

17          (Excerpt concluded at 10:11 a.m.)

18              *     *     *     *     *     *     *

19

20

21

22

23

24

25

1

2                          **CERTIFICATE OF REPORTER**

3

4              In accordance with 28, U.S.C., 753(b), I

5      certify that these original notes are a true and correct

6      record of proceedings in the United States District Court for

7      the Western District of New York on December 11, 2024.

8

9                              s/ Ann M. Sawyer
                               Ann M. Sawyer, FCRR, RPR, CRR
10                             Official Court Reporter
                               U.S.D.C., W.D.N.Y.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **TRANSCRIPT INDEX**

2          **EXCERPT - EXAMINATION OF JOHN McDONALD**

3                    **DECEMBER 11, 2024**

4

5

6     **W I T N E S S**                           **P A G E**

7     **J O H N   M c D O N A L D**                2

8        DIRECT EXAMINATION BY MR. COOPER:         2

9        CROSS-EXAMINATION BY MR. SOEHNLEIN:       14

10       REDIRECT EXAMINATION BY MR. COOPER:       24

11       RECROSS-EXAMINATION BY MR. SOEHNLEIN:     27

12

13

14

15

16

17

18

19

20

21

22

23

24

25