09:30AM

1              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF NEW YORK
2

   _____
3  UNITED STATES OF AMERICA,
                                    Case No. 1:19-cr-227
4              Plaintiff,                      1:23-cr-37
   v.                                          (LJV)
5
   PETER GERACE, JR.,                December 9, 2024
6
               Defendant.
   _____
7
     TRANSCRIPT EXCERPT - EXAMINATION OF R.A. (PW 6) - DAY 2
8          BEFORE THE HONORABLE LAWRENCE J. VILARDO
               UNITED STATES DISTRICT JUDGE
9

   APPEARANCES:    TRINI E. ROSS, UNITED STATES ATTORNEY
10                 BY: JOSEPH M. TRIPI, ESQ.
                       NICHOLAS T. COOPER, ESQ.
11                     CASEY L. CHALBECK, ESQ.
                   Assistant United States Attorneys
12                 Federal Centre, 138 Delaware Avenue
                   Buffalo, New York 14202
13                 For the Plaintiff

14                 THE FOTI LAW FIRM, P.C.
                   BY: MARK ANDREW FOTI, ESQ.
15                 16 West Main Street, Suite 100
                   Rochester, New York 14614
16                    And
                   SOEHNLEIN LAW
17                 BY: ERIC MICHAEL SOEHNLEIN, ESQ.
                   350 Main Street, Suite 2100
18                 Buffalo, New York 14202
                   For the Defendant
19
   PRESENT:        KAREN A. CHAMPOUX, USA PARALEGAL
20                 BRIAN A. BURNS, FBI SPECIAL AGENT
                   MARILYN K. HALLIDAY, HSI SPECIAL AGENT
21                 OLIVIA A. PROIA, J.D., PARALEGAL

22 LAW CLERK:      REBECCA FABIAN IZZO, ESQ.

23 COURT CLERK:    COLLEEN M. DEMMA

24 REPORTER:       ANN MEISSNER SAWYER, FCRR, RPR, CRR
                   Robert H. Jackson Courthouse
25                 2 Niagara Square Buffalo, New York 14202
                   Ann_Sawyer@nywd.uscourts.gov

09:57AM

| | | |
|---|---|---|
| 09:57AM | 1 | (Excerpt commenced at 9:57 a.m.) |
| 09:57AM | 2 | (Jury seated at 9:57 a.m.) |
| 09:57AM | 3 | **THE COURT:**  Good morning, everyone. |
| 09:57AM | 4 | **JURORS:**  Good morning. |
| 09:57AM | 5 | **THE COURT:**  Welcome back.  I hope that except for a |
| 09:57AM | 6 | few hours yesterday afternoon, everyone had a great weekend. |
| 09:57AM | 7 | The record will reflect that all our jurors are present. |
| 09:57AM | 8 | I remind the witness that she's still under oath. |
| 09:57AM | 9 | And, Mr. Soehnlein, you may continue. |
| 09:57AM | 10 | **MR. SOEHNLEIN:**  Thank you, Judge. |
| 09:57AM | 11 | |
| 09:57AM | 12 | **R.A. (PW 6),** having been previously duly called and sworn, |
| 09:57AM | 13 | continued to testify as follows: |
| 09:57AM | 14 | |
| 09:57AM | 15 | **(CONT'D) CROSS-EXAMINATION BY MR. SOEHNLEIN:** |
| 09:57AM | 16 | Q.  Good morning, Ms. R.A. |
| 09:57AM | 17 | A.  Good morning. |
| 09:57AM | 18 | Q.  How are you? |
| 09:57AM | 19 | A.  Good. |
| 09:57AM | 20 | Q.  I only have a few more questions. |
| 09:58AM | 21 | On Friday when we were here last, you were asked some |
| 09:58AM | 22 | questions about an individual named Joe Bongiovanni; do you |
| 09:58AM | 23 | recall those questions? |
| 09:58AM | 24 | A.  Yes. |
| 09:58AM | 25 | Q.  Okay.  And in the time that you knew Mr. Bongiovanni, |

| | | |
|---|---|---|
| 09:58AM | 1 | fair to say you knew him through Mr. Gerace, correct? |
| 09:58AM | 2 | A.  Yes. |
| 09:58AM | 3 | Q.  And fair to say your observations were that they had been |
| 09:58AM | 4 | friends? |
| 09:58AM | 5 | A.  Yes. |
| 09:58AM | 6 | Q.  Yeah.  And you never did cocaine with Mr. Bongiovanni, |
| 09:58AM | 7 | correct? |
| 09:58AM | 8 | A.  Never. |
| 09:58AM | 9 | Q.  You never saw Mr. Bongiovanni do cocaine? |
| 09:58AM | 10 | A.  No. |
| 09:58AM | 11 | Q.  You never saw Mr. Gerace do coke in front of |
| 09:58AM | 12 | Mr. Bongiovanni? |
| 09:58AM | 13 | A.  No. |
| 09:58AM | 14 | Q.  And you never heard Mr. Gerace say that he was giving a |
| 09:58AM | 15 | bribe to Mr. Bongiovanni? |
| 09:58AM | 16 | A.  Never. |
| 09:58AM | 17 | Q.  You never heard Mr. Gerace say that Mr. Bongiovanni was |
| 09:58AM | 18 | protecting him? |
| 09:58AM | 19 | A.  Never. |
| 09:58AM | 20 | Q.  He never gave you an envelope of cash to give to |
| 09:58AM | 21 | Mr. Bongiovanni? |
| 09:58AM | 22 | A.  Never. |
| 09:58AM | 23 | Q.  You never witnessed him give any cash to Mr. Bongiovanni? |
| 09:58AM | 24 | A.  Never. |
| 09:58AM | 25 | Q.  Now the -- on the government's questioning on Friday, |

09:59AM   1   there were some questions about whether or not the lead

09:59AM   2   prosecutor had done anything to personally offend you; do you

09:59AM   3   recall that?

09:59AM   4   A.   Yes.

09:59AM   5   Q.   And there were some questions about some of your

09:59AM   6   interactions with law enforcement over time, correct?

09:59AM   7   A.   Yes.

09:59AM   8   Q.   Do you feel that federal law enforcement has treated you

09:59AM   9   fairly?

09:59AM  10          **MR. TRIPI:**  Objection, relevance.

09:59AM  11          **THE COURT:**  Overruled.

09:59AM  12          **THE WITNESS:**  I feel as though that in the beginning

09:59AM  13   of this, in 2019, they came to my work, which was something --

09:59AM  14   I was, like, this is not good, because I work with parolees

09:59AM  15   and probationers, and I had to explain to my supervisor why

09:59AM  16   Homeland Security Investigations and the FBI were at my place

09:59AM  17   of employment.

09:59AM  18          **BY MR. SOEHNLEIN:**

09:59AM  19   Q.   And that was stressful for you?

09:59AM  20   A.   Absolutely.

09:59AM  21          **MR. TRIPI:**  Object to the leading.  He's adopted this

09:59AM  22   witness.

09:59AM  23          **THE COURT:**  No, overruled.

09:59AM  24          **BY MR. SOEHNLEIN:**

09:59AM  25   Q.   Yeah.  And -- and that impacted the way that you

| | | |
|---|---|---|
| 10:00AM | 1 | interacted with law enforcement at that time, correct? |
| 10:00AM | 2 | A.   Yes. |
| 10:00AM | 3 | Q.   Yeah.  Were you scared? |
| 10:00AM | 4 | A.   I necessarily wasn't scared.  I was more -- it was more |
| 10:00AM | 5 | toward my son, because not only that, they would come to the |
| 10:00AM | 6 | house, my mother's home where my son was residing at the |
| 10:00AM | 7 | time.  And they would be waiting outside the house for my |
| 10:00AM | 8 | mother to come home.  And my son would call me saying that |
| 10:00AM | 9 | they're here.  And he was scared, so it kind of made me a |
| 10:00AM | 10 | little bit, you know, uneasy. |
| 10:00AM | 11 | **MR. SOEHNLEIN:**  That's all I have.  Thank you. |
| 10:00AM | 12 | **MR. TRIPI:**  I have some questions, Your Honor. |
| 10:00AM | 13 | |
| 10:00AM | 14 | **REDIRECT EXAMINATION BY MR. TRIPI:** |
| 10:00AM | 15 | Q.   Good morning again, Ms. R.A. |
| 10:00AM | 16 | A.   Good morning. |
| 10:00AM | 17 | Q.   I have a little bit of followup based on the questions |
| 10:01AM | 18 | that Mr. Soehnlein asked you, okay? |
| 10:01AM | 19 | A.   Um-hum. |
| 10:01AM | 20 | Q.   As I think we established on Friday, until we had |
| 10:01AM | 21 | questioned -- I had questioned you in court, you and I have |
| 10:01AM | 22 | never met each other; fair to say? |
| 10:01AM | 23 | A.   No, I met you before. |
| 10:01AM | 24 | Q.   I said hello, but we never engaged in a conversation; is |
| 10:01AM | 25 | that fair? |

10:01AM   1    A.  I don't believe so.  I think that before the grand jury

10:01AM   2    testimony, you were in the room with me.  Across from me.

10:01AM   3    Q.  Okay.  Well, I asked you about Mr. Cullinane and

10:01AM   4    Mr. Burns, and you said you didn't remember names.  Do you

10:01AM   5    remember that testimony from Friday?

10:01AM   6    A.  I don't think you even asked me that.  You never said

10:01AM   7    anything about Cullinane in or Burns directly to me.

10:01AM   8        **MR. TRIPI:**  All right.  Let's pull up her grand jury

10:01AM   9    transcript, Ms. Champoux.

10:01AM   10       **THE WITNESS:**  You asked me if I was.

10:01AM   11       **MR. TRIPI:**  There's not a question right now.

10:01AM   12       Let's pull up her grand jury.  I'm going to see if we

10:02AM   13   can refresh her recollection as to who dealt with her at the

10:02AM   14   grand jury.

10:02AM   15       All right.  I'm going to ask you to read that first

10:02AM   16   page, this is Government Exhibit 3562A.

10:02AM   17       And, Ms. Champoux, can we highlight the "by" portion

10:02AM   18   of what I've circled there?  Just "by."  That part.

10:02AM   19       **BY MR. TRIPI:**

10:02AM   20   Q.  Okay.  Do you see that there?

10:02AM   21   A.  I do.

10:02AM   22   Q.  Now, isn't it true that you dealt with another prosecutor

10:02AM   23   during your grand jury, Mr. Brendan Cullinane?  Yes or no.

10:02AM   24   A.  Who is this now?

10:02AM   25   Q.  My question to you, ma'am, is:  Does that refresh your

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 7 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

7

10:02AM    1    recollection that you dealt with --

10:02AM    2    A.  No, it --

10:02AM    3    Q.  -- Brendan Cullinane?

10:02AM    4    A.  -- it -- it really doesn't.

10:02AM    5    Q.  Okay.

10:02AM    6    A.  I don't know who this gentlemen is.  I mean, I thought

10:02AM    7    you were speaking of the defense, or --

10:02AM    8        Well, now that I see it --

10:02AM    9    Q.  So, it's your testimony under oath that I questioned you

10:03AM   10    in grand jury and I dealt you?

10:03AM   11    A.  You didn't question me in grand jury.  You asked if I

10:03AM   12    ever spoke to you before, and I said yes, I have in the

10:03AM   13    office before.

10:03AM   14            MR. TRIPI:  Okay.  We'll take that down,

10:03AM   15    Ms. Champoux.

10:03AM   16            BY MR. TRIPI:

10:03AM   17    Q.  Now, I'm going to move on to another topic for you, okay?

10:03AM   18        So let's go through the timeline of events a little bit,

10:03AM   19    okay?

10:03AM   20    A.  Absolutely.

10:03AM   21    Q.  Your first interview with law enforcement was on

10:03AM   22    June 26th, 2020, when you were interviewed in a car by

10:03AM   23    Geraldo Rondan and Rick Cawthard in Keenan Center Park,

10:03AM   24    correct?

10:03AM   25    A.  Yes.

10:03AM 1  Q.  And where is Keenan Center Park located?

10:03AM 2  A.  In Lockport.

10:03AM 3  Q.  And you live in Lockport, right?

10:03AM 4  A.  Yes, I do.

10:03AM 5  Q.  And you lived in Lockport back on June 26th, 2020,

10:04AM 6  correct?

10:04AM 7  A.  Yes.

10:04AM 8  Q.  And those two agents, they met you in the park, correct?

10:04AM 9  A.  Yes.

10:04AM 10  Q.  That was a location you chose, correct?

10:04AM 11  A.  Yes.

10:04AM 12  Q.  And you sat in the vehicle with them and you talked to

10:04AM 13  them?

10:04AM 14  A.  I didn't sit in a vehicle with them.

10:04AM 15  Q.  Where did you --

10:04AM 16  A.  They sat at a picnic table with me.

10:04AM 17  Q.  Oh, okay, so they sat at a picnic table in the park with

10:04AM 18  you, correct?

10:04AM 19  A.  Yes.

10:04AM 20  Q.  And so you came from work or from your home to the park?

10:04AM 21  A.  I came from my home.

10:04AM 22  Q.  Okay.  So you -- you had arranged the interview over the

10:04AM 23  phone with them, correct?

10:04AM 24          MR. SOEHNLEIN:  Your Honor, I'm just going to object

10:04AM 25  to the leading.  This is redirect, this is not cross.

10:04AM | 1 |      **MR. TRIPI:**  No, this is Rule 607 and 611(c).

10:04AM | 2 |      **THE COURT:**  Yeah.  Overruled.

10:04AM | 3 |      **BY MR. TRIPI:**

10:04AM | 4 | Q.  So --

10:04AM | 5 | A.  I didn't talk --

10:04AM | 6 | Q.  Let me re-ask the question, because we had a court

10:04AM | 7 | ruling, okay?

10:04AM | 8 | A.  Okay.

10:04AM | 9 | Q.  So you had to arrange where to meet with them, and you

10:04AM | 10 | did that over the phone?

10:04AM | 11 | A.  No, I didn't do that over the phone.

10:04AM | 12 | Q.  Okay.  So you drove from your house to the park, you sat

10:04AM | 13 | at a picnic bench, and those two individuals met you,

10:04AM | 14 | correct?

10:05AM | 15 | A.  Yes.

10:05AM | 16 | Q.  You voluntarily drove from your house to the park and sat

10:05AM | 17 | and met with them, true?

10:05AM | 18 | A.  Yes.

10:05AM | 19 | Q.  They were polite to you, correct?

10:05AM | 20 | A.  They were polite.

10:05AM | 21 | Q.  They were professional, correct?

10:05AM | 22 | A.  Yes.

10:05AM | 23 | Q.  You sat and talked to them for a little while, correct?

10:05AM | 24 | A.  Yes.

10:05AM | 25 | Q.  They -- they took down some notes, they jotted down some

10:05AM  1  things, true?

10:05AM  2  A.  True.

10:05AM  3  Q.  And during that interview, they indicated to you they'd

10:05AM  4  keep in touch with you, correct?

10:05AM  5  A.  Yes.

10:05AM  6  Q.  All right.  And that was a location that you had picked

10:05AM  7  to -- where you wanted to meet with them, correct?

10:05AM  8  A.  Yes, because they called me every single day.

10:05AM  9  Q.  Yes or no to my question.

10:05AM  10  A.  Yes.

10:05AM  11  Q.  That was your choice, correct?

10:05AM  12  A.  Yes.

10:05AM  13  Q.  And so they met you on your terms, right?

10:06AM  14  A.  Yes.

10:06AM  15  Q.  And then you went into grand jury not too long after

10:06AM  16  that, correct?

10:06AM  17  A.  Yes.

10:06AM  18        **MR. TRIPI:**  One moment.

10:06AM  19        **BY MR. TRIPI:**

10:06AM  20  Q.  I think we just looked at a moment ago, looking at 3562A,

10:06AM  21  grand jury wasn't too much -- didn't follow that interaction

10:07AM  22  with the agents by too much time, correct?

10:07AM  23  A.  I don't understand the question.

10:07AM  24  Q.  You testified in grand jury a couple months later, about

10:07AM  25  September; does that sound about right?

| | |
|---|---|
| 10:07AM | 1 |
| 10:07AM | 2 |
| 10:07AM | 3 |
| 10:07AM | 4 |
| 10:07AM | 5 |
| 10:07AM | 6 |
| 10:07AM | 7 |
| 10:07AM | 8 |
| 10:07AM | 9 |
| 10:07AM | 10 |

A.  Safe to say.

Q.  Okay.  And you met that day when you came to grand

jury -- at least you recall meeting Special Agent Burns that

day?

A.  At grand jury?  I don't think I met with Special Agent

Burns.  I don't know really names.  It was kind of a --

Q.  Since that --

A.  -- overwhelming.

Q.  -- since that time, you've -- you've communicated with

Special Agent Burns, correct?

A.  Yes.

Q.  And he's kept in touch with you regarding scheduling,

things like that; fair to say?

A.  Yes.

Q.  Okay.  He's been a gentleman to you, correct?

A.  Yes.

Q.  He's been professional?

A.  He has.

Q.  He's been appropriate?

A.  Yes.

Q.  And now, we talked about it, you went into grand jury

on -- in September and you answered questions under oath,

right?

A.  I did.

Q.  And we went through on Friday some of those questions and

| | | |
|---|---|---|
| 10:08AM | 1 | answers that you gave under oath back then, correct? |
| 10:08AM | 2 | A.  Are you talking, like -- |
| 10:08AM | 3 | Q.  On Friday when I asked you some questions, we covered -- |
| 10:08AM | 4 | A.  I'm sorry, I thought you were recalling about the grand |
| 10:08AM | 5 | jury on a Friday, and you're recalling on Friday here today? |
| 10:08AM | 6 | Q.  We talked on Friday -- |
| 10:08AM | 7 | A.  Okay. |
| 10:08AM | 8 | Q.  -- when I stood here -- |
| 10:08AM | 9 | A.  Yep. |
| 10:08AM | 10 | Q.  -- and you sat there -- |
| 10:08AM | 11 | A.  Yes. |
| 10:08AM | 12 | Q.  -- and I asked you questions, and then at times we |
| 10:08AM | 13 | referred to your grand jury and things you said? |
| 10:08AM | 14 | A.  Yes. |
| 10:08AM | 15 | Q.  Okay.  And after that grand jury, things changed for you |
| 10:08AM | 16 | in terms of how you started to view the government, correct? |
| 10:08AM | 17 | A.  I don't -- I wouldn't say things changed. |
| 10:08AM | 18 | Q.  Okay.  Well, this year, in the lead-up to this trial, in |
| 10:08AM | 19 | October, you started posting things to Facebook complaining |
| 10:09AM | 20 | about this case; yes or no? |
| 10:09AM | 21 | A.  No.  I have never posted about this case. |
| 10:09AM | 22 | Q.  I asked you a "yes" or "no" question. |
| 10:09AM | 23 | A.  No, I've never posted about this case. |
| 10:09AM | 24 | Q.  You posted letters that the defendant wrote -- |
| 10:09AM | 25 | A.  No, I have not. |

Case 1:19-cr-00227-LJV-MJR   Document 1512   Filed 04/27/25   Page 13 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

13

| 10:09AM | 1 | Q.  Let me finish the question, ma'am, that's how this goes. |
| 10:09AM | 2 | A.  Okay. |
| 10:09AM | 3 | Q.  Okay?  You posted letters to Facebook on your profile |
| 10:09AM | 4 | Rudy Marie, correct? |
| 10:09AM | 5 | A.  Yeah.  Go ahead. |
| 10:09AM | 6 | Q.  You have a Rudy Marie Facebook account? |
| 10:09AM | 7 | A.  Um-hum. |
| 10:09AM | 8 | Q.  Rudy Marie -- |
| 10:09AM | 9 | **THE COURT:**  One at a time.  Wait -- wait until the |
| 10:09AM | 10 | question is finished before you start answering. |
| 10:09AM | 11 | Mr. Tripi, please wait for the answer to be finished |
| 10:09AM | 12 | before you start asking another question. |
| 10:09AM | 13 | **BY MR. TRIPI:** |
| 10:09AM | 14 | Q.  Rudy Marie is you, correct? |
| 10:09AM | 15 | A.  Yes. |
| 10:09AM | 16 | Q.  And you posted letters that Mr. Gerace wrote on |
| 10:09AM | 17 | October 3rd, 2024 to Facebook?  Yes or no. |
| 10:09AM | 18 | A.  Yes. |
| 10:09AM | 19 | Q.  And you posted the letters and you -- you gave an |
| 10:09AM | 20 | explanation to your Facebook followers that this letter was |
| 10:09AM | 21 | going to the Boston Globe, senators, congressmen and women, |
| 10:10AM | 22 | MSNBC, USA Today, New York Times, and many others.  You said |
| 10:10AM | 23 | that, correct? |
| 10:10AM | 24 | A.  Yes. |
| 10:10AM | 25 | Q.  And in the letter, it was defendant's view and his rant |

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 14 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

14

10:10AM 1  about complaints about his case, and specifically the

10:10AM 2  prosecutors, true?

10:10AM 3          **MR. SOEHNLEIN:**  Objection, Judge.

10:10AM 4          **THE COURT:**  Sustained to the form of the question.

10:10AM 5          **BY MR. TRIPI:**

10:10AM 6  Q.  It was the defendant's complaints about prosecutors on

10:10AM 7  his case, correct?

10:10AM 8  A.  The letters?

10:10AM 9  Q.  Yes.

10:10AM 10 A.  Yes.

10:10AM 11 Q.  And you posted that.  You advertised that to the --

10:10AM 12 A.  I did not advertise that --

10:10AM 13 Q.  -- people --

10:10AM 14         **THE COURT:**  One -- one at a time, please.

10:10AM 15         **BY MR. TRIPI:**

10:10AM 16 Q.  When I'm speaking, you need to wait.

10:10AM 17 A.  I will.

10:10AM 18 Q.  You posted that to as many people as -- as you could,

10:10AM 19 correct?

10:10AM 20 A.  Not as many people as I could.  I have friends on

10:10AM 21 Facebook.  Only to my friends.  It wasn't a public post.

10:10AM 22 Q.  Well, let's talk about some of your friends on Facebook

10:11AM 23 then.  As of that date --

10:11AM 24         **MR. SOEHNLEIN:**  Object.

25

10:11AM  1        **BY MR. TRIPI:**

10:11AM  2  Q.  -- some of your friends on Facebook included Linda

10:11AM  3  Gerace, the defendant's mom, right?

10:11AM  4        **MR. SOEHNLEIN:**  I'm sorry.  Relevance, Judge.

10:11AM  5        **THE COURT:**  Overruled.

10:11AM  6        **BY MR. TRIPI:**

10:11AM  7  Q.  It included the defendant's mom, Linda Gerace, correct?

10:11AM  8  A.  Yes.

10:11AM  9  Q.  It included Peter Gerace, correct?  This defendant?

10:11AM  10  A.  Sure, yes.

10:11AM  11  Q.  It included his brother, David Gerace, correct?

10:11AM  12  A.  Yes.

10:11AM  13  Q.  It included a whole bunch of other people, too, didn't

10:11AM  14  it?

10:11AM  15  A.  Yes.

10:11AM  16  Q.  You have a lot of Facebook friends, right?

10:11AM  17  A.  About a thousand.

10:11AM  18  Q.  And you were hoping those thousand would further

10:11AM  19  circulate his complaints, true?

10:11AM  20  A.  No.

10:11AM  21  Q.  Okay.  So you just posted it willy-nilly?

10:11AM  22  A.  Sure did.

10:11AM  23  Q.  Okay.  When you were waiting to testify, even though the

10:11AM  24  government was going to call you on Friday, in the hallway

10:11AM  25  you sat with the defendant's mom and dad, correct?

| | | |
|---|---|---|
| 10:11AM | 1 | A.  Are you talking about today or yesterday? |
| 10:11AM | 2 | Q.  Friday. |
| 10:12AM | 3 | A.  Oh, yes, I was talking about my son and Christmas. |
| 10:12AM | 4 | Q.  Okay.  My question -- do you remember what my question |
| 10:12AM | 5 | was? |
| 10:12AM | 6 | A.  If I sat with them? |
| 10:12AM | 7 | Q.  Okay.  What's the answer to that? |
| 10:12AM | 8 | A.  I sat with them briefly, yes. |
| 10:12AM | 9 | Q.  You laughed with them in the hallway, correct? |
| 10:12AM | 10 | A.  Yeah, I smiled because we're talking about my son. |
| 10:12AM | 11 | Q.  What was my question? |
| 10:12AM | 12 | A.  Yes, I smiled. |
| 10:12AM | 13 | Q.  You're still friends on Facebook with the defendant's |
| 10:12AM | 14 | whole family, correct? |
| 10:12AM | 15 | A.  Yes, I'm friends with them.  I don't think they're bad |
| 10:12AM | 16 | people. |
| 10:12AM | 17 | Q.  That was a "yes" or "no" question. |
| 10:12AM | 18 | A.  Yes. |
| 10:12AM | 19 | Q.  Okay.  Now, in terms of your history with the defendant, |
| 10:12AM | 20 | let's talk a little bit about that. |
| 10:12AM | 21 | Obviously, you had a son with him in 2006, correct? |
| 10:12AM | 22 | A.  Yes. |
| 10:12AM | 23 | Q.  The defendant supports your son financially, true? |
| 10:12AM | 24 | A.  True.  But he's 18 now, so he no longer does that. |
| 10:12AM | 25 | Q.  My question is, yes or no -- |

10:12AM   1   A.   Yes.

10:12AM   2   Q.   -- the defendant supports your son financially?

10:12AM   3   A.   Yes.

10:12AM   4   Q.   Your son's in college now?

10:12AM   5   A.   He is.

10:12AM   6   Q.   Where does he go?

10:13AM   7   A.   NCCC.

10:13AM   8   Q.   Now, obviously, you're a mom, and your son -- your son's

10:13AM   9   father's the defendant, right?

10:13AM  10   A.   Yes.

10:13AM  11   Q.   We've established that by now.

10:13AM  12        Yes or no:  Is it fair to say that you don't want your

10:13AM  13   son to be mad at you for the rest of his life for testifying

10:13AM  14   against his dad?

10:13AM  15   A.   No.  That is not fair to say.

10:13AM  16   Q.   Okay.  That -- that's not been part of your calculus at

10:13AM  17   all?

10:13AM  18   A.   No.

10:13AM  19   Q.   Okay.  Now, isn't it true, ma'am, that your relationship

10:14AM  20   and the history of it with this defendant has you nervous to

10:14AM  21   testify publicly?

10:14AM  22   A.   No.

10:14AM  23   Q.   Isn't it true, ma'am, that you regret telling agents that

10:14AM  24   day in the park June 26th, 2020 what you did?

10:14AM  25        You -- you -- you regret telling them the things that you

Case 1:19-cr-00227-LJV-MJR   Document 1512   Filed 04/27/25   Page 18 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

18

10:14AM  1   told them, don't you?

10:14AM  2   A.  No.

10:14AM  3   Q.  You regret going in grand jury and telling the grand jury

10:14AM  4   the things that you said?

10:14AM  5   A.  No.

10:14AM  6   Q.  You regret those things because, as you sit here now,

10:14AM  7   you're scared and defensive?

10:14AM  8   A.  No, I am not scared.

10:14AM  9   Q.  Well, you were aware of the defendant's grandfather's

10:14AM  10  reputation for being involved in organized crime, correct?

10:14AM  11  A.  Was I aware of that?

10:14AM  12  Q.  Yes.  You were aware of that as you sat with agents

10:15AM  13  June 20th, 2020, correct?

10:15AM  14  A.  Yes.

10:15AM  15  Q.  You were aware of his family's reputation for connections

10:15AM  16  to organized crime when you went in grand jury in 2020,

10:15AM  17  correct?

10:15AM  18  A.  Yes.

10:15AM  19  Q.  You told the agents that day, June 26th, 2020, you're

10:15AM  20  still scared as you sat with them in the park, correct?

10:15AM  21  A.  I don't think I said that, no.

10:15AM  22  Q.  All right.  We're gonna show you 3562B, and I'm going to

10:15AM  23  have you read page 1.

10:15AM  24       **MR. TRIPI:**  This is just for the witness.

         25

|        |    |                                                                        |
|--------|----|------------------------------------------------------------------------|
| 10:15AM | 1  | **BY MR. TRIPI:** |
| 10:15AM | 2  | Q.  Let me ask you a few questions before you read, and then |
| 10:15AM | 3  | I'll have you read it and see if we can refresh your |
| 10:15AM | 4  | recollection. |
| 10:15AM | 5  | Ms. R.A., if you can look at me for just a second, I have |
| 10:15AM | 6  | one more question and then I'll refresh your memory. |
| 10:15AM | 7  | Earlier we established the agents sat with you and they |
| 10:15AM | 8  | were jotting down notes, correct? |
| 10:15AM | 9  | A.  Yes. |
| 10:15AM | 10 | Q.  And those notes made their way into a report, correct? |
| 10:16AM | 11 | A.  Yes. |
| 10:16AM | 12 | Q.  Okay.  Now take a look, read page 1 to yourself, and then |
| 10:16AM | 13 | I'm going to ask my question again. |
| 10:16AM | 14 | **MR. TRIPI:**  And, Ms. Champoux, while she's reading, |
| 10:16AM | 15 | can you highlight the last sentence of the second-to-last |
| 10:17AM | 16 | paragraph for her?  The last sentence of that paragraph. |
| 10:17AM | 17 | Highlight, not zoom. |
| 10:17AM | 18 | **THE WITNESS:**  Okay.  I see it. |
| 10:17AM | 19 | **BY MR. TRIPI:** |
| 10:17AM | 20 | Q.  Keep reading. |
| 10:17AM | 21 | A.  Okay. |
| 10:17AM | 22 | Q.  We're going to go to page 2 now and let you read that. |
| 10:18AM | 23 | A.  I don't believe all of this was verbatim of things that I |
| 10:18AM | 24 | said. |
| 10:18AM | 25 | Q.  Just read it to yourself -- |

10:18AM  1   A.   Okay.

10:18AM  2   Q.   -- and let us know when you're done.

10:18AM  3   A.   I'm done.

10:18AM  4        **MR. TRIPI:**  Okay.  We can take that down.

10:18AM  5        **BY MR. TRIPI:**

10:18AM  6   Q.   Now "yes" or "no" to my question:  Isn't it true that you

10:18AM  7   expressed to agents multiple times on June 26th, 2020, that

10:18AM  8   you were still scared of that defendant as you sat there at

10:18AM  9   the picnic bench in the park?  "Yes" or "no" --

10:18AM  10  A.   I don't --

10:18AM  11  Q.   -- are the only words that should come out of your mouth.

10:18AM  12       **MR. SOEHNLEIN:**  Objection.  Argumentative.

10:18AM  13       **MR. TRIPI:**  No, I'm allowed to control the witness.

10:18AM  14       **THE COURT:**  You are --

10:18AM  15       **THE WITNESS:**  Are you?

10:18AM  16       **THE COURT:**  Stop.  Stop, please.

10:18AM  17       If counsel asks for a "yes" or "no" answer, then your

10:18AM  18  answer has to be either "yes," "no," or "I can't answer yes or

10:18AM  19  no."  Okay?

10:18AM  20       **THE WITNESS:**  I can't answer "yes" or "no",

10:18AM  21  Mr. Tripi.

10:18AM  22       **BY MR. TRIPI:**

10:18AM  23  Q.   And it may be understandable, but you're still scared as

10:19AM  24  you sit here today, aren't you?

10:19AM  25  A.   No.

| | | |
|---|---|---|
| 10:19AM | 1 | Q.  Well, you know the defendant has connections to the |
| 10:19AM | 2 | Outlaws, correct? |
| 10:19AM | 3 | You've talked about him riding with the Outlaws before, |
| 10:19AM | 4 | correct? |
| 10:19AM | 5 | A.  Yes. |
| 10:19AM | 6 | Q.  Okay.  You know his entire family has a reputation for |
| 10:19AM | 7 | being connected to organized crime, correct? |
| 10:19AM | 8 | **MR. SOEHNLEIN:**  Objection.  Entire family. |
| 10:19AM | 9 | **THE COURT:**  Yeah, sustained. |
| 10:19AM | 10 | **BY MR. TRIPI:** |
| 10:19AM | 11 | Q.  You know his family and him have connections to organized |
| 10:19AM | 12 | crime, correct? |
| 10:19AM | 13 | **MR. SOEHNLEIN:**  Objection. |
| 10:19AM | 14 | **THE WITNESS:**  I can't answer "yes" or "no" to that. |
| 10:19AM | 15 | **THE COURT:**  Stop.  Stop.  Stop. |
| 10:19AM | 16 | Sustained. |
| 10:19AM | 17 | Please pause before you start answering.  So let him |
| 10:19AM | 18 | finish and pause so I can rule, okay? |
| 10:19AM | 19 | That question was improper, so he's got to ask |
| 10:19AM | 20 | another one. |
| 10:19AM | 21 | Sustained. |
| 10:19AM | 22 | The jury will strike any answer that was given. |
| 10:19AM | 23 | **BY MR. TRIPI:** |
| 10:19AM | 24 | Q.  On June 26th, 2020, you reported to the agents, quote, |
| 10:19AM | 25 | Peter always talked about it, it's on the internet, it's well |

| | | |
|---|---|---|
| 10:19AM | 1 | known who they are, correct? |
| 10:20AM | 2 | **MR. SOEHNLEIN:** Objection. |
| 10:20AM | 3 | **THE COURT:** Sustained. |
| 10:20AM | 4 | **MR. TRIPI:** Your Honor, may I come up on that? |
| 10:20AM | 5 | **THE COURT:** Yeah, come on up. |
| 10:20AM | 6 | (Sidebar discussion held on the record.) |
| 10:20AM | 7 | **MR. TRIPI:** So, Judge, this -- this is, in my view, a |
| 10:20AM | 8 | proper oral impeachment. It's not hearsay, because I'm |
| 10:20AM | 9 | impeaching her with -- with things that's she's denying now |
| 10:20AM | 10 | and things she said orally to agents. |
| 10:20AM | 11 | So if she denies that she said his family or him were |
| 10:20AM | 12 | in organized crime, and she's previously said it, it's not for |
| 10:20AM | 13 | its truth, but it's to impeach her under Rule 607 and all of |
| 10:20AM | 14 | those other rules. |
| 10:20AM | 15 | So I'm not -- a limiting instruction would be |
| 10:20AM | 16 | appropriate, but she has said those things. |
| 10:20AM | 17 | **MR. SOEHNLEIN:** But that's not her statement, and she |
| 10:20AM | 18 | said that it's not accurate, so there's nothing to impeach her |
| 10:20AM | 19 | with. |
| 10:20AM | 20 | **THE COURT:** And you can't quote from the document. |
| 10:20AM | 21 | My problem is if it's a quote. |
| 10:20AM | 22 | **MR. TRIPI:** If there are quotes -- if there are |
| 10:20AM | 23 | quotes from -- from an agent. |
| 10:20AM | 24 | **MR. SOEHNLEIN:** No. |
| 10:20AM | 25 | **THE COURT:** You can't quote from a document. You can |

10:21AM   1    ask her if she said that.

10:21AM   2            **MR. TRIPI:**  Well, I've done that.  Fine, I'll do it

10:21AM   3    that way.

10:21AM   4            **THE COURT:**  Yeah.

10:21AM   5            **MR. SOEHNLEIN:**  Yeah.

10:21AM   6            **THE COURT:**  You can't -- can't quote a document.

10:21AM   7            **MR. SOEHNLEIN:**  And you can't cross-examine her with

10:21AM   8    that, it's not her statement.

10:21AM   9            **MR. TRIPI:**  I can use it to form whatever questions I

10:21AM   10   want, that's how I know what happens at the meeting.

10:21AM   11           **THE COURT:**  As long as you don't read from the

10:21AM   12   document or give the jury the impression that you're reading

10:21AM   13   from a document --

10:21AM   14           **MR. TRIPI:**  Sure, okay.

10:21AM   15           **THE COURT:**  -- because it's not a -- it's not her

10:21AM   16   statement.

10:21AM   17           **MR. TRIPI:**  But --

10:21AM   18           **THE COURT:**  This is usually the argument that you're

10:21AM   19   making to me.

10:21AM   20           **MR. TRIPI:**  Well, that goes to -- that goes to your

10:21AM   21   instruction that questions not evidence, and you instruct the

10:21AM   22   jury on that.

10:21AM   23           My questions not evidence.  It's the question and the

10:21AM   24   answer.

10:21AM   25           **THE COURT:**  You can't --

10:21AM 1    **MR. TRIPI:**  That was the buzzword that -- I'm -- I'm

10:21AM 2  just trying to understand.

10:21AM 3    **THE COURT:**  You can't quote from the document.

10:21AM 4    **MR. TRIPI:**  Okay.

10:21AM 5    (End of sidebar discussion.)

10:21AM 6    **THE COURT:**  The objection is sustained.  Ask the next

10:21AM 7  question, please.

10:21AM 8    **BY MR. TRIPI:**

10:21AM 9  Q.  You told the agents that the defendant's family is

10:21AM 10  involved in organized crime, and he would talk about rats and

10:21AM 11  snitches, correct?

10:21AM 12    **MR. SOEHNLEIN:**  Objection.

10:21AM 13    **THE COURT:**  Overruled.

10:21AM 14    You said that: "Yes," "no," or "I can't answer yes

10:22AM 15  or no."

10:22AM 16    **THE WITNESS:**  I can't answer yes or no.

10:22AM 17    **BY MR. TRIPI:**

10:22AM 18  Q.  All right.  Any question where a yes answer would hurt

10:22AM 19  him, are -- you're gonna say you don't remember or you can't

10:22AM 20  answer; isn't that true?

10:22AM 21    **MR. SOEHNLEIN:**  Objection.

10:22AM 22    **THE COURT:**  Sustained.  Sustained.  Sustained.

10:22AM 23    **THE WITNESS:**  No.

10:22AM 24    **BY MR. TRIPI:**

10:22AM 25  Q.  You know and have reported that the defendant gave

10:22AM  1   cocaine to dancers to engage in threesomes at Pharaoh's,

10:22AM  2   correct?

10:22AM  3   A.  I can't answer yes or no to that, sir.

10:22AM  4   Q.  Well, you've previously reported that, too, haven't you?

10:22AM  5   A.  I reported it?  I never -- I don't even know what

10:22AM  6   questions were asked of me in that park.

10:22AM  7   Q.  Okay.  So you said that before?

10:22AM  8   A.  Excuse me?

10:22AM  9   Q.  You've said that before?

10:22AM  10  A.  I don't know if I said it before.

10:22AM  11  Q.  Now, turning to Mr. Bongiovanni just for a moment, you

10:22AM  12  were asked a little bit about him today, correct?

10:22AM  13  A.  Yes.

10:22AM  14  Q.  Now --

10:22AM  15  A.  Yes.

10:22AM  16  Q.  -- you've seen Mr. Bongiovanni several times, correct?

10:23AM  17  A.  Several times, when?

10:23AM  18  Q.  In your life?

10:23AM  19  A.  Yes.

10:23AM  20  Q.  You've seen him at SoHo?

10:23AM  21  A.  Yes.

10:23AM  22  Q.  You've seen him at Pharaoh's?

10:23AM  23  A.  I've never seen him at Pharaoh's.

10:23AM  24  Q.  Okay.  We'll get back to that in a second.

10:23AM  25  A.  Okay.

| | | |
|---|---|---|
| 10:23AM | 1 | Q.  You've been to Ellicottville with him? |
| 10:23AM | 2 | A.  Yes. |
| 10:23AM | 3 | Q.  You've been out to dinner with him and his girlfriend and |
| 10:23AM | 4 | the defendant? |
| 10:23AM | 5 | A.  Yes. |
| 10:23AM | 6 | Q.  Now, it's your claim today that you never saw Bongiovanni |
| 10:23AM | 7 | at Pharaoh's? |
| 10:23AM | 8 | A.  No. |
| 10:23AM | 9 | Q.  On June 26th, 2020, you told the agents that Bongiovanni |
| 10:23AM | 10 | frequented Pharaoh's? |
| 10:23AM | 11 | A.  Is this in the park again? |
| 10:23AM | 12 | Q.  Yeah, June 26th, 2020 -- |
| 10:24AM | 13 | A.  I don't remember what happened in the park, sir. |
| 10:24AM | 14 | Q.  Please, can I just finish my question? |
| 10:24AM | 15 | A.  Sure. |
| 10:24AM | 16 | Q.  On June 26th, 2020, you told the agents that Bongiovanni |
| 10:24AM | 17 | frequented Pharaoh's, correct? |
| 10:24AM | 18 | A.  I don't know.  I can't answer yes or no to that. |
| 10:24AM | 19 | I was also asked that in the Bongiovanni trial. |
| 10:24AM | 20 | And the prosecution used that -- well, I wouldn't know |
| 10:24AM | 21 | what was going on. |
| 10:24AM | 22 | **MR. TRIPI:**  Move to strike. |
| 10:24AM | 23 | **THE COURT:**  Stop. |
| 10:24AM | 24 | **MR. TRIPI:**  Move to strike everything in that answer. |
| 10:24AM | 25 | **THE COURT:**  Yeah.  All that -- all that's struck. |

10:24AM  1    Ma'am, just please -- just answer the questions,

10:24AM  2    please.

10:24AM  3         **BY MR. TRIPI:**

10:24AM  4    Q.  So regarding Katrina Nigro, you stopped hanging around

10:24AM  5    her sometime in 2005, correct?

10:24AM  6    A.  Yes.

10:24AM  7    Q.  You didn't really see Katrina Nigro much when Peter dated

10:24AM  8    her, correct?

10:24AM  9    A.  I didn't see her much?  I had to see her usually every

10:24AM  10   time there was a drop-off or at my son's baseball games.  So,

10:24AM  11   yes, I saw her frequently.

10:24AM  12        **MR. TRIPI:**  Ms. Champoux, can we pull up for the

10:24AM  13   witness only Exhibit 3562K, page 71.  We're gonna go lines 12

10:25AM  14   through 21.

10:25AM  15        Actually, no, we don't have to pull it up, I'm just

10:25AM  16   going to use it.

10:25AM  17        Counsel, we'll be at page 71, lines 12 through 21.

10:25AM  18        **MR. SOEHNLEIN:**  I'm sorry, Joe, the exhibit number?

10:25AM  19        **MR. TRIPI:**  I'm sorry, it's 3562K, page 71, lines 12

10:25AM  20   through 21.

10:25AM  21        **BY MR. TRIPI:**

10:25AM  22   Q.  Now, you testified at a proceeding under oath in that

10:25AM  23   same chair back on September 13th, 2024, correct?

10:25AM  24   A.  Yes.

10:25AM  25   Q.  And during that proceeding, Mr. Cooper was asking you

| | | |
|---|---|---|
| 10:25AM | 1 | some questions for the government; do you remember that? |
| 10:25AM | 2 | A.  Yes. |
| 10:25AM | 3 | Q.  And on that day, you were asked these questions and you |
| 10:25AM | 4 | gave these answers under oath: |
| 10:25AM | 5 | "Question:  So when Peter was dating Katrina Nigro, what |
| 10:25AM | 6 | type of interactions did you have with Ms. Nigro during that |
| 10:25AM | 7 | period? |
| 10:25AM | 8 | "Answer:  I didn't have the best interactions with her, |
| 10:26AM | 9 | but I'd have to be civil with her because she was with my son |
| 10:26AM | 10 | and she was with Peter. |
| 10:26AM | 11 | "Question:  And how often would you see Ms. Nigro during |
| 10:26AM | 12 | that period? |
| 10:26AM | 13 | "Answer:  I really didn't see her very often.  It was |
| 10:26AM | 14 | more like phone conversations or through Messenger.  And |
| 10:26AM | 15 | through -- truthfully, I really didn't, I would prefer not to |
| 10:26AM | 16 | talk to her, I would rather talk to Peter." |
| 10:26AM | 17 | Were you asked those questions, did you give those |
| 10:26AM | 18 | answers? |
| 10:26AM | 19 | A.  I was.  And yes, I gave those answers. |
| 10:26AM | 20 | Q.  Okay.  So my question today was:  You really didn't see |
| 10:26AM | 21 | Katrina Nigro much?  The answer to that is yes? |
| 10:26AM | 22 | A.  Excuse me?  Say that again. |
| 10:26AM | 23 | Q.  You didn't really see Katrina Nigro much when they dated? |
| 10:26AM | 24 | And the answer to that, like you said before, is yes? |
| 10:26AM | 25 | A.  Yes. |

| | | |
|---|---|---|
| 10:26AM | 1 | Q.  Okay. |
| 10:26AM | 2 | A.  There were times when I had to see her, sir. |
| 10:26AM | 3 | **MR. TRIPI:**  Stop. |
| 10:26AM | 4 | Move to strike the extraneous comment, Judge. |
| 10:26AM | 5 | **THE COURT:**  It's stricken. |
| 10:26AM | 6 | **BY MR. TRIPI:** |
| 10:26AM | 7 | Q.  You didn't have any interactions with Katrina Nigro |
| 10:27AM | 8 | inside Pharaoh's, correct? |
| 10:27AM | 9 | A.  No. |
| 10:27AM | 10 | Q.  On Friday we established from essentially 2007 on, you |
| 10:27AM | 11 | didn't go to Pharaoh's, correct? |
| 10:27AM | 12 | A.  No. |
| 10:27AM | 13 | Q.  Yes or no, just to clarify it:  You didn't go to |
| 10:27AM | 14 | Pharaoh's from 2007 on, correct? |
| 10:27AM | 15 | A.  No. |
| 10:27AM | 16 | Q.  When did you go to Pharaoh's in there?  Because Friday |
| 10:27AM | 17 | you said from basically 2007 on, you didn't go to Pharaoh's. |
| 10:27AM | 18 | A.  I didn't go to Pharaoh's -- |
| 10:27AM | 19 | Q.  Okay.  We're -- |
| 10:27AM | 20 | A.  -- from 2007 on. |
| 10:27AM | 21 | Q.  -- we're talking past each other. |
| 10:27AM | 22 | A.  Okay. |
| 10:27AM | 23 | Q.  From 2007 on -- |
| 10:27AM | 24 | A.  Yes. |
| 10:27AM | 25 | Q.  -- am I correct in saying you did not go to Pharaoh's? |

| | | |
|---|---|---|
| 10:27AM | 1 | A.  Yes. |
| 10:27AM | 2 | Q.  Okay. |
| 10:27AM | 3 | A.  You're correct in saying that. |
| 10:27AM | 4 | Q.  All right.  And, so, during the times that you were not |
| 10:28AM | 5 | at the club, you don't know what Katrina Nigro saw or did, |
| 10:28AM | 6 | correct? |
| 10:28AM | 7 | A.  I don't know. |
| 10:28AM | 8 | Q.  Okay.  You don't know what other people saw or did, fair? |
| 10:28AM | 9 | A.  Fair. |
| 10:28AM | 10 | Q.  Your interactions with Katrina Nigro were limited to 2015 |
| 10:28AM | 11 | and 2016, and in that context was mostly talking about your |
| 10:28AM | 12 | son, correct? |
| 10:28AM | 13 | A.  Yes. |
| 10:28AM | 14 | Q.  Your conversations with Katrina Nigro, though, even so, |
| 10:28AM | 15 | were few and far between? |
| 10:28AM | 16 | A.  I don't know what "few and far between" mean. |
| 10:28AM | 17 | Like, how many interactions are you speaking of? |
| 10:28AM | 18 | Q.  All right. |
| 10:28AM | 19 | A.  Can you be more specific?  Thank you. |
| 10:28AM | 20 | Q.  All right.  You testified on September 13th, 2024 when |
| 10:28AM | 21 | Mr. Cooper asked you these -- this question, you gave this |
| 10:29AM | 22 | answer: |
| 10:29AM | 23 | "Question:  Would you have conversations with her? |
| 10:29AM | 24 | "Answer: -- |
| 10:29AM | 25 | **THE COURT:**  Can we have a line and -- |

10:29AM    1         **MR. TRIPI:**  Oh, I thought I said 3 and 4.  Page 73,

10:29AM    2    lines 3 and 4.

10:29AM    3         **BY MR. TRIPI:**

10:29AM    4    Q.  "Question:  Would you have conversations with her?

10:29AM    5         "Answer:  Yeah, but they were far and few between."

10:29AM    6         Were you asked that question and did you give that answer

10:29AM    7    back in September?

10:29AM    8    A.  If it is on the record, then I would assume that I said

10:29AM    9    that.  And it probably was few and far between.

10:29AM   10         You asked me, I asked you, what -- what would that

10:29AM   11    constitute as?  That was all.

10:29AM   12    Q.  So you were asked that question, and you gave that

10:29AM   13    answer?

10:29AM   14    A.  Yes.

10:29AM   15    Q.  Now, we just talked about from 2007, on.  But from 2009

10:29AM   16    to 2016, when Ms. Nigro was around Pharaoh's, you were not,

10:29AM   17    correct?

10:29AM   18    A.  I wasn't.

10:30AM   19    Q.  You weren't there at all during that timeframe, correct?

10:30AM   20    A.  No.

10:30AM   21    Q.  You were not there speaking with customers, correct?

10:30AM   22    A.  No.

10:30AM   23    Q.  So, correct?

10:30AM   24    A.  Correct.

10:30AM   25    Q.  You were not there speaking with staff, correct?

10:30AM    1    A.  Correct.

10:30AM    2    Q.  You were not there speaking with other dancers, correct?

10:30AM    3    A.  I wasn't there speaking with other dancers.

10:30AM    4    Q.  Correct?

10:30AM    5    A.  Yeah, correct.

10:30AM    6    Q.  You weren't there talking about Katrina Nigro with

10:30AM    7    customers between 2009 and 2016, correct?

10:30AM    8    A.  No.

10:30AM    9    Q.  Correct?

10:30AM    10   A.  Correct.

10:30AM    11   Q.  Okay.  You weren't there speaking with other staff at

10:30AM    12   Pharaoh's between 2009 and 2016, correct?

10:30AM    13   A.  Correct.

10:30AM    14   Q.  You weren't there speaking with other dancers about

10:30AM    15   Katrina Nigro between 2009 and 2016, correct?

10:30AM    16   A.  Correct.

10:30AM    17   Q.  And, I mean, you had moved on with your life.  You

10:31AM    18   started another family, correct?

10:31AM    19   A.  Yes.

10:31AM    20   Q.  You bettered yourself, you got education, you got a good

10:31AM    21   job, correct?

10:31AM    22   A.  Correct.

10:31AM    23   Q.  That process, that time of your life, you're trying to

10:31AM    24   leave Pharaoh's and all of that behind you; is that fair?

10:31AM    25   A.  That's fair.

10:31AM   1    Q.  So you're not spending a lot of time in your life during

10:31AM   2    that window worrying about Katrina Nigro and going around

10:31AM   3    talking about her with other people, correct?

10:31AM   4    A.  Correct.

10:31AM   5    Q.  You certainly didn't go there in Pharaoh's between 2009

10:31AM   6    and 2016 with someone like Ms. Sawyer and have them write

10:31AM   7    down what people would say about Ms. Nigro, correct?

10:31AM   8    A.  Correct.

10:31AM   9    Q.  And you didn't walk through and take notes about what

10:31AM   10   people might have to say about her, correct?

10:31AM   11   A.  Correct.

10:31AM   12   Q.  Okay.  And that didn't happen at any point between 2009

10:31AM   13   and 2018, correct?

10:31AM   14   A.  Correct.

10:31AM   15   Q.  Or ever.  You've never done that.

10:31AM   16   A.  No.

10:31AM   17   Q.  Okay.  I just have a few more questions, okay?

10:32AM   18   A.  Yes.

10:32AM   19   Q.  Just to put a finer point on some things that we've

10:32AM   20   covered.

10:32AM   21       Fair to say you know the defendant and his whole family,

10:32AM   22   you know them well, correct?

10:32AM   23   A.  Yes.

10:32AM   24   Q.  We've talked about it, I'll ask just one more time.

10:32AM   25       You knew the reputation of his grandfather?

10:32AM     1              MR. SOEHNLEIN:  Object.

10:32AM     2              THE COURT:  Sustained.

10:32AM     3              MR. TRIPI:  Asked and answered, Judge?

10:32AM     4              THE COURT:  Yes.

10:32AM     5              BY MR. TRIPI:

10:32AM     6   Q.  Okay.  You knew he had friends that were in the Outlaws,

10:32AM     7   correct?

10:32AM     8              MR. SOEHNLEIN:  Objection.

10:32AM     9              THE COURT:  Sustained.

10:32AM    10              BY MR. TRIPI:

10:32AM    11   Q.  You knew he had a friend that was a DEA agent, correct?

10:32AM    12              MR. SOEHNLEIN:  Objection.

10:32AM    13              THE COURT:  Sustained.

10:32AM    14              BY MR. TRIPI:

10:32AM    15   Q.  You knew he had a friend that was a New York State

10:32AM    16   Supreme Court judge?  This was not asked.  Correct?

10:32AM    17              MR. SOEHNLEIN:  Objection.  I think it was.

10:32AM    18              THE COURT:  I'm not sure, so I'll allow it.

10:32AM    19              MR. TRIPI:  A little leeway here, Judge.  I'm

10:33AM    20   wrapping up.

10:33AM    21              THE COURT:  Yeah.

10:33AM    22              BY MR. TRIPI:

10:33AM    23   Q.  You knew he had a friend who was a New York State Supreme

10:33AM    24   Court judge?

10:33AM    25   A.  I'm not sure if he was a judge yet.  I think maybe he was

10:33AM  1   a lawyer.

10:33AM  2   Q.  When he married you, he was a judge, correct?  You were

10:33AM  3   in his chambers for that?

10:33AM  4   A.  Yes.

10:33AM  5   Q.  Okay.  So you knew he had a judge friend, correct?

10:33AM  6   A.  Yes.

10:33AM  7   Q.  You knew he had lawyer friends, correct?

10:33AM  8   A.  Yes.

10:33AM  9   Q.  You knew he had police officer friends, correct?

10:33AM  10  A.  Yes.

10:33AM  11  Q.  You knew that he was good friends with the Buffalo police

10:33AM  12  commissioner, and he was the godfather of the commissioner's

10:33AM  13  daughter, correct?

10:33AM  14  A.  Yes.

10:33AM  15  Q.  You knew he had friends in the New York State Police,

10:33AM  16  correct?

10:33AM  17  A.  I don't think so.

10:33AM  18  Q.  You knew he had friends in the Amherst police, correct?

10:33AM  19  A.  No, I did not know that.

10:33AM  20  Q.  You knew he had a lot of friends, correct?

10:33AM  21  A.  Yes, he had a lot of friends.

10:33AM  22  Q.  You knew he was connected, and you were rightly scared to

10:33AM  23  testify against him?

10:33AM  24  A.  No.

10:33AM  25          **THE COURT:**  Sustained.  Sustained.  Sustained.

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 36 of 48
USA v Gerace - R.A. (PW 6) - Soehnlein/Recross - 12/9/24

36

| | | |
|---|---|---|
| 10:33AM | 1 | **MR. TRIPI:** One moment, Judge. |
| 10:34AM | 2 | No further cross, I guess. |
| 10:34AM | 3 | **THE COURT:** Mr. Soehnlein? |
| 10:34AM | 4 | **MR. SOEHNLEIN:** Very brief. Two or three questions. |
| 10:34AM | 5 | |
| 10:34AM | 6 | **RECROSS-EXAMINATION BY MR. SOEHNLEIN:** |
| 10:34AM | 7 | Q. Ms. R.A., there was some testimony about the meeting in |
| 10:34AM | 8 | the park in June of 2020; do you recall that? |
| 10:34AM | 9 | A. Yes. |
| 10:34AM | 10 | Q. And I think you started to testify, it might have got cut |
| 10:34AM | 11 | off, about the number of times that law enforcement contacted |
| 10:34AM | 12 | you before that meeting? |
| 10:34AM | 13 | A. Yes. |
| 10:34AM | 14 | Q. How many times? |
| 10:34AM | 15 | A. Oh, I couldn't count how many times. |
| 10:34AM | 16 | Q. Would you be able to estimate for us? |
| 10:34AM | 17 | A. Between them coming to my mom's house, and calling my |
| 10:34AM | 18 | phone, probably at least 10, 12 times. |
| 10:34AM | 19 | Q. Okay. |
| 10:34AM | 20 | A. Once a day sometimes. |
| 10:34AM | 21 | Q. Okay. And you talked about they came to your mom's |
| 10:34AM | 22 | house, correct? |
| 10:34AM | 23 | A. Um-hum. |
| 10:34AM | 24 | Q. And they called your phone? |
| 10:34AM | 25 | A. Yes. |

10:34AM   1   Q.  And they went to your work?

10:34AM   2   A.  Yes.

10:34AM   3   Q.  And they came to your house?

10:35AM   4   A.  Yes.

10:35AM   5   Q.  And that all led up to that meeting, correct?

10:35AM   6   A.  Yes.

10:35AM   7   Q.  And I think that Mr. Tripi showed you some -- some notes

10:35AM   8   from that meeting; do you recall that?

10:35AM   9   A.  Yes.

10:35AM  10   Q.  You didn't prepare those notes, correct?

10:35AM  11   A.  I didn't prepare those notes.

10:35AM  12   Q.  And you don't know who prepared those notes?

10:35AM  13   A.  No.

10:35AM  14   Q.  You had never seen those before?

10:35AM  15   A.  I have never seen those before.

10:35AM  16   Q.  And nobody showed them to you afterwards and said, hey,

10:35AM  17   are these accurate?

10:35AM  18   A.  No, I've never seen them until today.

10:35AM  19   Q.  Okay.  Now, there was some questions about your

10:35AM  20   interactions with Ms. Nigro from 2009 to 2018, correct?

10:35AM  21   A.  Yes.

10:35AM  22   Q.  Do you recall that?  What interactions did you have with

10:35AM  23   Ms. Nigro --

10:35AM  24          **MR. TRIPI:**  Objection.

10:35AM  25          **MR. SOEHNLEIN:**  -- in that period?

Case 1:19-cr-00227-LJV-MJR   Document 1512   Filed 04/27/25   Page 38 of 48
USA v Gerace - R.A. (PW 6) - Soehnlein/Recross - 12/9/24

38

10:35AM     1           **MR. TRIPI:**  It's beyond the scope of the permissible

10:35AM     2   bounds of the rule.

10:35AM     3           **THE COURT:**  No.  Overruled.

10:35AM     4           **BY MR. SOEHNLEIN:**

10:35AM     5   Q.  What interactions did you have with Ms. Nigro in that

10:35AM     6   time period, 2009 to 2018?

10:35AM     7   A.  Maybe on -- well, mostly on Messenger or on Facebook, or

10:35AM     8   what I've seen on Facebook.

10:35AM     9   Q.  Okay.  And -- and -- and Messenger, you're talking about

10:36AM     10  Facebook Messenger?

10:36AM     11  A.  Yes.

10:36AM     12  Q.  Social media, correct?

10:36AM     13  A.  Yes.

10:36AM     14  Q.  Would she message you in that time?

10:36AM     15  A.  Yes.

10:36AM     16  Q.  Okay.  And you're talking about -- Facebook, you're

10:36AM     17  talking about her Facebook page?

10:36AM     18  A.  Yes.

10:36AM     19  Q.  And things that she would post on Facebook, correct?

10:36AM     20  A.  Yes.

10:36AM     21  Q.  Correct?  And all of that information forms the basis for

10:36AM     22  your opinion of her, correct?

10:36AM     23  A.  Absolutely.

10:36AM     24  Q.  Okay.  And Facebook, that's a -- a public forum, social

10:36AM     25  media, correct?

| | | |
|---|---|---|
| 10:36AM | 1 | A.  Yes. |
| 10:36AM | 2 | Q.  And I think there was some questions from Mr. Tripi, when |
| 10:36AM | 3 | you put something on Facebook presumably you want other |
| 10:36AM | 4 | people to see it, correct? |
| 10:36AM | 5 | A.  Yes. |
| 10:36AM | 6 | Q.  So based on that, what you saw that Ms. Nigro was |
| 10:36AM | 7 | posting, it's your belief that those are things about her |
| 10:36AM | 8 | that she wanted people to see, correct? |
| 10:36AM | 9 | A.  Yes. |
| 10:36AM | 10 | MR. TRIPI:  Objection. |
| 10:36AM | 11 | THE COURT:  Leading? |
| 10:36AM | 12 | MR. TRIPI:  That, and speculative.  When I asked the |
| 10:36AM | 13 | witness about what her intent was, that's one thing. |
| 10:36AM | 14 | THE COURT:  Yeah.  Sustained.  Sustained.  Sustained. |
| 10:36AM | 15 | MR. SOEHNLEIN:  That -- that -- if I may just have |
| 10:36AM | 16 | one more minute?  I may very well be done. |
| 10:37AM | 17 | One final thing.  Ms. Champoux, can you pull up |
| 10:37AM | 18 | 3562K, please? |
| 10:37AM | 19 | THE COURT:  Just for the witness? |
| 10:37AM | 20 | MR. SOEHNLEIN:  Just for the witness at page 72, |
| 10:37AM | 21 | lines 18 to 23, please. |
| 10:37AM | 22 | MR. TRIPI:  Probably going to be a hearsay objection |
| 10:37AM | 23 | here, Your Honor. |
| 10:37AM | 24 | THE COURT:  I'm sorry? |
| 10:37AM | 25 | MR. TRIPI:  There's likely going to be a hearsay |

10:37AM   1   objection, Your Honor, just to preview it for you.

10:37AM   2           MR. SOEHNLEIN:  Your Honor, this her trial testimony,

10:37AM   3   and the prosecution had read lines to her to impeach her.  I

10:37AM   4   just want to read the next line.  That's all.

10:37AM   5           MR. TRIPI:  I -- I object under hearsay.

10:37AM   6           THE COURT:  Hang on.  What lines are you talking

10:37AM   7   about?

10:37AM   8           MR. SOEHNLEIN:  Page 72, 18 to 23.

10:38AM   9           THE COURT:  Can you take that down?  Can you take

10:38AM  10   that --

10:38AM  11           What did the government ask?

10:38AM  12           MR. SOEHNLEIN:  The paragraph directly above it.  I

10:38AM  13   forget the direct lines, the page before.

10:38AM  14           MR. TRIPI:  I can give you the page, Judge, if it's

10:38AM  15   helpful.  Give me just a second.

10:38AM  16           MS. CHAMPOUX:  You didn't do that page.

10:38AM  17           MR. TRIPI:  Yeah, I don't think I did that page at

10:38AM  18   all.  I did page 71 and 73, Judge.

10:38AM  19           MR. SOEHNLEIN:  And this is page 72.

10:38AM  20           THE COURT:  Why don't you come up.

10:38AM  21           (Sidebar discussion held on the record.)

10:39AM  22           MR. TRIPI:  Actually, Judge, I did 72, 1 through 4.

10:39AM  23           THE COURT:  Why can't you ask her those questions and

10:39AM  24   not ask her whether she said it before or not?

10:39AM  25           MR. SOEHNLEIN:  That's fine, I'll do it.  She said

| | | |
|---|---|---|
| 10:39AM | 1 | it.  The impact, though, is that, you know, the government |
| 10:39AM | 2 | points to a statement before and a statement after, and |
| 10:39AM | 3 | implies that she's being untruthful. |
| 10:39AM | 4 | But the statement in the middle is -- |
| 10:39AM | 5 | **MR. TRIPI:**  I'm not implying. |
| 10:39AM | 6 | **MR. SOEHNLEIN:**  -- is right -- right on point with |
| 10:39AM | 7 | what she's testified to today. |
| 10:39AM | 8 | **MR. TRIPI:**  My question was:  You didn't really see |
| 10:39AM | 9 | Katrina much when Peter dated her. |
| 10:39AM | 10 | She admitted as much on page 71.  And then -- |
| 10:39AM | 11 | **THE COURT:**  I'm going to allow it.  I think that it |
| 10:39AM | 12 | completes the narrative.  I think that it's -- it's fair to |
| 10:39AM | 13 | let it come in, even -- even as -- |
| 10:39AM | 14 | **MR. TRIPI:**  106? |
| 10:39AM | 15 | **THE COURT:**  -- yeah. |
| 10:39AM | 16 | **MR. TRIPI:**  Can I get the lines you're going to allow |
| 10:39AM | 17 | just to -- |
| 10:39AM | 18 | **THE COURT:**  I'm going to allow -- |
| 10:39AM | 19 | **MR. SOEHNLEIN:**  18 to 23, Judge? |
| 10:40AM | 20 | **THE COURT:**  -- yeah, 18 to 23. |
| 10:40AM | 21 | **MR. SOEHNLEIN:**  Thank you. |
| 10:40AM | 22 | (End of sidebar discussion.) |
| 10:40AM | 23 | **THE COURT:**  Okay.  So the objection is overruled. |
| 10:40AM | 24 | **BY MR. SOEHNLEIN:** |
| 10:40AM | 25 | Q.  Ms. Nigro (sic), on September 13th, 2024, you gave |

10:40AM  1   testimony in another proceeding, correct?

10:40AM  2   A.   Yes.

10:40AM  3   Q.   And -- and you were under oath at that time, correct?

10:40AM  4   A.   Yes.

10:40AM  5   Q.   And did -- did you give -- were you asked this question

10:40AM  6   and did you give this answer:

10:40AM  7       "Question:  How often would you see Peter to visit your

10:40AM  8   son?

10:40AM  9       "Answer:  On a weekly basis.

10:40AM  10      "Question:  And during these times that you would

10:40AM  11  interact with Peter, I think you testified that you also

10:40AM  12  interacted with Katrina sometimes?

10:40AM  13      "Answer:  Yes."

10:40AM  14  A.   Yes.

10:40AM  15  Q.   Okay.  Now, is that the same testimony that Mr. Tripi had

10:40AM  16  read to you earlier today?

10:40AM  17  A.   No.

10:40AM  18          **MR. TRIPI:**  Objection.

10:40AM  19          **THE COURT:**  Hang on.

10:40AM  20          **MR. SOEHNLEIN:**  Strike that.

10:40AM  21          **THE COURT:**  Sustained.  Go ahead, ask another

10:40AM  22  question.

10:40AM  23          **BY MR. SOEHNLEIN:**

10:40AM  24  Q.   Is that the same date and same transcript that Mr. Tripi

10:41AM  25  had read to you earlier?

10:41AM  1          **MR. TRIPI:**  Objection.

10:41AM  2          **THE WITNESS:**  Yeah.

10:41AM  3          **THE COURT:**  Overruled.

10:41AM  4          **MR. TRIPI:**  What's the relevance of that?

10:41AM  5          **THE WITNESS:**  Yes.

10:41AM  6          **BY MR. SOEHNLEIN:**

10:41AM  7  Q.  Thank you.

10:41AM  8      Just to close the loop, there was some testimony about

10:41AM  9  your grand jury testimony; do you recall that?

10:41AM  10  A.  Yes.

10:41AM  11  Q.  Now, when you went in grand jury, the defense was not

10:41AM  12  there, correct?

10:41AM  13  A.  No.

10:41AM  14  Q.  And the jury wasn't there, correct?

10:41AM  15  A.  No.

10:41AM  16  Q.  And the -- there wasn't a judge there, correct?

10:41AM  17  A.  No.

10:41AM  18  Q.  It was just you and the prosecution, correct?

10:41AM  19  A.  Yes.

10:41AM  20  Q.  And you didn't have a lawyer when you went into the grand

10:41AM  21  jury.

10:41AM  22          **MR. TRIPI:**  Objection, 403.  The proceedings of a

10:41AM  23  grand jury are irrelevant.

10:41AM  24          **THE COURT:**  Nope.  Overruled.

25

| | | |
|---|---|---|
| 10:41AM | 1 | **BY MR. SOEHNLEIN:** |
| 10:41AM | 2 | Q.  Did you have a -- a lawyer? |
| 10:41AM | 3 | A.  No, I didn't even know I needed one. |
| 10:41AM | 4 | Q.  Okay.  And so, the back and forth, was it a lot like the |
| 10:41AM | 5 | back and forth that you had with Mr. Tripi? |
| 10:41AM | 6 | A.  Similar. |
| 10:41AM | 7 | Q.  Okay.  Now, the defense didn't subpoena you here today, |
| 10:41AM | 8 | correct? |
| 10:41AM | 9 | A.  No. |
| 10:41AM | 10 | Q.  The government did subpoena you here today, correct? |
| 10:41AM | 11 | A.  Yes. |
| 10:41AM | 12 | **MR. SOEHNLEIN:**  That's all I have, thank you. |
| 10:41AM | 13 | **THE COURT:**  Anything more, Mr. Tripi? |
| 10:41AM | 14 | **MR. TRIPI:**  Yeah, I have just a couple questions, |
| 10:42AM | 15 | Judge. |
| 10:42AM | 16 | |
| 10:42AM | 17 | **RE-REDIRECT EXAMINATION BY MR. TRIPI:** |
| 10:42AM | 18 | Q.  In terms of communications prior to your testimony, |
| 10:42AM | 19 | starting back in June 26th, 2020, during that exact meeting |
| 10:42AM | 20 | with the agents, the defendant was calling you on the phone, |
| 10:42AM | 21 | correct?  He was blowing up your phone? |
| 10:42AM | 22 | A.  No. |
| 10:42AM | 23 | **MR. SOEHNLEIN:**  Objection. |
| 10:42AM | 24 | **THE COURT:**  Stop.  Stop.  Stop.  Stop. |
| 10:42AM | 25 | Objection?  What's the objection? |

| | | |
|---|---|---|
| 10:42AM | 1 | **MR. SOEHNLEIN:**  Well, I'm sorry, that's -- can we |
| 10:42AM | 2 | come up? |
| 10:42AM | 3 | **THE COURT:**  Yeah, come on up. |
| 10:42AM | 4 | (Sidebar discussion held on the record.) |
| 10:42AM | 5 | **MR. SOEHNLEIN:**  I mean, it may -- it's not reflected |
| 10:42AM | 6 | in the notes at all that the defense was calling her, at least |
| 10:42AM | 7 | not to my knowledge.  It wasn't us.  To the extent that |
| 10:42AM | 8 | there's some suggestion that it's me or Mark, I -- you know -- |
| 10:42AM | 9 | **MR. TRIPI:**  I said the defendant on June 26th. |
| 10:42AM | 10 | **MR. SOEHNLEIN:**  It was the defendant?  Oh, I thought |
| 10:42AM | 11 | that you said the defense. |
| 10:42AM | 12 | **MR. TRIPI:**  No, the defendant. |
| 10:42AM | 13 | **MR. SOEHNLEIN:**  I thought you said that it was |
| 10:42AM | 14 | counsel. |
| 10:42AM | 15 | **MR. TRIPI:**  No. |
| 10:42AM | 16 | **MR. SOEHNLEIN:**  Okay.  Then I have less of a problem |
| 10:42AM | 17 | with it.  So -- |
| 10:42AM | 18 | **THE COURT:**  Withdraw the objection? |
| 10:42AM | 19 | **MR. SOEHNLEIN:**  I withdraw the objection.  I thought |
| 10:43AM | 20 | he said the defense, like it was me and Foti. |
| 10:43AM | 21 | **THE COURT:**  No, he said the defendant. |
| 10:43AM | 22 | (End of sidebar discussion.) |
| 10:43AM | 23 | **THE COURT:**  The objection is withdrawn; is that |
| 10:43AM | 24 | correct? |
| 10:43AM | 25 | **MR. SOEHNLEIN:**  Yes. |

10:43AM 1        **MR. TRIPI:**  I think the question was answered, too,

10:43AM 2   Judge, so I'll move on.

10:43AM 3        **THE COURT:**  Great.

10:43AM 4        **BY MR. TRIPI:**

10:43AM 5   Q.  And before your testimony, during the course of the

10:43AM 6   lead-up of this trial, you've communicated with the

10:43AM 7   defendant, correct?

10:43AM 8   A.  Yes.

10:43AM 9        **MR. TRIPI:**  Nothing further, Judge.

10:43AM 10        **THE COURT:**  Anything more, Mr. Soehnlein?

10:43AM 11        **MR. SOEHNLEIN:**  Nothing more, Judge.

10:43AM 12        **THE COURT:**  Okay.  You can step down, ma'am.

10:43AM 13        **THE WITNESS:**  Thank you.

10:43AM 14        (Witness excused at 10:43 a.m.)

15        (Excerpt concluded at 10:43 a.m.)

16         *     *     *     *     *     *     *

17

18              **CERTIFICATE OF REPORTER**

19

20              In accordance with 28, U.S.C., 753(b), I

21   certify that these original notes are a true and correct

22   record of proceedings in the United States District Court for

23   the Western District of New York on December 9, 2024.

24
                           s/ Ann M. Sawyer
25                         _____
                           Ann M. Sawyer, FCRR, RPR, CRR
                           Official Court Reporter

1                        U.S.D.C., W.D.N.Y.

**TRANSCRIPT INDEX**

**EXCERPT - EXAMINATION OF R.A. (PW 6) - DAY 2**

**DECEMBER 9, 2024**

**W I T N E S S**                                    **P A G E**

**R. A.  (PW 6)**                                    2

  (CONT'D) CROSS-EXAMINATION BY MR. SOEHNLEIN:    2

  REDIRECT EXAMINATION BY MR. TRIPI:             5

  RECROSS-EXAMINATION BY MR. SOEHNLEIN:          36

  RE-REDIRECT EXAMINATION BY MR. TRIPI:          44